IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISON

| | |
|---|---|
| HANGZHOU CHIC INTELLIGENT TECHNOLOGY CO., LTD. AND UNICORN GLOBAL, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CHEAPAANZEE et al., <br><br> Defendants. | Case No. 20-cv-04806 <br><br> Hon. Thomas M. Durkin |

## MOTION FOR RELIEF FROM THE PRELIMINARY INJUNCTION ORDER

On November 25, 2020, eBay Inc. ("eBay") received a request for expedited discovery from Plaintiffs Hangzhou Chic Intelligent Technology Co., Ltd. and Unicorn Global, Inc. ("Plaintiffs") pursuant to the November 24, 2020 Preliminary Injunction (Dkt. 113) (the "Preliminary Injunction"). (Declaration of Paul J. Rogerson ("Rogerson Decl.") Exs. 1–4.) Here, eBay respectfully moves for relief from the obligations imposed on it by the Preliminary Injunction, including the obligation to provide the discovery that Plaintiffs seek.

Three months ago, Plaintiffs moved for an emergency Temporary Restraining Order (the "TRO"). After eBay moved for relief from the TRO and requested that Plaintiffs provide to eBay the information supporting their request for a TRO, Plaintiffs withdrew their pending request for a preliminary injunction, the TRO expired, and weeks passed before Plaintiffs filed a further amended complaint (now the operative pleading) and a renewed request for a preliminary injunction, which has now been granted. Plaintiffs have never moved for a temporary restraining based on the operative complaint, and have yet to provide eBay the information it requested.

Like the TRO before it, the Preliminary Injunction that Plaintiffs have obtained goes far beyond what is necessary to prevent a risk of irreparable harm to Plaintiffs and needlessly imposes burdens on third-parties like eBay. The Preliminary Injunction allows Plaintiffs to demand that third-party service providers freeze Defendants' assets and (potentially) shut down Defendants' online stores *before* Plaintiffs take expedited discovery to uncover the facts that would show whether these drastic forms of relief are necessary, or indeed whether the Court may exercise personal jurisdiction over Defendants at all. These remedies, imposed before any showing of genuine need, threaten to operate as a source of pressure on Defendants to quickly settle Plaintiffs' allegations, independent of merit. And beyond the burdens on eBay to comply with these measures, it is a reputational issue for eBay if merchants come to believe that these risks are a cost of doing business on eBay's online marketplace. The risk of irreparable harm that Plaintiffs identify could be resolved, without imposing these burdens on third parties, by a more limited order that provided that Plaintiffs may take expedited discovery from third-parties, during which time Defendants' identities would be maintained under seal, and that Plaintiffs may *then* return to the Court to request any further relief warranted in light of the facts uncovered.

**I.      The Concerns that eBay Raised about the TRO Have Proven to be Well-Founded.**

Plaintiffs' latest filings vindicate the concerns that eBay raised about the original Temporary Restraining Order ("TRO") (Dkt. 42) issued in this case. Three months ago, Plaintiffs asserted that the Court needed to issue an *ex parte* TRO requiring ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. So far as Plaintiffs' publicly available filings reveal, Plaintiffs' request for this extraordinary relief was based on the allegation that these ▮▮▮▮▮ are located outside the United States and are bad actors who willfully infringe intellectual property rights and have a practice of switching usernames to avoid allegations of intellectual property infringement, and so would likely move

their assets beyond the Court's reach if notified of the litigation. (*See* Dkt. 56.) However, as eBay explained in its filings, ███████████████████████████████████ ███████████. (*See* Dkt. 56.) ████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████. (*See* Dkt. 56.) ██████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████.[1]

In subsequent filings, Plaintiffs told the Court that they intended to conduct an additional investigation and file an amended complaint. (Dkt. 93, 94.) Plaintiffs have now filed a Third Amended Complaint. (Dkt. 101.) The Third Amended Complaint ████████████████ ███████████████████████████████████. (Dkt. 101.) And, based on publicly available information allegedly uncovered by their further investigation (information that Plaintiffs' filings do not disclose), Plaintiffs now allege ████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████ (Dkt. 101 ¶¶ 10, 11.)[2] In other words, just as eBay suggested, a small amount of due diligence based on publicly available information was enough

---

[1] The TRO expired before the dispute between eBay and Plaintiffs regarding the validity of the TRO as applied to eBay was resolved.

[2] And, as explained further below, ████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ (*See* Declaration of Rebekah Long in Support of eBay's Motion for Relief ("Long Decl.").)

to cast doubt on the vast majority of the allegations about Defendants' locations that Plaintiffs presented to the Court in sworn declarations three months ago.

Despite these developments, Plaintiffs have not meaningfully changed their request for injunctive relief. Indeed, in some respects, the Preliminary Injunction goes *further* than the TRO. The Preliminary Injunction still requires certain third parties (who are in "active concert" with Defendants) to freeze the assets ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. (Dkt. 113 ¶ 3.) The only change over the TRO is that the Preliminary Injunction provides that the asset freeze requirement does not apply to any "Schedule B" Defendant "for whom Plaintiffs receive" a particular kind of proof of U.S. residency—"official registration documents filed with any state's Secretary of State (or analogous business registration agency)." (Dkt. 113 ¶ 3.) As explained below, this safeguard is flawed and inverts the burden of proof for a preliminary remedy. The Preliminary Injunction also contains new provisions that permit Plaintiffs to demand that a large set of third-party service providers "disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods that infringe the Patents-in-Suit." (Dkt. 113 ¶ 4a.) It is unclear whether this language applies to eBay or what precisely it requires, but on one reading it could require eBay to shut down the entire eBay store of every eBay Defendant, even Defendants who are established businesses inside the United States and have sold only a small number of allegedly infringing products.

## II. eBay Has the Right to Move for Relief from the Preliminary Injunction.

It is "part of our deep-rooted historic tradition that everyone should have his own day in court." *Martin v. Wilks*, 490 U.S. 755, 761–62 (1989). Federal Rule of Civil Procedure 65(d)(2)(C) authorizes a federal court to issue an injunction that binds non-parties who are "in

4

active concert or participation" with a party or its "officers, agents, servants, employees, and attorneys." But Rule 65(d)(2)(C) does not suspend the fundamental requirement that any person bound by a court order has the right to his own day in court, with the opportunity to contest the validity of the order. *G. & C. Merriam Co. v. Webster Dictionary Co., Inc.*, 639 F.2d 29, 37 (1st Cir. 1980) ("The central reason that one who is not a party to the action in which the injunction was issued cannot be bound by it is that he has not had his day in court *with respect to the validity of the injunction.* Absent an opportunity to contest liability, his knowledge of the injunction is not sufficient to bind him as an individual."); *see also Lake Shore Asset Management Ltd. v. Commodity Future Trading Commission*, 511 F.3d 762, 767 (7th Cir. 2007) (holding that the threshold question "*whether* a particular person or firm is among the 'parties' officers, agents, servants, employees, and attorneys; [or] other persons in active concert or participation with' them (see Fed. R. Civ. P. 65(d)(2)(B), (C)) is a decision that may be made only after the person in question is given notice and an opportunity to be heard.").

Under these fundamental rules, eBay has the right to appear in Court to present argument as to the validity of the Preliminary Injunction, including arguments that the Preliminary Injunction will cause irreparable harm to eBay. Plaintiffs assert in their discovery demand that eBay is bound by at least the provisions of the Preliminary Injunction that require certain third parties to provide discovery to Plaintiffs. (Rogerson Decl., Ex. 1.) And eBay has an interest in settling the validity of other provisions of the Preliminary Injunction (in order to resolve concerns about whether it might be bound by them too), such as Paragraph 3 (which requires certain third parties to freeze Defendant's asserts) and Paragraph 4 (which requires certain parties to stop providing certain services to Defendants on Plaintiffs' demand). (Dkt. 113 ¶¶ 3, 4.)

5

### III. Plaintiffs Have Not Shown That They Are Entitled to the Broad Preliminary Relief They Have Sought Against eBay.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20.

eBay does not object to providing the discovery that is authorized by the Preliminary Injunction regarding the "Schedule A" Defendants.[3] However, The Preliminary Injunction potentially imposes at least three obligations on eBay with respect to the "Schedule B" Defendants who Plaintiffs admit they have reason to believe are located within the United States: (1) to provide discovery that Plaintiffs can use, without any further showing to the Court, to demand that certain third-party service providers freeze the assets of the "Schedule B" Defendants; (2) potentially requires eBay itself to freeze the assets of the "Schedule B" Defendants; and (3) potentially requires eBay to fully shut down the eBay stores of the "Schedule B" Defendants. Plaintiffs have not met their burden to show that they are entitled to these forms of relief. As explained above, a much more limited order permitting Plaintiffs to

---

[3] However, even as to the "Schedule A" Defendants, ███████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████ eBay objects to providing this discovery as to any Defendant.

simply take expedited discovery, during which time Defendants' identities would be maintained under seal, would avert any risk of irreparable harm that Plaintiffs identity.

### A. Plaintiffs Have Not Shown that They Will be Irreparably Harmed Absent the Relief Against eBay.

"Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. However, here Plaintiffs appear to have made no particularized showing as to *any* Defendant that either asset freezes or store shutdowns as to the "Schedule B" Defendants are necessary to prevent irreparable harm to Plaintiffs.[4]

The relevant allegations in the Third Amended Complaint ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. (Dkt. 103 ¶¶ 10–11, 33–40.) For example, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. (Dkt. 103 ¶ 11.) Indeed, the Third Amended Complaint itself alleges ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Dkt. 103 ¶ 11.) Or, to take another example, the Complaint alleges ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Dkt. 103 ¶ 36.)



---

[4] Indeed, despite seeking emergency relief and rapid expedited discovery from third parties, Plaintiffs themselves have acted with no sense of urgency. *See High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995) ("plaintiff's claimed need for immediate relief is undercut by the slow pace with which plaintiff has sought to obtain it") (quotation marks omitted). Plaintiffs appear to have waited for more than two months after filing their complaint to undertake a basic search of publicly-available information regarding the accused Defendants.

The materials filed in support of Plaintiffs' Motion for a Preliminary Injunction have the same deficiencies. Plaintiffs' Motion was supported by several declarations, only one of which has been filed in redacted form on the public docket. (Dkt. 106, 118, 119.) That declaration is a declaration from Richard F. Bero, who asserts that Plaintiffs may be unable to recover any monetary damages assessed because "many of the Defendants are alleged to reside and / or operate in the People's Republic of China or other foreign jurisdictions." (Dkt. 118 ¶¶ 120–121.) However, Mr. Bero himself offers no independent opinion that these statements are true or any analysis to support them. Instead, Mr. Bero relies entirely on the allegations in Plaintiffs' Third Amended Complaint and the "understanding" that he has received from Plaintiffs. (Dkt. 118 ¶¶ 120–121.) And although eBay is unable to access the remaining declarations, the fact that Mr. Bero does not rely on these declarations for his assertions regarding the Defendants indicates to eBay that the remaining declarations provide no relevant support for these assertions.

The lack of any detailed factual support for the key allegations underpinning Plaintiffs' showing of irreparable harm is particularly significant given the history of this case. Three months ago Plaintiffs told the Court that an *ex parte* TRO freezing the assets of ▇▇▇▇▇▇▇ on eBay's online marketplace was necessary to prevent irreparable harm to Plaintiffs based on what appear to have been high-level, conclusory assertions that those merchants were operating outside the United States and had a practice of changing their identities to avoid allegations of intellectual property infringement. It now appears, in light of Plaintiffs' latest filings, that these allegations were not based on even minimal due diligence into publicly-available information. Yet, in their new filings, Plaintiffs still provide nothing more than high-level, conclusory allegations. The Court should not simply accept that these allegations are well-founded.

8

Indeed, once again, the results of an internal investigation conducted by eBay substantiate concerns about the accuracy of Plaintiffs' allegations. As it did after receiving Plaintiffs' first set of discovery requests, eBay has conducted an investigation regarding the Defendants who operate on its platform. (Long Decl. ¶ 6.) Given the short time available, this investigation was necessarily limited. But what eBay has learned ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Long Decl. ¶¶ 7–11.)

Given the limited allegations provided by Defendants, and the results of eBay's investigation, the facts available to the Court are not close to a "clear showing" that Defendants will be irreparably harmed absent asset freezes and store shutdowns of the "Schedule B" Defendants. *Winter*, 555 U.S. at 22.

### B. The Balance of Equities Includes Irreparable Harm to eBay.

Complying with the Preliminary Injunction risks causing irreparable damage to eBay's goodwill, reputation, and market share. *See, e.g., Canon Comput. Sys. v. Nu-Kote Intern., Inc.*, 134 F.3d 1085, 1090 (Fed. Cir. 1998) (upholding finding that "potential loss of market share" is an irreparable harm); *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) (recognizing that "loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm"). Plaintiffs have not provided eBay with any particular listing by any Defendant that that they allege shows an infringing product. And the results of eBay's own investigation indicate ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Long Decl. ¶ 11.) Accordingly, an asset freeze or store shutdown risks

9

generating very substantial pressure to settle Plaintiffs' allegations, independent of merit (indeed, before any adversarial testing of the allegations' merit) and that is disproportionate to the scale of the alleged infringing activity. *See E-Link Tech. Co., Ltd. v. Shenzen Uni-Sun Elec. Co., Ltd.*, No. 20-cv-00247, Dkt. 36 at 6 (N.D. Ill. May 14, 2020) ("restraining all funds received by the Amazon accounts, in light of the relatively small proportion due to the allegedly infringing sales, is disproportionately onerous"); *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 396 (2006) (Kennedy, J., concurring) (cautioning that courts should be careful to prevent the threat of an injunction with consequences disproportionate to the accused infringing activity from being used "for undue leverage in negotiations").

An event that its merchants might reasonably view as an attempt to extract a settlement is a reputational issue for eBay. The merchants are likely to blame eBay for freezing their assets or shutting down their entire stores, or least take account of the fact that these kinds of events can happen on eBay's online marketplace in future decisions about where to do business. And merchants are particularly likely to be upset if their businesses (including large numbers of products that are not accused of infringement) are shut down without warning during the holiday season. This will damage eBay's relationship with these merchants and erode eBay's competitive position against other online marketplaces. And loss of merchants risks leading to further losses of market share and further erosion of eBay's competitive position, by thinning out eBay's marketplace compared to rival marketplaces—the opportunity to view listing from a large number of merchants in one place is part of what draws customers to eBay's platform. Similar harms to eBay's competitive position would arise if any of the eBay Defendants are permanently damaged by an asset freeze or shutdown, and are forced to leave eBay's platform or reduce their activity. █████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

(Long Decl. ¶ 10.)

The sole safeguard in the Preliminary Injunction—that the asset freeze provisions do not apply to "Schedule B" Defendants for whom Plaintiffs receive business registration documents—is a flawed protection that will not meaningfully mitigate these harms, for at least four reasons.  First, it does not apply to the store shutdown provisions in Paragraph 4a., which will cause substantially the same harms.  (Dkt. 113 ¶ 4a.)  Second, there is no guarantee that

██████████████████████████████████████████████████████████████

████████████████████████████████████████████. (Long Decl. ¶ 10.)

Third, in practice, it will still generate the same kind of settlement pressure and risk the same business damage.  The assets of the "Schedule B" Defendants will still be frozen immediately and stay frozen for a substantial period of time.  Under the terms of the Preliminary Injunction, eBay is potentially obligated to freeze the Defendants' assets immediately. (Dkt. 113 ¶ 3.)  And once eBay provides the discovery Plaintiffs have requested, Plaintiffs can immediately demand that other third-party service providers freeze Defendants' assets.[5]  (Dkt. 113 ¶ 3.)  Once the assets are frozen, the procedure for unfreezing them is time-consuming and burdensome. Defendants need to be served to have notice of the procedure, although to date there is no evidence that Plaintiffs have served *any* of the eBay Defendants.  After service, Defendants will need to retain counsel who can represent them in litigation in the Northern District of Illinois,

---

[5] Although ███████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████ (Rogerson Decl., Ex. 1.)

11

review the terms of the order, obtain copies of official registration documents, and send them to Plaintiffs. These steps are likely to be particularly burdensome and time-consuming for the many eBay Defendants who are small, individual operators. And the asset freeze Plaintiffs demand may further complicate efforts to retain counsel. Even once Plaintiffs receive registration documents, they are *still* permitted by the Preliminary Injunction to leave the Defendants' assets frozen for 10 additional days. (Dkt. 113 ¶ 3.) And many merchants are likely to feel particular pressure to avoid even a temporary interruption in business during the weeks leading up to the holiday season.

Fourth, and finally, this procedure fundamentally reverses the burden of proof for a preliminary remedy. A preliminary injunction, particularly one that threatens to close the doors of a large number of operating businesses, is an "extraordinary remedy" to which *Plaintiffs* must make a "clear showing" that they are entitled. *Winter*, 555 U.S. at 24. Here, Plaintiffs seek instead to obtain an injunction on the basis of high-level, conclusory allegations—allegations that eBay itself can see are likely false—and rely on *Defendants* to come forward with particularized proof that the injunction is *not* necessary. If Plaintiffs need to take more discovery to prove that they are entitled to an injunction, they should do that first and *then* seek an order from the Court to the extent warranted by what the discovery reveals.

    **C.**     **Plaintiffs' Claims are Subject to Substantial Personal Jurisdiction and Venue Objections.**

eBay has not seen the parts of Plaintiffs' filings that describe the details of their infringement allegations against Defendants and takes no position on the merits of those allegations.[6] However, in light of eBay's registration data, which indicates that the vast majority

---

[6] Although eBay notes that, unlike in some copyright or trademark infringement cases, it is not apparent from the face of Plaintiffs' Complaint that the eBay Defendants are bad actors who *willfully* infringed Plaintiffs' intellectual property, even if Plaintiffs' allegations of infringement

12

of the "Schedule B" Defendants are located in the United States, it appears that Plaintiffs' claims are subject to substantial personal jurisdiction and venue objections. Were Plaintiffs' claims tested in an adversarial hearing, they would likely be dismissed as to the vast majority of the "Schedule B" Defendants. Accordingly, the Court should not require eBay to comply with an order that further proceeding are likely to show the Court is without jurisdiction to grant. Again, a more appropriate course would be for Plaintiffs to take discovery, including jurisdictional discovery to the extent necessary, and then move for further relief.

First, Plaintiffs have not provided facts sufficient to establish personal jurisdiction over at least the vast majority of the "Schedule B" Defendants who likely reside somewhere in the United States. "[T]he Illinois long-arm statute permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause," so the relevant question is "whether the exercise of personal jurisdiction over the defendants comports with the limits imposed by federal due process." *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 393 (7th Cir. 2020.) Plaintiffs do not allege that the Court has *general* personal jurisdiction over any Defendant, and courts in the Seventh Circuit have "distilled three 'essential requirements' for the exercise of specific jurisdiction over an out-of-state defendant" who resides somewhere in the United States: "First, the defendant's contacts with the forum state must show that it purposefully availed [itself] of the privilege of conducting business in the forum state or purposefully directed [its] activities at the state. Second, the plaintiff's alleged injury must have arisen out of the

---

are correct. Nor is it apparent from the face of the complaint how statutory defenses that are available to an allegation of patent infringement would be resolved. *See In re Borden*, 90 F.3d 1570, 1574 (Fed. Cir. 1996) (design patent is "subject to the same conditions on patentability as utility patents").

13

defendant's forum-related activities. And finally, any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *Id.* at 398.

Cases applying these requirements in the context of online activity by out-of-state defendants have required at least *something* beyond merely providing the option to ship products into the forum state, such as proof that the defendant *actually sold* a substantial number of products in the state. *See, e.g., id.* at 400 (finding personal jurisdiction based on "767 sales" of accused products into Illinois); *Illinois v. Hemi Group LLC*, 622 F.3d 754, 755 (7th Cir. 2010) (finding personal jurisdiction based on sales of "three hundred packs of cigarettes" into Illinois); *Matlin v. Spin Master Corp.*, 921 F.3d 701, 706 (7th Cir. 2019) ("[S]pecific jurisdiction should not be exercised based on a single sale in a forum, even when a manufacturer or producer knows or reasonably should know that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states."); *see also Advanced Tactical Sys. v. Real Action Paintball*, 751 F.3d 796, 801–02 (7th Cir. 2014) (cautioning against the creation of "*de facto* universal jurisdiction" in cases based on online activity).[7] ███████████████████████████████████

███████████ (Dkt. 103 ¶ 5.) That alone is not enough.

Second, Plaintiffs have not alleged facts sufficient to show that venue is proper in this judicial district as to at least the vast majority of the "Schedule B" Defendants who likely reside somewhere in the United States. Venue in a patent case as to a domestic corporation or person is governed by the patent venue statute, which provides that "[a]ny civil action for patent

---

[7] Although New York employs a narrower test for specific personal jurisdiction than Illinois does, the analysis in *Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 364–65 (S.D.N.Y. 2020), *adhered to in relevant part on reconsideration*, No. 18-CV-1774 (LJL), 2020 WL 5350541 (S.D.N.Y. Sept. 4, 2020) is also instructive; *see also Off-White LLC v. Ali*, No. 19-cv-01775, 2020 WL 5802048 (S.D.N.Y. Sep. 28, 2020).

infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). These venue rules strictly limit where a patent case may be brought and were specifically intended "to eliminate the 'abuses engendered' by previous venue provisions allowing such suits to be brought in any district in which the defendant could be served." *In re Cray*, 871 F.3d 1355, 1361 (Fed. Cir. 2017) (citation omitted).

The patent venue statute "cannot be read to refer merely to a virtual space or to electronic communications from one person to another." *Id.* at 1362. Instead, as to any Defendant who does not "reside" in this district, venue is only proper if three conditions are met: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *Id.* at 1360. ████████████████████ ████████████████████████████████████████ (*See* Dkt. 103 ¶ 5.) Indeed, Plaintiffs' approach in this lawsuit—naming a large number of defendants who appear not to operate a "physical place" within this judicial district and seeking a preliminary remedy that risks imposing substantial pressure to settle before any adversarial hearing takes place—might be seen as an example of an "abuse[]" that the patent venue rules were intended to prevent. *In re Cray*, 871 F.3d at 1361.

**IV.  Conclusion**

For the foregoing reasons, the Court should grant eBay's motion for relief from the Preliminary Injunction.

Dated: December 14, 2020 Respectfully submitted,

  */s/ Richard A. Cederoth*
Richard A. Cederoth
Paul J. Rogerson
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-7000
rcederoth@sidley.com
progerson@sidley.com

*Counsel for eBay, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing to be served by email on the 16th of October, 2020 on all counsel of record.

Dated: December 14, 2020

    */s/   Richard A. Cederoth*
Richard A. Cederoth
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-7000
rcederoth@sidley.com

*Counsel for eBay, Inc.*