**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HANGZHOU CHIC INTELLIGENT TECHNOLOGY CO. and UNICORN GLOBAL, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 20-cv-4806 |
| v. | ) ) | Judge Thomas M. Durkin |
| | ) | Magistrate Judge M. David Weisman |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, | ) ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFFS' OPPOSITION TO EBAY'S MOTION FOR RELIEF

The question here is simple: may non-party eBay, Inc. ("eBay") retroactively legitimize its non-compliance with court orders and thereby prevent Defendants—whom no one disputes are selling infringing goods and to whose contact information eBay has asymmetrical access that Plaintiffs lack—from being called to court to answer for their violations of Plaintiffs' patent rights? Plaintiffs are aware of no case holding in the affirmative.

eBay's motion is the culmination of its ten-week campaign to avoid taking *any* steps to comply with multiple court orders, including producing even basic Defendant contact information, which would enable Plaintiffs to serve the Defendants named in this case or alternatively confirm that any individual Defendant should properly be in another forum or venue. This is the second time that eBay has waited until just after its window for compliance has closed to file motions seeking relief from the order with which it refused to comply. And once again, eBay makes pronouncements and arguments ostensibly using the same information that Plaintiffs have requested but without providing any documents or facts. eBay has included no evidence to

substantiate the commercial harm or burden it claims to suffer. Despite eBay's claims about personal jurisdiction and venue, eBay has not produced a single document showing that personal jurisdiction and venue is lacking over any single Defendant. eBay created the problem of which it now complains by refusing to comply with multiple court orders and refusing to provide facts in support of its October motions. It now seeks to use that self-created problem to retroactively justify its non-compliance. And as the non-compliance continues, Plaintiffs' irreparable harm continues every day through the holiday shopping season as eBay's customers continue to sell infringing goods, to eBay's enrichment. The Court should end this infringement, deny eBay's motion, and demand eBay's immediate compliance with the Preliminary Injunction order.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Trafficking of counterfeit goods through e-commerce platforms is such a major issue that in January 2020, the President of the United States issued an Executive Order announcing a policy of "Ensuring Safe and Lawful E-Commerce for United States Consumers, Businesses, Government Supply Chains, and Intellectual Property Rights Holders." Exec. Order No. 13904, 85 Fed. Reg. 6725 (Jan. 31, 2020); *see also* Memorandum on Stopping Counterfeit Trafficking on E-Commerce Platforms Through Fines and Civil Penalties, Daily Comp. Pres. Docs., 2020 DCPD No. 00776 (Oct. 13, 2020) (Presidential memorandum for stopping counterfeit goods, stating "E-commerce platforms serve as key contributors to counterfeit trafficking by acting as intermediaries and providing marketplaces that match up buyers and sellers").[1] The Wirecutter—a New York Times e-commerce and product review site—has reported on fake products, quoting sources identifying eBay as a particular problem: "My fear isn't Amazon, my fear is the eBays and

---

[1] *Available at* https://www.whitehouse.gov/presidential-actions/memorandum-stopping-counterfeit-trafficking-e-commerce-platforms-fines-civil-penalties.

AliExpresses and whatever crops up next . . . . **We've been singularly unsuccessful with Ebay**."
Ganda Suthivarakom, *Welcome to the Era of Fake Products,* Wirecutter (Feb. 11, 2020),
https://www.nytimes.com/wirecutter/blog/amazon-counterfeit-fake-products/ (emphasis added).

### a. Plaintiffs Filed Suit and Obtained a TRO, Which eBay Never Complied with and Attempted to Dissolve

Plaintiffs brought this action for infringement of design patents against Defendants who
sell infringing goods on various online marketplace platforms, including eBay. *See* Dkt. 101 ¶ 2.
Many Defendants operate under fictional aliases, conceal their identities, change registrations, and
shuffle money through off-shore accounts to evade intellectual property enforcement. *Id.* ¶¶ 34–
38; Dkt. 20 ¶¶ 10–11; Dkt. 21 ¶ 14.  On September 22, this Court issued a TRO against Defendants
(later extended to October 20, 2020, *see* Dkt. 50), which in part provided:

> Upon Plaintiffs' request, any third party with actual notice of this Order who is
> providing services for any of the Defendants or in connection with any of Defendant
> Internet Stores, including, without limitation, any online marketplace platforms,
> shall, within ten (10) business days after receipt of such notice, provide Plaintiffs
> expedited discovery, including copies of documents and records in such person's
> or entity's possession or control . . . .

Dkt. 42 ¶ 4.  Such discovery is necessary because Plaintiffs lack Defendants' contact information,
to which online marketplaces such as eBay have asymmetrical access.  Dkt. 82 ¶ 9.

On October 5, 2020, Plaintiffs served eBay with expedited discovery requests.  Dkt. 60-1.
eBay never responded to these requests and instead—with no prior notice to Plaintiffs—filed
motions seeking to stay or dissolve the TRO two weeks later.  Dkts. 56, 59.  The TRO expired
without a ruling on eBay's motions (and without any compliance by eBay), and Plaintiffs filed a
response to the motions on October 22.  Dkt. 68.  Two days later Plaintiffs moved for a preliminary
injunction.  Dkt. 80.  At the hearing, the court directed Plaintiffs and eBay to meet and confer and
hopefully resolve eBay's disputes.  Dkt. 89.

The dispute resolution effort was marked by eBay imposing document demands, refusing to produce any documents, and expressing "concern" about Plaintiffs' representations. eBay claimed—as it had in its October 16 motions and repeats again here—that many defendants were U.S.-based, which could render venue improper in this Court. Dkt. 56, p. 11 ("Indeed, were the eBay Sellers given the opportunity to test the sufficiency of Plaintiffs' allegations in a hearing, it is likely that the first thing to happen would be the dismissal of the vast majority of the complaint for improper venue.");[2] Dkt. 106-5, Ex. 1, pp. 9–10 ("[S]ince all of the information available to eBay indicates that these are US-based sellers, the circumstances surrounding plaintiffs' request for the TRO raise considerable concerns.").[3] Notably, neither in its filings nor in discovery discussions has eBay ever provided documentation supporting these contentions—a step which, according to eBay, would lead to the dismissal of many of the defendants that sell infringing products on its platform. In the interest of cooperation, Plaintiffs agreed to provide eBay with the documents it requested: the sealed Second Amended Complaint and the Declaration of Arthur Yuan to which the Court referred at the October 26 hearing. Dkt. 106-5, Ex. 1, p. 9.

### b. eBay Hampers Plaintiffs' Attempt to Refine the Pleadings and Avoid Improperly Joining Defendants

Discovery Plaintiffs obtained from others led Plaintiffs to question whether all Defendants were actually foreign entities. In a joint status report on October 28, Plaintiffs thus stated:

> Specifically, discovery has raised questions as to whether venue is proper as to some of the Defendants, whom Plaintiffs contend they believed in good faith were based outside of the United States, but who may, in fact, be based in the United States, in districts outside of the Northern District of Illinois. Plaintiffs are

---

[2] Four defendants have appeared in this action. All four consented to venue before this Court, contrary to eBay's prediction. Dkt. 96, p 3.

[3] The correspondence Plaintiffs previously filed as Dkt. 106-5, Ex. 1, is also included as Exhibit 1 to the Declaration of Neil Nandi ("Nandi Declaration") filed in support of this response brief. Exhibit 1 to the Nandi Declaration also includes subsequent correspondence with eBay.

expeditiously evaluating this discovery and the proper course of action in light of the new information.

Dkt. 93, p. 2. In light of these concerns, on November 2, Plaintiffs withdrew their pending motion for preliminary injunction. Dkt. 94. Two days later, Plaintiffs and appearing Defendants filed an additional joint status report, in which Plaintiffs noted: "Based on the information obtained through expedited discovery, Plaintiffs intend to file a motion for leave to file a Third Amended Compliant to remove certain Defendants that may not be properly before the Court, but instead should be sued in a different venue, and to add additional defendants that are engaging in infringing activities." Dkt. 96, p. 3.

Concurrent with these developments, Plaintiffs provided to eBay the requested Yuan Declaration and operative complaint. Dkt. 106-5, Ex. 2. In light of evidence showing that some of the non-eBay defendants were U.S. based, Plaintiffs told eBay that they hoped to take a conservative approach to the defendants (regardless of marketplace) in the forthcoming amended complaint by only including the eight eBay defendants for whom Plaintiffs found no evidence of U.S. residence, and removing other defendants for a variety of reasons, including unsubstantiated evidence of U.S. residence, low volume of sales, and the fact that some of the defendants had already flown by night while eBay delayed and refused to comply with a court order. *Id.*[4] To facilitate such an unnecessarily conservative approach while still enabling Plaintiffs to protect their rights, Plaintiffs made two modest requests: (1) if eBay had "reliable information" that any of the defendants with no evidence of a U.S. residence were actually U.S. based, provide Plaintiffs with that documentation so that Plaintiffs could "avoid subjecting those defendants to litigation in the wrong venue"; and (2) "provid[e] the contact information eBay has for [the remaining defendants],

---

[4]  Plaintiffs provided to the Court some examples of stores that fled other marketplaces since the start of litigation and moved to eBay. Dkt. 107 ¶¶ 6–7.

so that Plaintiffs can issue cease and desist letters upon them for sales of infringing products." *Id.* Plaintiffs acknowledged that it would be improper for defendants to "hav[e] assets frozen without due process, if such a freeze lacks proper legal basis" and Plaintiffs explained that their withdrawing of the preliminary injunction motion should address any such concern about asset freezing. *Id.*

Despite Plaintiffs' efforts to address eBay's concerns, eBay provided no discovery responsive to these requests. Instead, eBay continued its avoidance tactics by claiming that three of the eight sellers (from an already reduced list of stores) for which Plaintiffs found no real evidence of U.S. residence were actually based in the U.S. eBay, however, refused to provide any documentation to support that claim. Dkt. 106-5, Ex. 1, pp. 3–4. eBay accused Plaintiffs of a lack of diligence, stating that "Had you done that diligence prior to initiating litigation, we wouldn't be in the position of 'sellers having assets frozen without due process.'" *Id.* at p. 3.[5] eBay also requested for the first time (though claiming it to be a repeat request) all of the documents that "you supplied to the Court to get the TRO" so that eBay could "make an assessment." *Id.* at p. 4.

### c. Plaintiffs' Attempt to Move Past eBay's Obfuscation

As storefronts of infringing defendants closed, thus denying Plaintiffs the ability to obtain a remedy for infringement (exactly as Plaintiffs had feared), Plaintiffs asked eBay one last time whether eBay would provide *any* information responsive to the discovery requests. Dkt. 106-5, Ex. 1, p. 2–3. eBay did not directly respond to that inquiry, but instead issued more document demands on Plaintiffs, ironically claiming that Plaintiffs needed to respond to eBay's document requests to demonstrate "good faith," *see id.* at 1, despite eBay having refused to provide *any*

---

[5] As Plaintiffs' counsel noted to eBay, no eBay defendants had their assets frozen. Dkt. 106-5, Ex. 1, p. 3.

discovery in response to the Court's order and Plaintiffs having already provided the documents eBay initially requested. eBay did not even commit to providing any documents if Plaintiffs satisfied the ever-growing list of document demands, instead establishing its own satisfaction as a prerequisite to eBay even "discuss[ing] whether it would be appropriate to send the information you are requesting." *Id.* Plaintiffs' counsel left eBay's counsel a voicemail confirming Plaintiffs' understanding that eBay did not intend to provide any discovery. Dkt. 106-5 ¶ 4.

On November 17, Plaintiffs moved to file a Third Amended Complaint. Dkt. 97. In light of the dispute surrounding the residence of some of the infringing defendants, but the lack of contact information due to eBay's refusal to provide basic discovery, Plaintiffs separated Defendants into different buckets, including a Schedule B where "some evidence suggests that [the defendants] may have some contacts within the United States, but Plaintiffs are unable to confirm their actual location." Dkt. 97-2 ¶ 11. Plaintiffs explained the process it used to determine these buckets and to attempt (largely unsuccessfully) to ascertain Defendants' locations. Dkt. 97-1 ¶¶ 7–10. When Plaintiffs moved for a preliminary injunction on November 20, Dkt. 105, the proposed order reflected the uncertainty regarding Defendants' locations and Plaintiffs' desire not to freeze assets of defendants over whom venue may be improper. Dkt. 113 ¶ 3 (excluding from asset restraint "any defendant in Schedule B for whom Plaintiffs receive official registration documents . . . showing that such defendant is actively registered or based in a U.S. state but outside of the Northern District of Illinois."); *see also* Dkt. 106, p. 3 at n.1. Plaintiffs sent this proposed order to eBay's counsel on November 23, stating: "Our preference would be to proceed cooperatively rather than through motion practice, and we are willing to work with eBay on the scope of discovery and the order." *See* Ex. 1 to Nandi Decl., p. 1. eBay did not respond to this

email.  Instead, eBay's counsel appeared at the November 25 Preliminary Injunction hearing to object.  This Court nonetheless issued the Preliminary Injunction over those objections.  Dkt. 113.

### d. eBay's Refusal to Comply with a Second Court Order, The Preliminary Injunction

The Preliminary Injunction order expressly requires eBay and other companies to provide expedited discovery within ten business days, including Defendants' contact information, financial account information, and sales data:

> [A]ny third party with actual notice of this Order who is providing services for any of the Defendants, or in connection with any of the Defendant Internet Stores or other online marketplace accounts operated by Defendants, including, without limitation, **any online marketplace platforms such as eBay** . . . shall, within ten (10) business days of receipt of this Order, provide to Plaintiffs expedited discovery . . . .

Dkt. 113 ¶ 2 (emphasis added).  The order also requires entities like eBay, upon Plaintiffs' request, to cease providing services for Defendants and remove listings.  *Id.* ¶ 4.

Consistent with this, Plaintiffs issued expedited discovery on eBay on November 25.  *See* Dkt. 128-3.  On December 9, the day before discovery was due, Plaintiffs contacted eBay to see if eBay intended to respond.  *See* Ex. 3 to Nandi Decl., p. 4.  eBay stated that they did not, and the parties agreed to meet and confer.  The day before the meet and confer, eBay sent a long email re-asserting some of its past accusations and adding new ones, including strangely accusing Plaintiffs of "block[ing] the unsealing and continu[ing] to provide redacted information."  *Id.* at p. 2.[6]  The email also expressed eBay's belief that Plaintiffs' motion for preliminary injunction "failed to

---

[6]   The Preliminary Injunction also ordered the unsealing of the case documents.  Dkt. 113 ¶ 8.  On November 24, Plaintiffs' counsel contacted Your Honor's courtroom deputy regarding redacted documents.  *See* Ex. 2 to Nandi Decl.  The Court permitted Plaintiffs to file redacted versions the following week.  eBay's counsel—as well as counsel for appearing defendants— were included on these emails.  As much of the docket is still sealed, Plaintiffs provided eBay with all moving papers for the TRO and Preliminary Injunction on December 15.

address any of the deficiencies" that would "give [eBay] information to substantiate your belief that the [sic] some or all of the eBay sellers are based outside the U.S." *Id.* Finally, the email claimed that all of Plaintiffs' discovery requests "ask for much more than the information identified in paragraphs 2(a)–2(c) in the Order." Plaintiffs and eBay's counsel met and conferred on December 11 and were unable to reach resolution. Because eBay has refused to provide even basic contact information, Plaintiffs have not yet broached the issue of removing the infringing storefronts. *See* Dkt. 113 ¶ 4(a).

eBay filed this motion three days after the meet and confer. The night before this response brief was due, eBay produced one document, its first production in this litigation. *See* Nandi Decl. Ex. 4. eBay's production was limited to contact information for a partial list of Schedule A Defendants (and no Schedule B Defendants), all of whom eBay confirmed were actually foreign based. *Id.* eBay did not provide the requested (and court-ordered) financial or sales information. eBay also refused to provide any information for one Schedule A seller, because, based on that seller's volume of sales, "eBay does not believe it would be appropriate to give plaintiffs any information regarding this seller." *Id.*

## II.   LEGAL ANALYSIS

### a.   Plaintiffs Made the Necessary Showing to Justify the Relief the Court Ordered

Plaintiffs hesitate to re-brief their preliminary injunction motion or the legal analysis from its response to these same issues in eBay's October motions, Dkt. 68. Plaintiffs thus direct the Court to the facts that refute eBay's particular claims. Specifically, eBay argues that Plaintiffs have not shown "asset freeze or store shutdowns as to the 'Schedule B' Defendants are necessary

to prevent irreparable harm to Plaintiffs."[7]  Plaintiffs have demonstrated that: (1) absent an asset freeze, infringing sellers regularly move assets when they learn of enforcement actions like this one, *see* Dkt. 107 ¶¶ 6, 7, 9; (2) in the course of this very case, some defendants on other marketplaces have already fled to eBay's marketplace, *see* Dkt. 107 ¶¶ 6–7; (3) Plaintiffs provided evidence showing that eBay Schedule B Defendants were selling infringing goods, *see* Dkt. 107, Exs. 1–14 (4) some eBay Schedule B Defendants have already flown by night in this case, *see, e.g.,* https://www.ebay.com/str/jcx (Schedule B, Defendant 38); and (5) these evasive actions prevent Plaintiffs from recovering for the harm caused by infringement and preventing further infringement, *see* Dkt. 107 ¶¶ 6, 7, 9.  Oddly, eBay tries to frame this harm as a result of some lack of diligence by Plaintiffs and criticizes Plaintiffs' decision to add additional protections for the Schedule B defendants—which Plaintiffs crafted specifically to address eBay's concerns.  No amount of diligence, however, can solve the underlying problems of which eBay complains: Defendants' contact information is not public, *see* Dkt. 24 ¶¶ 2–3, and Plaintiffs cannot freeze assets, serve Defendants, or send cease and desist letters without eBay producing this information.

### b. eBay's Purported Harm is Speculative and Preventable Through eBay Compliance with the Court's Orders.

eBay misapprehends what the Preliminary Injunction order requires.  Although eBay claims that the order allows for freezing of assets before Plaintiffs obtain expedited discovery, that is untrue because the expedited discovery is a necessary first step before freezing assets.  *Cf.* Dkt. 107 ¶ 9 (noting lack of asset restricting on defendants without contact information).  The order was drafted to avoid the concern which eBay now claims, that Defendants over whom the Court

---

[7]  Oddly, eBay criticizes Plaintiffs slow progress in this case.  *See* Dkt. 128, p. 7 n.4.  But eBay is the reason Plaintiffs have been unable to proceed at a faster pace regarding the eBay-listed Defendants.  *See* Dkt. 106, p.3 & n.1.

lacks personal jurisdiction would have their assets frozen. *See* Dkt. 113 ¶ 3. Plaintiffs made this clear to eBay when submitting expedited discovery by asserting:

> Consistent with that order, for any defendants for whom eBay provides contact information that includes a specific U.S. state, Plaintiffs will search that defendant's name in that state's Secretary of State (or similar agency) website before requesting that any of that defendant's assets are frozen. If through that process Plaintiffs find corporate registration information indicating that the defendant is based in the U.S. but outside of the Northern District of Illinois, Plaintiffs will refrain from requesting that that defendant's assets be frozen absent additional proceedings before the Court.

Dkt. 128-2. eBay never questioned this representation or requested that Plaintiffs take additional steps upon receipt of the expedited discovery, despite Plaintiffs' earlier statement that "[o]ur preference would be to proceed cooperatively rather than through motion practice, and we are willing to work with eBay on the scope of discovery and the order." *See* Nandi Decl. Ex. 1, p. 1.

eBay claims that the order permits three forms of improper relief: providing discovery that Plaintiffs can use to "freeze the assets" of Defendants; "potentially requir[ing] eBay itself to freeze the assets" of Defendants; and "potentially require[ing] eBay to fully shut down" the Defendants' eBay stores. Dkt. 128, p.6. But Plaintiffs have not taken any such actions. To date, Plaintiffs have merely asked eBay for the discovery authorized by the order.[8] Further, before filing for this preliminary injunction, Plaintiffs offered a solution that would have prevented any of these hypothetical harms: eBay could provide Defendants' contact information so that Plaintiffs can

---

[8]   eBay claims that it "does not object" to providing discovery for Schedule A defendants, then claims that three discrete aspects of the expedited discovery requests exceed the Preliminary Injunction order. Dkt. 128, p.6 & n.3. This hides several important facts. First, eBay objected to all of the discovery requests—including aspects seeking basic contact information, basic sales information, and basic account information—and initially refused to provide any documents. See Nandi Decl., Ex. 3, p. 1–2. Second, even when eBay decided to produce a single document—the night before this brief was due, a week after the production deadline per the Court's order—eBay limited its production to contact information and even intentionally excluded that basic information for one of the Schedule A Defendant based on eBay's own evaluation of what court-ordered production was appropriate.

issue cease and desist letters to any U.S.-based ones. Dkt. 106-5, Ex. 2. As Plaintiffs stated, the TRO had already expired (although the discovery requests were issued while a TRO was in place) and no injunction existed at the time; therefore Plaintiffs could not freeze any assets. Yet eBay refused to provide contact information for a single defendant. In any event, the bond Plaintiffs posted exists to cover any harm incurred by Defendants "found to have been wrongfully enjoined or restrained." Fed. R. Civ. Proc. 65(c).

eBay's claim of reputational harm is no less speculative, but even bolder. Despite filing two declarations in this matter from eBay personnel, neither address the burden or harm eBay supposedly faces. *See* Dkt. 57 & 128-6. Not only does eBay effectively demand that this Court refuse to enforce the law because enforcing the law would harm those infringers who refuse to abide by it, but eBay also argues that customers would be less interested in shopping at eBay if eBay's platform is "thin[ned] out" by the removal of the infringing products. Dkt. 128, p. 10.

The authority on which eBay relies underscores the novelty of its argument. eBay cannot cite a single example of a Court providing relief from a preliminary injunction to a third-party who failed to comply with that order, who failed to produce evidence to support its claims of harm, and who had access to all of the information that would resolve the procedural and due process ills of which the movant complained but failed to provide that information beforehand. Most notably, eBay cites a decision from this Court to argue that the Order is disproportionate and inequitable. *See E-Link Tech. Co. v. Shenzhen Uni-Sun Elecs. Co.*, No. 20 C 00247, 2020 U.S. Dist. LEXIS 122771 (N.D. Ill. May 14, 2020). Like the instant case, that case involved hoverboard manufacturers obtaining *ex parte* injunctive relief against sales of infringing patents on online marketplaces. Despite eBay's reliance on it, the *E-Link* Court denied the defendant's motion to dissolve the preliminary injunction. *See id.* at *8–11.

12

      **c.  eBay Created the Very Problem of Which It Now Complains by Refusing to Provide *Any* Discovery in Response to this Court's Orders.**

In order to obtain relief from a preliminary injunction order, the movant must demonstrate that the Court committed a manifest error of law or fact or that newly discovered evidence has been obtained. *See FTC v. Image Sales & Consultants*, Case No. 1:97-CV-131, 1997 U.S. Dist. LEXIS 17117, at *7 (N.D. Ind. Sept. 12, 1997). On the latter point, eBay must show that the "evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence [during the pendency of the motion]." *Id.* at *7–8, *citing Engelhard Indus., Inc. v. Research Instrumental Corp.*, 324 F.2d 347, 352 (9th Cir. 1963) (alteration in original). Here, eBay does not identify any "manifest error" of law or fact, and eBay fails to explain why it did not produce earlier the evidence to which it has been alluding since its October motion, and why it still has not done so.

Regarding personal jurisdiction and venue, Dkt. 128 pp. 12–15, eBay is effectively exploiting a Catch-22 it created: Plaintiffs cannot accurately ascertain Defendants' true locations because Plaintiffs cannot request discovery from eBay, but Plaintiffs cannot request discovery from eBay because Plaintiffs are allegedly wrong about where Defendants are located. eBay still has not provided any proof that any of the defendants are improperly venued. Instead, eBay re-submitted a declaration nearly identical to the one it submitted two months ago, *compare* Dkt. 57 *and* Dkt. 128-6,[9] but somehow blames the "short time available" for the lack of actual facts in

---

[9]   The December declaration even keeps on the cover page the name of the Judge to whom this case was originally assigned. In both declarations, eBay relies on no incorporation documentation, but instead on the unverified addresses some Defendants have supplied to eBay and addresses from which some Defendants have shipped in the past. eBay never represents that these sellers have a single employee in the United States or have any assets here. The facts are consistent with—and perhaps most likely show—these sellers merely leasing storage units in the United States, which are pass-through locations for the infringing goods.

support of its position, *see* Dkt. 128 p. 9. eBay could have resolved the complaints it raises now *before* the preliminary injunction hearing by (1) filing the documentary proof it has supposedly had for months and allowing the Court to consider that proof when evaluating Plaintiffs' motion for preliminary injunction; or (2) supplying this information to Plaintiffs as ordered by the Court, thus requiring Plaintiffs to drop these defendants in order to certify their moving papers. Alternatively, eBay could have supplied this information *now*, so that the Defendants could appear before the Court to defend themselves and obtain dismissal if improperly joined. Any of these routes would have been more efficient than weeks of eBay's non-compliance with Court orders.

### d. Granting eBay's Motion Creates a Dangerous Precedent

As the above facts show, eBay seems to believe that compliance with this Court's order is optional. eBay believes it should independently satisfy itself that the Court's order accounts for all of its quibbles before eBay will even consider producing discovery to Plaintiffs, and even then eBay will only comply with the order to the extent eBay unilaterally deems appropriate. The "Court of eBay," however, lacks appellate jurisdiction over the Northern District of Illinois. eBay's attacks on Plaintiffs' diligence are mere distraction. Although Plaintiffs responded to eBay's initial document demands, and Plaintiffs even crafted a preliminary injunction order specifically to address eBay's claimed concerns, it is clear now that eBay's growing list of demands and refusal to produce basis discovery were merely a delay tactic.

eBay's conduct leaves Plaintiffs with intellectual property rights in name only, lacking a remedy. eBay already has a reputation for being less cooperative in stopping infringers than other online marketplace platforms. *See* Ganda Suthivarakom, *Welcome to the Era of Fake Products*, Wirecutter (Feb. 11, 2020), https://www.nytimes.com/wirecutter/blog/amazon-counterfeit-fake-products/. In the course of this litigation—as eBay has obfuscated and other marketplaces have

14

cooperated—stores have fled those cooperating marketplaces for the safe haven of eBay. Dkt. 107 ¶¶ 6–7. eBay and other online marketplaces are largely insulated from direct suits alleging infringement. *See Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010). Yet eBay holds all of the cards. Plaintiffs do not have the contact information for Defendants, but eBay does. If eBay refuses to provide that information, Plaintiffs have no means of stopping the infringement, the irreparable harm to Plaintiffs continues, and Plaintiffs' intellectual property rights erode.

Plaintiffs can only speculate as to why eBay has taken the approach it has, by refusing to comply with two court orders, moving the court *after* the compliance deadline had passed for relief, and rejecting Plaintiffs proposal six weeks ago that would have addressed all of eBay's claimed concerns. Plaintiffs fear that eBay is trying to use the situation it created to try to force Plaintiffs to forfeit their bond or otherwise use a modified order as a sword. The *in terrorem* effect of such acts on future plaintiffs attempting to enforce their intellectual property rights against the known offender eBay is significant. At minimum, eBay's two months of non-compliance with requests for even basic contact information suggests that eBay would use a new order as a shield, creating more opportunities for delay and dispute, thus allowing eBay's customers to continue selling infringing products. Plaintiffs thus respectfully request that the Court hold eBay to the Order.

## CONCLUSION

Because eBay's non-compliance with court orders was illegitimate, this Court should deny eBay's motion and require eBay to comply in full with the preliminary injunction order, including providing all discovery immediately. Continued non-compliance should be grounds for contempt.

Date:   December 18, 2020

Respectfully Submitted,
LOEB & LOEB LLP

By:      /s/ Adam Kelly
Adam Kelly
Doug Masters
Arthur Yuan
Neil Nandi
321 North Clark Street, Suite 2300
Chicago, Illinois  60654
Tel.: 312-464-3100
Email:  akelly@loeb.com
Email:  dmasters@loeb.com
Email:  ayuan@loeb.com
Email:  nnandi@loeb.com

Christopher Binns (admitted *pro hac vice*)
LOEB & LOEB LLP
345 Park Avenue
New York, New York 10154
Tel.:  (212) 407-4000
Email:  cbinns@loeb.com
*Attorneys for Plaintiffs*