**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HANGZHOU CHIC INTELLIGENT TECHNOLOGY CO., LTD., and UNICORN GLOBAL, INC., | ) ) ) ) | Case No. 1:20-cv-04806 |
| Plaintiff, | ) ) | Hon. Thomas M. Durkin |
| v. | ) ) | |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, | ) ) ) ) | |
| Defendants. | | |

**MOVING DEFENDANT'S OPPOSED MOTION TO DISMISS PLAINTIFFS'**
**THIRD AMENDED COMPLAINT WITH PREJUDICE**

Defendant Dongguan Saibotan Nengyuan Keji Co., Ltd., doing business under Amazon Seller ID "GYROOR US" ("Moving Defendant"), pursuant to Fed. R. Civ. P. 12(b)(2), (4), and (5), respectfully seeks dismissal of Plaintiffs' Third Amended Complaint [D.E. #101] with prejudice. Plaintiffs oppose Moving Defendant's Motion to Dismiss. In support of its motion, Moving Defendant states as follows:

## I.       INTRODUCTION

Dismissal is proper because Moving Defendant has not been properly served with process as required by applicable law under the Hague Service Convention, and even assuming that the means of service was proper, which it is not, the process itself is fatally deficient. There is an internationally agreed means of service between the United States and China as set forth in the Hague Service Convention. Plaintiffs' method of e-mail service is prohibited under the Hague Service Convention. *See, Luxottica Group S.p.A. & Oakley, Inc. vs. The Partnerships, et al.*, 391 F. Supp. 3d 816 (N.D. Ill. 2019); Memorandum Opinion and Order on Defendants' Motion to Dismiss [D.E. #131], pp. 13-14.

## II.     <u>ARGUMENT</u>

### A.     LEGAL STANDARD

Every defendant must be served with a copy of the complaint and summons in accordance with Rule 4. Fed. R. Civ. P. 4(b), 4(c)(1). Only proper service vests a district court with personal jurisdiction over a defendant. *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011).

The Patent Act does not authorize nationwide, much less worldwide service of process. As such, "the plaintiff bears the burden to demonstrate that the district court has jurisdiction over each defendant through effective service." *Id.*, citing *Homer v. Jones–Bey*, 415 F.3d 748, 754 (7th Cir. 2005). As a matter of law, "actual knowledge of the existence of a lawsuit is insufficient to confer personal jurisdiction over a defendant in the absence of valid service of process." *Mid-Continent Wood Prods., Inc. v. Harris*, 936 F.2d 297, 301 (7th Cir. 1991).

Moving Defendant moves to dismiss this action under Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5). A Rule 12(b)(4) motion challenges the *form* of the process; it tests matters such as whether the summons bore the seal of the court, was signed, or was addressed to the proper party. *See, e.g., O'Brien v. O'Brien & Assoc., Inc.*, 998 F.2d 1394, 1399–1400 (7th Cir. 1993). In contrast, Rule 12(b)(5) challenges the sufficiency of the *manner* in which the process was served. Because motions under both rules ultimately test the court's personal jurisdiction over the defendant, the same standards govern motions under both rules. *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 767 F. Supp. 2d 880, 881 n.5 (N.D. Ill. 2011).

### B.     DEFENDANT WAS IMPROPERLY SERVED WITH DEFICIENT PROCESS.

Federal Rule of Civil Procedure 4(f) governs[1] service of a corporation not at a place within the United States. Moving Defendant is a Chinese corporation with no physical presence

---

[1] Rule 4(f)(2) generally authorizes service "by a method that is reasonably calculated to give notice" in instances where "there is no internationally agreed means". However, as discussed in this memorandum, here there is an internationally agreed upon means of service between the United States and China as set forth in the Hague Service Convention. Furthermore, Plaintiff's method of e-mail service fails to comply with Fed. R. Civ. P. 4(3) because it is prohibited by international agreement.

in the United States[2]. Fed. R. Civ. P. 4(h)(2). Rule 4(f) authorizes two methods of service at issue here. First, service may be made "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention . . . ." Fed. R. Civ. P. 4(f)(1). Second, Rule 4(f)(3) authorizes service "by other means not prohibited by international agreement, as the court orders." Moving Defendant argues that the Temporary Restraining Order entered in this case did not comply with Rule 4(f)(3) because the Hague Service Convention prohibits e-mail service.

Both the United States and China are signatories to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638 (the "Hague Service Convention"). The Hague Service Convention has the force of federal law and limits available methods of service under Fed. R. Civ. P. 4(f)(3). Intended to simplify and standardize serving process abroad, the Hague Service Convention "specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies." *Water Splash, Inc. v. Men*on, 137 S. Ct. 1504, 1507 (2017) (quoting *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988) (noting that "compliance with the Convention is mandatory in all cases to which it applies.")); *see also Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004); *Ackermann v. Levine*, 788 F.2d 830, 838 (2nd Cir. 1986)). The "primary innovation" of the Convention is the requirement that each member nation designate a central authority to receive service of process. *Schlunk*, 486 U.S. at 698.

The Convention authorizes service by certain other means, but it does not speak explicitly to service by email and other electronic means. *See Water Splash,* 137 S. Ct. at 1508 (discussing means of service authorized by the Convention). Federal trial courts are divided[3] over whether

---

[2] Plaintiff does not dispute that "Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions", Third Amended Compl., ¶9, p.4 [D.E. #101] and that GYROOR US is included on Schedule A, which provides: "Schedule A Defendants do not have substantial contacts within the United States and are foreign entities operating Defendants Internet Stores and selling Infringing Products", Third Amended Compl., ¶10, p.4 [D.E. #101]; See Schedule A, Third Amended Compl., at p. 2 [D.E. #101]

[3] *See generally* Michael A. Rosenhouse, Annotation, *Permissibility of Effectuating Service of Process by Email Between Parties to Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, 14 A.L.R. Fed. 3d Art. 8 (West 2019).

the Convention limits their authority to authorize service of process by email[4]. Before reaching that question, however, the court must be sure that the Hague Service Convention applies, a matter plaintiff appears to contest. *Schlunk*, 486 U.S. at 698. Mem. Motion for Electronic Service of Process [D.E. #23] at p. 2 ("plaintiffs are not required to first attempt service through the Hague Convention.").

### 1. The Hague Service Convention is Clearly Applicable.

The United States and China have both acceded to the terms of the Hague Service Convention. The court looks to Article 1 to determine whether the Hague Service Convention applies. *Schlunk*, 486 U.S. at 699. Article 1 specifies the Hague Service Convention's scope. The first sentence states the "Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." *Id.* (quoting Article 1 of the Hague Service Convention, 20 U.S.T. at 362). Article 1 further states the Hague Service Convention does not apply "where the address of the person to be served with the document is not known." Art. 1, 20 U.S.T. at 362.

In their Third Amended Complaint, Plaintiffs allege "Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions", Third Amended Compl., ¶9, p.4 [D.E. #101]." Interestingly, in support of its Motion for Electronic Service of Process, Plaintiffs took the position without any factual basis or support that "Electronic service is appropriate here because foreign internet store operators offering for sale and selling infringing products typically: (1) provide incomplete and/or false names and physical address information to conceal their locations and to avoid liability for their unlawful conduct; and (2) primarily rely on electronic communications to communicate with third party service providers and customers, demonstrating the reliability of the proposed method of service." Mem. Motion for Electronic Service of Process [D.E. #23] at p. 2. Plaintiffs' counsel Arthur Tan-Chi Yuan's declaration supporting the Motion for Electronic Service of Process also conclusorily stated "Generally, when an e-commerce stores that offer for sale or sell infringing products lists a physical address, it is likely illegitimate. E-mail is a reliable mechanism for providing notice to e-commerce

---

[4] This Court need not search long for recent persuasive authority finding that service of process by email is unlawful and ineffective under the Hague Service Convention against similarly situated corporate defendants from China. *Luxottica Group S.p.A.,* (ND Ill. May 24, 2019), Memorandum Opinion and Order on Defendants' Motion to Dismiss, pp. 10-14**.**

stores." Yuan Dec. [D.E. #24] at ¶ 3. Plaintiffs also generalize that Defendants may "often use multiple fictitious names and addresses to register and operate their network of online marketplace accounts…" Lei Decl., ¶10, p. 10 [D.E. # 114].

Plaintiffs' so-called "evidence" is devoid of any specificity or foundation and is nothing more than generalizations based on speculation, not *facts*. Critically, the Plaintiffs have not established the existence of the foundational prerequisite *fact* that Defendant's address is incorrect or that attorney Yuan or Lei had any factual basis for making the cited statement against **this** Moving Defendant. Plaintiffs have not not satisfied their burden of coming forward with any evidence of what if any due diligence Plaintiffs or their counsel performed with respect to the accuracy of **this** Moving Defendant's address information. As discussed in detail below, Moving Defendant's correct address is clearly identified and publicly accessible from the "GYROOR US" Amazon storefront. In this regard, the portions of the Yuan and Lei Declarations cited above are therefore irrelevant, inadmissible, and appropriately stricken under F.R.E. 104(a)-(b), 602, 802.

Courts have interpreted the second sentence of Article 1 consistently. A plaintiff cannot close its eyes to the obvious to avoid the Hague Service Convention; the plaintiff must make reasonably diligent efforts to learn a defendant's mailing address. *See, e.g., Advanced Access Content Sys. Licensing Admin., LLC v. Shen*, 2018 WL 4757939, at *4–5 (S.D.N.Y. Sept. 30, 2018); *Progressive Se. Ins. Co. v. J & P Transp.*, 2011 WL 2672565, at *3 (N.D. Ind. July 8, 2011) (citing *Opella v. Rullan*, 2011 WL 2600707, at *5 (S.D. Fla. June 29, 2011)); *Compass Bank v. Katz*, 287 F.R.D. 392, 394–95 (S.D. Tex. 2012) (collecting and discussing cases).

In this case, at the time they filed their original Complaint, Plaintiffs made no effort to determine the accuracy of the address information provided on Moving Defendant's storefront at "GYROOR US". When asked to specifically identify what, if any, due diligence was done to determine what Defendant's correct address was or whether the address for Moving Defendant on its "GYROOR US" storefront was correct, Plaintiffs' counsel refused to respond to the question. *See* Vegh Decl, ¶2. On December 30, 2020, in response to Plaintiffs' counsel providing certain documents filed under seal via email, Defendant's owner representative confirmed Defendant would need to be served pursuant to the Hague Service Convention[5] at its

---

[5] Amazingly, Plaintiff even failed to comply with the requirements set forth in this Court's December 23, 2020 Modified Preliminary Injunction Order, at ¶8. In particular, Plaintiff did **not** include the

address of No. 1 Feida Rd. Building A, 2F, Zhangyang District, Zhangmutou Town, Guangdong, China 523637. *See* Rongqing Decl, ¶14 and Ex. E attached thereto. As discussed in further detail below, the address provided by Moving Defendant and the address on "Feida Road" from Defendant's Amazon Storefront identify the exact same location. *See* Rongqing Decl., ¶¶5-6, 13-14, Exs. "A", "E", filed concurrently herewith.

This is not a case "where the address of the person to be served with the document is not known". To the contrary, Moving Defendant's address was readily accessible to Plaintiffs and their counsel even before Amazon provided it to Plaintiffs in response to expedited discovery. Having this important basic information, Plaintiffs still refused to conduct the most basic investigation or make any effort to confirm whether Moving Defendant's publicly disclosed address was correct. Rather, Plaintiffs and their counsel chose to remain willfully blind of Moving Defendant's location so that they could argue the Hague Service Convention should not apply. The old adage "ignorance is bliss" comes to mind. Had Plaintiffs bothered to engage in even the most minimal due diligence, they would have been able to easily establish from Defendant's "GYROOR US" Amazon storefront that the correct address for service of process on Dongguan Saibotan Nengyuan Keji Co., Ltd. was "No. 1 Feida Rd. Building A, 2F, Zhangyang District, Zhangmutou Town, Guangdong, China 523637." Rongqing Dec., ¶¶5-6, Ex. A.

It was readily confirmable that the "Feida Rd." address identified on the "GYROOR US" Amazon Storefront page identically matched other publicly accessible information for Moving Defendant's address. A quick look at Baidu.com, a popular search engine in China, reveals that after entering the first few transliterated characters of Moving Defendant's company name into the Baidu.com search box automatically returns a suggested search term of "东莞市赛博坦能源科技有限公司," which is Moving Defendant's company name in Chinese. Rongqing Dec., ¶¶7-8, Ex. B[6]. Exhibit "C" is a true and correct screenshot of the first five (5) search results generated by Baidu.com when clicking through the suggested search term of Exhibit "B." Moving Defendant's address at "No. 1 Feida Rd. Building A, 2F, Zhangyang

---

"CHEAPAANZEE" Summons with the documents it purportedly "served" on Moving Defendant via email on December 29, 2020. See December 23, 2020 Modified Preliminary Injunction Order, at ¶8. [D.E. # 147]. As such, in the absence of the Court's issued Summons, the "form" of Plaintiffs' "service" does not pass must under Federal Rules of Civil Procedure 12(b)(4) and Moving Defendant's Motion to Dismiss should be granted on this ground alone. See Vegh Decl., ¶3, Ex. "A".
[6] A certified translation of Exhibit "B" also accompanies Mr. Rongqing's Declaration.

District, Zhangmutou Town" is shown in no less than three (3) of the first five (5) search results in Baidu.com. A fourth search result displays a truncated portion of Moving Defendant's address. Rongqing Dec., ¶¶9-10, Ex. C[7].

On or about December 29, 2020, Plaintiffs' attorney Christopher Binns emailed Moving Defendant at ctd2020@outlook.com (the identical email address provided by Moving Defendant when it opened up the "GYROOR US" Amazon storefront) a communication enclosing various legal documents, including the Third Amended Complaint filed in this case. It is noteworthy that at no point prior to this email, nor in Binns' email itself, did Plaintiffs or anyone purporting to represent Plaintiffs request address information from Moving Defendant for purposes of complying with the Hague Service Convention, notwithstanding the fact that Moving Defendant's address was publicly accessible on the internet. Rongqing Dec., ¶¶11-12, Ex. D. Mr. Binns email also did not include a Summons issued in this matter for Moving Defendant's appearance.

On or about December 30, 2020, Moving Defendant confirmed the address where Plaintiffs would need to effectuate service in compliance with the Hague Service Convention. *See* Rongqing Dec., ¶¶14-15, Ex. E. This is the identical address to that identified on Defendant's "GYROOR US" storefront. Rongqing Dec., ¶¶5-6, Ex. A. This begs the question, why despite all the publicly accessible evidence of Moving Defendant's correct address did Plaintiffs not perform ***any*** investigation to confirm the veracity of this information. A search on Moving Defendant's "GYROOR US" storefront, alone or in combination with a confirmatory search on Baidu.com, or even a simple outreach to Moving Defendant itself would have been the bare minimum of reasonable diligence that Plaintiffs and their counsel could have done – instead they chose to do nothing.

A generalized suspicion about an address's validity does not make it "unknown" under the Hague Service Convention. Once a plaintiff learns of a defendant's purported mailing address, courts require specific proof of a "reasonable investigation" of the address's validity before finding that it is "unknown" under Article 1. *Advanced Access*, 2018 WL 4757939, at *5 (citations omitted); *see also Shenzhen Ruobilin Network Tech., Ltd. v. SJG-Lesn*, 2016 WL 6988868, at *1 (W.D. Wis. Nov. 29, 2016); *Blumedia Inc. v. Sordid Ones BV*, 2011 WL 42296, at *2 (D. Colo. Jan. 6, 2011); *Katz*, 287 F.R.D at 395–96; *Progressive Se. Ins. Co.*, 2011 WL

---

[7] A certified translation of Exhibit "C" also accompanies Mr. Rongqing's Declaration.

2672565, at \*2–3. By way of contrast, a Chinese address has been found to be unknown where the plaintiff hired an investigator in China to determine whether physical addresses associated with domain names were valid and found them to be not so. *Chanel, Inc. v. Song Xu*, 2010 WL 396357, at \*1, \*3 (W.D. Tenn. Jan. 27, 2010); *see also BP Prods. N. Am., Inc. v. Dagra*, 232 F.R.D. 263, 264 (E.D. Va. 2005).

Neither Plaintiffs nor their counsel can point to any evidence showing that they made any effort, let alone conduct reasonable due diligence, to determine whether they had a correct address for the Moving Defendant.[8] In fact, nowhere in his Declaration does Mr. Yuan state that specifically Moving Defendant's address is unknown, instead only stating that "Generally, when an e-commerce stores that offer for sale or sell infringing products lists a physical address, it is likely illegitimate." Yuan Dec. [D.E. #24] at ¶ ¶2-3. As discussed above, clearly Moving Defendant's address was known and Plaintiffs' counsel, with a brief review of publicly available information or by asking Moving Defendant directly, could have confirmed it to be correct. Therefore, Plaintiffs have failed to carry their burden to show that Moving Defendant's address was unknown. Consequently, the Hague Service Convention absolutely applies in this case.

### 2. Service by Email is Inconsistent with the Hague Service Convention and the Internal Laws of China.

The authority to order alternative service exercised in ¶8 of this Court's Modified Preliminary Injunction Order of December 23, 2020 would derive from Rule 4(f)(3). The rule permits service "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). To decide whether ¶8 of the Modified Preliminary Injunction Order was proper, the Court must examine whether the Hague Service Convention prohibits service by email or posting via web page electronic publication.[9]

---

[8] It is more than a bit disingenuous for Plaintiffs' counsel to conclusorily state "Electronic service is appropriate here because foreign internet store operators offering for sale and selling infringing products typically: (1) provide incomplete and/or false names and physical address information to conceal their locations and to avoid liability for their unlawful conduct…" Mem. Motion for Electronic Service of Process [D.E. #23] at p. 2; Yuan Dec. [D.E. #24] at ¶ ¶2-3. Rather, it would appear that Mr. Yuan and other Plaintiffs' counsel were not interested in confirming Moving Defendant's physical address so as to skirt the requirements of the Hague Service Convention.

[9] Plaintiffs' counsel conclusorily alleged in support of the Temporary Restraining Order that he had reviewed the terms of the Hague Service Convention and concluded that it does not preclude service by email. Yuan Dec. [D.E. #24] at ¶ 3. Apparently, Mr. Yuan suggests that the Convention's text does not

The Supreme Court has stated that the drafters of the Hague Service Convention intended to prohibit a method of service not mentioned in its text. The Court took a broad view of the Convention in 1988, holding that it "pre-empts inconsistent methods of service . . . [wherever] it applies." *Schlunk*, *supra*, 486 U.S. at 699. The court reaffirmed that holding, quoting this language verbatim, in 2017. *Water Splash*, 137 S. Ct. at 1507. Indeed, Article 19 "clarifies" the scope of this preemption by providing that the Convention does not preempt signatories' internal laws permitting service by methods the Convention does not allow. *Id.* at 1508. The Court discussed one such non-enumerated method in *Schlunk* where it explained that the drafting history of the Convention demonstrated that the delegates wished to prohibit a method of service then allowed in some civil law countries called notification au parquet. *See Schlunk*, 486 U.S. at 703; *see also id.* at 709–10 &n.1 (Brennan, J.) (concurring in the judgment). Concluding that "[t]here is no question but that the Conference wanted to eliminate notification au parquet," the court pointed to Articles 15 and 16, which do not mention that or any other method of service. *See id.* at 703. As this example shows, the absence of express language prohibiting service by email or any other unlisted means in the Hague Service Convention is not dispositive. The inquiry must be whether email is inconsistent with the service methods the Convention allows.[5]

The Hague Convention permits service only by the following means: via a central authority (Articles 2-7), diplomatic and consular agents (Articles 8-9), mail or through a judicial official of the State of destination if the destination State does not object (Article 10), methods allowed by other applicable international agreement (Article 11), and other means as allowed by the internal laws of the destination State (Article 19). *See Water Splash Inc.*, 137 S. Ct. at 1508 (reviewing permitted service methods). "The legal sufficiency of a formal delivery of documents must be measured against some standard. The Convention does not prescribe a standard, so we almost necessarily must refer to the internal law of the forum state." *Schlunk*, 486 U.S. at 700.

China's formal objection addresses all forms and methods of service identified under Article 10, including service by mail ("postal channels").[10] Courts generally approach the

---

explicitly prohibit email service. While this may be technically true, the issue before this Court is whether the Convention's textual silence on a method of service leaves this court free to authorize service by that method.

[10] *See* Official Website of the Hague Conference on Private International Law, https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=393&disp=resdn (reprinting China's formal opposition to "the service of documents in the territory of the People's Republic of China by the methods provided by Article 10 of the Convention"); *see also Mapping Your*

problem of email service through the prism of Article 10(a). Article 10(a) says that "[p]rovided the State of destination does not object, the present Convention shall not interfere with . . . the freedom to send judicial documents, by postal channels, directly to persons abroad." 20 U.S.T. at 361. Typical of a line of cases is the decision in *Elobied v. Baylock*, 299 F.R.D. 105, 108 (E.D. Pa. 2014). In that case, Switzerland lodged an Article 10(a) objection "oppos[ing] the use in its territory of the methods of transmission provided for" in Article 10 (*viz.,* postal channels). *Id. Elobied* interpreted this objection as prohibiting service by postal and electronic mail. *Id.*

This court should find, as District Judge Joan B. Gottschall recently did in *Luxottica Group S.p.A. v. The Partnership and Unincorporated Associations Identified on Schedule "A"*, Case No. 18 CV 2188 (ND Ill. May 24, 2019), Memorandum Opinion and Order on Defendants' Motion to Dismiss (D.E. 131], that Rule 10(a) objections preclude service by email. Because email would bypass the methods of service the Hague Convention authorizes, the Convention preempts it as inconsistent. *See Schlunk*, 486 U.S. at 698. Suppose, as several cases conclude, that Article 10(a) treats email as a type of postal channel. If Article 10(a) uses language broad enough to reach email, it is difficult to see why an objection using Article 10(a)'s language should be given equal breadth. *See Elobied*, 299 F.R.D. at 108; *Mapping Your Future, Inc. v. Mapping Your Future Servs., Ltd.*, 266 F.R.D. 305, 308 (D.S.D. 2009). China's objections are substantially in the form of objections which courts have determined prevent service by email. S*ee Elobied*, 299 F.R.D. at 108; Germany, *see Agha v. Jacobs*, 2008 WL 2051061, at *1–2 (N.D. Cal. May 13, 2008); and Mexico, *see Katz*, 287 F.R.D. at 396–97. China's objections likewise preclude email service. *See also Jian Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 515 n.2 (S.D.N.Y. 2013) (dictum suggesting that email service is not permissible in China). Accordingly, the Hague Service Convention also prohibits service by e-mail in this case.[11]

Likewise, email service is not permitted under Article 19, because China's internal laws prohibit serving process by e-mail, and prohibit service by website publication unless a plaintiff

---

*Future, Inc. v. Mapping Your Future Services, Ltd.*, 226 F.R.D. 305, 308 (D.S.D. 2009) ("[T]he court finds that sending a copy of a summons and complaint by [electronic] mail to a defendant in a foreign country is not a method of service of process permitted by the Hague Convention."). China's formal objection has been held valid. *See DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280 (3d Cir. 1981), *cert. den.*, 454 U.S. 1085.

[11] Article 11 of the Hague Convention is inapplicable here because the United States and China have not entered into any other treaty concerning the service of process. Plaintiffs' method of service also clearly does not fall under the scope of Articles 2-9 (*i.e.*, service by a central authority or by consular agents).

has exhausted other means of service. *See* Art. 87 & Art. 92, Civil Procedural Law of the People's Republic of China (2017 Am.) ("P.R.C. Civil Procedure Law").[12]  Article 277 of the P.R.C. Civil Procedure Law is dispositive of the issue of prohibiting email service under China's internal laws.  It states "*no foreign* [non-P.R.C.] *agency or individual may serve documents . . . within the territory of the People's Republic of China without the consent of the in-charge authorities of the People's Republic of China.*" *Id.* at Art. 277 (emphasis added); *Rockefeller Tech. Investments (Asia) VII v. Changzhou Sinotype Tech. Co., Ltd.*, 233 Cal. Rptr. 3d 814, 826 (Ct. App. 2018) (quoting the same Article under its prerevision numbering [Article 261] with approval and taking judicial notice of the Article).  Plaintiffs' unilateral attempt in this case to serve process in a foreign civil proceeding on the Moving Defendant in China by direct e-mail – without the consent of appropriate local authorities in the P.R.C. – amounts to precisely the type of "self-help" by a foreign party that Article 277 of the P.R.C. Civil Procedure Law would categorically prohibit.[13]

     "[T]he validity of service of a document abroad through postal channels depends first on the law of the forum. This is clearly confirmed by the history of the Convention negotiations . . . ." *Caterpillar Inc. v. Brington Indus. Ltd.*, 112CV01185SLDJAG, 2013 WL 11239258, at *4 (C.D. Ill. Sept. 27, 2013).[14]  "[I]n permitting the utilization of postal channels provided the State of destination does not object, the draft convention did not intend to pass on the validity of this mode of transmission under the law of the forum state: *in order for the postal channel to be utilized, it is necessary that it be authorized by the law of the forum state.*" *Id.* at * 4-5 (emphasis added) (quoting 1 Bruno A. Ristau, *International Judicial Assistance* § 4-3-5 205 (rev. 2000)); *Brockmeyer v. May*, 383 F.3d at 804 (same). Therefore, Plaintiffs' method of service is

---

[12] 中华人民共和国民事诉讼法(1991 年 4 月 9 日第七届全国人民代表大会第四次会议通过 根据2017 年6 月27

日第十二届全国人民代表大会常务委员会第二十八次会议《关于修改〈中华人民共和国民事诉讼法〉和〈中华人民共和国行政诉讼法〉的决定》第三次修正)。Accessible in original form on the official website of the National People's Congress of the People's Republic of China, http://www.npc.gov.cn/npc/xinwen/2017- 6/29/content_2024892.htm.

[13] Plaintiffs' counsel Yuan does not offer and can offer no legal basis under Chinese law , particularly in view of Article 277, as to how and when "a document can be served by fax or email in certain circumstances" **without** the consent of appropriate local authorities in the P.R.C.  Yuan Dec. [D.E. #24] at ¶ 5.  Needless to say, in this case no such consent has occurred.

[14] Quoting with approval Conclusions and Recommendations Adopted by the Special Commission on the Practical Operation of the Hague Apostille, Evidence and Service Conventions at 55 (Oct. 28 –Nov.4, 2003); Practical Handbook 202 (2006).

prohibited by the Hague Service Convention, and it is insufficient under Fed. R. Civ. P. 4(f)(3) and 12(b)(5).[15]

### III. CONCLUSION

Paragraph 9 of the Modified Preliminary Injunction of December 23, 2020 does not withstand scrutiny under full adversary briefing. Moving Defendant has not been served with process in compliance with the Hague Service Convention. Therefore, Moving Defendant's motion to dismiss Plaintiffs' Third Amended Complaint should be granted with prejudice and the preliminary injunction entered by the Court against this Moving Defendant should be vacated immediately and completely.

Dated: January 19, 2021

Respectfully submitted,

**Dongguan Saibotan Nengyuan Keji Co., Ltd.**

By: /s/ *Danielle S. McKinley*
One of its Attorneys

Stephen Z. Vegh
VEGH IP LEGAL
Admitted *Pro Hac Vice*
svegh@veghlaw.com
1240 Rosecrans Ave. Ste. 120
Manhattan Beach, CA 90266
310-980-7440

Danielle S. McKinley
RM PARTNERS LAW LLC
dmckinley@rmpartnerslaw.com
305 N. Peoria, Ste. 200
Chicago, IL 60607
312-251-2292

---

[15] Under the Hague Convention's framework, China officially requires that "all documents and evidence to be served [in the P.R.C.] must be written in Chinese or that a translation in Chinese be attached thereto, unless there are contrary prescriptions in the mutual treaties between China and other Contracting States of the Hague Convention." Hague Conference on Private International Law, China – Central Authority & Practical Information, https://www.hcch.net/en/states/authorities/details3/?aid=243. None of the documents purportedly served by the Plaintiff were written in Chinese, or contained any attached translation in Chinese. Vegh Decl., ¶3, Ex. "A". Thus, even assuming proper service (which has not occurred here), the process itself is defective and/or insufficient under Fed. R. Civ. P. 12(b)(4).

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFTY that on this 19th day of January 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

By: _/s/ Danielle S. McKinley_____
Danielle S. McKinley