**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HANGZHOU CHIC INTELLIGENT TECHNOLOGY CO., LTD., and UNICORN GLOBAL, INC., | ) ) ) ) | Case No. 1:20-cv-04806 |
| Plaintiff, | ) ) | Hon. Thomas M. Durkin |
| v. | ) ) ) | |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, | ) ) ) ) | |
| Defendants. | | |

**MOVING DEFENDANT DONGGUAN SAIBOTAN NENGYUAN KEJI CO, LTD.,
DONGGUAN DONGXIN BAOZHUANG ZHIPIN CO., LTD., SHENZHEN
TIANCHENG HONGTAI ELECTRONIC CO., LTD., SHENZHEN YINGGUANG
ZHINENG TECH. CO., LTD'S REPLY SUPPORTING MOTION TO DISMISS
THE THIRD AMENDED COMPLAINT WITH PREJUDICE**

Defendants Dongguan Saibotan Nengyuan Keji Co. Ltd, doing business under Amazon Seller ID "GYROOR US" (hereinafter the "Saibotan Moving Defendant"), Dongguan Dongxin Baozhuang Zhipin Co., Ltd. (hereinafter "Zhipin") doing business under Amazon Seller ID "Tomoloo DX", Shenzhen Tiancheng Hongtai Electronic Co. Ltd. doing business under Amazon Seller ID "Tomoloo TC" (hereinafter "Hongtai"), and Shenzhen Yingguang Zhineng Tech. Co. Ltd. doing business under Amazon Seller ID "Tomoloo Flagship" (hereinafter "Zhineng") (the "Tomoloo" Defendants collectively are hereinafter referred to as the "Tomoloo Moving Defendants"), (the Saibotan Moving Defendant and the Tomoloo Moving Defendants collectively are referred to herein as the "Moving Defendants"), reply as follows to Plaintiffs' Opposition to Moving Defendants' Motion to Dismiss the Third Amended Complaint:

The case law is clear, Plaintiffs' willful blindness to the known address of these Moving Defendants does not provide absolution from the requirements of Article 1 of the Hague Service Convention. *See, e.g., Advanced Access Content Sys. Licensing Admin.,*

*LLC v. Shen*, 2018 WL 4757939, at *4–5 (S.D.N.Y. Sept. 30, 2018); *Progressive Se. Ins. Co. v. J & P Transp.*, 2011 WL 2672565, at *3 (N.D. Ind. July 8, 2011) (citing *Opella v. Rullan*, 2011 WL 2600707, at *5 (S.D. Fla. June 29, 2011)); *Compass Bank v. Katz*, 287 F.R.D. 392, 394–95 (S.D. Tex. 2012) (collecting and discussing cases). Plaintiffs spend considerable time extolling the virtues of email service. But their refusal to conduct even the *most basic, bare minimum* in due diligence under Ar. 1 of the Hague Service Convention is fatal to their claim that the treaty does not apply. By extension, it also dooms their argument that service by email is not "prohibited by international agreements" under Fed.R.Civ. P. 4(f) because the framework of the Hague Service Convention itself prohibits service of process by email on these Chinese foreign defendants.

Plaintiffs intentionally ignored the **known and readily confirmable addresses of Moving Defendants** as identified on Amazon storefronts. Apparently, Plaintiffs could not be bothered with confirming the accuracy of these addresses and treated the requirements of the Hague Service Convention as an inconvenience. Plaintiffs now seek to bootstrap the case to this Court's earlier decisions regarding the application of the Hague Service Convention. However, the facts and circumstances here could not be more different from those that existed in *Volkswagen*, *Gianni Versace*, and *Strabala*. This Court should not countenance Plaintiffs attempt to hide behind a proverbial veil of self-imposed ignorance in order to avoid compliance with the Hague Service Convention.

1. **Plaintiffs Totally Ignored Hague Service Convention Requirements.**

Plaintiffs contend allowing service by email and publication would be proper in this case just as it was in the *Volkswagen*, *Gianni Versace, and Strabala* cases. See Dkt. No. 185, at p. 1. The circumstances underlying those decisions are readily distinguishable from this case. In *Volkswagen*, this Court explicitly found the defendants had an "**unknown physical address**." (emphasis added.) See Dkt. No. 185-5, Ex. B to Binns Dec., p. 3. *Volkswagen Group of America, Inc. v. Brandcar Store, et al.*, No. 20-cv-3131 (N.D. Ill. Sept. 14, 2020) (Durkin, J.) In *Gianni Versace*, a case involving foreign e-commerce stores allegedly selling counterfeit goods to Illinois customers, the Court again found e-mail service proper where "the defendant has *no readily discoverable physical address*." (emphasis added.) *Gianni Versace, S.P.A. v.*

*Partnerships*, (No. 18-cv-5385 (N.D. Ill. Feb. 27, 2019). In *Strabala*, the plaintiff first attempted to comply with requirements of the Hague Service Convention through the Chinese Ministry of Justice. Approximately nine months later, the plaintiff requested this Court to allow email service after service in China was not possible. *Strabala v. Zhang*, 318 F.R.D. 81, 88, 99-100 (N.D. Ill. 2016) (Durkin, J.) The Court properly considered alternative means for service in that case **after** the Chinese Ministry of Justice had failed to effectuate service on the defendants within the six-month time limitations required under Article 15 of the Hague Service Convention. *Id*. at 101. Furthermore, after diligent effort by that plaintiff the address of the defendants in *Strabala* was also deemed **unknown**. *Id*. at 102, fn. 36.

The evidence of record shows Plaintiffs did not conduct ***any*** due diligence, much less reasonable diligence, to verify Moving Defendants' physical addresses. Here, Plaintiffs do not contest, and by their silence all but admit, that they did ***nothing*** to verify the address information provided on Moving Defendants' Amazon storefronts at "GYROOR US", "TOMOLOO TC", "TOMOLOO DX", and "TOMOLOO FLAGSHIP". Nor do Plaintiffs contend that the Moving Defendants' address information listed on their Amazon storefronts is inaccurate. To the contrary, the evidence of record establishes that these addresses ***are accurate***, and that Moving Defendants may be served at those locations under the Hague Service Convention. Indeed, nowhere in Mssrs. Yuan's or Binns' Declarations does it state that **these Moving Defendants'** addresses were not known to Plaintiffs.[1] The absence of this assertion speaks volumes. The only reasonable inference that can be drawn from the foregoing facts is that Plaintiffs totally ignored the service requirements of the Hague Service Convention in this case.

Unlike in *Volkswagen*, *Gianni Versace, and Strabala*, this is not a case where Moving Defendants' physical addresses were unknown and not readily discoverable, or where Plaintiffs had waited six months for the Chinese Central Authority to effectuate service before seeking court-directed service on the Moving Defendants. Simply put, Plaintiffs chose to remain ignorant to the Moving Defendants' addresses by not looking

---

[1] For unknown reasons, attorney Yuan used imprecise words in ¶9 of his declaration in stating that "Plaintiffs' attorneys do not have contact information for *many* of the Defendants…" (emphasis added.) Dkt. No. 185-1, Yuan Dec., ¶9, p. 5). No specific mention is made of **these Moving Defendants**.

for them.  The most basic internet search, which would probably have taken no more than fifteen minutes to complete, would have revealed the Moving Defendants' correct address information, which are listed on the Moving Defendants' publicly accessible Amazon storefronts.

In their Opposition, Plaintiffs also seek to manufacture confusion where none exists.  On January 5, 2021, well after the Court entered its most recent Temporary Restraining Order in this case, Plaintiffs purportedly purchased a hoverboard from Tomoloo Official[2] at Tomoloo.com.  According to Plaintiffs' attorney Yuan, no shipping address or return address is identified in any of the email communications from Tomoloo Official to Plaintiffs.  Mr. Yuan adds that on February 26, 2021, a representative from Tomoloo Official provided a New Jersey "return address" for the hoverboard which a subsequent Google search allegedly revealed does not exist.  See Dkt. 185-7, Yuan Dec., ¶¶3-10.  Mr. Yuan made similar statements regarding the purchase and attempted return of a hoverboard to Moving Defendant Saibotan.  See Dkt. 185-7, Yuan Dec., ¶¶11-17.  Mr. Yuan's failure to identify Plaintiffs' representative by name who allegedly purchased the hoverboard and communicated with Tomoloo Official,  the  absence of any documentary evidence of these transactions and communications (e.g., purchase receipts, confirming and shipping-related emails, etc.) as well as the Google search result itself allegedly showing the errant "return address" make this "evidence" inadmissible hearsay under F.R.E. 801(c), 802 and wholly unreliable under F.R.E. 901(a).[3]  Regardless, this "evidence" merely deflects from and is irrelevant to the central issue before this Court, namely how Plaintiffs failed to conduct *any* due diligence of Moving Defendants' publicly accessible addresses and otherwise try to comply with the requirements of the Hague Service Convention.

Next, Plaintiffs attempt to vilify these Moving Defendants based on the alleged activity of third parties identified in Schedules A-C to the Third Amended Complaint.  Essentially, without any *actual* facts or supporting evidence, Plaintiffs request this Court

---

[2] Notably, Tomoloo Official is *not* one of the Moving Defendants but rather answered the Third Amended Complaint on or about February 10, 2021.

[3] The reliability of Plaintiffs' "evidence" is further disputed by Amazon's policy for product returns that calls for a purchaser to ship the returned product to Amazon's fulfillment center, not to the seller directly. See https://www.amazon.com/gp/help/customer/display.html/?nodeId=GKM69DUUYKQWKWX7.

to punish these Moving Defendants by virtue of having been identified by Plaintiffs on their self-serving list of accused infringers. The motivation behind this is obvious. Inconvenienced[4] by the due diligence requirements of the Hague Service Convention to which they did not even pay lip service, Plaintiffs now seek to demonize Moving Defendants with a version of collective punishment (i.e., attributing the alleged actions of other accused infringers to Moving Defendants.) Countenancing Plaintiffs' strategy would render obsolete the Hague Service Convention and violate Fed. R. Civ. P. 4(f).

Plaintiffs also attempt to confuse the Court with unsupported allegations that "when [Moving Defendants] are made aware of an action relating to the infringing products, [Moving Defendants] move assets and change hosting platforms, engaging in what Plaintiffs have described as a virtual game of Whack-o-Mole." See Dkt. No. 185, at p. 1. Again, Plaintiffs failed to provide evidence that any Moving Defendant has capriciously moved assets or changed hosting platforms. Plaintiffs' mere allegations and attorney argument from the Third Amended Complaint hardly qualifies as "evidence". (Third Am. Complaint ¶¶13, 38-40.)

Plaintiffs next contend there is "evidence" before this Court that "Moving Defendants actually engaged in the exact type of nefarious activity alleged in the Third Amended Complaint", namely switching from one e-commerce platform to another. See Dkt. No. 185, at p. 2. On closer examination, Plaintiffs' counsel Yuan's alleged "evidence" fails to specifically tie *in any way* these Moving Defendants to the claimed conduct. In ¶6 of his Declaration, attorney Yuan misleadingly references "Defendants" in an attempt to suggest that "Defendants" are the "Moving Defendants". Yet neither Plaintiffs nor their counsel have set forth any **actual evidence** that the identified storenames (nhtusa, tbbinc, techclic) that allegedly moved platforms from Walmart to

---

[4] Plaintiffs state "service through the Hague Convention would alert Moving Defendants to the lawsuit, significantly delay of these proceedings, and allow irreparable harm to continue upon Plaintiffs." Dkt. 185, p. 8. But the whole purpose of service of process and issuing a Summons is to notify a defendant of the existence of a lawsuit. And as discussed throughout this reply, Plaintiffs have set forth no evidence that they would be irreparably harmed by being required to serve these Moving Defendants in accordance with Hague Service Convention requirements. Nor have Plaintiffs set forth any evidence to suggest compliance with the Hague Service Convention resulted in delay (it was not attempted) or *would* result in excessive delay (Plaintiffs have offered no evidence that there are current delays exceeding six months to process Hague Service Convention claims by the Chinese Central Authority due to Covid-19).

eBay are tied in any way to the storefronts of the Moving Defendants[5]. See Dkt. 185-1, Yuan Dec., ¶6, p. 2. Likewise, the eleven storenames identified in ¶7 and the three storenames identified in ¶8 of the Yuan Declaration, through which accused products were allegedly sold, are not shown to be tied in any way to the storefronts of the Moving Defendants. Indeed, the storenames identified under subpart "D", ¶8 of the Yuan Declaration do not reference products bearing "TOMOLOO" or "GYROOR" brands, but rather "VOYAGER" products. While GYROOR and TOMOLOO product "brands" are identified in ¶¶6-8 of the Yuan Declaration, there is no evidence that these products were made or supplied by or through the storefronts of Moving Defendants.[6] Paragraph 7 of the Binns Declaration likewise seeks to mislead the Court in a similar manner. Mr. Binns states: "Plaintiffs were informed by counsel for eBay.com store Defendants….that their supplier could be found at the following website…" This alleged representation by eBay's counsel is offered by Plaintiffs for the truth of the matter asserted under F.R.E.801(c) and is inadmissible hearsay under F.R.E. 802. Plaintiffs' failure to provide any information about the identity by name of the witnesses involved in this communication, the method of communication (e-mail, phone, or otherwise), and supporting documentation evidencing the communication (if in writing) renders this "evidence" attributed to eBay's counsel wholly unreliable under F.R.E. 901(a) and not subject to any hearsay exceptions. Furthermore, the screenshot banner with the "GYROOR" designation does not in and of itself evidence that the accused hoverboards were made or supplied by the storefronts of **these Moving Defendants**. Finally, ¶9 of the Yuan Declaration again misleadingly references "Defendants" in an attempt to suggest that "Defendants" are the "Moving Defendants" in stating there is no "contact information for many of the 'Defendants'". See Dkt. 185-1, Yuan Dec., ¶9, p. 5. As

---

[5] The Saibotan Moving Defendant operated through storefront "GYROOR US". The Tomoloo Moving Defendants operated through storefronts "TOMOLOO DX", "TOMOLOO TC", and "TOMOLOO FLAGSHIP", respectively.

[6] For similar reasons, ¶¶4-8 of the Cui Declaration is unreliable and inadmissible hearsay under F.R.E. 801(c), 802. Mr. Cui's failure to identify by name the "intermediary" who allegedly approached him as stated in ¶4, the manner of communication, the date of communication, which Tomoloo defendants the "intermediary" purportedly represented, etc., make this "evidence" wholly unreliable under F.R.E. 901(a) and not subject to any hearsay exceptions. As with Plaintiff's other "evidence", the Cui Declaration fails to identify any facts relating **these Moving Defendants** to the allegations made.

discussed above, Plaintiffs most certainly did have contact information for the Saibotan Moving Defendant and Tomoloo Moving Defendants, they simply chose to ignore them.

The record is clear. Had Plaintiffs practiced the least bit of diligence, they would have been able to easily confirm the correct addresses of the Saibotan Moving Defendant and the Tomoloo Moving Defendants to comply with the Hague Service Convention.

## 2. The Hague Service Convention Does Not Permit Email Service on Defendants

Plaintiffs' method of service is prohibited under the framework of the Hague Service Convention, despite their argument to the contrary. By extension, it is also insufficient under Fed. R. Civ. P. 4(f)(3) and 12(b)(5) as being "prohibited by an international agreement"[7]. If the Chinese Central Authority has not served process within the six-month period required by Article 15(b) of the Hague Service Convention, only then should this Court consider authorizing alternative service under Rule 4(f)(3). Otherwise, the refusal to follow the requirements of the Hague Service Convention would constitute an abrogation of the treaty itself, would be tantamount to allowing for service by a means prohibited by international agreement, and would not comport with the recognized form of process under international law. Plaintiffs heavily rely on *Strabala v. Zhang* in their opposition; however, the defendant in *Strabala* never argued that service by email was unauthorized under the Hague Service Convention.

It is black-letter law that the Hague Convention permits service by specifically prescribed means: via a central authority (Articles 2-7), diplomatic and consular agents (Articles 8-9), mail or through a judicial official of the State of destination if the destination State does not object (Article 10), methods allowed by other applicable international agreement (Article 11), and other means as allowed by the internal laws of the destination State (Article 19). Authorizing email service in this case would contravene the authorized methods of service under the Hague Service Convention by disregarding China's formal objections to service by mail (Article 10) and their own internal laws against such process (Article 19). Plaintiffs' request to allow service on the

---

[7] Plaintiffs misrepresent to this Court that "the [p]arties do not dispute that electronic service is permitted under Rule 4." See Dkt. No. 185, at p. 2. To the contrary, Moving Defendants clearly takes the opposing position throughout their Motions to Dismiss. See Dkt. No. 177, p. 1, fn. 1; p. 14.

Moving Defendants through their local counsel would also be an unapproved method of service under the framework of the Hague Service Convention.

China's objections under Article 10 are substantially in the form of objections which courts have routinely determined prevent service by email. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988); *Elobied v. Baylock*, 299 F.R.D. 105, 108 (E.D. Pa. 2014); *Mapping Your Future, Inc. v. Mapping Your Future Servs., Ltd.*, 266 F.R.D. 305, 308 (D.S.D. 2009); *Jian Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 515 n.2 (S.D.N.Y. 2013)

Furthermore, email service is not permitted under Article 19 because China's internal laws prohibit serving process by email and prohibit service by website publication unless a plaintiff has exhausted other means of service. *See* Art. 87, 92, and 277 of the Civil Procedural Law of the People's Republic of China (2017 Am.) ("P.R.C. Civil Procedure Law"). Arguing China's internal laws are irrelevant to whether service by email was proper under Fed.R.Civ.P. 4(f)(3) would be tantamount to stating that the terms of the Hague Service Convention itself (Article 19 in particular) are irrelevant and may be ignored. Plaintiffs offer no legal or factual basis for why the findings in *Luxottica Group S.p.A. v. The Partnership and Unincorporated Associations Identified on Schedule "A"*, Case No. 18 CV 2188 (ND Ill. May 24, 2019), Memorandum Opinion and Order on Defendants' Motion to Dismiss, pp. 10-14 should not be followed in this case. Dkt. No. 40, at p. 6, fn. 2.

Finally, under the Hague Convention's framework, China officially requires that "all documents and evidence to be served [in the P.R.C.] must be written in Chinese or that a translation in Chinese be attached thereto, unless there are contrary prescriptions in the mutual treaties between China and other Contracting States of the Hague Convention." Hague Conference on Private International Law, China – Central Authority & Practical Information, https://www.hcch.net/en/states/authorities/details3/?aid=243. None of the documents purportedly served by Plaintiffs via email (including the late-emailed Summons) were written in Chinese or contained any attached translation in Chinese. Thus, even assuming email service would have been proper in this case (it was not for the reasons stated above), the process itself was defective and/or insufficient under Fed. R. Civ. P. 12(b)(4). Failing to translate the charges and allegations made by

Plaintiffs against these Moving Defendants into their native Chinese language does unfairly prejudice the Moving Defendants and violates their due process rights.

For the foregoing reasons, Moving Defendants' motions to dismiss Plaintiff's Third Amended Complaint should be granted with prejudice and the preliminary injunction entered by the Court should be vacated as to the Moving Defendants.

Dated: March 10, 2021

Respectfully submitted,

By: /s/ *Danielle S. McKinley*
One of their Attorneys

Stephen Z. Vegh
VEGH IP LEGAL
Admitted *Pro Hac Vice*
svegh@veghlaw.com
1240 Rosecrans Ave. Ste. 120
Manhattan Beach, CA 90266
310-980-7440

Danielle S. McKinley
RM PARTNERS LAW LLC
dmckinley@rmpartnerslaw.com
305 N. Peoria, Ste. 200
Chicago, IL 60607
312-251-2292

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFTY that on this 10th day of March 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

By: /s/ *Danielle S. McKinley*
Danielle S. McKinley