IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HANGZHOU CHIC INTELLIGENT TECHNOLOGY CO. and UNICORN GLOBAL, INC., <br><br> Plaintiffs, <br><br> v. <br><br> THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, <br><br> Defendants. | Case No. 20-cv-4806 <br><br> Judge Thomas M. Durkin <br> Magistrate Judge Jeffrey Cole |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
FOR CLARIFICATION OF THE PRELIMINARY INJUNCTION OR
ALTERNATIVELY TO VACATE THE PRELIMINARY INJUNCTION**

By its plain terms, the preliminary injunction applies to Fengchi-US and Urbanmax ("Affiliated Defendants"), both of which had sufficient notice under Rule 65(a). The preliminary injunction bars infringement by those acting in active concert and participation with named defendants. Substantial evidence demonstrates that Affiliated Defendants are effectively alter egos of Gyroor-US and other defendants which were named in the injunction issued in November 2020 and modified the next month ("PI" refers to the modified injunction). Urbanmax even describes itself as a "Gyroor Sister Brand." All available evidence indicates that Affiliated Defendants were aware of these proceedings and the initial preliminary injunction weeks *before* the Court entered the modified PI. Despite the close relationship with named defendants and notice of the PI, Affiliated Defendants sold infringing products that the PI barred Gyroor-US from selling. Thus, Affiliated Defendants were properly subjected to the PI's restraints. Now, four months later, they raise procedural challenges to their enjoinment. These claims are both tardy and groundless.

Affiliated Defendants' motion seems to be the next step in a litigation strategy of endless motion practice, with virtually no discovery.[1] Plaintiffs had suspected that such a strategy operated in parallel to continued infringement in violation of the PI, but only in the past days have Plaintiffs obtained evidence sufficient to justify the extreme measure of moving the Court for relief. In short, Plaintiffs have reason to believe that the Gyroor-affiliated defendants have been selling in violation of the PI and have been moving assets, potentially to render themselves judgment proof. Combined with the excessive motion practice, this approach would serve to increase the costs of litigation while reducing the collectible portion of any judgment. Plaintiffs thus intend to move for an order to show cause prior to the scheduled completion of briefing on the current motion, after Plaintiffs formally raise the issues to defense counsel.

In light of the conduct to date, even if the Court deems notice to have been insufficient, the Court should not vacate the PI on the basis of a procedural issue. Instead, the Court should keep the current PI in place while setting a briefing schedule and hearing on a renewed motion for preliminary injunction, thereby dispelling any doubt regarding notice.

---

[1] The tactics leading to this motion are telling. On May 24, defense counsel started announcing that various defendants would be moving to vacate. Abdelaziz Decl. ¶ 12. Defense counsel announced the same as to a different defendant on May 25. *Id.* ¶ 13. On June 3, in the midst of scheduling discussions on separate issues, defense counsel announced motions to vacate as to five more defendants, including Urbanmax and Fengchi-US. *Id.* ¶ 14. On June 4, defense counsel proposed two weeks for a response to this five-defendant motion, and Plaintiffs suggested three weeks on June 7. *Id.* On June 14, defense counsel announced the filing of a motion to vacate as to eight additional defendants. *Id.* ¶ 15. In response, Plaintiffs suggested 30 days "[g]iven the multiplicity of defendants," because defense counsel had announced such motions on behalf of thirteen differently-situated defendants. *Id.* A summary of a subsequent meet and confer confirms that the proposed 30 days was for a "Briefing Schedule for Tomoloo's Rule 65 Motion to Vacate the PI." *Id.* ¶ 16. But Affiliated Defendants then represented that Plaintiffs requested 30 days to respond to this two-defendant motion. Dkt. 297. Plaintiffs did not object to the entered briefing schedule because two weeks is appropriate for a response to this two-defendant filing. *See* Dkt. 302.

I.  **FACTUAL BACKGROUND**

    (a)    **Entry of the Preliminary Injunction**

Plaintiffs moved for a preliminary injunction on November 20, 2020. Dkt. 105. Immediately after, Plaintiffs filed a notice of motion. Dkt. 110. After a hearing—at which counsel for since-dismissed defendants appeared—this Court entered the preliminary injunction order on November 24, 2020. Dkt. 113. Under this Court's order, Plaintiffs published that order on a public website dedicated to the proceedings of this case.[2] On December 4, 2020, Stephen Vegh contacted Plaintiffs' counsel, holding himself out as counsel for Gyroor. *Cf.* Abdelaziz Decl. ¶ 3. Plaintiffs provided Mr. Vegh with various filings, including the original notice of motion, motion for preliminary injunction, preliminary injunction order, and operative complaint (with redacted defendant lists). *Id.* In response to questions subsequently raised by third-party eBay, Inc., the Court entered a modified PI Order on December 23, 2020. Dkt. 147. Plaintiffs updated the dedicated website with the modified PI Order the next day. That modified PI is the operative PI.

Consistent with Rule 65(d)(2)(B)&(C), the PI bound the named defendants "as well as their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them." Dkt. 147, ¶ 1. The PI order does not require any additional process for the PI to apply to such additional parties.

    (b)    **Enjoinment of Affiliated Defendants Fengchi-US and Urbanmax**

Affiliated Defendants Fengchi-US and Urbanmax were not named in the defendant list that was operative at the time the PI was entered because Plaintiffs discovered these storefronts in January 2021. Plaintiffs believe, based on substantial evidence, that these entities were either

---

[2] *Docket: 20-cv-4806, US District Court for the Northern District of Illinois*, Loeb & Loeb LLP, *available at* https://www.loeb.com/en/general/20-cv-4806.

affiliates or alter egos of Gyroor-US (a named defendant), or acting in active concert or participation with a named defendant. Abdelaziz Decl. ¶ 4. Affiliated Defendants claim that their "accounts and assets were restrained" on February 12, 2021. Dkt. 297 at 3. On February 17, 2021, Amazon confirmed that Affiliated Defendants' stores had been frozen. Abdelaziz Decl. ¶ 5. But Plaintiffs had received such notice a day earlier, from opposing counsel.

Throughout January and February, Plaintiffs' counsel had been corresponding with Danielle McKinley and Mr. Vegh, then-counsel for Gyroor-US and other defendants in this case. Dkt. 152–53. On February 16—*before* Amazon even confirmed the freeze—Ms. McKinley contacted Plaintiffs' counsel to ask whether certain "storefronts" were involved in the case, including Fengchi-US and Urbanmax. Abdelaziz Decl. ¶ 6. At that point, Plaintiffs had never mentioned these storefronts to Ms. McKinley or Mr. Vegh. Over the subsequent month, Plaintiffs' counsel would have sporadic discussions with Mr. Vegh and Ms. McKinley regarding these storefronts generally, including the basis on which each were enjoined. *See, e.g.*, *Id.* ¶ 7.

### (c) Subsequent Contact with Urbanmax and Fengchi-US

On April 27, attorneys from the Glacier Law Firm formally replaced Mr. Vegh and Ms. McKinley as counsel for Gyroor-US. *See* Dkt. 209–10 & 214–15. On May 4, the Glacier Law Firm filed an appearance on behalf of Urbanmax on May 4 and later filed an appearance on behalf of Fengchi-US on June 18. Dkts. 225, 299.

At the May 10, 2021 status hearing, the Court ordered Plaintiffs and Urbanmax to meet and confer regarding a potential motion to dismiss. Dkt. 233. Following this meeting, Plaintiffs sent Urbanmax a proposed joint status report stating:

> 3. Counsel for Urbanmax has represented to Plaintiffs' counsel that Urbanmax is not actually related to or affiliated with Gyroor-US in any way, and Urbanmax is not acting in concert or participation with Gyroor-US or a related or affiliated entity. Plaintiffs have requested an affidavit from Urbanmax attesting to these facts.

4

    4. In the event Plaintiffs receive such an affidavit, Plaintiffs will: (1) promptly request that Amazon remove any restraint on Urbanmax's assets; (2) no longer seek to include Urbanmax in the proposed Amended Schedule A; and (3) remove Urbanmax from the proposed Amended Schedule A at the time of formally filing it, if the pending motion to amend Schedule A is granted. These steps will end Urbanmax's connection with this case and Plaintiffs will not seek to add Urbanmax to this case in the future. Because Plaintiffs have agreed to these steps, no motion practice with regards to Urbanmax is necessary at this time.

Dkt. 237. On May 13, Urbanmax signed off on the proposed report and agreed to provide the requested affidavit "this evening." Abdelaziz Decl. ¶ 8.

    But Urbanmax never sent an affidavit to Plaintiffs. Instead, nearly two weeks later on May 25, Urbanmax filed an affidavit directly with the Court that was materially different from what the parties had agreed. *See* Dkt. 265. The affidavit was filed between two other 3 AM filings by the Glacier Law firm. Later that day, Plaintiffs' counsel emailed Urbanmax's counsel and stated that, contrary to what was agreed upon in the joint status report, the affidavit did not address: 1) being "related or affiliated" to Gyroor-US in any way; 2) "acting in concert or participation with Gyroor-US"; and 3) interactions or affiliations with entities that are related or affiliated with Gyroor-US. Abdelaziz Decl. ¶ 9. Instead, the affidavit narrowly focused on Urbanmax's affiliation with a specific Gyroor-US Amazon store and its specific corporate owner. *Id*. Plaintiffs again requested a resubmission of an affidavit to address these discrepancies. But Urbanmax responded that it was "not interested in resubmitting an affidavit at this point. Urbanmax will appeal the preliminary injunction order and seek damage accordingly." *Id.* ¶ 10. Urbanmax's counsel appended "subject to FRE 408" to the top of this email. *Id*. So instead of accepting voluntary dismissal and unfreezing of assets, Urbanmax elected to remain as a defendant.

    As to Defendant Fengchi-US, Glacier Law notified Plaintiffs' counsel for the first time on June 3, 2021, that it will be representing Fengchi-US and requested a meet and confer on a motion to vacate the PI Order. *Id.* ¶ 11. Apparently Mr. Vegh and Ms. McKinley were no longer

5

representing Fengchi-US. Plaintiffs responded that they "are willing to offer Fengchi-US the same deal we offered Urbanmax and Gaodeshang"—referring to the deal to drop Urbanmax and release its assets upon receipt of an affidavit attesting that it was not related to or acting in concert with Gyroor-US and its affiliates. *Id.* But like Urbanmax, Fengchi-US refused to provide the requested affidavit and elected to remain a defendant, with its assets frozen.

Both Affiliated Defendants have declined to submit affidavits attesting that they are not affiliated or acting in concert with Gyroor-US. Instead, Affiliated Defendants chose to wait months after they were enjoined—and after Gyroor-US made several unsuccessful attempts to dismiss this case and the PI Order[3]—to bring this motion.

**(d)** **Service**

On May 4, 2021, Plaintiffs filed a motion to Amend Schedule A to add the defendants whom Plaintiffs had identified as being related to named defendants and whose assets Amazon had previously frozen. *See* Dkt. 227, ¶ 2. Glacier Law, on behalf of Gyroor-US, filed an opposition to this motion that neither expressly denied the relationship of Affiliated Defendants to Gyroor-US, nor actually opposed the motion. *See* Dkt. 241. The Court granted the motion on May 24, formally adding Affiliated Defendants to the case. Dkt. 253. After Glacier Law refused to accept

---

[3] Since appearing in the case nine weeks ago, the Glacier Law firm has filed on behalf of various defendants, *inter alia*: a 12(b)(6) motion on behalf of Gyroor-US that was denied as being a successive and thus impermissible (Dkt. 217, 226); a motion on behalf of Gyroor-US for leave to refile the successive 12(b)(6) motion, which was also denied (Dkt. 231, 238); a Rule 20/21 motion including a motion to vacate the preliminary injunction, on behalf of Gyroor-US, which was denied (Dkt. 211, 284); a notice of appeal on behalf of defendant Gaodeshang, who appeared in this case the day it filed the notice of appeal, and a response to a Seventh Circuit order to show cause as to why the appeal should not be dismissed due to lack of jurisdiction (Dkt. 256, Case No. 21-1964 Dkt. 3). Since filing the current motion, Glacier Law has also filed a notice of appeal of the dismissal of the Rule 20/21 motion/motion to vacate. Dkt. 298.

6

service on behalf of Affiliated Defendants—on whose behalf Glacier Law had already appeared—Plaintiffs served Affiliated Defendants directly under this Court's order. Dkt. 310.

## II. ARGUMENT

The Affiliated Defendants' position here is questionable. This is not a situation where Plaintiffs have attempted to bind truly independent, formally distinct entities within the large corporate tree of Unilever, for example. The situation is completely opposite. In fact it is unclear if any corporate distinctions even exist between the defendants before the Court, or if they are just regularly disregarded. Regardless, the defendants are effectively agents or alter egos of one another. As such they are bound by the PI, consistent with the Federal Rules and Seventh Circuit law. And the facts here demonstrate that Affiliated Defendants received adequate notice well *before* their assets were restrained.

### (a) The PI Already Binds the Affiliated Defendants Because of Their Close Connection to Gyroor-US.

The PI binds named defendants "as well as their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them." Dkt. 147, ¶ 1. Plaintiffs requested that Amazon restrain Affiliated Defendants assets because Plaintiffs believed, based on substantial evidence, that Affiliated Defendants were related to Gyroor-US and thus covered by the PI. Abdelaziz Decl. ¶ 4. Subsequently discovered facts of the case have confirmed that belief as true:

- Gyroor-US's counsel knew of the asset freeze on Affiliated Defendants even *before* Plaintiffs' counsel knew. Such rapid knowledge could only be possible if Affiliated Defendants were on alert to the litigation and had an extremely close, seamless connection with Gyroor-US (or a different named defendant).

7

- Urbanmax was given the opportunity to be free of the PI and this litigation more than seven weeks ago, if only it would swear that it did not meet the criteria for being bound by the PI. Instead of doing so, Urbanmax:
    - Waited nearly two weeks after it represented it would provide the affidavit to actually provide any affidavit.
    - Filed an affidavit directly with the Court, rather than sending it to Plaintiffs.
    - Filed the affidavit as the middle of a trio of late night filings, where it would be least conspicuous.
    - Filed a narrow affidavit, instead of one that Urbanmax had agreed to provide (and represented to the Court in a joint status report that it would provide). The agreed-upon, unfiled affidavit would have made the broad averments necessary to establish that Urbanmax had no connection to named defendants in this case.
    - Refused to submit the agreed-upon affidavit, once Plaintiffs identified the material discrepancies between Urbanmax's filed affidavit and the one it agreed to submit.
    - Appended a "FRE 408" disclaimer to the top of its refusal to provide the requested affidavit, thereby suggesting that Urbanmax knew the refusal to provide the agreed-upon affidavit was effectively an admission that Urbanmax could not do so, *i.e.* an admission that Urbanmax was in fact connected to named defendants.[4]
- Fengchi-US was given the opportunity to be free of the PI and this litigation a month ago, if only it would swear that it did not meet the criteria for being bound by the PI. Instead of

---

[4] Rule 408 renders inadmissible for certain purposes (1) compromise offers; and (2) "conduct or a statement made during compromise negotiations **about the claim**" (emphasis added). Urbanmax's refusal to discuss an affidavit it has agreed in a court filing to provide is not a compromise offer nor in any way a statement about the claims in this case.

8

doing so, Fengchi-US filed an appearance and has proven to be another channel for Gyroor-US's endless-motion litigation strategy.

- Plaintiffs recently discovered a Facebook page for an entity called "Urbanmax Gyroor" that advertises Gyroor products and includes the description "Gyroor Sister Brand: Urbanmax." Abdelaziz Decl. ¶ 4.

By Defendants' own acknowledgement, "A preliminary injunction can be enforced against a third party only upon a court's authorization." Dkt. 297, p. 2. This requirement was satisfied when the Court issued the PI Order authorizing the restraint of "Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them." Dkt. 147, ¶ 1.

### (b) **Plaintiffs Did Not Need to Seek Leave to Formally Enjoin Affiliated Defendants.**

Affiliated Defendants cite a handful of cases to argue that only the Court could apply the PI to affiliated entities. There are three issues with these citations. First, the Court already did so, by expressly applying the PI to affiliates. Second, Affiliated Defendants repeatedly add emphasis to case quotations but fail to acknowledge that counsel, rather than the Court, made these emphases, thereby materially altering their meanings. Third, almost none of these cases even apply to entities enjoined under Rule 65(d)(2)(B)&(C). *See Blockowicz v. Williams*, 630 F.3d 563, 564 (7th Cir. 2010) (attempt to bind websites which the Seventh Circuit held were not in active concert and participation); *United States v. Kirschenbaum*, 156 F.3d 784, 794–95 (7th Cir. 1998) (personal jurisdiction case relating to protective order under 21 U.S.C. § 853, applied to defendant's wife); *Nat'l Spiritual Assembly of the Bahá'ís of the United States Under the Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of the Bahá'ís of the United States, Inc.*, 628 F.3d 837, 840–41 (7th Cir. 2010) ("complicated," decades-long case addressing privity issues); *Pow! Entm't, LLC v.*

*Individuals, Corps., Ltd. Liab. Co., Partnerships, and Uninc. Ass'ns Identified on Schedule A Hereto*, No. 20 CV 1324, 2020 WL 5076715, 2020 U.S. Dist. LEXIS 154861 (N.D. Ill. Aug. 26, 2020) (attempt to permanently bind third-party institutions like Amazon and eBay, through default judgment against defendants unrelated to such institutions).

One cited case does address entities enjoined under Rule 65(d)(2)(B)&(C). *See Lake Shore Asset Mgmt. v. CFTC*, 511 F.3d 762 (7th Cir. 2007).[5] Unlike the current case, that case involved a permanent injunction against U.S. enterprises that were unquestionably legally distinct from the named defendants. In fact, the Seventh Circuit emphasized the regulated nature of the defendants: "Lake Shore transacts its business in the United States. It voluntarily registered with the CFTC and joined the NFA." *Id.* at 765–66. Further, and most critically, the enjoined defendants in *Lake Shore* were required to take affirmative acts, rather than simply ceasing certain activities. The Court observed that Rule 65(d) allows binding third-parties, but it does not allow a "litigant's affiliates [to be] named in an injunction." 511 F.3d at 766. The Court drew the distinction by stating that an injunction "may not impose obligations directly on other members of the corporate group. . . . . [A] district court must not direct Lake Shore to do things that only some other member of the group, not named a defendant, could perform." *Id.* at 767.

Although distinguishable, both Seventh Circuit cases contain guidance applicable here. The *Lake Shore* court rejected any notion that affiliated entities are unbound by a preliminary injunction and instead stated: "Of course, other members of the Lake Shore Group of Companies act at their peril if they disregard the commands of the injunction, for, if the district court ultimately

---

[5] Aside from a passing reference to cases being quoted by the primary cited cases, the only other case Affiliated Defendants cite is an out-of-circuit, unpublished district court case. *See BMW of N. Am., LLC v. Issa*, Case No. 2:19-cv-220, 2020 WL 1325278, 2020 U.S. Dist. LEXIS 49004 (D. Utah Mar. 20, 2020). Despite Affiliated Defendants' citation to it, this case squarely supports Plaintiffs by holding that entities covered by Rule 65(d)(2) were properly bound.

determines that they are in concert with Lake Shore, then they will be in contempt of court." *Id.* As such, when an affiliated entity takes affirmative acts in contravention of an injunction (rather than merely refusing to take affirmative acts in compliance with one), it should be held in contempt, not relieved of the burden of compliance. And read in conjunction with *Blockowciz*, the import is clear: the mere issuance of an injunction constitutes sufficient notice to bar affiliated entities from taking acts in contravention of the injunction. *See Blockowicz*, 630 F.3d at 568 (holding that pre-injunction conduct does not trigger Rule 65(d), because the purpose of the rule "is to prevent defendants from rendering injunctions void by carrying out prohibited acts through third parties who were not parties to the original proceeding").

      **(c)**     **Rule 65(a)'s Applies a Pragmatic and Discretionary Notice Standard.**

Rule 65(a) does not specify what constitutes adequate notice. *See People ex rel. Hartigan v. Peters*, 871 F.2d 1336, 1340 (7th Cir. 1989). Some courts have stated that notice should apprise a defendant of the hearing and provide adequate time to prepare a defense. *Id*. But this is not a strict requirement, and "the question of what constitutes sufficient notice [is left] primarily to the district court's discretion." *Id.*[6] In assessing whether notice was proper, courts look to the totality of the circumstances to determine whether notice was reasonably calculated "under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.*, quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). One circumstance courts "consider in evaluating the sufficiency of

---

[6] In a case similar to this one, a Gyroor-related entity named Runchenyun—which had previously been a defendant here—filed a motion to vacate that the Court granted, via minute entry. *See* 20-cv-5905, Dkt. 105. The facts here are materially different as to Affiliated Defendants, and Plaintiffs believe that *Peters* is inconsistent with the Court's rationale in that manner.

11

notice is whether the alleged inadequacies in the notice prejudiced the appellant." 871 F.3d at 1340. Most notably, Rule 65 does not mandate that notice come directly from the movant.

Paragraph 7 of the PI reflects a similar reading of Rule 65, declaring that "[t]he combination of providing notice via electronic publication and e-mail, along with any notice that the Defendants receive from payment processors, shall constitute notice reasonably calculated under all circumstances to apprise Defendants of the pendency of this action and afford them the opportunity to present their objections." Dkt. 147, ¶ 7. The totality of circumstances demonstrates that notice was sufficient under Rule 65(a) and Paragraph 7 of the PI.

### (d) Affiliated Defendants Had Actual Notice of the Preliminary Injunction No Later Than December 4, 2020, Weeks Before the Operative PI Was Entered.

Affiliated Defendants received at least three forms of notice: (1) the initial preliminary injunction order, moving papers, and notice of motion provided to Gyroor-US on December 6, 2020; (2) the electronic publication of the initial and modified injunctions on the dedicated website; and (3) the notice Amazon provided when restraining their assets. In considering the totality of the circumstances—as the Court should—these forms of notice were reasonably calculated to provide Affiliated Defendants with adequate notice of the relief sought.

"[N]otice to an attorney is notice to the client and knowledge of an attorney is imputed to the client, notwithstanding whether the attorney has actually communicated such knowledge to the client." *Lloyd's Syndicate 3624 (Hiscox) v. Clow*, No. 19 C 6405, 2020 WL 4194213, 2020 U.S. Dist. LEXIS 128161, at *15 (N.D. Ill. July 21, 2020) (citations and quotations omitted); *see also Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962); *Fleming v. Alcoa Bldg. Prods.*, No. 93-1092, 1993 U.S. App. LEXIS 26536, at *5 (7th Cir. Oct. 6, 1993) ("In this Circuit an attorney's conduct is imputed to the client in any context."). Therefore, and because of their seamless ties to earlier-named defendants, Affiliated Defendants were aware of the initial preliminary injunction and the

overall proceedings no later than December 4, when counsel for Gyroor-US contacted Plaintiffs' counsel. They thus were aware then that affiliates and those acting in concert or participation with Gyroor-US were also bound. If Affiliated Defendants objected to the scope of the injunction, they could have done so then, long before Plaintiffs discovered their infringement and restrained their assets.

The critical question regarding notice is whether it "apprise[d] interested parties of the pendency of the action and afford[ed] them an opportunity to present their objections." *Peters*, 871 F.2d at 1340. What Affiliated Defendants fail to say is telling:

- Affiliated Defendants never deny an affiliation with Gyroor-US and the other defendants.
- Affiliated Defendants never state that they would have objected to the PI at the time it was entered.
- Affiliated Defendants never state that they were prejudiced by any alleged lack of notice.
- Affiliated Defendants never explain why they waited to raise any objection to the Preliminary Injunction until four months after their assets were restrained.

\*\*\*

Defendants' unreasonable delay, continuation of seriatim motion practice, and refusal to address substantive issues cast doubt on Affiliated Defendants' motion and their claimed lack of notice. When issuing its most written recent order, the Court stated:

> This piecemeal motion practice smacks of intentional delay rather than a sincere attempt to bring this case to resolution. While there is no express time limit on making a motion under Rules 20 and 21, the Court has the responsibility to manage the case so it proceeds efficiently and the discretion to decide how that should be accomplished. Gyroor's failure to address joinder in its initial motion to dismiss, and its decision to file multiple serial motions, has unnecessarily delayed and complicated this case. That conduct counsels in favor of denying the motion

*Dkt*. 284 pp. 1–2. The Court concluded:

13

> [T]he Court is skeptical of Gyroor's contention that it received insufficient notice because the Court has given permission for electronic service, making notice relatively straightforward, and Gyroor has participated in the case for several months without raising this issue. Gyroor contends that it was prejudiced by late notice because it was not given "an opportunity to defend itself." R. 281 at 1. Gyroor has filed four motions in this case and appeared at four hearings. See R. 207; R. 226; R. 233; R. 276. Gyroor has had ample opportunity to "defend itself."

*Id.* at 3. These statements remain highly relevant to the current motion.

### III. CONCLUSION

The Court should clarify that the PI does apply to Affiliated Defendants. Further, because Affiliated Defendants were apprised of these proceedings through counsel well in advance of their assets being restrained, the Court should deny the motion to vacate. Affiliated Defendants have failed to demonstrate any prejudice due to the allegedly deficient notice, and their decision to wait months before raising the notice issue proves that no prejudice existed.

If the Court disagrees with Plaintiffs' position on the merits, Plaintiffs respectfully request that the Court leave the PI in place and set a briefing and hearing schedule on a new preliminary injunction, thereby resolving any alleged notice issues.

Date:   July 2, 2021 					Respectfully Submitted,


							LOEB & LOEB LLP

							/s/ Adam Kelly
							Adam Kelly
							Doug Masters
							Arthur Yuan
							Neil Nandi
							321 North Clark Street, Suite 2300
							Chicago, Illinois  60654
							Tel.: 312-464-3100
							Email:  akelly@loeb.com
							Email:  dmasters@loeb.com
							Email:  ayuan@loeb.com
							Email:  nnandi@loeb.com

							Marwa Abdelaziz (admitted *pro hac vice*)
							LOEB & LOEB LLP
							345 Park Avenue
							New York, New York 10154
							Tel.:  (212) 407-4000
							Email:  mabdelaziz@loeb.com