IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HANGZHOU CHIC INTELLIGENT TECHNOLOGY CO. and UNICORN GLOBAL, INC., | ) ) ) ) |
| Plaintiffs, | ) ) Case No. 20-cv-4806 |
| v. | ) ) Judge Thomas M. Durkin |
| | ) Magistrate Judge Jeffrey Cole |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, | ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR AN ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT OF THE PRELIMINARY INJUNCTION ORDER**

Plaintiffs' Motion for Preliminary Injunction recounted the Defendants' patent infringement as virtual Whack-A-Mole. Under this scheme the Defendants "are abusing the anonymity afforded to the internet marketplace to sell infringing products under fictitious stores with fictitious monikers, and as soon as one store is shut down (or whacked), a new store with a new name emerges." *See* Dkt. 106. Even though the Preliminary Injunction ("PI") should have stopped these activities, the Defendants here have brazenly flouted the restrictions of the PI and have continued to engage in its Whack-A-Mole scheme by selling enjoined products directly or through other storefronts, while moving monetary assets in the process.

The PI generally restrains all Defendants, their affiliates, confederates, and those acting in active concert or participation with them from selling hoverboards that the Court determined

were infringing on Plaintiffs' design patents. *See* Dkt. 147, ¶ 1(a). The PI is explicit that defendants may not "effect[] assignments or transfers" or "form[] new entities or associations" to circumvent these prohibitions. *Id.*, ¶ 1(c). Additionally, the Defendants and those acting in concert and participation with them are restrained "from transferring or disposing of money or other Defendants' assets until further ordered by this court." *Id.*, ¶ 3. Yet at least the Defendants associated with the Gyroor enterprise—namely, Gyroor-US, Gyroor, Urbanmax, Fengchi-US, hgsm Storefront, Gaodeshang-US, Jiangyou-US, and Gyroshoes ("Gyroor Defendants")—are actively participating in activities expressly restrained under the PI.

Admittedly, the precise nature of the relationships between the Gyroor Defendants remains a mystery. Whether the Gyroor Defendants are separately incorporated, legally distinct entities, or instead simply d/b/a's for different storefronts operating on Amazon are open questions. Regardless, as Plaintiffs previously explained, any corporate distinctions seem to be a fiction. *See* Dkt. 316, pp. 7–9. The labyrinth of interactions between the Gyroor Defendants— and potentially other entities operating in concert with them, but not formally before this Court— makes it impossible for Plaintiffs to determine all of the entities/storefronts that are violating the PI, especially given Defendants' limited participation in discovery. In fact, Plaintiffs have suspected since March that some of the Gyroor Defendants were violating the PI, but Plaintiffs only recently obtained uncontroverted evidence from third-party Amazon of non-compliance to warrant this Motion. That said, Plaintiffs fear that it may take months of discovery to obtain sufficient evidence to reveal the full scope of non-compliance, and during that time, the non-compliance and irreparable harm to Plaintiffs will continue—unless this Court takes action now. Accordingly, this Court should issue an order to show cause why the Gyroor Defendants, its

2

affiliates, and those parties acting in concert and participation with the Gyroor Defendants should not be held in contempt for violating the PI.

### I. PROCEDURAL BACKGROUND OF THE PRELIMINARY INJUNCTION

Plaintiffs manufacture, license, and sell hoverboard products in the United States and throughout the world, under U.S. Design Patent Nos. D737,723, D738,256, D785,112, and D784,195 ("Patents-in-Suit"). Third Am. Compl. ¶¶ 6, 14. Defendants are Chinese-based entities who operate e-commerce stores and sell unauthorized products that infringe the Patents-in-Suit. *Id.* ¶ 9. To combat this infringement Plaintiffs filed this action in August 2020 and moved for an *ex parte* temporary restraining order. Dkt. No. 1, 17. The Court entered an injunction in September ("TRO") and then later extended it in October. Dkt. No. 42, 50. In November the Court entered the preliminary injunction ("PI") and later modified it in December. Dkt. 113, 147. One of the defendants named at that time was Gyroor-US. *See* Dkt. 101, Schedule A, ln. 2.

In January 2021, Plaintiffs discovered additional storefronts (associated with Gyroor-US) that were facilitating Gyroor-US's infringement by engaging in the same conduct that the PI barred Gyroor-US from engaging. *See* Dkt. 317, ¶ 4. Plaintiffs thus requested that Amazon restrain their assets. Dkt. 316, ¶ 5. Subsequent conduct by those storefronts provided definitive proof that they were, at minimum, acting in active concert or participation with Gyroor-US or other affiliated entities. *See id.*, ¶¶ 6–11; Dkt. 316, pp. 7–9. In May Plaintiffs amended the list of defendants in this case to formally incorporate these apparent affiliates and alter egos. *See* Dkt. 227-1, ¶ 3; 253. Plaintiffs voluntarily dismissed one Gyroor-related entity—Runchenyun—on May 25, the same day counsel for Runchenyun appeared in this Court. Dkt. 264, 267.

## II. FACTS RELEVANT TO VIOLATIONS OF THE PRELIMINARY INJUNCTION

### A. Amazon Storefronts and Products Sold via ASINs

The first step a seller takes when selling products on Amazon is associating the product with an Amazon Standard Identification Number ("ASIN"). Declaration of Jing Cui ("Cui Decl."), ¶ 7. There are two ways to do so: (a) create a new, unique ASIN, or (b) use an existing ASIN created by someone else. *Id.*, ¶ 8. Typically, the brand owner or licensee creates a new ASIN, as Amazon limits the ability of non-brand users to create ASINs. *Id.*, ¶¶ 8–9. If a store is selling the same product, but is not affiliated with or working in concert with the brand owner associated with the ASIN, Amazon would not approve the creation of a new ASIN. *Id.*, ¶ 9. The merchant who created the ASIN may choose to disable or remove the webpage or description of the product associated with the ASIN from its store. *Id.*, ¶ 10. Tag-along merchants using the brand owner's ASIN could continue to sell if the brand owner merely removes that specific product from its store. *Id.* While only Amazon is able to delete the ASIN from its database once it is created, the brand owner could prevent unauthorized tag-along merchants from selling under its ASIN by disabling or removing the product webpage or the "listing." *Id.*

Amazon merchants often purchase advertisements for their products. *Id.*, ¶ 16. Such advertisements can be paid for using the merchant's Amazon seller account. *Id.* Sellers can also use their seller account to pay for order fees related to inventory fulfilled by Amazon. *Id.*, ¶ 15. If an Amazon warehouse stocks a seller's product, the merchant may elect to have the product shipped from the warehouse, in which case the product listing and shipping label will state that it was "Fulfilled by Amazon." *Id.*, ¶ 11. Alternatively, the merchant store itself may directly ship

4

the product. *Id.* If there is any other entity whose name is indicated on the shipping label, one can reasonably assume that entity is affiliated with the storefront selling the product. *Id.*, ¶ 13.

### B. "Pop-Up" Gyroor Stores Selling Enjoined Products During PI

A recurring challenge for enforcement of intellectual property rights on marketplaces like Amazon is the relatively short-lived storefronts. Declaration of Arthur Yuan ("Yuan Decl."), ¶ 40. Such storefronts pop up to briefly sell infringing products, then go underground (*i.e.*, close) after a short period of time only to be later replaced by other storefronts. *Id.* Such reoccurring tactics allow storefronts to evade enforcement actions by simply staying active just short enough to avoid any asset restraints. *Id.* Plaintiffs have identified over a dozen storefronts that follow this pattern and have offered to sell products enjoined under the PI. *Id.*, at ¶¶ 39–40.

Publicly-available ASIN information corroborates that these pop-up storefronts are related to one another and to the Gyroor Defendants. The pop-up storefronts sell products using ASINs used by other pop-up storefronts and by the Gyroor Defendants. *See* Yuan Decl., ¶¶ 16–38. These storefronts also link back to the "Gyroor Store" on Amazon. *Id.*, ¶ 42; Declaration of Neil Nandi ("Nandi Decl."), ¶¶ 4, 13.

Further corroboration of these pop-ups' connection to the Gyroor Defendants is the fact that the Gyroor-US storefront (a storefront explicitly named as a defendant here) appears to be allowing these pop-up stores to undercut *its own price*s. Plaintiffs identified an example of a pop-up store selling Gyroor-branded products at lower prices than Gyroor-US sold them on Gyroor's own ASIN. *See* Yuan Decl., ¶ 41. Because the products use the same ASIN, a customer would see both prices and would likely purchase the product offered at the cheaper

price by the pop-up store. *Id.* This price difference is not a coincidence. It's an obvious tactic to continue selling enjoined products.

### C. Direct Infringement By Named Storefronts Violating the PI

In January Plaintiffs purchased an infringing, enjoined product from www.gyroorboard.com and received a confirmation email titled "Thank you for your purchase" from the sender "GYROOR." *See* Yuan Decl., ¶ 14. And on July 1 Gyroor US was still offering to sell at least two units of an enjoined product on Amazon.com in violation of the PI order. *Id.*, ¶ 15. Relatedly, on June 21 Plaintiffs purchased a Gyroor-branded enjoined product from the "baiboyuan-us" storefront on Amazon. *Id.*, ¶ 21. The shipping label on the package did not identify baiboyuan-us. *Id.* Instead, it revealed that the item came from Runchenyun, a former defendant who was voluntarily dismissed here but remains a defendant in the case pending before Judge Seeger. In other words, Gyroor is selling enjoined products by using a baiboyuan-us storefront and fulling those orders through Runchenyun.

### D. Unauthorized Transfer of Assets

Amazon records demonstrate that, despite having their assets restrained by Amazon, the Gyroor Defendants have transferred nearly $180,000 in assets since January 6, 2021. *See* Yuan Decl., ¶ 12. Specifically, during that time Gyroor-US has transferred $144,319.51; Gyroor has transferred $14,811.23; Urbanmax has transferred $2,004.41; Fengchi-US has transferred $8,843.11; Jiangyou-US has transferred $4,712.17; and Gyroshoes has transferred $4,687.65. *Id.*, ¶ 11. Simply put, each of these Gyroor Defendants have been moving money during the PI.

6

### E. Gyroor's Counsel's Explanations For These Ongoing PI Violations

On April 13 Plaintiffs alerted Gyroor-US's counsel to several activities that demonstrated that Gyroor-US or its related entities were acting in violation of the PI. *See* Nandi Decl., ¶ 4. Specifically: (1) the "Gyroor Store" was active and selling on Amazon; (2) the Gyroor Store was sponsoring advertisements for enjoined hoverboards; (3) an Amazon storefront called "yaohuisheng-us" was "just launched," seemingly to sell enjoined Gyroor hoverboards; and (4) the direct-to-consumer website "gyroorboard.com" was still selling enjoined hoverboards. Two days later Plaintiffs emailed Gyroor-US's counsel to observe that yaohuisheng-us had closed, but another "just launched" Amazon storefront solely selling enjoined hoverboards had replaced it. *Id.*

On April 26 Gyroor-US's counsel confirmed that the direct-to-consumer website had ceased selling the enjoined products, surprisingly denied Gyroor-US's connection to the "Gyroor Store," and represented the following regarding the most recently infringing pop-up storefront: "Defendant understands this storefront either never did or no longer sells or offers to sell any accused products." *Id.*, ¶ 8. The next day, Glacier Law replaced Gyroor-US's outside counsel. *See* Dkt. 209.

On April 30 Plaintiffs' counsel emailed Gyroor-US's new counsel Glacier Law to raise again continued instances of non-compliance. *See* Nandi Decl., ¶ 12. Specifically, Plaintiffs identified yet another temporary, pop-up infringer. *Id.* Plaintiffs also identified that Gyroor's direct-to-consumer websites still offered enjoined hoverboards for sale by allowing consumers to sign-up for product notifications, even though the hoverboards were shown as unavailable. *Id.*

On May 3 Plaintiffs' counsel emailed Gyroor-US's counsel to identify (again) another pop-up Amazon storefront that existed solely to sell infringing Gyroor-branded products. *Id.*, ¶ 13. That same day, Gyroor-US's counsel responded by vaguely stating:

> Just to be clear the account Gyroor-US (a.k.a. Dongguan Saibotan Nengyuan Keji Co. Ltd.) has complied with the Court's PI order. We need to verify the information you provided. We will get back to you once we have more information regarding your allegation.

*Id.*, ¶ 14.

Given these continued violations of the PI over several months and the already-accomplished depletion and transfer of substantial assets, Plaintiffs alerted opposing counsel before filing this motion but a meet and confer would have been futile. *See id.*, ¶ 15. Gyroor's counsel requested additional details so that they could "investigate the situation further." *Id.*, ¶ 16. Plaintiffs observed the similarities between this statement and the May 3 statement, which did nothing but delay enforcement of the preliminary injunction.

### III. ARGUMENT

Civil contempt proceedings arise under 18 U.S.C. § 401(3). This Court is empowered "to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as ... disobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401(3). This Court also possesses the "inherent power to enforce compliance with their lawful orders through civil contempt." *Teledyne Techs., Inc. v. Shekar*, Case No. 15-cv-1392, 2015 U.S. Dist. LEXIS 78224, *11 (N.D. Ill. June 17, 2015), *citing Shillitani v. United States*, 384 U.S. 364, 370 (1966). In a civil contempt proceeding, the complaining party must provide evidence that the opposing party violated a court order by

8

explaining in specific detail an unequivocal command that the party violated. *United States v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001). The violation need not be "willful." *Int'l Star Registry of Ill., LTD. v. SLJ Group, Inc.*, 325 F. Supp. 2d 879, 883 (N.D. Ill. 2004). Rather, this Court may find a party in contempt if it has not been "reasonably diligent and energetic in attempting to accomplish what was ordered." *Id*. at 883, *quoting Am. Fletcher Mortgage Co. v. Bass*, 688 F.2d 513, 517 (7th Cir. 1982).

### A. The Gyroor Defendants Have Formed New Entities to Sell Enjoined Products in Violation of the PI

The PI prohibits defendants from "forming new entities or associations or utilizing any other device for the purposes of avoiding the prohibitions" against infringement. *See* Dkt. 147, ¶ 1(c). Despite that express prohibition under Section 1(c), on seemingly a weekly basis, a new storefront pops up on Amazon that sells Gyroor-branded enjoined hoverboards, only to shut down after a week to be replaced by another pop up storefront. *See* Yuan Decl., ¶ 39; Nandi Decl. ¶¶ 4, 10, 12–14. These storefronts all tie back to the "Gyroor Store." Yuan Decl., ¶ 42; Nandi Decl. ¶¶ 4, 13. One example for how these storefront tie back is their use of the same ASINs that the Gyroor Defendants use. *See* Yuan Decl., ¶¶ 21, 22, 28, 29, 31, 34. Even the pricing strategy reflects careful coordination between the Gyroor Defendants and these pop-up stores, as the stores sell the same products at *lower prices*. *Id.*, ¶ 41. This pricing tactic directs customers to purchase from pop-up stores that do not have in place any of the PI's asset restraints. *Id.* Of course, no brand owner would reasonably allow a tag-along merchant to voluntarily undercut it, unless the brand owner had authorized the tag-along merchant's sales or the tag-along merchant was really just another storefront directly operated by the brand owner.

9

Prior interactions between counsel regarding these storefronts have resulted in Gyroor-US making representations that are so narrow and unhelpful as to effectively admit that some of the Gyroor Defendants are directing these pop-ups. *See* Nandi Decl., ¶¶ 8, 10. Apparently, Plaintiffs just have not guessed the right mole leader yet in the Whack-A-Mole scheme. For example, on April 26 Gyroor-US offered the following opaque statement regarding one of these pop-up stores: "Defendant understands this storefront either never did or no longer sells or offers to sell any accused products." *Id.*, ¶ 8. And on May 3 Gyroor-US's counsel wrote: "Just to be clear the account Gyroor-US (a.k.a. Dongguan Saibotan Nengyuan Keji Co. Ltd.) has complied with the Court's PI order." *Id.*, ¶ 10. Notably, in neither instance did Gyroor-US's counsel deny a connection to these storefronts. Unfortunately these narrow statements, attempting to deflect scrutiny while avoiding the true substantive facts, have become standard practice for the Gyroor Defendants. *See* Dkt. 316, p. 8.

Taken together, the only reasonable inference is that one or some of the Gyroor Defendants are closely coordinating with these pop-up stores to undermine the PI and this Court.

### B. The Gyroor Defendants Have Sold and Offered to Sell Enjoined Products in Violation of the PI

In addition to the surreptitious infringement through the army of pop-up storefronts, the Gyroor Defendants have also sold, offered to sell, and shipped enjoined products directly, without intermediaries. Yuan Decl., ¶ 14. Specifically, Plaintiffs purchased an enjoined product from gyroorboard.com on January 4. *Id.* That website continued to sell enjoined products in at least April and July. *Id.*, ¶¶ 47–50. On July 1 Gyroor US was offering to sell at least two units of an enjoined product on Amazon in violation of the PI order. *Id.*, ¶ 15.

An unusual example that crosses both the "intermediary" and directly infringing categories involves Runchenyun. Runchenyun was previously a defendant in this case, though Plaintiffs dismissed them because they were also a defendant in Case No. 20-cv-5905, pending before Judge Seeger. Although the PI in that case has since been vacated, Runchenyun is still bound to the PI here through the affiliate/acting in concert aspect of the PI. *Cf. Lake Shore Asset Mgmt. v. CFTC*, 511 F.3d 762, 767 (7th Cir. 2007) ("Of course, other members of the Lake Shore Group of Companies act at their peril if they disregard the commands of the injunction, for, if the district court ultimately determines that they are in concert with Lake Shore, then they will be in contempt of court."). Plaintiffs recently purchased an enjoined, Gyroor-branded product from one of the pop-up stores, and the shipping label showed that Runchenyun shipped it. Yuan Decl., ¶ 21.

### C. The Gyroor Defendants Have Transferred Assets in Violation of the PI

The PI order provides: "Defendants and any persons in active concert or participation with them who have actual notice of this Order shall be restrained and enjoined from transferring or disposing of money or other Defendants' assets until further ordered by this court." Dkt. 147, ¶ 3. The PI also bars defendants from "effecting assignments or transfers" to avoid the PI's prohibition on infringement. *Id.*, ¶ 1(c). Yet the Gyroor Defendants have transferred nearly $180,000 from their Amazon accounts. *See* Yuan Decl., ¶ 11–12. Gyroor-US alone has transferred over $100,000. *Id.*, ¶ 11(a). There can be no doubt that specifically-named Gyroor entities before this Court are responsible for these violations.

11

IV. **If the Gyroor Defendants Cannot Demonstrate Their Compliance with the PI, the Court Should Impose Sanctions**

This Court's civil contempt power rests in the discretion of the district court, under in its inherent authority to ensure the orderly conduct of judicial proceedings. *Pearle Vision, Inc. v. Romm,* 541 F.3d 751, 757 (7th Cir. 2008). This Court therefore has "wide latitude to craft civil contempt sanctions to coerce obedience to the court's orders and compensate the plaintiff for losses." *Teledyne Techs. Inc. v. Shekar,* 739 Fed. Appx. 347, 351 (7th Cir. 2018); *Tranzact Techs., Inc. v. 1Source Worldsite,* 406 F.3d 851, 855 (7th Cir. 2005) ("Civil contempt sanctions are properly imposed for two reasons: to compel compliance with the court order and to compensate the complainant for losses caused by contemptuous actions.") "Compensatory civil contempt reimburses the injured party for losses and expenses, "losses flowing from noncompliance and expenses reasonably and necessarily incurred in the attempt to enforce compliance." *Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 827 (5th Cir. 1976). As a consequence, courts routinely award to prevailing movants the attorney's fees and costs necessary to bring the contemptuous actions to the attention of the court. *Tranzact Techs.*, 406 F.3d at 855; *see also United States v. Greyhound Corp.*, 370 F. Supp. 881, 886 (N.D. Ill 1974). The Seventh Circuit has been willing to impose per diem penalties until compliance is insured. *See In re Grand Jury Proceedings*, 280 F.3d 1103, 1109 (7th Cir. 2002) (finding that imposition civil contempt fine of $1500 per day was not an excessive fine); *see also Oxford Capital Illinois, L.L.C. v. Sterling Payroll Fin., L.L.C.*, 2001 WL 1491521, at *10 (N.D. Ill. Nov. 26, 2001) (imposing a $250 per day sanction for contempt).

The Gyroor Defendants' conduct described above reflects repeated, willful, and long-standing violations of the PI. These actions have allowed the Gyroor Defendants to infringe without accountability, both by shielding their actions through a labyrinth of storefronts and by depleting assets in a manner that reduces a collectible judgment. Plaintiffs previously raised these troubling issues to the Gyroor Defendants but have been largely ignored. Given the evident need for a deterrent against non-compliance and the need to compensate Plaintiffs for these harms, should this Court hold the Gyroor Defendants in civil contempt, then Plaintiffs believe one or more following financial sanctions are appropriate:

- Paying Plaintiffs the $179,378.08 depleted from Amazon accounts since January 6, 2021.
- Paying Plaintiffs all profits from infringing sales, since entry of the TRO.
- Paying Plaintiffs' costs and fees in filing this motion and otherwise policing the Gyroor Defendants' conduct. If the Court determines such relief is appropriate, Plaintiffs will submit evidence regarding the amount of fees incurred.
- Going forward, paying Plaintiffs a penalty of $1,000 for each day of non-compliance following entry of any contempt order.

V. **CONCLUSION**

The Gyroor Defendants' actions described above suggest a flagrant violation of this Court's PI. Although such conduct is grounds for contempt, Plaintiffs hesitate to move directly for contempt at the moment, because the evasive conduct leaves some doubt—however remote—regarding how and why the specific entities engaged in some aspects of the non-compliance. Therefore, Plaintiffs request that this Court issue an order for the Gyroor Defendants to show cause as to why they should not be held in contempt for violations of the PI

13

order. Should this Court find that the Gyroor Defendants' forthcoming showing is insufficient, then Plaintiffs request that this Court exercise its authority under 18 U.S.C. § 401(3) and/or its inherent power, hold the Gyroor Defendants in civil contempt, and impose one or more monetary sanctions described in Section IV.

Date: July 13, 2021

Respectfully submitted,

By:   /s/ Adam Kelly
      Adam Kelly
      Doug Masters
      Arthur Yuan
      Neil Nandi
      321 North Clark Street, Suite 2300
      Chicago, Illinois 60654
      Tel.: (312) 464-3100
      Fax: (312) 464-3111
      Email: akelly@loeb.com
      Email: dmasters@loeb.com
      Email: ayuan@loeb.com
      Email: nnandi@loeb.com

      Marwa Abdelazuz (admitted *pro hac vice*)
      345 Park Avenue
      New York, New York 10154
      Tel.: (212) 407-4000
      Fax: (212) 407-4990
      Email: mabdelaziz@loeb.com

      *Attorneys for Plaintiffs*