**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HANGZHOU CHIC INTELLIGENT TECHNOLOGY CO., LTD. and UNICORN GLOBAL, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 20-cv-4806 |
| v. | ) ) | Judge Thomas M. Durkin |
| | ) | Magistrate Judge Jeffrey Cole |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, | ) ) ) ) | |
| Defendants. | ) ) | |

**DECLARATION OF NEIL NANDI**
**IN SUPPORT OF A MOTION TO SHOW CAUSE**

1.      I am one of the attorneys for Plaintiffs Hangzhou Chic Intelligent Technology Co. and Unicorn Global, Inc. I am an attorney licensed in Illinois.

2.      I have personally reviewed all materials provided in the attached Exhibits.  If called as a witness, I could and would testify to the statements made herein.

3.      In early 2021, Plaintiffs and counsel for Gyroor-US discussed storefronts that were violating the preliminary injunction.  Co-counsel has filed an affidavit and exhibits demonstrating that, on February 16, 2021, counsel for Gyroor-US contacted Plaintiffs' counsel to ask about various storefronts, including several that are now defendants in this case, such as Runchenyun, Urbanmax, Fengchi-US, Jiangyou-US, and Gyroor.  *See* Dkt. 317, ¶ 6.  After the exchange of multiple emails, on March 3, Plaintiffs' counsel observed that Plaintiffs could avoid contacting Amazon to restrain related infringing storefront "if your client abides by the preliminary injunction order." *Id.*, Ex. 5, p. 4.

4.     On Wednesday April 13, I emailed Gyroor-US's counsel to raise various issues with non-compliance with the preliminary injunction by Gyroor-US and other defendants.[1]  I noted that the "Gyroor Store" was selling on Amazon, that the Gyroor Store was sponsoring Amazon advertisements, and that a new Amazon storefront was "just launched" for the sole purpose of selling infringing Gyroor hoverboards.  A true and correct copy of this correspondence, and the attachment, is attached as Exhibit 1.

5.     The next day, counsel for Gyroor-US said that he could not speak until the following Tuesday.  I responded with availability on Tuesday, Wednesday, and Thursday.  I also observed that the previously identified "just launched" storefront had closed and been replaced by another "just launched" Amazon storefront which existed solely to sell infringing products on behalf of Gyroor.  A true and correct copy of this correspondence is attached as Exhibit 2.

6.     Gyroor-US's counsel chose the furthest out availability—Thursday, April 22—for the meet and confer.  During that call, Plaintiffs raised the non-compliance with the preliminary injunction.  Gyroor-US's counsel indicated that they had not discussed this with their client, even though the issues were raised over a week earlier.

7.     In light of the delays, on April 23, Plaintiffs advised Gyroor-US's counsel that Plaintiffs would seek relief from the Court if the non-compliance remained unresolved by April 26.  A true and correct copy of this correspondence can be found in the attached Exhibit 3.

8.     On April 26, Gyroor-US's counsel responded to dispute some aspects of Plaintiffs' recollection of the meet and confer.  Regarding the temporary storefronts, Gyroor-US's stated: "Defendant understands this storefront either never did or no longer sells or offers to sell any

---

[1] Because Plaintiffs are only moving as to Gyroor-related defendants, this declaration does not recount discussions regarding non-Gyroor defendants.

accused products." Counsel denied any connection between Gyroor and the "Gyroor Store" on Amazon. Counsel did confirm that gyroorboard.com no longer was selling products through its website.

9. That same day, Plaintiffs responded to Gyroor-US's counsel to observe that whether the temporary stores currently sold infringing products is irrelevant, because they close down and open up so frequently. In fact, Plaintiffs identified yet another such "just launched" Amazon storefront that existed solely to sell infringing products. A true and correct copy of this correspondence, and the attachment, is attached as Exhibit 3.

10. The next day, Plaintiffs emailed Gyroor-US's counsel to explain that the storefront identified the previous day had closed and that a new storefront was "just launched" to replace it, selling solely Gyroor-US products. Plaintiffs pressed Gyroor-US on the connection between these storefronts and Gyroor-US. A true and correct copy of this correspondence, and the attachments, is attached as Exhibit 4.

11. That same day, Gyroor-US replaced its counsel. *See* Dkt. 209.

12. The next day, on April 28, Plaintiffs advised new counsel for Gyroo-US that Plaintiffs would seek relief from the Court if Gyroor-US did not resolve its non-compliance. Gyroor-US's counsel requested evidence of the non-compliance, which Plaintiffs provided on April 30. Plaintiffs identified the pattern of "just launched" storefronts and the current such stores. Plaintiffs also advised that Gyroor's direct to consumer websites were still advertising products to U.S. customers and allowing customers to sign-up for notifications. A true and correct copy of this correspondence, and the attachments, is attached as Exhibit 5.

13.     On May 3, Plaintiffs emailed again with the newest such "just launched" storefront, which, like the others, was linked to the Gyroor Store and existed solely to sell infringing products. A true and correct copy of this correspondence, and the attachments, is attached as Exhibit 6.

14.     On May 3, Gyroor-US's counsel emailed to state, "Just to be clear the account Gyroor-US (a.k.a. Dongguan Saibotan Nengyuan Keji Co. Ltd.) has complied with the Court's PI order." Counsel also stated, "We need to verify the information you provided. We will get back to you once we have more information regarding your allegation." A true and correct copy of this correspondence is attached as Exhibit 7.

15.     On July 8, Plaintiffs contacted Gyroor-US's counsel (and counsel for other Gyroor-affiliated defendants) to advise that Plaintiffs would be moving for an order to show cause regarding the continued non-compliance the next day. Because Plaintiffs had previously raised these issues, Plaintiffs advised Gyroor-US that a meet and confer would be futile. Plaintiffs asked Gyroor's counsel if they had a preferred briefing schedule. A true and correct copy of this correspondence is contained in Exhibit 8 (this email contains subsequent correspondence that is not included here because it relates to a different motion that Defendants raised).

16.     The next day, Gyroor's counsel responded to request details of the noncompliance "so we can investigate the situation further." Gyroor also requested to meet and confer on the "briefing schedule" and advised Plaintiffs that they would be filing a motion for summary judgment. A true and correct copy of this correspondence is contained in Exhibit 8.

17.     That day, Plaintiffs responded with additional details and stated: "Counsel had also previously advised us that they would be investigating or verifying allegations of non-compliance (see attached). We never received a response in two months, and similar non-compliance has

continued as to more than a dozen additional short-term storefronts." A true and correct copy of this correspondence is contained in Exhibit 8.

I declare under penalty of perjury that the foregoing is a true and correct.

Executed on July 13, 2021, Chicago, IL.

/s/ Neil G. Nandi
Neil G. Nandi