IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HANGZHOU CHIC INTELLIGENT TECHNOLOGY CO. and UNICORN GLOBAL, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 20-cv-4806 |
| v. | ) ) ) | Judge Thomas M. Durkin Magistrate Judge Jeffrey Cole |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTIONS TO DISMISS AND STRIKE RESPONSIVE PLEADINGS OF DEFENDANT GYROOR**

Plaintiffs and Counterclaim Defendants Hangzhou Chic Intelligent Technology Co. and Unicorn Global, Inc. ("Plaintiffs"), in support of their motion to dismiss counterclaims under Rules 8, and 12(b)(6), strike affirmative defenses under Rule 12(f), and strike the Answer of Defendant Gyroor-US ("Defendant" or "Gyroor") under Local Rule 10.1, state as follows:

**Background**

On November 19, 2020, Plaintiffs filed their operative, Third Amended Complaint ("Complaint"). Dkt. 101. The Complaint alleges that Gyroor and various other online stores, primarily based outside of the United States, sold and are selling hoverboard products in violation of four design patents issued to Plaintiff Hangzhou Chic Intelligent Technology Co. On December 29, 2020, Plaintiffs served Gyroor with the Complaint and a temporary restraining order. *See* Dkt. 150. Gyroor filed a motion to dismiss under Rule 12(b)(6) on January 19, 2021—which this Court denied on April 1. Dkt. 165, 199. On April 29 Gyroor filed two more motions: a second motion to dismiss under Rule 12(b)(6) and a motion to dismiss or sever under Rule 20 and Rule 21. Dkt.

211, 217. The Court denied Gyroor's second Rule 12(b)(6) motion as successive, and Gyroor filed leave to file another Rule 12(b)(6) motion, which the Court also denied. Dkt. 226, 231, 238. The Court later denied Gyroor's Rule 20/Rule 21 motion. Dkt. 284. Currently pending before the Federal Circuit is Gyroor's appeal of this Court's denial of its Rule 20/Rule 21 motion. Dkt. No. 298; Case No. 21-2107.

After these rounds of motions and notices, and more than five months after first appearing, Gyroor then filed an Answer to the Complaint, Dkt. 309, which is deficient in a number of ways. The Answer states admissions or denials to each allegation without repeating or paraphrasing the allegation to which they are responding. *See generally* Dkt. 309. Many of the paragraphs simply recite numerous one-word paragraphs. *Id*. ¶¶ 29, 33–37, 39–44, 46–48, 50–52, 54–56.

In addition to answering, Gyroor also filed twelve affirmative defenses and four counterclaims. As for the affirmative defenses, each consists solely of conclusory, generic, and boilerplate one-sentence statements. *See Id.* at p. 5-6. As for the counterclaims, Gyroor asserts counts for non-infringement, invalidity, anti-trust, and malicious prosecution. *Id.* at p. 8-12. Gyroor's non-infringement counterclaim (Count I) is premised on the unrecognized theory that because Gyroor obtained a license to a third-party patent, it could not have infringed Plaintiffs' patents. *Id.* ¶¶ 7, 10, 11. The invalidity counterclaim (Count II) is premised on unsubstantiated allegations that Plaintiffs knowingly asserted patents that were invalid and unenforceable due to prior art, *i.e.*, Patent No. 739,906. *Id.* ¶¶ 19, 20, 22. Regarding the antitrust counterclaims (Count III), Gyroor attempts to define a proper market by baldly alleging, without more, that Plaintiffs "engaged in practices that create a monopoly in hoverboard industry." *Id.* ¶¶ 28-29, 31-32.

Finally, Gyroor's state law counterclaim for malicious prosecution (Count IV[1]) alleges, with no factual support, that Plaintiffs abused judicial process to maliciously bring claims against Gyroor without probable cause—despite the fact that the proceedings have not been terminated in favor of Gyroor. *Id.* ¶¶ 38, 39. Gyroor's operative allegations for each counterclaim are entirely conclusory and devoid of facts, with the majority of them based solely "upon information and belief." *See, e.g., Id.* ¶¶ 12, 15, 22, 27, 30-32, 39-40.

## Argument

Gyroor's counterclaims and affirmative defenses consist solely of conclusory, generic, and boilerplate statements that fail to satisfy the most basic of federal pleadings standards under *Iqbal* and *Twombly*. Therefore, this Court should dismiss and/or strike Gyroor's counterclaims and affirmative defenses, respectively, under Rules 8, 9(b), 12(b)(6), and 12(f). In addition, because the Answer fails to comply with Local Rule 10.1, this Court should strike it in its entirety.

### I. The Court Should Dismiss Gyroor's Counterclaims for Failing to State a Claim under Rule 12(b)(6)

Gyroor asserts four counterclaims: non-infringement (Count I), invalidity (Count II), antitrust (Counts III), and malicious prosecution (Count IV). On their face, none of the counterclaims satisfy the federal pleading standard under *Iqbal* and *Twombly* because they are bare legal conclusions unsupported by any well-pleaded allegations. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). This Court has routinely applied the *Iqbal*/*Twombly* standard to patent cases. *See, e.g., Cleversafe, Inc. v. Amplidata, Inc.*, No. 11 C 4809, 2011 WL 6379300, 2011 U.S. Dist. LEXIS 145995, at *3 (N.D. Ill. Dec. 20, 2011) (relying on *Iqbal* and *Twombly* to dismiss, under Rule 12(b)(6), invalidity counterclaims baldly claiming,

---

[1] Despite being the fourth and final counterclaim, Gyroor mistakenly labeled this counterclaim "Count X".

like here, that the patents were "invalid for failing to comply with provisions of United States patent laws, including one or more of 35 U.S.C. §§ 101-103 and/or 112"); *see also Groupon Inc. v. MobGob LLC*, No. 10 C 7456, 2011 WL 2111986, 2011 U.S. Dist. LEXIS 56937 at *12–13 (N.D. Ill. May 25, 2011) (dismissing similar counterclaims under Rule 12(b)(6) and holding that application of basic pleading standards under Rule 8 does not conflict with local patent rules). The deficiencies of each counterclaim are explained below.

### A. Non-infringement Counterclaim (Count I)

The non-infringement count is twelve paragraphs. The first paragraph incorporates all prior paragraphs. Dkt. 309, ¶ 6. The second paragraph alleges that Gyroor's products are based on a third-party hoverboard design patent for which Gyroor has obtained a license ("Licensed Patent"). *Id.* ¶ 7. The third and fourth paragraphs recite the *Egyptian Goddess* "ordinary observer" standard for design patent infringement. *Id.* ¶ 8, 9. The next three paragraphs apply this legal standards to Gyroor's accused products and the asserted patents, purporting to form a basis for non-infringement. *Id.* ¶ 10-12. The remaining five paragraphs are conclusory statements regarding damages, intent, and requests for relief—all of which are unsupported by any factual allegations. *Id.* ¶ 13-17. The three operative allegations are:

- "It is obvious that Defendant's Licensed Patent D808,857 has a unique design from the Patents-in-Suit, namely the shape and size of the fenders that cover the wheels and the curved lines on the boards surface. In view of the ornamental features and ornamental aspects of functional features of the alleged infringing Gyroor-US' products, an ordinary observer, taking into account the prior art, would not consider that the Gyroor-US' products are of the same design shown in D737,723. No reasonable factfinder could find the ordinary observer test met here because the ordinary observer would be drawn to those aspects of the claimed design that differ from the prior art and could not conclude that the alleged Gyroor-US products appropriated those aspects." *Id.* ¶ 10.

- "In view of limitations contained in the claims of the Patents-in-Suit, those claims are not and cannot be infringed by the use, manufacturing, sale, and offer for sale of certain hover boards by Defendant, either directly or indirectly by inducement, as alleged in the TAC." *Id.* ¶ 11.

- "Upon information and belief, in view of the prosecution history or judicial estoppel which applies to the claims of the Patents-in-Suit, those claims are not infringed by and are not and cannot be infringed by the use, manufacturing, sale, and offer for sale of certain hover boards by Defendant, either directly or indirectly by inducement, as alleged in the TAC." *Id.* ¶ 12.

Gyroor alleges that because it purportedly possesses a license to a third-party's unrelated patent, it somehow cannot be found to infringe the patents asserted in this action. *See* Dkt. 309, ¶¶ 7, 10. To begin, that defense is not a substantive defense under U.S. patent law. *See, e.g.*, 2 Janice M. Mueller, *Mueller on Patent Law: Patent Enforcement*, 569-764 (2020). And, of course, this defense does not exist because a patent license "simply provides the licensee with a guarantee that it will not be sued for engaging in conduct that would infringe ***the patent in question***." *U.S. Philips Corp. v. ITC*, 424 F.3d 1179, 1189 (Fed. Cir. 2005) (emphasis added). To be clear, Plaintiffs do not own this third-party patent, and have not provided a license to Gyroor for any of the asserted patents—and Gyroor has not asserted otherwise. Instead, Gyroor thinks that because its product is "based on" the design of an unrelated third-party patent, it somehow cannot infringe the asserted patents. Dkt. 309, ¶¶ 7, 10. But Gryoor's license only guarantees it will not be sued for infringing the third-party patent, and does not convey any affirmative right to practice it. *See TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1275 (Fed. Cir. 2009) (a patent license "cannot convey an affirmative right to practice a patented invention" but instead "can only convey a freedom from suit" based on the licensed patent). Accordingly, even if the Gyroor product shown in ¶ 7 is based on a third-party patent, this fact has no bearing whatsoever on whether Gryoor infringes Plaintiffs' asserted patents.

Lastly, the non-infringement allegations rely on the existence of some purported external defect—for example, limitations in the claims of the asserted patents or flaws in the prosecution history that prevent infringement from occurring—but those counterclaims fail to specify what

5

that defect is. Dkt. 309, ¶¶ 11, 12. "Because [Defendant] has not alleged a single fact in support of its claim, it fails to give [Plaintiffs] notice of the basis of its claim." *Groupon*, 2011 U.S. Dist. LEXIS 56937, at *12. Because the non-infringement counterclaim fails to satisfy the pleading requirements of Rule 8, or even raise a recognized substantive non-infringement defense under U.S. patent law, the Court should dismiss Count I under Rule 12(b)(6).

### B. Invalidity Counterclaim (Count II)

The invalidity count is seven paragraphs. The first paragraph incorporates all prior paragraphs. Dkt. 309, ¶ 18. The second and third paragraphs include one-sentence allegations purporting to assert bases for invalidity, and the remaining four paragraphs are conclusory statements regarding damages, intent, and requests for relief—all of which are unsupported by any factual allegations. *Id.* ¶ 19-24. The two one-sentence allegations are:

- "The Patents-in-Suit are substantially similar to U.S. Design Patent D739,906. *See* Ex. 2." *Id.* ¶ 19.

- "Defendant is entitled to a declaratory judgment that the claims of the Patents-in-Suit are invalid and/or unenforceable under 35 U.S.C. §§101 *et seq.*, for failing to meet the requirements of at least 35 U.S.C. §§101, 102, 103, and/or 112." *Id.* ¶ 20.

Taken together, these statements are bare legal conclusions unsupported by any well-pleaded allegations, and therefore none of them satisfy the federal pleading standard under *Iqbal* and *Twombly*. *See, e.g.*, *Cleversafe,* 2011 U.S. Dist. LEXIS 145995 at *3 (dismissing invalidity counterclaims under Rule 12(b)(6) for baldly claiming patents were "invalid for failing to comply with provisions of United States patent laws, including one or more of 35 U.S.C. §§ 101-103 and/or 112"); *Groupon*, 2011 U.S. Dist. LEXIS 56937 at *12–13 (dismissing invalidity counterclaims under Rule 12(b)(6) for failing to satisfy basic pleading standards under Rule 8).

To be fair, "[d]istrict courts across the country, including in the Northern District of Illinois, have reached opposite conclusions regarding whether to dismiss a factually bare invalidity

6

counterclaim." *Cleversafe,* 2011 U.S. Dist. LEXIS 145995 at *4-5. Compare *Pfizer Inc. v. Apotex Inc.*, 726 F. Supp. 2d 921, 938 (N.D. Ill. 2010), which allowed bare assertions of patent invalidity to survive dismissal under Rule 12(b)(6) because Local Patent Rule 2.3 requires additional disclosures at a later stage, with *Groupon*, 2011 U.S. Dist. LEXIS 56937, at *13, which held that "[t]his Court will not excuse [Defendant's] inadequate pleadings simply because the local patent rules require the company to provide more details regarding its claims of invalidity at a later point." But *Pfizer* is distinguishable because in that case, the invalidity counterclaims were preceded by 91 paragraphs of substantive factual allegations, including facts describing a specific basis for patent invalidity. *Pfizer*, Case No. 08-CV-7231, Dkt. 110, at 30, ¶ 64 ("[Defendant's] ANDA included and contains a paragraph IV certification to the patents-in-suit, stating…that such patents are invalid and/or unenforceable"). By contrast, the invalidity counterclaims in *Groupon* merely accused the plaintiff-patentee of "failing to comply with one or more provisions of…35 U.S.C. §§ 101-103, 112, and 116"—utilizing almost the same language Gyroor adopts in its invalidity counterclaim here. *Groupon*, Case No. 10-cv-07456, Dkt. 24, ¶ 32. This Court reiterated its position that invalidity counterclaims that conclusively state the asserted patents are "invalid for failing to comply with provisions of United States patent law, including one or more of 35 U.S.C. §§ 101-103 and/or 112" are not sufficiently pled under *Iqbal* and *Twombly*. *Cleversafe*, at *4-5.

Gyroor's unsubstantiated assertion that the "Patents-in-Suit are substantially similar to U.S. Design Patent D739,906" likewise does not satisfy the pleading standard for invalidity counterclaims. Dkt. 309, ¶ 19. This Court has held that conclusory statements regarding "substantial similarity" of the asserted patent and the prior art are insufficient to establish invalidity under 35 U.S.C. § 102. *Tactical Med. Solutions, Inc. v. Karl*, No. 14 C 06035, 2019 WL 2435859, 2019 U.S. Dist. LEXIS 97545, at *21 (N.D. Ill. June 11, 2019); *Cf. Helferich Patent Licensing,*

7

*LLC v. J.C. Penney Corp.*, No. 1:11-cv-9143, Dkt. 19 ¶¶ 28–29, 34–35, 40–41, 2012 WL 3776892, 2012 U.S. Dist. LEXIS 123171 at *8 (N.D. Ill. Aug. 28, 2012) (invalidity counterclaim satisfied pleading standard because defendant spelled out that the alleged invalidity was due to prior art and specifically identified the categories of prior art.). Here, Gyroor's allegation is generic and fails to include a single fact or argument sufficiently establishing that the D739,906 patent anticipates or otherwise invalidates Plaintiffs' asserted patents. As a practical matter, the D739,906 patent was issued *after* the priority date for two of the asserted patents (D737,723 and D738,256) and was already considered by the USPTO in the prosecution of the two other asserted patents (D785,112 and D784,195), thus it is not eligible as prior art for purposes of Gyroor's invalidity counterclaim. Because the invalidity counterclaim fails to satisfy the pleading requirements of Rule 8, the Court should dismiss Count II under Rule 12(b)(6).

### C. Antitrust Counterclaim (Count III)

Gyroor's antitrust counterclaims require dismissal for two, independent reasons: (1) they do not satisfy Rule 8; and (2) the alleged conduct raises no violation of the antitrust laws.

First, the Supreme Court has emphasized the need for rigorous enforcement of Rule 8 for antitrust claims. *See Twombly*, 550 U.S. at 558. Applied here, the asserted counterclaims fall well short of Rule 8. At the onset, Gyroor fails to even identify under which section of the Sherman Act it brings these claims. *See generally*, Dkt. 309, ¶¶ 25-33. Because Gyroor has not alleged an agreement under Section 1, *cf.* 15 U.S.C. § 1 (prohibiting every "contract, combination . . . or conspiracy, in restraint of trade"), Gyroor presumably intended to bring these claims under Section 2 (prohibiting every "attempt to monopolize . . . any part of the trade or commerce among the several States"). In order to assert such a claim, Gyroor must properly define a relevant market in which it alleges Plaintiffs have purported monopoly power. *Lawrence H. Flynn, Inc. v. Philip*

8

*Morris USA, Inc.*, No. 05 C 318, 2006 WL 211823, 2006 U.S. Dist. LEXIS 2438, at *13-14 (N.D. Ill. Jan. 19, 2006) ("In order to satisfy the market power requirement, a plaintiff must establish that an alleged agreement has produced adverse anti-competitive effects within a specifically defined and relevant geographic market."). Gyroor alleges nothing of the sort. Instead, it conclusively states, "Plaintiffs engaged in practices that create a monopoly in hoverboard industry." Dkt. 309, ¶ 28. This stand-alone statement is inadequate to define a relevant market over which Plaintiffs have purported monopoly power, so Gyroor's antitrust claim fails on this point alone.

Second, even if Gyroor had properly pled market power, its antitrust claim would still fail as a matter of law. Gyroor's antitrust claim appears to be based solely on Plaintiffs' current attempts to enforce their design patent rights through this litigation. But patentees, like Plaintiffs here, enjoy immunity from antitrust laws if they conformed to the patent law in procuring and enforcing their patents. *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1304 (Fed. Cir. 2004) ("A patent owner who brings a suit for infringement, without more, is generally exempt from the antitrust laws for that action…."); *see also* 35 U.S.C. §§ 1 *et. seq.* (The Patent Act).

Although none are present here, there are rare circumstances in which a patentee may be stripped of this immunity. *Q-Pharma,* 360 F.3d at 1304. One example is when a patentee engages in "sham litigation" by attempting to enforce a patent that it knows is invalid, unenforceable, or not infringed. The Supreme Court established a two-prong test for determining whether litigation is a "sham": (1) the lawsuit must be objectively baseless such that no reasonable litigant could realistically expect success on the merits; and (2) the court should determine whether the baseless suit conceals an attempt to interfere directly with a competitor's business relationships through the use of the governmental process—as opposed to the outcome of that process—as an anticompetitive weapon. *Q-Pharma, Inc.*, 360 F.3d at 1305. A suit is immunized from antitrust

9

liability if an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome. Only if the suit is found to be objectively baseless may the court proceed to the second prong. *Id.* But here, Gyroor alleges that Plaintiffs engaged in anticompetitive practices by initiating two lawsuits against it, thereby engaging in a scheme that "restrains defendants' business [and] pressure[s] small business defendant[s]." Dkt. 309 ¶¶ 26, 28, 29, 31. Such statements fail to properly allege that Plaintiffs' lawsuits are objectively baseless. Thus, any such "sham litigation" claims hold no water here.

Because counterclaim Count III is insufficiently pleaded and does not state a legally cognizable claim, the Court should dismiss this Count under Rule 12(b)(6).

### D. Malicious Prosecution (Count IV)

To bring an Illinois state law counterclaim for malicious prosecution, the counterclaim plaintiff must plead facts to establish the following elements: "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Joiner v. Benton Community Bank*, 82 Ill. 2d 40, 45 (S. Ct. Ill. 1980). The absence of even one of these essential elements bars Gyroor from pursuing this claim. *Id.* Most notably, Gyroor has failed to allege that there was a termination in its favor of the original action that they claim was maliciously prosecuted—nor could it, as this claim is based on the present litigation that is still pending. On that point alone, its malicious prosecution claim should be dismissed under Rule 12(b)(6).

## II. The Court Should Strike Gyroor's Affirmative Defenses Under Rule 12(f)

The Court may strike from a pleading an insufficient defense. *See* Fed. R. Civ. P. 12(f). "Affirmative defenses are pleadings and, therefore, are subject to all pleading requirements of the

Federal Rules of Civil Procedure," including Rule 8(a). *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Pleading affirmative defenses that are "nothing but bare bones conclusory allegations" may be grounds for sanctions. *Id.* at 1295; *see also Cleversafe*, 2011 U.S. Dist. LEXIS 145995, at *6 ("'[B]are bones conclusory allegations' are insufficient to state an affirmative defense"). Even before *Iqbal* and *Twombly*, this Court published an opinion expressly to correct "a gaggle of fundamental pleading errors that continue to crop up in responsive pleadings." *State Farm Mut. Auto. Ins. Co. v. Riley,* 199 F.R.D. 276, 278 (N.D. Ill. 2001). One such error was the improper use of affirmative defenses in patent cases. As the Court stated:

> It is unacceptable for a party's attorney simply to mouth ADs in formula-like fashion ("laches," "estoppel," "statute of limitations" or what have you), for that does not do the job of apprising opposing counsel and this Court of the predicate for the claimed defense—which is after all the goal of notice pleading.

*Id.* at 279. Such threadbare assertions of affirmative defenses "will [] be stricken." *Id.* Gyroor's Second Affirmative Defense states exactly what the Court prohibits under *State Farm*: "One or more of the claims of the [Complaint] are barred by the doctrines of waiver, acquiescence, estoppel, ratification, laches, and/or unclean hands." Dkt. 309 at p. 5.

Because Gyroor's affirmative defenses are pleadings, they are subject to the more rigorous modern pleading standards outlined in *Iqbal* and *Twombly*. *See Sarkis' Cafe, Inc. v. Sarks in the Park, LLC*, 55 F. Supp. 3d 1034, 1040 (N.D. Ill. 2014) (applying the *Iqbal-Twombly* standard to patent infringement defendant's affirmative defenses and granting motion to strike under Rule 12(f)); *Groupon*, 2011 U.S. Dist. LEXIS 56937, at *6 (the Court "must apply" the *Iqbal* and *Twombly* standards to affirmative defenses). The Court should strike affirmative defenses that are "threadbare recitals of elements" that would be insufficient to survive a 12(b)(6) motion to dismiss. *Manley v. Boat/U.S. Inc.*, No. 13-cv-5551, 2016 WL 1213731, 2016 U.S. Dist. LEXIS 41036, at

11

*18 (N.D. Ill. Mar 29, 2016); *see also Sarkis' Café*, 55 F. Supp. 3d at 1040 (striking affirmative defenses that were "presented in a single sentence" without "any factual support").

Here, each of Gyroor's affirmative defenses is simple a conclusory, one sentence statement. These defenses seem to have been pasted from a menu, without any application to this case. For example, Gyroor makes broad, conclusory statements such as "Plaintiffs have not sustained damages" and "Plaintiffs' claims…are barred by *res judicata* and/or collateral estoppel" without providing any facts in support or even explaining how these defenses apply to the case. Dkt. 309, at p. 5-6. Gyroor also alleges that "one or more of the claims" fail to state a claim.[2] But "a defendant may not plead a plaintiff's failure to state a claim as an affirmative defense." *Id*. at 5; *Sarkis' Café*, 55 F. Supp. 3d at 1041.

Although each affirmative defense suffers from similar deficiencies, the defenses of Plaintiffs' "fail[ure] to comply with the duty of candor required by the USPTO" and "patent misuse" warrant separate consideration. Dkt. 309, pp. 5-6, ¶¶ 7, 12. These "fraud on the PTO" allegations are subject to Rule 9(b). *See Sun-Flex Co. v. Softview Computer Prods. Corp.,* 750 F. Supp. 962 (N.D. Ill. 1990) (granting motion to strike under Rule 12(f) because defendant's inequitable conduct affirmative defense failed to "specify the time, place, and content of any alleged misrepresentations that plaintiff made to the PTO."). Gyroor therefore must allege the specific individual accused of inequitable conduct, along with facts to support an inference that the named individual both knew of the material information allegedly withheld, and deliberately withheld it with an intent to deceive the PTO. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009). But Gyroor does not state what the misrepresentations were, the

---

[2] The "one or more" pleading recurs in affirmative defenses 2, 4, 6, and 7, leaving Plaintiffs without any notice as to which claims those defenses even apply. *See, e.g.*, Dkt. 309 at p. 5, ¶¶ 2, 4, 6, 7.

specific individual who made them, when they were made, where they were made, and how they were made. Taken together, Gyroor's affirmative defenses fail to satisfy the pleading requirements of Rule 8, let alone the higher specificity requirements of Rule 9(b). Because the affirmative defenses are simply bare legal conclusions, this Court should strike each of them under Rule 12(f).

### III. The Court Should Strike Plaintiffs' Entire Answer For Non-Compliance with Local Rule 10.1

One of the "fundamental pleading errors" the *Riley* court addressed was non-compliance with Local Rules. *Riley*, 199 F.R.D. at 279. Local Rule 10.1 requires Gyroor to provide a "concise summary of the paragraph to which" each paragraph of its answer is directed. N.D. Ill. L.R. 10.1. This Court has imposed this obligation on parties "[f]or decades." *Riley*, 199 F.R.D. at 279. "As a matter of practice, that requirement is most often complied with by a defendant's verbatim copying of the complaint's allegations in each paragraph, followed immediately by defendant's response to that paragraph." *Id.* This Court stated 20 years ago, "there is no justification for any lawyer's noncompliance with such a plain directive of long standing—something that should be known by everyone practicing in this district." *Id.*

Yet, Gyroor has failed to comply with Local Rule 10.1. Notably, the paragraphs do not fully summarize the corresponding Complaint paragraph, let alone repeat it verbatim. Most paragraphs do not even do this much, including but not limited to the numerous one-word paragraphs. *See, e.g.*, Dkt. 309, ¶¶ 29, 33–37, 39–40. 42–44, 46–48, 50–52, 54–56.

The *Riley* court recommended correcting such a deficiency by "filing a full-blown self-contained amended pleading, rather than just an amendment limited to correcting those errors." 199 F.R.D. at 280. This practice "avoids . . . patchwork pleading, in which more than one document must be examined to see the totality of the responding party's pleadings." *Id.*

13

Particularly in light of the numerous pleading errors identified in this motion in Sections I & II, this Court should strike the full pleading for failing to comply with L.R. 10.1.

## CONCLUSION

Gyroor's counterclaims and affirmative defenses fail to comply with pleading standards under Rules 8, 9 and 12, and the Answer fails to comply with Local Rule 10.1. Its pleading is replete with conclusory, generic, and boilerplate statements and contains no meaningful supporting factual allegations. Accordingly, the Court should dismiss Gyroor's counterclaims under Rule 12(b)(6), strike its affirmative defenses under Rule 12(f), and strike its Answer under L. R. 10.1.

Date: July 14, 2021

Respectfully Submitted,

LOEB & LOEB LLP

/s/ *Marwa Abdelaziz*
Adam Kelly
Doug Masters
Arthur Yuan
Neil Nandi
321 North Clark Street, Suite 2300
Chicago, Illinois 60654
Tel.: 312-464-3100
Email: akelly@loeb.com
Email: dmasters@loeb.com
Email: ayuan@loeb.com
Email: nnandi@loeb.com

Marwa Abdelaziz (admitted *pro hac vice*)
LOEB & LOEB LLP
345 Park Avenue
New York, New York 10154
Tel.: (212) 407-4000
Email: mabdelaziz@loeb.com