UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ABC Corporation I et al,<br><br>     *Plaintiff,*<br> v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>     *Defendants*. | CASE NO. 1:20-cv-04806<br><br>**Judge:** Honorable Thomas M. Durkin |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GYROOR-US'
EMERGENCY MOTION TO DISSOLVE THE PRELIMINARY INJUNCTIONS**

  Defendant Gyroor-US ("Defendants"), through counsel, files this Emergency Motion to Dissolve the Preliminary Injunctions against Defendant entered on November 24, 2020 [Dkt. No. 113] and on December 23, 2020 [Dkt. No. 147]. Defendant implores this Court to grant an immediate review.

### Introduction

  ***First***, after its assets have been restrained for over eight months, Defendant has depleted all of its resources to keep the company afloat. *See* Aff. of Xie, ¶10-14, attached hereto as Ex. 1. Defendant will be forced to close business by the end of August if no immediate action is taken. *Id*. ¶15. Therefore, an emergency motion is appropriate in the present case.

  ***Second***, Plaintiffs essentially applied and obtained *ex parte* preliminary injunctions, because the preliminary injunctions were entered before service of process was effectuated on Defendant, and before any notice was given to Defendant as required under Fed. R. Civ. P. 65(a)(1). Both the Seventh Circuit and Federal Rules of Civil Procedures explicitly prohibited *ex parte* preliminary injunctions.

  ***Third***, the noninfringement is obvious in this case. The accused product is based on a valid U.S. Design Patent – D808,857 ("D'857 patent," attached here to as Exhibit 2), which Defendant is authorized to use. Aff. of Xie, Ex. 1, ¶ 3. Plaintiffs lack likelihood of success on their infringement allegations.

1

## Factual Background

The evidence provided by Plaintiffs identifies an Amazon listing, titled "Gyroor T581 Hoverboard 6.5" off Road All Terrain Hoverboards with Bluetooth Speaker & LED Lights Two-Whell Self Balancing Hoverboard with Kart Seat Attachment UL 2272 Certified for Kids & Adults (Blue)." [Dkt. No. 101-7, p.11].

Plaintiffs allege that four of Plaintiffs' U.S. Design Patents – D737,723 ("D'723 patent"), D738,256 ("D'256 patent"), D785,112 ("D'112 patent"), D784,195 ("D'195 patent") ("Patents-in-Suit") [Am. Compl., Dkt. No. 101, ¶7; Dkt. No. 101-13] have been infringed by Defendant's product ASIN No. B08HW9TTBG ("Accused Product") [Dkt. No. 101-14, p.2; Dkt. No. 101-7, p.16].

Defendant accepts that Plaintiffs are the rightful owner of the Patents-in-Suit.

Defendant does not dispute the fact that Defendant sold the Accused Product.

## Procedural Background

On November 20, 2020, Plaintiffs filed a motion for preliminary injunction. [Dkt. No. 105].

On November 24, 2020, a preliminary injunction hearing was held. [Dkt. No. 112].

On November 24, 2020, a preliminary injunction order was entered. [Dkt. No. 113].

On December 24, 2020, a modified preliminary injunction order was entered. [Dkt. No. 147].

Plaintiff never received notice of the preliminary injunction. Aff. of Xie, Ex. 1, ¶ 8.

Service of process was not effectuated on Defendant until January 29, 2021. *See* Email Commc'n 1, attached hereto as Ex. 3; and Email Commc'n 2, attached hereto as Ex. 4; *see also* Aff. of Xie, Ex. 1, ¶ 6-7.

| Timeline ||
|---|---|
| **Date:** | **Event:** |
| 07/10/2020 | Initial Filing |
| 11/20/2020 | Motion for Preliminary Injunction Filed [Dkt. No. 105] |
| 11/24/2020 | Hearing for Preliminary Injunction held on November 24, 2020 |
| 11/24/2020 | Preliminary Injunction Order entered [Dkt. No. 113] |
| 12/23/2020 | Modified Preliminary Injunction Order entered [Dkt. No. 147] |
| 12/29/2020 | ***Initial Email Service of Process*** (attempted without Summons) *See* Ex. 3 |
| 01/29/2021 | ***Second Email Service of Process*** (with Summons) *See* Ex. 4 |

**Arguments**

I. **An Emergency Order to Dissolve the Preliminary Injunction is Appropriate Because Any Further Delay Would Force Defendant Out of Business**

Local Rule 77.2(a)(3) defines as "a matter of such a nature that the delay in hearing it that would result from its being treated as any other matter would ***cause serious and irreparable harm*** to one or more of the parties to the proceeding."

Here, after its assets have been restrained for over eight months, Defendant has depleted all of its resources to keep the company afloat. Aff. of Xie, Ex. 1, ¶10-14. Because of the cash flow restrains, Defendant had to layoff employees and borrow money in order to keep the business afloat. *Id*. As a result of the preliminary injunctions, Defendants' business reputation has been seriously damaged, and its ranking and market share has dropped significantly. *Id*. ¶17.

If Defendant does not receive the frozen asset, "it will have no other option but to close business." *Id*. ¶15. It would be prejudicial to force Defendant to close business when the Accused Product does not infringe the Patents-in-Suite.

Therefore, any further delay would cause serious and irreparable harm to Defendant. Accordingly, an emergency motion is appropriate in the present case.

II. **The Preliminary Injunctions against Defendant Must be Dissolved Due to Procedural Errors**

Without service of process and sufficient notice of preliminary injunctions, Plaintiffs essentially applied and obtained *ex parte* preliminary injunctions in this case.

The Seventh Circuit held that obtaining an *ex parte* preliminary injunction "was manifestly error" because it is explicitly prohibited under Rule 65(a)(1). *Wheeler v. Talbot*, 770 F.3d 550, n.11 (7th Cit. 2014) (citing *Consolidation Coal Co. v. Disabled Miners of S. West Virginia*, 442 F.2d 1261, 1269 (4th Cir. 1971)).

Here, the preliminary injunctions must be dissolved because the preliminary injunctions were entered **1)** before service of process was effectuated on Defendant; and **2)** before proper notice was given to Defendant as required under Fed. R. Civ. P. 65(a)(1).

A. <u>This Court Lacked Personal Jurisdiction over Defendant When Preliminary Injunction was Entered</u>

"Without service, there is no personal jurisdiction." *Redden v. Jenkins*, 2017 U.S. Dist. LEXIS 158139, at*6 (N.D. Ill. 2017) (citing *Sikhs for Justice v. Badal*, 736 F.3d 743, 745 (7th Cir. 2013)). A federal court may issue an injunction only if it has jurisdiction over the parties. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800, (7th Cir. 2013) ("In order for the district court's preliminary injunction to be valid, that court had to have personal jurisdiction over the defendant") (citing *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 598 (7th Cir. 2007).

Here, service of process was not effectuated on Defendant until January 29, 2021, two months after the preliminary injunction order was entered. *See* Ex. 4. Accordingly, the preliminary injunctions against Defendant must be dissolved because the Court lacked personal jurisdiction over Defendant when the preliminary injunctions were entered.

B. <u>Plaintiffs' Motion for Preliminary Injunction is Defective Due to Lack of Notice.</u>

"A court may not issue a preliminary injunction without advance notice to the adverse party." *Wheeler*, 770 F.3d at 552 (citing Fed. R. Civ. P. 65(a)(1)).

Here, notice of the preliminary injunction was not given to Defendant. Defendant did not have actual notice or knowledge of the preliminary injunction. Aff. of Xie, ¶8. Accordingly, the preliminary injunctions against Defendant must be dissolved due to Plaintiffs' violation of Rule 65(a)(1).

III. **The Preliminary Injunctions against Defendant Must be Dissolved Because Plaintiffs Lack Likelihood of Success on the Merits**

The Accused Product was manufactured based on the D'857 Patent. Aff. of Xie, Ex. 1, ¶ 3. The noninfringement in this case is obvious. **A)** The Accused Product is based on a valid U.S Design Patent. **B)** Applying the ordinary observer test, an ordinary observer will either find the Accused Product substantially similar to the D'857 patent; or will be drawn to those aspects of the claimed designs of the Patents-in-Suit that differ from the D'857 patent, and those different aspects would make the distinctions between the Patents-in-Suit and accused designs readily apparent.

A. D'857 Patent is presumed valid

"A patent shall be presumed valid." 35 U.S.C. § 282. This presumption applies to design patents. *Spigen Korea Co. v. Ultraproof, Inc.*, 955 F.3d 1379, 1383 (Fed. Cir. 2020). It is especially true in this case because all four Patents-in-Suit were cited as references by the patent examiner in the D'857 patent. [Dkt. No. 334, p. 4]. Consequently, the Accused Product designed and manufactured based on the D'857 Patent does not infringe the Patents-in-Suit.

B. Ordinary Observer Test

The "ordinary observer" test focus on whether "the accused design could not reasonably be viewed as so similar to the claimed design that a purchaser familiar with the prior art would be deceived by the similarity between the claimed and accused designs", "'inducing him to purchase one supposing it to be the other.'" *Id*. at 701 (quoting *Egyptian Goddess, Inc.* 543 F.3d at 683).

"The ordinary observer is considered to be familiar with prior art designs, and '[w]hen the differences between the claimed and accused designs are viewed in light of the prior art, the attention of the hypothetical ordinary observer may be drawn to those aspects of the claimed design that differ from the prior art." *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Access., Inc.*, 942 F.3d 1119, 1129, (Fed. Cir. 2019) (citing *Egyptian Goddess*, 543 F.3d at 681). "If the claimed design is close to the prior art designs, small differences between the accused design and the claimed design assume more importance to the eye of the hypothetical ordinary observer." *Id*.; *see also Lanard Toys, Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1344, (Fed. Cir. 2020).

Here, in light of the D'857 patent, an ordinary observer will either **a)** find the Accused Product substantially similar to the D'857 patent, which does not infringe the Patents-in-Suit; or **b)** will be drawn to those aspects of the claimed designs of the Patents-in-Suit that differ from the D'857 patent; and those different aspects would make the distinctions between the Patents-in-Suit and Accused Products readily apparent to an ordinary observer.

Top View Comparison





The most prominent ornamental features from the Top View are the curved lines on the two standing pads. Both D'723 and D'256 Patents feature straight divergent lines. Neither D'195 nor D'112 Patents features any design on standing pads (broken lines).

The Accused Product has unique curved lines that match exactly the ornamental design of D'857 Patent, which is plainly dissimilar from the design the Patents-in-Suit.

6

Bottom View Comparison





The most prominent ornamental features from the Bottom View are the size, numbers, shape, and arrangement of the vent holes. Only D'112 features a pair of 12 small closely arranged vent holes.

The size, numbers, shape, and arrangement of the vent holes featured in the Accused Product match the ornamental design of D'857 Patent, which is plainly dissimilar from the D'112 Patent.

Furthermore, the vertical ridges in the center of the Accused Product are ornamental features that are unique to the Accused Product and D'857 Patent.

7

Side View Comparison



None of the Patents-in-Suit features any design of the wheels (broken lines). *See* Aff. of Xie, p.4, Ex. 3. The wheels of the Accused product have a unique pentamerous design. Five irregular hexagons are evenly distributed on the wheel. This unique design match exactly the ornamental design of D'857 Patent, which is plainly dissimilar from the design the Patents-in-Suit.

The designs of the fenders are also distinctive. Each Patents-in-Suit has its own ornamental design. The fenders in D'723, D'195 and D'112 patents cover the top of the wheels fully. The fenders in D'256 patent almost cover the top of the wheels fully.

The Accused Product has a very different design of the fenders. The fenders in the Accused Product only covers the tip of the top wheels. Most of the wheels are not covered by the fender.

Front/Back View Comparison





The most prominent ornamental features from the Front/Back View are the size, curve and shape of the fenders that cover the wheels. Each Patents-in-Suit has its own ornamental design.

The Accused Product has its own unique design of the fenders. The size of the fenders is substantially smaller, only covering less than one eighth of the wheels. The fenders also feature sharp edges which are distinctive from the smooth curved surfaces featured in the Patents-in-Suit.

Furthermore, the center of the Accused Product caves in, which match exactly the ornamental design of D'857 Patent. All the Patents-in-Suit protrude in the center.

9

Perspective View Comparison





The perspective view comparison shows the overall visual distinctions between the Patents-in-Suit and the Accused Product.

Each element of the ornamental feature, viewed together, only enhances the dissimilarity between the Accused Product and the Patent-in-Suite. The combination of the substantially dissimilar standing

10

pads, the wheels, and the fenders creates an overall visual impression that no ordinary observer would consider that the Accused Product and the Patents-in-Suit are of the same design.

## **Conclusion**

For the foregoing reasons, Defendant Gyroor-US respectfully requests that the Court dissolve the Preliminary Injunctions against Defendant.

Date: 08/09/2021 /s/ Tianyu Ju
Tianyu Ju, Esq.
GLACIER LAW PLLC
200 E. Randolph Dr., Ste. 5100
Chicago, IL 60601
***Attorney for Defendants***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this August 9, 2021, I electronically filed the foregoing file with the Clerk of Court using the CM/ECF system, and service was perfected on all counsel of record and interested parties through this system, which will deliver a true and correct copy of the foregoing documents via CM/ECF.

Date: 08/09/2021  /s/ Tianyu Ju