# Exhibit 1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ABC Corporation I et al,<br><br>*Plaintiff*,<br><br>v.<br><br>THE PARTNERSHIPS and<br>UNINCORPORATED ASSOCIATIONS<br>IDENTIFIED ON SCHEDULE "A",<br><br>*Defendant*. | **CASE NO.** 1:20-cv-04806<br><br>**Judge:** Honorable Thomas M. Durkin |

**DEFENDANT GYROOR-US' FIRST AMENDED**
**ANSWER TO COMPLAINT AND AFFIRMTIVE DEFENSES**

    **NOW COME** Defendant Gyroor-US, by and through its attorney, submit its first Amended

Answers to the Third Amended Complaint and Affirmative Defenses and states as follows:

**FIRST AMENDED ANSWER TO COMPALINT**

**I.**    **IN ANSWER TO THE ALLEGATIONS OF NATURE OF ACTION**

1.    This action is for patent infringement arising under the patent law of the United States, 35 U.S.C. § 1

et seq., including 35 U.S.C. §§ 271, 281, 283, 284, 285, and 289.

**Answer:** Admitted that Plaintiffs filed this action for patent infringement under the United States

patent laws.  Defendant otherwise denies any infringement of any valid and enforceable claim of any

patent identified in the Third Amended Complaint.

2.    Plaintiffs have filed this action to combat e-commerce store operators who trade upon Plaintiffs'

reputation and goodwill by making, using, offering for sale, selling and/or importing into the United

States for subsequent sale and use of unauthorized and unlicensed products, namely the self-

balancing transport devices known as hoverboards shown in Exhibit 1, that infringe Plaintiffs'

patented designs ("Infringing Products"). Defendant create e-commerce stores operating under one or

more seller aliases or fictitious names identified in Schedule A, Schedule B, and Schedule C that are

1

making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of Infringing Products to unknowing consumers. Defendant Internet Stores share unique identifiers establishing a logical relationship between them and Defendant' operation, which arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendant attempt to avoid and mitigate liability by operating one or more Defendant Internet Stores to conceal both their identities and the full scope and interworking of their operation.

**Answer:** Defendant denies the allegations of this paragraph in their entirety for lack of knowledge as to the activities of other Defendant, and specifically denies that it engaged in any conduct constituting infringement of any valid and enforceable claim of any patent identified in the Third Amended Complaint.

3.    Plaintiffs are forced to file this action to combat Defendant' infringement of their patented designs, as well as to protect unknowing consumers from purchasing Infringing Products over the Internet. Plaintiffs have been and continue to be irreparably damaged from the loss of their lawful patent rights to exclude others from making, using, selling, offering for sale, and importing their patented designs as a result of Defendant' actions and seeks injunctive and monetary relief.

**Answer:** Defendant denies the allegations of this paragraph in their entirety, and specifically denies that it engaged in any conduct constituting infringement of any valid and enforceable claim of any patent identified in the Third Amended Complaint.

## II.    IN ANSWER TO THE ALLEGATIONS OF JURISDICTION AND VENUE

4.    This Court has original subject matter jurisdiction over the claims in this action under the Patent Act, 35 U.S.C. § 1, *et seq.*, 28 U.S.C. §§ 1331 and 1338(a)-(b).

**Answer:** Admitted that the Court has subject matter jurisdiction over the claims asserted in Plaintiffs' Third Amended Complaint.

5.    Venue is proper in this Court under 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendant because each of the Defendant directly targets business activities toward

2

consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores, operating under the Defendant Internet Stores. *See* Schedule A, Schedule B, and Schedule C. Specifically, Defendant have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one of more Defendant Internet Stores, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold products featuring Plaintiffs' patented designs and features to residents of Illinois. Each of the Defendant is committing tortious acts in Illinois, engaging in interstate commerce, and have wrongfully caused Plaintiffs substantial injury in Illinois.

**Answer:** Defendant denies the allegations of this paragraph in their entirety, and specifically denies any infringement of any valid and enforceable claim of any patent identified in the Third Amended Complaint and denies that it has conducted any acts in this forum that subject them to specific or general jurisdiction as alleged.

### III. IN ANSWER TO THE ALLEGATIONS OF THE PARTIES

6. Plaintiff Chic is a high-tech company that manufactures and licenses hoverboard products for sale in the United States. Chic is supported by Zhejiang University Ministry of Education Computer Aided Product Innovation Design Engineering Center, the Zhejiang University International Design, and Zhejiang Key Laboratory of Service Robot. Chic is located in the Liangzhu University Science and Technology Park, Yuhang District, Hangzhou, China.

**Answer:** Defendant is without sufficient knowledge or information to admit or deny the truth of such allegations, and accordingly denies.

7. Chic designs and sells hoverboards, among other technologies, which incorporate the Patents-in-Suit (collectively, "Plaintiffs' Products"). Chic is the assignee of approximately 400 granted patents related to technologies associated with the products at issue here, four of which are the subject of this action.

**Answer:** Defendant is without sufficient knowledge or information to admit or deny the truth of such allegations, and accordingly denies

8.  Plaintiff Unicorn is a corporation organized under the laws of the State of California, having its principal place of business in Ontario, California. Unicorn is the exclusive U.S. distributor of Plaintiffs' Products. Unicorn, through its affiliates and licenses, operates websites which promote and sell genuine Plaintiffs' Products, and which feature proprietary content, images and designs exclusive to Plaintiffs.

    **Answer:** Defendant is without sufficient knowledge or information to admit or deny the truth of such allegations, and accordingly denies.

9.  Defendant is individuals and business entities of unknown makeup who own and/or operate one or more Defendant Internet Stores identified in Schedule A, Schedule B, and Schedule C and/or other seller aliases not yet known to Plaintiffs. Upon information and belief, Defendant reside and/or operate in the People's Republic of China or act as an entity from a foreign jurisdiction with less efficient intellectual property enforcement systems or redistribute products from the same or similar sources in those locations. Defendant has the capacity to be sued under Federal Rule of Civil Procedure 17(b).

    **Answer:** Defendant admits that it owns and/or operates one of the storefronts identified in Schedule A and that it resides and/or operates in the People's Republic of China. Defendant is without sufficient knowledge or information to admit or deny the truth of the remaining allegations, and accordingly denies.

10. Upon information and belief, Schedule A Defendant do not have substantial contacts within the United States and are foreign entities operating Defendant Internet Stores and selling Infringing Products.

**Answer:** Defendant admits that it does not substantial contacts within the United States and is a foreign entity operating an Amazon storefront. Defendant denies the remaining allegations of this paragraph.

11. Upon information and belief, some evidence suggests that Schedule B Defendant may have some contacts within the United States, but Plaintiffs are unable to confirm their actual location based on the publicly available information on third party e-commerce platforms and based on state Secretary of State (or similar state agency) records. Some indicia nonetheless suggests that Schedule B Defendant may be foreign entities operating Defendant Internet Stores and selling Infringing Products.

**Answer:** Defendant is without sufficient knowledge or information to admit or deny the truth of such allegations, and accordingly denies.

12. Upon Information and belief, Schedule C Defendant have contacts in both the U.S. and in foreign jurisdictions, but have submitted to jurisdiction and venue within the Northern District of Illinois and will comply with any injunctive orders from this Court.

**Answer**: Defendant is without sufficient knowledge or information to admit or deny the truth of such allegations, and accordingly denies.

13. On information and belief, Defendant either individually or jointly, operate one or more Defendant Internet Stores listed in Schedule A, Schedule B, and Schedule C. Tactics used by Defendant to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiffs to learn Defendant' true identities and the exact interworking of their network. If Defendant provide additional credible information regarding their identities, Plaintiffs will take appropriate steps to amend the Complaint.

**Answer:** Defendant admits that it owns and/or operates an Amazon storefront identified in amended Schedule A. Defendant denies the remaining allegations in this paragraph.

IV.    IN ANSWER TO THE ALLEGATIONS OF FACTUAL ALLEGATIONS

14. Chic has been issued with several U.S. design patents relating to hoverboard products, including but not limited to, U.S. Design Patent Nos. D737,723 ("the 'D723 patent"), D738,256 ("the 'D256 patent"), D785,112 ("the 'D112 patent"), and D784,195 ("the 'D195 patent") (collectively, the "Patents-in-Suit"). *See* Exhibit 2.

   **Answer:** Defendant admits the Patents-in-Suit attached to Third Amended Complaint as Exhibit 2 identifies Hangzhou Chic Intelligent Co., Ltd. as the Assignee. Defendant is without sufficient knowledge or information to admit or deny the remaining and accordingly denies.

15. The Patents-in-Suit claim and illustrate ornamental features of hoverboards.

   **Answer:** Defendant is without sufficient knowledge or information to admit or deny the allegations, and accordingly denies.

16. The 'D723 patent and the 'D256 patent are entitled "Self-Balancing Vehicle," and were issued on September 1, 2015 and September 8, 2015, respectively.

   **Answer:** Admitted as this information is shown in the Exhibit 2 to the Third Amended Complaint.

17. Admitted as this table is shown in the Exhibit 2 to the Third Amended Complaint.

18. Admitted as this table is shown in the Exhibit 2 to the Third Amended Complaint.

19. Both the 'D195 patent and the 'D112 patent are entitled "Human-Machine Interaction Vehicle," and were issued on April 18, 2017 and April 25, 2017, respectively.

   **Answer:** Admitted as this information is shown in the Exhibit 2 to the Third Amended Complaint.

20. Admitted as this table is shown in the Exhibit 2 to the Third Amended Complaint.

21. Admitted as this table is shown in the Exhibit 2 to the Third Amended Complaint.

22. Jiawei Ying is the main named inventor of the Patents-in-Suit, and he has assigned all rights, title, and interest to the patents to Chic.

**Answer:** As shown in the Exhibit 2 to the Third Amended Complaint, Defendant admits the four Patents-in-Suit identify Jiawei Ying as the Inventor. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations of the paragraph and accordingly denies.

23. Chic has licensed to Unicorn the right to sell, offer to sell, and distribute products featuring the Patents-in-Suit, including Plaintiffs' Products.

**Answer:** Defendant is without sufficient knowledge or information to admit or deny the allegations, and accordingly denies.

24. Plaintiffs utilize the Patents-in-Suit when designing, manufacturing, and selling Plaintiffs' Products. The Patents-in-Suit have revolutionized ornamental design for hoverboards that have a central support platform.

**Answer:** Defendant is without sufficient knowledge or information to admit or deny the allegations, and accordingly denies.

25. The Patents-in-Suit have streamline shapes that are appealing to United States customers. Specifically, the 'D723 patent and the 'D256 patent have defined the fundamental ornamental configurations of the hoverboard product class. The 'D112 patent features a soft edge between the central support platform and the fenders, and the 'D195 patent features a sharper edge.

**Answer:** Defendant is without sufficient knowledge or information to admit or deny the allegations, and accordingly denies.

26. Plaintiffs' Products are stylish and modern, and are visually pleasing to the consumers, and have become enormously popular to consumers of all ages, resulting in the sale of thousands of units in the United States.

**Answer:** Defendant is without sufficient knowledge or information to admit or deny the allegations, and accordingly denies.

27. Plaintiffs have identified numerous e-commerce stores, including Defendant Internet Stores, that offer for sale and/or selling Infringing Products to consumers in this Judicial District and throughout

the United States. E-commerce sales, including through stores like those of Defendant, have resulted in a sharp increase in the shipment of unauthorized products into the United States. *See* Excerpts from Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report at Exhibit 3.

**Answer:** Defendant denies that it offered for sale and/or sold products to consumers in this Judicial District and throughout the United States that infringed any valid and enforceable claim of any patent identified in the Third Amended Complaint. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations of the paragraph, and accordingly denies.

28. Third party service providers like those used by Defendant do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to use untraceably identifiers, such as false names and addresses, when registering with e-commerce platforms. *See* "Combating Trafficking in Counterfeit and Pirated Goods," prepared by the U.S. Dep't of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020) at Exhibit 4.

**Answer:** Defendant is without sufficient knowledge or information to admit or deny the allegations, and accordingly denies.

29. Defendant have targeted sales to Illinois residents by setting up and operating e- commerce stores that target United States consumers using one or more Defendant Internet Stores.

**Answer:** Denied.

30. Upon information and belief, Defendant have sold and are selling Infringing Products on their e-commerce website, offered and are offering shipping to the United States, including Illinois, and are accepting payment in U.S. dollars.

**Answer:** Defendant denies that it has sold and is selling products to consumers on an e-commerce website that infringe any valid and enforceable claim of any patent identified in the Third Amended Complaint, or that it offered and is offering shipping of products to the United States, including Illinois, that infringe any valid and enforceable claim of any patent identified in the Third Amended

Complaint, or that it accepted and is accepting payment in U.S. dollars for products that infringe any valid and enforceable claim of any patent identified in the Third Amended Complaint. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations of the paragraph, and accordingly denies.

31. Defendant concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendant facilitate sales by designing the e-commerce stores operating the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Defendant Internet Stores often include content and images that make it difficult for consumers to distinguish such stores from an authorized retailer. In addition, Defendant Internet Stores appear sophisticated and accept payment in U.S. dollars via credit cards, Paypal, and/or Amazon Pay, for example.

**Answer:** Defendant is without sufficient knowledge or information to admit or deny the allegations, and accordingly denies.

32. Plaintiffs have not licensed the Patents-in-Suit to the Defendant and none of the Defendant is authorized retailers of genuine Plaintiffs' Products.

**Answer:** Defendant is without sufficient knowledge or information to admit or deny the allegations, and accordingly denies.

33. On information and belief, Defendant have engaged in fraudulent conduct when registering the Defendant Internet Stores by providing false, misleading and/or incomplete information to e-commerce platforms.

**Answer:** Defendant denies the allegations that it engaged in fraudulent conduct of any kind when registering its internet storefront. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations of the paragraph, and accordingly denies.

34. On information and belief, Defendant have anonymously registered and maintained seller aliases to prevent one from learning their true identities and the scope of their e- commerce operation.

9

**Answer:** Defendant denies that it anonymously registered and maintained seller aliases to prevent others from learning their true identities and the scope of their e-commerce operation. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations of the paragraph, and accordingly denies.

35. On information and belief, Defendant regularly register or acquire new seller aliases for the purpose of offering for sale and selling Infringing products. Such registration patterns are one of the many tactics used by Defendant to conceal their identities and the interworking of their operation, as well as to avoid being shut down.

**Answer:** Defendant denies that it regularly registered or acquired new seller aliases for the purpose of offering for sale and selling any Infringing products. Defendant further denies it uses such registration patterns as one of many tactics to conceal its identity and the interworking of their operation, as well as to avoid being shut down. Defendant denies that it has sold and is selling products to consumers on an e-commerce website that infringe any valid and enforceable claim of any patent identified in the Third Amended Complaint. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations of the paragraph, and accordingly denies.

36. Despite operating under multiple fictitious aliases, the Defendant Internet Stores often share unique identifiers, such as templates with common design elements with no contact information or other identifying information, keywords, advertising tactics, similarities in prices and quantities, same incorrect grammar and misspellings, and/or use of the same text and imagines.

**Answer:** Denied.

37. Infringing Products sold by the Defendant Internet Stores bear similar irregularities and indicia of being unauthorized to one another, suggesting that Defendant is interrelated and that the Infringing Products come from and were manufactured by a common source.

**Answer:** Denied. In addition, Defendant denies that it has sold and is selling products to consumers on an e-commerce website that infringe any valid and enforceable claim of any patent identified in the Third Amended Complaint.

38. On information and belief, Defendant maintain off-shore accounts and regularly move funds from their financial accounts to off-shore bank accounts outside this Court's jurisdiction to avoid payment of any monetary judgment awarded to Plaintiffs.

**Answer:** Defendant is without sufficient knowledge or information to admit or deny the allegations, and accordingly denies.

39. On information and belief, Defendant is an interrelated group of infringers working in active concert to knowingly and willfully make, use, offer for sale, sell, and/or import into the United States for subsequent sale or use Infringing Products in the same transaction, occurrence, or series of transactions or occurrences.

**Answer:** Denied. In addition, Defendant denies that it has made, used, offered for sale, sells, and/or imports into the United States any products that infringe any valid and enforceable claim of any patent identified in the Third Amended Complaint.

40. Defendant, without any authorization or license from Plaintiffs, have jointly and severally, knowingly and willfully made, used, offered for sale, sold, and/or imported into the United States for subsequent resale or use products that directly and/or indirectly infringe the Patents-in-Suit, irreparably harming Plaintiffs.

**Answer:** Denied. In addition, Defendant denies that it has made, used, offered for sale, sells, and/or imports into the United States any products that infringe any valid and enforceable claim of any patent identified in the Third Amended Complaint.

V. **IN ANSWER TO THE ALLEGATIONS OF COUNT I DESIGN PATENT INFRINGEMENT – PATENT NO. D737,723 (35 U.S.C. § 271)**

41. Plaintiffs re-allege and incorporate by reference the allegations provided in the preceding paragraphs.

**Answer:** Defendant realleges and adopts for reference herein their answers to Paragraphs 1-40 of the Third Amended Complaint as though fully set forth herein.

42. Defendant is making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use Infringing Products that directly and/or indirectly infringe the Patents-in-Suit.

    **Answer:** Denied.

43. Defendant have infringed the Patents-in-Suit through the alleged acts and will continue to do so unless enjoined by this Court. Defendant' wrongful conduct has caused Plaintiffs to suffer irreparable harm resulting from the loss of control of their lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention. Plaintiffs are entitled to injunctive relief under 35 U.S.C. § 283.

    **Answer:** Denied.

44. Plaintiffs are entitled to recover damages adequate to compensate for the infringement, including Defendant' profits under 35 U.S.C. § 289. Plaintiffs are also entitled to recover any other damages as appropriate under 35 U.S.C. § 284.

    **Answer:** Denied.

    **VI.**    **IN ANSWER TO THE ALLEGATIONS OF COUNT II DESIGN PATENT INFRINGEMENT – PATENT NO. D738,256 (35 U.S.C. § 271)**

45. Plaintiffs re-allege and incorporate by reference the allegations provided in the preceding paragraphs.

    **Answer:** Defendant realleges and adopts for reference herein their answers to Paragraphs 1-44 of the Third Amended Complaint as though fully set forth herein.

46. Defendant is making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use Infringing Products that directly and/or indirectly infringe the Patents-in-Suit.

    **Answer:** Denied.

47. Defendant have infringed the Patents-in-Suit through the alleged acts and will continue to do so unless enjoined by this Court. Defendant' wrongful conduct has caused Plaintiffs to suffer irreparable

harm resulting from the loss of control of their lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention. Plaintiffs are entitled to injunctive relief under 35 U.S.C. § 283.

**Answer:** Denied.

48. Plaintiffs are entitled to recover damages adequate to compensate for the infringement, including Defendant' profits under 35 U.S.C. § 289. Plaintiffs are also entitled to recover any other damages as appropriate under 35 U.S.C. § 284.

**Answer:** Denied.

### VII. IN ANSWER TO THE ALLEGATIONS OF COUNT III DESIGN PATENT INFRINGEMENT – PATENT NO. D785,112 (35 U.S.C. § 271)

49. Plaintiffs re-allege and incorporate by reference the allegations provided in the preceding paragraphs.

**Answer:** Defendant realleges and adopts for reference herein their answers to Paragraphs 1-49 of the Third Amended Complaint as though fully set forth herein.

50. Defendant is making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use Infringing Products that directly and/or indirectly infringe the Patents-in-Suit.

**Answer:** Denied.

51. Defendant have infringed the Patents-in-Suit through the alleged acts and will continue to do so unless enjoined by this Court. Defendant' wrongful conduct has caused Plaintiffs to suffer irreparable harm resulting from the loss of control of thier lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention. Plaintiffs are entitled to injunctive relief under 35 U.S.C. § 283.

**Answer:** Denied.

52. Plaintiffs are entitled to recover damages adequate to compensate for the infringement, including Defendant' profits under 35 U.S.C. § 289. Plaintiffs are also entitled to recover any other damages as appropriate under 35 U.S.C. § 284.

**Answer:** Denied.

VIII.   IN ANSWER TO THE ALLEGATIONS OF COUNT IV DESIGN PATENT INFRINGEMENT –
        PATENT NO. D784,195 (35 U.S.C. § 271)

53.  Plaintiffs re-allege and incorporate by reference the allegations provided in the preceding paragraphs.

     **Answer:** Defendant realleges and adopts for reference herein their answers to Paragraphs 1-54 of the

     Third Amended Complaint as though fully set forth herein.

54.  Defendant is making, using, offering for sale, selling, and/or importing into the United States for

     subsequent sale or use Infringing Products that directly and/or indirectly infringe the Patents-in-Suit.

     **Answer:** Denied.

55.  Defendant have infringed the Patents-in-Suit through the alleged acts and will continue to do so

     unless enjoined by this Court. Defendant' wrongful conduct has caused Plaintiffs to suffer irreparable

     harm resulting from the loss of control of their lawful patent rights to exclude others from making,

     using, selling, offering for sale, and importing the patented invention. Plaintiffs are entitled to

     injunctive relief under 35 U.S.C. § 283.

     **Answer:** Denied.

56.  Plaintiffs are entitled to recover damages adequate to compensate for the infringement, including

     Defendant' profits under 35 U.S.C. § 289. Plaintiffs are also entitled to recover any other damages as

     appropriate under 35 U.S.C. § 284.

     **Answer:** Denied.

## <u>FIRST AMENDED AFFIRMATIVE DEFENSES</u>

The noninfringement in this case is obvious. **I.** The Accused Product is based on a valid U.S. Design Patent – the D'857 patent, which does not infringe the Patents-in-Suit. **II.** The claims construction is clear, the Court should construe the claim of the D'857 and Patents-in-Suit based on the drawings. **III**. Applying the ordinary observer test, an ordinary observer will either find the Accused Product substantially similar to the D'857 patent, or will be drawn to those aspects of the claimed designs of the Patents-in-Suit that differ from the D'857 patent, and those different aspects would make the distinctions between the Patents-in-Suit and accused designs readily apparent to an ordinary observer.

### I. D'857 PATENT IS PRESUMED VALID, ESPECIALLY AGAINST THE PATENTS-IN-SUIT

1. A patent gives its owner the right to exclude others from making, using, offering to sell, selling, or importing the patented invention.

2. "A patent shall be presumed valid." 35 U.S.C. § 282. This presumption applies to design patents. *Spigen Korea Co. v. Ultraproof, Inc.*, 955 F.3d 1379, 1383 (Fed. Cir. 2020) ("Design patents are presumed valid."). A valid patent cannot infringe another patent.

3. It is especially true in this case because the D'857 patent was examined against the Patents-in-Suit. As shown below, all four Patents-in-Suit were cited as references by the patent examiner in the D'857 patent.

4. Logically, the D'857 was only issued after the patent examiner made a finding that the D'857 patent embodies a "new, original and ornamental design." *See* 35 U.S. Code § 171(a).

5. Therefore, the D'857 patent and the Patents-in-Suit are ***not*** substantially similar.

6. Consequently, the Accused Product designed and manufactured based on the D'857 Patent does not infringe the Patents-in-Suit.



## II. NONINFRINGEMENT ANALYSIS

### A. The Court should construe the claim of the D'857 and Patents-in-Suit based on the drawings

7. "The Supreme Court has recognized, a design is better represented by an illustration 'than it could be by any description and a description would probably not be intelligible without the illustration.'" *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (quoting *Dobson v. Dornan*, 118 U.S. 10, 14 (1886)); *accord Manual of Patent Examining Procedure* ("MPEP") §1503.01 (9th ed. 2019). "Given the recognized difficulties entailed in trying to describe a design in words, the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design." *Id.*

8. Broken lines in the patent figures form no part of the claimed design. *See* MPEP §1503.02. (broken lines are used to illustrate "structure that is not part of the claimed design.").

16

### B. Ordinary Observer Test

9. Since *Egyptian Goddess, Inc. v. Swisa, Inc.*, the sole test for determining whether a design patent has been infringed is the "ordinary observer" test. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008). Under the "ordinary observer" test, "in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *See Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, 739 F.3d 694, 701 (Fed. Cir. 2014) (quoting *Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871)).

10. *First*, the "ordinary observer" test focus on whether "the accused design could not reasonably be viewed as so similar to the claimed design that a purchaser familiar with the prior art would be deceived by the similarity between the claimed and accused designs", "'inducing him to purchase one supposing it to be the other.'" *Id*. at 701 (quoting *Egyptian Goddess, Inc.* 543 F.3d at 683).

11. *Second*, "the ordinary observer is considered to be familiar with prior art designs, and '[w]hen the differences between the claimed and accused designs are viewed in light of the prior art, the attention of the hypothetical ordinary observer may be drawn to those aspects of the claimed design that differ from the prior art." *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Access., Inc.*, 942 F.3d 1119, 1129, (Fed. Cir. 2019) (citing *Egyptian Goddess*, 543 F.3d at 681). "If the claimed design is close to the prior art designs, small differences between the accused design and the claimed design assume more importance to the eye of the hypothetical ordinary observer." *Id*.; *see also Lanard Toys, Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1344, (Fed. Cir. 2020).

12. *Lastly*, the "ordinary observer" test requires the fact finder to "compare similarities in <u>overall designs</u>, not similarities of ornamental features in isolation." *Ethicon Endo-Surgery, Inc. v. Covidien*, Inc., 796 F.3d 1312, 1335 (Fed. Cir. 2015). While the test is not an "element-by-element" comparison, the fact finder must "consider the ornamental features and analyze how they impact the overall design." *Lanard Toys, Ltd. v.*

17

*Dolgencorp LLC*, 958 F.3d 1337, 1343, (Fed. Cir. 2020), *see also Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1295 (Fed. Cir. 2010).

### C. Side-by-Side Comparison

13. Defendant has provided noninfringement evidence, including side-by-side comparisons of the Accused Product, the D'857 patent, and the Patents-in-Suit. [Aff. of Xie, pp 2-6, Ex. 3]. The comparison and analysis from multiple angles are fully incorporated in this motion.

14. Here, the ordinary observer is an individual who is familiar with hoverboards and their different designs. The most important considerations impacting the overall visual impression to the ordinary observer are the design of the two standing pads, the design of the wheels, and the size, shape, and the curve of the fenders that cover the wheels.

15. Here, an ordinary observer will either **a)** find the Accused Product substantially similar to the D'857 patent, which does not infringe the Patents-in-Suit; or **b)** will be drawn to those aspects of the claimed designs of the Patents-in-Suit that differ from the D'857 patent; and those different aspects would make the distinctions between the Patents-in-Suit and Accused Products readily apparent to an ordinary observer.

16. In light of the D'857 patent, the Accused Product and the Patents-in-Suit are plainly dissimilar.

   //

   //

   //

   //

   //

18

1. <u>Top View Comparison</u>





17. The most prominent ornamental features from the Top View are the curved lines on the two standing pads. Both D'723 and D'256 Patents feature straight divergent lines. Neither D'195 nor D'112 Patents features any design on standing pads (broken lines).

18. The Accused Product has unique curved lines that match exactly the ornamental design of D'857 Patent, which is plainly dissimilar from the designs of the Patents-in-Suit.

2.   Bottom View Comparison





19. The most prominent ornamental features from the Bottom View are the size, numbers, shape, and arrangement of the vent holes. Only D'112 features a pair of 12 small closely arranged vent holes.

20. The size, numbers, shape, and arrangement of the vent holes featured in the Accused Product match the ornamental design of D'857 Patent, which is plainly dissimilar from the D'112 Patent.

21. Furthermore, the vertical ridges in the center of the Accused Product are ornamental features that are unique to the Accused Product and D'857 Patent.

**3.** Side View Comparison



| Plaintiffs' Patents-in-Suit | |
|---|---|
| D'723 Patent | D'256 Patent |
| D'195 Patent | D'112 Patent |

| | |
|---|---|
| **The Licensed D'857 Patent** | **The Accused Product** |

22. None of the Patents-in-Suit features any design of the wheels (broken lines). See Aff. of Xie, p.4, Ex. 3. The wheels of the Accused product have a unique pentamerous design. Five irregular hexagons are evenly distributed on the wheel. This unique design match exactly the ornamental design of D'857 Patent, which is plainly dissimilar from the designs of the Patents-in-Suit.

23. The designs of the fenders are also distinctive. Each Patents-in-Suit has its own ornamental design. The fenders in D'723, D'195 and D'112 patents cover the top of the wheels fully. The fenders in D'256 patent almost cover the top of the wheels fully.

24. The Accused Product has a very different design of the fenders. The fenders in the Accused Product only covers the tip of the top wheels. Most of the wheels are not covered by the fender.

4.    Front/Back View Comparison





25. The most prominent ornamental features from the Front/Back View are the size, curve and shape of the fenders that cover the wheels. Each Patents-in-Suit has its own ornamental design.

26. The Accused Product has its own unique design of the fenders. The size of the fenders is substantially smaller, only covering less than one eighth of the wheels. The fenders also feature sharp edges which are distinctive from the smooth curved surfaces featured in the Patents-in-Suit.

27. Furthermore, the center of the Accused Product caves in, which match exactly the ornamental design of D'857 Patent. All the Patents-in-Suit protrude in the center.

5. <u>Perspective View Comparison</u>





28. The perspective view comparison shows the overall visual distinctions between the Patents-in-Suit and the Accused Product.

29. Each element of the ornamental feature, viewed together, only enhances the dissimilarity between the Accused Product and the Patent-in-Suite. The combination of the substantially dissimilar standing pads, the

wheels, and the fenders creates an overall visual impression that no ordinary observer would consider that the Accused Product and the Patents-in-Suit are of the same design.