**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HANGZHOU CHIC INTELLIGENT TECHNOLOGY CO. and UNICORN GLOBAL, INC., | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 20-cv-4806 |
| | ) | |
| v. | ) ) | Judge Thomas M. Durkin Magistrate Judge Jeffrey Cole |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' OPPOSITION TO GYROOR-US'S MOTION TO VACATE THE
PRELIMINARY INJUNCTION**

Gyroor-US has placed the following issues before the Court:

1.      Whether a real emergency exists, when the restraints on Gyroor-US have not changed in ten months and when Gyroor-US only asserted a business-threatening, dire financial situation *after* the Court expressly identified a business-threatening, dire financial situation as the type of issue it would expedite?

2.      Whether Gyroor-US lacked the opportunity to contest an eight-month-old injunction, when Gyroor-US's declaration in support is contradicted by another Gyroor-US filing, and when Gyroor-US filed three motions to dismiss and a motion for summary judgment *prior* to this motion to vacate due to purported lack of notice?

3.      Whether Gyroor-US's purported authorized use of a third-party design patent inoculates it from liability for violating the Patents-in-Suit, when controlling authorities have *expressly rejected* such a defense and Gyroor-US has cited no law to the contrary?

The Court should answer all of these questions in the negative and deny the motion to vacate.

In May, Gyroor-US argued for the first time in a reply brief that the preliminary injunction ("PI") should be dissolved due to lack of notice. The Court expressed concern:

> In any event, the Court is skeptical of Gyroor's contention that it received insufficient notice because the Court has given permission for electronic service, making notice relatively straightforward, and Gyroor has participated in the case for several months without raising this issue. Gyroor contends that it was prejudiced by late notice because it was not given "an opportunity to defend itself." Gyroor has filed four motions in this case and appeared at four hearings. Gyroor has had ample opportunity to "defend itself."

Dkt. 284, p. 3 (citations omitted). The Court also chided Gyroor-US for "piecemeal motion practice [that] smacks of intentional delay rather than a sincere attempt to bring this case to resolution." *Id.* at 1–2.

Now two months later, Gyroor-US is again arguing that it lacked sufficient notice, but this time under the guise of an "emergency." The facts cast significant doubt on the veracity of the emergency allegations. For example, the declaration evidencing such an emergency contains inaccurate statements, as Gyroor-US's own filings establish that it retained outside counsel well before the operative PI was entered. Finally, Gyroor-US offers a non-infringement defense based on use of a third-party patent, even though the Federal Circuit has expressly rejected that position as a fundamental misunderstanding U.S. patent law. The Court should therefore deny Gyroor-US's motion.

## I.  FACTUAL BACKGROUND

Plaintiffs filed the original complaint on August 17, 2020, alleging design patent infringement by various defendants. Dkt. 1. The next day, Plaintiffs moved for a temporary restraining order ("TRO") and for electronic service of process. Dkt. 17, 22. Plaintiffs' memorandum in support of the electronic service motion stated: "Notice by electronic publication and e-mail, along with any notice that Defendants receive from payment processors, is reasonably calculated under all circumstances to notify Defendants of this action and afford them an

opportunity to object." Dkt. 23, p. 1. On September 22, the Court granted Plaintiffs' TRO and electronic service motions. Dkt. 41–42. Gyroor-US's assets were frozen no later than October 20. Ex. 1 (Decl. of Arthur Yuan), ¶ 3. Within a month of entry of the TRO, several defendants filed appearances. Dkt. 51–53.

Plaintiffs filed the operative, Third Amended Complaint ("Complaint") on November 19. *See* Dkt. 101. The next day, having withdrawn an earlier motion, Plaintiffs again moved for a PI. *See* Dkt. 105. Plaintiffs' support included an expert declaration comparing Plaintiffs' patents to the Accused Products, including Gyroor-US's product. *See* Dkt. 106-1, p. 22. On November 24, the Court held a hearing on the PI, attended by counsel for defendants who had appeared at that time. The Court granted the PI. Dkt. 113. The next day, Plaintiffs' counsel launched a webpage with the PI order, the Complaint, and contact information for Plaintiffs' counsel. Ex. 1, ¶ 4.

Nine days later, Stephen Vegh contacted Plaintiffs' counsel, holding himself out as representing Gyroor-US. *See* Ex. 1, ¶ 5. Plaintiffs sent Mr. Vegh various case filings, including the Complaint and the PI moving papers and order. *Id.* More than two weeks later, in response to a motion by third-party eBay, Inc., the Court heard supplemental argument on the PI. *See* Dkt. 145. [1] Based on that hearing, the Court entered a modified PI, which remains operative. Dkt. 147.

On December 28, Mr. Vegh refused to accept service on behalf of Gyroor-US, instead arguing that Plaintiffs had to satisfy the Hague Convention. Ex. 1, ¶ 6. The next day, Plaintiffs served Gyroor-US directly with the operative complaint and the PI order. Dkt. 150. Counsel for Gyroor-US—including Mr. Vegh—formally appeared in this case on January 7 and January 11,

---

[1] Plaintiffs suspect—but do not definitively recall—that Mr. Vegh attended the hearing. Gyroor-US's motion lacks merit regardless. If he did, however, that would certainly be dispositive as to lack of notice and opportunity to contest. As such, Plaintiffs submitted a transcript order on August 19. Because Gyroor-US has put Mr. Vegh's representation at issue, if the details and timing of that representation are material, expedited discovery from Mr. Vegh would be appropriate.

2021. *See* Dkt. 152–53. On January 19, Gyroor-US moved to dismiss the Complaint, arguing that the electronic service the Court approved violated the Hague Convention. Dkt. 165. Gyroor-US noted that Plaintiffs had not served a summons, which Plaintiffs then corrected on January 29. *See* Dkt. 168. In support of the motion to dismiss, Mr. Vegh submitted a declaration admitting that, "On or about December 11, 2020, I spoke with Plaintiffs' counsel Christopher Binns about this matter." Dkt. 165-1, ¶ 2. It is unclear why Mr. Vegh noted an inaccurate date of contact with Mr. Binns; regardless, even by Mr. Vegh's admission, the conversation occurred nearly two weeks before the hearing on the modified PI.

On April 1, the Court denied Gyroor-US's motion to dismiss. Dkt. 199. Gyroor-US replaced Mr. Vegh with current counsel, Glacier Law. New counsel then filed a motion to sever under Rule 20 and 21 and a motion to dismiss under Rule 12(b)(6) within three days of appearing. *See* Dkt. 211, 217. The Court denied the Rule 12(b)(6) motion as successive (Dkt. 226), and Gyroor-US sought leave to re-file the motion (Dkt. 231), which the Court denied (Dkt. 238). None of these motions mentioned its alleged liability defense based on the third-party U.S. Design Patent D808,857 ("'D857 Patent"). The first mention of that patent seems to be in a footnote to the Rule 20/21 reply brief. *See* Dkt. 281, p.1 n.1.

As to the Rule 20/21 motion, although Gyroor-US titled it as a "motion to dismiss and sever . . . and dissolve preliminary injunction," the opening brief did not address dissolution or vacating the PI. *See* Dkt. 211; Dkt. 247, pp. 13–14. In a reply brief on June 7—more than seven months after Gyroor-US's assets had been restrained—Gyroor-US first articulated an argument for vacating the preliminary injunction, effectively raising the same argument it raises now. *See* Dkt. 281, pp. 2–3. In support of that reply brief, Gyroor-US attached correspondence between Mr. Vegh and current defense counsel, in which Mr. Vegh stated that he "was not involved in this case

before my pro hac vice appearance on January 11, 2021." Dkt. 281-3.[2]  Mr. Vegh also stated that "on December 23, 2020, we were not yet involved in [the] case." *Id.*

On June 9, the Court denied Gyroor-US's Rule 20/21 motion.  Dkt. 284.  The Court held that Gyroor-US waived its notice argument by failing to raise it until the reply brief.  *Id.*at 2–3.  On June 18, Gyroor-US appealed that order.  *See* Dkt. 298.  Gyroor-US's sole argument on appeal is the argument it waived in this Court.  *See* Fed. Cir. Case. No. 21-2107, Dkt. 7 (identifying the "issues on appeal" as: "Whether a preliminary injunction is valid when the preliminary injunction was entered prior to the service of process was effectuated. Whether a preliminary injunction is valid when no Rule65 (a)(1) notice was provided to the adverse party.").

On June 23, Gyroor-US filed its answer to the Complaint and counterclaims.  Dkt. 309.  One counterclaim asserted that the 'D857 Patent somehow entitled Gyroor-US to a declaratory judgment of non-infringement.  *See id.* at 8.  On July 13, Plaintiffs filed a motion for an order to show cause, identifying various ways in which Gyroor-US and related defendants have ignored the PI.  *See* Dkt. 326.  On July 14, Plaintiffs moved to dismiss Gyroor-US counterclaims, including the one based on the 'D857 Patent.  Dkt. 332.  On July 19, Gyroor-US moved for summary judgment on its counterclaim of non-infringement, even though the motion to dismiss the counterclaim was still pending.  Dkt. 334.

On July 23, the Court held a status conference in these proceedings and implemented a fourteen-day stay.  Dkt. 347.  After the Court announced the stay, Defense Counsel requested that the Court "first decide [Gyroor-US's] motion for summary judgment."  Dkt. 348, 13:11–12 (attached as Ex. 2).  The Court refused to rule on that motion pending the stay, so Defense Counsel

---

[2] In this correspondence, it seems there was some confusion as to which specific Plaintiffs' attorney originally had contact with Mr. Vegh.  That Plaintiffs' attorney was Mr. Binns.

asked to file "another motion to vacate preliminary injunction for the Gyroor-U.S. defendants." *Id.* at 15:1–3. The Court stated "no," unless "there's some severe financial disadvantages accruing to your client because of the existence of this order." *Id.* at 15:11–13. The Court continued:

> But short of something catastrophic, such as the business failing and no longer being able to operate, you can't file such a motion. If you have a true emergency, such as I've just described, go ahead and file your motion. I'm strongly discouraging it, but I'm not preventing it.

*Id.* at 15:24–16:3. At the hearing, Defense Counsel never suggested that any severe financial disadvantage, business failure, catastrophe, or true emergency existed. Yet, two and a half weeks later—and nearly ten months after Gyroor-US's assets were restrained—Gyroor-US filed the present motion, for the first time claiming just that. *See* Dkt. 354.

## II. ARGUMENT

### a. The Verifiable Facts Belie Any Claimed Emergency

Gyroor-US submitted a declaration of Xie Rongqing in support of its motion. Dkt. 354-1. Mr. Xie claims to be the owner of the company that operates the Gyroor-US storefront. *Id.*, ¶ 2. Mr. Xie makes various claims about Gyroor-US's alleged financial hardship that will supposedly cause Gyroor-US to go out of business this month if it must abide by the preliminary injunction.[3] Mr. Xie also claims that he received no notice of the PI and "was not aware of the preliminary injunction until around January 1, 2021." *Id.*, ¶¶ 8–9. This directly conflicts with the facts above regarding Gyroor-US's prior counsel, including Mr. Vegh's own January declaration. Only three

---

[3] Factors other than the PI could be driving economic hardship for those, like Gyroor-US, who are shipping from China to the United States. *See, e.g.*, Brendan Murray, *229% surge in China-U.S. shipping costs drives inflation pressure*, THE SEATTLE TIMES (July 8, 2021, 5:12 PM), https://www.seattletimes.com/business/229-surge-in-china-u-s-shipping-costs-drives-inflation-pressure/; Grace Kay, *The US shipping crisis is not going away as 33 cargo ships float off the coast of LA waiting to dock*, INSIDER, (July 26, 2021, 8:09 AM) https://www.businessinsider.com/cargo-ships-waiting-to-dock-california-contributes-supply-chain-crisis-2021-4.

possibilities exist to reconcile these facts: (1) Mr. Vegh was conducting unauthorized work for Gyroor-US in early December, which is wholly implausible; (2) someone other than Mr. Xie was managing the litigation for Gyroor-US, which renders Mr. Xie's declaration in support of a motion regarding litigation notice meaningless and misleading; or (3) Mr. Xie's declaration is inaccurate. Whether Mr. Xie intentionally misrepresented facts or whether he just happened to misremember the truth behind these facts—despite his declaration providing the critical facts supporting one of the major arguments in Gyroor-US's brief—is a matter of speculation. But this Court is in the best position to assess these credibility questions.

The unreliability of Mr. Xie's declaration should cast doubt on the claims of emergency, as Gyroor-US has offered no financials, contracts, loan notes, termination records, etc. to corroborate the unreliable declaration. Additionally, the context of this motion raises serious doubt regarding the claimed emergency. Specifically, Gyroor-US's assets have been frozen since at least October 20. Yet, instead of coming to Court in the fall to protest, Gyroor-US made the deliberate choice to avoid this Court and maintain a frivolous Hague Convention defense to service. Then, once Gyroor-US made its appearance, it waited nearly four months before ever challenging the PI that was supposedly so onerous that it was leading to layoffs and excess borrowing. Even then, however, the PI was such an afterthought that Gyroor-US failed to address it in its opening Rule 20/21 motion in April. Further, the injunction was sufficiently non-urgent that Gyroor-US chose to challenge it through the long appeals process, rather than properly presenting the alleged notice issue to this Court, all while expending resources on piecemeal motion practice. Only after the Court expressly told Gyroor-US that it would hear arguments on the injunction if it posed a severe, business-threatening, financial emergency did Gyroor-US first allege to the Court that such an emergency existed. Seemingly by coincidence, the deadline Gyroor-US's suppliers allegedly set

for payment of long-deferred debts was mere weeks after the hearing when the Court raised the emergency prospect.  Dkt. 354-1, ¶ 12.

Before the Court attributes any weight to Gyroor-US's claims of emergency, Plaintiffs request that Gyroor-US prove them, *both* through documentary evidence properly authenticated through witness testimony *and* through live (including live by video, if necessary) testimony of Mr. Xie, so that Plaintiffs can test his statements through cross-examination.

### b. Gyroor-US Had Sufficient Notice of the PI

Rule 65(a) requires notice before entry of a preliminary injunction, but the Rule does not specify what constitutes adequate notice.  *See People ex rel. Hartigan v. Peters*, 871 F.2d 1336, 1340 (7th Cir. 1989).  Some courts have stated that notice should apprise a defendant of the hearing and provide adequate time to prepare a defense, but this is not a strict requirement and "the question of what constitutes sufficient notice [is left] primarily to the district court's discretion."  *Id.*  In assessing whether notice was reasonable, courts look to the totality of the circumstances to determine whether notice was reasonably calculated "under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Id.*, *quoting Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  Courts consider "whether the alleged inadequacies in the notice prejudiced the [enjoined party]."  871 F.3d at 1340.  Additionally, asserting a claim for injunctive relief in a complaint is sufficient to satisfy Rule 65(a).  *See Tisino v. R & R Consulting & Coordinating Group, LLC*, 478 F. App'x 183, 185 (5th Cir. 2012).

Here, the totality of the circumstances was demonstrably sufficient to apprise Gyroor-US of these proceedings.  As Plaintiffs argued in their motion for electronic service, payment processors provide notice to the defendants of these proceedings either directly or constructively, *i.e.* a defendant would know that its assets were restrained and thereby learn of the litigation.  Two

critical facts prove that Gyroor-US had adequate notice and an opportunity to defend against the preliminary injunction, even though Plaintiffs did not formally effect service until after the operative PI was entered.[4] First, three defendants actually attended the first preliminary injunction hearing, thereby proving that email service was not necessary to effect service. Second, and most importantly, Gyroor-US retained outside counsel who was engaging with Plaintiffs by December 4. It is unknown when Gyroor-US initially retained that counsel, but the facts indisputably prove (despite Gyroor-US's effort to dispute) that counsel was retained *weeks before* the modified PI hearing. If Gyroor-US were interested in objecting to the PI, it would have filed an appearance and done so. Instead, Gyroor-US chose to play games regarding service, trying (unsuccessfully) to force Plaintiffs to follow cumbersome and unnecessary Hague Convention procedures. The notice provided here—through Amazon in October, through the website in November, and through email communications and discussions with Mr. Vegh in December—are more than sufficient to satisfy Rule 65(a)'s pragmatic test.

Regardless, no prejudice has resulted from the alleged lack of notice because Gyroor-US could have raised this issue last year. But it didn't. As this Court observed two months ago: "Gyroor has filed four motions in this case and appeared at four hearings. Gyroor has had ample opportunity to 'defend itself.'" Dkt. 284, p. 3 (quotation in original; citations omitted).

### c. Gyroor-US's Personal Jurisdiction Argument Should Be Rejected as Moot and Viewed as Merely Another Attempt to Use Service as a Sword

In addition to its notice argument, Gyroor-US also raises personal jurisdiction. Dkt. 354, p. 4. It is unclear what the import of this argument is, because Gyroor-US can no longer object to

---

[4] In a related case, Judge Seeger vacated a preliminary injunction due to lack of direct email notice. *See* 20-cv-5905, Dkt. 105. Plaintiffs disagree with the application of law in the minute entry articulating that decision. Regardless, the two critical facts highlighted here were not present in that case.

personal jurisdiction, having litigated extensively in this Court. *See Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1296–97 (7th Cir. 1993).

If Gyroor-US is arguing that the Court lacked personal jurisdiction when it entered the injunction, that argument is academic. No doubt exists regarding the Court's jurisdiction now. Plaintiffs are aware of no case in which a district court vacated a preliminary injunction due to an alleged lack of personal jurisdiction at the time of issuance, when the alleged issue was resolved and when the defendant filed various merits motions before arguing that basis for dissolution. None of the cases Gyroor-US cites stand for that proposition. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir. 2014) (appeal of grant of preliminary injunction at start of litigation, which the appellate court reversed due to substantive issues with defendant's minimum contacts); *Sikhs v. Badal*, 736 F.3d 743 (7th Cir. 2013) (addressing mistaken identity regarding in-person service, not injunctions); *e360 Insight v. Spamhaus Project*, 500 F.3d 594 (7th Cir. 2007) (default judgment); *Redd v. Jenkins*, 1:15-cv-10819, 2017 WL 4281125 (N.D. Ill. Sept. 27, 2017) (default judgment).

### d. The 'D857 Third-Party Patent Is Irrelevant to these Proceedings

In its motion to vacate, Gyroor-US argues that the 'D857 Patent is presumed valid, that its Accused Product was "based on" that patent, and therefore that it "does not infringe the Patents-in-Suit." Dkt. 354 at 5. But whether Gyroor-US practiced one patent is wholly immaterial to whether it infringed Plaintiffs' patents. The argument fundamentally misunderstands U.S. law.

"It is elementary that a patent grants only the right to *exclude others* and confers no right on its holder to make, use, or sell." *Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1559 (Fed. Cir. 1996) (emphasis in original), *quoting Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 879 n.4 (Fed. Cir. 1991); *see also* 35 USC § 154(a)(1). Unlike a real property right, for example, a patent right "is a *negative* right . . . ." JANICE M. MUELLER, PATENT

LAW, at 17 (4th ed. 2013) (Ex. 3). A patent does not convey any positive or affirmative right to make, use, sell, offer to sell, or import an invention. *Leatherman Tool Gr. Inc. v. Cooper Indus., Inc*. 131 F.3d 1011, 1015 (Fed. Cir. 1997). In fact, there are any number of reasons why one might own a patent and yet not be able to practice (*i.e.*, make or sell) her patented invention. MUELLER, PATENT LAW, at 17-19 (describing a number of examples ranging from being banned by a different set of laws or regulations to infringing other's patents).

In light of this fundamental nature of U.S. patent law, "[t]he existence of one's own patent does not constitute a defense to infringement of someone else's patent." *Bio-Techology Gen.*, 80 F.3d at 1559; *see Lexion Med., LLC v. Northgate Techs., Inc.*, 618 F. Supp. 2d 896, 901 (N.D. Ill. 2009) (granting summary judgment against defense of non-infringement based on defendant's own patent); *Abbott Point of Care, Inc. v. Epocal, Inc.*, 868 F. Supp. 2d 1310, 1328–30 (N.D. Ala. 2012) (excluding other patents on infringement issue because "evidence that a defendant holds a patent covering all or a portion of the accused device is not relevant to a determination of whether the defendant directly infringed the plaintiff's patent"); *Advanced Respiratory, Inc. v. Electromed, Inc.*, No. 00-2646 (DWF/SRN), 2003 WL 25674810, 2003 U.S. Dist. LEXIS 27583, at *3–4 (D. Minn. June 27, 2003) (excluding evidence of other patents because such evidence is only relevant to whether elements of improvement are equivalent). No authoritative patent treatise endorses such a third-party patent license defense. *See, e.g.*, 5 CHISUM ON PATENTS § 16.03 (2021); *see also Spindelfabrik Suessen-Schurr Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft*, 829 F.2d 1075, 1081 (Fed. Cir. 1987) ("Indeed, the patentee of X and his licensee, when making, using, or selling X, can be subject to suit under other patents.").

Although the 'D857 is presumed valid (Plaintiffs take no validity position here), a valid patent merely entitles the patent owner to sue for infringement of that patent. For example, one

hoverboard could infringe both the Patents-in-Suit (through an hourglass design) and the 'D857 Patent, in which case both the Plaintiffs here and the 'D857 rights holder may be able to sue that third-party. But the 'D857 Patent cannot shield Gyroor-US from liability for infringing the Patents-in-Suit, even if Gyroor-US were practicing it with authorization.[5] A third-party license simply is not an absence of liability defense to patent infringement under U.S. law.

### e. Plaintiffs Have Demonstrated a Likelihood of Success on the Merits

The Court entered the PI because Plaintiffs demonstrated a likelihood of success on the merits of its infringement claims. Nothing has changed whatsoever since Plaintiffs moved for a PI in November, because the 'D857 does not factor into a proper infringement analysis.

"Design patents are typically claimed as shown in drawings, and claim construction must be adapted to a pictorial setting." *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1302 (Fed. Cir. 2010). Design patent infringement occurs when an ordinary observer, familiar with the prior art, deems two designs as substantially the same. *See id.* at 1303; *see also Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) ("[T]he resemblance is such as to deceive such an observer, inducing [that person] to purchase one supposing it to be another."). The ordinary observer is a purchaser of the item bearing the design. *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., Inc.,* 162 F.3d 1113, 1117 (Fed. Cir. 1998). "[T]he statute recognizes that minor changes in a design are often readily made without changing its overall appearance." *Id.*

---

[5] Although largely immaterial, Plaintiffs question the timing and existence of any authorized use of the 'D857 Patent. Gyroor-US produced no license. Notably, Gyroor-US litigated for five months before raising the 'D857 Patent. But in the next two months, Gyroor-US invoked that patent at least three times. *See* Dkt. 309; Dkt 334; Dkt. 354. This was not due to some prematurity concern, because its first invocation seems to be in a reply brief, when Gyroor-US never invoked that patent in its opening brief on the same motion. *See* Dkt. 281, p. 1 n.1. Interestingly, other Gyroor defendants have asserted supposedly authorized patents in their recent 12(b)(6) motions. *See* Dkt. 364, p. 4; Dkt. 365, p. 4; Dkt. 366, p. 4. Yet Gyroor-US never invoked the 'D857 in either of its efforts to file successive 12(b)(6) motions in April and May. *See* Dkt. 217 & 231.

If the claims of the patent are not plainly dissimilar from the accused design, a court must compare "the patented and accused designs in the context of similar designs found in the prior art." *Egyptian Goddess*, 543 F.3d at 674. When conducting the comparison step, a court must evaluate the claims as a whole, not in isolation. *See Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015); *see also Columbia Sportswear N. Am., Inc. v. Seirus Innovative Access., Inc.*, 942 F.3d 1119, 1131 (Fed. Cir. 2019) (a "piecemeal approach, considering only if design elements independently affect the overall visual impression that the designs are similar, is at odds with [Federal Circuit] case law requiring the factfinder to analyze the design as a whole"). "The mandated overall comparison is a comparison taking into account significant differences between the two designs, not minor or trivial differences that necessarily exist between any two designs that are not exact copies of one another." *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1243 (Fed. Cir. 2009). This is particularly important here where the ordinary observer is an internet purchaser who cannot examine the product and would likely never notice features as detailed as certain lines in footpads or the number of vents on the bottom of a board.

Here, Gyroor-US conducts a flawed analysis by: (1) construing the Patents-in-Suit "in light of the 'D857 patent" (Dkt. 354 at 5); (2) emphasizing trivial differences in isolated views of the designs while ignoring the overall design; and (3) focusing on unclaimed aspects of the Patents-in-Suit. As to the first issue, Gyroor-US's "in light of" analysis effectively attempts to limit the scope of the Patents-in-Suit based on the 'D857 Patent, even though the 'D857 Patent was issued and filed months after the Patents-in-Suit. Such later-filed-patent claim construction does not exist in U.S. patent jurisprudence. *See generally Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (setting forth guidelines on claim interpretation, none of which relate to later-issued patents). The 'D857 Patent is wholly irrelevant to the infringement question here, because infringement of

a design patent requires comparing an asserted patent claim to an accused design—not to some third-party patent. *See Egyptian Goddess*, 543 F.3d at 674.

As to the second issue, based only on attorney argument, Gyroor-US repeatedly analyzes minor features in isolation, directly contrary to controlling authority. For example, Gyroor-US asserts that "[t]he most prominent ornamental features from the Top View are the curved lines on the two standing pads. Both 'D723 and 'D256 Patents feature straight divergent lines. Neither 'D195 nor 'D112 Patents features any design on standing pads (broken lines)." Dkt. 354 at 6. But the design of the standing pad area is unclaimed in the asserted 'D195 and 'D112 Patents (as shown by broken lines in the drawings), and that area therefore is not part of the proper analysis, *i.e.* whether the claimed design is similar to the accused design. Dkt. 106-1, pp. 15–18. Additionally, Gyroor-US focuses on the minor ornamental feature of dark grooves on a dark standing area, while conveniently overlooking the prominent hourglass shape of the product as a whole. *Id.* at 24.

In another example, Gyroor-US asserts that the "most prominent ornamental features" are the small vent holes and linear ridges on the underside. Dkt. 354 at 7. It is simply not credible that the number of small holes is a prominent feature, and Gyroor-US can only argue that by improperly looking at a single view in isolation. Instead, these are exactly the type of "minor or trivial differences" that the Federal Circuit requires the factfinder to ignore. Gyroor-US also asserts that the pattern of the wheels of the accused product have "a unique pentamerous design." Dkt. 354 at 8. Again, Gyroor-US is attempting to distinguish the products based on a comparison to unclaimed features, rather than assessing the similarities to the claimed design, as *Egyptian Goddess* requires. Lastly, Gyroor-US asserts that the most prominent ornamental features from the front/back view are the size, curve and shape of the fenders that cover the wheels. Dkt. 354 at 9. Again, these comparisons—including dividing the analysis by "view"—fail to compare the

overall impression of the accused product to the overall impression of the claimed designs of the Patents-in-Suit.

## III.    <u>CONCLUSION</u>

Gyroor-US's motion relies on inaccurate facts and irrelevant arguments.  Its declaration in support is conclusory and contradicted by verifiable facts in the record.  Its notice argument replaces a pragmatic test with an overly-technical one that ignores the actual facts.  Its patent infringement defense is foreclosed by controlling authority.  And its infringement analysis improperly ignores the overall claimed design so as to focus on minuscule differences.  For these reasons, the Court should deny Gyroor-US's motion.  If relevant to the Court's analysis, Plaintiffs do intend to file a new motion for injunctive relief prior to the hearing on Gyroor-US's motion.

Date:   August 20, 2021                              Respectfully Submitted,


                                                    LOEB & LOEB LLP

                                                    /s/ Adam Kelly
                                                    Adam Kelly
                                                    Doug Masters
                                                    Arthur Yuan
                                                    Neil Nandi
                                                    321 North Clark Street, Suite 2300
                                                    Chicago, Illinois  60654
                                                    Tel.: 312-464-3100
                                                    Email:  akelly@loeb.com
                                                    Email:  dmasters@loeb.com
                                                    Email:  ayuan@loeb.com
                                                    Email:  nnandi@loeb.com

                                                    Marwa Abdelaziz (admitted *pro hac vice*)
                                                    LOEB & LOEB LLP
                                                    345 Park Avenue
                                                    New York, New York 10154
                                                    Tel.:  (212) 407-4000
                                                    Email:  mabdelaziz@loeb.com