IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HANGZHOU CHIC INTELLIGENT TECHNOLOGY CO. and UNICORN GLOBAL, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 20-cv-4806 |
| v. | ) ) ) | Judge Thomas M. Durkin Magistrate Judge Jeffrey Cole |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, | ) ) ) ) | |
| Defendants. | ) ) | |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR AN ORDER TO SHOW CAUSE**

Plaintiffs' motion included dozens of exhibits and several declarations establishing a *prima facie* case that the Gyroor Defendants have blatantly violated this Court's preliminary injunction ("PI") order. That evidence is substantial and the allegations are serious. Yet, the Gyroor Defendants' opposition failed to address that substantial *prima facie* showing. Rather, it primarily raised unsubstantiated attorney arguments and depended upon a one-page fact declaration that offered conclusory facts which are squarely contradicted by the record.

Notably, Gyroor-US proffered very little evidence to dispute Plaintiffs' evidence of wrongdoing. And the remaining Gyroor Defendants ("Affiliated Defendants") did not even contest their wrongdoing. Instead, they rely on an incorrect legal interpretation to argue, in effect, that they may disregard the PI and engage in such wrongdoing without limitation due to a manufactured notice dispute. In light of unrebutted evidence Plaintiffs have provided

demonstrating the Gyroor Defendants' non-compliance with the PI and the lack of any legal justification for that non-compliance, Plaintiffs request that the Court hold the Gyroor Defendants in civil contempt of Court.

I. **Defendants' Factual Assertions Are Verifiably Inaccurate and The Declaration of Mr. Xie is Not Credible**

Defendants' opposition brief and supporting declaration are replete with conclusory statements and verifiable falsehoods. As an initial matter, the Declaration of Xie Rongqing—which is the *only* piece of evidence offered in support of Defendants' entire opposition—is merely a single-page consisting of eleven one-line conclusory statements. The declarant, Mr. Xie, is apparently the owner of Gyroor-US. So it is not surprising that his statements are self-serving. What is surprising, however, is the lack of any exhibits or documentation to corroborate Mr. Xie's statements. In fact, many of his statements, which he made under oath on penalty of perjury, can be easily disproved by googling Amazon ASIN and warehouse policies. And Mr. Xie's declaration makes statements solely pertaining to Gyroor-US, which effectively means that the remaining Affiliated Defendants failed to submit *any* evidence in their own defense.

Instead, Affiliated Defendants rely on two incorrect and unsupported statements to argue that they are not bound by the PI Order: (1) that "Plaintiffs failed to serve or to notice the Seven Defendants," and (2) that Affiliated Defendants "sell different products [that] are not bound by the Preliminary Injunction Orders." Dkt. 370 at 3-4. These are not facts that have ever been established by the Court. In fact, this Court has explicitly stated that "[t]he facts relating to notice are contested." Dkt. 359. And in any case, the Court recently observed in the August 24 hearing regarding Gyroor-US's Emergency Motion to Dissolve the Preliminary Injunctions that

2

any alleged deficiencies in notice are now cured, since Defendants have been in this case for several months and thus have had actual notice of the PI Order. Further, Affiliated Defendants' assertion they "sell different products" using different ASINs that are based on third-party patents is hardly a statement of fact at all. Rather it is a legal conclusion directed to the crux of this infringement action.

In sum, the Gyroor Defendants' factual allegations and failed presentation of evidence are insufficient to show cause as to why this Court should not be hold them in contempt for violating the PI order.

## II. The Gyroor Defendants Were Bound By the PI Order Because They Are Affiliated with Gyroor-US and Had Actual Notice

The Affiliated Defendants admit that they have been selling Gyroor-branded hoverboards on Amazon—despite the Court's PI commanding all third parties to cease doing so. To justify its behavior Defendants argue that they are not bound by the PI Order since somehow they did not receive proper notice.

Notably, Defendants' arguments are almost identical to those raised in Fengchi-US and Urbanmax's Motion to Vacate the Preliminary Injunction, which the Court denied. Dkt. 359. Defendants cite to the same exact case law holding that non-parties must "given notice and an opportunity to be heard" before being bound to an injunction. Dkt. 370 at 2-3. This Court has observed that Defendants have been given ample opportunity to be heard on the merits of the PI Order, yet they have failed to take advantage of these opportunities time again. Dkt. 359 ("Defendants do not present such evidence with their motion [to vacate the PI Order], instead focusing solely on the purported lack of notice. The facts relating to notice are contested.

3

Accordingly, the injunction will remain in place…"). Further undercutting Defendants' position are several facts strongly suggesting that Affiliated Defendants had notice of the PI Order:

As an initial matter, the Affiliated Defendants do not deny being affiliated with Gyroor-US, nor do they deny having actual notice of the PI Order. While they may have been non-parties until May 2021, they were represented by Gyroor-US's counsel since February 2021 when Gyroor-US's prior counsel asked Plaintiffs whether all seven of the Affiliated Defendants were involved in the case and requested exhibits of infringement for each of them. Dkt. 316, Ex. 4. Moreover, the Court previously observed that there has been "ample opportunity for Defendants to contest whether they act in active concert and participation with [Gyroor-US]," noting "Defendants' failure to take advantage of these opportunities." Dkt. 359. Defendants' opposition demonstrates another passed opportunity to show that they are not connected to Gyroor-US. By failing to deny their affiliation with Gyroor-US, the Affiliated Defendants contradict themselves by claiming that they lacked notice of the PI Order. Mr. Xie's declaration makes the conclusory statement that "Gyroor-US is not affiliated, in active concert of [sic] participation with the sellers identified by Plaintiffs." Xie Decl. ¶ 7. But if Gyroor-US truly contends that it is not associated with the Affiliated Defendants, then a declaration from Gyroor-US's owner should not purport to speak on behalf of all the Defendants.

The Affiliated Defendants also assert that they "are not bound by the preliminary injunction until such a determination [that they are acting in active concert] is made." Dkt. 370 at 3. But the Seventh Circuit has held that non-parties engaging in conduct prohibited by an injunction "act at their peril if they disregard the commands of the injunction, for, if the district court ultimately determined that they are in concert with [the named defendant], then they will be

4

[held] in contempt of court." *Lake Shore Asset Mgmt. v. CFTC*, 511 F.3d 762, 767 (7th Cir. 2007). This Court recently adopted the Seventh Circuit's warning when it stated, "other entities may act in concert with an enjoined entity, and those entities do so at their own peril. [] Therefore…this order specifically binds [Defendant] by name as well as, more generally, any individual or entity acting in active concert or participation with him." *Walgreens Co. v. Peters*, No. 21 C 2522, 2021 U.S. Dist. LEXIS 140740, at *20 (N.D. Ill. July 28, 2021). As such, the Affiliated Defendants acted at their own peril when they decided to ignore the PI Order—particularly in light of the substantial evidence that they *have* been acting in active concert with Gyroor-US. While Defendants may believe that their notice argument shields them from contempt of the PI Order, in reality Defendants are effectively admitting that they chose to ignore the Court's order.

Finally, the Affiliated Defendants claim that "Defendants like Fengchi-US," who sell Gyroor-branded hoverboards using different ASINs, "are not bound by the Preliminary Injunction Orders" because their products are based on patents not owned by Plaintiffs and thus fall outside the scope of the injunction. Dkt. 370 at 4. Again, the Affiliated Defendants admit outright to selling Gyroor-branded hoverboards, but claim that their conduct was justified because the products do not "include any reproduction, copy or colorable imitation of the design claimed in the Patents-in-Suit." Defendants point to absolutely no authority—other than Fengchi-US's own motion to dismiss (Dkt. 366) that is not fully briefed—establishing that their products do not infringe the Patents-in-Suit. *Id.* Defendants rely on the same argument they have advanced on numerous occasions: that their products cannot infringe the Patents-in-Suit because they are based on different, third-party patents. But the Court has never established this

to be true as a matter of law or fact, nor is this a recognized defense to patent infringement as Plaintiffs have pointed out time again. *See, e.g.*, Dkt. 333. Rather than contesting the PI Order on the merits and presenting their third-party patent license for inspection, or providing any controlling authority to support the existence of its position, which they have had ample opportunity to do, the Affiliated Defendants simply ignored the Court's PI Order and now seek to justify their non-compliance by summarily accepting as fact their own legal arguments regarding noninfringement.

### III. Gyroor-US Has Not Provided Any Evidence to Show that It Has Complied With the Preliminary Injunction

Defendants' next argument shifts the issue from notice to substance, focusing solely on Gyroor-US's purported compliance with the PI Order. Dkt. 370 at 4-5. Gyroor-US addresses Plaintiffs' allegations with only conclusory denials, unsubstantiated facts, and attorney arguments.

**First,** Gyroor-US contends that Plaintiffs' description of the Amazon ASIN policy "is inaccurate." Dkt. 370 at 4. No facts are provided to support this statement. By contrast, Plaintiffs have described in detail the process by which ASINs are created by sellers and authorized by brand owners. Amazon's "ASIN Creation Policy" expressly states that it "limit[s] the creation of new ASINs for a brand enrolled in Brand Registry by sellers who are not associated with the brand owner. . . [non-brand owners] may still seek approval to create the new ASIN if [they] can show that it is an authentic product of the brand, for which no ASIN exists yet." Dkt. 227, Ex. 1. This means that if Affiliated Defendants were truly not associated with Gyroor-US, they would have had to gain authorization from Gyroor-US before creating new

6

ASINs for Gyroor-branded hoverboards. Gyroor-US cannot have it both ways: either the pop-up storefronts are not affiliated with Gyroor-US and need Gyroor-US's authorization to sell branded products, or they are affiliated with Gyroor-US and require no authorization. Either way, Gyroor-US would be liable for violating the terms of the PI Order.

Furthermore, when a new Amazon seller creates a listing using a brand owner's existing ASIN, Amazon alerts the brand owner and provides it with a mechanism to report that seller and take down the listing. Yuan Decl. ¶ 17. As Plaintiffs previously explained in their Motion For Leave to Amend Schedule "A", unless the new seller is related to the brand owner, the brand owner is typically motivated to prevent such ASIN unauthorized usage because the new listing would compete with their own product. Dkt. 328 at ¶ 5. Therefore, Gyroor-US would have had to consent to any storefront selling Gyroor-branded hoverboards under its ASIN No. B07PHFP8GB, including HGSM, Jiangyou-US, Urbanmax, and nonparty Runchenyun. *Id.* ¶ 31.

Plaintiffs' evidence leaves hardly any room for debate, which is likely why Defendants presented no evidence to support their statements that "Gyroor-US did not approve any tag-along merchants," and that "[t]ag-along sellers of Gyroor Brand products do not need approval." Xie Decl. ¶¶ 5-6. Because Gyroor-US is required to authorize all Amazon listings for Gyroor-branded hoverboards, Gyroor-US violated the PI Order by, at the very least, "aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon the Patents-in-Suit." Dkt. 147 at 9.

**Second,** Gyroor-US alleges that it "does not own or operate [www.gyroorboard.com]." Dkt. 370 at 5. This is another falsehood that is easily discredited. Plaintiffs previously explained that they placed an order for an infringing product on www.gyroorboard.com and the

confirmation email was sent from service@gyroor.com, which is the same email address listed on the "Contact Us" page for www.gyroor.com. Yuan Decl. ¶ 8. In addition to that evidence, Gyroor-US's manufacturer Shenzhen Chitado Technology Co., Ltd., which is the "the official manufacturer of all products of the brand Gyroor" and owner of the "GYROOR" registered trademark, is linked to both www.gyroor.com and www.gyroorboard.com. Yuan Decl. ¶¶ 10-11. Moreover, in February 2021 counsel for Gyroor-US confirmed that Gyroor-US owns www.gyroorboard.com when it told Plaintiffs that "Chitado's paypal accounts appears to now also be involved…According to them, this account is not linked to an Amazon store, but is linked to *Gyroor's own website— https://gyroorboard.com*" (emphasis added). Yuan Decl. ¶ 12. Consequently, these facts strongly demonstrate that Gyroor-US violated the PI Order by engaging in direct infringement through www.gyroorboard.com.

**Fifth**, Gyroor-US alleges that it never transferred any frozen assets out of its Amazon account, and that Amazon warehouse storage fees and product refunds are to blame for $144,319.51 being deducted from its account since January. Dkt. 370 at 5. It is difficult to believe that Amazon charges such exorbitant rates for warehouse storage, particularly since Amazon openly publishes its fee schedules, which indicate that the monthly fee for a professional selling plan is $39.99 and the monthly fee for warehouse storage is no more than $0.75 per cubic foot. Yuan Decl. ¶¶ 15-16.

Besides the fact that its calculations are incredible, Gyroor-US has chosen not to provide its Amazon account records as evidence to corroborate its story, despite such records being readily available and critically important to its position. One can reasonably assume that Amazon sellers accounts, like all business accounts, leave a paper trail every time money goes in

and out of the account. Presumably, if Gyroor-US is able to offer any explanation at all for the transfers, it relied on some type of documentation to reach that explanation. Yet, it does not wish to share this documentation with the Court, even though doing so may show that it did not violate the PI Order. Unless the Defendants' statements are fabrications, or they have not taken seriously the Order to Show Cause, it is unclear why they would choose not to disclose such vital evidence. Accordingly, the Court should reject Gyroor-US's uncorroborated explanation regarding the transferred assets and hold the Defendants in contempt for violating the PI Order enjoining them from "transferring or disposing of money or other Defendants' assets." Dkt. 147 at 11.

## **CONCLUSION**

Given the evident need for a deterrent against current and future non-compliance and the need to compensate Plaintiffs for the harms sustained, this Court should hold the Gyroor Defendants in civil contempt of Court. Defendants offer no valid reasons—other than their own discredited and unsubstantiated statements—why the Court should not hold them in contempt for repeatedly violating the PI Order. Moreover, the pattern of continued infringement, coupled with Defendants' scant evidentiary showings and attestation to outright inaccuracies, demonstrate a lack of candor for the PI Order and this judicial process. As such Plaintiffs request that this Court exercise its authority under 18 U.S.C. § 401(3) and/or its inherent power to impose one or more of the following monetary sanctions, along with any other monetary or injunctive relief the Court deems fit:

- Paying Plaintiffs the $179,378.08 depleted from Amazon accounts since January 6, 2021.

- Placing in a trust account with the Clerk of the Court all revenues from infringing sales reaped since entry of the TRO.

- Paying Plaintiffs' costs and attorney's fees associated with the preparation and filing this motion and otherwise policing the Gyroor Defendants' conduct. If the Court determines such relief is appropriate, Plaintiffs will submit evidence regarding the fees incurred.

- Going forward, paying Plaintiffs a penalty of $1,000 for each day of non-compliance following entry of any contempt order.

Date: August 24, 2021　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　By:　　/s/ *Adam Kelly*
　　　　　　　　　　　　　　　　　　　　Adam Kelly
　　　　　　　　　　　　　　　　　　　　Doug Masters
　　　　　　　　　　　　　　　　　　　　Arthur Yuan
　　　　　　　　　　　　　　　　　　　　Neil Nandi
　　　　　　　　　　　　　　　　　　　　321 North Clark Street, Suite 2300
　　　　　　　　　　　　　　　　　　　　Chicago, Illinois  60654
　　　　　　　　　　　　　　　　　　　　Tel.: (312) 464-3100
　　　　　　　　　　　　　　　　　　　　Fax: (312) 464-3111
　　　　　　　　　　　　　　　　　　　　Email:  akelly@loeb.com
　　　　　　　　　　　　　　　　　　　　Email:  dmasters@loeb.com
　　　　　　　　　　　　　　　　　　　　Email:  ayuan@loeb.com
　　　　　　　　　　　　　　　　　　　　Email:  nnandi@loeb.com

　　　　　　　　　　　　　　　　　　　　Marwa Abdelazuz (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　345 Park Avenue
　　　　　　　　　　　　　　　　　　　　New York, New York 10154
　　　　　　　　　　　　　　　　　　　　Tel.:  (212) 407-4000
　　　　　　　　　　　　　　　　　　　　Fax:  (212) 407-4990
　　　　　　　　　　　　　　　　　　　　Email:  mabdelaziz@loeb.com

　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiffs*