**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HANGZHOU CHIC INTELLIGENT TECHNOLOGY CO. and UNICORN GLOBAL, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 20-cv-4806 |
| v. | ) ) ) | Judge Thomas M. Durkin Magistrate Judge Jeffrey Cole |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, | ) ) ) ) | **FILED UNDER SEAL** |
| Defendants. | ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR ENTRY OF A PRELIMINARY INJUNCTION**

LOEB & LOEB LLP
Adam Kelly
Doug Masters
Arthur Yuan
Neil Nandi
321 North Clark Street
Chicago, IL 60654
(312) 464-3100

Marwa Abdelaziz (admitted
*pro hac vice*)
LOEB & LOEB LLP
345 Park Avenue
New York, NY 10154
(212) 407-4000

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ..............................................................................................3

ARGUMENT ................................................................................................................4

I.     PLAINTIFFS HAVE SATISFIED GROUNDS FOR ENTRY OF A
PRELIMINARY INJUNCTION ...........................................................................4

     A.     Plaintiffs Will Likely Succeed on the Merits of Patent Infringement ...................5

          1.     Understanding the Patents-in-Suit in View of the Prior Art ......................6

               a.     The 'D723 Patent Claims and Prior Art............................................7

               b.     The 'D256 Patent Claims and Prior Art........................................10

               c.     The 'D195 Patent Claims and Prior Art........................................13

               d.     The 'D112 Patent Claims and Prior Art........................................16

          2.     An Ordinary Observer Would Find The Overall Impression of
The Infringing Products are not Sufficiently Distinct or Plainly
Dissimilar Than The Patents-in-Suit And Therefore The
Infringing Products Infringe The Patents-in-Suit ......................................18

               a.     The 'D723 Patent Is Not Sufficiently Distinct from the
Infringing Products ........................................................................21

               b.     The 'D256 Patent Is Not Sufficiently Distinct from the
Infringing Products ........................................................................23

               c.     The 'D195 Patent Is Not Sufficiently Distinct from the
Infringing Products ........................................................................25

               d.     The 'D112 Patent Is Not Sufficiently Distinct from the
Infringing Products ........................................................................27

          3.     Gyroor Defendants' Third-Party License Argument Is Not A
Defense to Patent Infringement Under the Patent Law ...........................29

     B.     Absent a Preliminary Injunction, Plaintiffs Have No Adequate Remedy
at Law to Compensate for the Gyroor Defendants' Infringement, and
Have Suffered and Will Continue to Suffer Irreparable Harm .............................31

## TABLE OF CONTENTS CONTINUED

**Page**

C.    The Balance of Equities Favors a Preliminary Injunction .....................................34

D.    A Preliminary Injunction Will Serve The Public Interest.....................................35

II.    THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE ............................................36

CONCLUSION......................................................................................................................37

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs v. Mead Johnson & Co.*,
 971 F.2d 6 (7th Cir. 1992) ........................................................................34

*Abbott Point of Care, Inc. v. Epocal, Inc.*,
 868 F. Supp. 2d 1310 (N.D. Ala. 2012)......................................................30

*Advanced Respiratory, Inc. v. Electromed, Inc.*,
 No. 00-2646 (DWF/SRN), 2003 WL 25674810, 2003 U.S. Dist. LEXIS 27583
 (D. Minn. June 27, 2003) ...........................................................................30

*Aevoe Corp. v. AE Tech Co., Ltd.*,
 No. 2:12-cv-0053-GMN-RJJ, 2012 WL 760692 (D. Nev. Mar. 7, 2012) ..............33

*Amini Innovation Corp. v. Anthony Cal., Inc.*,
 439 F.3d 1365 (Fed. Cir. 2006)......................................................................6

*Apple Inc. v. Samsung Elecs. Co.*,
 735 F.3d 1352 (Fed. Cir. 2013)....................................................................32

*Apple Inc. v. Samsung Elecs. Co.*,
 809 F.3d 633 (Fed. Cir. 2015)..............................................................35, 36

*Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.*,
 501 F.3d 1314 (Fed. Cir. 2007).....................................................................18

*Bell & Howell Doc. Mgmt Prods. Co. v. Altek Sys.*,
 132 F.3d 701 (Fed. Cir. 1997).......................................................................31

*Bio-Tech. Gen. Corp. v. Genentech, Inc.*,
 80 F.3d 1553 (Fed. Cir. 1996).................................................................29, 30

*Bushnell, Inc. v. Brunton Co.*,
 673 F. Supp. 2d 1241 (D. Kan. 2009)...........................................................33

*Celsis in Vitro, Inc. v. CellzDirect, Inc.*,
 664 F.3d 922 (Fed. Cir. 2012).............................................................5, 34, 35

*Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*,
 No. 01 C 0905, 2001 WL 527404 (N.D. Ill. May 15, 2011) ..................................4

*Cobraco Mfg. Co. v. Valley View Specialties Co.*,
 No. 09 C 0284, 1990 U.S. Dist. LEXIS 10958 (N.D. Ill. Jan. 19, 1990) ...............35

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Competitive Edge, Inc. v. Staples, Inc.*,
    763 F. Supp. 2d 997 (N.D. Ill 2010) .....................................................................................19

*Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'n*,
    No. 13 C 2167, 2013 U.S. Dist. LEXIS 47248 (N.D. Ill. Mar. 27, 2013) ..............................34

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
    543 F.3d 665 (Fed. Cir. 2008)..............................................................................5, 6, 19, 31

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*,
    796 F. 3d 1312 (Fed. Cir. 2015)...............................................................................5, 6

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America Inc.*,
    549 F.3d 1079 (7th Cir. 2008) ...............................................................................34

*Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*
    162 F.3d 1113 (Fed. Cir. 1998)..............................................................................18

*Gorham Co. v. White*,
    81 U.S. 511 (1872)................................................................................................18

*Hutzler Mfg. Co. v. Bradshaw Int'l, Inc.*,
    No. 1:11-cv-07211, 2012 WL 3031150 (S.D.N.Y. July 24, 2012)........................19

*Int'l Seaway Trading Co. v. Walgreens Corp.*,
    589 F.3d 1233 (Fed. Cir. 2009)...............................................................................6

*Leatherman Tool Grp. Inc. v. Cooper Indus., Inc.*,
    131 F.3d 1011 (Fed. Cir. 1997)..............................................................................30

*Lexion Med., LLC v. Northgate Techs., Inc.*,
    618 F. Supp. 2d 896 (N.D. Ill. 2009) .....................................................................30

*Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*,
    No. 03 C 4844, 2005 WL 3115892 (N.D. Ill. Nov. 8, 2005)..................................36

*Nat'l Presto Indus. Inc. v. Dazey Corp.*,
    18 U.S.P.Q.2d 1113 (N.D. Ill. 1990) .....................................................................35

*Nike Inc. v. Fujian Bestwinn Indus. Co., Ltd.*,
    166 F. Supp. 3d 1177 (D. Nev. 2016).....................................................................33

*Otter Prods. v. Anke Grp. Indus. Ltd.*,
    No. 2:13-cv-00029-MMD-RJJ, 2013 WL 5910882 (D. Nev. Jan. 8, 2013)...........34

## TABLE OF AUTHORITIES (CONT'D)

Page(s)

*Park v. O-Sung & Co.*,
No. 97 C 0924, 1997 U.S. Dist. LEXIS 10967 (N.D. Ill. July 23, 1997) ..............................31

*PCT Int'l Inc. v. Holland Elecs. LLC*,
No. CV-12-01797-PHX-JAT, 2015 WL 5210628 (D. Ariz. Sept. 8, 2015),
*aff'd*, 2016 WL 4373941 (Fed. Cir. Aug. 16, 2016) ................................................................32

*Promatek Indus., Ltd. v. Equitrac Corp.*,
300 F.3d 808 (7th Cir. 2002) ...................................................................................................32

*Gateway E. Railway Co. v. Terminal Railroad Assoc. of St. Louis*,
35 F.3d 1134 (7th Cir. 1994) ...................................................................................................32

*Robert Bosch, LLC v. Pylon Mfg. Corp.*,
659 F.3d 1142 (Fed. Cir. 2011)................................................................................................33

*Spindelfabrik Suessen-Schurr Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik
Aktiengesellschaft*,
829 F.2d 1075 (Fed. Cir. 1987)..........................................................................................30, 31

*Ty, Inc. v. The Jones Group, Inc.*,
237 F.3d 891 (7th Cir. 2001) .............................................................................................5, 34

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A*
944 F.2d 870 (Fed. Cir. 1991).........................................................................................29, 30

**Statutes**

35 U.S.C. § 154(a)(1)...............................................................................................................29

35 U.S.C. § 171.........................................................................................................................34

35 U.S.C. § 271(a) ......................................................................................................................5

35 U.S.C. § 282.........................................................................................................................34

35 U.S.C. § 283...........................................................................................................................6

Plaintiffs Hangzhou Chic Intelligent Technology Co. ("Chic") and Unicorn Global, Inc. ("Unicorn") (collectively, "Plaintiffs") submit this Memorandum of Law in support of its Motion for Entry of a Preliminary Injunction ("PI") against the defendants in Schedule A amended on May 6, 2021, namely, Gyroor (including the stores gyroorboard.com, and gyroor.com), Jiangyou-US, Gyroshoes, Fengchi-US, HGSM, Gaodeshang-US, and Urbanmax ("Gyroor Defendants").[1]

The Gyroor Defendants have raised various procedural issues associated with the current preliminary injunction and questioned whether certain Gyroor Defendants are bound by that injunction. Plaintiffs have maintained all along that the Gyroor Defendants are currently enjoined, at a minimum, by acting in active concert and participation with each other or Gyroor-US to perpetuate their collectively infringing activities. Rather than brief those issues on a piece meal basis and further burden the Court's resources, Plaintiffs provide this motion as an opportunity for these Gyroor Defendants to contest a PI on the merits, thereby mooting any procedural issues.

## PRELIMINARY STATEMENT

When this case started Plaintiffs were playing a virtual game of Whack-A-Mole against numerous online defendants. But after this Court entered a PI last year and whacked a few moles, the remaining Gyroor Defendants began playing a different game of Catch Me If You Can[2] to avoid that injunction. Using the lack of transparency associated with on-line sale platforms, they

---

[1] Plaintiffs file this motion in response to the Court's August 9 order, which was in response to the motion to clarify or vacate filed by Urbanmax and Fengchi-US. *See* Dkt. 359. Plaintiffs believe filing this motion as to all Gyroor Defendants (aside from Gyroor-US) encourages efficiency, instead of waiting for other Gyroor Defendants to raise notice arguments at some point in the indefinite future, as Gyroor-US has unsuccessfully attempted on multiple occasions. *Cf.* Dkt. 380 (denying most recent Gyroor-US motion to vacate). That said, Plaintiffs continue to believe that the operative PI already covers all Gyroor Defendants.

[2] The movie *Catch Me If You Can* (2002) was based upon the true story of Frank Abagnale Jr. and adapted from the Stan Redding novel "Catch Me If You Can: The Amazing True Story of the Youngest and Most Daring Con Man in the History of Fun and Profit".

work as a syndicate to collectively sell infringing products and direct other entities to sell infringing products, while dubiously claiming to be independent. This Court is already aware that the Gyroor Defendants are selling infringing products under one fictitious store, and after a few weeks of offering to sell, a new store with a new name emerges. *See, e.g.,* Dkt. 328-4, 11. But what remains consistent is that these new stores sell the same Gyroor-branded infringing products as the previously shut down stores. Even though the Court previously entered a PI to stop this nefarious behavior in December 2020, and affirmed that injunction today against Gyroor-US (Dkt. 380), the Plaintiffs again need this Court's assistance to stop this unlawful game.

This Court should expressly apply the PI the Gyroor Defendants for several reasons. First, Plaintiffs have submitted substantial evidence to establish a *prima facie* case of design patent infringement and the Gyroor Defendants have failed to raise a viable defense under the controlling patent authority. And because the Patents-in-Suit are presumed valid under 35 U.S.C. § 282, invalidity is not at-issue. Thus Plaintiffs have demonstrated the requisite likelihood of success on the merits. Second, the Gyroor Defendants' infringing conduct is causing the Plaintiffs to suffer irreparable harm, despite their claims of having products designed based on later-issued US patents owned by third-parties. Plaintiffs have submitted substantial evidence that such conduct is eroding control of their patents rights, damaging their reputation and goodwill, diminishing their market share, and causing customer confusion. Simply put, monetary damages will be inadequate to compensate Plaintiffs for Defendants' infringement and the resulting irreparable harm.

Third, the equities weigh in favor of Plaintiffs. Although the Plaintiffs have invested millions of dollars to develop designs and secure design patent protection, the Gyroor Defendants are unlawfully taking advantage of that investment to Plaintiffs' detriment by infringing the Patents-in-Suit. And the Gyroor Defendants are entitled to little consideration as willful infringers, and whatever harm may befall them under a PI would be the result of their own infringement.

Furthermore, a PI serves the public by furthering the long-held public policy of favoring the protection of patent rights and providing incentives for inventors and innovators to continue to develop products without fear of the inability to enforce their patents.

Accordingly, this Court should issue a PI to continue enjoining the Gyroor Defendants from infringing the Patents-in-Suit, thereby turning off this virtual game of Whack-A-Mole and stopping this coordinated syndicate of infringement.

## STATEMENT OF FACTS

Chic is the lawful owner of the Patents-in-Suit and Unicorn is the exclusive distributor in the United States of America. *See* Dkt. 101 ¶¶ 14, 23. Plaintiff Chic owns U.S. Design Patent Nos. D737,723 ("the 'D723 patent"), D738,256 ("the 'D256 patent"), D785,112 ("the 'D112 patent"), and D784,195 ("the 'D195 patent") (collectively, "Patents-in-Suit"). *Id*. Chic utilizes the Patents-in-Suit when designing, manufacturing, and selling its hoverboards under the SISIGAD and FLYING-ANT name brands ("Plaintiffs' Products"). Dkt. 20. Plaintiff Unicorn is the exclusive U.S. distributor of Plaintiffs' Products. Dkt. 101 ¶ 8.

The Gyroor Defendants are Chinese-based entities who operate various online e-commerce stores and sell or place into the stream of commerce unauthorized products bearing the Gyroor brand that infringe the Patents-in-Suit ("Infringing Products"). Dkt. 101 ¶¶ 9-10.

On September 22, 2020, this Court entered the TRO against Defendants, enjoining them from further infringing upon Plaintiffs' patents, among other relief. Dkt. 42. The TRO authorized Plaintiffs to provide notice of these proceedings and the preliminary injunction hearing to Defendants by electronically publishing a link to the Third Amended Complaint, the TRO and other relevant documents on a website and by sending an e-mail to the e-mail addresses when they are obtained from third-parties. *Id*. Subsequently, this Court extended the TRO until October 20, 2020. Dkt. 50.

Since the TRO has been entered, Plaintiffs have sought records from Amazon.com and PayPal regarding the Gyroor Defendants' identities, operations, and finances. Plaintiffs have been able to freeze assets and obtain contact information for the Gyroor Defendants operating on Amazon.com. Meanwhile, this Court entered the current preliminary injunction in December 2020. Dkt. 147. That injunction expressly enjoins at least two of the Gyroor Defendants (*i.e.*, Gyroor-US and Jiangyou-US) from infringing the Patents-in-Suit, and further enjoining those parties acting in concert or participation with the expressly enjoined parties (*i.e.*, the other Gyroor Defendants). *Id*.

But, despite that injunction, the Gyroor Defendants have continued to sell Infringing Products and open new stores to sell them. Dkt. 328-4. In addition, the balances of the frozen Amazon.com account of Gyroor-US have decreased by more than $140,000.00 in about six months. *Id*. 3. Along with other stores such as Gyroor, Urbanmax, Jiangyou-US, Gyroshoes, a total of about $180,000.00 was removed from these stores frozen accounts. *Id*. 3-4. By mid-July, in addition to the Gyroor Defendants' stores, about 18 new stores were selling Gyroor-branded infringing products. *Id*. 11.

Thus, Plaintiffs request that this Court preliminarily enjoin (again) the Gyroor Defendants.

## **ARGUMENT**

## I. **PLAINTIFFS HAVE SATISFIED GROUNDS FOR ENTRY OF A PRELIMINARY INJUNCTION**

Since the standards for granting TROs and PIs are identical in this Circuit, the requirements for entry of a preliminary injunction have already been satisfied. *See, e.g., Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 01 C 0905, 2001 WL 527404, at *1 (N.D. Ill. May 15, 2011) (citations omitted). Even so, as explained in the December 2020 preliminary injunction order, Plaintiffs have demonstrated that entry of a modified PI is warranted. To obtain a PI, Plaintiffs

must demonstrate (1) a likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001); *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 926 (Fed. Cir. 2012). Once these three conditions are satisfied, this Court should then consider a fourth condition: the harm that the Defendants will suffer if the requested relief is granted, balancing such harm against the irreparable harm the Plaintiffs will suffer if relief is denied. *Ty, Inc*., 237 F.3d at 895. Finally, the Court should consider the potential effect on the public interest (non-parties) in denying or granting the PI. *Id.*

### A.  Plaintiffs Will Likely Succeed on the Merits of Patent Infringement

Plaintiffs are likely to succeed on the merits of their patent infringement claim as evidenced by the substantial fact and expert declarations supporting this Motion. The Patent Act provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a).

"A design patent is infringed if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F. 3d 1312, 1335 (Fed. Cir. 2015), citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (en banc).

Determining whether a design patent is infringed requires a two-step process. First, a court must determine whether the claimed designs are "sufficiently distinct" or "plainly dissimilar." *Ethicon*, 796 F.3d at 1335. Design patents "typically are claimed as shown in drawings." *Egyptian Goddess*, 543 F.3d at 679. Thus, considering the "difficulties entailed in trying to describe a design in words, the preferable course . . . [is] not to attempt to 'construe' a design patent claim by

providing a detailed verbal description of the claimed design." *Id.* Second, if the claims are not plainly dissimilar, then a court must compare "the patented and accused designs in the context of similar designs found in the prior art." *Id.* at 674. When the accused design copies a feature of the claimed design that is a significant departure from the prior art, "the accused design is naturally more likely to be regarded as deceptively similar to the claimed design, and thus infringing." *See id.* at 677.

When performing this infringement analysis a court must evaluate the claims *as a whole*, and not in isolation, through application of "the ordinary observer test by comparing similarities in overall designs, not similarities of ornamental features in isolation." *Ethicon*, 796 F.3d at 1335. "[T]he mandated overall comparison is a comparison taking into account significant differences between the two designs, not minor or trivial differences that necessarily exist between any two designs that are not exact copies of one another." *Int'l Seaway Trading Co. v. Walgreens Corp.*, 589 F.3d 1233, 1243 (Fed. Cir. 2009). To be sure, "[a]n element-by-element comparison, untethered from application of the ordinary observer inquiry to the overall design, is procedural error." *Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1372 (Fed. Cir. 2006).

### 1. Understanding the Patents-in-Suit in View of the Prior Art

Each of the Patents-in-Suit are presumed valid under 35 U.S.C. § 282. The 'D723 and 'D256 patents are entitled "Self-Balancing Vehicle" and issued on September 1, 2015 and September 8, 2015, respectively. Dkt. 101 ¶ 16. Both the 'D195 and 'D112 patents are entitled "Human-Machine Interaction Vehicle" and issued on April 18, 2017 and April 25, 2017, respectively. *Id.* ¶ 19. In addition, each of the Patents-in-Suit employ solid and broken lines to better define the scope of the claimed designs. "[B]roken lines include "[s]tructure that is not part of the claimed design, but is considered necessary to show the environment in which the design is associated" and that structure "may be represented in the drawing by broken lines." U.S. Pat. &

Trademark Office, Manual of Patent Examining Procedure § 1503.02.III (9th ed. 2018). Such "[u]nclaimed subject matter must be described as forming no part of the claimed design or of a specified embodiment thereof." *Id*.

a. **The 'D723 Patent Claims and Prior Art**

Table 1 illustrates figures of the 'D723 patent:

| Table 1: The Figures of the 'D723 Patent | |
|---|---|
| Fig.1 is a top plan view of a self-balancing vehicle showing our new design | <br>FIG.1 |
| Fig.2 is a bottom plan view thereof | FIG.2 |
| Fig 3 is a rear elevational view thereof | FIG.3 |

| Table 1: The Figures of the 'D723 Patent | |
|---|---|
| Fig. 4 is a front elevation view thereof | FIG.4 |
| Fig 5. Is a left side view thereof, the right side view being a mirror image thereof. | |
| Fig.6 is a rear, top, right perspective view thereof | FIG.6 |
| Fig. 7 is a front, top, left perspective view thereof | FIG.7 |

| Table 1: The Figures of the 'D723 Patent | |
| --- | --- |
| Fig 8 is a rear, bottom, left perspective view thereof | <br>FIG.8 |

Table 2 illustrates prior art cited on the face of the 'D723 patent:

| Table 2: The Cited Prior Art From the Face of the 'D723 Patent | | |
|---|---|---|
| US 8,118,319 | US 8,469,376 | US 8,414,000 |
| Appl. 2007-0273118 | US 8,500,145 | US D647,991 |

Based on the prosecution history of the 'D723 Patent, the claimed design was allowed over all the prior art that was cited in the file history. What is claimed is the overall ornamental design of a Self-Balancing Vehicle as described in the patent and shown in the figures. Declaration of Paul Hatch dated August 24, 2021 ("Hatch Decl.") 10. The claimed design does not include the areas shown in broken lines, such as the wheels, holes on the underside, the "O I" pattern, and the on/off graphics. *Id*.

### b. The 'D256 Patent Claims and Prior Art

Table 3 illustrates figures of the 'D256 patent:

| Table 3: Figures of the 'D256 Patent | |
|---|---|
| Fig.1 is a top plan view of a self-balancing vehicle showing our new design |  FIG.1 |

| Table 3: Figures of the 'D256 Patent | |
|---|---|
| Fig.2 is a bottom plan view thereof |  |
| Fig 3 is a rear elevational view thereof | |
| Fig. 4 is a front elevation view thereof | |
| Fig 5. Is a left side view thereof, the right side view being a mirror image thereof | |

| Table 3: Figures of the 'D256 Patent | |
| --- | --- |
| Fig.6 is a rear, top, right perspective view thereof |  |
| Fig. 7 is a front, top, left perspective view thereof | |
| Fig 8 is a rear, bottom, left perspective view thereof | |

FIG.6

FIG.7

FIG.8

Table 4 illustrates prior art cited on the face of the 'D256 patent:



| Table 4: The Cited Prior Art From the Face of the 'D256 Patent | | |
|---|---|---|
| US 8,118,319 | US 8,469,376 | US 8,414,000 |
| Appl. 2007-0273118 | US 8,500,145 | US D647,991 |

Based on the prosecution history of the 'D256 patent, the claimed design was allowed over all the prior art that was cited in the file history. What is claimed is the overall ornamental design of a Self-Balancing Vehicle as described in the patent and shown in the figures. *Id*. 13. The claimed design does not include the areas shown in broken lines, such as the wheels, holes on the underside, the "O I" pattern, and the on/off graphics. *Id*.

<strong>c. The 'D195 Patent Claims and Prior Art</strong>

Table 5 illustrates figures of the 'D195 Patent:

| Table 5: The Claimed Design of the '195 Patent |
|---|
| Fig. 1 is a top plan view of a human-machine interaction vehicle showing my new design<br><br>FIG.1 |

| Table 5: The Claimed Design of the '195 Patent | |
|---|---|
| Fig. 2 is a bottom plan view thereof |  |
| Fig. 3 is a front elevational view thereof | |
| Fig. 4 is a rear elevational view thereof | |
| Fig. 5 is a right side view thereof, the left side view being a mirror image thereof | |

FIG.2

FIG.3

FIG.4



| Table 5: The Claimed Design of the '195 Patent | |
| --- | --- |
| Fig. 6 is a top, rear, right perspective view thereof | FIG.6 |

Table 6 illustrates prior art cited on the face of the 'D195 patent:

| Table 6: The Cited Prior Art From the Face of the 'D195 Patent | | |
| --- | --- | --- |
| US 6,834,867 | US 7,424,927 | US 8,738,278 |
| US 9,403,573 | US D737,723 | US D738,256 |
| US 9,376,155 | US D739,906 | |

Based on the prosecution history of the 'D195 Patent, the claimed design was allowed over all the prior art that was cited in the file history. What is claimed is the overall ornamental design of a Human-Machine Interaction Vehicle as described in the patent and shown in the figures. *Id.*

14. The claimed design does not include the areas shown in broken lines, such as the wheels, and various patterns and lines on the top surfaces. *Id*.

<strong>d.</strong> <strong>The 'D112 Patent Claims and Prior Art</strong>

Table 7 illustrates figures of the 'D112 patent:



| Table 7: Figures of the 'D112 Patent | |
|---|---|
| Fig. 1 is a top plan view of a human-machine interaction vehicle showing my new design | FIG.1 |
| Fig. 2 is a bottom plan view thereof | FIG.2 |
| Fig. 3 is a front elevational view thereof | FIG.3 |
| Fig. 4 is a rear elevational view thereof | FIG.4 |



| Table 7: Figures of the 'D112 Patent | |
|---|---|
| Fig. 5 is a right side view thereof, the left side view being a mirror image thereof | |
| Fig. 6 is a top, rear, left perspective view thereof | FIG.6 |

Table 8 illustrates prior art cited on the face of the 'D112 patent:



| Table 8: A Selection of the Cited Prior Art from the 'D112 Patent | | |
|---|---|---|
| US 7,481,291 | US 7,635,037 | US 8,738,278 |
| US 9,403,573 | US 9,499,228 | US 9,682,732 |



Based on the prosecution history of the 'D112 patent, the claimed design was allowed over all the prior art that was cited in the file history. What is claimed is the overall ornamental design of a Human-Machine Interaction Vehicle as described in the patent and shown in the figures. *Id*. 16. The claimed design does not include the areas shown in broken lines, such as the wheels, and various patterns and lines on the top surfaces. *Id*.

> **2.** **An Ordinary Observer Would Find The Overall Impression of The Infringing Products are not Sufficiently Distinct or Plainly Dissimilar Than The Patents-in-Suit And Therefore The Infringing Products Infringe The Patents-in-Suit**

In order to compare between the accused product and the Patents-in-Suit, one must identify a hypothetical ordinary observer. The Supreme Court explained in *Gorham* that the ordinary observer is not an expert in the claimed designs, but one of "ordinary acuteness" who is a "principal purchaser[]" of the underlying articles with the claimed designs. *Gorham Co. v. White*, 81 U.S. 511, 528 (1872); *Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314, 1322-23 (Fed. Cir. 2007). "The measure of infringement of a design patent is deception of the ordinary observer, when such person gives the design the attention usually given by a purchaser of the item bearing the design[.]" *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*, 162 F.3d 1113, 1117 (Fed. Cir. 1998). In addition, this hypothetical ordinary observer is different for each

case, based on the type of product at issue. Hatch Decl. 7. Here, for these electronic mobility products called "hoverboards", an ordinary observer in this case is the typical purchaser of hoverboards. *Id*. That person would be a consumer user or the parent of a user, each having little or no experience purchasing hoverboards. *Id*. 8. The ordinary observer would encounter hoverboard products through online stores, television and social media, and then purchase them using online stores (*e.g.*, Amazon.com) without the ability to view or discern minor differences or from 'brick and mortar' stores (*e.g.*, Best Buy or Walmart). *Id*.

Plaintiffs have submitted extensive evidence that the Gyroor Defendants make, use, offer for sale, sell, and/or import into the United States for subsequent sale or use products that directly and/or indirectly infringe the ornamental designs embodied in the Patents-in-Suit. *See* Dkt. 101 ¶ 2, Schedules A, Exhibit 1; *see also* Hatch Decl. The evidentiary record shows that an ordinary observer would be deceived into thinking that the Infringing Products are the same as Plaintiffs' Products. Dkt. No. 106-1 ¶ 17 (explaining that Defendants' unlawful conduct "will continue to cause consumer confusion, which weakens [Plaintiffs'] brand recognition and reputation"); *see also Competitive Edge, Inc. v. Staples, Inc.*, 763 F. Supp. 2d 997, 1011 (N.D. Ill 2010) (citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 672 (Fed. Cir. 2008). To understand the claimed design the fact finder should compare the claimed portion of the design—*i.e.*, whatever is shown in solid lines in the patent drawings—to the corresponding portion of the accused design." (emphasis added) Burstein, The "Article of Manufacture" in 1887, supra note 12, at 11 (first citing *Hutzler Mfg. Co. v. Bradshaw Int'l, Inc.*, No. 1:11-cv-07211, 2012 WL 3031150, at *9–10 (S.D.N.Y. July 24, 2012); and then citing *Egyptian Goddess*, 543 F.3d at 672).

The following table illustrates an overview of the infringing products and the types, such as "Gyroor A," etc., for easy identification purposes:

| Table 9: Infringing products by Gyroor Defendants | |
|---|---|
| Name and Store names | Infringing product |
| "Gyroor A":<br><br>Gyroor;<br>(Gyroor.com;<br>gyroorboard.com);<br>Gaodeshang-US;<br>Gyroshoes;<br>HGSM;<br>Urbanmax;<br>Jiangyou-US |  |
| "Gyroor B":<br><br>Gyroor;<br>(Gyroor.com;<br>gyroorboard.com)<br>Gaodeshang-US |  |
| "Gyroor C":<br><br>Gyroor US;<br>Jiangyou-US;<br>(Gyroor.com;<br>gyroorboard.com)<br>Gaodeshang-US |  |
| "Gyroor D":<br><br>Fengchi-US;<br>(Gyroor.com;<br>gyroorboard.com) | |

| | | |
|---|---|---|
| | |  |

Below are tables depicting a side-by-side comparison of the Infringing Products to the Patents-in-Suit, and as depicted, the ordinary hoverboard observer would be deceived into believing that the designs are not plainly dissimilar, as a whole, despite any slight, isolated differences.

<strong>a. The 'D723 Patent Is Not Sufficiently Distinct from the Infringing Products</strong>

In the eyes of the ordinary observer, the Infringing Products have substantially the same design as the 'D723 patent. In view of the prior art in Table 2 above, the 'D723 design and the Infringing Products "share the same overall impression and have an integrated 'hourglass' body with a relatively flat surface across the top of the main body, arched covers over the wheel area, larger radii on the front and back of the underside, and elongated light panels on the front surface." Hatch Decl. 22. Therefore, in the eyes of the ordinary observer, the Infringing Products are closer to the 'D723 patent than to the prior art. *Id.*

**Table 10: Comparison of the Claimed Design of the 'D723 Patent to the Infringing Products**



FIG.6

FIG.1



*Id.* at 28-29.

Accordingly, Plaintiffs have demonstrated a likelihood of success on the merits for its patent infringement claim as it relates to the 'D723 patent.

**b.    The 'D256 Patent Is Not Sufficiently Distinct from the Infringing Products**

In the eyes of the ordinary observer, the Infringing Products have substantially the same design as the 'D256 patent.  In view of the prior art in Table 4 above, the Infringing Products and the 'D256 patent "share the same overall impression and have an integrated 'hourglass' body with a relatively flat surface across the top of the main body, arched covers over the wheel area, larger radii on the front and back of the underside, and elongated light panels on the front surface."  *Id.* at 23.  Therefore, in the eyes of the ordinary observer, the Infringing Products are closer to the 'D256 patent than to the prior art.  *Id.*

**Table 11: Comparison of the Claimed Design of the 'D256 Patent to the Accused Products**



FIG.7

FIG.1



Accordingly, Plaintiffs have demonstrated a likelihood of success on the merits for its patent infringement claim as it relates to the 'D256 patent.

### c. The 'D195 Patent Is Not Sufficiently Distinct from the Infringing Products

In the eyes of the ordinary observer, the Infringing Products have substantially the same design as the 'D195 patent. In view of the prior art in Table 6 above, the Infringing Products and the 'D195 Patent "share an integrated 'hourglass' body with many horizontal styling lines across the body and a relatively flat surface across the top, arched covers over the wheel area, larger radii on the front and back of the underside, and elongated light panels on the front surface." *Id*. 25. Furthermore, the "foot plates narrow as they extend toward the center." *Id*. Therefore, in the eyes of the ordinary observer, the Infringing Products are closer to the 'D195 patent than to the prior art. *Id.*

**Table 12: Comparison of the Claimed Design of the 'D195 Patent to the Accused Products**



FIG.6

FIG.1



Accordingly, Plaintiffs have demonstrated a likelihood of success on the merits for its patent infringement claim as it relates to the 'D195 patent.

### d. The 'D112 Patent Is Not Sufficiently Distinct from the Infringing Products

In the eyes of the ordinary observer, the Infringing Products have substantially the same design as the 'D112 patent. In view of the prior art in Table 8 above, the Infringing Products and the 'D112 patent "share an integrated 'hourglass' body with many lines angling across the body and a relatively flat surface across the top, arched covers over the wheel area, larger radii on the front and back of the underside." *Id*. 26. Moreover, the "the foot plates stretch across almost the full width of main body." *Id.* Therefore, in the eyes of the ordinary observer, the Infringing Products are closer to the 'D112 patent than to the prior art. *Id.*

**Table 13: Comparison of the Claimed Design of the 'D112 Patent to the Accused Products**



FIG.6

FIG.1

Accordingly, Plaintiffs have demonstrated a likelihood of success on the merits for its patent infringement claim as it relates to 'D112 patents.

### 3. Gyroor Defendants' Third-Party License Argument Is Not A Defense to Patent Infringement Under the Patent Law

To be clear, the Gyroor Defendants are not claiming a license to the Patents-in-Suit. Instead, the Gyroor Defendants mistakenly believe they can escape infringement because (1) Gyroor Defendants are authorized to use the Gyroor patents; (2) the Infringing Products may exhibit ornamental aspects that resemble three US design patents: D808,856; D808,857 and D891,297 ("Gyroor patents"); and (3) the Gyroor patents were issued after the Patents-in-Suit, so the scope of the Patents-in-Suit must not cover the Gyroor patents. *See, e.g.*, Dkt. 334, 365, 366.

But black-letter law precludes this absence of liability defense. First, the Gyroor Defendants' assertion of being authorized to use the Gyroor patents negate their fundamental claim of being unrelated to one another at the outset of this case. That the Gyroor Defendants assert this collective authorization via license squarely demonstrates that they are all working together. The purported Gyroor patents assignee is Shenzhen Chitado Technology Co., Ltd. Exhibit A. This same entity owns the Amazon.com store "Gyroor", and owns US trademark registration 86919026 for "GYROOR". Exhibit B. Therefore, despite claims before this court that the Gyroor Defendants are not working in concert with other violators of the December 2020 injunction order, this claim has exposed this underground syndicate that surround the Gyroor Defendants.

Second, "[i]t is elementary that a patent grants only the right to exclude others and confers no right on its holder to make, use, or sell." *Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1559 (Fed. Cir. 1996), *quoting Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 879 n.4 (Fed. Cir. 1991); *see also* 35 USC § 154(a)(1). Unlike a real property right, for example, a patent right "is a *negative* right . . . ." Janice M. Mueller, Patent Law, at 17

(4th ed. 2013) (Exhibit C). A patent does not convey any positive or affirmative right to make, use, sell, offer to sell, or import an invention. *Leatherman Tool Grp. Inc. v. Cooper Indus., Inc.*, 131 F.3d 1011, 1015 (Fed. Cir. 1997). In fact, there are any number of reasons why one might own a patent and yet not be able to practice (*i.e.*, make or sell) her patented invention. MUELLER, PATENT LAW, at 17-19 ("describing a number of examples ranging from being banned by a different set of laws or regulations to infringing other's patents"). Therefore, having a purported license to a patent does not confer to a wrongdoer some right to legally do something in view of other patents.

Third, "[t]he existence of one's own patent does not constitute a defense to infringement of someone else's patent." *Bio-Techology Gen.*, 80 F.3d at 1559, *quoting Vaupel*, 944 F.2d at 879 n.4; *see Lexion Med., LLC v. Northgate Techs., Inc.*, 618 F. Supp. 2d 896, 901 (N.D. Ill. 2009) (granting summary judgment against defense of non-infringement based on existence of defendant's own patent), *aff'd*, 641 F.3d 1352 (Fed. Cir. 2011); *Abbott Point of Care, Inc. v. Epocal, Inc.*, 868 F. Supp. 2d 1310, 1328–30 (N.D. Ala. 2012) (expressly excluding license evidence on the infringement issues because "evidence that a defendant holds a patent covering all or a portion of the accused device is not relevant to a determination of whether the defendant directly infringed the plaintiff's patent"); *Advanced Respiratory, Inc. v. Electromed, Inc.*, No. 00-2646 (DWF/SRN), 2003 WL 25674810, 2003 U.S. Dist. LEXIS 27583, at *3–4 (D. Minn. June 27, 2003) (excluding evidence of other patents because such evidence could only be relevant if addressing whether certain elements of improvement are equivalent, which was not at issue). None of authoritative patent law treatises endorse such a third-party-patent-license defense. *See, e.g.*, 5 CHISUM ON PATENTS § 16.03 (2021); *see also Spindelfabrik Suessen-Schurr Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft*, 829 F.2d 1075, 1081 (Fed. Cir. 1987) ("Indeed, the patentee of X and his licensee, when making, using, or selling X, can be subject

to suit under other patents."). Tellingly, Gyroor Defendants have provided no authority to the contrary. *See, e.g.*, Dkt 334, 365, 366.

Here, the Gyroor patents are unrelated, third-party patents, none of which are relevant to the Patents-in-Suit. They are not owned by the Plaintiffs. Instead, they are owned by the owner of GYROOR trademark and at least the Amazon store called "Gyroor". The Gyroor patents do not have the same inventors as the Patents-in-Suit. Moreover, Plaintiffs undisputedly have not granted a license to the Gyroor Defendants to make, use, sell, offer to sell, or import the Patents-in-Suit. *Cf. Spindelfabrik Suessen-Schurr Stahlecker*, 829 F.2d at 1081 ("As a threshold matter, a patent license agreement is in essence nothing more than a promise by the licensor not to sue the licensee."). Accordingly, the Gyroor patents are wholly irrelevant to the infringement question here, because infringement of a design patent requires comparing an asserted patent claim to an accused design—not to some third-party patent. *Egyptian Goddess*, 543 F.3d at 674.

**B.      Absent a Preliminary Injunction, Plaintiffs Have No Adequate Remedy at Law to Compensate for the Gyroor Defendants' Infringement, and Have Suffered and Will Continue to Suffer Irreparable Harm**

Plaintiffs have no adequate remedy at law and will continue to be irreparably harmed absent a PI. Because the Plaintiffs possess valid patents and have established patent infringement, this Court may presume irreparable harm. *See Bell & Howell Doc. Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 708 (Fed. Cir. 1997) ("In matters involving patent rights, irreparable harm has been presumed when a clear showing has been made of patent validity and infringement."). "Harm is irreparable if it cannot be prevented or fully rectified by the final judgment after trial." *Park v. O-Sung & Co.*, No. 97 C 0924, 1997 U.S. Dist. LEXIS 10967, at *11-12 (N.D. Ill. July 23, 1997).

Beyond this presumption, Plaintiffs have presented overwhelming evidence of irreparable harm. Plaintiffs have suffered and will continue to suffer the loss of their exclusive patent rights, loss of market share that Plaintiffs may never be able to recover, immeasurable damage to

Plaintiffs' goodwill and reputation as the creator and authorized provider of the Plaintiffs' Products. *See* Dkt. No. 20 ¶¶ 16-18. It is difficult, if not impossible, to accurately calculate damages from Plaintiffs' loss control over its design patent rights, loss of pricing power, diminished market share, and inability to exploit their patented designs. *Id.* The extent of harm to Plaintiffs' reputation and goodwill and possible diversion of customers due to a loss in brand confidence is unquantifiable. *Id.* Such collective harms are irreparable. *See Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002) (holding that damage to goodwill was irreparable harm for which no adequate remedy at law exists); *see also Gateway E. Railway Co. v. Terminal Railroad Assoc. of St. Louis*, 35 F.3d 1134, 1140 (7th Cir. 1994) ("[S]howing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages.").

An analysis of Plaintiffs' direct competition and commercial success demonstrates that a causal nexus exists between the Gyroor Defendants' infringement and the irreparable harm Plaintiffs are suffering. *See* Exhibit B, Second Supplemental Declaration of Richard F. Bero, dated August 24, 2021 ("Bero Decl.") § VIII; *see also Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1364 (Fed. Cir. 2013). The hoverboard market is a competitive market, and Plaintiffs and the Gyroor Defendants are direct competitors for hoverboards. Bero Decl. ¶¶ 91-93. Chic has shipped approximately 100,000 hoverboards featuring the Patents-in-Suit through Amazon.com. *Id.* ¶ 94. Plaintiffs' commercial success is due in part to its revolutionary patented designs that feature an hourglass shape with a central support platform. *Id.* ¶¶ 96-99. Plaintiffs have sold thousands of Plaintiffs' Products in the United States. *Id.* ¶ 100. For example, between January 1, 2019 through September 30, 2020, Plaintiffs sold approximately 459,000 hoverboards, all of which feature the Patents-in-Suit. *Id.* ¶ 100. Accordingly, there is a causal nexus between the Patents-in-Suit and the demand for Plaintiffs' Products. *Id.* ¶ 103; *see also PCT Int'l Inc. v. Holland Elecs. LLC*, No.

CV-12-01797-PHX-JAT, 2015 WL 5210628, at *23-24 (D. Ariz. Sept. 8, 2015), *aff'd*, 2016 WL 4373941 (Fed. Cir. Aug. 16, 2016) ("The Federal Circuit has explained that when the products at issue are 'relatively simple' with a small number of features, the causal nexus requirement is easier to satisfy because the infringing feature has a large impact on demand for the products").

Despite their claims that they are not related or having no control over each other, they affirm that they are authorized to use the Gyroor patents. *See* Bero Decl. ¶ 118. They all undeniably sell Gyroor branded products. *Id*. ¶ 122. These further justifying the requested injunctive relief. *Id*. ¶ 124; *see also Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) (holding that collection of monetary damages would be difficult because defendants were foreign corporations). In similar cases involving foreign infringers other district courts have found that money damages were insufficient. *See, e.g., Aevoe Corp. v. AE Tech Co., Ltd.*, No. 2:12-cv-0053-GMN-RJJ, 2012 WL 760692, at *5 (D. Nev. Mar. 7, 2012) ("[A] finding of irreparable harm was not clearly erroneous because it also found that since AE Tech is a foreign corporation, money damages would be insufficient."); *Otter Prods. v. Anke Grp. Indus. Ltd.*, No. 2:13-cv-00029-MMD-RJJ, 2013 WL 5910882, at *2 (D. Nev. Jan. 8, 2013) ("[B]ecause Anke has no presence in the United States, it may be difficult or impossible for Otterbox to enforce a monetary judgement against Anke"); *Bushnell, Inc. v. Brunton Co.*, 673 F. Supp. 2d 1241, 1263 (D. Kan. 2009) (granting preliminary injunction; "the prospect of collecting money damages from a foreign defendant with few to no assets in the United States tips in favor of a finding of irreparable harm"); *Nike Inc. v. Fujian Bestwinn Indus. Co., Ltd.*, 166 F. Supp. 3d 1177, 1179 (D. Nev. 2016) ("[B]ecause Bestwinn has no presence in the United States, it may be difficult or impossible for NIKE to recover a money judgement against Bestwinn").

Because Plaintiffs are afforded a presumption of irreparable harm, have presented substantial evidence of the same, and face substantial difficulties of recovering any monetary

33

judgment from these Gyroor Defendants, a PI is appropriate. *See Celsis*, 664 F.3d at 930 (holding that "[p]rice erosion, loss of goodwill, damage to reputation, and loss of business opportunities" constitute irreparable harm).

### C. The Balance of Equities Favors a Preliminary Injunction

The Plaintiffs have demonstrated (1) a *prima facie* case of design patent infringement, (2) irreparable harm, and (3) a causal nexus between the Gyroor Defendants' infringement and Plaintiffs' irreparable harm. Now this Court should weigh the equitable considerations of the parties' competing interests. *See Ty, Inc.*, 237 F.3d at 895; *see also Abbott Labs v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992). When weighing the equities, this Court should apply "a sliding scale approach: the more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'n*, No. 13 C 2167, 2013 U.S. Dist. LEXIS 47248, at *22 (N.D. Ill. Mar. 27, 2013) (quoting *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America Inc.*, 549 F.3d 1079, 1082 (7th Cir. 2008)). Properly weighed, the equities favor entering a PI.

Beginning with the Plaintiffs, the Patents-in-Suit are valid and infringed, *see supra*, Section I(A), and the Plaintiffs will likely succeed on the merits. *See* 35. U.S.C. §§ 171, 282. Plaintiffs also have suffered and will continue to suffer irreparable harm, *see supra*, Section I(B), and are unlikely able to recover monetary damages by virtue of the Gyroor Defendants' status as foreign entities. *See Otter Prods.*, 2013 WL 5910882, at *2 (holding that plaintiffs would suffer irreparable injury through the loss of control of intellectual property rights, loss of consumer goodwill, and ability to exploit trademark and design patents). Absent a PI, Plaintiffs will be unable to justify the millions of dollars invested to develop the Patents-in-Suit, and will continued to experience the Gyroor Defendants taking advantage of such investments to Plaintiffs' detriment.

Therefore, before even assessing the Gyroor Defendants' equities, if there are any, the sliding scale favors Plaintiffs.

But the Gyroor Defendants possess scant equity in their favor because as willful infringers, this Court should afford little equitable consideration due to any harm caused by a PI. Such harm would be self-inflicted. The Gyroor Defendants willfully chose to walk an infringing path and courts have refused to assign "harm" to defendants who assume such a risk. *See Celsis*, 664 F.3d at 931 ("[T]he preliminary record suggests that [the defendant's] losses were the result of its own calculated risk in selling a product with knowledge of [the plaintiff's] patent."). In addition, the Gyroor Defendants' continued sales activity certainly does not tilt the balance in their favor. *See* Dkt. 326.

Accordingly, the equities heavily favor Plaintiffs.

### D.     A Preliminary Injunction Will Serve The Public Interest

This Court should also consider the public interest, which when considered here will be served by a PI. *See Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633 (Fed. Cir. 2015). Public policy favors protection of rights secured by valid patents. *See Cobraco Mfg. Co. v. Valley View Specialties Co.*, No. 09 C 0284, 1990 U.S. Dist. LEXIS 10958, at *8 (N.D. Ill. Jan. 19, 1990). "[T]he public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his invention." *Apple Inc.*, 809 F. 3d at 647.

Issuing a PI will incentivize inventors and innovators to continue to develop new products and patenting inventions without fear of the inability to enforce the patents and stop infringers. Additionally, the public will not be harmed, as there are other hoverboard products on the market that do not infringe on the Patents-in-Suit, *e.g.*, Plaintiffs' Products. *See Nat'l Presto Indus. Inc. v. Dazey Corp.*, 18 U.S.P.Q.2d 1113, 1121 (N.D. Ill. 1990) (ruling that if an injunction makes the

defendant's products unavailable, the public has other products to purchase, including the plaintiff's products); *see also Apple Inc.*, 809 F.3d at 647 ("This is not a case where the public would be deprived of Samsung's products. Apple does not seek to enjoin the sale of lifesaving drugs, but to prevent Samsung from profiting from the unauthorized use of infringing features in its cellphones and tablets.").

Accordingly, the public interest favors granting a PI.

## II. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

Since entry of the TRO and PI, Amazon have restrained accounts linked to Gyroor Defendants that were selling Infringing Products. Even with the PI, the Gyroor Defendants have continued to move assets from the frozen Amazon accounts. At the same time, as discussed above, the Gyroor Defendants have also opened new stores to sell the infringing products, further moving assets. In addition, and as established in Plaintiffs' TRO and PI Memoranda, many federal courts, including the Northern District of Illinois, have granted orders preventing the fraudulent transfer of assets. *See, e.g., Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc*., No. 03-cv-4844, 2005 WL 3115892 (N.D. Ill. Nov. 8, 2005). The Gyroor Defendants and new stores' should remain frozen until trial.

The Patent Act authorizes courts to issue injunctive relief "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. This Court has the power to not only stop the foreign Defendants' infringing activities, but also award additional reasonable relief to ensure their compliance with this Court.

## **CONCLUSION**

The Plaintiffs have provided substantial evidence to demonstrate the necessary requirements for this Court to grant the requested preliminary injunction. Absent such relief the Gyroor Defendants will continue infringing the Patents-in-Suit and causing irreparable harm to Plaintiffs, in contravention of the public's interest in enforcing valid design patents. Accordingly, this Court should expressly continue the preliminary injunction against the Gyroor Defendants and shut off this virtual game of Whack-A-Mole.

Date:   August 24, 2021                           Respectfully Submitted,

LOEB & LOEB LLP

By:      /s/ *Adam Kelly*
Adam Kelly
Doug Masters
Arthur Yuan
Neil Nandi
321 North Clark Street, Suite 2300
Chicago, Illinois  60654
Tel.: (312) 464-3100
Fax: (312) 464-3111
Email:  akelly@loeb.com
Email:  dmasters@loeb.com
Email:  ayuan@loeb.com
Email:  nnandi@loeb.com

Marwa Abdelaziz (admitted *pro hac vice*)
345 Park Avenue
New York, New York 10154
Tel.:  (212) 407-4000
Fax:  (212) 407-4990
Email:  mabdelaziz@loeb.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that a true and correct redacted copy of the foregoing document and

corresponding declarations and exhibits will be served on the following counsel of record for

parties in this action via electronic mail on August 24, 2021.

| | | |
|---|---|---|
| Tianyu Ju | He Cheng | Tao Liu |
| Glacier Law PLLC | Glacier Law PLLC | Glacier Law PLLC |
| 200 East Randolph, Ste. 5100 | 745 5th Avenue, St. 500 | 745 5th Avenue, St. 500 |
| Chicago, IL 60601 | New York, NY 10151 | New York, NY 10151 |
| 312-448-7772 | 212-208-1523 | 212-999-7858 |
| iris.ju@glacier.law | Robin.Cheng@glacier.law | tao.liu@glacier.law |

Ruoting Men
Glacier Law PLLC
200 East Randolph, Ste. 5100
Chicago, IL 60601
(312) 270-0413
ruoting.men@glacier.law

*Counsel for Gyroo-US, Gyroor, Jiangyou-US, Urbanmax, Fengchi-US, GaodeshangUS, HGSM, and Gyroshoes*

By: /s/ Adam Kelly

Adam Kelly
Doug Masters
Arthur Yuan
Neil Nandi
321 North Clark Street, Suite 2300
Chicago, Illinois 60654
Tel.: 312-464-3100
Email: akelly@loeb.com
Email: dmasters@loeb.com
Email: ayuan@loeb.com
Email: nnandi@loeb.com

Marwa Abdelaziz (admitted *pro hac vice*)
LOEB & LOEB LLP
345 Park Avenue
New York, New York 10154
Tel.: (212) 407-4000

Email:  mabdelaziz@loeb.com
*Attorneys for Plaintiffs*