**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ABC Corporation I et al,<br><br>*Plaintiff*,<br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>*Defendant*. | **CASE NO.** 1:20-cv-04806<br><br>**Judge:** Honorable Thomas M. Durkin |

**DEFENDANT FENGCHI-US' OPPOSITION TO**
**PLAINTIFFS' MOTION FOR ENTRY OF A PRELIMINARY INJUNCTION**

# Table of Contents


**INTRODUCTION** ........ **1**

**FACTUAL BACKGROUND** ........ **2**

**PROCEDURAL BACKGROUND** ........ **2**

**LEGAL STANDARDS** ........ **3**

**ARGUMENTS** ........ **3**

**I. AN "ORDINARY OBSERVER" IN THIS CASE SHOULD BE A PURCHASER WHO IS FAMILIAR WITH HOVERBOARDS AND THE PRIOR ART DESIGNS, AND PLAINTIFFS' DEFINITION OF AN "ORDINARY OBSERVER" MUST BE REJECTED** ........ **3**

**II. IN LIGHT OF THE PRIOR ART D'906 PATENT, AN ORDINARY OBSERVER WILL NOT FIND THE ACCUSED PRODUCT AND THE PATENTS-IN-SUIT HAVE SUBSTANTIALLY SIMILAR OVERALL "HOURGLASS" SHAPE** ........ **4**

A. The D'906 Patent constitutes Prior Art to all Patents-in-Suit ........ 5

B. Plaintiffs failed to compare Accused Product, Patents-in-Suit and the prior art D'906 patent ........ 5

**III. AN ORDINARY OBSERVER, FAMILIAR WITH THE PRIOR ART, WILL NOT BE DECEIVED INTO THINKING THAT THE ACCUSED PRODUCT IS THE SAME AS THE PATENTS-IN-SUIT** ........ **8**

A. Plaintiffs failed to compare the ornamental features and failed to analyze how they impact the overall design ........ 8

B. None of the Patent-in-Suit claims any ornamental features of the Accused Product ........ 8

C. Under the *Gestalt Principles*, the ornamental features of the Accused Product listed above would be perceived as more dramatic and obvious, which would significantly impact the overall visual impression of the ordinary observer ........ 12

**CONCLUSION** ........ **12**

Defendant Fengchi-US ("Fengchi-US" or "Defendant"), without waiving any Rule 12(b) defenses, respectfully submits this Opposition to Plaintiffs' motion for entry of a preliminary injunction. [Dkt. 384].

**Introduction**

The hoverboard market is a rapidly growing industry. Both Plaintiffs Hangzhou Chic Intelligent Technology Co. Ltd. ("Chic") and Unicorn Global, Inc ("Unicorn," together "Plaintiffs") and Defendant are in the business of selling hoverboards.

Plaintiffs are notoriously known for bringing baseless infringement claims against competitors to gain market monopoly.[1] This is Plaintiffs' another attempt to enforce meritless patent infringement claims.

This Preliminary Injunction against Fenchi-US must be denied because Plaintiffs failed to show a likelihood of prevailing on the merit of the design patent infringement claim on the following grounds:

**I.** An "Ordinary Observer" in this case should be — a purchaser who is familiar with hoverboards and the prior arts designs. Therefore, Plaintiffs' wrong "ordinary observer standards" based on Mr. Hatch's erroneous statements must be rejected.

**II.** Plaintiffs failed to make comparison of the patents-in-suit and the accused product in light of the prior art — namely, the U.S. Design Patent D739,906 Patent ("D'906 Patent," attached hereto as Exhibit 1). The D'906 Patent first claimed the "hourglass" peripheral shape of hoverboards. Considering the patents-in-suit all have the same hourglass shape as the D'906 Patent, and the accused product has a distinct overall shape from the Patents-in-Suit, the noninfringement obvious to an ordinary observer.

**III.** An ordinary observer, familiar with the prior art, will ***not*** be deceived into thinking that the accused product is the same as the patents-in-suit. It is undeniable that the ornamental features of the accused product are plainly different from the patents-in-suit. None of the Patents-in-Suit claimed any ornamental features of the Accused Product. The ornamental differences, based on the claimed design of the U.S. D891,297 Patent ("D'297 Patent," attached hereto as Exhibit 2), greatly impact the ordinary observer's visual perception of the overall design, thus renders the design of accused product substantially dissimilar from the claimed designs of the patents-in-suit.

[1] *See* Nicole D. Prysby, *Antitrust, Lanham Act claims against Chinese hoverboard company avoid dismissal*, Wolters Kluwer (March 23, 2020), https://lrus.wolterskluwer.com/news/antitrust-law-daily/antitrust-lanham-act-claims-against-chinese-hoverboard-company-avoid-dismissal/108782.

**Factual Background**

Evidence provided by Plaintiffs identifies the alleged infringing products ("Accused Product") as "*Gyroor Hoverboard Offroad All Terrain Flash Wheel Self Balancing G5 Hoverboards with Bluetooth Speaker, UL 2272 Certified Best Gift* ..." [Dkt. No. 227-1, p. 42 of 92]. The Accused Product has a unique ASIN number B08NT551P4 [Dkt. No. 227-3, p. 4 of 4]. The Accused Product is also identified as Gryoor D ("Type D Product") by Plaintiffs. [Dkt. No. 385, p. 20; Dkt. No. 388, p. 20].

Plaintiffs allege that four of Plaintiffs' U.S. Design Patents – D737,723 ("D'723 patent"), D738, 256 ("D'256 patent"), D785,112 ("D'112 patent"), D784,195 ("D'195 patent") ("Patents-in-Suit") [Dkt. No. 101, ¶14; Dkt No. 101-13] have been infringed by the Accused Product. However, Plaintiffs made no allegations against Defendant or the Accused Product in its Third Amended Complaint. [Dkt. No. 101]. Plaintiffs made no specific allegations aside from stating that "Fengchi-US store is related to or affiliated with Gyroor-US" [Dkt. No. 227-1, ¶17], which is unsupported by any evidence.

**Procedural Background**

On November 20, 2020, Plaintiffs filed a motion for preliminary injunction. [Dkt. No. 105].

On November 24, 2020, a preliminary injunction hearing was held. [Dkt. No. 112].

On November 24, 2020, a preliminary injunction order was entered. [Dkt. No. 113].

On December 24, 2020, a modified preliminary injunction order was entered. [Dkt. No. 147].

On February 12, 2021, Fengchi-US' financial account was restrained.

Service of process was not effectuated on Defendant until June 25, 2021. [Dkt. No. 310].

| **Timeline** | |
|---|---|
| Date: | Event: |
| 07/10/2020 | Initial Filing |
| 11/20/2020 | Motion for Preliminary Injunction Filed [Dkt. No. 105] |
| 11/24/2020 | Hearing for Preliminary Injunction held on November 24, 2020 |
| 11/24/2020 | Preliminary Injunction Order entered [Dkt. No. 113] |
| 12/23/2020 | Modified Preliminary Injunction Order entered [Dkt. No. 147] (to eBay) |
| 02/12/2021 | Fengchi-US' financial account was restrained |
| 06/25/2021 | Email Service of Process [Dkt. No. 310] |

## Legal Standards

"To obtain a preliminary injunction, a plaintiff must show that: (1) without this relief, it will suffer 'irreparable harm'; (2) 'traditional legal remedies would be inadequate'; and (3) it has some likelihood of prevailing on the merits of its claims." *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020) (quoting *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018)).

## Arguments

Plaintiffs first applied the wrong "ordinary observer standard" and claim that an ordinary observer "would be a consumer user or the parent of a user, each having little or no experience purchasing hoverboards." [Dkt. No. 385, p. 19, Dkt. No. 388, p.8]. This "ordinary observer" must be rejected because all the leading cases require that the ordinary observer must be familiar with the prior art designs.

Then, based on the wrong standard, Plaintiffs failed to make any comparison of the Patents-in-Suit and the Accused Product in light of the prior art — the "D'906" Patent.

Supported by former design patent examiner Mr. Gandy's and Professor Rake's declarations (attached hereto as Exhibit 2 & 3), an ordinary observer, familiar with the D'906 Patent, will not consider the Accused Product to be "substantially similar" to the Patents-in-Suit. The distinct overall shape and the plainly different ornamental features make it obvious to an ordinary observer that the design of the Accused Product is substantially dissimilar from the claimed design of the Patents-in-Suit.

### I. An "Ordinary Observer" in this case should be a purchaser who is familiar with hoverboards and the prior art designs, and Plaintiffs' definition of an "ordinary observer" must be rejected

Plaintiffs' expert witness Mr. Hatch provided the wrong ordinary observer standard. Based on Mr. Hatch's declaration, Plaintiffs reply on *Gorham Co. v. White*, 81 U.S. 511, 527 (1872) and claim an ordinary observer here should be "a consumer user or the parent of a user, each having little or no experience purchasing hoverboards." [Dkt. No. 385, pp. 18-19; Dkt. No. 388, p. 8].

But the *Gorham* standard is limited to when "the claimed design and the accused design will be sufficiently distinct," which is not the appropriate standard in this case. *See Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008).

"Where there are many examples of similar prior art designs, as in a case such as *Whitman Saddle*, differences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the **hypothetical ordinary observer who is conversant with the prior art**." *See Egyptian Goddess*, 543 F.3d at 678 (citing *Smith v. Whitman Saddle Co.*, 148 U.S. 674, (1893)); *see also Wallace v. Ideavillage Prods. Corp*., 640 Fed. Appx. 970, 978 (Fed. Cir, 2016).

Here, cited by both Plaintiffs and Defendant, its undisputed that there many examples of similar prior art designs that are relevant to the. [Decl. of Gandy, Ex. 1, ¶¶1-2; *see also* Dkt. No. 388, pp. 16-18]. The "hypothetical ordinary observer who is conversant with the prior art" standard obviously applies here. A person with "little or no experience" with hoverboards clearly does not satisfy the ordinary observer test.

Therefore, in light of the many similar prior art designs, the hypothetical ordinary observer in this case should be a purchaser who is familiar with hoverboards and the prior art designs.

## II. In light of the prior art D'906 Patent, an ordinary observer will NOT find the Accused Product and the Patents-in-Suit have substantially similar overall "hourglass" shape

In the most recent landmark case *Lanard Toys, Ltd. v. Dolgencorp LLC*, 958 F.3d 1337 (Fed. Cir 2020), The Feder Circuit prescribe that:

> [T]he ordinary observer is deemed to view the differences between the patented design and the accused product ***in the context of the prior art***. When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art. And when the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer." *Id*. (quoting *Egyptian Goddess*, 543 F.3d at 676).

Here, because the Patents-in-Suit and the D'906 Patent have similar overall hourglass peripheral shape, the clear differences between the Accused Product and the Patents-in-Suit are important to the ordinary observer. In light of the prior art D'906 Patent, an ordinary observer will not find the Accused Product and the Patents-in-Suit have substantially similar overall "hourglass" shape.

### A. The D'906 Patent constitutes Prior Art to all Patents-in-Suit

Under 35 U.S.C. §102(a)(2), prior art includes "a patent issued under section 151, or in an application for patent published or deemed published under section 122(b), in which the patent or application, as the case may be, names another inventor and was effectively filed before the effective filing date of the claimed invention."

| Patents | Application Filing Date | Effective Filing Date |
|---|---|---|
| **Prior Aart - D'906 Patent** | **03/12/2013** | **03/12/2013** |
| Patents-in-Suit (D'723 Patent) | 12/15/2014 | 12/15/2014 |
| Patents-in-Suit (D'256 Patent) | 12/15/2014 | 12/15/2014 |
| Patents-in-Suit (D'195 Patent) | 02/29/2016 | 02/29/2016 |
| Patents-in-Suit (D'112 Patent) | 02/29/2016 | 02/29/2016 |

Here, the application of the D'906 Patent was effectively filed before the effective filing date of the Patents-in-Suit. Therefore, D'906 Patent is prior art to all Patents-in-Suit.

### B. Plaintiffs failed to compare Accused Product, Patents-in-Suit and the prior art D'906 patent

Plaintiffs claim that "Plaintiffs' commercial success is due in part to its revolutionary patented designs that feature an hourglass shape with a central support platform." [Dkt. No. 385, p. 20].

Without properly comparing the D'906 Patent with the Patents-in-Suit, Mr. Hatch further claims "none of the prior art create the impression of any integrated "hourglass" body with a relatively flat surface across the top of the main body." [Dkt. No. 388, pp.16-18]. This statement is plainly incorrect.

This "hourglass" peripheral shape was first disclosed and claimed in the D'906 Patent. As shown below in Table 1, page 6, the prior art D'906 Patent claimed and the Patents-in-Suit all have a hourglass shape with smooth curves. [Decl. of Rake, Ex 4, ¶¶53-56, 146; Decl. of Gandy, Ex 3, ¶¶23, 91, 97, 107]. In contrast, the Accused Product has a more "angular body shape with sharp edges." *Id*.

Therefore, in light of the D'906 Patent, an ordinary observer will find the Accused Product has a substantially different overall shape from the Patents-in-Suit. the "revolutionary design" was already claimed in the prior art D'906 Patent. Plaintiffs did not invent the hourglass shape of hoverboards.



| Table 1 — Comparison of Overall Hourglass Shape | |
|---|---|
| Patents-in-Suit<br>D’723 Patent | |
| Patents-in-Suit<br>D’256 Patent | |
| Patents-in-Suit<br>D’195 Patent | |
| Patents-in-Suit<br>D’112 Patent | |
| **<u>Prior Aart</u>**<br>**D’906 Patent** | |
| Accused Product | |
| Substantially Similar Patent<br>D’297 Patent | |



| **Table. 2 — Comparison of Overall Shape – Front View** | |
|---|---|
| Patents-in-Suit<br>D'723 Patent | |
| Patents-in-Suit<br>D'256 Patent | |
| Patents-in-Suit<br>D'195 Patent | |
| Patents-in-Suit<br>D'112 Patent | |
| **Prior Aart**<br>**D'906 Patent** | |
| Accused Product | |
| Substantially Similar Patent<br>D'297 Patent | |

Table 2 compares the front view of the prior art D'906 Patent, the Patents-in-Suit and the Accused Product. Both the prior art D'906 Patent and the Patents-in-Suit have "a slightly raised convex contour while the corresponding center portion of the Accused Product is slightly recessed down below." [Decl. of Gandy, Ex 3, ¶¶91, 97, 107].

Therefore, in light of the D'906 Patent, an ordinary observer will find the Accused Product has a substantially different overall shape from the Patents-in-Suit.

**III. An ordinary observer, familiar with the prior art, will not be deceived into thinking that the Accused Product is the same as the Patents-in-Suit**

**A. Plaintiffs failed to compare the ornamental features and failed to analyze how they impact the overall design**

Under the "ordinary observer" test, a court must consider the ornamental features [of each element] and analyze how they impact the overall design." *Lanard*, 958 F.3d at 1343-44 (citing *Richardson v. Stanley Works, Inc*., 597 F.3d 1288, at 1295 (Fed. Cir. 2010)).

"While the 'ordinary observer' test is not an element-by-element comparison," it also does not ignore the reality that designs can, and often do, have both functional and ornamental aspects. *Id*. (citing *Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1372 (Fed. Cir. 2006)). Analyzing the ornamental features is necessary to determine how the ornamental differences in each element would impact the ordinary observer's perception of the overall designs. *Id*.

Mr. Hatch's declaration failed to address the following features that contribute to the overall shape and appearance of the Accused Products and the Patents-in-Suit: a) The shape and appearance of the foot pads on the top surface; b) The contour of the narrow central portion of the top surface, which is not flat, contrary to Mr. Hatch's statement; c) The specific shape and appearance of the "arched covers;" d) The specific shape and appearance of lights and other ornamental features; and e) Features on the bottom surface which will be described below. [Gandy, Ex 3, ¶¶21, 22, Decl. of Rake, Ex 4, ¶¶57-61].

**B. None of the Patent-in-Suit claims any ornamental features of the Accused Product**

Supported by former design patent examiner Mr, Gandy's and Professor Rake's declarations, the noninfringement is clear and obvious in this case.

***Frist***, as mentioned in Part II, the overall peripheral shape of the Accused Product is substantially dissimilar to the Patents-in-Suit, which significantly impacts an ordinary observer's visual perception of

the over designs of the Accused Product. [Decl. of Gandy, Ex 3, ¶¶96, 102, 106, 112; Decl. of Rake, Ex 4, ¶¶148-150, 156, 160, 166, 168].

***Second***, the ornamental features of each element in the Accused Product are based on the claimed design of the D'297 Patent. An ordinary observer would consider the Accused Product to be substantially similar to the D'297 Patent. [Decl. of Rake, Ex 4, ¶189].

In contrast, no ordinary observer would consider Accused Product is substantially similar to the Patents-in-Suit because none of the Patent-in-Suit claimed any ornamental features of the Accused Product.

**1.** <u>None of the Patents-in-Suit claimed food pad design of the Accused Product</u>

The shape and design of the foot pads of the Accused Product are plainly different from the Patents-in-Suit. [Decl. of Gandy, Ex 3, ¶¶93, 99; Decl. of Rake, Ex 4, ¶¶146, 152, 158, 164].

Here, D'723 and D'256 Patents both claim the design of straight divergent lines on the food pads. D'195 nor D'112 made disclosure of certain design but did not claim any designs.

The D'297 Patent claimed unique three parallel lines and other intricate patterns on the standing pads, which are plainly dissimilar from the designs of the Patents-in-Suit. The Accused Product has identical foot pad design as D'297 Patent.



Patents-in-Suit D'723 Patent | Patents-in-Suit D'256 Patent | Patents-in-Suit D'195 Patent

Patents-in-Suit D'112 Patent | Substantially Similar Patent D'297 Patent | Accused Product

**2.** <u>None of the Patents-in-Suit claimed the wheel covers design of the Accused Product</u>

The wheel covers of the Accused Product are plainly different from the Patents-in-Suit.

The Patents-in-Suit all have semi-circular wheel covers and extend over and cover the entire wheel. None of the Patent-in-Suit claimed the wheel covers design of the Accused Product.

The D'297 Patent claimed the wheel covers design with opposing diagonally straight side edges, and a substantially flat top edge which curves outwardly but does not extend over the entire wheel. [Decl. of Gandy, Ex 3, ¶¶103, 108; Decl. of Rake, Ex 4, ¶¶144, 150, 156, 162, 168].

The wheel covers of the Accused Product have identical wheel covers design as D'297 Patent.



Patents-in-Suit D'723 Patent

Patents-in-Suit D'256 Patent

Patents-in-Suit D'195 Patent

Patents-in-Suit D'112 Patent

Substantially Similar Patent D'297 Patent

Accused Product

**3.** <u>None of the Patents-in-Suit claimed the light design of the Accused Product</u>

The position, shape, and size of the lights of the Accused Product are also plainly different from the Patents-in-Suit. None of the Patent-in-Suit claimed the wheel covers design of the Accused Product.

Highlighted, the Patents-in-Suit all have different size and shape and are positioned differently on the front panel of the hoverboard. [Decl. of Rake, Ex 4, ¶¶147, 153, 159, 165].

The light design of the Accused Product is identical to the thin narrow strips as claimed in the D'297 Patent.



**C. Under the *Gestalt Principles*, the ornamental features of the Accused Product listed above would be perceived as more dramatic and obvious, which would significantly impact the overall visual impression of the ordinary observer**

"The *Gestalt principles* of visual perception teaches us that the eye is attracted to areas of high contrast." [Decl. of Rake, Ex. 4, ¶25]. Under the *Figure-Ground principles*, "some shapes or contours take a prominent role (figure) while others recede into the background (ground)." *Id*. at 26.

Because certain designs would be perceived as more dramatic and obvious, the size, shape, and character of the lights, size and shape of the wheel covers, and the patterns of the foot pads would the would significantly impact the ordinary observer's visual perception of the overall designs. [Decl. of Rake, Ex. 4, ¶¶ ¶¶147, 153, 159, 165, 183-186]. As a result, the differences between the Patents-in-Suit and accused design take on greater significance.

Consequently, an ordinary observer, taking into account the prior art, would not believe the accused design to be the same as the patented design.

**Conclusion**

For the foregoing reasons, Defendant respectfully requests that this Court deny Plaintiffs' motion for entry of a preliminary injunction.

Respectfully Submitted:

Date: 09/03/2021

/s/ Tianyu Ju

Tianyu Ju
Iris.Ju@glacier.law
He Cheng
Robin.Cheng@glacier.law
Tao Liu
Tao.Liu@glacier.law
Glacier Law PLLC
200 Park Avenue, Suite1703
New York, NY 10166
www.glacier.law
Tel: +1 (332) 208-8882
Fax: +1 (312) 801-4587
***Attorneys for Defendant***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this September 03, 2021, I electronically filed the foregoing file with the Clerk of Court using the CM/ECF system, along with the attached Exhibits, and service was perfected on all counsel of record and interested parties through this system, which will deliver a true and correct copy of the foregoing documents via CM/ECF.

Date: 09/03/2021

/s/ Tianyu Ju
Tianyu Ju