**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ABC Corporation I et al, <br><br> *Plaintiff,* <br><br> v. <br><br> THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", <br><br> *Defendant.* | **CASE NO.** 1:20-cv-04806 <br><br> **Judge:** Honorable Thomas M. Durkin |

**DEFENDANTS URBANMAX, HGSM, AND GYROSHOES' OPPOSITION TO**
**PLAINTIFFS' MOTION FOR ENTRY OF A PRELIMINARY INJUNCTION**

**Table of Contents**

DEFENDANTS URBANMAX, HGSM, AND GYROSHOES' OPPOSITION TO..................I

INTRODUCTION.............................................................................................................1

FACTUAL BACKGROUND ............................................................................................2

PROCEDURAL BACKGROUND ....................................................................................3

LEGAL STANDARDS ....................................................................................................3

ARGUMENTS..................................................................................................................3

    I.    PLAINTIFFS FAILED TO PROVE THAT THEY WILL SUFFER FROM IRREPARABLE HARM......4

    II.    AN "ORDINARY OBSERVER" IN THIS CASE SHOULD BE A PURCHASER WHO IS FAMILIAR WITH HOVERBOARDS AND THE PRIOR ART DESIGNS, AND PLAINTIFFS' DEFINITION OF AN "ORDINARY OBSERVER" MUST BE REJECTED .......................................................5

    III.    IN LIGHT OF THE PRIOR ART D'906 PATENT, AN ORDINARY OBSERVER WILL NOT FIND THE ACCUSED PRODUCT AND THE PATENTS-IN-SUIT HAVE SUBSTANTIALLY SIMILAR OVERALL "HOURGLASS" SHAPE .............................................................................6

        A.    The D'906 Patent constitutes Prior Art to all Patents-in-Suit .......................................7

        B.    Plaintiffs failed to properly compare the prior art D'906 patent with the Patents-in-Suit ........................................................................................................................7

    IV.    AN ORDINARY OBSERVER, FAMILIAR WITH THE PRIOR ART, WILL NOT BE DECEIVED INTO THINKING THAT THE ACCUSED PRODUCT IS THE SAME AS THE PATENTS-IN-SUIT .........10

        A.    Plaintiffs failed to compare the ornamental features and failed to analyze how they impact the overall design............................................................................................10

        B.    None of the Patent-in-Suit claimed any ornamental features of the Accused Product..10

        C.    Under the *Gestalt Principles*, the ornamental features of the Accused Product listed above would be perceived as more dramatic and obvious, which would significantly impact the overall visual impression of the ordinary observer......................................14

CONCLUSION ................................................................................................................14

i

Defendants Urbanmax, HGSM, and Gyroshoes (collectively, "Defendants"), respectfully submit this Opposition to Plaintiffs' motion for entry of a preliminary injunction. [Dkt. No. 384].

**Introduction**

The hoverboard market is a rapidly growing industry, both Plaintiffs Hangzhou Chic Intelligent Technology Co. Ltd. ("Chic") and Unicorn Global, Inc ("Unicorn," together "Plaintiffs") and Defendants are in the business of selling hoverboards.

Plaintiffs are notoriously known for bringing baseless infringement claims against competitors to gain market monopoly.[1] This is Plaintiffs' another attempt to enforce meritless patent infringement claims.

This Preliminary Injunction against Defendants must be denied because Plaintiffs failed to show a likelihood of prevailing on the merit of the design patent infringement claim on the following grounds:

I.      Plaintiffs failed to prove that they will suffer from irreparable harm. By voluntarily dismissing seller of the same accused product, Plaintiffs has not made a colorable showing of irreparable harm.

II.     An "Ordinary Observer" in this case should be — a purchaser who is familiar with hoverboards and the prior arts designs. Therefore, Plaintiffs' wrong "ordinary observer standards" based on Mr. Hatch's erroneous statements must be rejected.

III.    Plaintiffs failed to make comparison of the patents-in-suit and the accused product in light of the prior art — namely, the U.S. Design Patent D739,906 Patent ("D'906 Patent," attached hereto as Exhibit 1). The D'906 Patent first claimed the "hourglass" peripheral shape of hoverboards. Considering the patents-in-suit all have the same hourglass shape as the D'906 Patent, and the accused product has a distinct overall shape from the Patents-in-Suit, the noninfringement obvious to an ordinary observer.

IV.     An ordinary observer, familiar with the prior art, will ***not*** be deceived into thinking that the accused product is the same as the patents-in-suit. It is undeniable that the ornamental features of the accused product are plainly different from the patents-in-suit. None of the Patents-in-Suit claimed any

---

[1] *See* Nicole D. Prysby, *Antitrust, Lanham Act claims against Chinese hoverboard company avoid dismissal*, Wolters Kluwer (March 23, 2020), https://lrus.wolterskluwer.com/news/antitrust-law-daily/antitrust-lanham-act-claims-against-chinese-hoverboard-company-avoid-dismissal/108782.

ornamental features of the Accused Product. The ornamental differences, based on the claimed design of the U.S. D808,857 Patent ("D'857 Patent," attached hereto as Exhibit 2), greatly impact the ordinary observer's visual perception of the overall design, thus renders the design of accused product substantially dissimilar from the claimed designs of the patents-in-suit.

## Factual Background

Evidence provided by Plaintiffs identifies the same alleged infringing product ("Accused Product").

### Urbanmax
"*Gyroor T581 Hoverboard 6.5" Off Road All Terrain Hoverboards with Bluetooth Speaker & LED Lights Two-Wheel Self Balancing Hoverboard with Kart Se...*" [Dkt. No. 227-1, p. 89 of 92]. The product has a unique ASIN number B07PHFP8GB. ("Accused Product") [Dkt. No. 227-3, p. 4 of 4]. The Accused Product is also identified as Gryoor A ("Type A Product") by Plaintiffs. [Dkt. No. 385, p. 20; Dkt. No. 388, p. 19].

### HGSM
"*Gyroor T581 Hoverboard 6.5" Off Road All Terrain Hoverboards with Bluetooth Speaker & LED Lights Two-Wheel Self Balancing Hoverboard...*" [Dkt. No. 227-1, p. 36 of 92]. The product has a unique ASIN number B07PHFP8GB. ("Accused Product") [Dkt. No. 227-3, p. 4 of 4]. The Accused Product is also identified as Gryoor A ("Type A Product") by Plaintiffs. [Dkt. No. 385, p. 20; Dkt. No. 388, p. 19].

### Gyroshoes
"*Gyroshoes Hoverboard off road all terrain Self Balancing hoverboard 6.5" T581 Flash Two-Wheel Self Balancing Hoverboard with Bluetooth Sp...*" [Dkt. No. 227-1, p. 57 of 92]. The product has a unique ASIN number B07WPK7KY3. ("Accused Product") [Dkt. No. 227-3, p. 4 of 4]. The Accused Product is also identified as Gryoor A ("Type A Product") by Plaintiffs. [Dkt. No. 385, p. 20; Dkt. No. 388, p. 19].



| Urbanmax - Accused Product | HGSM - Accused Product | Gyroshoes - Accused Product |

Plaintiffs allege that four of Plaintiffs' U.S. Design Patents – D737,723 ("D'723 patent"), D738,256 ("D'256 patent"), D785,112 ("D'112 patent"), D784,195 ("D'195 patent") ("Patents-in-Suit") [Dkt. No. 101, ¶14; Dkt No. 101-13] have been infringed by the Accused Product.

## Procedural Background

On November 20, 2020, Plaintiffs filed a motion for preliminary injunction. [Dkt. No. 105].

On November 24, 2020, a preliminary injunction hearing was held. [Dkt. No. 112].

On November 24, 2020, a preliminary injunction order was entered. [Dkt. No. 113].

On December 24, 2020, a modified preliminary injunction order was entered. [Dkt. No. 147].

On January 22, 2021, Gyroor's financial account and assets were restrained.

On February 11, 2021, HGSM's financial account and assets were retrained.

On February 12, 2021, Urbanmax's financial account and assets were restrained.

Service of process was not effectuated on Defendants until June 25, 2021. [Dkt. No. 310].

| Timeline | |
|---|---|
| Date: | Event: |
| 07/10/2020 | Initial Filing |
| 11/20/2020 | Motion for Preliminary Injunction Filed [Dkt. No. 105] |
| 11/24/2020 | Hearing for Preliminary Injunction held on November 24, 2020 |
| 11/24/2020 | Preliminary Injunction Order entered [Dkt. No. 113] |
| 12/23/2020 | Modified Preliminary Injunction Order entered [Dkt. No. 147] (to eBay) |
| 01/22/2021 | Gyroor's financial account and assets were restrained |
| 02/11/2021 | HGSM's financial account and assets were retrained |
| 02/12/2021 | Urbanmax's financial account and assets were restrained |
| 06/25/2021 | Email Service of Process [Dkt. No. 310] |

## Legal Standards

"To obtain a preliminary injunction, a plaintiff must show that: (1) without this relief, it will suffer 'irreparable harm'; (2) 'traditional legal remedies would be inadequate'; and (3) it has some likelihood of prevailing on the merits of its claims." *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020) (quoting *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018)).

## Arguments

3

Plaintiffs failed to prove that they will suffer from irreparable harm. By voluntarily dismissing seller of the same accused product, Plaintiffs has not made a colorable showing of irreparable harm

Plaintiffs applied the wrong "ordinary observer standard" and claim that an ordinary observer "would be a consumer user or the parent of a user, each having little or no experience purchasing hoverboards." [Dkt. No. 385, p. 19, Dkt. No. 388, p.8]. This "ordinary observer" must be rejected because all the leading cases require that the ordinary observer must be familiar with the prior art designs.

Then, based on the wrong standard, Plaintiffs failed to make any comparison of the Patents-in-Suit and the Accused Product in light of the prior art — the "D'906" Patent.

Supported by former design patent examiner Mr. Gandy's and Professor Rake's declarations (attached hereto as Exhibit 3 & 4), an ordinary observer, familiar with the D'906 Patent, will not consider the Accused Product to be "substantially similar" to the Patents-in-Suit. The distinct overall shape and the plainly different ornamental features make it obvious to an ordinary observer that the design of the Accused Product is substantially dissimilar from the claimed design of the Patents-in-Suit.

## I. Plaintiffs failed to prove that they will suffer from irreparable harm

By voluntarily dismissing seller of the same accused product, Plaintiffs has not made a colorable showing of "real," "substantial," and "immediate," irreparable harm

"The threat of irreparable injury must be "real," "substantial," and "immediate," not speculative or conjectural." *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983). "Delay on the part of the patentee 'undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief.'" *See Tough Traveler, Ltd. v. Outbound Prod.*, 60 F.3d 964, 968 (2d Cir. 1995); *see also High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.,* 49 F.3d 1551, 1557 (Fed. Cir. 1995) (delay in seeking preliminary injunction demonstrates no apparent urgency).

Foremove, a patentee is not entitled to a presumption of irreparable harm unless the patentee makes a strong showing of likelihood of success on the merit. *See High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc.*, 49 F.3d 1551, 1554 (Fed . Cir. 1995).

4

*First*, Plaintiffs conceded that Accused Product sold by other sellers does not impose irreparable harm.

On May 25, 2021, Plaintiffs filed a voluntary dismissal as to seller Runchenyun. The dismissal was later granted by this Court on June 3, 2021. [Dkt. No. 276]. According to the evidence provided by Plaintiffs, Runchenyun was selling the same Accused Product. [Dkt. No. 227-1, p. 81 of 92; Dkt. No. 227-3, p. 3].

While Runchenyun's account was restrained under a parallel case after June 3, 2021 for the same alleged infringement, the injunction was vacated on June 28, 2021, due to defective Rule 65(a) notice. [Case No. 1: 20-cv-05905, Dkt. No. 105]. Plaintiffs did not claim any further irreparable harm although Runchenyun resumed selling the same Accused Product right after the injunction was vacated.

By Plaintiffs' own submission, Runchenyun is still selling the same product [Dkt. No. 383-9, p. 3 of 15]. No claim of irreparable harm has been brought against Runchenyun.

Since Runchenyun has continued selling the Accused Product, Plaintiffs conceded that Runchenyun's continuous selling does not impose an irreparable harm. Consequently, Plaintiffs claim of Defendants' selling of the same Accused Product failed to meet the "real," "substantial," and "immediate," standards.

*Second*, as shown in Part II – IV below, Plaintiffs failed to make a strong showing of likelihood of success on the merit. Therefore, Plaintiffs are not entitled to a presumption of irreparable harm.

## II. An "Ordinary Observer" in this case should be a purchaser who is familiar with hoverboards and the prior art designs, and Plaintiffs' definition of an "ordinary observer" must be rejected

Plaintiffs' expert witness Mr. Hatch provided the wrong ordinary observer standard. Based on Mr. Hatch's declaration, Plaintiffs reply on *Gorham Co. v. White*, 81 U.S. 511, 527 (1872) and claim an ordinary observer here should be "a consumer user or the parent of a user, each having little or no experience purchasing hoverboards." [Dkt. No. 385, pp. 18-19; Dkt. No. 388, p. 8].

But the *Gorham* standard is limited to when "the claimed design and the accused design will be sufficiently distinct," which is not the appropriate standard in this case. *See Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008).

"Where there are many examples of similar prior art designs, as in a case such as *Whitman Saddle*, differences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the **hypothetical ordinary observer who is conversant with the prior art**." *See Egyptian Goddess*, 543 F.3d at 678 (citing *Smith v. Whitman Saddle Co.*, 148 U.S. 674, (1893)); *see also Wallace v. Ideavillage Prods. Corp.*, 640 Fed. Appx. 970, 978 (Fed. Cir, 2016).

Here, cited by both Plaintiffs and Defendant, its undisputed that there many examples of similar prior art designs that are relevant to the. [Decl. of Gandy, Ex. 1, ¶¶1-2; *see also* Dkt. No. 388, pp. 16-18]. The "hypothetical ordinary observer who is conversant with the prior art" standard obviously applies here. A person with "little or no experience" with hoverboards clearly does not satisfy the ordinary observer test.

Therefore, in light of the many similar prior art designs, the hypothetical ordinary observer in this case should be a purchaser who is familiar with hoverboards and the prior art designs.

### III. In light of the prior art D'906 Patent, an ordinary observer will NOT find the Accused Product and the Patents-in-Suit have substantially similar overall "hourglass" shape

In the most recent landmark case *Lanard Toys, Ltd. v. Dolgencorp LLC*, 958 F.3d 1337 (Fed. Cir 2020), The Feder Circuit prescribe that:

> [T]he ordinary observer is deemed to view the differences between the patented design and the accused product *in the context of the prior art*. When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art. And when the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer." *Id.* (quoting *Egyptian Goddess*, 543 F.3d at 676).

Here, because the Patents-in-Suit and the D'906 Patent are very close in their overall hourglass shape, the differences between the Accused Product and the Patents-in-Suit are important to the ordinary observer. In light of the prior art D'906 Patent, an ordinary observer will not find the Accused Product and the Patents-in-Suit have substantially similar in their overall "hourglass" shape.

A. **The D'906 Patent constitutes Prior Art to all Patents-in-Suit**

Under 35 U.S.C. §102(a)(2), prior art includes "a patent issued under section 151, or in an application for patent published or deemed published under section 122(b), in which the patent or application, as the case may be, names another inventor and was effectively filed before the effective filing date of the claimed invention."

| Patents | Application Filing Date | Effective Filing Date |
|---|---|---|
| **Prior Aart - D'906 Patent** | **03/12/2013** | **03/12/2013** |
| Patents-in-Suit (D'723 Patent) | 12/15/2014 | 12/15/2014 |
| Patents-in-Suit (D'256 Patent) | 12/15/2014 | 12/15/2014 |
| Patents-in-Suit (D'195 Patent) | 02/29/2016 | 02/29/2016 |
| Patents-in-Suit (D'112 Patent) | 02/29/2016 | 02/29/2016 |

Here, the application of the D'906 Patent was effectively filed before the effective filing date of the Patents-in-Suit. Therefore, D'906 Patent is prior art to all Patents-in-Suit.

B. **Plaintiffs failed to properly compare the prior art D'906 patent with the Patents-in-Suit**

Plaintiffs claim that "Plaintiffs' commercial success is due in part to its revolutionary patented designs that feature an hourglass shape with a central support platform." [Dkt. No. 385, p. 20].

Without properly comparing the D'906 Patent with the Patents-in-Suit, Mr. Hatch further claims "none of the prior art create the impression of any integrated "hourglass" body with a relatively flat surface across the top of the main body." [Dkt. No. 388, pp.16-18]. This statement is plainly incorrect.

This "hourglass" peripheral shape was first disclosed and claimed in the D'906 Patent. As shown below in Table 1, page 8, the prior art D'906 Patent claimed and the Patents-in-Suit all have a hourglass shape with smooth curves. [Decl. of Rake, Ex 4, ¶¶53-56, 63; Decl. of Gandy, Ex 3, ¶¶23, 24, 29-30, 35, 37, 42]. In contrast, the Accused Product has a more "angular body shape with sharp edges." *Id*.

Therefore, in light of the D'906 Patent, an ordinary observer will find the Accused Product has a substantially different overall shape from the Patents-in-Suit. the "revolutionary design" was already claimed in the prior art D'906 Patent. Plaintiffs did not invent the hourglass shape of hoverboards.

7



| Table 1 — Comparison of Overall Hourglass Shape | |
|---|---|
| Patents-in-Suit D'723 Patent | |
| Patents-in-Suit D'256 Patent | |
| Patents-in-Suit D'195 Patent | |
| Patents-in-Suit D'112 Patent | |
| **Prior Aart** **D'906 Patent** | |
| Accused Product | |
| Substantially Similar Patent D'857 Patent | |



| Table. 2 — Comparison of Overall Shape – Front View | |
|---|---|
| Patents-in-Suit<br>D'723 Patent | |
| Patents-in-Suit<br>D'256 Patent | |
| Patents-in-Suit<br>D'195 Patent | |
| Patents-in-Suit<br>D'112 Patent | |
| **Prior Aart**<br>**D'906 Patent** | |
| Accused Product | |
| Substantially Similar Patent<br>D'857 Patent | |

Table 2 compares the front view of the prior art D'906 Patent, the Patents-in-Suit and the

Accused Product. Both the prior art D'906 Patent and the Patents-in-Suit have "a slightly raised

convex contour while the corresponding center portion of the Accused Product is slightly recessed

down below." [Decl. of Gandy, Ex 3, ¶¶ 24, 31, 42, 47].

Therefore, in light of the D'906 Patent, an ordinary observer will find the Accused Product

has an substantially different overall shape from the Patents-in-Suit.

**IV. An ordinary observer, familiar with the prior art, will not be deceived into thinking that the Accused Product is the same as the Patents-in-Suit**

    **A.   Plaintiffs failed to compare the ornamental features and failed to analyze how they impact the overall design**

Under the "ordinary observer" test, a court must consider the ornamental features [of each element]

and analyze how they impact the overall design." *Lanard*, 958 F.3d at 1343-44 (citing *Richardson v.*

*Stanley Works, Inc.*, 597 F.3d 1288, at 1295 (Fed. Cir. 2010)).

"While the 'ordinary observer' test is not an element-by-element comparison," it also does not

ignore the reality that designs can, and often do, have both functional and ornamental aspects. *Id*. (citing

*Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1372 (Fed. Cir. 2006)). Analyzing the

ornamental features is necessary to determine how the ornamental differences in each element would

impact the ordinary observer's perception of the overall designs. *Id*.

Mr. Hatch's declaration failed to address the following features that contribute to the overall

shape and appearance of the Accused Products and the Patents-in-Suit: a) The shape and appearance of

the foot pads on the top surface; b) The contour of the narrow central portion of the top surface, which is not

flat, contrary to Mr. Hatch's statement; c) The specific shape and appearance of the "arched covers;" d) The

specific shape and appearance of lights and other ornamental features; and e) Features on the bottom surface

which will be described below. [Gandy, Ex 3, ¶¶21, 22, Decl. of Rake, Ex 4, ¶¶57-61].

    **B.   None of the Patent-in-Suit claimed any ornamental features of the Accused Product**

Supported by former design patent examiner Mr. Gandy's and Professor Rake's declarations, the

noninfringement is clear and obvious in this case.

***Frist***, as mentioned in Part III, the overall peripheral shape of the Accused Product is substantially

dissimilar to the Patents-in-Suit, which significantly impacts an ordinary observer's visual perception of

the over designs of the Accused Product. [Decl. of Gandy, Ex 3, ¶¶30, 36, 41, 46; Decl. of Rake, Ex 4,

¶¶60-64, 67, 75-97].

*Second*, the ornamental features of each element in the Accused Product are based on the

claimed design of the D'857 Patent. An ordinary observer would consider the Accused Product to be

substantially similar to the D'857 Patent. [Decl. of Rake, Ex 4, ¶187].

In contrast, no ordinary observer would consider Accused Product is substantially similar to the

Patents-in-Suit because none of the Patent-in-Suit claimed any ornamental features of the Accused Product.

1.   None of the Patents-in-Suit claimed food pad design of the Accused Product

The shape and design of the foot pads of the Accused Product are plainly different from the

Patents-in-Suit. [Decl. of Gandy, Ex 3, ¶¶27, 33; Decl. of Rake, Ex 4, ¶¶63,77].

Here, D'723 and D'256 Patents both claim the design of straight divergent lines on the food pads.

D'195 nor D'112 made disclosure of certain design but did not claim any designs.

The D'857 Patent claimed unique curved lines on the foot pads, which are plainly dissimilar from

the designs of the Patents-in-Suit. The Accused Product has identical foot pad design as D'857 Patent.



| Patents-in-Suit<br>D'723 Patent | Patents-in-Suit<br>D'256 Patent | Patents-in-Suit<br>D'195 Patent |
|---|---|---|
| Patents-in-Suit<br>D'112 Patent | Substantially Similar Patent<br>D'857 Patent | Accused Product |

**2.** None of the Patents-in-Suit claimed the wheel covers design of the Accused Product

The wheel covers of the Accused Product are plainly different from the Patents-in-Suit.

The Patents-in-Suit all have semi-circular wheel covers and extend over and cover the entire wheel. None of the Patent-in-Suit claimed the wheel covers design of the Accused Product.

The shape of the wheel covers in the Patnes-in-Suit and the prior art D'906 patent are both semi-circular, "while the wheel covers on the design of the Gyroor "A" hoverboard are somewhat squared off." [Decl. of Gandy, Ex 3, ¶¶26, 32, 38].

Therefore, "even to the most casual observer, the differences are significant." [Decl. of Rake, Ex 4, ¶¶68, 75, 81, 87]



| Patents-in-Suit D'723 Patent | Patents-in-Suit D'256 Patent | Patents-in-Suit D'195 Patent |
|---|---|---|
| Patents-in-Suit D'112 Patent | **Prior Aart** **D'906 Patent** | Accused Product |

**3.** None of the Patents-in-Suit claimed the light design of the Accused Product

The position, shape, and size of the lights of the Accused Product are also plainly different from the Patents-in-Suit. None of the Patent-in-Suit claimed the wheel covers design of the Accused Product.

Highlighted, the Patents-in-Suit all have different size and shape and are positioned differently on the front panel of the hoverboard. [Decl. of Rake, Ex 4, ¶¶ 66, 72, 78, 84].

The light design of the Accused Product is identical to the thin narrow strips as claimed in the D'857 Patent.



| | | |
|---|---|---|
| Patents-in-Suit D'723 Patent | | |
| Patents-in-Suit D'256 Patent | | |
| Patents-in-Suit D'195 Patent | | |
| Patents-in-Suit D'112 Patent | | |
| Accused Product | | |
| Substantially Similar Patent D'297 Patent | | |

**C. Under the *Gestalt Principles*, the ornamental features of the Accused Product listed above would be perceived as more dramatic and obvious, which would significantly impact the overall visual impression of the ordinary observer**

"The *Gestalt principles* of visual perception teaches us that the eye is attracted to areas of high contrast." [Decl. of Rake, Ex. 4, ¶25]. Under the *Figure-Ground principles*, "some shapes or contours take a prominent role (figure) while others recede into the background (ground)." *Id*. at 26.

Because certain designs would be perceived as more dramatic and obvious, the size, shape, and character of the lights, size and shape of the wheel covers, and the patterns of the foot pads would the would significantly impact the ordinary observer's visual perception of the overall designs. [Decl. of Rake, Ex. 4, ¶¶ ¶¶66, 72, 78, 84, 171-174]. As a result, the differences between the Patents-in-Suit and accused design take on greater significance.

Consequently, an ordinary observer, taking into account the prior art, would not believe the accused design to be the same as the patented design.

<u>Conclusion</u>

For the foregoing reasons, Defendants respectfully requests that this Court deny Plaintiffs' motion for entry of a preliminary injunction.

<br>

Respectfully Submitted:

Date: 09/03/2021

/s/ Tianyu Ju

Tianyu Ju
Iris.Ju@glacier.law
He Cheng
Robin.Cheng@glacier.law
Tao Liu
Tao.Liu@glacier.law
Glacier Law PLLC
200 Park Avenue, Suite1703
New York, NY 10166
www.glacier.law
Tel: +1 (332) 208-8882
Fax: +1 (312) 801-4587
***Attorneys for Defendants***

14

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this September 3, 2021, I electronically filed the foregoing file

with the Clerk of Court using the CM/ECF system, along with the attached Exhibits, and service was

perfected on all counsel of record and interested parties through this system, which will deliver a true

and correct copy of the foregoing documents via CM/ECF.


Date: 09/03/2021                                            /s/ Tianyu Ju
                                                           Tianyu Ju