# Exhibit 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISON**

| | |
|---|---|
| ABC Corporation I et al, <br><br> *Plaintiff*, <br><br> v. <br><br> THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", <br><br> *Defendants*. | **CASE NO.** 1:20-cv-04806 <br><br> **Judge:** Honorable Thomas M. Durkin |

**EXPERT DECLARATION OF JIM GANDY**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

## <u>TABLE OF CONTENTS</u>

I.    **INTRODUCTION** ............................................................................................. 1

II.   **QUALIFICATIONS** ......................................................................................... 2

III.  **MY UNDERSTANDING OF THE APPLICABLE LEGAL PRINCIPLES** ................... 4

IV.  **THE DECLARATION OF PAUL HATCH** ...................................................... 5

V.   **ANALYSIS OF THE ASSERTED PATENTS, THE ACCUSED PRODUCTS AND THE PRIOR ART** ...................................................................................... 8

   A.    The '723 Patent, Prior Art '906 Patent and Gyroor "A" ................................. 8

   B.    The '256 Patent, Prior Art '906 Patent and Gyroor "A" ............................... 12

   C.    The '195 Patent, Prior Art '906 Patent and Gyroor "A" ............................... 17

   D.   The '112 Patent, Prior Art '906 Patent and Gyroor "A" ............................... 21

   E.    The '723 Patent, Prior Art '906 Patent and Gyroor "B" ............................... 25

   F.    The '256 Patent, Prior Art '906 Patent and Gyroor "B" ............................... 30

   G.   The '195 Patent, Prior Art '906 Patent and Gyroor "B" ............................... 35

   H.   The '112 Patent, Prior Art '906 Patent and Gyroor "B" ............................... 40

   I.    The '723 Patent, Prior Art '906 Patent and Gyroor "C" ............................... 44

   K.   The '195 Patent, Prior Art '906 Patent and Gyroor "C" ............................... 53

   L.    The '112 Patent, Prior Art '906 Patent and Gyroor "C" ............................... 57

   M.   The '723 Patent, Prior Art '906 Patent and Gyroor "D" ............................... 61

   N.   The '256 Patent, Prior Art '906 Patent and Gyroor "D" ............................... 66

   O.   The '195 Patent, Prior Art '906 Patent and Gyroor "D" ............................... 71

   P.    The '112 Patent, Prior Art '906 Patent and Gyroor "D" ............................... 75

VI.  **CONCLUSION** ............................................................................................ 80

**REBUTTAL EXPERT DECLARATION OF JIM GANDY AS TO
NON-INFRINGEMENT OF THE ASSERTED DESIGN PATENTS**

I, Jim Gandy, submit this declaration in support of multiple defendants, Gyroor, Jiangyou-US, Gyroshoes, Fengchi-US, HGSM, Urbanmax, Gaodeshang-US, Gyroor-US, declaratory relief of noninfringement. In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the statements herein are true and correct to the best of my knowledge, belief, recollection, and understanding. All statements made on information and belief are believed to be true. I am over the age of eighteen, and, if asked to do so, I could competently testify to the matters set forth herein.

## I.   INTRODUCTION

1.     I have been retained by counsel as an independent expert witness to provide my opinion regarding the above-captioned proceeding. Based on my education and my experience in transportation design, I have been asked to render an opinion regarding alleged infringement of the sole claim of design patents D737,723, D738,256, D784,195, and D785,112, ("The Asserted Design Patents"). This declaration contains my opinions concerning the alleged infringement of those design patents in rebuttal to the opinions of Paul Hatch as set forth in his report dated August 24, 2021. Multiple defendants, Gyroor, Jiangyou-US, Gyroshoes, Fengchi-US, HGSM, Urbanmax, Gaodeshang-US, Gyroor-US, ("multiple defendents") requested that I opine on the affidavit submitted by Paul Hatch in support of Plaintiffs Hangzhou Chic Intelligent Technology Co. and Unicorn Global Inc.'s motion for a preliminary injunction.

2.     As discussed in further detail in this Declaration and any supplemental reports, testimony, or declarations that I may provide, it is my opinion that the Defendant's hoverboard designs, Gyroor "A", "B", "C" and "D" do not infringe the D737,723, D738,256, D784195 and D785,112 patents.

3.     The following is my report and it and the exhibits hereto contain my opinions and the support therefore. In connection with rendering my opinion I have reviewed and relied upon the following materials:

- U.S. Design Patent No. D737,723 ("the '723 Patent")
- File History for U.S. Design Patent No. D737,723 Patent;
- U.S. Design Patent No. D738,256 ("the '256 Patent")
- File History for U.S. Design Patent No. D738,256 Patent;

1

- U.S. Design Patent No. D784,195 ("the '195 Patent")
- File History for U.S. Design Patent No. D784,195 Patent;
- U.S. Design Patent No. D785,112 ("the '112 Patent")
- File History for U.S. Design Patent No. D785,112 Patent;
- Defendant's hoverboards, Gyroor "A", "B", "C" and "D" ("The Accused Products");
- U.S. Design Patent No. D739,906 ("the '906 Patent");
- U.S. Utility Patent No. 8,738,287 ("the '287 Patent");
- EXPERT DECLARATION OF PAUL HATCH REGARDING INFRINGEMENT OF U.S. PATENTS D737,723, D738,256, D784,195, and D785,112, ("The Hatch Declaration"); and
- DEFENDANT GYROOR-US'S MOTION FOR SUMMARY JUDGEMENT FOR DECLARATORY RELIEF OF NONINFRINGEMENT.

4.      In addition to the above materials, I have also relied on my own education, training, experience and knowledge in the field of transportation and design patents.

5.      I may also consider additional documents and information that have not yet been provided to or discovered by me should such documents and information be brought to my attention after the date I submit this Declaration, and I reserve the right to add to or amend my opinions in connection with the same.

6.      The analysis in this Declaration is exemplary. Additional reasons may support my conclusions, but they do not form my current analysis. The fact that I do not address a particular reason does not imply that I would agree or disagree with such additional reason.

7.      I receive compensation at a rate of $350 per hour for my time spent on this matter, except for any travel time, which is billed at one-half of my hourly rate. I am also being reimbursed for reasonable and customary expenses associated with my work on this matter.  I have no financial interests in the patents involved in this proceeding, and my compensation is not dependent on the outcome of this proceeding. The conclusions I present are based on my own judgment. I am not an employee of "multiple defendants", Glacier Law PLLC, or any affiliated companies.

## II.      QUALIFICATIONS

8.      My current curriculum vitae is attached as Exhibit 1.

2

9.      I hold a Bachelor of Science in Architectural Design Technology from Temple University in Philadelphia, Pennsylvania, where I graduated in 1972.

10.     Upon graduation, I worked as a Design Patent Examiner in Art Unit 2911 for the United States Patent and Trademark Office ("USPTO").  While in Art Unit 2911, I primarily worked in class D12 "Transportation."  My responsibilities included examining design patent applications, examining reexamination and reissue applications, issuing determinations on examined applications, initiating interference proceedings, and preparing examiner's answers for applications on appeal to the Board of Patent Appeals and Interferences.

11.     In 1979, I was promoted to Primary Examiner and continued to work as a Design Patent Examiner in Art Unit 2911 for the USPTO.  With this promotion, I gained full signatory authority and trained new examiners while occasionally fulfilling supervisory patent examiner duties when the art

12.     In my 24 years of work as a Design Patent Examiner at the USPTO, I made patentability determinations in approximately 10,000 design patent applications that I examined.  I have examined design patent applications in every design class, and approximately three-quarters of my examinations related to Class D12 (Land Transportation).

13.     In 1996, I became a Supervisory Patent Examiner for the USPTO and transitioned to Art Unit 2913, which also reviews designs for Transportation among other classes of art.  As supervisor, I managed the work flow, quality, and timeliness of examiners in my art unit.  I also trained junior examiners and provided additional training to primary examiners to maintain consistency in work product.  I evaluated the performance of all examiners in the art unit.  Finally, I also developed the Design Examiner Supplemental Training Guide and led the program for uniformity of examination practice for the entire Design Patent Technology Center.

14.     In 1998, I became the Design Patent Practice Specialist for Technology Center 2900 at the USPTO.  I continued to train all new examiners, junior examiners when they joined the USPTO and trained all examiners at Technology Center 2900 through continuing education programs.  I was in charge of updating the Design Examiner Supplemental Training Guide and Chapter 1500 Design Patents in the Manual of Patent Examining Procedure.  I responded to inquiries from external customers about design patent practice and procedure on a daily basis.  I continuously reviewed cases, decisions, and reports coming from the courts, the Board, and the Office of Patent Quality Review to train examiners and update the previously mentioned

3

documents. Finally, I also made presentations to attorneys and inventor groups on behalf of the USPTO.

15. During my career at the USPTO, I received an outstanding rating under performance appraisal plan for 32 consecutive years. I also received various accolades including the Department of Commerce Bronze Medal Award in 1983; the USPTO's Distinguished Career Award in 2000 in recognition of consistent superior performance in design patent application examination and in art unit leadership; and the Norman P. Morgenstern Award in 2004 for the leadership and innovation contributions made by Supervisory Patent Examiners.

16. Currently, and since my retirement from the USPTO in 2005, I have occasionally counseled patent attorneys and agents who file design patents applications.

17. In the past I have served as in expert in other design patent related matters, a detailed list of cases in which I have served as a design patent expert is set forth in my curriculum vitae which is attached as Exhibit 1.

## III.    MY UNDERSTANDING OF THE APPLICABLE LEGAL PRINCIPLES

18. As a design patent expert, I am not an attorney and, therefore, nothing in this report should be construed as me offering any legal opinions. Rather, I am offering design assessments and opinions. In rendering my analysis, I have been informed by counsel for "multiple defendents" the legal standards for infringement of a design patent. I have applied those standards in forming the opinions expressed in this report.

19. Based on my conversations with counsel for "multiple defendents" and my review of administrative decisions and articles discussing design patent law principals, I have the following understanding of design patent infringement. First, it is my understanding that the claim in a design patent application is directed to the entire design and not individual parts or elements thereof. In addition, it is my understanding that the proper inquiry in determining if a patented design has been infringed is whether the accused design appropriates the claimed design as a whole. Further, it is my understanding that design patent infringement is determined by first construing the claim to the design and then comparing it to the design of the accused device. It's also my understanding that in construing the claim a design is better represented by an illustration rather than a verbal description since any description would not likely be intelligible without the illustration. Therefore, it is my opinion that the claim of the Patents-in-Suit should be construed based on the drawings.

4

20.     I have further been informed by counsel for "multiple defendents" that the sole test for determining whether a design patent has been infringed is the "ordinary observer" test. It's my understanding that under the "ordinary observer" test for infringement of a patented design an accused design must be so similar in overall appearance to the claimed design that an "ordinary observer" would be deceived into purchasing one, supposing it to be the other. Moreover, it's my understanding that under this test an "ordinary observer" is one who is conversant with the prior art and that in order to determine whether an accused design appropriates the patented design a comparison of the features of the patented design with the prior art and the accused design may be necessary. In this instance, an "ordinary observer" is a potential purchaser who is familiar with hoverboards and their different designs.

## IV.     THE DECLARATION OF PAUL HATCH

21.     In order to assess whether the design of "The Accused Products" appropriates the claimed design of "The Asserted Design Patents", the features of each should be identified and then compared to each other and the prior art. "The Hatch Declaration" fails to do that adequately. Specifically, with respect to the '723 and '256 patents, Mr. Hatch makes the following statement, in part, on pages 22 and 23 of his declaration: "Unlike the cited prior art shown in Section III Chapter F, the claimed design ............... and the Accused Products share the same overall impression and have an integrated 'hourglass' body with a relatively flat surface across the top of the main body, arched covers over the wheel area, larger radii on the front and back of the underside, and elongated light panels on the front surface." This statement by Mr. Hatch not only fails to identify specific features of "The Accused Products" and the claimed design of the '723 and '256 patents on the top, front, rear and bottom surfaces, but also fails to describe the shape and appearance of some of the features that are identified in his statement. Specifically, the following features that contribute to the overall shape and appearance of "The Accused Products" and the claimed design of the '723 and '256 patents are either omitted or not adequately described in "The Hatch Declaration":     a) The shape and appearance of the foot pads on the top surface;

b) The contour of the narrow central portion of the top surface, which is not flat, contrary to Mr. Hatch's statement;

c) The specific shape and appearance of the "arched covers";

5

        d) The specific shape and appearance of the "elongated light panels on the front surface" as well as other features of the front and rear surfaces which will be described below; and

        e) Features on the bottom surface which will be described below.

As will be described later in this declaration, the above identified features contribute significantly to the overall shape and appearance of "The Accused Products" and the claimed design of the '723 and '256 patents as a whole and distinguish them over each other such that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other.

      22.    With regards to the '195 and '112 patents, Mr. Hatch makes the following statement, in part, on pages 25 and 26 of his declaration: "Unlike the cited prior art shown in Section III Chapter F, the claimed design …………….. and the Accused Products share an integrated 'hourglass' body with many horizontal styling lines across the body and a relatively flat surface across the top, arched covers over the wheel area, larger radii on the front and back of the underside." Again, this statement by Mr. Hatch not only fails to identify specific features of "The Accused Products" and the claimed design of the '195 and '112 patents on the top, front, rear and bottom surfaces, but also fails to describe the shape and appearance of some of the features that are identified in his statement. Specifically, the following features that contribute to the overall shape and appearance of "The Accused Products" and the claimed design of the '195 and '112 patents are either omitted or not adequately described in "The Hatch Declaration":

        a) The contour of the narrow central portion of the top surface, which is not flat, contrary to Mr. Hatch's statement;

        b) The specific shape and appearance of the "arched covers";

        c) The specific shape and appearance and features of the front and rear surfaces which will be described below; and

        e) Features on the bottom surface which will be described below.

As will be described later in this declaration, the above identified features contribute significantly to the overall shape and appearance of "The Accused Products" and the claimed design of the '195 and '112 patents as a whole and distinguish them over each other such that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other.

      23.    In addition to the above deficiencies, "The Hatch Declaration" fails to identify the closest prior art to the "Asserted Design Patents" and compare it to said patents and "The Accused

Products". In fact, Mr. Hatch makes the following statement, in part, on pages 18 and 19 of his declaration: "None of the prior art create the impression of an integrated 'hourglass' body with many …………. lines across the body and a relatively flat surface across the top, arched covers over the wheel area, larger radii on the front and back of the underside. Unlike any of the prior art the foot plates narrow as they extend toward the center." However, contrary to Mr. Hatch's statement, the design patent D739,906, ("the '906 patent"), cited on both the '195 and '112 patents, is the closest prior art to the "Asserted Design Patents" and in fact, has an 'hourglass' body and a relatively flat surface across the top, arched covers over the wheel area, larger radii on the front and back of the underside as well as foot plates that narrow as they extend toward the center. It's my opinion that the design disclosed in the prior art '906 patent has an overall shape and appearance basically the same as the "The Asserted Patents". While it's noted that the '906 patent was issued after the '723 and '256 patents, the '906 patent was filed with the United States Patent and Trademark Office more than a year before the filing date of those patents and it's my understanding it can be considered prior art for the purpose of this infringement analysis. In support of this position, I have also considered the 8,738,278 utility patent, (the '278 patent), which again was cited on the '195 and '112 patents, and names the same inventor, Shane Chen, as the '906 design patent and was filed a month earlier than the '906 design patent and issued before the filing dates of the '723, '256, '195 and '112 patents and more than a year before the issue date of those patents. Figure 1 of the '278 patent discloses a hoverboard having an appearance basically the same as the design in the '906 patent, and Figure 2 shows the hour glass peripheral shape of the hoverboard shown in Figure 1 and the design shown in the '906 patent. It's further my understanding that as prior art the '906 patent can be relied upon for everything it discloses in the drawing, including the broken line depiction of wheel covers on each end of the design. It's further noted that the '723 and '256 patents were cited on the '195 and '112 patents; however, since the applicant and assignee in all four of those patents are the same and the '195 and '112 patents were filed less than a year after the issuance of the '723 and '256 patent I do not consider the '723 and '256 patent prior art to the '195 and '112 patents. Below I will make a side-by-side visual comparison of the claimed design of the "Asserted Design Patents" and "The Accused Products" with the prior art '906 patent.

7

## V.    ANALYSIS OF THE ASSERTED PATENTS, THE ACCUSED PRODUCTS AND THE PRIOR ART

### A.  The '723 Patent, Prior Art '906 Patent and Gyroor "A"



Top plan view "723 patent



Top plan view prior art '906 patent



Top plan view Gyroor "A"



24.    In view of the above visual depictions of the claimed design of the '723 patent, the design of the prior art '906 patent and the design of the Gyroor "A" hoverboard it's clear that they all have the same hour glass peripheral shape as viewed in top plan. In fact, the hour glass peripheral shape of the prior art '906 patent appears to be closer to the claimed design of the '723 patent than the design of the Gyroor "A" hoverboard. Furthermore, the claimed design of the '723 patent, the design of the prior art '906 patent and the design of the Gyroor "A" hoverboard are all comprised of the same general components, namely, opposing outer foot surfaces that are substantially flat, a concavely curved recessed center portion and wheel covers at each end. As will be apparent from the remaining views set forth below, namely, front, rear, side, perspective and bottom the specific shape and appearance of the surfaces and features of the design of the prior art '906 patent are, in my opinion, closer to the claimed design of the '723 patent than the design of the Gyroor "A" hoverboard. For instance as can be seen in the front and rear views below, the concavely curved recessed center portion of the top surface of the claimed design of the '723 patent and the design of the prior art '906 patent both have a slightly raised convex contour, while the

corresponding center portion of the top surface of the design of the Gyroor "A" hoverboard is substantially flat and slightly recessed down below the opposing outer foot surfaces.

25.

Rear view '723 patent



Front view '723 patent



Front and Rear view prior art '906 patent



Front and Rear view Gyroor "A"



26.     Furthermore, it's noted that the wheel covers at each end of the claimed design of the '723 patent, the design of the prior art '906 patent and the design of the Gyroor "A" hoverboard differ from each other as shown in the top plan view and front and rear views above as well as the side view and perspective view below. However, it's my opinion that the shape and appearance of the wheel covers in the claimed design of the '723 patent are closer to the wheel covers shown in broken lines in the design of the prior art '906 patent than the wheel covers of the design of the Gyroor "A" hoverboard. Specifically, the wheel covers shown on the claimed design of the '723 patent and the design of the prior art '906 patent are both semi-circular in shape and extend over and cover the entire wheel, while the wheel covers on the design of the Gyroor "A" hoverboard are somewhat squared off and do not extend over the entire wheel, but rather partially over the wheel.

Side view '723 patent         Side view prior art '906 patent         Side view Gyroor "A"





Perspective view '723 patent  Perspective view prior art '906 patent

 

Perspective view the Gyroor "A"



27.    The only common feature on the top surface of the claimed design of the '723 patent and the design of the Gyroor "A" hoverboard not shown on the design of prior art patent '906 patent is the foot pads on the opposing foot surfaces. However, it is clear from the enlarged isolated view below that the foot pads of the claimed design of the '723 patent and the design of the Gyroor "A" hoverboard differ not only in their peripheral shape but also the decorative pattern of ribs on each.

Enlarged view of foot pads            Enlarged view of foot pads

'723 patent                                    Gyroor "A"

 

10

28.     The front and rear surfaces of the claimed design of the '723 patent and the design of prior art '906 patent are substantially similar in shape and appearance as depicted in the front and rear views and the perspective views above. Specifically, both designs have a vertically flat upper portion of the front and rear surfaces and a convexly curved lower portion that merges with the flat bottom surface. The only visual difference is the rounded parallelogram shaped LED lights at the opposing outer ends of the rear surface of the claimed design of the '723 patent and the lines on the front and rear surface of the claimed design of the '723 patent. On the contrary, while the design of the Gyroor "A" hoverboard has front and rear surfaces having a vertically flat upper portion and a convexly curved lower portion that merges with the bottom surface as the claimed design of the '723 patent and the design of prior art '906 patent, the central portion of the front and rear surfaces of the design of the Gyroor "A" hoverboard differs significantly from the claimed design of the '723 patent and the design of prior art '906 patent. Specifically, directly below the vertically flat upper portion of the front and rear surfaces are recessed horizontally elongated LED lights and below the LED lights is an outwardly protruding horizontal band that extends inwardly and merges with the recessed central portion. Also, on the right front vertically flat upper portion of the design of "The Accused Product" is the word "GYROOR".

29.     The shape and appearance of the bottom surface of the claimed design of the '723 patent and the design of prior art '906 patent are virtually identical as illustrated in the bottom views below. Specifically, both the claimed design of the '723 patent and the design of prior art '906 patent have opposing flat, plain outer portions and a smooth continuous concavely curved central portion which is best shown in the front and rear views above. However, the bottom surface of the design of the Gyroor "A" hoverboard differs from both the claimed design of the '723 patent and the design of prior art '906 patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a slight diagonally downwardly protruding arcuate edge. In addition, the recessed central portion of the design of the Gyroor "A" hoverboard is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having six narrow longitudinal ribs.

11

Bottom view '723 patent

Bottom view prior art '906 patent






Bottom view the Gyroor "A"



30.     In view of the above analysis of the claimed design of the '723 patent with the design of the Gyroor "A" hoverboard and the design of the prior art '906 patent it is my opinion that the overall shape and appearance and identified features of the claimed design of the '723 patent are closer to the design of the prior art '906 patent than the design of the Gyroor "A" hoverboard. Furthermore, it's my opinion that the shape and appearance of the few features identified that are common to the claimed design of the '723 patent and the design the Gyroor "A" hoverboard not found in the design of the prior art '906 are substantial different such that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Therefore, it's my opinion that the design of the Gyroor "A" hoverboard does not infringe the claimed design of the '723 patent.

### B.  The '256 Patent, Prior Art '906 Patent and Gyroor "A"

Top plan view '256 patent

Top plan view prior art '906 pat





Top plan view Gyroor "A"

31.     In view of the above visual depictions of the claimed design of the ''256 patent, the design of the prior art '906 patent and the design of the Gyroor "A" hoverboard it's clear that they all have the same hour glass peripheral shape as viewed in top plan. In fact, the hour glass peripheral shape of the prior art '906 patent appears to be closer to the claimed design of the '256 patent than the design of the Gyroor "A" hoverboard. Furthermore, the claimed design of the '256 patent, the design of the prior art '906 patent and the design of the Gyroor "A" hoverboard are all comprised of the same general components, namely, opposing outer foot surfaces that are substantially flat, a concavely curved recessed center portion and wheel covers at each end. As will be apparent from the remaining views set forth below, namely, front, rear, side, perspective and bottom, the specific shape and appearance of the surfaces and features of the design of the prior art '906 patent are, in my opinion, closer to the claimed design of the '256 patent than the design of the Gyroor "A" hoverboard. For instance as can be seen in the front and rear views below, the concavely curved recessed center portion of the top surface of the claimed design of the '256 patent and the design of the prior art '906 patent both have a slightly raised convex contour, while the corresponding center portion of the top surface of the design of the Gyroor "A" hoverboard is substantially flat and slightly recessed down below the opposing outer foot surfaces.

Front view '256 patent



Rear view '256 patent



Front and Rear view prior art '906 patent



Front and Rear view Gyroor "A"



13

32.     Furthermore, it's noted that the wheel covers at each end of the claimed design of the '256 patent, the design of the prior art '906 patent and the design of the Gyroor "A" hoverboard differ from each other as shown in the top plan view and front and rear views above as well as the side view and perspective view below. However, it's noted that the shape of the wheel covers in the claimed design of the '256 patent and the prior art '906 patent are semi-circular, while the wheel covers on the design of the Gyroor "A" hoverboard are somewhat squared off. It's also noted that the wheel covers on the claimed design of the '256 patent and the design of the Gyroor "A" hoverboard do not extend over the entire wheel, but rather partially over the wheel.

| Side view '256 patent | Side view prior art '906 patent | Side view Gyroor "A" |
|---|---|---|

  

Perspective view '256 patent                    Perspective view prior art '906 patent

 

Perspective view Gyroor "A"



14

33.     The only common feature on the top surface of the claimed design of the '256 patent and the design of the Gyroor "A" hoverboard not shown on the design of prior art patent '906 patent is the foot pads on the opposing foot surfaces. However, it is clear from the enlarged isolated view below that the foot pads of the claimed design of the '256 patent and the design of the Gyroor "A" hoverboard differ not only in their peripheral shape but also the decorative pattern of ribs on each.

Enlarged view of foot pads

'256 patent

Enlarged view of foot pads

Gyroor "A"

34.     The front and rear surfaces of the claimed design of the '256 patent and the design of prior '906 patent are substantially similar in shape and appearance as depicted in the front and rear views and the perspective views above. Specifically, both designs have a vertically flat upper portion of the front and rear surfaces and a convexly curved lower portion that merges with the flat bottom surface. The only visual difference is the rounded somewhat trapezoidal shaped LED lights at the opposing outer ends of the rear surface of the claimed design of the '256 patent and the horizontal line on the front and rear surface of the claimed design of the '256 patent. On the contrary, while the design of the Gyroor "A" hoverboard has front and rear surfaces having a vertically flat upper portion and a convexly curved lower portion that merges with the bottom surface as the claimed design of the '723 patent and the design of prior art '906 patent, the central portion of the front and rear surfaces of the design of the Gyroor "A" hoverboard differs significantly from the claimed design of the '256 patent and the design of prior art '906 patent.

15

Specifically, directly below the vertically flat upper portion of the front and rear surfaces are recessed horizontally elongated LED lights and below the LED lights is an outwardly protruding horizontal band that extends inwardly and merges with the recessed central portion. Also, on the right front vertically flat upper portion of the design of the Gyroor "A" hoverboard is the word "GYROOR".

35. The shape and appearance of the bottom surface of the claimed design of the '256 patent and the design of prior art '906 patent are virtually identical as illustrated in the bottom views below. Specifically, both the claimed design of the '256 patent and the design of prior art '906 patent have opposing flat, plain outer portions and a smooth continuous concavely curved central portion which is best shown in the front and rear views above. However, the bottom surface of the design of the Gyroor "A" hoverboard differs from both the claimed design of the '256 patent and the design of prior art '906 patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a slight diagonally downwardly protruding arcuate edge. In addition, the recessed central portion of the design of the Gyroor "A" hoverboard is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having six narrow longitudinal ribs.

Bottom view '256 patent      Bottom view prior art '906 patent

 

Bottom view Gyroor "A"



36. In view of the above analysis of the claimed design of the '256 patent with the design of the Gyroor "A" hoverboard and the design of the prior art '906 patent it is my opinion that the overall shape and appearance and identified features of the claimed design of the '256 patent are closer to the design of the prior art '906 patent than the design of the Gyroor "A"

hoverboard. Furthermore, it's my opinion that the shape and appearance of the few features identified that are common to the claimed design of the '256 patent and the design of the Gyroor "A" hoverboard not found in the design of the prior art '906 are substantial different such that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Therefore, it's my opinion that the design of the Gyroor "A" hoverboard does not infringe the claimed design of the '256 patent.

### C. The '195 Patent, Prior Art '906 Patent and Gyroor "A"

Top plan view'195 patent          Top plan view prior art '906 patent



Top plan view Gyroor "A"

37.     In view of the above visual depictions of the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "A" hoverboard it's clear that they all have the same hour glass peripheral shape as viewed in top plan. In fact, the hour glass peripheral shape of the prior art '906 patent appears to be closer to the claimed design of the '195 patent than the design of the Gyroor "A" hoverboard. Furthermore, the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "A" hoverboard are all comprised of the same general components, namely, opposing outer foot surfaces that are substantially flat, a concavely curved recessed center portion and wheel covers at each end. As will be apparent from the remaining views set forth below, namely, front, rear, side, perspective and bottom the specific shape and appearance of most of the surfaces and features of the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "A" hoverboard differ significantly from each other. However, there are some surfaces and features of

the design of the prior art '906 patent that are closer in shape and appearance to the claimed design of the '195 patent than the design of the Gyroor "A" hoverboard. For instance as can be seen in the front and rear views below, while not in the same manner, the concavely curved recessed center portion of the top surface of the claimed design of the '195 patent and the design of the prior art '906 patent protrude upwardly from the opposing outer foot surfaces, while the corresponding center portion of the top surface of the design of the Gyroor "A" hoverboard is substantially flat and slightly recessed down below the opposing outer foot surfaces.

Front view '195 patent                                    Rear view of '195 patent




Front and Rear view prior art '906 patent          Front and Rear view Gyroor "A"




38.     Furthermore, it's noted that the wheel covers at each end of the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "A" hoverboard differ from each other as shown in the top plan view and front and rear views above as well as the side view and perspective view below. However, it's my opinion that the shape and appearance of the wheel covers in the claimed design of the '195 patent are closer to the wheel covers shown in broken lines in the design of the prior art '906 patent than the wheel covers of the design of the Gyroor "A" hoverboard. Specifically, the wheel covers shown on the claimed design of the '195 patent and the design of the prior art '906 patent are both semi-circular in shape and extend over and cover the entire wheel, while the wheel covers on the design of the Gyroor "A" hoverboard are somewhat squared off and do not extend over the entire wheel, but rather partially over the wheel.

18

Side view '195 patent     Side view prior art '906 patent     Side view Gyroor "A"

  

Perspective view '195 patent        Perspective view prior art '906 patent

 

Perspective view Gyroor "A"



39.　　The front and rear surfaces of the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "A" hoverboard are all dissimilar in appearance from one and other as depicted in the front and rear views and the perspective views above. Specifically, front and rear surfaces of the claimed design of the '195 patent have a concavely curved upper portion with a narrow vertically flat surface directly below it and a convexly curved lower portion that merges with the bottom surface. The convexly curved lower portion has what appear to be horizontally elongated LED lights having a knife-like appearance at the opposing outer ends. On the contrary, the front and rear surfaces of the design of the '906 patent

19

has a vertically flat upper portion and a convexly curved lower portion that merges with the flat bottom surface. Furthermore, the front and rear surfaces of the design of the Gyroor "A" hoverboard has a vertically flat upper portion with a central portion consisting of recessed horizontally elongated LED lights and an outwardly protruding horizontal band that extends inwardly directly below the LED lights and a convexly curved lower portion that merges with the bottom surface. Also, on the right front vertically flat upper portion of the design of the Gyroor "A" hoverboard is the word "GYROOR".

40.     The shape and appearance of the bottom surface of the claimed design of the '195 patent and the design of prior art '906 patent are somewhat similar to each other as illustrated in the bottom views below. Specifically, both the claimed design of the '195 patent and the design of prior art '906 patent have opposing flat, plain outer portions and a smooth continuous concavely curved central portion which is best shown in the front and rear views above. However, the concavely curved central portion of the claimed design of the '195 patent is truncated and not a continuous rounded surface as in the design of the prior art '906 patent. Furthermore, the opposing flat outer portions of the claimed design of the '195 patent include parallel arcuate lines that extend down from the lower convexly curved portion of the front and rear surfaces. On the contrary, the bottom surface of the design of the Gyroor "A" hoverboard differs from both the claimed design of the '195 patent and the design of prior art '906 patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a slight diagonally downwardly protruding arcuate edge. In addition, the recessed central portion of the design of the Gyroor "A" hoverboard is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having six narrow longitudinal ribs.

Bottom view '195 patent                    Bottom view prior art '906 patent

     

Bottom view Gyroor "A"



41.     In view of the above analysis of the claimed design of the '195 patent with the design of the Gyroor "A" hoverboard and the design of the prior art '906 patent it's my opinion that the claimed design of the '195 patent has some surfaces and features that are closer in overall shape and appearance to the design in the prior art patent '906 patent than the design of the Gyroor "A" hoverboard. It's further my opinion that the shape and appearance of the surfaces and features of the design of the Gyroor "A" hoverboard are substantial different from the claimed design of the '195 patent that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Therefore, it's my opinion that the design of the Gyroor "A" hoverboard does not infringe the claimed design of the '195 patent.

### D.  The '112 Patent, Prior Art '906 Patent and Gyroor "A"

Top view '112 patent                     Top view prior art '906 patent



Top view Gyroor "A"



42.     In view of the above visual depictions of the claimed design of the '112 patent, the design of the prior art '906 patent and the design of the Gyroor "A" hoverboard it's clear that they all have the same hour glass peripheral shape as viewed in top plan. In fact, the hour glass peripheral shape of the prior art '906 patent appears to be closer to the claimed design of the '112

21

patent than the design of the Gyroor "A" hoverboard. Furthermore, the claimed design of the '112 patent, the design of the prior art '906 patent and the design of the Gyroor "A" hoverboard are all comprised of the same general components, namely, opposing outer foot surfaces that are substantially flat, a concavely curved recessed center portion and wheel covers at each end. As will be apparent from the remaining views set forth below, namely, front, rear, side, perspective and bottom, the specific shape and appearance of some of the surfaces and features of the claimed design of the '112 patent, the design of the prior art '906 patent and the design of the Gyroor "A" hoverboard differ significantly from each other. However, there are some surfaces and features of the design of the prior art '906 patent that are closer in shape and appearance to the claimed design of the '112 patent than the design of the Gyroor "A" hoverboard. For instance as can be seen in the front and rear views below, the concavely curved recessed center portion of the top surface of the claimed design of the '112 patent and the design of the prior art '906 patent both have a slightly raised convex contour, while the corresponding center portion of the top surface of the design of the Gyroor "A" hoverboard is substantially flat and slightly recessed down below the opposing outer foot surfaces.

Front view '112 patent                                                   Rear view '112 patent

Front and Rear view prior art '906 patent             Front and Rear view Gyroor "A"





43.     Furthermore, it's noted that the wheel covers at each end of the claimed design of the '112 patent, the design of the prior art '906 patent and the design of the Gyroor "A" hoverboard differ from each other as shown in the top plan view and front and rear views above as well as the side view and perspective view below. However, it's my opinion that the shape and appearance of the wheel covers in the claimed design of the '112 patent are closer to the wheel covers shown in broken lines in the design of the prior art '906 patent than the wheel covers of the design of the

22

Gyroor "A" hoverboard. Specifically, the wheel covers shown on the claimed design of the '112 patent and the design of the prior art '906 patent are both semi-circular in shape and extend over and cover the entire wheel, while the wheel covers on the design of the Gyroor "A" hoverboard are somewhat squared off and do not extend over the entire wheel, but rather partially over the wheel.

Side view '112 patent      Side view prior art '906 patent      Side view Gyroor "A"

  

Perspective view '112 patent      Perspective view prior art '906 patent

 

Perspective view Gyroor "A"



44. The front and rear surfaces of the claimed design of the '112 patent, the design of the prior art '906 patent and the design of the Gyroor "A" hoverboard are all dissimilar in appearance from one and other as depicted in the front and rear views and the perspective views

23

above. Specifically, the front and rear surfaces of the claimed design of the '112 patent have an undulated upper portion with opposing arcuate elongated LED lights and a convexly curved lower portion that merges with the bottom surface. On the contrary, the front and rear surfaces of the design of the'906 patent has a vertically flat upper portion and a convexly curved lower portion that merges with the bottom surface. Furthermore, the front and rear surfaces of the design of the Gyroor "A" hoverboard has a vertically flat upper portion with a central portion consisting of recessed horizontally elongated LED lights and an outwardly protruding horizontal band that extends inwardly directly below the LED lights and merges with the recessed central portion and a convexly curved lower portion that merges with the bottom surface. Also, on the right front vertically flat upper portion of the design of the Gyroor "A" hoverboard is the word "GYROOR".

45. The shape and appearance of the bottom surface of the claimed design of the '112 patent and the design of prior art '906 patent are substantially identical as illustrated in the bottom views below except that the opposing outer portions of the claimed design of the '112 patent have a slight upward curvature while the design of the prior art '906 patent has opposing flat, plain outer portions. However, both the claimed design of the '112 patent and the design of the prior art '906 patent have a smooth continuous concavely curved central portion which is best shown in the front and rear views above. On the other hand, the bottom surface of the design of the Gyroor "A" hoverboard differs from both the claimed design of the '112 patent and the design of prior art '906 patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a slight diagonally downwardly protruding arcuate edge. In addition, the recessed central portion of the design of the Gyroor "A" hoverboard is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having six narrow longitudinal ribs.

Bottom view '112 patent · · · · · · · · · · · · · · Bottom view prior art '906 patent

 

24

Bottom view of Gyroor "A"



46.     In view of the above analysis of the claimed design of the '112 patent with the design of the Gyroor "A" hoverboard and the design of the prior art '906 patent it is my opinion that the overall shape and appearance and identified features of the claimed design of the '112 patent are closer to the design of the prior art '906 patent than the design of the Gyroor "A" hoverboard. It's further my opinion that the shape and appearance of the surfaces and features of the design of the Gyroor "A" hoverboard are substantial different from the claimed design of the '195 patent that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Therefore, it's my opinion that the design of the Gyroor "A" hoverboard does not infringe the claimed design of the '112 patent.

### E.  The '723 Patent, Prior Art '906 Patent and Gyroor "B"

Top plan view '723 patent                    Top plan view prior art '906 patent



Top plan view Gyroor "B"



47.     In view of the above visual depictions of the claimed design of the '723 patent, the design of the prior art '906 patent and the design of the Gyroor "B" hoverboard it's clear that they all have the same hour glass peripheral shape as viewed in top plan. In fact, the hour glass peripheral shape of the prior art '906 patent appears to be closer to the claimed design of the '723

25

patent than the design of the Gyroor "B" hoverboard. Specifically, the recessed center portion of the claimed design of the '723 patent and the design of the prior art '906 patent are concavely curved, whereas the recessed center portion of the design of the Gyroor "B" hoverboard has a truncated "v" shape appearance comprising opposing diagonally straight edges that connect to a horizontally straight inner edge. In addition, the claimed design of the '723 patent, the design of the prior art '906 patent and the design of Gyroor "B" hoverboard are all comprised of the same general components, namely, opposing outer foot surfaces that are substantially flat, a recessed center portion and wheel covers at each end. As will be apparent from the remaining views set forth below, namely, front, rear, side, perspective and bottom the specific shape and appearance of the surfaces and features of the design of the prior art '906 patent are, in my opinion, closer to the claimed design of the '723 patent than the design of the Gyroor "B" hoverboard. For instance as can be seen in the front and rear views below, the concavely curved recessed center portion of the top surface of the claimed design of the '723 patent and the design of the prior art '906 patent both have a slightly raised convex contour, while the corresponding center portion of the top surface of the design of Gyroor "B" hoverboard is substantially flat and slightly recessed down below the opposing outer foot surfaces.

Front view '723 patent                    Rear view '723 patent

 

Front and Rear view prior art '906 patent          Front and Rear view Gyroor "B"



48.     Furthermore, it's noted that the wheel covers at each end of the claimed design of the '723 patent, the design of the prior art '906 patent and the design of the Gyroor "B" hoverboard differ from each other as shown in the top plan view and front and rear views above as well as the side view and perspective view below. However, it's my opinion that the shape and appearance of

26

the wheel covers in the claimed design of the '723 patent are closer to the wheel covers shown in broken lines in the design of the prior art '906 patent than the wheel covers of the design of the Gyroor "B" hoverboard. Specifically, the wheel covers shown on the claimed design of the '723 patent and the design of the prior art '906 patent are both semi-circular in shape and extend over and cover the entire wheel, while the wheel covers on the design of Gyroor "B" hoverboard have opposing diagonally straight side edges a substantially flat top edge which curves outwardly but does not extend over the entire wheel, but rather partially over the wheel. In addition, the inner surface of the wheel covers on the design of Gyroor "B" hoverboard has a protruding trapezoidal shaped portion and the outwardly curved top surface includes the word "Gyroor".

Side view '723 patent        Side view prior art '906 patent        Side view the Gyroor "B"





Perspective view '723 patent                Perspective view prior art '906 patent




27

Perspective view of Gyroor "B"



49.     The only common feature on the top surface of the claimed design of the '723 patent and the design of the Gyroor "B" hoverboard not shown on the design of prior art patent '906 patent is the foot pads on the opposing foot surfaces. However, it is clear from the enlarged isolated view below that the foot pads of the claimed design of the '723 patent and the design of the Gyroor "B" hoverboard differ significantly in their peripheral shape as well as the decorative pattern on each.

Enlarged view of foot pads              Enlarged view of foot pads
'723 patent                                    Gyroor "B"

     

50.     The front and rear surfaces of the claimed design of the '723 patent and the design of prior art '906 patent are substantially similar in shape and appearance as depicted in the front and rear views and the perspective views above. Specifically, both designs have a vertically flat upper portion of the front and rear surfaces and a convexly curved lower portion that merges with

the flat bottom surface. The only visual difference is the rounded parallelogram shaped LED lights at the opposing outer ends of the rear surface of the claimed design of the '723 patent and the lines on the front and rear surface of the claimed design of the '723 patent. On the contrary, while the design of the Gyroor "B" hoverboard has front and rear surfaces having a convexly curved lower portion that merges with the bottom surface as the claimed design of the '723 patent and the design of prior art '906 patent, the upper portion of the front and rear surfaces of the design of the Gyroor "B" hoverboard differs significantly from the claimed design of the '723 patent and the design of prior art '906 patent. Specifically, the upper portion of the front and rear surfaces of the Gyroor "B" hoverboard has a wide diagonally downwardly sloping portion that merges with a narrow vertically straight central portion. In addition, the front and rear surfaces of the Gyroor "B" hoverboard has elongated asymetrcally shaped LED lights.

51. The shape and appearance of the bottom surface of the claimed design of the '723 patent and the design of prior art '906 patent are virtually identical as illustrated in the bottom views below. Specifically, both the claimed design of the '723 patent and the design of prior art '906 patent have opposing flat, plain outer portions and a smooth continuous concavely curved central portion which is best shown in the front and rear views above. However, the bottom surface of the design of the Gyroor "B" hoverboard differs from both the claimed design of the '723 patent and the design of prior art '906 patent in that the opposing flat outer portions have a downwardly protruding surface having a pattern of vent holes and the recessed central portion is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having four narrow longitudinal ribs.

Bottom view '723 patent                         Bottom view prior art '906 patent



Bottom view Gyroor "B"



52.     In view of the above analysis of the claimed design of the '723 patent with the design of the Gyroor "B" hoverboard and the design of the prior art '906 patent it is my opinion that the overall shape and appearance and identified features of the claimed design of the '723 patent are closer to the design of the prior art '906 patent than the design of the Gyroor "B" hoverboard. Furthermore, it's my opinion that the shape and appearance of the few features identified that are common to the claimed design of the '723 patent and the design of the Gyroor "B" hoverboard not found in the design of the prior art '906 are substantial different such that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Therefore, it's my opinion that the design of the Gyroor "B" hoverboard does not infringe the claimed design of the '723 patent.

**F.  The '256 Patent, Prior Art '906 Patent and Gyroor "B"**

Top plan view '256 patent                          Top plan view prior art '906 patent

  

Top plan view of Gyroor "B"



53.     In view of the above visual depictions of the claimed design of the ''256 patent, the design of the prior art '906 patent and the design of the Gyroor "B" hoverboard it's clear that they

30

all have the same hour glass peripheral shape as viewed in top plan. In fact, the hour glass peripheral shape of the prior art '906 patent appears to be closer to the claimed design of the '256 patent than the design of the Gyroor "B" hoverboard. Specifically, the recessed center portion of the claimed design of the '723 patent and the design of the prior art '906 patent are concavely curved, whereas the recessed center portion of the design of the Gyroor "B" hoverboard has a truncated "v" shape appearance comprising opposing diagonally straight edges that connect to a horizontally straight inner edge. In addition, the claimed design of the '256 patent, the design of the prior art '906 patent and the design of the Gyroor "B" hoverboard are all comprised of the same general components, namely, opposing outer foot surfaces that are substantially flat, a recessed center portion and wheel covers at each end. As will be apparent from the remaining views set forth below, namely, front, rear, side, perspective and bottom, the specific shape and appearance of the surfaces and features of the design of the prior art '906 patent are, in my opinion, closer to the claimed design of the '256 patent than the design of the Gyroor "B" hoverboard. For instance as can be seen in the front and rear views below, the concavely curved recessed center portion of the top surface of the claimed design of the '256 patent and the design of the prior art '906 patent both have a slightly raised convex contour, while the corresponding center portion of the top surface of the design of the Gyroor "B" hoverboard is substantially flat and slightly recessed down below the opposing outer foot surfaces.

Front view '256 patent                              Rear view '256 patent

                              

Front and Rear view of the '906 patent          Front and Rear view of Gyroor "B"

                              

54.    Furthermore, it's noted that the wheel covers at each end of the claimed design of the '256 patent, the design of the prior art '906 patent and the design of the Gyroor "B" hoverboard differ from each other as shown in the top plan view and front and rear views above as well as the

31

side view and perspective view below. However, it's my opinion that the shape and appearance of the wheel covers in the claimed design of the '256 patent are closer to the wheel covers shown in broken lines in the design of the prior art '906 patent than the wheel covers of the design of the Gyroor "B" hoverboard. Specifically, the wheel covers shown on the claimed design of the '256 patent and the design of the prior art '906 patent are both semi-circular in shape, while the wheel covers on the design of Gyroor "B" hoverboard have opposing diagonally straight side edges a substantially flat top edge which curves outwardly. It's also noted that the wheel covers on the claimed design of the '256 patent and the design of the Gyroor "B" hoverboard do not extend over the entire wheel, but rather partially over the wheel. In addition, the inner surface of the wheel covers on the design of Gyroor "B" hoverboard has a protruding trapezoidal shaped portion and the outwardly curved top surface includes the word "Gyroor".

Side view '256 patent     Side view prior art '906 patent     Side view the Gyroor "B"

  

Perspective view '256 patent        Perspective view prior art '906 patent

 

Perspective view of Gyroor "B"



55.     The only common feature on the top surface of the claimed design of the '256 patent and the design of the Gyroor "B" hoverboard not shown on the design of prior art patent '906 patent is the foot pads on the opposing foot surfaces. However, it is clear from the enlarged isolated view below that the foot pads of the claimed design of the '256 patent and the design of the Gyroor "B" hoverboard differ significantly in their peripheral shape as well as the decorative pattern of on each.

Enlarged view of foot pads                          Enlarged view of foot pads
'256 patent                                        Gyroor "B"

     

56.     The front and rear surfaces of the claimed design of the '256 patent and the design of prior art '906 patent are substantially similar in shape and appearance as depicted in the front and rear views and the perspective views above. Specifically, both designs have a vertically flat

33

upper portion of the front and rear surfaces and a convexly curved lower portion that merges with the flat bottom surface. The only visual difference is the rounded somewhat trapezoidal shaped LED lights at the opposing outer ends of the rear surface of the claimed design of the '256 patent and the horizontal line on the front and rear surface of the claimed design of the '256 patent. On the contrary, while the design of the Gyroor "B" hoverboard has front and rear surfaces having a convexly curved lower portion that merges with the bottom surface as the claimed design of the '256 patent and the design of prior art '906 patent, the upper portion of the front and rear surfaces of the design of the Gyroor "B" hoverboard differs significantly from the claimed design of the '256 patent and the design of prior art '906 patent. Specifically, the upper portion of the front and rear surfaces of the Gyroor "B" hoverboard has a wide diagonally downwardly sloping portion that merges with a narrow vertically straight central portion. In addition, the front and rear surfaces of the Gyroor "B" hoverboard has elongated asymetrcally shaped LED lights.

57.     The shape and appearance of the bottom surface of the claimed design of the '256 patent and the design of prior art '906 patent are virtually identical as illustrated in the bottom views below. Specifically, both the claimed design of the '256 patent and the design of prior art '906 patent have opposing flat, plain outer portions and a smooth continuous concavely curved central portion which is best shown in the front and rear views above. However, the bottom surface of the design of the Gyroor "B" hoverboard differs from both the claimed design of the '256 patent and the design of prior art '906 patent in that the opposing flat outer portions have a downwardly protruding surface having a pattern of vent holes and the recessed central portion is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having four narrow longitudinal ribs.

Bottom view '256 patent                     Bottom view prior art '906 patent




Bottom view of Gyroor "B"



58.     In view of the above analysis of the claimed design of the '256 patent with the design of the Gyroor "B" hoverboard and the design of the prior art '906 patent it is my opinion that the overall shape and appearance and identified features of the claimed design of the '256 patent are closer to the design of the prior art '906 patent than the design of the Gyroor "B" hoverboard. Furthermore, it's my opinion that the shape and appearance of the few features identified that are common to the claimed design of the '256 patent and the design of the Gyroor "B" hoverboard not found in the design of the prior art '906 are substantial different such that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Therefore, it's my opinion that the design of the Gyroor "B" hoverboard does not infringe the claimed design of the '256 patent.

### G.  The '195 Patent, Prior Art '906 Patent and Gyroor "B"

Top plan view '195 patent

Top plan view prior art '906 patent





Top plan view of Gyroor "B"



59.     In view of the above visual depictions of the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "B" hoverboard it's clear that they

all have the same hour glass peripheral shape as viewed in top plan. In fact, the hour glass peripheral shape of the prior art '906 patent appears to be closer to the claimed design of the '195 patent than the design of Gyroor "B" hoverboard. Specifically, the recessed center portion of the claimed design of the '195 patent and the design of the prior art '906 patent are concavely curved, whereas the recessed center portion of the design of the Gyroor "B" hoverboard has a truncated "v" shape appearance comprising opposing diagonally straight edges that connect to a horizontally straight inner edge. In addition, the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "B" hoverboard are all comprised of the same general components, namely, opposing outer foot surfaces that are substantially flat, a recessed center portion and wheel covers at each end. As will be apparent from the remaining views set forth below, namely, front, rear, side, perspective and bottom the specific shape and appearance of most of the surfaces and features of the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "B" hoverboard differ significantly from each other. However, there are some surfaces and features of the design of the prior art '906 patent that are closer in shape and appearance to the claimed design of the '195 patent than the design of the Gyroor "B" hoverboard. For instance as can be seen in the front and rear views below, while not in the same manner, the concavely curved recessed center portion of the top surface of the claimed design of the '195 patent and the design of the prior art '906 patent protrude upwardly from the opposing outer foot surfaces, while the corresponding center portion of the top surface of the design of the Gyroor "B" hoverboard is substantially flat and slightly recessed down below the opposing outer foot surfaces.

Front view '195 patent



Rear view '195 patent



Front view prior art '906 patent



Front view Gyroor "B"



36

60. Furthermore, it's noted that the wheel covers at each end of the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "B" hoverboard differ from each other as shown in the top plan view and front and rear views above as well as the side view and perspective view below. However, it's my opinion that the shape and appearance of the wheel covers in the claimed design of the '195 patent are closer to the wheel covers shown in broken lines in the design of the prior art '906 patent than the wheel covers of the design of the Gyroor "B" hoverboard. Specifically, the wheel covers shown on the claimed design of the '195 patent and the design of the prior art '906 patent are both semi-circular in shape and extend over and cover the entire wheel, while the wheel covers on the design of Gyroor "B" hoverboard have opposing diagonally straight side edges a substantially flat top edge which curves outwardly but does not extend over the entire wheel, but rather partially over the wheel. In addition, the inner surface of the wheel covers on the design of Gyroor "B" hoverboard has a protruding trapezoidal shaped portion and the outwardly curved top surface includes the word "Gyroor".

Side view '195 patent          Side view prior art '906 patent          Side view the Gyroor "B"

  

Perspective view '195 patent          Perspective view prior art '906 patent

 

37

Perspective view Gyroor "B"



61.     The front and rear surfaces of the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "B" hoverboard are all dissimilar in appearance from one and other as depicted in the front and rear views and the perspective views above. Specifically, front and rear surfaces of the claimed design of the '195 patent have a concavely curved upper portion with a narrow vertically flat surface directly below it and a convexly curved lower portion that merges with the bottom surface. The convexly curved lower portion has what appear to be horizontally elongated LED lights having a knife-like appearance at the opposing outer ends. On the contrary, the front and rear surfaces of the design of the '906 patent has a vertically flat upper portion and a convexly curved lower portion that merges with the flat bottom surface. Furthermore, while the design of the Gyroor "B" hoverboard has front and rear surfaces having a convexly curved lower portion that merges with the bottom surface as the claimed design of the '195 patent and the design of prior art '906 patent, the upper portion of the front and rear surfaces of the design of the Gyroor "B" hoverboard differs significantly from the claimed design of the '195 patent and the design of prior art '906 patent. Specifically, the upper portion of the front and rear surfaces of the Gyroor "B" hoverboard has a wide diagonally downwardly sloping portion that merges with a narrow vertically straight central portion. In addition, the front and rear surfaces of the Gyroor "B" hoverboard has elongated asymetrcally shaped LED lights.

62.     The shape and appearance of the bottom surface of the claimed design of the '195 patent and the design of prior art '906 patent are somewhat similar to each other as illustrated in the bottom views below. Specifically, both the claimed design of the '195 patent and the design of prior art '906 patent have opposing flat, plain outer portions and a smooth continuous concavely

curved central portion which is best shown in the front and rear views above. However, the concavely curved central portion of the claimed design of the '195 patent is truncated and not a continuous rounded surface as in the design of the prior art '906 patent. Furthermore, the opposing flat outer portions of the claimed design of the '195 patent include parallel arcuate lines that extend down from the lower convexly curved portion of the front and rear surfaces. On the contrary, the bottom surface of the design of the Gyroor "B" hoverboard differs from both the claimed design of the '195 patent and the design of prior art '906 patent in that the opposing flat outer portions have a downwardly protruding surface having a pattern of vent holes and the recessed central portion is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having four narrow longitudinal ribs.

Bottom view '195 patent          Bottom view prior art '906 patent

 

Bottom view Gyroor "B"



63.     In view of the above analysis of the claimed design of the '195 patent with the design of the Gyroor "B" hoverboard and the design of the prior art '906 patent it's my opinion that the claimed design of the '195 patent has some surfaces and features that are closer in overall shape and appearance to the design in the prior art patent '906 patent than the design of the Gyroor "B" hoverboard. It's further my opinion that the shape and appearance of the surfaces and features of the design of the Gyroor "B" hoverboard are substantial different from the claimed design of the '195 patent that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Therefore, it's my opinion that the design of the Gyroor "B" hoverboard does not infringe the claimed design of the '195 patent.

**H. The '112 Patent, Prior Art '906 Patent and Gyroor "B"**

Top plan view '112 patent        Top plan view prior art '906 patent

 

Top view Gyroor "B"



64.    In view of the above visual depictions of the claimed design of the '112 patent, the design of the prior art '906 patent and the design of the Gyroor "B" hoverboard it's clear that they all have the same hour glass peripheral shape as viewed in top plan. In fact, the hour glass peripheral shape of the prior art '906 patent appears to be closer to the claimed design of the '112 patent than the design of Gyroor "B" hoverboard. Specifically, the recessed center portion of the claimed design of the '112 patent and the design of the prior art '906 patent are concavely curved, whereas the recessed center portion of the design of the Gyroor "B" hoverboard has a truncated "v" shape appearance comprising opposing diagonally straight edges that connect to a horizontally straight inner edge. In addition, the claimed design of the '112 patent, the design of the prior art '906 patent and the design of the Gyroor "B" hoverboard are all comprised of the same general components, namely, opposing outer foot surfaces that are substantially flat, a recessed center portion and wheel covers at each end. As will be apparent from the remaining views set forth below, namely, front, rear, side, perspective and bottom the specific shape and appearance of most of the surfaces and features of the claimed design of the '112 patent, the design of the prior art '906 patent and the design of the Gyroor "B" hoverboard differ significantly from each other. However, there are some surfaces and features of the design of the prior art '906 patent that are closer in shape and appearance to the claimed design of the '112 patent than the design of the Gyroor "B" hoverboard. For instance as can be seen in the front and rear views below, the concavely curved recessed center portion of the top surface of the claimed design of the '112 patent and the design of the prior art '906 patent both have a slightly raised convex contour, while the

40

corresponding center portion of the top surface of the design of the Gyroor "B" hoverboard is substantially flat and slightly recessed down below the opposing outer foot surfaces.



Front view '112 patent                     Rear view '112 patent

Front view prior art '906 patent           Front view Gyroor "B

65. Furthermore, it's noted that the wheel covers at each end of the claimed design of the '112 patent, the design of the prior art '906 patent and the design of the Gyroor "B" hoverboard differ from each other as shown in the top plan view and front and rear views above as well as the side view and perspective views below. However, it's my opinion that the shape and appearance of the wheel covers in the claimed design of the '112 patent are closer to the wheel covers shown in broken lines in the design of the prior art '906 patent than the wheel covers of the design of the Gyroor "B" hoverboard. Specifically, the wheel covers shown on the claimed design of the '112 patent and the design of the prior art '906 patent are both semi-circular in shape and extend over and cover the entire wheel, while the wheel covers on the design of Gyroor "B" hoverboard have opposing diagonally straight side edges a substantially flat top edge which curves outwardly but do not extend over the entire wheel, but rather partially over the wheel. In addition, the inner surface of the wheel covers on the design of Gyroor "B" hoverboard has a protruding trapezoidal shaped portion and the outwardly curved top surface includes the word "Gyroor".



Side view '112 patent   Side view prior art '906 patent   Side view Gyroor "B"

Perspective view '112 patent   Perspective view prior art '906 patent

Perspective view Gyroor"B"

66.     The front and rear surfaces of the claimed design of the '112 patent, the design of the prior art '906 patent and the design of the Gyroor "B" hoverboard are all dissimilar in appearance from one and other as depicted in the front and rear views and the perspective views above. Specifically, the front and rear surfaces of the claimed design of the '112 patent have an undulated upper portion with opposing arcuate elongated LED lights and a convexly curved lower portion that merges with the bottom surface. On the contrary, the front and rear surfaces of the design of the'906 patent has a vertically flat upper portion and a convexly curved lower portion

that merges with the bottom surface. Furthermore, while the design of the Gyroor "B" hoverboard has front and rear surfaces having a convexly curved lower portion that merges with the bottom surface as the claimed design of the '112 patent and the design of prior art '906 patent, the upper portion of the front and rear surfaces of the design of the Gyroor "B" hoverboard differs significantly from the claimed design of the '112 patent and the design of prior art '906 patent. Specifically, the upper portion of the front and rear surfaces of the Gyroor "B" hoverboard has a wide diagonally downwardly sloping portion that merges with a narrow vertically straight central portion. In addition, the front and rear surfaces of the Gyroor "B" hoverboard has elongated asymetrcally shaped LED lights.

67.     The shape and appearance of the bottom surface of the claimed design of the '112 patent and the design of prior art '906 patent are substantially identical as illustrated in the bottom views below except that the opposing outer portions of the claimed design of the '112 patent have a slight upward curvature while the design of the prior art '906 patent has opposing flat, plain outer portions. However, both the claimed design of the '112 patent and the design of the prior art '906 patent have a smooth continuous concavely curved central portion which is best shown in the front and rear views above. On the other hand, the bottom surface of the design of the Gyroor "B" hoverboard differs from both the claimed design of the '112 patent and the design of prior art '906 patent in that the opposing flat outer portions have a downwardly protruding surface having a pattern of vent holes and the recessed central portion is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having four narrow longitudinal ribs.

| Bottom view '112 patent | Bottom view prior art '906 patent |
|:---:|:---:|
|  |  |

Bottom view Gyroor"B"



68.     In view of the above analysis of the claimed design of the '112 patent with the design of the Gyroor "B" hoverboard and the design of the prior art '906 patent it's my opinion that the claimed design of the '112 patent has some surfaces and features that are closer in overall shape and appearance to the design in the prior art patent '906 patent than the design of the Gyroor "B" hoverboard. It's further my opinion that the shape and appearance of the surfaces and features of the design of the Gyroor "B" hoverboard are substantial different from the claimed design of the '112 patent that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Therefore, it's my opinion that the design of the Gyroor "B" hoverboard does not infringe the claimed design of the '112 patent.

### I. The '723 Patent, Prior Art '906 Patent and Gyroor "C"

Top plan view '723 patent                          Top plan view prior art '906 patent

 

Top plan view Gyroor "C"



69.     In view of the above visual depictions of the claimed design of the '723 patent, the design of the prior art '906 patent and the design of the Gyroor "C" hoverboard it's clear that they all have the same hour glass peripheral shape as viewed in top plan. In fact, the hour glass peripheral shape of the prior art '906 patent appears to be closer to the claimed design of the '723

44

patent than the design of the Gyroor "C" hoverboard. Furthermore, the claimed design of the '723 patent, the design of the prior art '906 patent and the design of the Gyroor "C" hoverboard are all comprised of the same general components, namely, opposing outer foot surfaces that are substantially flat, a concavely curved recessed center portion and wheel covers at each end. As will be apparent from the remaining views set forth below, namely, front, rear, side, perspective and bottom the specific shape and appearance of the surfaces and features of the design of the prior art '906 patent are, in my opinion, closer to the claimed design of the '723 patent than the design of the Gyroor "C" hoverboard. For instance as can be seen in the front and rear views below, the concavely curved recessed center portion of the top surface of the claimed design of the '723 patent and the design of the prior art '906 patent both have a slightly raised convex contour, while the corresponding center portion of the top surface of the design of the Gyroor "C" hoverboard is substantially flat and slightly recessed down below the opposing outer foot surfaces.

Front view '723 patent

Rear view '723 patent





Front and Rear view prior art '906 patent

Front and Rear view Gyroor "C"





70.    Furthermore, it's noted that the wheel covers at each end of the claimed design of the '723 patent, the design of the prior art '906 patent and the design of the Gyroor "C" hoverboard are all semi-circular in shape. However, the wheel covers of the '723 patent, the design of the prior art '906 patent extend over and cover the entire wheel, while the wheel covers on the design of Gyroor "C" hoverboard do not extend down over the wheel.

45

Side view '723 patent      Side view prior art '906 patent           Side view the Gyroor "C"





Perspective view '723 patent           Perspective view prior art '906 patent




Perspective view of Gyroor "C"



71.    The only common feature on the top surface of the claimed design of the '723 patent and the design of the Gyroor "C" hoverboard not shown on the design of prior art patent '906 patent is the foot pads on the opposing foot surfaces. However, it is clear from the enlarged isolated view below that the foot pads of the claimed design of the '723 patent and the design of the Gyroor "C" hoverboard differ significantly in their peripheral shape as well as the decorative pattern of on each.

46

Enlarged view of foot pads 723 patent      Enlarged view of foot pads Gyroor 'C

 

72.    The front and rear surfaces of the claimed design of the '723 patent and the design of prior art '906 patent are substantially similar in shape and appearance as depicted in the front and rear views and the perspective views above. Specifically, both designs have a vertically flat upper portion of the front and rear surfaces and a convexly curved lower portion that merges with the flat bottom surface. The only visual difference is the rounded parallelogram shaped LED lights at the opposing outer ends of the rear surface of the claimed design of the '723 patent and the lines on the front and rear surface of the claimed design of the '723 patent. On the contrary, while the design of the Gyroor "C" hoverboard has front and rear surfaces having a vertically flat upper portion and a convexly curved lower portion that merges with the bottom surface as the claimed design of the '723 patent and the design of prior art '906 patent, the central portion of the front and rear surfaces of the design of the Gyroor "C" hoverboard differs significantly from the claimed design of the '723 patent and the design of prior art '906 patent. Specifically, directly below the vertically flat upper portion of the front and rear surfaces are recessed horizontally elongated LED lights and below the LED lights is an outwardly protruding horizontal band that extends inwardly and merges with the recessed central portion.

73.    The shape and appearance of the bottom surface of the claimed design of the '723 patent and the design of prior art '906 patent are virtually identical as illustrated in the bottom views below. Specifically, both the claimed design of the '723 patent and the design of prior art '906 patent have opposing flat, plain outer portions and a smooth continuous concavely curved central portion which is best shown in the front and rear views above. However, the bottom surface of the design of the Gyroor "C" hoverboard differs from both the claimed design of the '723 patent and the design of prior art '906 patent in that the opposing flat outer portions have a pattern of vent

47

holes and just to the inside of the vent holes is a slight diagonally downwardly protruding arcuate edge. In addition, the recessed central portion of the design of the Gyroor "C" hoverboard is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having six narrow longitudinal ribs.

Bottom view '723 patent                    Bottom view prior art '906 patent

 

Bottom view of Gyroor "C"



74.     In view of the above analysis of the claimed design of the '723 patent with the design of the Gyroor "C: hoverboard and the design of the prior art '906 patent it is my opinion that the overall shape and appearance and identified features of the claimed design of the '723 patent are closer to the design of the prior art '906 patent than the design of the Gyroor "C: hoverboard. Furthermore, it's my opinion that the shape and appearance of the few features identified that are common to the claimed design of the '723 patent and the design of the Gyroor "C: hoverboard not found in the design of the prior art '906 are substantial different such that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Therefore, it's my opinion that the design of the Gyroor "C: hoverboard does not infringe the claimed design of the '723 patent.

48

**J. The '256 Patent, Prior Art '906 Patent and Gyroor "C"**

Top plan view '256 patent                                    Top plan view prior art '906 patent



Top plan view of Gyroor "C"



75.     In view of the above visual depictions of the claimed design of the ''256 patent, the design of the prior art '906 patent and the design of the Gyroor "C" hoverboard it's clear that they all have the same hour glass peripheral shape as viewed in top plan. In fact, the hour glass peripheral shape of the prior art '906 patent appears to be closer to the claimed design of the '256 patent than the design of the Gyroor "C" hoverboard. Furthermore, the claimed design of the '256 patent, the design of the prior art '906 patent and the design of the Gyroor "C" hoverboard are all comprised of the same general components, namely, opposing outer foot surfaces that are substantially flat, a concavely curved recessed center portion and wheel covers at each end. As will be apparent from the remaining views set forth below, namely, front, rear, side, perspective and bottom, the specific shape and appearance of the surfaces and features of the design of the prior art '906 patent are, in my opinion, closer to the claimed design of the '256 patent than the design of the Gyroor "C" hoverboard. For instance as can be seen in the front and rear views below, the concavely curved recessed center portion of the top surface of the claimed design of the '256 patent and the design of the prior art '906 patent both have a slightly raised convex contour, while the corresponding center portion of the top surface of the design of the Gyroor "C" hoverboard is substantially flat and slightly recessed down below the opposing outer foot surfaces.

49

Front view '256 patent      Rear view '256 patent




Front and Rear view prior art '906 patent      Front and Rear view Gyroor "C"



76.     Furthermore, it's noted that the wheel covers at each end of the claimed design of the '256 patent, the design of the prior art '906 patent and the design of the Gyroor "C" hoverboard are all semi-circular in shape. However, the wheel covers of the design of Gyroor "C" hoverboard are wider than those of the design of the '256 patent.

Side view '256 patent      Side view prior art '906 patent      Side view the Gyroor "C"





Perspective view '256 patent      Perspective view prior art '906 patent




Perspective view Gyroor "C"



77.     The only common feature on the top surface of the claimed design of the '256 patent and the design of the Gyroor "C" hoverboard not shown on the design of prior art patent '906 patent is the foot pads on the opposing foot surfaces. However, it is clear from the enlarged isolated view below that the foot pads of the claimed design of the '256 patent and the design of the Gyroor "C" hoverboard differ significantly in their peripheral shape as well as the decorative pattern of on each.

Enlarged view of foot pads 256 patent                Enlarged view of foot pads Gyroor 'C

                

78.     The front and rear surfaces of the claimed design of the '256 patent and the design of prior art '906 patent are substantially similar in shape and appearance as depicted in the front and rear views and the perspective views above. Specifically, both designs have a vertically flat upper portion of the front and rear surfaces and a convexly curved lower portion that merges with the flat bottom surface. The only visual difference is the rounded somewhat trapezoidal shaped LED lights at the opposing outer ends of the rear surface of the claimed design of the '256 patent and the horizontal line on the front and rear surface of the claimed design of the '256 patent. On the contrary, while the design of the Gyroor "C" hoverboard has front and rear surfaces having a vertically flat upper portion and a convexly curved lower portion that merges with the bottom

51

surface as the claimed design of the '723 patent and the design of prior art '906 patent, the central portion of the front and rear surfaces of the design of the Gyroor "C" hoverboard differs significantly from the claimed design of the '256 patent and the design of prior art '906 patent. Specifically, directly below the vertically flat upper portion of the front and rear surfaces are recessed horizontally elongated LED lights and below the LED lights is an outwardly protruding horizontal band that extends inwardly and merges with the recessed central portion. Also, on the right front vertically flat upper portion of the design of.

79.     The shape and appearance of the bottom surface of the claimed design of the '256 patent and the design of prior art '906 patent are virtually identical as illustrated in the bottom views below. Specifically, both the claimed design of the '256 patent and the design of prior art '906 patent have opposing flat, plain outer portions and a smooth continuous concavely curved central portion which is best shown in the front and rear views above. However, the bottom surface of the design of the Gyroor "C" hoverboard differs from both the claimed design of the '256 patent and the design of prior art '906 patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a slight diagonally downwardly protruding arcuate edge. In addition, the recessed central portion of the design of the Gyroor "C" hoverboard is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having six narrow longitudinal ribs.

Bottom view '256 patent                    Bottom view prior art '906 patent




Bottom view Gyroor "C"



80.     In view of the above analysis of the claimed design of the '256 patent with the design of the Gyroor "C" hoverboard and the design of the prior art '906 patent it is my opinion

52

that the overall shape and appearance and identified features of the claimed design of the '256 patent are closer to the design of the prior art '906 patent than the design of the Gyroor "C" hoverboard. Furthermore, it's my opinion that the shape and appearance of the few features identified that are common to the claimed design of the '256 patent and the design of the Gyroor "C" hoverboard not found in the design of the prior art '906 are substantial different such that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Therefore, it's my opinion that the design of the Gyroor "C" hoverboard does not infringe the claimed design of the '256 patent.

### K. The '195 Patent, Prior Art '906 Patent and Gyroor "C"

Top plan view '195 patent                    Top plan view prior art '906 patent




Top plan view Gyroor "C"



81.     In view of the above visual depictions of the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "C" hoverboard it's clear that they all have the same hour glass peripheral shape as viewed in top plan. In fact, the hour glass peripheral shape of the prior art '906 patent appears to be closer to the claimed design of the '195 patent than the design of the Gyroor "C" hoverboard. Furthermore, the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "C" hoverboard are all comprised of the same general components, namely, opposing outer foot surfaces that are substantially flat, a concavely curved recessed center portion and wheel covers at each end. As will be apparent from the remaining views set forth below, namely, front, rear, side, perspective and bottom the specific shape and appearance of most of the surfaces and features of the claimed

53

design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "C" hoverboard differ significantly from each other. However, there are some surfaces and features of the design of the prior art '906 patent that are closer in shape and appearance to the claimed design of the '195 patent than the design of the Gyroor "C" hoverboard. For instance as can be seen in the front and rear views below, while not in the same manner, the concavely curved recessed center portion of the top surface of the claimed design of the '195 patent and the design of the prior art '906 patent protrude upwardly from the opposing outer foot surfaces, while the corresponding center portion of the top surface of the design of the Gyroor "C" hoverboard is substantially flat and slightly recessed down below the opposing outer foot surfaces.

Front view '195 patent                                    Rear view '195 patent

                                    

Front and Rear view prior art '906 patent            Front and Rear view Gyroor "C"

                                    

82.     Furthermore, it's noted that the wheel covers at each end of the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "C" hoverboard are all semi-circular in shape. However, the wheel covers of the '195 patent, the design of the prior art '906 patent extend over and cover the entire wheel, while the wheel covers on the design of Gyroor "C" hoverboard do not extend down over the wheel.

54

Side view '195 patent     Side view prior art '906 patent     Side view the Gyroor "C"

  

Perspective view '195 patent       Perspective view prior art '906 patent

 

Perspective view Gyroor "C"



83. The front and rear surfaces of the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "C" hoverboard are all dissimilar in appearance from one and other as depicted in the front and rear views and the perspective views above. Specifically, the front and rear surfaces of the claimed design of the '195 patent have a concavely curved upper portion with a narrow vertically flat surface directly below it and a convexly curved lower portion that merges with the bottom surface. The convexly curved lower portion has what appear to be horizontally elongated LED lights having a knife-like appearance at the opposing outer ends. On the contrary, the front and rear surfaces of the design of the'906 patent

has a vertically flat upper portion and a convexly curved lower portion that merges with the flat bottom surface. Furthermore, the front and rear surfaces of the design of the Gyroor "C" hoverboard has a vertically flat upper portion with a central portion consisting of recessed horizontally elongated LED lights and an outwardly protruding horizontal band that extends inwardly directly below the LED lights and a convexly curved lower portion that merges with the bottom surface.

84. The shape and appearance of the bottom surface of the claimed design of the '195 patent and the design of prior art '906 patent are somewhat similar to each other as illustrated in the bottom views below. Specifically, both the claimed design of the '195 patent and the design of prior art '906 patent have opposing flat, plain outer portions and a smooth continuous concavely curved central portion which is best shown in the front and rear views above. However, the concavely curved central portion of the claimed design of the '195 patent is truncated and not a continuous rounded surface as in the design of the prior art '906 patent. Furthermore, the opposing flat outer portions of the claimed design of the '195 patent include parallel arcuate lines that extend down from the lower convexly curved portion of the front and rear surfaces. On the contrary, the bottom surface of the design of the Gyroor "C" hoverboard differs from both the claimed design of the '195 patent and the design of prior art '906 patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a slight diagonally downwardly protruding arcuate edge. In addition, the recessed central portion of the design of the Gyroor "C" hoverboard is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having six narrow longitudinal ribs.

Bottom view '195 patent                    Bottom view prior art '906 patent

     

Bottom view Gyroor "C"



85.    In view of the above analysis of the claimed design of the '195 patent with the design of the Gyroor "C" hoverboard and the design of the prior art '906 patent it's my opinion that the claimed design of the '195 patent has some surfaces and features that are closer in overall shape and appearance to the design in the prior art patent '906 patent than the design of the Gyroor "C" hoverboard. It's further my opinion that the shape and appearance of the surfaces and features of the design of the Gyroor "C" hoverboard are substantial different from the claimed design of the '195 patent that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Therefore, it's my opinion that the design of the Gyroor "C" hoverboard does not infringe the claimed design of the '195 patent.

### L.  The '112 Patent, Prior Art '906 Patent and Gyroor "C"

Top plan view '112 patent                    Top plan view prior art '906 patent

            

Top view Gyroor "C"



86.    In view of the above visual depictions of the claimed design of the '112 patent, the design of the prior art '906 patent and the design of the Gyroor "C" hoverboard it's clear that they all have the same hour glass peripheral shape as viewed in top plan. In fact, the hour glass

57

peripheral shape of the prior art '906 patent appears to be closer to the claimed design of the '112 patent than the design of the Gyroor "C" hoverboard. Furthermore, the claimed design of the '112 patent, the design of the prior art '906 patent and the design of the Gyroor "C" hoverboard are all comprised of the same general components, namely, opposing outer foot surfaces that are substantially flat, a concavely curved recessed center portion and wheel covers at each end. As will be apparent from the remaining views set forth below, namely, front, rear, side, perspective and bottom, the specific shape and appearance of some of the surfaces and features of the claimed design of the '112 patent, the design of the prior art '906 patent and the design of the Gyroor "C" hoverboard differ significantly from each other. However, there are some surfaces and features of the design of the prior art '906 patent that are closer in shape and appearance to the claimed design of the '112 patent than the design of the Gyroor "C" hoverboard. For instance as can be seen in the front and rear views below, the concavely curved recessed center portion of the top surface of the claimed design of the '112 patent and the design of the prior art '906 patent both have a slightly raised convex contour, while the corresponding center portion of the top surface of the design of the Gyroor "C" hoverboard is substantially flat and slightly recessed down below the opposing outer foot surfaces.

Front view '112 patent

Rear view '112 patent





Front and Rear view prior art '906 patent

Front and Rear view Gyroor "C"





87.     Furthermore, it's noted that the wheel covers at each end of the claimed design of the '112 patent, the design of the prior art '906 patent and the design of the Gyroor "C" hoverboard are all semi-circular in shape. However, the wheel covers of the design of Gyroor "C" hoverboard are wider than those of the design of the '112 patent.

58

Side view '112 patent     Side view prior art '906 patent     Side view Gyroor"C"





Perspective view '112 patent          Perspective view prior art '906 patent




Perspective view Gyroor "C"



88.     The front and rear surfaces of the claimed design of the '112 patent, the design of the prior art '906 patent and the design of the Gyroor "C" hoverboard are all dissimilar in appearance from one and other as depicted in the front and rear views and the perspective views above. Specifically, the front and rear surfaces of the claimed design of the '112 patent have an undulated upper portion with opposing arcuate elongated LED lights and a convexly curved lower portion that merges with the bottom surface. On the contrary, the front and rear surfaces of the design of the'906 patent has a vertically flat upper portion and a convexly curved lower portion that merges with the bottom surface. Furthermore, the front and rear surfaces of the design of the

59

Gyroor "C" hoverboard has a vertically flat upper portion with a central portion consisting of recessed horizontally elongated LED lights and an outwardly protruding horizontal band that extends inwardly directly below the LED lights and merges with the recessed central portion and a convexly curved lower portion that merges with the bottom surface.

89.    The shape and appearance of the bottom surface of the claimed design of the '112 patent and the design of prior art '906 patent are substantially identical as illustrated in the bottom views below except that the opposing outer portions of the claimed design of the '112 patent have a slight upward curvature while the design of the prior art '906 patent has opposing flat, plain outer portions. However, both the claimed design of the '112 patent and the design of the prior art '906 patent have a smooth continuous concavely curved central portion which is best shown in the front and rear views above. On the other hand, the bottom surface of the design of the Gyroor "C" hoverboard differs from both the claimed design of the '112 patent and the design of prior art '906 patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a slight diagonally downwardly protruding arcuate edge. In addition, the recessed central portion of the design of the Gyroor "C" hoverboard is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having six narrow longitudinal ribs.

Bottom view '112 patent                          Bottom view prior art '906 patent

    

Bottom view of Gyroor "C"



90.    In view of the above analysis of the claimed design of the '112 patent with the design of the Gyroor "C" hoverboard and the design of the prior art '906 patent it is my opinion that the overall shape and appearance and identified features of the claimed design of the '112 patent are closer to the design of the prior art '906 patent than the design of the Gyroor "C"

hoverboard. It's further my opinion that the shape and appearance of the surfaces and features of the design of the Gyroor "C" hoverboard are substantial different from the claimed design of the '195 patent that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Therefore, it's my opinion that the design of the Gyroor "C" hoverboard does not infringe the claimed design of the '112 patent.

### M. The '723 Patent, Prior Art '906 Patent and Gyroor "D"

Top plan view '723 patent



Top plan view prior art '906 patent




Top plan view Gyroor"D"



91.    In view of the above visual depictions of the claimed design of the '723 patent, the design of the prior art '906 patent and the design of the Gyroor "D" hoverboard it's clear that they all have the same hour glass peripheral shape as viewed in top plan. In fact, the hour glass peripheral shape of the prior art '906 patent appears to be closer to the claimed design of the '723 patent than the design of the Gyroor "D" hoverboard. Specifically, the recessed center portion of the claimed design of the '723 patent and the design of the prior art '906 patent are concavely curved, whereas the recessed center portion of the design of the Gyroor "D" hoverboard has a truncated "v" shape appearance comprising opposing diagonally straight edges that connect to a horizontally straight inner edge. In addition, the claimed design of the '723 patent, the design of the prior art '906 patent and the design of Gyroor "D" hoverboard are all comprised of the same general components, namely, opposing outer foot surfaces that are substantially flat, a recessed center portion and wheel covers at each end. As will be apparent from the remaining views set forth below, namely, front, rear, side, perspective and bottom the specific shape and appearance of the surfaces and features of the prior art '906 patent are, in my opinion, closer to

the claimed design of the '723 patent than the design of the Gyroor "D" hoverboard. For instance as can be seen in the front and rear views below, the concavely curved recessed center portion of the top surface of the claimed design of the '723 patent and the design of the prior art '906 patent both have a slightly raised convex contour, while the corresponding center portion of the top surface of the design of the Gyroor "D" hoverboard is slightly recessed down below the opposing outer foot surfaces and has a pattern of longitudinal ribs that extend down onto the front and rear surfaces.

Front view '723 patent

Rear view '723 patent




Front and Rear view prior art '906 patent

Front and Rear view Gyroor "D"




92.     Furthermore, it's noted that the wheel covers at each end of the claimed design of the '723 patent, the design of the prior art '906 patent and the design of the Gyroor "D" hoverboard differ from each other as shown in the top plan view and front and rear views above as well as the side view and perspective view below. However, it's my opinion that the shape and appearance of the wheel covers in the claimed design of the '723 patent are closer to the wheel covers shown in broken lines in the design of the prior art '906 patent than the wheel covers of the design of the Gyroor "D" hoverboard. Specifically, the wheel covers shown on the claimed design of the '723 patent and the design of the prior art '906 patent are both semi-circular in shape and extend over and cover the entire wheel, while the wheel covers on the design of Gyroor "D" hoverboard have opposing diagonally straight side edges a substantially flat top edge which curves outwardly but does not extend over the entire wheel.

Side view '723 patent    Side view prior art '906 patent    Side view the Gyroor "D"

  

Perspective view '723 patent    Perspective view prior art '906 patent

 

Perspective view Gyroor "D"



93.    The only common feature on the top surface of the claimed design of the '723 patent and the design of the Gyroor "D" hoverboard not shown on the design of prior art patent '906 patent is the foot pads on the opposing foot surfaces. However, it is clear from the enlarged isolated view below that the foot pads of the claimed design of the '723 patent and the design of the Gyroor

63

"D" hoverboard differ significantly in their peripheral shape as well as the decorative pattern of on each.

Enlarged view of foot pads '723 patent          \Enlarged view of foot pads Gyroor "D"

     

94.     The front and rear surfaces of the claimed design of the '723 patent and the design of prior art '906 patent are substantially similar in shape and appearance as depicted in the front and rear views and the perspective views above. Specifically, both designs have a vertically flat upper portion of the front and rear surfaces and a convexly curved lower portion that merges with the flat bottom surface. The only visual difference is the rounded parallelogram shaped LED lights at the opposing outer ends of the rear surface of the claimed design of the '723 patent and the lines on the front and rear surface of the claimed design of the '723 patent. On the contrary, while the design of the Gyroor "D" hoverboard has front and rear surfaces having a vertically flat upper portion and a convexly curved lower portion that merges with the bottom surface as the claimed design of the '723 patent and the design of prior art '906 patent, the central portion of the front and rear surfaces of the design of the Gyroor "D" hoverboard differs significantly from the claimed design of the '723 patent and the design of prior art '906 patent as illustrated in the enlarged partial view below.

Enlarged Partial View Gyroor "D"



In addition, the recessed center portion of the front and rear surfaces of the Gyroor "D" hoverboard has spaced vertical ribs, and the right front vertically flat upper portion includes the word "GYROOR".

95.     The shape and appearance of the bottom surface of the claimed design of the '723 patent and the design of prior art '906 patent are virtually identical as illustrated in the bottom views below. Specifically, both the claimed design of the '723 patent and the design of prior art '906 patent have opposing flat, plain outer portions and a smooth continuous concavely curved central portion which is best shown in the front and rear views above. However, the bottom surface of the design of the Gyroor "D" hoverboard differs from both the claimed design of the '723 patent and the design of prior art '906 patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a diagonally downwardly protruding edge. In addition, the recessed central portion of the design of the Gyroor "D" hoverboard has a pattern of longitudinal ribs that extend down from the front and rear surfaces.

Bottom view '723 patent                    Bottom view prior art '906 patent

    

Bottom view Gyroor "D"



96.     In view of the above analysis of the claimed design of the '723 patent with the design of the Gyroor "D" hoverboard and the design of the prior art '906 patent it is my opinion that the overall shape and appearance and identified features of the claimed design of the '723 patent are closer to the design of the prior art '906 patent than the design of the Gyroor "D" hoverboard. Furthermore, it's my opinion that the shape and appearance of the few features identified that are common to the claimed design of the '723 patent and the design of the Gyroor "D" hoverboard not found in the design of the prior art '906 are substantial different such that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Therefore, it's my opinion that the design of the Gyroor "D" hoverboard does not infringe the claimed design of the '723 patent.

### N. The '256 Patent, Prior Art '906 Patent and Gyroor "D"

Top plan view '256 patent

Top plan view prior art '906 patent

 

Top plan view Gyroor"D"



97.     In view of the above visual depictions of the claimed design of the ''256 patent, the design of the prior art '906 patent and the design of the Gyroor "D" hoverboard it's clear that they all have the same hour glass peripheral shape as viewed in top plan. In fact, the hour glass peripheral shape of the prior art '906 patent appears to be closer to the claimed design of the '256 patent than the design of the Gyroor "D" hoverboard. Specifically, the recessed center portion of the claimed design of the '256 patent and the design of the prior art '906 patent are concavely curved, whereas the recessed center portion of the design of the Gyroor "D" hoverboard has a truncated "v" shape appearance comprising opposing diagonally straight edges that connect to a horizontally straight inner edge. In addition, the claimed design of the '256 patent, the design of the prior art '906 patent and the design of the Gyroor "D" hoverboard are all comprised of the same general components, namely, opposing outer foot surfaces that are substantially flat, a recessed center portion and wheel covers at each end. As will be apparent from the remaining views set forth below, namely, front, rear, side, perspective and bottom, the specific shape and appearance of the surfaces and features of the design of the prior art '906 patent are, in my opinion, closer to the claimed design of the '256 patent than the design of the Gyroor "D" hoverboard. For instance as can be seen in the front and rear views below, the concavely curved recessed center portion of the top surface of the claimed design of the '256 patent and the design of the prior art '906 patent both have a slightly raised convex contour, while the corresponding center portion of

66

the top surface of the design of the Gyroor "D" hoverboard is slightly recessed down below the opposing outer foot surfaces and has a pattern of longitudinal ribs that extend down onto the front and rear surfaces.

Front view '256 patent

Rear view '256 patent





Front and Rear view prior art '906 patent

Front and Rear view Gyroor "D"




98.     Furthermore, it's noted that the wheel covers at each end of the claimed design of the '256 patent, the design of the prior art '906 patent and the design of the Gyroor "D" hoverboard differ from each other as shown in the top plan view and front and rear views above as well as the side view and perspective view below. However, it's my opinion that the shape and appearance of the wheel covers in the claimed design of the '256 patent are closer to the wheel covers shown in broken lines in the design of the prior art '906 patent than the wheel covers of the design of the Gyroor "D" hoverboard. Specifically, the wheel covers shown on the claimed design of the '256 patent and the design of the prior art '906 patent are both semi-circular in shape, while the wheel covers on the design of Gyroor "D" hoverboard have opposing diagonally straight side edges a substantially flat top edge which curves outwardly. It's also noted that the wheel covers on the claimed design of the '256 patent and the design of the Gyroor "D" hoverboard do not extend over the entire wheel.

Side view '256 patent      Side view prior art '906 patent      Side view the Gyroor "D"

  

Perspective view '256 patent          Perspective view prior art '906 patent

 

Perspective view Gyroor "D"



99. The only common feature on the top surface of the claimed design of the '256 patent and the design of the Gyroor "D" hoverboard not shown on the design of prior art patent '906 patent is the foot pads on the opposing foot surfaces. However, it is clear from the enlarged isolated view below that the foot pads of the claimed design of the '723 patent and the design of the Gyroor

68

"D" hoverboard differ significantly in their peripheral shape as well as the decorative pattern of on each.

Enlarged view of foot pads '256 patent       Enlarged view of foot pads Gyroor "D"

       

100.    The front and rear surfaces of the claimed design of the '256 patent and the design of prior art '906 patent are substantially similar in shape and appearance as depicted in the front and rear views and the perspective views above. Specifically, both designs have a vertically flat upper portion of the front and rear surfaces and a convexly curved lower portion that merges with the flat bottom surface. The only visual difference is the rounded somewhat trapezoidal shaped LED lights at the opposing outer ends of the rear surface of the claimed design of the '256 patent and the horizontal line on the front and rear surface of the claimed design of the '256 patent. On the contrary, while the design of the Gyroor "D" hoverboard has front and rear surfaces having a vertically flat upper portion and a convexly curved lower portion that merges with the bottom surface as the claimed design of the '256 patent and the design of prior art '906 patent, the central portion of the front and rear surfaces of the design of the Gyroor "D" hoverboard differs significantly from the claimed design of the '256 patent and the design of prior art '906 patent as illustrated in the enlarged partial view below.

Enlarged Partial View Gyroor "D"



In addition, the recessed center portion of the front and rear surfaces of the Gyroor "D" hoverboard has spaced vertical ribs, and the right front vertically flat upper portion includes the word "GYROOR".

69

101.    The shape and appearance of the bottom surface of the claimed design of the '256 patent and the design of prior art '906 patent are virtually identical as illustrated in the bottom views below. Specifically, both the claimed design of the '256 patent and the design of prior art '906 patent have opposing flat, plain outer portions and a smooth continuous concavely curved central portion which is best shown in the front and rear views above. However, the bottom surface of the design of the Gyroor "D" hoverboard differs from both the claimed design of the '256 patent and the design of prior art '906 patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a diagonally downwardly protruding edge. In addition, the recessed central portion of the design of the Gyroor "D" hoverboard has a pattern of longitudinal ribs that extend down from the front and rear surfaces.

Bottom view '256 patent                           Bottom view prior art '906 patent

  

Bottom view Gyroor "D"



102.    In view of the above analysis of the claimed design of the '256 patent with the design of the Gyroor "D" hoverboard and the design of the prior art '906 patent it is my opinion that the overall shape and appearance and identified features of the claimed design of the '256 patent are closer to the design of the prior art '906 patent than the design of the Gyroor "D" hoverboard. Furthermore, it's my opinion that the shape and appearance of the few features identified that are common to the claimed design of the '256 patent and the design of the Gyroor "D" hoverboard not found in the design of the prior art '906 are substantial different such that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Therefore, it's my opinion that the design of the Gyroor "D" hoverboard does not infringe the claimed design of the '256 patent.

### O.  The '195 Patent, Prior Art '906 Patent and Gyroor "D"

Top plan view '195 patent

Top plan view prior art '906 patent




Top plan view Gyroor "D"



In view of the above visual depictions of the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "D" hoverboard it's clear that they all have the same hour glass peripheral shape as viewed in top plan. In fact, the hour glass peripheral shape of the prior art '906 patent appears to be closer to the claimed design of the '195 patent than the design of Gyroor "D" hoverboard. Specifically, the recessed center portion of the claimed design of the '195 patent and the design of the prior art '906 patent are concavely curved, whereas the recessed center portion of the design of the Gyroor "D" hoverboard has a truncated "v" shape appearance comprising opposing diagonally straight edges that connect to a horizontally straight inner edge. In addition, the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "D" hoverboard are all comprised of the same general components, namely, opposing outer foot surfaces that are substantially flat, a recessed center portion and wheel covers at each end. As will be apparent from the remaining views set forth below, namely, front, rear, side, perspective and bottom the specific shape and appearance of most of the surfaces and features of the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "D" hoverboard differ significantly from each other. However, there are some surfaces and features of the design of the prior art '906 patent that are closer in shape and appearance to the claimed design of the '195 patent than the design of the Gyroor "D" hoverboard. For instance as can be seen in the front and rear views below, while not in the same manner, the

concavely curved recessed center portion of the top surface of the claimed design of the '195 patent and the design of the prior art '906 patent protrude upwardly from the opposing outer foot surfaces, while the corresponding center portion of the top surface of the design of the Gyroor "D" hoverboard is slightly recessed down below the opposing outer foot surfaces and has a pattern of longitudinal ribs that extend down onto the front and rear surfaces.

Front view '195 patent                                  Rear view '195 patent

            

Front and Rear view prior art '906 patent        Front and Rear view Gyroor "D"

            

103.    Furthermore, it's noted that the wheel covers at each end of the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "D" hoverboard differ from each other as shown in the top plan view and front and rear views above as well as the side view and perspective view below. However, it's my opinion that the shape and appearance of the wheel covers in the claimed design of the '195 patent are closer to the wheel covers shown in broken lines in the design of the prior art '906 patent than the wheel covers of the design of the Gyroor "D" hoverboard. Specifically, the wheel covers shown on the claimed design of the '195 patent and the design of the prior art '906 patent are both semi-circular in shape and extend over and cover the entire wheel, while the wheel covers on the design of Gyroor "D" hoverboard have opposing diagonally straight side edges a substantially flat top edge which curves outwardly but does not extend over the entire wheel.

72

Side view '195 patent     Side view prior art '906 patent     Side view the Gyroor "D"

  

Perspective view '195 patent     Perspective view prior art '906 patent

 

Perspective view Gyroor "D"



104.     The front and rear surfaces of the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "D" hoverboard are all dissimilar in appearance from one and other as depicted in the front and rear views and the perspective views above. Specifically, front and rear surfaces of the claimed design of the '195 patent have a concavely curved upper portion with a narrow vertically flat surface directly below it and a convexly curved lower portion that merges with the bottom surface. The convexly curved lower

73

portion has what appear to be horizontally elongated LED lights having a knife-like appearance at the opposing outer ends. On the contrary, the front and rear surfaces of the design of the '906 patent has a vertically flat upper portion and a convexly curved lower portion that merges with the flat bottom surface. Furthermore, the Gyroor "D" hoverboard has front and rear surfaces having a vertically flat upper portion and a convexly curved lower portion that merges with the bottom surface as the design of prior art '906 patent. However, the central portion of the front and rear surfaces of the design of the Gyroor "D" hoverboard differs significantly from the claimed design of the '195 patent and the design of prior art '906 patent as illustrated in the enlarged partial view below.

Enlarged Partial View Gyroor "D"



In addition, the recessed center portion of the front and rear surfaces of the Gyroor "D" hoverboard has spaced vertical ribs, and the right front vertically flat upper portion includes the word "GYROOR".

105.    The shape and appearance of the bottom surface of the claimed design of the '195 patent and the design of prior art '906 patent are somewhat similar to each other as illustrated in the bottom views below. Specifically, both the claimed design of the '195 patent and the design of prior art '906 patent have opposing flat, plain outer portions and a smooth continuous concavely curved central portion which is best shown in the front and rear views above. However, the concavely curved central portion of the claimed design of the '195 patent is truncated and not a continuous rounded surface as in the design of the prior art '906 patent. Furthermore, the opposing flat outer portions of the claimed design of the '195 patent include parallel arcuate lines that extend down from the lower convexly curved portion of the front and rear surfaces. On the contrary, the bottom surface of the design of the Gyroor "D" hoverboard differs from both the claimed design of the '195 patent and the design of prior art '906 patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a diagonally downwardly protruding edge. In addition, the recessed central portion of the design of the Gyroor "D" hoverboard has a pattern of longitudinal ribs that extend down from the front and rear surfaces.

Bottom view '195 patent          Bottom view prior art '906 patent



Bottom view Gyroor "D"



106.       In view of the above analysis of the claimed design of the '195 patent with the design of the Gyroor "D" hoverboard and the design of the prior art '906 patent it's my opinion that the claimed design of the '195 patent has some surfaces and features that are closer in overall shape and appearance to the design in the prior art patent '906 patent than the design of the Gyroor "D" hoverboard. It's further my opinion that the shape and appearance of the surfaces and features of the design of the Gyroor "D" hoverboard are substantial different from the claimed design of the '195 patent that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Therefore, it's my opinion that the design of the Gyroor "D" hoverboard does not infringe the claimed design of the '195 patent.

**P. The '112 Patent, Prior Art '906 Patent and Gyroor "D"**

Top plan view '112 patent          Top plan view prior art '906 patent



75

Top view Gyroor "D"



107.    In view of the above visual depictions of the claimed design of the '112 patent, the design of the prior art '906 patent and the design of the Gyroor "D" hoverboard it's clear that they all have the same hour glass peripheral shape as viewed in top plan. In fact, the hour glass peripheral shape of the prior art '906 patent appears to be closer to the claimed design of the '112 patent than the design of Gyroor "D" hoverboard. Specifically, the recessed center portion of the claimed design of the '112 patent and the design of the prior art '906 patent are concavely curved, whereas the recessed center portion of the design of the Gyroor "D" hoverboard has a truncated "v" shape appearance comprising opposing diagonally straight edges that connect to a horizontally straight inner edge. In addition, the claimed design of the '112 patent, the design of the prior art '906 patent and the design of the Gyroor "D" hoverboard are all comprised of the same general components, namely, opposing outer foot surfaces that are substantially flat, a recessed center portion and wheel covers at each end. As will be apparent from the remaining views set forth below, namely, front, rear, side, perspective and bottom the specific shape and appearance of most of the surfaces and features of the claimed design of the '112 patent, the design of the prior art '906 patent and the design of the Gyroor "D" hoverboard differ significantly from each other. However, there are some surfaces and features of the design of the prior art '906 patent that are closer in shape and appearance to the claimed design of the '112 patent than the design of the Gyroor "D" hoverboard. For instance as can be seen in the front and rear views below, the concavely curved recessed center portion of the top surface of the claimed design of the '112 patent and the design of the prior art '906 patent both have a slightly raised convex contour, while the corresponding center portion of the top surface of the design of the Gyroor "D" hoverboard is slightly recessed down below the opposing outer foot surfaces and has a pattern of longitudinal ribs that extend down onto the front and rear surfaces.

Front view '112 patent

Rear view '112 patent





Front and Rear view prior art '906 patent

Front and Rear view Gyroor "D"





108.    Furthermore, it's noted that the wheel covers at each end of the claimed design of the '112 patent, the design of the prior art '906 patent and the design of the Gyroor "D" hoverboard differ from each other as shown in the top plan view and front and rear views above as well as the side view and perspective views below. However, it's my opinion that the shape and appearance of the wheel covers in the claimed design of the '112 patent are closer to the wheel covers shown in broken lines in the design of the prior art '906 patent than the wheel covers of the design of the Gyroor "D" hoverboard. Specifically, the wheel covers shown on the claimed design of the '112 patent and the design of the prior art '906 patent are both semi-circular in shape and extend over and cover the entire wheel, while the wheel covers on the design of Gyroor "D" hoverboard have opposing diagonally straight side edges a substantially flat top edge which curves outwardly but does not extend over the entire wheel.

Side view '112 patent           Side view prior art '906 patent              Side view Gyroor "D"





77

Perspective view '112 patent          Perspective view prior art '906 patent

          

Perspective view Gyroor "D"



109.    The front and rear surfaces of the claimed design of the '112 patent, the design of the prior art '906 patent and the design of the Gyroor "D" hoverboard are all dissimilar in appearance from one and other as depicted in the front and rear views and the perspective views above. Specifically, the front and rear surfaces of the claimed design of the '112 patent have an undulated upper portion with opposing arcuate elongated LED lights and a convexly curved lower portion that merges with the bottom surface. On the contrary, the front and rear surfaces of the design of the'906 patent has a vertically flat upper portion and a convexly curved lower portion that merges with the bottom surface. Furthermore, the Gyroor "D" hoverboard has front and rear surfaces having a vertically flat upper portion and a convexly curved lower portion that merges with the bottom surface as the design of prior art '906 patent. However, the central portion of the front and rear surfaces of the design of the Gyroor "D" hoverboard differs significantly from the claimed design of the '195 patent and the design of prior art '906 patent as illustrated in the enlarged partial view below.

Enlarged Partial View Gyroor "D"



In addition, the recessed center portion of the front and rear surfaces of the Gyroor "D" hoverboard has spaced vertical ribs, and the right front vertically flat upper portion includes the word "GYROOR".

110. The shape and appearance of the bottom surface of the claimed design of the '112 patent and the design of prior art '906 patent are substantially identical as illustrated in the bottom views below except that the opposing outer portions of the claimed design of the '112 patent have a slight upward curvature while the design of the prior art '906 patent has opposing flat, plain outer portions. However, both the claimed design of the '112 patent and the design of the prior art '906 patent have a smooth continuous concavely curved central portion which is best shown in the front and rear views above. On the other hand, the bottom surface of the design of the Gyroor "D" hoverboard differs from both the claimed design of the '195 patent and the design of prior art '906 patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a diagonally downwardly protruding edge. In addition, the recessed central portion of the design of the Gyroor "D" hoverboard has a pattern of longitudinal ribs that extend down from the front and rear surfaces.

Bottom view '112 patent                    Bottom view prior art '906 patent

          

Bottom view Gyroor "D"



111. In view of the above analysis of the claimed design of the '112 patent with the design of the Gyroor "D" hoverboard and the design of the prior art '906 patent it's my opinion

that the claimed design of the '112 patent has some surfaces and features that are closer in overall shape and appearance to the design in the prior art patent '906 patent than the design of the Gyroor "D" hoverboard. It's further my opinion that the shape and appearance of the surfaces and features of the design of the Gyroor "D" hoverboard are substantial different from the claimed design of the '112 patent that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Therefore, it's my opinion that the design of the Gyroor "D" hoverboard does not infringe the claimed design of the '112 patent.

## VI.    CONCLUSION

112.    For the reasons stated herein it is my opinion that an ordinary observer, conversant with the prior art, would consider the design of the Gyroor "A", "B", "C" and "D" hoverboards *dissimilar* in overall appearance to the claimed design of the '723, '256, '195 and '112 patents such that an ordinary observer would *not* be deceived into purchasing one, supposing it to be the other. Hence, it's my opinion that the design of Gyroor "A", "B", "C" and "D" hoverboards do not infringe the claimed design of the '723, '256, '195 and '112 patents for the reasons stated above.

Dated:  3 September 2021

Jim Gandy

# Exhibit 1

# JIM GANDY

<u>Address: 5961 Spikerush Trail,</u> Southport, NC 28461         Telephone No.: (910) 599-1329

## QUALIFICATIONS

- Broad legal and technical background in examining design patent applications with more than 32 years experience at the United States Patent and Trademark Office, (USPTO).
- Expert knowledge of design patent examination practice and procedure and the application of statutes, rules and relevant case law for determining patentability of a claim in design patent applications.
- Extensive speaking experience on behalf of the USPTO regarding the filing and examination of design patent applications to various audiences such as the American Intellectual Property Law Association, Independent Inventors Conference and the Visiting Scholars program.
- I am currently a registered patent agent with the USPTO specializing in the field of design patents.

## EDUCATION

Bachelor of Science in Architectural Design Technology, 1972 Temple University, Philadelphia, PA.

## PROFESSIONAL EXPERIENCE

### USPTO

***Design Patent Practice Specialist, Technology Center 2900,***          USPTO, 1998-2005

- As the design patent practice specialist, I was in charge of all training for new and junior examiners as well as continuing education training for all examiners in Technology Center 2900. I was also in charge of making updates to Chapter 1500 Design Patents of the Manual of Patent Examining Procedure as well as the Design Examiner Supplemental Training Guide.

- I also responded to inquiries about design patent practice and procedure and filing design patent applications from external customers on a daily basis. In my capacity as the practice specialist, I reviewed all cases coming back from the Courts, the Board of Patent Appeals and Interferences and the Office of Patent Quality Review for learning points and corrective action if necessary.

- I monitored all reissue and reexamination applications filed in the technology center and reviewed Office actions prepared by examiners for technical accuracy under the Office's in–process review program. In addition, I would make presentations to attorneys and inventor groups on behalf of the USPTO to share information and learn from each other.

***Supervisory Patent Examiner, Art Unit 2913,***          USPTO, 1996-1998

- In my capacity as supervisor, I was in charge of distributing and monitoring the flow of work for examiners in the art unit as well as reviewing the overall quality and timeliness of the work product performed by examiners.

- It was also my responsibility to train junior examiners on practice and procedure for examining design patent applications, including the proper application of the statutes and rules. In addition, I

would provide refresher training to primary examiners when necessary to assure consistency of the work product.

- As supervisor I was responsible for evaluating and rating all examiners in the art unit at the end of the fiscal year based on the criteria for the elements under their performance appraisal plan. I was also in charge of the program for uniformity of examination practice for the entire Design Patent Technology Center. In that capacity I was responsible for the development of the Design Examiner Supplemental Training Guide.

***Design Patent Examiner, Art Unit 2911,***                                          USPTO, 1972-1996

- As an examiner I worked primarily in class D12, "Transportation". In 1979 I was promoted to primary examiner and granted full signatory authority. I have experience in initiating interference proceedings, preparing examiner's answers for applications on appeal to the Board of Patent Appeals and Interferences and have examined both reexamination and reissue applications.

- As a primary examiner I trained new examiners and occasionally assumed supervisory patent examiner duties in the absence of the art unit supervisor. In my 24 years as an examiner, I made patentability determinations in over 10,000 design patent applications examined.

## **Design Patent Consultant**

Since retiring from the USPTO I have on occasion counseled patent attorneys and agents in their filings of design patent applications at the United States Patent and Trademark Office. I have also prepared expert reports and testified in a deposition and at trial as an expert witness in the following matters:

- *Complaint of Ford Global Technologies, LLC under Section 337 of The Tariff Act of 1930,*

  o Prepared expert report on sufficiency of disclosure of claim under 35 USC § 112, Re U.S. Design Patent Nos. D498,444, D500,717, D500,969, D500,970, D501,162, D508,223, D510,551 and D539,448 (2008).

- *Magnadyne Corp. vs. Best Buy Co., Inc.*

  o Prepared expert report on infringement of U.S. Design Patent No. D522,457 and lack of anticipation or obviousness under 35 USC § 102 and 103(a) respectively, (2010).
  o Gave deposition on expert report, (2010).

- *Weber-Stephen Products LLC v. Sears Holdings Corporation*

  o Prepared expert report on invalidity of U.S. Design Patent Nos. D564,834 and D609,045 as being obvious under 35 USC § 103(a) – (D564,834), and nonenabling and indefinite under 35 USC § 112(a) and (b) and failing to comply with the written description requirement of 35 USC § 112(a) – D564,834 and D609,045, (2015).
  o Prepared expert report on non-infringement of U.S. Design Patent Nos. D564,834 and D609,045, (2015).
  o Gave deposition on expert reports, (2015).

- *Trinity Manufacturing, L.L.C.; Campbell Soup Company; and Campbell Sales Company v. Gamon Plus, Inc.*

  o Prepared Declaration in support of a Petition for Inter Partes Review of U.S. Design Patent Nos. D595,074, D621,644, D621,645 and D621,646, (2016).
  o Prepared Supplemental Declaration in support of Petitioner's Reply to Patent Owner's Merits Response and Declaration and Supplemental Declaration of Terry Johnson for the

Inter Partes review of U.S. Design Patent Nos. D621,645 and D612,646, IPR2017-00091 and IPR2017-00094 respectively, (2017).
- o Gave deposition on Supplemental Declaration, (2017).

- *Nite Glow Industries, Inc., I Did It, Inc., and Marni Markell Hurwitz v. Central Garden & Pet Company and Four Paws Pet Company, d/b/a Four Paws Products, LTD.*
  - o Prepared expert report on design patent practice regarding the filing of a request for expedited examination under 37 CFR 1.155 and its availability to design patent applications on certain flea and tick dispensers and cartridges identified in the report, (2016).
  - o Gave deposition on expert report, (2017).
  - o Testified on expert report at trial, (2018).

- *LKQ Corporation and Keystone Automotive Industries, Inc. v. GM Global Technology Operations LLC.*
  - o Prepared Declaration in support of a Petition for Inter Partes and Post Grant Review of U.S. Design Patent Nos. D823,741, D797,625, D813,759, D855,508 and D864,065, (2019 – 2020).

## AWARDS

- Received outstanding rating at the end of fiscal year under performance appraisal plan both as an examiner, supervisor patent examiner and design patent practice specialist for 32 consecutive years.

- Received Department of Commerce Bronze Medal Award in March of 1983 for outstanding competence in the performance of official duties in the design patent field over a long period of time.

- Received Distinguished Career Award from the Patent and Trademark Office in December 2000, for sustained superior performance in the examination of design patent applications and in the leadership of art units.

- Received Norman P. Morgenstern Award in June of 2004 for recognition of the Supervisory Patent Examiner whose work exemplifies bold leadership and innovative activities that make a significant contribution to the U.S. Patent and Trademark Office.