**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ABC Corporation I et al,<br><br>     *Plaintiff*,<br><br> v.<br><br>THE PARTNERSHIPS and<br>UNINCORPORATED ASSOCIATIONS<br>IDENTIFIED ON SCHEDULE "A",<br><br>     *Defendant*. | **CASE NO.** 1:20-cv-04806<br><br>**Judge:** Honorable Thomas M. Durkin |

**DEFENDANT GYROOR' OPPOSITION TO**
**PLAINTIFFS' MOTION FOR ENTRY OF A PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

DEFENDANT GYROOR' OPPOSITION TO ..................................................................... I

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 4

PROCEDURAL BACKGROUND ....................................................................................... 4

LEGAL STANDARDS ........................................................................................................ 5

ARGUMENTS ..................................................................................................................... 6

I.   A PRELIMINARY INJUNCTION AGAINST DEFENDANT CHETAIDOU BASED ON THE ALLEGED
     INFRINGEMENT BY ACCUSED PRODUCT B MUST BE DENIED ................................. 6

     A.   A Preliminary Injunction is unwarranted because Plaintiffs failed to prove
          irreparable harm ................................................................................................ 6

     B.   Plaintiffs failed to prove that the alleged harm was not compensable in money
          damages ............................................................................................................ 7

     C.   A Preliminary Injunction is unwarranted because Plaintiffs failed to show a
          likelihood of success on the merit .................................................................... 8

          1.   An "Ordinary Observer" in this case is a purchaser who is familiar with
               hoverboards and the prior art designs. Plaintiffs' definition of an "ordinary
               observer" must be rejected ......................................................................... 8

          2.   In light of the prior art D'906 Patent, an ordinary observer will not find the Accused
               Product B and the Patents-in-Suit have substantially similar overall "hourglass"
               shape .......................................................................................................... 9

               a.   The D'906 Patent constitutes Prior Art to all Patents-in-Suit ............................. 10

               b.   Plaintiffs failed to compare Accused Product, Patents-in-Suit and the prior art
                    D'906 patent ................................................................................................ 10

          3.   An ordinary observer, familiar with the prior art, will not be deceived into thinking
               that the Accused Product B is the same as the Patents-in-Suit ........................... 13

               a.   Plaintiffs failed to compare the ornamental features and failed to analyze how
                    they impact the overall design ........................................................................ 13

               b.   None of the Patent-in-Suit claimed any ornamental features of the Accused
                    Product B .................................................................................................... 13

          4.   Under the Gestalt Principles, the ornamental features of the Accused Product B
               listed above would be perceived as more dramatic and obvious, which would
               significantly impact the overall visual impression of the ordinary observer ............ 16

II.  A PRELIMINARY INJUNCTION BASED ON MR. HATCH'S ALLEGATION OF INFRINGEMENT
     BY ACCUSED PRODUCT A, ACCUSED PRODUCT C AND "ACCUSED PRODUCT D MUST ALSO
     BE DENIED .............................................................................................................. 17

i

    **A.**  **A Preliminary Injunction is unwarranted because Plaintiffs failed to prove irreparable harm** ................................................................................................**17**

    **B.**  **A Preliminary Injunction is unwarranted because Plaintiffs failed to show a likelihood of success on the merit** ...........................................................................**18**

       **1.**  An "Ordinary Observer" in this case is a purchaser who is familiar with hoverboards and the prior art designs. Plaintiffs' definition of an "ordinary observer" must be rejected ...........................................................................18

       **2.**  In light of the prior art D'906 Patent, an ordinary observer will not find the Accused Product B and the Patents-in-Suit have substantially similar overall "hourglass" shape ....................................................................................................19

          *a.*  *The D'906 Patent constitutes Prior Art to all Patents-in-Suit* ..............*19*

          *b.*  *Plaintiffs failed to compare Accused Product, Patents-in-Suit and the prior art D'906 patent* .......................................................................*19*

       **3.**  An ordinary observer, familiar with the prior art, will not be deceived into thinking that the Accused Product B is the same as the Patents-in-Suit.................................19

          *a.*  *Plaintiffs failed to compare the ornamental features and failed to analyze how they impact the overall design* .................................................*19*

          *b.*  *None of the Patent-in-Suit claimed any ornamental features of the Accused Product A* ........................................................................*20*

          *c.*  *None of the Patent-in-Suit claimed any ornamental features of the Accused Product C* ........................................................................*23*

          *d.*  *None of the Patent-in-Suit claimed any ornamental features of the Accused Product D* ........................................................................*26*

       **4.**  Under the Gestalt Principles, the ornamental features of the Accused Product B listed above would be perceived as more dramatic and obvious, which would significantly impact the overall visual impression of the ordinary observer...........29

    **C.**  **Plaintiffs should not be allowed to amend their pleading by adding new allegations freely** ......................................................................................**29**

**III.**  THE BALANCE OF HARDSHIP AND PUBLIC INTEREST CONSIDERATION BOTH FAVOR DENYING THE ISSUANCE OF A PRELIMINARY INJUNCTION ..................................................**30**

**CONCLUSION** ...........................................................................................**31**

## TABLE OF AUTHORITY

| Cases | Page(s) |
|---|---|
| *Amazon.com, Inc. v. Barnesandnoble.com, Inc.,*<br>239 F.3d 1343 (Fed. Cir. 2001)) | 5 |
| *Amini Innovation Corp. v. Anthony Cal., Inc.,*<br>439 F.3d 1365 (Fed. Cir. 2006) | 12 |
| *Amoco Production Co. v. Gambell,*<br>480 U.S. 531 (1987) | 5 |
| *Apple, Inc. v. Samsung Elecs. Co.,*<br>678 F.3d 1314 (Fed. Cir. 2012) | 5 |
| *Automated Merch. Sys., Inc. v. Crane Co.,* 3<br>57 F. App'x 297 (Fed. Cir. 2009) | 7 |
| *Caldwell Mfg. Co. N. Am., LLC v. Amesbury Gp., Inc.,*<br>2011 WL 3555833 (W.D.N.Y. Aug. 11, 2011) | 8 |
| *Citibank, N.A. v. Citytrust,*<br>756 F.2d 273 (2d Cir.1985) | 6 |
| *Egyptian Goddess, Inc. v. Swisa, Inc.,*<br>543 F.3d 665 (Fed. Cir. 2008) | 9 |
| *Everett Lab., Inc. v. Acella Pharmaceuticals*, LLC,<br>2017 WL 5179006 (D.N.J. Sep. 13, 2013) | 7, 8 |
| *Gorham Co. v. White,*<br>81 U.S. 511 (1872) | 8, 9 |
| *Hecht Co. v. Bowles*,<br>321 U.S. 321 (1944) | 30 |
| *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.,*<br>49 F.3d 1551 (Fed. Cir. 1995) | 5, 6 |
| *Hybritech, Inc. v. Abbott Labs.,*<br>849 F.2d 1446 (Fed. Cir. 1988) | 30 |
| *Intel Corp. v. ULSI Sys. Technology, Inc.,*<br>995 F.2d 1566 (Fed.Cir.1993) | 5 |
| *Lanard Toys, Ltd. v. Dolgencorp LLC*,<br>958 F.3d 1337 (Fed. Cir 2020) | 9 |

*Metalcraft of Mayville, Inc. v. The Toro Co.*,
    848 F.3d 1358 (Fed. Cir. 2017)         5

*Munaf v. Geren*,
    553 U.S. 674 (2008)         5

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997)         30

*National Steel Car, Ltd. v. Canadian Pacific Ry., Ltd.*,
    357 F.3d 1319 (Fed. Cir. 2004)         30

*Nutrition 21 v. U.S.*,
    930 F.2d 867 (Fed. Cir. 1991)         6

*PHG Techs., LLC v. St. John Cos.*,
    469 F.3d 1361 (Fed. Cir. 2006)         5

*Sciele Pharma, Inc. v. Lupin Ltd.*,
    684 F.3d 1253 (Fed. Cir. 2012)         5

*Smith v. Whitman Saddle Co.*,
    148 U.S. 674 (1893)         9

*Tough Traveler, Ltd. v. Outbound Prod.*
    60 F.3d 964 (2d Cir. 1995)         6

*Ty, Inc. v. Jones Grp., Inc.*,
    237 F.3d 891 (7th Cir. 2001)         6

*Wallace v. Ideavillage Prods. Corp.*,
    640 Fed. Appx. 970 (Fed. Cir, 2016)         9

*Weinberger v. Romero–Barcelo*,
    456 U.S. 305 (1982)         5

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)         5, 30

**Statues**

35 U.S.C. § 283,         5

Fed. R. Civ. P. 15         29

Defendant Gyroor, also known as Shenzhen Chetaidout Keji Youxian Gongsi ("Chetaidou" or "Defendant") [Dkt. No. 227-1, p.45/92], respectfully submits this Opposition to Plaintiffs' motion for entry of a preliminary injunction. [Dkt. No. 384]. Chetaidou owns and operates Gyroor.com and Gyroorboard.com.

## Introduction

The hoverboard market is a rapidly growing industry. Both Plaintiffs Hangzhou Chic Intelligent Technology Co. Ltd. ("Chic") and Unicorn Global, Inc ("Unicorn," together "Plaintiffs") and Defendant are in the business of selling hoverboards.

Plaintiffs are notoriously known for bringing baseless infringement claims against competitors to gain market monopoly. "Plaintiffs have taken an 'any means necessary' approach to ensure their competitors are off the market." [1] This is Plaintiffs' another attempt to enforce meritless patent infringement claims against their competitors.

Chetaidou, the owner of the Gyroor Brand, takes intellectual property protection very seriously. It has dedicated significant resources to developing its products, branding, proprietary designs, and inventions. As will be demonstrated, every accused product involved here is based on a valid U.S. patent.

***Initially***, Plaintiffs allege that ASIN - B07S4KXRQR sold by Defendant Gyroor has infringed Plaintiffs' design patents [Dkt. No. 227; 227-1, ¶15; 227-3]. The accused product is also identified by Plaintiffs as "Gyroor B." ("Accused Product B") [Dkt. No. 385, pp. 19-20, Dkt. No. 385, pp. 19-20]. Defendant Chetaidou ceased selling the Accused Product B immediately after it was added as a defendant pursuant to the Court Order on May 24, 2021. [Dkt. No. 253].

| | | |
|---|---|---|
| **Accused Product B (Multiple colors)**<br><br>ASIN - B07S4KXRQR [Dkt. No. 227; 227-3; 227-1, p.47/92] |  |  |

---

[1] Introduction Statement by another hoverboard seller - GoLabs, Inc. *Case No.* 3:19-cv-00754 (TXND*), Dkt. No. 39*, attached hereto as Exhibit 1, p. 1.

1

_**Now**_, Plaintiffs want to add new allegations against Defendant, without amending their Complaint, and claim that three other products – identified as "Gyroor A," "Gyroor C" and "Gyroor D" by Plaintiffs' expert witness Mr. Hatch, also infringed Plaintiffs' design patents. [Dkt. No. 385, pp. 19-20, Dkt. No. 385, pp. 19-20] ("Accused Product A" "Accused Product C" and "Accused Product D").

Some of the new allegations were raised against other defendants. The other new allegations were never raised in Plaintiffs' pleadings before. For example, this is first time that Plaintiffs raised the allegations against the Accuse Product C, which has been on the market since April 10, 2018.



| | |
|---|---|
| **New Allegation – Accused Product A**<br>[Decl. of Hatch, Dkt. No. 388, 19-20] | |
| **New Allegation – Accused Product C**<br>[Decl. of Hatch, Dkt. No. 388, 19-20] | |
| **New Allegation – Accused Product D**<br>[Decl. of Hatch, Dkt. No. 388, 19-20] | |

***Furthermore***, Chetaidou offers a verity of products on its websites, from electronic scooters to electronic bikes, which are obviously unrelated to the alleged infringement. Any injunctions against Defendant's websites would be unjust and against the purpose of a preliminary injunction.



| Electronic Scooters gyroorboard.com/collections/scooter | Electronic Bikes gyroor.com [Dkt. No. 383-10, p.4/88] | Electronic Bikes gyroor.com [Dkt. No. 383-10, p.4/88] |
| --- | --- | --- |

**I.** A Preliminary Injunction against Gyroor based on the alleged infringement by Accused Product B must be denied because **A)** The Accused Product B has been on the market since November 9, 2017. Plaintiffs' delay in seeking a remedy until now undercuts the sense of urgency and mitigates against the issuance of a preliminary injunction; **B)** Plaintiffs also failed to show a likelihood of success on the merit.

**II.** A Preliminary Injunction based on Plaintiffs' expert witness Mr. Hatch's allegation of infringement by "Accused Product A," "Accused Product C" and "Accused Product D" must also be denied because: **A)** Accused Product A and Accused Product C have been on the market since May 14, 2019 and April 10, 2018 respectively. Plaintiffs' delay in seeking a remedy until now undercuts the sense of urgency and mitigates against the issuance of a preliminary injunction; **B)** Plaintiffs also failed to show a likelihood of success on the merit for Accused Product A, Accused Product C and Accused Product D; **C)** Plaintiffs should not be allowed to amend their pleadings by adding new allegations freely.

**III.** The balance of hardship and public interest consideration both favor denying the issuance of a preliminary injunction because Plaintiffs failed to make a showing of winning on the merit.

## Factual Background

Evidence provided by Plaintiffs identifies the alleged infringing products ("Accused Product B") as "*Gyroor G2 Hoverboard 8.5" Off Road All Terrain Off Road Hoverboard with Bluetooth Speakers and LED Lights, UL2272 Certified Self Balancing Scooter*" [Dkt. No. 227-1, p. 47 of 92]. The Accused Product B has a unique ASIN number B07S4KXRQR. [Dkt. No. 227-1, p. 49 of 92; 227-3, p. 4 of 4]. The Accused Product B is also identified as "Gryoor B" by Plaintiffs. [Dkt. No. 385, p. 20; Dkt. No. 388, p. 19].

Plaintiffs allege that four of Plaintiffs' U.S. Design Patents – D737,723 ("D'723 patent"), D738, 256 ("D'256 patent"), D785,112 ("D'112 patent"), D784,195 ("D'195 patent") ("Patents-in-Suit") [Dkt. No. 101, ¶14; Dkt No. 101-13] have been infringed by the Accused Product B. However, Plaintiffs made no allegations against Defendant or the Accused Product B in the Third Amended Complaint. [Dkt. No. 101]. Plaintiffs made no specific allegations aside from stating that "Gyroor store is related to or affiliated with Gyroor-US" [Dkt. No. 227-1, ¶15], which is unsupported by any evidence.

The "Product B" has been on the market since November 9, 2017. "Date First Available," comments and pictures from verified purchasers are attached hereto as Exhibit 2.

Plaintiffs' expert witness Mr. Hatch also alleged that "Gyroor A," "Gyroor C," and "Gyroor D" ("Accused Product A, Accused Product C, and Accused Product D") infringed Plaintiffs' Patents-in-Suit. [Dkt. No. 385, pp. 19-21, 388, pp. 19-20].

## Procedural Background

On November 20, 2020, Plaintiffs filed a motion for preliminary injunction. [Dkt. No. 105].

On November 24, 2020, a preliminary injunction hearing was held. [Dkt. No. 112].

On November 24, 2020, a preliminary injunction order was entered. [Dkt. No. 113].

On December 24, 2020, a modified preliminary injunction order was entered. [Dkt. No. 147].

On February 12, 2021, Defendants' financial account and assets were restrained.

On May 24, 2021, Defendant Chetaidou was added as a defendant. [Dkt No. 253].

Service of process was not effectuated on Defendant until June 25, 2021. [Dkt. No. 310].

**Legal Standards**

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008); *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 311–312 (1982); *see Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1323 (Fed. Cir. 2012); *PHG Techs., LLC v. St. John Cos.*, 469 F.3d 1361, 1365 (Fed. Cir. 2006).

"[The] case law and logic both require that a movant cannot be granted a preliminary injunction unless it establishes both of the first two factors, *i.e.,* likelihood of success on the merits and irreparable harm." *PHG Techs.*, 469 F.3d at 136

"The court has noted that a preliminary injunction is 'not to be routinely granted.'" *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1554 (Fed. Cir. 1995) (quoting *Intel Corp. v. ULSI Sys. Technology, Inc*., 995 F.2d 1566, 1568 (Fed.Cir.1993)). "To establish a likelihood of success on the merits, a patentee must show that it will likely prove infringement of the asserted claims and that its infringement claim will likely withstand the alleged infringer's challenges to patent validity and enforceability. *Metalcraft of Mayville, Inc. v. The Toro Co.*, 848 F.3d 1358, 1364 (Fed. Cir. 2017) (citing *Sciele Pharma, Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1259 (Fed. Cir. 2012)).

"A preliminary injunction should not issue if the accused infringer '***raises a substantial question concerning either infringement or validity***.'" *Id*. (quoting *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001).

Furthermore, in each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (quoting *Amoco Production Co.*, 480 U.S., at 542).

## Arguments

### I. A Preliminary Injunction against Defendant Chetaidou based on the alleged infringement by Accused Product B must be denied

A Preliminary Injunction is unwarranted in the present case because **A)** Plaintiffs failed to prove that they will suffer irreparable harm; **B)** Plaintiffs also failed to prove that the alleged harm was not compensable in money damages; **C)** Plaintiffs failed to show a likelihood of success on the merit, while Defendant has raised substantial questions concerning the underlying infringement allegation.

#### A. A Preliminary Injunction is unwarranted because Plaintiffs failed to prove irreparable harm

"Delay in seeking a remedy is an important factor bearing on the need for a preliminary injunction." *High Tech Med*, 49 F.3d at 1557 (Fed. Cir. 1995). Delay on the part of the patentee "undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief." *See Tough Traveler, Ltd. v. Outbound Prod.*, 60 F.3d 964, 968 (2d Cir. 1995).

"Delayed for ***a substantial period of time*** before seeking a preliminary injunction [which] at least suggests that the *status quo* does not irreparably damage [the patentee]." *Nutrition 21 v. U.S.*, 930 F.2d 867, 872 (Fed. Cir. 1991); *see High Tech Med*, 49 F.3d at 1557 (Patent Case; "17 months is a substantial period of delay that militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief."); *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir.1985) (trademark case; nine-month delay undercuts claim of irreparable harm); *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 903 (7th Cir. 2001) (holding, in a trademark case, that "[d]elay in pursuing a preliminary injunction may raise questions regarding the plaintiff's claim that he or she will face irreparable harm if a preliminary injunction is not entered").

A patentee's delay in seeking injunction "plus grant of licenses by patentee sufficient to overcome presumption of irreparable harm." *High Tech Med*, 49 F.3d at 1557 (Fed. Cir. 1995) (citing *T.J. Smith & Nephew Ltd. v. Consol. Med. Equip., Inc.*, 821 F.2d 646, 648 (Fed. Cir. 1987)). Even a patentee's "apparent willingness to grant a license" indicates that the patentee has "no compelling need for interim equitable relief." *Id*.

## Product details

Color: **Black with K2**

**Package Dimensions  :**  39.8 x 12.3 x 10.1 inches; 31.95 Pounds

**Date First Available  :  November 9, 2017**

**Manufacturer  :**  Gyroor

**ASIN  :**  B07S4KXRQR

**Customer Reviews:**

★★★★⯪ ⌄      3,549 ratings

Shown above, the Accused Product B has been on the market since November 9, 2017. [Ex.2, p. 3].

Plaintiffs have competed against the Accused Product B in the hoverboard market for almost four years,

undoubtfully a substantial period of time.

Furthermore, Plaintiff's willingness to grant a license is apparent in this case. Aside from granting

other patents to Defendant previously, Plaintiffs' counsel has approached Defendant's prior counsel and

offered to "send over a license agreement" of the Patents-in-Suit [Dkt No. 391, p. 4].

Therefore, Plaintiffs' delay in seeking a remedy, coupled with Plaintiffs' apparent willingness to grant

a license, mitigate against the issuance of a preliminary injunction because there is no apparent urgency to the

request for injunctive relief.

### B.  Plaintiffs failed to prove that the alleged harm was not compensable in money damages

Plaintiffs argue that "Plaintiffs have suffered and will continue to suffer the loss of their

exclusive patent rights; loss of market share that Plaintiffs may never be able to recover…" [Dkt. No.

385, p. 31]. Plaintiffs also contend that Plaintiffs and defendant are in direct competition. *Id*. at p.32.

"The proof of lost market share and lost sales was insufficient to meet this standard" of

irreparable harm because "are presumed to be compensable through damages, so they do not require

injunctive relief." *Automated Merch. Sys., Inc. v. Crane Co.,* 357 F. App'x 297, 301 (Fed. Cir. 2009).

Furthermore, the contentions that Plaintiff will be likely to suffer loss of market, price erosion and loss

of goodwill are insufficient to find irreparable harm. *Everett Lab., Inc. v. Acella Pharmaceuticals*,

LLC, 2017 WL 5179006, *6-*7 (D.N.J. Sep. 13, 2013). In addition, conclusory allegations that since

[patentee] and the accused infringer are direct competition are not sufficient to prove irreparable harm.

*Caldwell Mfg. Co. N. Am., LLC v. Amesbury Gp., Inc*., No 11-CV-6183T, 2011 WL 3555833, *4-*6

(W.D.N.Y. Aug. 11, 2011)

Plaintiffs rely on declaration of Ying and declaration of Bero to prove that Plaintiffs have

suffered and will continue to suffer loss of sales and market share which may not be compensated by

monetary damage. However, Ying and Bero' conclusory statements are unsupported by any evidence.

Specifically, Bero admitted in his own declaration that all the alleged price erosion, a diminished ability

to invest in research and development and damage to the reputation are based on "incomplete

information," without providing any reliable reference. *See* Decl. of Bero., Ex. B to Plaintiff's Mtn. for

PI., Dkt. No. 386, ¶106 & n. 160.

Furthermore, because the sales figures of the allegedly infringing products are ascertainable,

Plaintiffs could be compensable in money damages if Plaintiffs prevail. Therefore, Plaintiffs failed to

either establish irreparable harm or that the harm cannot be compensated in money damage. Consequently

Plaintiffs failed to prove that Plaintiffs will suffer irreparable harm.

**C.  A Preliminary Injunction is unwarranted because Plaintiffs failed to show a likelihood of success on the merit**

Supported by former USPTO design patent examiner Mr. Gandy's and Professor Rake's declarations

[attached hereto as Exhibit 3 and Exhibit 4], the noninfringement is clear and obvious in this case.

**1.  <u>An "Ordinary Observer" in this case is a purchaser who is familiar with hoverboards and the prior art designs. Plaintiffs' definition of an "ordinary observer" must be rejected</u>**

Plaintiffs' expert witness Mr. Hatch provided the wrong ordinary observer standard. Based on

Mr. Hatch's declaration, Plaintiffs rely on *Gorham Co. v. White*, 81 U.S. 511, 527 (1872) and claim an

ordinary observer here should be "a consumer user or the parent of a user, each having little or no

experience purchasing hoverboards." [Dkt. No. 385, pp. 18-19; Dkt. No. 388, p. 8].

But the *Gorham* standard is limited to when "the claimed design and the accused design will be sufficiently distinct," which is not the appropriate standard in this case. *See Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008).

"Where there are many examples of similar prior art designs, as in a case such as *Whitman Saddle*, differences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the **hypothetical ordinary observer who is conversant with the prior art**." *See Egyptian Goddess*, 543 F.3d at 678 (citing *Smith v. Whitman Saddle Co.*, 148 U.S. 674 (1893)); *see also Wallace v. Ideavillage Prods. Corp.*, 640 Fed. Appx. 970, 978 (Fed. Cir, 2016).

Here, cited by both Plaintiffs and Defendant, its undisputed that there many examples of similar prior art designs that are relevant to the Accused Product B. [Decl. of Gandy, Ex. 1, ¶¶1-2; *see also* Dkt. No. 388, pp. 16-18]. The "hypothetical ordinary observer who is conversant with the prior art" standard obviously applies here. A person with "little or no experience" with hoverboards clearly does not satisfy the ordinary observer test in the present case.

Therefore, in light of the many similar prior art designs, the hypothetical ordinary observer in this case should be a purchaser who is familiar with hoverboards and the prior art designs.

**2.** <u>In light of the prior art D'906 Patent, an ordinary observer will not find the Accused Product B and the Patents-in-Suit have substantially similar overall "hourglass" shape</u>

In the most recent landmark case *Lanard Toys, Ltd. v. Dolgencorp LLC*, 958 F.3d 1337 (Fed. Cir 2020), The Feder Circuit prescribe that:

> [T]he ordinary observer is deemed to view the differences between the patented design and the accused product *__in the context of the prior art__*. When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art. And when the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer." *Id.* (quoting *Egyptian Goddess*, 543 F.3d at 676).

Here, because the Patents-in-Suit and the D'906 Patent are very close in their overall hourglass shape, the differences between the Accused Product B and the Patents-in-Suit are important to the ordinary observer. In light of the prior art D'906 Patent, an ordinary observer will not find the Accused Product B and the Patents-in-Suit have substantially similar overall "hourglass" shape.

    *a.*    *The D'906 Patent constitutes Prior Art to all Patents-in-Suit*

Under 35 U.S.C. §102(a)(2), prior art includes "a patent issued under section 151, or in an application for patent published or deemed published under section 122(b), in which the patent or application, as the case may be, names another inventor and was effectively filed before the effective filing date of the claimed invention."

| Patents | Application Filing Date | Effective Filing Date |
|---|---|---|
| **Prior Aart - D'906 Patent** | **03/12/2013** | **03/12/2013** |
| Patents-in-Suit (D'723 Patent) | 12/15/2014 | 12/15/2014 |
| Patents-in-Suit (D'256 Patent) | 12/15/2014 | 12/15/2014 |
| Patents-in-Suit (D'195 Patent) | 02/29/2016 | 02/29/2016 |
| Patents-in-Suit (D'112 Patent) | 02/29/2016 | 02/29/2016 |

Here, the application of the D'906 Patent was effectively filed before the effective filing date of the Patents-in-Suit. Therefore, D'906 Patent is prior art to all Patents-in-Suit.

    *b.*    *Plaintiffs failed to compare Accused Product, Patents-in-Suit and the prior art D'906 patent*

Plaintiffs claim that "Plaintiffs' commercial success is due in part to its revolutionary patented designs that feature an hourglass shape with a central support platform." [Dkt. No. 385, p. 20].

Without properly comparing the D'906 Patent with the Patents-in-Suit, Mr. Hatch further claims "none of the prior art create the impression of any integrated "hourglass" body with a relatively flat surface across the top of the main body." [Dkt. No. 388, pp.16-18]. This statement is plainly incorrect.

This "hourglass" peripheral shape was first disclosed and claimed in the prior art — the U.S. Design Patent D739,906 Patent ("D'906 Patent" attached hereto as Exhibit 5). As shown below in Table 1, page 7, the Patents-in-Suit all have an hourglass shape with smooth curves similar to the D'906 patent.

[Decl. of Rake, Ex 4, ¶¶53-56, 92, 98; Decl. of Gandy, Ex 3, ¶¶47, 53, 59, 64]. In contrast, the Accused Product B has a more "angular body shape with sharp edges." *Id*.

The "revolutionary design" was already claimed in the prior art D'906 Patent. Plaintiffs did not invent the hourglass shape of hoverboards. Therefore, in light of the D'906 Patent, an ordinary observer will find the Accused Product B has a substantially different overall shape from the Patents-in-Suit.

| Table 1 — Comparison of Overall Hourglass Shape | |
|---|---|
| Patents-in-Suit<br>D'723 Patent | |
| Patents-in-Suit<br>D'256 Patent | |
| Patents-in-Suit<br>D'195 Patent | |
| Patents-in-Suit<br>D'112 Patent | |
| **Prior Aart**<br>**D'906 Patent** | |
| Accused Product B | |
| Substantially Similar Patent<br>D'856 Patent | |



| Table. 2 — Comparison of Overall Shape – Front View | |
|---|---|
| Patents-in-Suit<br>D'723 Patent | |
| Patents-in-Suit<br>D'256 Patent | |
| Patents-in-Suit<br>D'195 Patent | |
| Patents-in-Suit<br>D'112 Patent | |
| **Prior Aart**<br>**D'906 Patent** | |
| Accused Product B | |
| Substantially Similar Patent<br>D'856 Patent | |

Table 2 compares the front view of the prior art D'906 Patent, the Patents-in-Suit and the

Accused Product B. Both the prior art D'906 Patent and the Patents-in-Suit have "a slightly raised

convex contour, while the corresponding center portion of the top surface of the design of Gyroor "B"

hoverboard is substantially flat and slightly recessed down below the opposing outer foot surfaces."

[Decl. of Gandy, Ex 3, ¶¶ 42, 47, 53, 64].

12

Therefore, in light of the D'906 Patent, an ordinary observer will find the Accused Product B has a substantially different overall shape from the Patents-in-Suit.

3. <u>An ordinary observer, familiar with the prior art, will not be deceived into thinking that the Accused Product B is the same as the Patents-in-Suit</u>

a. *Plaintiffs failed to compare the ornamental features and failed to analyze how they impact the overall design*

Under the "ordinary observer" test, a court must consider the ornamental features [of each element] and analyze how they impact the overall design." *Lanard*, 958 F.3d at 1343-44 (citing *Richardson v. Stanley Works, Inc*., 597 F.3d 1288, at 1295 (Fed. Cir. 2010)).

"While the 'ordinary observer' test is not an element-by-element comparison," it also does not ignore the reality that designs can, and often do, have both functional and ornamental aspects. *Id*. (citing *Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1372 (Fed. Cir. 2006)). Analyzing the ornamental features is necessary to determine how the ornamental differences in each element would impact the ordinary observer's perception of the overall designs. *Id*.

Mr. Hatch's declaration failed to address the following features that contribute to the overall shape and appearance of the Accused Products and the Patents-in-Suit: a) The shape and appearance of the foot pads on the top surface; b) The contour of the narrow central portion of the top surface, which is not flat, contrary to Mr. Hatch's statement; c) The specific shape and appearance of the "arched covers;" d) The specific shape and appearance of lights and other ornamental features; and e) Features on the bottom surface which will be described below. [Gandy, Ex 3, ¶¶21, 22, Decl. of Rake, Ex 4, ¶¶57-61].

b. *None of the Patent-in-Suit claimed any ornamental features of the Accused Product B*

The ornamental features of each element in the Accused Product B are based on the claimed design of the U.S. D808,856 Patent ("D'856 Patent," attached hereto as Exhibit 6).

An ordinary observer would consider the Accused Product B to be substantially similar to the D'856 Patent. [Decl. of Rake, Ex 4, ¶188]. In contrast, no ordinary observer would consider Accused

Product B is substantially similar to the Patents-in-Suit because none of the Patent-in-Suit claimed any ornamental features of the Accused Product.

**First**, none of the Patents-in-Suit claimed foot pad design of the Accused Product B. The shape and design of the foot pads of the Accused Product B are plainly different from the Patents-in-Suit. [Decl. of Gandy, Ex 3, ¶¶71, 77; Decl. of Rake, Ex 4, ¶¶117,125].

Here, D'723 and D'256 Patents both claim the design of straight divergent lines on the foot pads. Neither D'195 nor D'112 claims any designs of the foot pads.

The D'856 Patent claimed unique patterns on the foot pads, which are plainly dissimilar from the designs of the Patents-in-Suit. The Accused Product B has identical foot pad design as D'856 Patent.



| | | |
|---|---|---|
| Patents-in-Suit D'723 Patent | Patents-in-Suit D'256 Patent | Patents-in-Suit D'195 Patent |
| Patents-in-Suit D'112 Patent | Substantially Similar Patent D'856 Patent | Accused Product B |

**Second**, none of the Patents-in-Suit claimed the wheel covers design of the Accused Product B. The wheel covers of the Accused Product B are plainly different from the Patents-in-Suit.

The Patents-in-Suit all have semi-circular wheel covers and extend over and cover the entire wheel. None of the Patent-in-Suit claimed the wheel covers design of the Accused Product B.

The shape of the wheel covers in the Patnes-in-Suit and the prior art D'906 patent are both semi-circular, "while the wheel covers on the design of Gyroor 'B' hoverboard have opposing diagonally

14

straight side edges a substantially flat top edge which curves outwardly. [Decl. of Gandy, Ex 3, ¶¶48, 60, 65]. Therefore, "even to the most casual observer, the differences are significant." [Decl. of Rake, Ex 4, ¶¶122, 129, 135, 141].



| Patents-in-Suit D'723 Patent | Patents-in-Suit D'256 Patent | Patents-in-Suit D'195 Patent |
| Patents-in-Suit D'112 Patent | Substantially Similar Patent D'856 Patent | Accused Product B |

*Third*, none of the Patents-in-Suit claimed the light design of the Accused Product B. The position, shape, and size of the lights of the Accused Product B are also plainly different from the Patents-in-Suit. None of the Patent-in-Suit claimed the light design of the Accused Product B.

Highlighted, the Patents-in-Suit all have different size and shape and are positioned differently on the front panel of the hoverboard. [Decl. of Rake, Ex 4, ¶¶ 93, 99, 105, 111].

The light design of the Accused Product B features thin narrow strips that curves up to the fenders, which is identical to the claimed design in the D'856 Patent.



**4.** Under the *Gestalt Principles*, the ornamental features of the Accused Product B listed above would be perceived as more dramatic and obvious, which would significantly impact the overall visual impression of the ordinary observer

"The *Gestalt principles* of visual perception teaches us that the eye is attracted to areas of high contrast." [Decl. of Rake, Ex. 4, ¶25]. Under the *Figure-Ground principles*, "some shapes or contours take a prominent role (figure) while others recede into the background (ground)." *Id*. at 26.

Certain designs would be perceived as more dramatic and obvious. Here, the size, shape, and character of the lights, size and shape of the wheel covers, and the patterns of the foot pads would significantly impact the ordinary observer's visual perception of the overall designs. [Decl. of Rake, Ex. 4, ¶¶ ¶¶93, 99, 105, 111, 175-178]. As a result, the differences between the Patents-in-Suit and accused design take on greater significance to an ordinary observer.

Consequently, an ordinary observer, taking into account the prior art, would not believe the accused design to be the same as the patented design.

## II. A Preliminary Injunction based on Mr. Hatch's allegation of infringement by Accused Product A, Accused Product C and "Accused Product D must also be denied

### A. A Preliminary Injunction is unwarranted because Plaintiffs failed to prove irreparable harm

The legal standards are the same as in **Part I.A.**, "Delayed for *__a substantial period of time__* before seeking a preliminary injunction [which] at least suggests that the *status quo* does not irreparably damage [the patentee]." *See supra* **Part I.A.**

A patentee's delay in seeking injunction "plus grant of licenses by patentee sufficient to overcome presumption of irreparable harm." *Id.*

## Product details

**Package Dimensions : 25.4 x 18 x 11.2 inches; 36.38 Pounds**

**Item model number : T581**

**Department : Unisex-Adult**

**Batteries : 1 Lithium ion batteries required. (included)**

**Date First Available : May 14, 2019**

**Manufacturer : CHETAIDOU**

**ASIN : B07PHFP8GB**

### Product details

Color:**pink**

**Is Discontinued By Manufacturer** : No

**Item Weight** : 26.5 Pounds

**Batteries** : 20 Lithium ion batteries required.

**Date First Available** : April 10, 2018

**Manufacturer** : Gyroor

**ASIN** : B07C3C861F

Shown above, Accused Product A and Accused Product C have been on the market since May 14, 2019 and April 10, 2018 respectively. ["Date First Available" and comments from verified purchasers for Accused Product A and Accused Product C are attached hereto as Exhibit 7 and Exhibit 8]. Plaintiffs have competed against Accused Product A for well over two years and against Accused Product C for well over three years, undoubtfully a substantial period of time.

Furthermore, Plaintiff's willingness to grant a license is apparent in this case. Aside from granting other patents to Defendant previously, Plaintiffs' counsel has approached Defendant's prior counsel and offered to "send over a license agreement" of the Patents-in-Suit [Dkt No. 391, p. 4].

Therefore, Plaintiffs' delay in seeking a remedy, coupled with Plaintiffs' apparent willingness to grant a license, mitigate against the issuance of a preliminary injunction because there is no apparent urgency to the request for injunctive relief.

**B. A Preliminary Injunction is unwarranted because Plaintiffs failed to show a likelihood of success on the merit**

Supported by former USPTO design patent examiner Mr. Gandy's and Professor Rake's declarations, the noninfringement is clear and obvious in this case.

**1.** <u>An "Ordinary Observer" in this case is a purchaser who is familiar with hoverboards and the prior art designs. Plaintiffs' definition of an "ordinary observer" must be rejected</u>

Same as in **Part I.B.1**, in light of the many similar prior art designs, the hypothetical ordinary observer in this case should be a purchaser who is familiar with hoverboards and the prior art designs. *See supra* **Part I.B.1.**

18

**2.** In light of the prior art D'906 Patent, an ordinary observer will not find the Accused Product B and the Patents-in-Suit have substantially similar overall "hourglass" shape

Same as in **Part I.B.2.** because the Patents-in-Suit and the D'906 Patent are very close in their overall hourglass shape, the differences between the Accused Product B and the Patents-in-Suit are important to the ordinary observer. In light of the prior art D'906 Patent, an ordinary observer will not find the Accused Product B and the Patents-in-Suit have substantially similar overall "hourglass" shape. *See supra* **Part I.B.2.**

**a.** *The D'906 Patent constitutes Prior Art to all Patents-in-Suit*

Same as in **Part I.B.2.a**, the application of the D'906 Patent was effectively filed before the effective filing date of the Patents-in-Suit. Therefore, D'906 Patent is prior art to all Patents-in-Suit. *See supra* **Part I.B.2.a.**

**b.** *Plaintiffs failed to compare Accused Product, Patents-in-Suit and the prior art D'906 patent*

Same as in **Part I.B.2.b**, the "revolutionary design" was already claimed in the prior art D'906 Patent. Plaintiffs did not invent the hourglass shape of hoverboards. Therefore, in light of the D'906 Patent, an ordinary observer will find the Accused Product B has a substantially different overall shape from the Patents-in-Suit. *See supra* **Part I.B.2.a.**

Furthermore, in light of the D'906 Patent, an ordinary observer will find the Accused Product B has a substantially different overall shape from the Patents-in-Suit. *See supra* **Part I.B.2.a.**

**3.** An ordinary observer, familiar with the prior art, will not be deceived into thinking that the Accused Product B is the same as the Patents-in-Suit

**a.** *Plaintiffs failed to compare the ornamental features and failed to analyze how they impact the overall design*

Same as in **Part I B 3(a)**, Mr. Hatch's declaration failed to address the following features that contribute to the overall shape and appearance of the Accused Products and the Patents-in-Suit: a) The shape and appearance of the foot pads on the top surface; b) The contour of the narrow central portion of the top surface, which is not flat, contrary to Mr. Hatch's statement; c) The specific shape and

appearance of the "arched covers;" d) The specific shape and appearance of lights and other ornamental features; and e) Features on the bottom surface which will be described below. [Gandy, Ex 3, ¶¶21, 22, Decl. of Rake, Ex 4, ¶¶57-61]. *See supra* **Part I B 3 (a).**

**b.** *None of the Patent-in-Suit claimed any ornamental features of the Accused Product A*

The ornamental features of each element in the Accused Product A are based on the claimed design of the U.S. D808,857 Patent ("D'857 Patent," attached hereto as Exhibit 9). An ordinary observer would consider the Accused Product A to be substantially similar to the D'857 Patent. [Decl. of Rake, Ex 4, ¶187].

In contrast, no ordinary observer would consider Accused Product A is substantially similar to the Patents-in-Suit because none of the Patent-in-Suit claimed any ornamental features of the Accused Product A.

***First***, none of the Patents-in-Suit claimed foot pad design of the Accused Product A. The shape and design of the foot pads of the Accused Product are plainly different from the Patents-in-Suit. [Decl. of Gandy, Ex 3, ¶¶27, 33; Decl. of Rake, Ex 4, ¶¶63,77].

Here, D'723 and D'256 Patents both claim the design of straight divergent lines on the foot pads. Neither D'195 nor D'112 claims any designs of the foot pads.

The D'857 Patent claimed unique curved lines on the foot pads, which are plainly dissimilar from the designs of the Patents-in-Suit. The Accused Product has identical foot pad design as D'857 Patent.



| Patents-in-Suit D'723 Patent | Patents-in-Suit D'256 Patent | Patents-in-Suit D'195 Patent |
|---|---|---|
| Patents-in-Suit D'112 Patent | Substantially Similar Patent D'857 Patent | Accused Product A |

***Second***, none of the Patents-in-Suit claimed the wheel covers design of the Accused Product A. The wheel covers of the Accused Product A are plainly different from the Patents-in-Suit.

The Patents-in-Suit all have semi-circular wheel covers and extend over and cover the entire wheel. None of the Patent-in-Suit claimed the wheel covers design of the Accused Product A.

The shape of the wheel covers in the Patens-in-Suit and the prior art D'906 patent are both semi-circular, "while the wheel covers on the design of the Gyroor "A" hoverboard are somewhat squared off." [Decl. of Gandy, Ex 3, ¶¶26, 32, 38, 43].

Therefore, "even to the most casual observer, the differences are significant." [Decl. of Rake, Ex 4, ¶¶68, 75, 81, 87]



| | | |
|---|---|---|
| Patents-in-Suit<br>D'723 Patent | Patents-in-Suit<br>D'256 Patent | Patents-in-Suit<br>D'195 Patent |
| Patents-in-Suit<br>D'112 Patent | **Prior Aart<br>D'906 Patent** | Accused Product A |

**_Third_**, none of the Patents-in-Suit claimed the light design of the Accused Product A. The position, shape, and size of the lights of the Accused Product A are also plainly different from the Patents-in-Suit. None of the Patent-in-Suit claimed the wheel covers design of the Accused Product A.

Highlighted, the Patents-in-Suit all have different size and shape and are positioned differently on the front panel of the hoverboard. [Decl. of Rake, Ex 4, ¶¶ 66, 72, 78, 84].

The light design of the Accused Product A features thin narrow straight strips lights, which is identical to the claimed design in the D'856 Patent.



| | | |
|---|---|---|
| Patents-in-Suit D'723 Patent | | |
| Patents-in-Suit D'256 Patent | | |
| Patents-in-Suit D'195 Patent | | |
| Patents-in-Suit D'112 Patent | | |
| Accused Product A | | |
| Substantially Similar Patent D'857 Patent | | |

**c.** *None of the Patent-in-Suit claimed any ornamental features of the Accused Product C*

The ornamental features of each element in the Accused Product C are based on the claimed design of the U.S. D808,857 Patent. An ordinary observer would consider the Accused Product C to be substantially similar to the D'857 Patent. [Decl. of Rake, Ex 4, ¶187].

In contrast, no ordinary observer would consider Accused Product C is substantially similar to the Patents-in-Suit because none of the Patent-in-Suit claimed any ornamental features of the Accused Product C.

*__First__*, none of the Patents-in-Suit claimed foot pad design of the Accused Product C. The shape and design of the foot pads of the Accused Product C are plainly different from the Patents-in-Suit. [Decl. of Gandy, Ex 3, ¶¶71, 77; Decl. of Rake, Ex 4, ¶¶117,125].

Here, D'723 and D'256 Patents both claim the design of straight divergent lines on the foot pads. Neither D'195 nor D'112 claims any designs of the foot pads.

The D'857 Patent claimed unique curved lines on the foot pads, which are plainly dissimilar from the designs of the Patents-in-Suit. The Accused Product C has identical foot pad design as D'857 Patent.



| | | |
|---|---|---|
| Patents-in-Suit<br>D'723 Patent | Patents-in-Suit<br>D'256 Patent | Patents-in-Suit<br>D'195 Patent |
| Patents-in-Suit<br>D'112 Patent | Substantially Similar Patent<br>D'857 Patent | Accused Product C |

**_Second_**, none of the Patents-in-Suit claimed the wheel covers design of the Accused Product C. The wheel covers of the Accused Product C are plainly different from the Patents-in-Suit.

The Patents-in-Suit all have semi-circular wheel covers and extend over and cover the entire wheel. None of the Patent-in-Suit claimed the wheel covers design of the Accused Product C.

The shape of the wheel covers in the Patnes-in-Suit and the prior art D'906 patent are both semi-circular, "while the wheel covers on the design of Gyroor 'C' hoverboard do not extend down over the wheel" as in '723 and '195 Patent, and "are wider than those of the design" of the '256 and '112 patent. [Decl. of Gandy, Ex 3, ¶¶70, 76, 82, 87].

Therefore, "even to the most casual observer, the differences are significant." [Decl. of Rake, Ex 4, ¶¶122, 129, 135, 141].



| | | |
|---|---|---|
| Patents-in-Suit D'723 Patent | Patents-in-Suit D'256 Patent | Patents-in-Suit D'195 Patent |
| Patents-in-Suit D'112 Patent | **_Prior Aart_** **D'906 Patent** | Accused Product C |

*__Third__*, none of the Patents-in-Suit claimed the light design of the Accused Product C. The position, shape, and size of the lights of the Accused Product C are also plainly different from the Patents-in-Suit. None of the Patent-in-Suit claimed the light design of the Accused Product C.

Highlighted, the Patents-in-Suit all have different size and shape and are positioned differently on the front panel of the hoverboard. [Decl. of Rake, Ex 4, ¶¶ 120, 126, 132, 138].

The light design of the Accused Product C features the thin narrow straight strips lights, which is identical to the claimed design in the D'857 Patent.



### d. *None of the Patent-in-Suit claimed any ornamental features of the Accused Product D*

The ornamental features of each element in the Accused Product D are based on the claimed design of the U.S. D891,297 Patent ("D'297 Patent," attached hereto as Exhibit 10). An ordinary observer would consider the Accused Product D to be substantially similar to the D'297 Patent. [Decl. of Rake, Ex 4, ¶189].

In contrast, no ordinary observer would consider Accused Product D is substantially similar to the Patents-in-Suit because none of the Patent-in-Suit claimed any ornamental features of the Accused Product D.

***First***, none of the Patents-in-Suit claimed foot pad design of the Accused Product D. The shape and design of the foot pads of the Accused Product are plainly different from the Patents-in-Suit. [Decl. of Gandy, Ex 3, ¶¶93, 99; Decl. of Rake, Ex 4, ¶¶146, 152, 158, 164].

Here, D'723 and D'256 Patents both claim the design of straight divergent lines on the food pads. Neither D'195 nor D'112 claims any designs of the foot pads.

The D'297 Patent claimed unique three parallel lines and other intricate patterns on the foot pads, which are plainly dissimilar from the designs of the Patents-in-Suit. The Accused Product D has identical foot pad design as D'297 Patent.



| Patents-in-Suit D'723 Patent | Patents-in-Suit D'256 Patent | Patents-in-Suit D'195 Patent |
|---|---|---|
| Patents-in-Suit D'112 Patent | Substantially Similar Patent D'297 Patent | Accused Product D |

***Second***, none of the Patents-in-Suit claimed the wheel covers design of the Accused Product D. The wheel covers of the Accused Product are plainly different from the Patents-in-Suit.

The Patents-in-Suit all have semi-circular wheel covers and extend over and cover the entire wheel. None of the Patent-in-Suit claimed the wheel covers design of the Accused Product D.

The shape of the wheel covers in the Patnes-in-Suit and the prior art D'906 patent are both semi-circular, "while the wheel covers on the design of Gyroor "D" hoverboard have opposing diagonally straight side edges a substantially flat top edge which curves outwardly but does not extend over the entire wheel." [Decl. of Gandy, Ex 3, ¶¶92, 98, 103, 108].

Therefore, "even to the most casual observer, the differences are significant."[Decl. of Rake, Ex 4, ¶¶150, 156, 162, 168].



| Patents-in-Suit D'723 Patent | Patents-in-Suit D'256 Patent | Patents-in-Suit D'195 Patent |
| Patents-in-Suit D'112 Patent | Substantially Similar Patent D'297 Patent | Accused Product D |

***Third***, none of the Patents-in-Suit claimed the light design of the Accused Product D. The position, shape, and size of the lights of the Accused Product D are also plainly different from the Patents-in-Suit. None of the Patent-in-Suit claimed the light design of the Accused Product D.

Highlighted, the Patents-in-Suit all have different size and shape and are positioned differently on the front panel of the hoverboard. [Decl. of Rake, Ex 4, ¶¶147, 153, 159, 165].

The light design of the Accused Product D features thin narrow strips, which is identical to the claimed design in the D'856 Patent.



| | | |
|---|---|---|
| Patents-in-Suit D'723 Patent | | |
| Patents-in-Suit D'256 Patent | | |
| Patents-in-Suit D'195 Patent | | |
| Patents-in-Suit D'112 Patent | | |
| Accused Product D | | |
| Substantially Similar Patent D'297 Patent | | |

**4.** Under the Gestalt Principles, the ornamental features of the Accused Product B listed above would be perceived as more dramatic and obvious, which would significantly impact the overall visual impression of the ordinary observer

Same as in **Part I.B.4**, Under the Gestalt, the size, shape, and character of the lights, size and shape of the wheel covers, and the patterns of the foot pads would significantly impact the ordinary observer's visual perception of the overall designs. [Decl. of Rake, Ex. 4, ¶¶66, 72, 78, 84, 171-174 for Accused Product A; ¶¶120, 126, 132, 138, 179-182 for Accused Product C; ¶¶147, 153, 159, 165, 183-186 for Accused Product D]. As a result, the differences between the Patents-in-Suit and accused design take on greater significance to an ordinary observer. *See supra*–**Part I.B.4.**

Consequently, an ordinary observer, taking into account the prior art, would not believe the Accused Product A, C and D to be the same as the patented design. *Id***.**

**C. Plaintiffs should not be allowed to amend their pleading by adding new allegations freely**

No allegation against the Defendant Chetaidou, regarding Accused Product A, C and D was raised in Plaintiffs' Complaint, Amended Complaint, or Amended Defendant Schedule "A." This is also the first time that Plaintiffs raised the infringement allegations of the Accuse Product C against any defendants.

Plaintiffs amended their complaint three times. [Dkt. No. 16, 37, 101]. In addition, Plaintiffs amended the Schedule "A" one more time on May 6, 2021 [Dkt. No. 227 & 227-3]. Plaintiffs had multiple opportunities to raise the alleged infringement claim against the Accused "Product C," but failed to do so.

Instead of requesting "the opposing party's written consent or the court's leave" to amend their Complaint as prescribed under the Federal Rule of Civil Procedure 15(a), Plaintiffs improperly included new allegations that were never raised before.

Plaintiffs should not be allowed to amend their pleading by adding new allegations freely. Consequently, Plaintiffs' request for preliminary injunction must be denied.

### III. The balance of hardship and public interest consideration both favor denying the issuance of a preliminary injunction

Plaintiffs have taken an 'any means necessary' approach to ensure their competitors are off the market. It is undeniable that a preliminary injunction would irreparably harm Defendant Chetaidou's business operation, especially when many products that are offered for sale on its websites are unrelated to this action.

*First*, "the historic injunctive process was designed to deter, not to punish." *Hecht Co. v. Bowles*, 321 U.S. 321, 329–30 (1944). An injunction against Defendant's website would effectively shut down Defendant's business and prevent Defendant from selling products that are unrelated to this action.

The collateral damage would amount to nothing less than a punishment and would unfairly burden Defendant's normal business operations

*Second*, "the focus of the district court's public interest analysis should be whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Hybritech, Inc. v. Abbott Labs.*, 849 F.2d 1446, 1458 (Fed. Cir. 1988).

Here, consumers of hoverboards clearly benefit from the increased competition, a more devised market, and newly launched products. An injunction will thwart such competition and runs counter to the public interest.

*Third*, "injunctive relief [i]s an extraordinary remedy that may only be awarded upon *a clear showing* that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). Furthermore, "a movant is not entitled to a preliminary injunction if he fails to demonstrate a likelihood of success on the merits." *National Steel Car, Ltd. v. Canadian Pacific Ry., Ltd.*, 357 F.3d 1319, 1325 (Fed. Cir. 2004).

Here, because Plaintiffs applied the wrong "ordinary observer standard" and failed to make proper comparison with the prior arts, Plaintiffs failed to conduct a proper infringement analysis. Plaintiffs have

not shown a strong likelihood of winning on the merit. Therefore, Plaintiffs are not entitled to a preliminary injunction.

*Fourth*, Since Plaintiffs claimed that they and Defendant are direct competitors in the hoverboard market, Plaintiffs must have known about the Accused Product A, B, C. Accused Product A, B, C have been on the market for over four years, three years, and two years respectively. Plaintiffs claimed irreparable harm was negated by Plaintiffs' delay in seeking a preliminary injunction because there is no apparent urgency to Plaintiffs' claims.

## Conclusion

For the foregoing reasons, Defendant respectfully requests that this Court deny Plaintiffs' motion for entry of a preliminary injunction.

Respectfully Submitted:

Date: 09/10/2021

/s/ Tianyu Ju
Tianyu Ju
Iris.Ju@glacier.law
He Cheng
Robin.Cheng@glacier.law
Tao Liu
Tao.Liu@glacier.law
Glacier Law PLLC
200 Park Avenue, Suite1703
New York, NY 10166
www.glacier.law
Tel: +1 (332) 208-8882
Fax: +1 (312) 801-4587
**Attorneys for Defendant**

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this September 10, 2021, I electronically filed the foregoing

file with the Clerk of Court using the CM/ECF system, along with the attached Exhibits, and service

was perfected on all counsel of record and interested parties through this system, which will deliver a

true and correct copy of the foregoing documents via CM/ECF.

Date: 09/10/2021 _____          /s/ Tianyu Ju _____
                                                                               Tianyu Ju