# Exhibit 1

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| **UNICORN GLOBAL, INC., HANGZHOU CHIC INTELLIGENT TECHNOLOGY CO., LTD., AND SHENZEN UNI-SUN ELECTRONIC CO., LTD.,** | |
| *Plaintiffs*, | **CIVIL ACTION NO. 3:19-CV-00754-N** |
| **v.** | |
| **GOLABS, INC., d/b/a GOTRAX, WALMART INC., WAL-MART STORES TEXAS, LLC, AND WAL-MART.COM USA LLC,** | **JURY TRIAL DEMANDED** |
| *Defendants*. | |
| **GOLABS, INC., d/b/a GOTRAX, WALMART INC., WAL-MART STORES TEXAS, LLC, AND WAL-MART.COM USA LLC,** | |
| *Counterclaimants*, | |
| **v.** | |
| **UNICORN GLOBAL, INC., HANGZHOU CHIC INTELLIGENT TECHNOLOGY CO., LTD., AND SHENZEN UNI-SUN ELECTRONIC CO., LTD.,** | |
| *Counterdefendants*. | |

## DEFENDANT GOLABS, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

I.      Introduction and Summary of the Argument..........................................................1

II.     Factual Background....................................................................................4

   a.   GoLabs and the Hoverboard Market ...........................................................4

   b.   Plaintiffs Asserted The '155, '802 and D'723 Patents In This Lawsuit With Knowledge That All Three Patents Are Invalid And / Or Unenforceable ...................................5

   c.   Plaintiffs' Enforcement Tactics and Campaign to Remove GoLabs' Hoverboard Products from Amazon.com..................................................................................10

   d.   Prior Litigation Raised The Same Defenses of Inequitable Conduct and Invalidity That GoLabs Now Alleges .............................................................................13

III.    Legal Standards ....................................................................................15

   a.   Standards Governing Preliminary Injunctive Relief ..........................................15

   b.   Standards Governing GoLabs' Tortious Interference Counterclaim ..............................15

IV.     GoLabs is Entitled to Preliminary Injunctive Relief ............................................16

   a.   GoLabs is Substantially Likely to Prevail on its Tortious Interference Counterclaim.......16

      i.   Federal Patent Law Does Not Preempt GoLabs' Tortious Interference Counterclaim Because Plaintiffs' Communications with Amazon Were Made in Bad Faith.....................17

   b.   GoLabs Will Be Irreparably Harmed if Plaintiffs' Conduct is Not Enjoined ...................22

   c.   The Balance of Equities Weighs in GoLabs' Favor ...........................................23

   d.   The Public Interest Favors Entry of Injunctive Relief......................................24

V.      Conclusion .........................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*800 Adept, Inc. v. Murex Sec., Ltd.*,
   539 F.3d 1354 (Fed. Cir. 2008) ................................................................. 16, 17

*Adams EMS, Inc. v. Azar*,
   Civ. No. H-18-1443, 2018 WL 5264244 (S.D. Tex. Oct. 23, 2018) ..................................... 22

*Canal Auth. of State of Florida v. Callaway*,
   489 F.2d. 567 (5th Cir. 1974) (en banc) ............................................................. 15

*Energy Heating LLC v. Heat On-The-Fly LLC*,
   889 F.3d 1291 (Fed. Cir. 2018) ................................................................. 16, 17

*Ericsson v. Wi-Lan*,
   No. 14-cv-21854, 2015 WL 11233112 (S.D. Fla. Aug. 14, 2015) ....................................... 18

*Exergen Corp. v. Brooklands Inc.*,
   290 F. Supp. 3d 113 (D. Mass. 2018) ................................................................ 19

*Family Rehabilitation, Inc. v. Azar*,
   886 F.3d 496 (5th Cir. 2018) ....................................................................... 22

*Funes v. Villatoro*, 352 S.W.3d 200 (Tex. App.—Houston [14th Dist.] 2011, pet.
   denied) ............................................................................................ 15

*McKesson Info. Sols., Inc. v. Bridge Med., Inc.*,
   487 F.3d 897 (Fed. Cir. 2007) ...................................................................... 9

*Mississippi Power & Light Co. v. United Gas Pipeline Co.*,
   760 F.2d 618 (5th Cir. 1985) ...................................................................... 15

*Nilsen v. Osram Sylvania Inc.*,
   504 F.3d 1223 (Fed. Circ. 2007) ................................................................. 9, 19

*Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*,
   29 S.W.3d 74 (Tex. 2000) .................................................................... 15, 16, 17

*Therasense, Inc. v. Becton, Dickinson & Co.*,
   649 F.3d 1276 (Fed. Cir. 2011) .................................................................... 19

*Trovan, Ltd. v. Sokymat SA, Irori*,
   299 F.3d 1292 (Fed. Cir. 2002) ................................................................ 10, 20

*Zenith Elecs. Corp. v. Exzec Inc.*,
    182 F.3d 1340 (Fed. Cir. 1999)..........................................................................................16

**Statutes**

35 U.S.C. § 284..................................................................................................................23

Defendant and Counterclaimant GoLabs, Inc. ("GoLabs") respectfully submits this Brief in Support of its Motion for Temporary Restraining Order and Preliminary Injunction against Plaintiffs and Counterdefendants Unicorn Global, Inc. ("Unicon"), Hangzhou Chic Intelligent Technology Co., Ltd. ("Chic"), and Shenzhen Uni-Sun Electric Co., Ltd. ("Uni-Sun") (collectively, "Plaintiffs" or "Counterdefendants"). GoLabs moves this Court to set a hearing for the matter of a preliminary injunction for the pendency of this litigation and for a temporary restraining order directing Plaintiffs to refrain from filing complaints with Amazon, Walmart, and any other customer of GoLabs that GoLabs hoverboard products infringe Plaintiffs' patents, and to inform such customers that Plaintiffs retract their notices of infringement and request, when applicable, that GoLabs' products be reinstated for sale, notwithstanding Plaintiffs' previous allegations of infringement.

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

The hoverboard market is a rapidly growing industry, and Plaintiffs Unicorn, Chic, and Uni-Sun have taken an "any means necessary" approach to ensure their competitors are off the market. This includes GoLabs. Although GoLabs was only recently founded in 2017 and is still considered a small company (as it currently has twenty-four employees), it has achieved significant growth in its first few years of existence, with overall gross sales revenue totaling $27.3 million in 2018. Amazon's platform is crucial to GoLabs' success. In 2018, roughly half of GoLabs' total gross sales came from hoverboard sales through amazon.com. Moreover, of GoLabs' hoverboard sales alone (which were about $18.9 million in 2018), amazon.com hoverboard sales contributed to about 71% of that total. GoLabs projected that amazon.com hoverboard sales would total $26.6 million in 2019, nearly doubling sales from 2018.

DEFENDANT GOLABS, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION                    1

Beginning in October 2018 through April 2019, Plaintiffs embarked on an anticompetitive crusade to stifle GoLabs' business.  Plaintiffs repeatedly sent notice after notice to Amazon, accusing GoLabs of infringing a variety of Plaintiffs' patents, some of which are not even asserted in this litigation.  Although GoLabs was able to clear the vast majority of Plaintiffs' infringement accusations, the complaints lodged by Plaintiffs were not without consequence as GoLabs' products were intermittently delisted by Amazon and GoLabs' reputation with Amazon was clearly on the decline.

As part of their strategy in getting GoLabs' hoverboards permanently delisted on amazon.com, Plaintiffs filed this lawsuit on March 26, 2019, first accusing only GoLabs and its hoverboard products of infringement of the '155, '802 and D'723 patents.  Subsequently, Plaintiffs amended their complaint on May 9, 2019 to also name GoLabs' customers Amazon and Walmart as defendants after continued notifications to these companies in April failed to completely delist GoLabs' products for sale by Amazon and Walmart.  On June 2, 2019, Plaintiffs again submitted a notification to Amazon.  Immediately after the June 2 notification, Plaintiffs voluntarily dismissed Amazon from this lawsuit on June 3, and Amazon contemporaneously delisted all of GoLabs' hoverboard products on amazon.com.  The dismissal of Amazon effectively served as a quid pro quo for Amazon permanently delisting GoLabs' hoverboard products.

Plaintiffs finally got the outcome they desired – GoLabs is no longer a seller on amazon.com – but only after pressuring Amazon with repeated and baseless claims that GoLabs' products infringe upon Chic's patents and drawing Amazon into this lawsuit with the sole apparent purpose of coercing Amazon to delist GoLabs' hoverboard products.  Such conduct should not be condoned and serves as the basis for the injunctive relief now sought by GoLabs.  Indeed, the circumstances surrounding this case and Plaintiffs' conduct demonstrates that each of the factors

considered by this Court when determining whether to issue a temporary restraining order and preliminary injunction weigh in favor of issuing GoLabs' requested relief.

First, GoLabs is substantially likely to succeed on the merits of its tortious interference counterclaim. Plaintiffs intentionally interfered with GoLabs' Amazon Services Business Solution Agreement with Amazon, thus causing Amazon to intermittently and then permanently delist GoLabs' hoverboard products from amazon.com. Moreover, Plaintiffs' conduct was done in bad faith in part because their communications with Amazon reveal that they (1) asserted the same patent multiple times against the same product, even though that product had already been cleared of infringement; (2) asserted patents on a trial and error basis until they ultimately found one that resulted in delisting; (3) accused products despite having no desire to seek recourse in a court of law; and (4) asserted patents that they know are not infringed, invalid, and/or unenforceable.

Second, GoLabs is substantially likely to suffer irreparable harm if the injunction is not granted. As a small company that depends on sales made through amazon.com, GoLabs' current delisting from amazon.com will have a devastating effect if continued, including more lay-offs, and in a worst case scenario, closing the company. Moreover, GoLab has and will continue to suffer reputational damage and loss of goodwill in connection with its delisting.

Third, the balance of equities tips in favor of GoLabs. Restoring the status quo and permitting GoLabs to sell again on amazon.com will not affect the amount of monetary damages that Plaintiffs can seek in this litigation. In contrast, perpetuating GoLabs' delisting and loss of revenue from amazon.com until the adjudication of this lawsuit – even if GoLabs is ultimately victorious on the merits – will cause GoLabs to lay-off additional employees, and possibly, close down its business.

Fourth, public interest factors tip in favor of granting GoLabs' requested relief. Plaintiffs have, in effect, obtained their own injunctive relief of delisting GoLabs from amazon.com. Such a drastic result would ordinarily require Plaintiffs to demonstrate that they are entitled to such a remedy in a court of law. Instead, despite filing their Complaint for patent infringement against GoLabs, Plaintiffs failed to seek injunctive relief and resorted to their old tactics of contacting Amazon with accusations of patent infringement with respect to GoLabs' products. Plaintiffs took their conduct a step further, bringing Amazon into this lawsuit as a co-defendant, thus pressuring Amazon to delist GoLabs' hoverboard. Such conduct should not be permitted, and if allowed to continue, would establish a dangerous precedent moving forward.

## II.   FACTUAL BACKGROUND

### a.   GoLabs and the Hoverboard Market

A hoverboard is a two-wheeled, battery powered, self-balancing vehicle, as shown below in GoLabs' Hoverfly ION:



GoLabs is responsible for creating innovative hoverboards, including the products accused in this case, such as the Hoverfly ECO, Hoverfly ION, SRX, SRX Pro, and Hoverfly XL. Formed in 2017, GoLabs sells its hoverboards, as well as other mechanical devices, through online retailers like walmart.com and amazon.com. Despite being a relatively new company in the hoverboard market, GoLabs has already achieved tremendous success. In 2018, GoLabs generated $18.9 million in hoverboard sales across the United States. DApp. 3 (Lawrence Decl. at ¶ 3). GoLabs

DEFENDANT GOLABS, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION                    4

is a small company, and depends on sales through amazon.com to survive.  Indeed, sales of its hoverboards on amazon.com in 2018 totaled roughly $13.5 million, and accounted for 48% of overall sales and 71% of hoverboard sales.  *See* DApp. 3 (Lawrence Decl. at ¶ 4).  GoLabs' 2019 projections estimated that hoverboard gross sales on amazon.com would have reached about $26.6 million.  *See* DApp. 3 (Lawrence Decl. at ¶ 4).

GoLabs anticipates that its business will continue to grow (provided that Plaintiffs' tortious interference with GoLabs' business is halted) as demand for hoverboards is projected to continue on its upward trajectory.  The worldwide market for hoverboards is projected to grow up to $1.8 billion by 2021.  DApp. 37.  In particular, continued interest of hoverboards by the rising youth population is expected to drive growth in the hoverboard market.  DApp. 41-42.

### b. Plaintiffs Asserted The '155, '802 and D'723 Patents In This Lawsuit With Knowledge That All Three Patents Are Invalid And / Or Unenforceable

Plaintiffs asserted U.S. Patent Nos. 9,376,155 ("the '155 patent"), 9,452,802 ("the '802 patent"), and U.S. Design Patent No. D737,723 ("the D'723 patent") in this lawsuit with knowledge that all three patents are invalid and/or unenforceable.  During prosecution of the '155 patent, the first named inventor Mr. Jiawei Ying, Hangzhou Chic's Chair and General Manager, breached his duty of candor to the USPTO and committed inequitable conduct, rendering the '155 patent unenforceable by: (1) misrepresenting the prior art; and (2) intentionally withholding material information by (a) not disclosing a prior art "Hovertrax" prototype, which anticipates the claims of both the '155 patent and the '802 patent and (b) not disclosing the Chinese Patent Office's rejection of his corresponding Chinese priority application.  The Patent Examiner would have rejected the claims of the '155 patent if he was properly informed of this material information.

During prosecution of the '155 patent, the Patent Examiner ultimately allowed the claims and stated: "The reason for the allowance of claim 1 is that the prior art fails to disclose an inner

DEFENDANT GOLABS, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION          5

cover fixed between a top cover and a bottom cover, the inner cover comprising a first inner cover and a second inner cover disposed symmetrically and rotatable relative to each other; a rotating mechanism fixed between the first inner cover and the second inner cover; and two wheels rotatably fixed at two sides of the inner cover, respectively." D.I. 36, Ex. 1 at 7. As shown below, the '155 patent claims would not have been allowed had Mr. Ying not deliberately withheld from the USPTO the anticipating prior art Hovertrax prototype invented by Mr. Shane Chen, the owner of another company called Inventist, Inc.

Mr. Chen is the inventor of the hoverboard, not Mr. Ying. He was issued the prior art hoverboard patent – U.S. Patent No. 8,738,278 (the "'278 patent"). He also displayed prototypes of his invention, called the "Hovertrax," at a toy fair in New York in February 2012, again in February 2013, and he further disclosed information about his invention in a Kickstarter fundraising campaign beginning in April 2013. These disclosures of the Hovertrax in February 2012, February 2013, and April 2013 are indisputably prior art to the '155 and '802 patents under 35 U.S.C. § 102(a)(1), as the earliest date to which the '155 and '802 patents claim priority is June 13, 2014. This means that the possible exception for disclosures made within a year of a patent's priority date do not apply. Moreover, Mr. Ying knew about Mr. Chen's invention and deliberately chose not to disclose the Hovertrax to the USPTO during prosecution of the '155 and '802 patents despite the fact that the Hovertrax embodies all the claimed features of the '155 and '802 patents.

Like the claims of the '155 and '802 patents, the Hovertrax has two independently movable foot platforms, wheels, motors, sensors, and a control system that allows for self-balancing. Below is a screenshot of the Hovertrax Kickstarter webpage as it appeared on May 4, 2013:



D.I. 36, Ex. 6 at 4-5.  The Kickstarter webpage also displays a 3D rendering of the Hovertrax:



*Id.* at 3.  As illustrated below, these images, which have been available on the Kickstarter webpage since 2013, show that the Hovertrax prototype contains an inner cover fixed between a top cover and a bottom cover, the inner cover comprising a first inner cover and a second inner cover disposed symmetrically and rotatable relative to each other; a rotating mechanism fixed between the first inner cover and the second inner cover; and two wheels rotatably fixed at two sides of the inner cover, respectively.  In other words, the Hovertrax contains the same elements relied on by the Examiner that supposedly distinguished the '155 patent over prior art.



DEFENDANT GOLABS, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION                    7

Had Mr. Ying disclosed the Hovertrax prototype, the Examiner would have seen that a product publicly displayed more than a year prior to the '155 patent's priority date – June 13, 2014 – contained all the elements of the claims. As a result, the Examiner would have denied the '155 claims as anticipated and/or obvious over the Hovertrax prototype. But for Mr. Ying's failure to disclose the Hovertrax product, the Examiner would not have issued the '155 patent. *See* D.I. 36, Ex. 3 (Order Denying Motion to Dismiss from *Hangchou Chic v. Razor USA LLC*, Civil Action No. 2:16-cv-06359-RGK-AJW (C.D. Cal.)) at 8 (finding that Razor's pleading of inequitable conduct with respect to the failure to disclose the Hovertrax prototype during prosecution of the '155 patent "is sufficient to support an inference of intent to deceive, as well as knowledge and materiality of the omitted information" and that the Hovertrax is "but for material.").

In addition, Mr. Ying also misrepresented the prior art. Although the '278 patent was disclosed during prosecution of the '155 patent, Mr. Ying failed to inform the Examiner that the '278 patent discloses "rotatably coupled" foot placement sections. Instead, Mr. Ying falsely stated that the foot platforms of existing prior art balance vehicles "cannot rotate relatively" and "[t]herefore, the user cannot control the balance vehicle merely through the feet." '155 patent at 1:23-27. Mr. Ying knew that statement was not true because he knew that the '278 patent and Hovertrax, an embodiment of the '278 patent, did exactly that, i.e., allowing relative rotation of the foot platforms to permit user control of the balance vehicle "merely through the feet." This misrepresentation was material because the Examiner focused on the issue of the two platforms being "rotatable relative to each other," and he would not have allowed the '155 patent had Mr. Ying fully and accurately disclosed the scope of the prior art.

Mr. Ying also deliberately failed to inform the USPTO during prosecution of the '155 patent, with the intent to deceive, that Mr. Ying and Hangzhou Chic had withdrawn and abandoned

their corresponding parent Chinese patent application - CN 201410262353 ("the CN '353 application") – after the Chinese Patent Office rejected the claims of the CN '353 application as being obvious over prior art Chinese patent application nos. CN 203158157U and CN 203381739U around April 2015.

Although Mr. Ying disclosed CN 203158157U and CN 203381739U to the USPTO (without providing a translation of each reference), the rejection itself is also material because the CN '353 application is the priority application of the '155 and '802 patents, has the same disclosure, and would not be cumulative to the prior art on which the rejection is made. *McKesson Info. Sols., Inc. v. Bridge Med., Inc.*, 487 F.3d 897, 919 (Fed. Cir. 2007). The Examiner would not have allowed the '155 and '802 patents if he had known of the Chinese Patent Office's claim rejections and the reasons stated therein.

U.S. Patent No. 9,452,802 ("the '802 patent") is a continuation of the '155 patent. The '802 patent is thus a child of the '155 patent and has the same disclosure, prosecution history, and claims the same subject matter as the parent '155 patent. The '802 patent is thus unenforceable under the same grounds of inequitable conduct that apply to the parent '155 patent based on the doctrine of infectious unenforceability. *See Nilsen v. Osram Sylvania Inc.*, 504 F.3d 1223 (Fed. Circ. 2007) (inequitable conduct with respect to one or more patents in a family can infect related applications). Separately, the '802 patent is also unenforceable because Mr. Ying knowingly failed to disclose the Hovertrax prototype during prosecution of the '802 patent because had he done so, the Examiner would have denied the claims as anticipated and/or obvious over that prior art.[1]

---

[1] The claims of the '802 patent include the same limitations that the Examiner relied upon to allow the '155 patent, but which, contrary to Plaintiffs' misrepresentations, are found in the prior art.

DEFENDANT GOLABS, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION          9

The application that led to the issuance of the D'723 patent was filed in the United States on December 15, 2014, claiming priority to a Chinese patent application 201430180556 ("the CN '556 application") that was filed on June 13, 2014. In other words, the CN '556 application discloses the same alleged invention as the D'723 patent. During prosecution of the D'723 patent, Mr. Ying failed to disclose that he was listed as the sole inventor on the CN '556 application. Instead, Mr. Ying affirmatively filed a false declaration, stating that he is "an original *joint* inventor of a claimed invention in the application" with Mr. Shaojun Cao on December 10, 2014. DApp. 33. Mr. Ying's declaration is contradicted by the listed inventorship on the CN '556 application, which describes the same alleged invention. The Patent Examiner would not have allowed the D'723 patent if he had known of this inventorship issue because a patent is invalid if it has improper inventorship. *See, e.g.*, *Trovan, Ltd. v. Sokymat SA, Irori*, 299 F.3d 1292, 1301 (Fed. Cir. 2002) ("A patent is invalid if more or less than the true inventors are named.").

### c. Plaintiffs' Enforcement Tactics and Campaign to Remove GoLabs' Hoverboard Products from Amazon.com

In order to capitalize on the growing hoverboard market, and to improperly attempt to monopolize and control the pricing in this market, Plaintiffs Chic, Uni-Sun, and Unicorn have embarked on an anticompetitive scheme to interfere with their competitors' business relations with customers and prospective customers. Chic, using Uni-Sun as its "exclusive licensee" and Unicorn, as its self-identified "enforcement agent," has asserted its patents without regard to their validity, enforceability, and infringement in an effort to sabotage its competitors', including GoLabs', sales and market share. Beginning from October 2018, Chic and Unicorn have repeatedly contacted Amazon – one of GoLabs' customers and whose platform helps generate nearly half of GoLabs' sales (*see* DApp. 3 (Lawrence Decl. at ¶ 4)) – alleging that GoLabs' hoverboard products infringe Chic's patents in an effort to get GoLabs' hoverboard products

delisted from amazon.com. A summary of some of Chic's and Unicorn's cyber complaints are provided below, which identifies the date of communication with Amazon, the Complaint ID generated by Amazon, the patent(s) asserted by Chic or Unicorn, the accused product(s), and the date when GoLabs received confirmation from Amazon that it cleared the complaint[2]:

| Date | Complaint ID | Patent | Accused Product(s) | Clearance Date |
|------|--------------|--------|--------------------|----------------|
| 10/22/2018 | 5457069551 | 9,376,155 | (1) Hoverfly Eco | 11/27/2018 |
| 1/3/2019 | 5671275681 | D737,723S | (1) Hoverfly Eco | None |
| 1/3/2019 | 5670542371 | D738,256 | (1) ION | 1/8/2019 |
| 1/22/2019 | 5719652231 | D785,112S | (1) ION | 2/21/2019 |
| 2/22/2019 | 5821326431 | D738,256 (2)[3] | (1) SRX | 3/1/2019 |
| 4/19/2019 | 6000563831 | D785,112S (2) | (1) ION | 4/30/2019 |
| 4/23/2019[4] | 5999185211 | 9,376,155 (2) 9,452,802 D737,723 (2) | (1) ION; (2) SRX; (3) Hoverfly XL (no longer sold) | 4/30/2019 for ION only |
| 6/2/2019 | 6125244711 | 9,376,155 (3) 9,452,802 (2) D737,723 (3) | (1) ION; (2) SRX PRO; (3) SRX; (4) Fluxx3, Fluxx Watt, and Fluxx Watt + (all Fluxx hoverboards are not accused in the litigation) | None |

As shown above, and tellingly, Plaintiffs' bad faith conduct is revealed by their (1) continued assertion of patents that have already been cleared by Amazon, and (2) repeated attack on GoLabs with an improper and unjustified trial and error approach of patent assertion until the desired outcome of a delisting is achieved. Plaintiffs' activity with regard to the ION hoverboard illustrates these two points. The ION product line was delisted on January 3, 2019, but GoLabs persuaded Amazon to relist the product on January 8, 2019 after providing information to Amazon to demonstrate that Plaintiffs' infringement assertion was baseless. DApp. 4-5, 11, 13 (Lawrence

---

[2] *See* Lawrence Declaration (DApp. 4-7) for full summary of events.
[3] The number in the parentheses indicates the number of times a patent has been asserted. For example, "D738,256 (2)" is the second time the D'256 patent was asserted by Plaintiffs.
[4] This complaint appears to have been made by Counterclaim-Defendants' counsel in this litigation. The email associated with this notice is wdunwoody@munckwilson.com.

DEFENDANT GOLABS, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION          11

Decl. at ¶ 8, Exs. 2 (Jan. 3, 2019 notice), 3 (Jan. 8, 2019 reinstatement)).  Undeterred, Plaintiffs came back on January 22, 2019, accusing the ION products again of patent infringement.  DApp. 5, 15 (Lawrence Decl. at ¶ 9, Ex. 4 (Jan. 22, 2019 notice)).  This time, however, Plaintiffs asserted a new patent, the D'112 patent.  DApp. 5, 15 (Lawrence Decl. at ¶ 9, Ex. 4 (Jan. 22, 2019 notice)).  After receiving this notice, GoLabs cleared the complaint with Amazon, and got the ION products relisted on amazon.com on February 21, 2019.  DApp. 5, 17 (Lawrence Decl. at ¶ 9, Ex. 5 (Feb. 21, 2019 reinstatement)).  Having failed in its two attempts of permanently delisting the ION hoverboards, Plaintiffs sent a third complaint regarding the ION products on April 19, 2019, accusing the ION products of infringing the *same* D'112S patent that had already been cleared.  DApp. 5-6, 23 (Lawrence Decl. at ¶ 11, Ex. 8 (Apr. 19, 2019 notice)).  While the third complaint was pending, Plaintiffs sent a fourth complaint to Amazon, accusing the ION products of infringing additional patents, all of which existed through the entire course of Chic's attack on the ION product.  DApp. 6, 27 (Lawrence Decl. at ¶ 12, Ex. 10 (Apr. 23, 2019 notice)).  GoLabs submitted non-infringement evidence once again to Amazon, and the ION was relisted on April 30, 2019.  DApp. 5-6, 25 (Lawrence Decl. at ¶¶ 11-12, Ex. 9 (Apr. 30, 2019 reinstatement)).

Plaintiffs' bad faith conduct is also demonstrated by the fact that although they have filed complaints with Amazon regarding other GoLabs products, e.g., the Fluxx products, they choose to ignore those products for litigation.  Instead, they rely on Amazon again to delist GoLabs' products, while shielding their infringement allegations from judicial scrutiny.  And finally, as demonstrated above (*see supra* Section II.b) and further below (*see infra* Sections II.d, IV.a.i), Plaintiffs continue to assert patents that they know are not infringed, invalid, and/or unenforceable.

Plaintiffs filed the instant lawsuit against GoLabs on March 26, 2019.  *See* D.I. 1.  The original Complaint in this case identified only GoLabs as a defendant, and alleged infringement of

the '155 patent, '802 patent, and D'723 patent (a design patent), the same patents asserted by counsel for Plaintiffs in the April 23, 2019 Amazon communication.  The April 23 Amazon communication led to the delisting of some of GoLabs' ION, SRX, and Hoverfly XL products, although the ION products were reinstated on April 30.  DApp. 5-6 (Lawrence Decl. at ¶¶ 11-12). Subsequently, the Plaintiffs filed an Amended Complaint on May 9, 2019 that added Amazon (along with various Walmart entities) as defendants to this lawsuit.  Plaintiffs continued to pressure Amazon to delist GoLabs' hoverboard products, and ultimately, submitted another complaint through Amazon's website on June 2, 2019 that accused a wide swath of GoLabs' hoverboard products – including the ION, SRX, and SRX PRO – of infringing the patents-in-suit.  DApp. 6-7 (Lawrence Decl. at ¶ 13).  Amazon delisted all of GoLabs' hoverboard products from its website (*see id.*), and Plaintiffs filed a motion to dismiss Amazon from this case the next day (*see* D.I. 22).

### d.  Prior Litigation Raised The Same Defenses of Inequitable Conduct and Invalidity That GoLabs Now Alleges

This case is not the first time that Plaintiffs have asserted the patents-in-suit in litigation. Previously, Plaintiff Chic filed lawsuits against Razor USA LLC ("Razor") and Swagway, LLC ("Swagway"), asserting some of the same patents as this litigation:

- *Hangzhou Chic Intelligent Technology Co., LTD, v. Razor USA LLC* (Case Nos. 2:16-cv-06359 and 2:16-cv-03496) in the United States District Court in the Central District of California.  Chic asserted the '155 patent.

- *Hangzhou Chic Intelligent Technology Co., LTD v. Swagway, LLC* (Case No. 3:17-cv-00339) in the United States District Court in the Northern District of Indiana.  Chic asserted the '155 and D'723 patents.

In both prior litigations, the defendants raised inequitable conduct defenses and counterclaims, demonstrating that the '155 and D'723 patents are unenforceable because the patentee failed to disclose material, known prior art during prosecution of the patents.  In the *Razor* litigation, Chic filed a Motion to Dismiss Razor's Inequitable Conduct Claim and Strike Razor's

DEFENDANT GOLABS, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION                    13

Inequitable Conduct Affirmative Defense and Razor filed an Opposition Memorandum. The Honorable R. Gary Klausner issued an opinion denying Chic's motion to dismiss, finding that Razor's "pleading is sufficient to support an inference of intent to deceive, as well as knowledge and materiality of the omitted information. The Answer's inequitable conduct claim is plausible." *See* D.I. 36, Ex. 3 (Order Denying Motion to Dismiss) at 8. A few months after Chic's motion was denied, Chic dismissed the case against Razor based on settlement by the parties.

In the *Swagway* litigation, Swagway also raised similar defenses and counterclaims related to inequitable conduct to with respect to the '155 and D'723 patents. *See* D.I. 36, Ex. 4 at 5-9, 20-25 (Swagway's affirmative defenses and counterclaims). Unlike the *Razor* litigation, Chic did not move to dismiss or strike the inequitable conduct counterclaims and defenses. The case ultimately was dismissed based on settlement by the parties.

With the *Razor* and *Swagway* litigations complete, Chic has now turned its eye to other competitors. In addition to this case against GoLabs, Chic is also pursuing patent infringement claims against Hillo America, Inc. (Case No. 2:19-cv-03028) in the United States District Court in the Central District of California. Chic has asserted the same patents in this case against Hillo – the '155, '802, and D'723 patents. As alleged in Hillo's affirmative defenses and counterclaims, upon information and belief, Chic has controlling monopoly power. Upon further information and belief, Chic controls a substantial amount of products in the 6.5-inch hoverboard category on amazon.com, and is attempting to monopolize at least that category. *See* D.I. 36, Ex. 5 at ¶ 3. In an attempt to control its monopoly power and product pricing, Chic demanded that Hillo grant Plaintiffs immediate and continuous access to Hillo's computer systems and hoverboard pricing and sales data. *See id.* After Hillo refused, the Plaintiffs began bombarding Amazon with requests

to delist Hillo's products due to patent infringement (*see id.*) (similar to its pattern against GoLabs), and ultimately, filed their patent infringement lawsuit against Hillo on April 23, 2019.

## III.   LEGAL STANDARDS

### a.   Standards Governing Preliminary Injunctive Relief

In order to obtain injunctive relief, including a temporary restraining order, a party must establish that (1) there is a substantial likelihood that it will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to defendant; and (4) a preliminary injunction or temporary restraining order will not disserve the public interest. *See Canal Auth. of State of Florida v. Callaway*, 489 F.2d. 567, 572-73 (5th Cir. 1974) (en banc); *Mississippi Power & Light Co. v. United Gas Pipeline Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

### b.   Standards Governing GoLabs' Tortious Interference Counterclaim

The elements of tortious interference with an existing contract under Texas law are (1) an existing contract subject to interference; (2) a willful and intentional act of interference with the contract that (3) proximately caused the party's injury and (4) caused actual damages or loss. *Prudential Ins. Co. of Am. v. Fin. Review Servs.*, *Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). To prevail on this claim, a party must present evidence that the defendant interfered with a specific contract. *Funes v. Villatoro*, 352 S.W.3d 200, 213 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). To establish the element of a willful and intentional act of interference, a party must produce some evidence that the defendant was more than a willing participant and knowingly induced one of the contracting parties to breach its obligations under a contract. *Id.*

Here, GoLabs' tortious interference counterclaim is based on Plaintiffs' communications to Amazon that GoLabs' hoverboard products infringe upon a variety of Plaintiffs' patents.

Allegations of patent infringement are typically protected and preempted by federal patent laws, unless the allegations were made in bad faith. *See, e.g.*, *Energy Heating LLC v. Heat On-The-Fly LLC*, 889 F.3d 1291, 1303 (Fed. Cir. 2018) (state torts claims of tortious interference "are preempted by federal patent laws, unless the claimant can show that the patent holder acted in bad faith.") (citation omitted). "[I]f the patentee knows that the patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent, a clear case of bad faith representations is made out." *Zenith Elecs. Corp. v. Exzec Inc.*, 182 F.3d 1340, 1354 (Fed. Cir. 1999). The "'bad faith' standard has objective and subjective components. The objective component requires a showing that the infringement allegations are 'objectively baseless.'" *800 Adept, Inc. v. Murex Sec., Ltd.*, 539 F.3d 1354, 1370 (Fed. Cir. 2008) (citations omitted). "Infringement allegations are objectively baseless if no reasonable litigant could realistically expect success on the merits." *Id.* (citation and internal quotation marks omitted). "The subjective component relates to a showing that the patentee in enforcing the patent demonstrated subjective bad faith." *Id.*

## IV.   GOLABS IS ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF

### a.   GoLabs is Substantially Likely to Prevail on its Tortious Interference Counterclaim

GoLabs is substantially likely to demonstrate that Plaintiffs tortiously interfered with GoLabs' contract to sell hoverboard products on amazon.com. The first element of a tortious interference claim under Texas law is that there must be an existing contract subject to the interference. *See Prudential*, 29 S.W.3d at 77. As a seller of goods on amazon.com, GoLabs must enter into an agreement with Amazon ("Amazon Agreement") that permits GoLabs to sell its product on Amazon's website. A copy of that agreement is provided at DApp. 50-94. Plaintiffs' repeated communications with Amazon regarding GoLabs' alleged infringement of Chic's patents

DEFENDANT GOLABS, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION          16

interfered with GoLabs' ability to sell its hoverboard products on amazon.com pursuant to the Amazon Agreement.  Indeed, not only did Plaintiffs' communications with Amazon create intermittent periods wherein GoLabs was unable to sell various hoverboard products on amazon.com, but Plaintiffs' most recent communication on June 2, 2019 has resulted in all of GoLabs' hoverboards being delisted on amazon.com.  *See supra* Section II.c.

The remaining elements of tortious interference require that the interference with the contract be willful and intentional, that the interference proximately cause the alleged injury, and that actual damages or loss occur.  *See Prudential*, 29 S.W.3d at 77.  Plaintiffs' conduct satisfies those elements.  Plaintiffs' actions were aimed specifically to remove GoLabs' hoverboard products from amazon.com, thus satisfying the requirement that the interference be willful and intentional.  Moreover, the sole reason that GoLabs' hoverboards were and are delisted from amazon.com is because of Plaintiffs' notices to Amazon of GoLabs' alleged patent infringement, therefore demonstrating proximate cause.  *See generally* DApp. 2-7 (Lawrence Decl.).  Finally, the resulting delistings of GoLabs' products from amazon.com and loss of business stemming from those delistings establish actual injury and harm to GoLabs.  Indeed, as noted herein, 48% of GoLabs' total gross sales come from selling hoverboards on amazon.com.

### i. Federal Patent Law Does Not Preempt GoLabs' Tortious Interference Counterclaim Because Plaintiffs' Communications with Amazon Were Made in Bad Faith

Because Plaintiffs' communications with Amazon were based on allegations of patent infringement, GoLabs must demonstrate that such communications were made in bad faith to overcome protections afforded by the federal patent laws that preempt state tort claims.  *See, e.g.*, *Energy Heating*, 889 F.3d at 1303.  Here, Plaintiffs' actions and communications with Amazon

fall squarely within the bad faith exception because Plaintiffs' assertions of patent infringement were both objectively and subjectively baseless. *See 800 Adept*, 539 F.3d at 1370.

As summarized above, Plaintiffs contacted Amazon numerous times, complaining that GoLabs' hoverboard products infringed several of Chic's patents, including the patents-in-suit. For the following reasons, each assertion made by Chic or Unicorn is objectively baseless because it is abundantly clear that both Chic and Unicorn were aware that the relied upon patents are not infringed, invalid, and/or unenforceable (*Ericsson v. Wi-Lan*, No. 14-cv-21854, 2015 WL 11233112, at *5 (S.D. Fla. Aug. 14, 2015)):

- **D738,256** (Jan. 3, 2019 and Feb. 22, 2019 complaints): The '256 patent was asserted on two separate occasions against the ION and SRX, respectively. Each time, GoLabs was able to overcome Plaintiffs' assertion by providing evidence of non-infringement to Amazon. DApp. 4, 5 (Lawrence Decl. at ¶¶ 8, 10). The ION and SRX were reinstated for sale on amazon.com after an intermittent delisting. *See id.* Plaintiffs did not assert the D'256 patent in the current litigation.

- **D785,112S** (Jan. 22, 2019 and Apr. 19, 2019 complaints): The D'112S patent was asserted on two separate occasions against the ION. Each time, GoLabs was able to overcome Plaintiffs' assertion by providing evidence of non-infringement to Amazon. DApp. 5-6 (Lawrence Decl. at ¶¶ 9, 11). The ION and SRX was reinstated for sale on amazon.com after an intermittent delisting. *See id.* Plaintiff did not assert the D'112S patent in the current litigation.

- **9,376,155** (Oct. 22, 2018, Apr. 23, 2019, and June 2, 2019 complaints): The '155 patent was previously asserted against Razor and Swagway in separate litigations, and in the *Razor* litigation, the Court held that it was "plausible" the '155 patent is

unenforceable due to inequitable conduct. *See* D.I. 36, Ex. 3. Indeed, the first named inventor of the '155 patent, Mr. Jiawei Ying, Chic's Chair and General Manager, breached his duty of candor to the USPTO and committed inequitable conduct by: (1) misrepresenting the prior art; and (2) intentionally withholding material information by (a) not disclosing a prior art "Hovertrax" prototype that anticipates the claims of '155 patent and (b) not disclosing the Chinese Patent Office's rejection of Mr. Ying's corresponding Chinese priority application. Separately, the withheld prior art also invalidates the '155 patent claims. *See, e.g.*, D.I. 36 at 57-59.

- **9,452,802** (Apr. 23, 2019 and June 2, 2019 complaints): The '802 patent is a continuation of the '155 patent (i.e., the '802 patent is a child of the '155 patent), and therefore, the '802 patent includes the same patent disclosure as the '155 patent. Because of this relationship, the prosecution history of the '802 patent includes the prosecution history of the '155 patent. Moreover, the claims of the '155 patent are nearly identical to those in the '802 patent, and both include elements that formed the basis of allowing the '155 patent, notwithstanding Plaintiffs' knowledge that those elements were known in the prior art. *Compare* '155 patent at 9:55-10:15 (claim 1), *with* '802 patent at 10:13-46 (claim 1). Thus, because the '155 and '802 patents share the same prosecution history, having the same disclosures, and have nearly the same claims, the '802 patent is unenforceable for the same reasons above provided for the '155 patent. *See general Nilsen*, 504 F.3d at 1223; *see also, e.g.*, *Exergen Corp. v. Brooklands Inc.*, 290 F. Supp. 3d 113, 126 (D. Mass. 2018) (under the doctrine of "infectious unenforceability," "a finding of inequitable conduct [can

not only] render[] the entire patent unenforceable, [][it] can also render related patents unenforceable") (citing *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1288-89 (Fed. Cir. 2011)). Separately, the withheld prior art also invalidates the '802 patent claims. *See, e.g.*, D.I. 36 at 59-60.

- **D737,723** (Jan. 3, 2019, Apr. 23, 2019, and June 2, 2019 complaints): The D'723 patent is also unenforceable based on inequitable conduct. The application that led to the issuance of the D'723 patent was filed in the United States on December 15, 2014, claiming priority to the CN '556 application, filed on June 13, 2014. In other words, the CN '556 application has the same alleged invention as the D'723 application. Despite this clear relationship, the CN '556 application lists Mr. Jiawei Ying as the sole inventor, while the D'723 lists both Mr. Ying and Mr. Shaojun Cao as co-inventors. During prosecution of the D'723 patent, Mr. Ying failed to disclose that he was listed as the sole inventor on the CN '556 application. Rather, he knowingly submitted a false declaration identifying both himself and Mr. Cao as joint inventors. DApp. 33. The Patent Examiner would not have allowed the D'723 patent if he had known of this inventorship issue because a patent is invalid if it has improper inventorship. *See, e.g.*, *Trovan*, 299 F.3d at 1301.

Plaintiffs' bad faith additionally satisfies the subjective prong because they had knowledge that their patent infringement complaints to Amazon were baseless. Plaintiffs knew that the '155 and '802 patents are unenforceable and invalid because they knowingly failed to disclose and knowingly misrepresented the scope of material prior art during prosecution, as crystallized in Plaintiffs' prior litigations. *See* D.I. 36 at 13-23, 61-74; *see also id.*, Exs. 2, 4. A prior court even concluded that inequitable conduct were "plausible." *See* D.I. 36, Ex. 3. Furthermore, the prior

art that would invalidate at least the '155 patent was known to Plaintiffs, as Plaintiffs knowingly withheld this art from the USPTO during prosecution because they were aware it would anticipate and invalidate the '155 patent.  *See* D.I. 36 at 13-23, 61-74.  Regarding the D'723 patent, the circumstances strongly suggest that Mr. Ying's false declaration regarding joint inventorship was knowingly made.  Even a facial glance at the CN '556 application (the parent application of the D'723 patent) would reveal that Mr. Ying should be the only named inventor for the D'723 patent.

Separate from Plaintiffs' knowledge regarding the baselessness of their infringement accusations, the Plaintiffs' pattern of repeatedly contacting Amazon to delist GoLabs' hoverboard products also supports a finding of bad faith.  What is evident from Plaintiffs' activities is that they are not interested in asserting legitimate patent rights, but rather, are focused solely on removing GoLabs as a seller on amazon.com, using any means necessary.  Indeed, with respect to their communications with Amazon, Plaintiffs have (1) asserted the same patent multiple times against the same product, even though that product had already been cleared of infringement; (2) asserted patents on a trial and error basis until they ultimately find one that results in delisting; (3) accused products despite having no desire to seek recourse in a court of law; and (4) asserted patents that they know are not infringed, invalid, and/or unenforceable.  *See supra* Section II.c.

Plaintiffs have also in bad faith contacted GoLabs' customer Walmart on April 9, 2019, asserting that GoLabs' Hoverfly Eco and ION products infringe the '155 and '802 patents, known by Plaintiffs to be invalid and unenforceable, and requested Walmart to stop selling these products.  Walmart investigated this claim and directed the third party seller on Walmart Marketplace to resolve the claim with Plaintiffs.  Furthermore, Plaintiffs' activities are not commensurate with a proper assertion of patent rights.  In litigation, for example, patent owners would need to satisfy Rule 11 obligations related to a pre-suit investigation and also bring forth

their allegations of patent infringement up front.  *See* Fed. R. Civ. P. 11.  Plaintiffs' tactics would be improper in a court of law, and as such, support a finding of bad faith.

### b.  <u>GoLabs Will Be Irreparably Harmed if Plaintiffs' Conduct is Not Enjoined</u>

GoLabs is a small company that currently employs twenty-four people, including twenty-one that work in the Dallas-Fort Worth Metroplex.  DApp. 3 (Lawrence Decl. at ¶ 3).  In 2018, GoLabs achieved $27.3 million in total gross sales, with about 48% of such sales coming from hoverboards sold on amazon.com alone.  DApp. 3 (Lawrence Decl. at ¶ 4).  For 2019, GoLabs projected gross sales of hoverboards on amazon.com to increase to about $26.6 million, approximately double of its 2018 amazon.com hoverboard sales.  Hoverboard sales on amazon.com are thus crucial to GoLabs' business, and as it currently stands, Amazon's delisting of GoLabs has had a significant impact on GoLabs business.  Without amazon.com hoverboard sales will be unable to make a profit, and has already taken measures to account for that by laying off one executive and has plans to lay off additional employees.  DApp. 3-4 (Lawrence Decl. at ¶ 5).  Such type of harm has been recognized by the Fifth Circuit as irreparable.  *Cf. Family Rehabilitation, Inc. v. Azar*, 886 F.3d 496, 504 (5th Cir. 2018) (recognizing in part that the threat of insolvency contributes to a finding of irreparable injury); *see also Adams EMS, Inc. v. Azar*, Civ. No. H-18-1443, 2018 WL 5264244, at *10-11 (S.D. Tex. Oct. 23, 2018).  Furthermore, in anticipation of increased 2019 hoverboard sales on amazon.com, GoLabs ramped up hoverboard research and development, production, and inventory.  DApp. 3-4 (Lawrence Decl. at ¶ 5).  Unless GoLabs is granted injunctive relief, the time and effort GoLabs spent building out its hoverboard business to meet the amazon.com sales demand will be lost, and show that GoLabs has and will continue to be irreparably harmed.  *See id.*

Also, GoLabs has and will continue to suffer reputational harm and loss of goodwill as its products were intermittently, and now permanently, delisted from amazon.com. Here, the loss of goodwill and reputational harm support a finding of irreparable harm because such damage is immeasurable and cannot be tied to monetary loss. In terms of GoLabs' relationship with Amazon, GoLabs' products are now completely delisted, and the reputational damage and loss of goodwill cannot be measured simply by the revenue GoLabs would have generated by selling on Amazon. Indeed, GoLabs used to be a "#1 Best Seller" of hoverboards on amazon.com, and not only has this rating disappeared as a result of GoLabs' being delisted on amazon.com, it would not reappear should GoLabs' be permitted to sell again on amazon.com. DApp. 7 (Lawrence Decl. at ¶ 14). Additionally, in the eyes of Amazon, because of Plaintiffs' improper assertion, Amazon may believe GoLabs' products present issues. GoLabs is also suffering from loss of goodwill and reputational damage from the context of the users and potential users of its hoverboard products. Consumers will wonder why GoLabs products were removed from amazon.com and may associate GoLabs with a tainted or unreliable product.

### c.   The Balance of Equities Weighs in GoLabs' Favor

The balance of equities tips in favor of granting GoLabs' temporary restraining order and preliminary injunctive relief. In this case, GoLabs is merely seeking to reinstate the status quo by enjoining Plaintiffs from interfering with GoLabs' business based on a wrongful claim of patent infringement and to permit GoLabs to sell on amazon.com once again. Doing so would not curtail any available form of relief in relation to Plaintiffs' allegations of patent infringement, as any relief that Plaintiffs are entitled to in this matter comes in the form of monetary damages. *See* 35 U.S.C. § 284 ("Upon finding for the claimant the court shall award the claimant damages adequate to

compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.").

In contrast, should GoLabs' injunctive relief be denied, it would suffer injury beyond simply monetary losses.  As explained above, GoLabs is losing significant sales revenue each month for being unable to sell its hoverboard products on amazon.com, and the ramifications are devastating.  Even if GoLabs is ultimately victorious in this litigation against Plaintiffs and gets it hoverboard products reinstated on amazon.com, the cost and time of litigating this case will have outstripped GoLabs of any damages it could recover for its lost sales.  The loss of sales from amazon.com will likely force GoLabs to reduce its workface, and if protracted over a long enough period of time, may result in bankrupting GoLabs.

In sum, the balance of equities greatly tips in favor of issuing GoLabs' injunctive relief.  Doing so would not deprive Plaintiffs of any remedies that they may be entitled to in connection with their patent infringement allegations, and would preserve GoLabs' viability as a business.

### d.  The Public Interest Favors Entry of Injunctive Relief

Similar to the balance of equities, public interest factors also favor granting GoLabs' requested relief.  In essence, the Plaintiffs have been able to obtain their own injunctive relief by threatening GoLabs' customer – Amazon – with accusations of patent infringement, resulting in GoLabs' products being delisted from amazon.com.  Such a drastic result would typically require the Plaintiffs to demonstrate in a court of law that they are entitled to injunctive relief, and would require Plaintiffs to prove that the same injunctive relief factors being discuss herein support delisting GoLabs' products.  Plaintiffs' skirting of those requirements should not be permitted, and if allowed, would set a dangerous precedent that would allow companies to hold their competitors hostage through baseless claims of patent infringement.

DEFENDANT GOLABS, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION                    24

## V.    CONCLUSION

For the foregoing reasons, GoLabs respectfully requests that this Court GRANT its Motion for Temporary Restraining Order and set this matter for a hearing on a preliminary injunction within the time required by the rules, and ORDER as follows:

1.  ORDER Plaintiffs, and any parent, subsidiary, or otherwise related entity, including their owners, shareholders, officers, directors, and counsel, to refrain from filing complaints with Amazon, Walmart, and any other GoLab customer that GoLabs' hoverboard products infringe Plaintiffs' patents; and

2.  ORDER Plaintiffs to inform Amazon, Walmart, and any other GoLabs customer that Plaintiffs retract their notices of infringement, and to request when applicable that GoLabs' accused hoverboard products be reinstated for sale, notwithstanding Plaintiffs' previous allegations of infringement.

3.  After the preliminary injunction hearing, to make this temporary restraining order a preliminary injunction for the pendency of this litigation;

4.  Any other relief that GoLabs is entitled to in law or equity.

Dated: June 27, 2019                    Respectfully submitted,

By: */s/ C. Michael Moore*
Tony Pezzano
New York Bar No. 2315547
*Admitted Pro Hac Vice*
Michael Dougherty
New York Bar No. 2079945
*Pro Hac Vice Application Pending*
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020-1104
Telephone: (212) 335-4500
Fax: (212) 335-4501
tony.pezzano@dlapiper.com
michael.dougherty@dlapiper.com

C. Michael Moore
Texas Bar No. 14323600
Marina Stefanova
Texas Bar No. 24093200
DLA Piper LLP (US)
1900 N. Pearl Street, Suite 2200
Dallas, TX 75201
Telephone: (214) 743-4500
Facsimile:  (214) 743-4545
mike.moore@dlapiper.com
marina.stefanova@dlapiper.com

William Chu
Texas Bar No. 04241000
wmchulaw@aol.com
William Knisley
Texas Bar No. 24095728
knisley.wmchulaw@gmail.com
LAW OFFICES OF WILLIAM CHU
4455 LBJ Freeway, Suite. 1008
Dallas Texas, 75244
(Tel) 972-392-9888
(Fax) 972-392-9889

**ATTORNEYS FOR DEFENDANTS GOLABS, INC. d/b/a GOTRAX, WAL-MART INC., WAL-MART STORES TEXAS, LLC, AND WAL-MART.COM USA LLC**

DEFENDANT GOLABS, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION      26