**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ABC Corporation I et al, <br><br> *Plaintiff*, <br> v. <br><br> THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", <br><br> *Defendant*. | **CASE NO.** 1:20-cv-04806 <br><br> **Judge:** Honorable Thomas M. Durkin |

**DEFENDANT GAODESHANG-US' OPPOSITION TO**
**PLAINTIFFS' MOTION FOR ENTRY OF A PRELIMINARY INJUNCTION**

**Table of Contents**

**DEFENDANT GAODESHANG-US' OPPOSITION TO** .......... I
**INTRODUCTION** .......... 1
**FACTUAL BACKGROUND** .......... 2
**PROCEDURAL BACKGROUND** .......... 2
**ARGUMENTS** .......... 3
**I. A PRELIMINARY INJUNCTION AGAINST GAODESHANG-US BASED ON THE ALLEGED INFRINGEMENT BY ACCUSED PRODUCT B MUST BE DENIED** .......... 3
**A. Legal Standards** .......... 3
**B. A Preliminary Injunction is unwarranted because Plaintiffs failed to prove irreparable harm** .......... 4
**C. A Preliminary Injunction is unwarranted because Plaintiffs failed to show a likelihood of success on the merit** .......... 5
**1.** An "Ordinary Observer" in this case is a purchaser who is familiar with hoverboards and the prior art designs. Plaintiffs' definition of an "ordinary observer" must be rejected .......... 5
**2.** In light of the prior art D'906 Patent, an ordinary observer will not find the Accused Product B and the Patents-in-Suit have substantially similar overall "hourglass" shape .......... 6
**3.** An ordinary observer, familiar with the prior art, will not be deceived into thinking that the Accused Product B is the same as the Patents-in-Suit .......... 10
**4.** Under the *Gestalt Principles*, the ornamental features of the Accused Product B would be perceived as more dramatic and obvious, which would significantly impact the overall visual impression of the ordinary observer .......... 13
**II. A PRELIMINARY INJUNCTION BASED ON PLAINTIFFS' EXPERT WITNESS MR. HATCH'S ALLEGATION OF INFRINGEMENT BY "PRODUCT A" AND "PRODUCT C" MUST ALSO BE DENIED** .......... 14
**CONCLUSION** .......... 15

Defendant Gaodeshang-US ("Gaodeshang-US" or "Defendant"), without waiving any Rule 12(b) defenses, respectfully submits this Opposition to Plaintiffs' motion for entry of a preliminary injunction. [Dkt. No. 384].

## Introduction

The hoverboard market is a rapidly growing industry. Both Plaintiffs Hangzhou Chic Intelligent Technology Co. Ltd. ("Chic") and Unicorn Global, Inc ("Unicorn," together "Plaintiffs") and Defendant are in the business of selling hoverboards. Plaintiffs are notoriously known for bringing baseless infringement claims against competitors to gain market monopoly. This is Plaintiffs' another attempt to enforce meritless patent infringement claims against competitors.

In the Amended Schedule "A" [Dkt. No. 227 & 227-3], Plaintiffs allege that ASIN - B08R23QQT8 sold by Defendant Gaodeshang-US has infringed Plaintiffs' design patents. The accused product is also identified by Plaintiffs as "Gyroor B." [Dkt. No. 385, pp. 19-20, Dkt. No. 385, pp. 19-20].

Now, Plaintiffs want to add new allegations, without amending the Complaint or the Defendant Schedule "A," and claim that two other products – identified as "Gyroor A" and "Gyroor C" by Plaintiffs' expert witness Mr. Hatch [Dkt. No. 385, pp. 19-20, Dkt. No. 385, pp. 19-20] were sold by Defendant and infringed Plaintiffs' design patents.

**I.** A Preliminary Injunction against Gaodeshang-US based on the alleged infringement by "Product B" must be denied because **A)** The "Gyroor B" has been on the market since November 9, 2017. Plaintiffs' delay in seeking a remedy until now undercuts the sense of urgency and mitigates against the issuance of a preliminary injunction; **B)** Plaintiffs also failed to show a likelihood of success on the merit.

**II.** Without waiving any Rule 12(b) defenses, a Preliminary Injunction based on Plaintiffs' expert witness Mr. Hatch's allegation of infringement by "Product A" and "Product C" must also be denied because: **A)** Plaintiffs' new allegations are false claims, which are not supported by any evidence. Defendant has never sold "Gyroor A" and "Gyroor C" [Decl. of Liu, ¶¶ 5-6, hereto attached as Exhibit 1]; **B)** Plaintiffs should not be allowed to amend their pleadings by adding new allegations freely.

1

### Factual Background

Evidence provided by Plaintiffs identifies the alleged infringing products ("Accused Product B") as "*Gyroor G2 Hoverboard 8.5" Off Road All Terrain Hoverboards Bluetooth Speaker & LED Lights Two-Wheel Self Balancing Hoverboard with Kart Se...*" [Dkt. No. 227-1, p. 42 of 92]. The Accused Product B has a unique ASIN number B08R23QQT8. [Dkt. No. 227-3, p. 4 of 4]. The Accused Product B is also identified as "Gryoor B" by Plaintiffs. [Dkt. No. 385, p. 20; Dkt. No. 388, p. 19].

Plaintiffs allege that four of Plaintiffs' U.S. Design Patents – D737,723 ("D'723 patent"), D738,256 ("D'256 patent"), D785,112 ("D'112 patent"), D784,195 ("D'195 patent") ("Patents-in-Suit") [Dkt. No. 101, ¶14; Dkt No. 101-13] have been infringed by the Accused Product B. However, Plaintiffs made no allegations against Defendant or the Accused Product B in the Third Amended Complaint. [Dkt. No. 101]. Plaintiffs made no specific allegations aside from stating that "Gaodeshang-US store is related to or affiliated with Gyroor-US" [Dkt. No. 227-1, ¶19], which is unsupported by any evidence.

The "Product B" has been on the market since November 9, 2017. "Date First Available," comments and pictures from verified purchasers are attached hereto as Exhibit 2. The Accused Product B is also sold under ASIN No. B07S4KXRQR. [Ex. 2, p. 3]

Plaintiffs' expert witness Mr. Hatch also alleged that "Gyroor A" and "Gyroor C" ("Accused Product A and Accused Product C") infringed Plaintiffs' Patents-in-Suit. [Dkt. 385, pp. 19-20]. The new allegations are not supported by any evidence. Defendant has never sold "Accused Product A" or "Accused Product C" [Decl. of Liu, Ex. 1. ¶ 5].

### Procedural Background

On November 20, 2020, Plaintiffs filed a motion for preliminary injunction. [Dkt. No. 105].

On November 24, 2020, a preliminary injunction hearing was held. [Dkt. No. 112].

On November 24, 2020, a preliminary injunction order was entered. [Dkt. No. 113].

On December 24, 2020, a modified preliminary injunction order was entered. [Dkt. No. 147].

On February 12, 2021, Gaodeshang-US' financial account and assets were restrained.

Service of process was not effectuated on Defendant until June 25, 2021. [Dkt. No. 310].

| Timeline | |
|---|---|
| Date: | Event: |
| 07/10/2020 | Initial Filing |
| 11/20/2020 | Motion for Preliminary Injunction Filed [Dkt. No. 105] |
| 11/24/2020 | Hearing for Preliminary Injunction held on November 24, 2020 |
| 11/24/2020 | Preliminary Injunction Order entered [Dkt. No. 113] |
| 12/23/2020 | Modified Preliminary Injunction Order entered [Dkt. No. 147] (to eBay) |
| 02/12/2021 | Gaodeshang-US' financial account and assets were restrained |
| 06/25/2021 | Email Service of Process [Dkt. No. 310] |

## Arguments

### I. A Preliminary Injunction against Gaodeshang-US based on the alleged infringement by Accused Product B must be denied

#### A. Legal Standards

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008); *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 311–312 (1982); see *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1323 (Fed. Cir. 2012); *PHG Techs., LLC v. St. John Cos.*, 469 F.3d 1361, 1365 (Fed. Cir. 2006).

"[The] case law and logic both require that a movant cannot be granted a preliminary injunction unless it establishes both of the first two factors, *i.e.,* likelihood of success on the merits and irreparable harm." *PHG Techs.*, 469 F.3d at 136

"The court has noted that a preliminary injunction is 'not to be routinely granted.'" *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1554 (Fed. Cir. 1995) (quoting *Intel Corp. v. ULSI Sys. Technology, Inc.*, 995 F.2d 1566, 1568 (Fed.Cir.1993)). "To establish a likelihood of success on the merits, a patentee must show that it will likely prove infringement of the asserted claims and that its infringement claim will likely withstand the alleged infringer's challenges to patent validity and

3

enforceability. *Metalcraft of Mayville, Inc. v. The Toro Co.*, 848 F.3d 1358, 1364 (Fed. Cir. 2017) (citing *Sciele Pharma, Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1259 (Fed. Cir. 2012)).

"A preliminary injunction should not issue if the accused infringer '**<u>raises a substantial question concerning either infringement or validity</u>**.'" *Id*. (quoting *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001).

Furthermore, in each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (quoting *Amoco Production Co.*, 480 U.S., at 542).

**B. A Preliminary Injunction is unwarranted because Plaintiffs failed to prove irreparable harm**

"Delay in seeking a remedy is an important factor bearing on the need for a preliminary injunction." *High Tech Med*, 49 F.3d at 1557 (Fed. Cir. 1995). Delay on the part of the patentee "undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief." *See Tough Traveler, Ltd. v. Outbound Prod.*, 60 F.3d 964, 968 (2d Cir. 1995).

"Delayed for **<u>a substantial period of time</u>** before seeking a preliminary injunction [which] at least suggests that the *status quo* does not irreparably damage [the patentee]." *Nutrition 21 v. U.S.*, 930 F.2d 867, 872 (Fed. Cir. 1991); *see High Tech Med*, 49 F.3d at 1557 (Patent Case; "17 months is a substantial period of delay that militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief."); *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir.1985) (trademark case; nine-month delay undercuts claim of irreparable harm); *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 903 (7th Cir. 2001) (holding, in a trademark case, that "[d]elay in pursuing a preliminary injunction may raise questions regarding the plaintiff's claim that he or she will face irreparable harm if a preliminary injunction is not entered").

4

**Product details**

Color: Black with K2
Package Dimensions : 39.8 x 12.3 x 10.1 inches; 31.95 Pounds
Date First Available : November 9, 2017
Manufacturer : Gyroor
ASIN : B07S4KXRQR
Customer Reviews: ★★★★½  3,549 ratings

Shown above, the Accused Product B has been on the market since November 9, 2017. [Ex.2, p. 3]. Plaintiffs have competed against the Accused "Product C" in the hoverboard market for almost four years, undoubtfully a substantial period of time. Plaintiffs' delay in seeking a remedy mitigates against the issuance of a preliminary injunction because there is no apparent urgency to the request for injunctive relief.

**C. A Preliminary Injunction is unwarranted because Plaintiffs failed to show a likelihood of success on the merit**

Supported by former USPTO design patent examiner Mr. Gandy's and Professor Rake's declarations [attached hereto as Exhibit 3 and Exhibit 4], the noninfringement is clear and obvious in this case.

1. <u>An "Ordinary Observer" in this case is a purchaser who is familiar with hoverboards and the prior art designs. Plaintiffs' definition of an "ordinary observer" must be rejected</u>

Plaintiffs' expert witness Mr. Hatch provided the wrong ordinary observer standard. Based on Mr. Hatch's declaration, Plaintiffs rely on *Gorham Co. v. White*, 81 U.S. 511, 527 (1872) and claim an ordinary observer here should be "a consumer user or the parent of a user, each having little or no experience purchasing hoverboards." [Dkt. No. 385, pp. 18-19; Dkt. No. 388, p. 8].

But the *Gorham* standard is limited to when "the claimed design and the accused design will be sufficiently distinct," which is not the appropriate standard in this case. *See Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008).

"Where there are many examples of similar prior art designs, as in a case such as *Whitman Saddle*, differences between the claimed and accused designs that might not be noticeable in the abstract can

5

become significant to the **hypothetical ordinary observer who is conversant with the prior art**." *See Egyptian Goddess*, 543 F.3d at 678 (citing *Smith v. Whitman Saddle Co.*, 148 U.S. 674, (1893)); *see also Wallace v. Ideavillage Prods. Corp.*, 640 Fed. Appx. 970, 978 (Fed. Cir, 2016).

Here, cited by both Plaintiffs and Defendant, its undisputed that there many examples of similar prior art designs that are relevant to the Accused Product B. [Decl. of Gandy, Ex. 1, ¶¶1-2; *see also* Dkt. No. 388, pp. 16-18]. The "hypothetical ordinary observer who is conversant with the prior art" standard obviously applies here. A person with "little or no experience" with hoverboards clearly does not satisfy the ordinary observer test in the present case.

Therefore, in light of the many similar prior art designs, the hypothetical ordinary observer in this case should be a purchaser who is familiar with hoverboards and the prior art designs.

2. In light of the prior art D'906 Patent, an ordinary observer will not find the Accused Product B and the Patents-in-Suit have substantially similar overall "hourglass" shape

In the most recent landmark case *Lanard Toys, Ltd. v. Dolgencorp LLC*, 958 F.3d 1337 (Fed. Cir 2020), The Feder Circuit prescribe that:

> [T]he ordinary observer is deemed to view the differences between the patented design and the accused product ***in the context of the prior art***. When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art. And when the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer." *Id.* (quoting *Egyptian Goddess*, 543 F.3d at 676).

Here, because the Patents-in-Suit and the D'906 Patent are very close in their overall hourglass shape, the differences between the Accused Product B and the Patents-in-Suit are important to the ordinary observer. In light of the prior art D'906 Patent, an ordinary observer will not find the Accused Product B and the Patents-in-Suit have substantially similar overall "hourglass" shape.

6

a. <u>The D'906 Patent constitutes Prior Art to all Patents-in-Suit</u>

Under 35 U.S.C. §102(a)(2), prior art includes "a patent issued under section 151, or in an application for patent published or deemed published under section 122(b), in which the patent or application, as the case may be, names another inventor and was effectively filed before the effective filing date of the claimed invention."

| Patents | Application Filing Date | Effective Filing Date |
|---|---|---|
| **Prior Aart - D'906 Patent** | **03/12/2013** | **03/12/2013** |
| Patents-in-Suit (D'723 Patent) | 12/15/2014 | 12/15/2014 |
| Patents-in-Suit (D'256 Patent) | 12/15/2014 | 12/15/2014 |
| Patents-in-Suit (D'195 Patent) | 02/29/2016 | 02/29/2016 |
| Patents-in-Suit (D'112 Patent) | 02/29/2016 | 02/29/2016 |

Here, the application of the D'906 Patent was effectively filed before the effective filing date of the Patents-in-Suit. Therefore, D'906 Patent is prior art to all Patents-in-Suit.

b. <u>Plaintiffs failed to compare Accused Product, Patents-in-Suit and the prior art D'906 patent</u>

Plaintiffs claim that "Plaintiffs' commercial success is due in part to its revolutionary patented designs that feature an hourglass shape with a central support platform." [Dkt. No. 385, p. 20].

Without properly comparing the D'906 Patent with the Patents-in-Suit, Mr. Hatch further claims "none of the prior art create the impression of any integrated "hourglass" body with a relatively flat surface across the top of the main body." [Dkt. No. 388, pp.16-18]. This statement is plainly incorrect.

This "hourglass" peripheral shape was first disclosed and claimed in the prior art — the U.S. Design Patent D739,906 Patent ("D'906 Patent" attached hereto as Exhibit 5). As shown below in Table 1, page 7, the Patents-in-Suit all have an hourglass shape with smooth curves similar to the D'906 patent. [Decl. of Rake, Ex 4, ¶¶53-56, 92, 98; Decl. of Gandy, Ex 3, ¶¶47, 53, 59, 64]. In contrast, the Accused Product B has a more "angular body shape with sharp edges." *Id*.

The "revolutionary design" was already claimed in the prior art D'906 Patent. Plaintiffs did not invent the hourglass shape of hoverboards. Therefore, in light of the D'906 Patent, an ordinary observer will find the Accused Product B has a substantially different overall shape from the Patents-in-Suit.

7



| Table 1 — Comparison of Overall Hourglass Shape | |
|---|---|
| Patents-in-Suit D'723 Patent | |
| Patents-in-Suit D'256 Patent | |
| Patents-in-Suit D'195 Patent | |
| Patents-in-Suit D'112 Patent | |
| **Prior Aart** **D'906 Patent** | |
| Accused Product B | |
| Substantially Similar Patent D'856 Patent | |

8



Table 2 compares the front view of the prior art D'906 Patent, the Patents-in-Suit and the Accused Product B. Both the prior art D'906 Patent and the Patents-in-Suit have "a slightly raised convex contour, while the corresponding center portion of the top surface of the design of Gyroor "B" hoverboard is substantially flat and slightly recessed down below the opposing outer foot surfaces." [Decl. of Gandy, Ex 3, ¶¶ 42, 47, 53, 64].

9

Therefore, in light of the D'906 Patent, an ordinary observer will find the Accused Product B has a substantially different overall shape from the Patents-in-Suit.

3. <u>An ordinary observer, familiar with the prior art, will not be deceived into thinking that the Accused Product B is the same as the Patents-in-Suit</u>

   a. *<u>Plaintiffs failed to compare the ornamental features and failed to analyze how they impact the overall design</u>*

Under the "ordinary observer" test, a court must consider the ornamental features [of each element] and analyze how they impact the overall design." *Lanard*, 958 F.3d at 1343-44 (citing *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, at 1295 (Fed. Cir. 2010)).

"While the 'ordinary observer' test is not an element-by-element comparison," it also does not ignore the reality that designs can, and often do, have both functional and ornamental aspects. *Id.* (citing *Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1372 (Fed. Cir. 2006)). Analyzing the ornamental features is necessary to determine how the ornamental differences in each element would impact the ordinary observer's perception of the overall designs. *Id.*

Mr. Hatch's declaration failed to address the following features that contribute to the overall shape and appearance of the Accused Products and the Patents-in-Suit: a) The shape and appearance of the foot pads on the top surface; b) The contour of the narrow central portion of the top surface, which is not flat, contrary to Mr. Hatch's statement; c) The specific shape and appearance of the "arched covers;" d) The specific shape and appearance of lights and other ornamental features; and e) Features on the bottom surface which will be described below. [Gandy, Ex 3, ¶¶21, 22, Decl. of Rake, Ex 4, ¶¶57-61].

   b. *<u>None of the Patent-in-Suit claimed any ornamental features of the Accused Product B</u>*

The ornamental features of each element in the Accused Product B are based on the claimed design of the U.S. D808,856 Patent ("D'856 Patent," attached hereto as Exhibit 6).

An ordinary observer would consider the Accused Product B to be substantially similar to the D'856 Patent. [Decl. of Rake, Ex 4, ¶188]. In contrast, no ordinary observer would consider Accused

Product B is substantially similar to the Patents-in-Suit because none of the Patent-in-Suit claimed any ornamental features of the Accused Product B.

***First***, none of the Patents-in-Suit claimed foot pad design of the Accused Product B. The shape and design of the foot pads of the Accused Product B are plainly different from the Patents-in-Suit. [Decl. of Gandy, Ex 3, ¶¶71, 77; Decl. of Rake, Ex 4, ¶¶117,125].

Here, D'723 and D'256 Patents both claim the design of straight divergent lines on the foot pads. Neither D'195 nor D'112 claims any designs of the foot pads.

The D'856 Patent claimed unique patterns on the foot pads, which are plainly dissimilar from the designs of the Patents-in-Suit. The Accused Product B has identical foot pad design as D'856 Patent.



| Patents-in-Suit D'723 Patent | Patents-in-Suit D'256 Patent | Patents-in-Suit D'195 Patent |
| Patents-in-Suit D'112 Patent | Substantially Similar Patent D'856 Patent | Accused Product B |

***Second***, none of the Patents-in-Suit claimed the wheel covers design of the Accused Product B. The wheel covers of the Accused Product B are plainly different from the Patents-in-Suit.

The Patents-in-Suit all have semi-circular wheel covers and extend over and cover the entire wheel. None of the Patent-in-Suit claimed the wheel covers design of the Accused Product B.

The shape of the wheel covers in the Patnes-in-Suit and the prior art D'906 patent are both semi-circular, "while the wheel covers on the design of Gyroor 'B' hoverboard have opposing diagonally

straight side edges a substantially flat top edge which curves outwardly. [Decl. of Gandy, Ex 3, ¶¶48, 60, 65]. Therefore, "even to the most casual observer, the differences are significant." [Decl. of Rake, Ex 4, ¶¶122, 129, 135, 141].



**Third**, none of the Patents-in-Suit claimed the light design of the Accused Product B. The position, shape, and size of the lights of the Accused Product B are also plainly different from the Patents-in-Suit. None of the Patent-in-Suit claimed the light design of the Accused Product B.

Highlighted, the Patents-in-Suit all have different size and shape and are positioned differently on the front panel of the hoverboard. [Decl. of Rake, Ex 4, ¶¶ 93, 99, 105, 111].

The light design of the Accused Product B features thin narrow strips that curves up to the fenders, which is identical to the claimed design in the D'856 Patent.

12



**4.** <u>Under the *Gestalt Principles*, the ornamental features of the Accused Product B would be perceived as more dramatic and obvious, which would significantly impact the overall visual impression of the ordinary observer</u>

"The *Gestalt principles* of visual perception teaches us that the eye is attracted to areas of high contrast." [Decl. of Rake, Ex. 4, ¶25]. Under the *Figure-Ground principles*, "some shapes or contours take a prominent role (figure) while others recede into the background (ground)." *Id*. at 26.

13

Certain designs would be perceived as more dramatic and obvious. Here, the size, shape, and character of the lights, size and shape of the wheel covers, and the patterns of the foot pads would significantly impact the ordinary observer's visual perception of the overall designs. [Decl. of Rake, Ex. 4, ¶¶93, 99, 105, 111, 175-178]. As a result, the differences between the Patents-in-Suit and accused design take on greater significance to an ordinary observer.

Consequently, an ordinary observer, taking into account the prior art, would not believe the accused design to be the same as the patented design.

## II. A Preliminary Injunction based on Plaintiffs' expert witness Mr. Hatch's allegation of infringement by "Product A" and "Product C" must also be denied

*First*, Plaintiffs should not be allowed to amend their pleading by adding new allegations freely. No allegation against Gaodeshang-US for selling the Accused Product A or Accused Product C was raised in Plaintiffs' Complaint, Amended Complaint, or Amended Defendant Schedule "A."

Plaintiffs amended their complaint three times. [Dkt. No. 16, 37, 101]. In addition, Plaintiffs amended the Schedule "A" one more time on May 6, 2021 [Dkt. No. 227 & 227-3]. Plaintiffs had multiple opportunities to raise additional infringement allegations against Gaodeshang-US, but failed to do so.

Instead of requesting "the opposing party's written consent or the court's leave" to amend their Complaint as prescribed under the Federal Rule of Civil Procedure 15(a), Plaintiffs improperly included new allegations that were never raised before.

Plaintiffs should not be allowed to amend their pleading by adding new allegations freely. Consequently, Plaintiffs' request for preliminary injunction must be denied.

*Second*, Plaintiffs' new allegations are simply false claims that are unsupported by any evidence. Supported by Mr. Liu's declaration, Gaodeshang-US has never sold the Accused Product A or Accused Product C. Furthermore, Plaintiffs provided no evidence to support their false claims that Gaodeshang-US actually sold Accused Product A or Accused Product C.

Consequently, Plaintiffs' request for preliminary injunction must be denied.

**Conclusion**

For the foregoing reasons, Defendant respectfully requests that this Court deny Plaintiffs' motion for entry of a preliminary injunction.

| | |
|---|---|
| | Respectfully Submitted: |
| Date: 09/07/2021 | /s/ Tianyu Ju |
| | Tianyu Ju |
| | Iris.Ju@glacier.law |
| | He Cheng |
| | Robin.Cheng@glacier.law |
| | Tao Liu |
| | Tao.Liu@glacier.law |
| | Glacier Law PLLC |
| | 200 Park Avenue, Suite1703 |
| | New York, NY 10166 |
| | www.glacier.law |
| | Tel: +1 (332) 208-8882 |
| | Fax: +1 (312) 801-4587 |
| | ***Attorneys for Defendant*** |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this September 7, 2021, I electronically filed the foregoing file with the Clerk of Court using the CM/ECF system, along with the attached Exhibits, and service was perfected on all counsel of record and interested parties through this system, which will deliver a true and correct copy of the foregoing documents via CM/ECF.

Date: 09/07/2021                                                        /s/ Tianyu Ju
                                                                                    Tianyu Ju