**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ABC CORPORATION I, | ) | |
| ABC CORPORATION II, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 20-cv-4806 |
| THE PARTNERSHIPS AND | ) | |
| UNINCORPORATED ASSOCIATIONS | ) | |
| IDENTIFIED ON SCHEDULE A, | ) | Judge Thomas M. Durkin |
| | ) | |
| Defendants. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |

<u>**REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**</u>

## TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................... iii

I.      Introduction ....................................................................................................... 1

II.     Irreparable Harm, the Equities, and Public Interest Favor an Injunction .......................... 3

      A.      Defendants Failed to Rebut Uncontroverted Evidence of Irreparable Harm .......... 3

            1.      None of the Defendants Offered any Evidence to Rebut the Bero Declaration and the Opinions Offered Therein ............................................ 3

            2.      Fengchi Concedes Irreparable Harm to Plaintiffs ...................................... 4

            3.      The Gaodeshang, Jiangyou and Gyroor delay arguments lack evidence, other than an uncorroborated webpage allegedly showing the day when an ASIN was created .......................................................................... 4

            4.      Urbanmax's Attorney Argument Regarding The Runchenyun Litigation Fails to Overcome Plaintiffs' Substantial Evidentiary Showing ............... 5

      B.      The Balance of Equities and Public Interest Favor a Preliminary Injunction ......... 6

            1.      Fengchi, Gaodeshang, Jiangyou, and Urbanmax Concede that the Balance of the Equities and Public Interest Favor an Injunction ............................. 6

            2.      Gyroor Offers No Evidence to Demonstrate that the Equities and Public Interest Disfavor a Preliminary Injunction ................................. 6

III.    Plaintiffs Have Established A Likelihood Of Success On Their Infringement Claims ....... 7

      A.      Gyroor Defendants Have Improperly Analyzed Infringement through the Lens of a Designed Skilled in the Art, Rather than an Ordinary Observer .......................... 8

      B.      Defendants Do Not Contest that Plaintiffs Have Established That The Infringing Products Are Not Plainly Dissimilar .................................................................... 10

      C.      Gyroor Defendants Fail To Demonstrate That The Infringing Products Are Not Substantially Dissimilar From The Patents-in-Suit .............................................. 10

            1.      Gyroor Defendants Erroneously Depart from *Egyptian Goddess* By Relying Upon Third-Party, Non-Prior-Art Patents ................................... 10

            2.      The 'D906 Patent Is No More Relevant Than Other Prior Art Already Cited In The Patents-In-Suit ...................................................................... 11

            3.      An Ordinary Observer, Familiar With The 'D906 Patent, Would Be Deceived Into Believing The Infringing products Are Substantially The Same As The Patented Designs ............................................................... 13

i

IV.    Defendants' Expert Declarations Are Unreliable Under FRE 702 .................................... 40

        A.    The Reliability And Credibility of the Rake Declarations Is Undermined By His Errors, Despite His Experience ............................................................................ 40

        B.    The Reliability of Gandy Declarations Is Undermined By His Errors, Despite His Experience .......................................................................................................... 42

CONCLUSION ............................................................................................................................ 42

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ClearOne Communs., Inc. v. Bowers*,
    651 F.3d 1200 (10th Cir. 2011) ............................................................................4

*Contessa Food Prods., Inc. v. Conagra, Inc.*,
    282 F.3d 1370 (Fed. Cir. 2002)............................................................................14

*Crocs Inc., v. ITC.*,
    598 F.3d 1294 (Fed. Cir. 2010)......................................................................14, 16

*Dobson v. Dornan*,
    118 U.S. 10 (1886)..............................................................................................14

*Durling v. Spectrum Furniture Co., Inc.*,
    101 F.3d 100 (Fed. Cir. 1996)...............................................................................9

*Gorham Co. v. White*,
    81 U.S. 511 (1871)................................................................................................9

*High Point Design LLC v. Buyer Direct, Inc.*,
    730 F.3d 1301 (Fed. Cir. 2013).............................................................................9

*Lanard Toys, Ltd. v. Dolgencorp LLC*,
    958 F.3d 1337 (Fed. Cir. 2020)...........................................................................11

*SEC v. Homa*,
    514 F.3d 661 (7th Cir. 2008) ................................................................................4

**Statutes**

35 U.S.C. § 282...........................................................................................................8

**Other Authorities**

*Egyptian Goddess. Egyptian Goddess* ..........................................................8, 11, 14

FRE 702 ...........................................................................................2, 44, 45, 46

Manual of Patent Examining Procedure § 1503.01 (8th ed. 2006)..............................14

Motion for an Order to Show Cause. Dkt. 327 ..............................................................5

of the Motion for An Order to Show Cause. Dkt. 327....................................................7

Plaintiffs Hangzhou Chic Intelligent Technology Co. ("Chic") and Unicorn Global, Inc. ("Unicorn") (collectively, "Plaintiffs") response in Support of Motion for Preliminary Injunction states as follows by addressing the five opposition briefs filed by: Fengchi-US (Dkt. 413) ("Fengchi"); Urbanmax, HGSM, and Gyroshoes (Dkt. 414) (collectively, "Urbanmax"); Gyroor (Dkt. 419) ("Gyroor"); Jiangyou-US (Dkt. 420) ("Jiangyou"); and Gaodeshang-US (Dkt. 421) ("Gaodeshang"), collectively Gyroor Defendants:

## I.  Introduction

The Gyroor Defendants have failed to raise any substantive issues to prevent this Court from entering a preliminary injunction to stop this virtual game of Whack-a-Mole facing the Plaintiffs.  Many of the positions in Plaintiffs' motion remain uncontested.  And for those arguments that the Gyroor Defendants do raise, those arguments are either unsupported by any evidence, premised upon unauthenticated or unreliable evidence, or fail to follow *Egyptian Goddess*.

Regarding irreparable harm the Gyroor Defendants surprisingly provided no evidence to rebut Plaintiffs' economic expert, Richard Bero.  In other words, Plaintiffs substantial showing of irreparable harm is uncontroverted.  And for the delay-based argument that the Gyroor Defendants do raise, its unauthenticated evidence actually incriminates a third-party named "Zhipeng-US", who has apparently been selling the infringing products for the Gyroor Defendants.  Plus, the Gyroor Defendants produced no evidence to establish that Plaintiffs were even aware of the Defendants' infringing acts when their infringement purportedly began, so as to show some delay.

Regarding the balance of equities and the public interest, none of the Gyroor Defendants even contest Plaintiffs' showing, except Gyroor.  Gyroor does raise some arguments on these points, but fails to provide any evidence to support its hardship claims or address any of Plaintiffs' arguments raised in its motion.

Regarding the likelihood of success on the merits, the Gyroor Defendants' noninfringement positions either ignore or depart from *Egyptian Goddess*. To begin, the Gyroor Defendants erroneously attempt to elevate the acuteness attributable to the ordinary observer (*i.e.*, an ordinary purchaser of hoverboards) to that of an ordinary designer, without offering any evidence for doing so. That attempted elevation is not permitted under the law and Plaintiffs' design patent expert Paul Hatch's opinion on this point remains unrebutted.

Next, none of the Gyroor Defendants even address the first step of *Egyptian Goddess*—whether the infringing products and the Patents-In-Suit are plainly dissimilar. Again, Mr. Hatch's opinion on this point remains unrebutted. As for the second step of *Egyptian Goddess*—whether the accused designs are substantially the same as the patented designs, in view of the prior art—the Gyroor Defendants raise puzzling arguments.

First, the Gyroor Defendants depart from *Egyptian Goddess* by oddly relying upon patents that are not prior art to the Patents-in-Suit. These patents are wholly irrelevant to the infringement question, if not confusing. Second, the Gyroor Defendants introduce the 'D906 patent as somehow cabining the claim scope of the Patents-in-Suit, but that patent is no more relevant than other prior art references, meaning it teaches nothing more than those other references.

Third, the Gyroor Defendants offer opinions from purported design patent experts, Lance Rake and Jim Gandy. But despite their collective experience and qualifications, neither expert offers reliable opinions that would satisfy FRE 702. For example, neither expert construed the Patents-in-Suit, applied the appropriate acuteness to the ordinary observer standard, or properly followed the two-step infringement inquiry under *Egyptian Goddess*. Surprisingly, neither expert appears to have physically inspected the infringing products, instead relying only on two-dimensional photos.

Taken together, the Gyroor Defendants have failed to rebut Plaintiffs' substantial showing of irreparable harm, the balance of the equities, the public interest, or likelihood of success on the merits of design patent infringement. Therefore, this Court should enter a preliminary injunction.

## II.    Irreparable Harm, the Equities, and Public Interest Favor an Injunction

### A.    Defendants Failed to Rebut Uncontroverted Evidence of Irreparable Harm

#### 1.    None of the Defendants Offered any Evidence to Rebut the Bero Declaration and the Opinions Offered Therein

When Plaintiffs moved for a preliminary injunction, they presented substantial evidence that absent injunctive relief, they would have no adequate remedy at law to compensate for the Gyroor Defendants' infringement, and that they have suffered and will continue to suffer irreparable harm. Dkt. 385, p. 31-34. Through economic expert Richard Bero, Plaintiffs presented evidence of their loss of exclusive patent rights, loss of market share, immeasurable damage to reputation and goodwill as the creator and authorized provider of Plaintiffs' Products. Dkt. 385, p. 31-32; Dkt. 20, ¶¶ 16-18. And Plaintiffs established a casual nexus between the Gyroor Defendants' infringement and the irreparable harm Plaintiffs are suffering. Dkt. 385, p. 32-33 and Exhibit B.

Yet, none of the Defendants offered any evidence to rebut Plaintiffs' showing of irreparable harm or its reliance upon the opinions offered by Mr. Bero. In other words, Plaintiffs' evidentiary showing of irreparable harm is unrebutted. Strangely, Gyroor, one of the Gyroor Defendants, argues that the Ying fact declaration and Bero opinion declaration offer only conclusory statements and are unsupported by any evidence. Dkt. 419, pp. 7-8. Setting aside that Gyroor fails to explain which statements are purportedly conclusory, a simple review of the Ying declaration reveals sufficiently declared facts upon which Mr. Bero relies regarding Plaintiffs' products and related licenses. Dkt. 106-3, Exhibit C to Bero Declaration. For his part, Mr. Bero's detailed 31-page

3

declaration with 180 footnotes is well-supported by ample evidence. Dkt. 386. And any issues with Mr. Bero's opinions drawn from any "incomplete facts" at this pre-discovery stage of the case will be cured when Gyroor finally begins producing discovery in earnest to fill in any gaps addressing the harms caused by its infringement. For example, discovery regarding Gyroor's sales activities, decision to sell the infringing products, its product distribution network, and its relationship with the other defendants would be helpful in assessing harm. Therefore, Plaintiffs have properly established irreparable harm at this stage of the case.

### 2.    Fengchi Concedes Irreparable Harm to Plaintiffs

Fengchi offers no arguments to rebut Plaintiffs' showing of irreparable harm. Dkt. 413. Therefore, Fengchi has conceded that Plaintiffs properly established irreparable harm.

### 3.    The Gaodeshang, Jiangyou [1] and Gyroor delay arguments lack evidence, other than an uncorroborated webpage allegedly showing the day when an ASIN was created

Gaodeshang, Jiangyou and Gyroor raise a delay-based argument that because at least one or more infringing products were purportedly offered for sale as early as 2017, and Plaintiff waited until 2020 to bring this action, a "substantial period of time passed" to cast doubt on the urgency for injunctive relief. Dkts. 419, p. 6-7, 17-18; 420, p. 5-6; and 421, p. 4-5. This argument fails for several reasons.

First, these defendants offer no evidence to authenticate that these purported sales offers are actually attributable to each defendant. All that is provided is a printed copy of an Amazon webpage indicating when an ASIN was created. Dkts. 419-2 (Exhibit 2); 420-2 (Exhibit 2); and

---

[1] Jiangyou raises a personal jurisdiction argument that does not fit within the standard elements of the preliminary injunction analysis. *See* Dkt. 420, pp. 3–4. The issue of personal jurisdiction over Jiangyou was separately briefed. *See* Dkt. 363, 412, 425. Regardless of whether the Court has personal jurisdiction over Jiangyou, Jiangyou is not legally permitted to violate any preliminary injunction entered in this case, because it has notice of such orders and is acting in concert and participation with other Gyroor Defendants (Dkt. 227-1, ¶ 6). *See SEC v. Homa*, 514 F.3d 661, 673 (7th Cir. 2008); *ClearOne Comm'ns., Inc. v. Bowers*, 651 F.3d 1200, 1214–16 (10th Cir. 2011).

421-2 (Exhibit 2). But a cursory review of these print outs raises serious questions. For the Gyroor and Gaodeshang print outs, the seller is another company called "Zhipeng-US", not either of these defendants. Dkts. 419-2 (Exhibit 2) at p. 1; and 421-2 (Exhibit 2) at p. 1. And the Jiangyou print out does not reveal the identity of the seller whatsoever. Dkt. 420-2 (Exhibit 2). Collectively, none of these prints outs demonstrate that these defendants were somehow offering the infringing products as early as 2017 and that Plaintiffs delayed in bring this action against each of them. Interestingly, Zhipeng-US was created in 2021 and sells the infringing products on Amazon, as identified in Plaintiffs' pending Motion for an Order to Show Cause. Dkt. 327. Zhipeng is simply another Whack-A-Mole participant in this complicated web of infringing parties selling hoverboard products manufactured by Gyroor. It is somewhat odd for the Gyroor Defendants to rely on their own infringement and their violation of the existing preliminary injunction to argue against entry of a new preliminary injunction.

Second, these defendants offer no evidence that Plaintiffs were actually aware of these sales and chose to delay this lawsuit. Third, even if these offers were genuine and Plaintiffs were somehow aware of them, these defendants fail to explain how those facts would overcome the substantial evidentiary showing of irreparable harm—a showing these defendants chose not to rebut. (Dkt. 385, p. 31-34).

        4.      **Urbanmax's Attorney Argument Regarding The Runchenyun Litigation Fails to Overcome Plaintiffs' Substantial Evidentiary Showing**

Instead of offering any evidence to rebut Plaintiffs' substantial showing of irreparable harm, Urbanmax raises a distraction argument. Namely, Urbanmax points to a vacated preliminary injunction against third-party Runchenyun in a separate case before Judge Seeger as somehow indicia that "Plaintiffs conceded that Infringing products sold by other sellers does not impose irreparable harm." Dkt. 414, p. 5. Not so. That injunction was vacated due to a lack of email

5

service upon Runchenyun, even though Runchenyun's counsel was properly served and Plaintiffs made a sufficient showing to warrant injunctive relief, including irreparable harm. Dkt. 103, 1:20-cv-5905. At no point in that case have Plaintiffs ever conceded irreparable harm, and Urbanmax identifies no evidence to the contrary. Urbanmax should appreciate that Plaintiffs may move for further injunctive relief against Runchenyun in that case at any time.

B.     **The Balance of Equities and Public Interest Favor a Preliminary Injunction**

1.     **Fengchi, Gaodeshang, Jiangyou, and Urbanmax Concede that the Balance of the Equities and Public Interest Favor an Injunction**

In their respective opposition briefs Fengchi, Gaodeshang, Jiangyou-US, and Urbanmax failed to contest Plaintiffs' showing that the balance of the equities and the public interest favor a preliminary injunction. *See* Dkt. 413, 414, 420, 421. Because these defendants are silent on these issues, each of them have conceded that Plaintiffs made a sufficient showing on the equities and public interest to warrant an injunction.

2.     **Gyroor Offers No Evidence to Demonstrate that the Equities and Public Interest Disfavor a Preliminary Injunction**

Instead of addressing the arguments raised in Plaintiffs' motion, Gyroor argues that the balance of equities favors them, not Plaintiffs. Dkt. 419, 30-31. First, Gyroor claims that an "injunction against Defendant's website would effectively shut down Defendants' business and prevent Defendant from selling products that are unrelated to this action." Dkt. 419, p. 30. Such an injunction would be "nothing less than a punishment." *Id*. Yet, Gyroor offers no evidence whatsoever to support this dire claim.[2] Plus, Gyroor admits that its sells a variety of other products, including electronic bikes and scooters. Dkt. 419 at p. 3. And it fails to address Plaintiffs' showing

---

[2] Another Gyroor Defendant, Gyroor-US, also presented a similar argument in its purported emergency motion on August 9, 2021. Dkt. 353. Setting aside the obvious name affiliation between Gyroor and Gyroor-US, after the briefing, this Court rejected the argument and denied the motion. Dkt. 380.

that any such harm is self-inflicted due to Gyroor's infringement (Dkt. 385, p. 34-35) or Plaintiffs' evidence of Gyroor's ongoing infringing activities that are the subject of the Motion for An Order to Show Cause.  Dkt. 327.[3]

Second, Gyroor argues that the public interest does not favor an injunction because an "injunction will thwart [] competition and runs counter to the public interest."  Dkt. 419, p. 30.  Again, Gyroor offers no evidence.  And it fails to address Plaintiffs' arguments that the public has an interest in enforcing valid patents against infringers and providing incentives to inventors and innovators to continue developing new products and inventions.  Dkt. 385, p. 35-36.

Third, Gyroor argues that injunctive relief should only be awarded upon Plaintiffs showing that they are entitled to such relief, including demonstrating a likelihood of success.  (Dkt. 419, p. 30-31).  Although the Plaintiffs do not disagree on that general proposition, as explained in Section II, Plaintiffs made a strong evidentiary showing of infringement in its motion (Dkt. 385, pp. 18-31) and Gyroor fails to follow *Egyptian Goddess* or offer any helpful and credible opinion testimony to properly rebut the opinions of Mr. Hatch.

### III. Plaintiffs Have Established A Likelihood Of Success On Their Infringement Claims

Because the Plaintiffs have established a likelihood of success on infringement, the burden shifts to the Gyroor Defendants to raise a substantial question of invalidity or infringement.  *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F3d 665, 678 (Fed. Cir. 2008) ("if the accused infringer elects to rely on the comparison prior art as part of its defense against the claim of infringement, the burden of production of that prior art is on the accused infringer").

---

[3] Gyroor argues that Plaintiffs delayed bring this lawsuit and it must have known about the Infringing products A, B, and C.  Dkt. 419, p. 31.  As explained in Section II(A)(1) above, Gyroor offers no evidence to corroborate any alleged offers for sale attributable to Gyroor or Plaintiffs' knowledge about those products.

The Patents-in-Suit are presumed valid under 35 U.S.C. § 282, and none of the Gyroor Defendants contest that presumption. Therefore, Defendants have not raised any questions of invalidity. And, as explained below, Defendants have provided insufficient evidence to rebut Plaintiffs' evidence establishing a likelihood of success on the merits of their infringement claims, meaning that they have also failed to raise a substantial question of infringement on the merits.

### A.    Gyroor Defendants Have Improperly Analyzed Infringement through the Lens of a Designed Skilled in the Art, Rather than an Ordinary Observer

In its motion Plaintiffs submitted that an ordinary observer "is the typical purchaser of hoverboards." Dkts. 385, pp. 18-19; 388, p. 7. "[T]hat person would be a consumer user or the parent of a user, each having little or no experience purchasing hoverboards." Dkts. 385, p. 19; 388, p. 8. "The ordinary observer would encounter hoverboard products through online stores, television and social media, and then purchase them using online stores (*e.g.*, Amazon.com) without the ability to view or discern minor differences or from 'brick and mortar' stores (*e.g.*, Best Buy or Walmart). *Id*. Such an ordinary observer would view various hoverboard products, including those embodying prior art, while browsing through online images of hoverboards. Hatch's Gandy Rebuttal, 8.

For their part, the Gyroor Defendants agree that the ordinary observer is a hoverboard consumer. Dkt. 385, p. 18-19; 419, p. 9. And the Parties agree that the ordinary observer may sometimes appreciate the prior art, Dkt. 385, p. 18-19; Dkt. 419, p. 9—for example, in circumstances where the claimed and accused designs do not appear to be "plainly dissimilar", *i.e.*, the second step under *Egyptian Goddess*. *Egyptian Goddess*, 543 F.3d at 678. But the Parties differ on the level of attention or acuteness an ordinary observer would exhibit when assessing infringement. In other words, how *observant* is the ordinary purchaser of hoverboard products?

Although the Gyroor Defendants suggest that the ordinary observer would be "conversant with the prior art", *e.g.*, Dkt. 419, p. 9, its application of that standard in its infringement analysis suggests that the level of attention or care is akin to a hoverboard designer of ordinary skill.[4] Hatch's Gandy Rebuttal, 9; Hatch's Rake Rebuttal, 13. But that is not the proper application of the ordinary observer standard. The ordinary observer is one who is "not an expert in the claimed designs", but rather "one of ordinary acuteness who is a principal purchaser[]" of the product. *Ethicon Endo-Surgery, Inc. v. Coridien, Inc.*, 796 F.3d 1312, 1337 (Fed. Cir. 2015); *see also* Dkt. 388, p. 8. The ordinary observer is through the "eyes of men generally" , not individuals "versed in designs in the particular trade in question" or "engaged in the manufacture or sale of articles containing such designs." *Gorham Co. v. White*, 81 U.S. 511, 527-528 (1872).

Plus, the Gyroor Defendants offer no rebuttal opinion to Mr. Hatch on this ordinary acuteness point. Mr. Hatch opined that "[t]he measure of infringement of a design patent is deception of the ordinary observer, when such person gives the design the attention usually given by a purchaser of the item bearing the design[.]" Dkt. 388, p. 8. Applied to the facts here, an ordinary observer is the typical purchaser of hoverboards, *i.e.*, a consumer user or the parent of a user, each having little or no experience purchasing hoverboards. Dkt. 388, p. 8. The ordinary observer encounters products like the Claimed Designs via online stores, television and entertainment media, and social media, and purchases them using online stores or from 'brick and mortar' stores like Best Buy or Walmart. *Id.* Yet, the Gyroor Defendants offered no opinion testimony to rebut Mr. Hatch regarding the appropriate level of acuteness exhibited by the ordinary

---

[4] Defendants have effectively jettisoned the noninfringement standard in favor of the non-obviousness standard. *Durling v. Spectrum Furniture Co., Inc.*, 101 F.3d 100, 103 (Fed. Cir. 1996); *cf High Point Design LLC v. Buyer Direct, Inc.*, 730 F.3d 1301 (Fed. Cir. 2013) (reversing district court for not applying an "ordinary designer" standard to assess design nonobviousness).

observer.  Hatch's Gandy Rebuttal, 8-9; Hatch's Rake Rebuttal, 10.  *See also, e.g.*, Dkt. 413, p. 3-4; 414, p. 5-6; 419, p. 9; 420 (no discussion of the ordinary observer standard); 421, p. 5-6.

### B.   Defendants Do Not Contest that Plaintiffs Have Established That The Infringing Products Are Not Plainly Dissimilar

This Court must first determine whether the claimed designs are "sufficiently distinct" or "plainly dissimilar."  *Egyptian Goddess*, 543 F.3d at 678.  In their motion, Plaintiffs presented argument and evidence to satisfy that first step.  Dkt. 385 (Section I.A.2).  Yet, the Gyroor Defendants made no argument or proffered any evidence that the Infringing Products are not plainly dissimilar under *Egyptian Goddess*.  By their collective omission, the Gyroor Defendants admitted that the Infringing products are not plainly dissimilar to the Patents-in-Suit.

### C.   Gyroor Defendants Fail To Demonstrate That The Infringing Products Are Not Substantially Dissimilar From The Patents-in-Suit

#### 1.   Gyroor Defendants Erroneously Depart from *Egyptian Goddess* By Relying Upon Third-Party, Non-Prior-Art Patents

The Gyroor Defendants invite this Court to commit legal error by considering extraneous information for the infringement analysis under *Egyptian Goddess*.  Dkts. 413, 414, 419, 420, and 421.  Specifically, the Gyroor Defendants provide a series misleading comparisons with irrelevant, non-prior-art patents to purportedly support their noninfringement defenses.  Each Gyroor Defendant injects a non-prior art patent into its comparison between the prior art, the infringing product, and the Patents-in-Suit:

> (i) Fengchi relies on the D891,297 patent for Gyroor Product D (Dkt. 413, pp. 6 (Table 1), 7 (Table 2), 9-11; *see also* Dkt. 419, pp. 26-28, and Dkt. 414, p. 13;
>
> (ii) Urbanmax relies on the D808,857 patent for Gyroor Product A (Dkt. 414, pp. 8 (Table 1), 9 (Table 2); *see also* Dkt. 419, pp. 20, 22, 23, 25);
>
> (iii) Jiangyou-US relies on the D808,857 patent for Gyroor Product C (Dkt. 420, pp. 7 (Table 1), 8 (Table 2), 9-12; and

10

(iv) Gyroor and Gaodeshang-US rely on D808,856 patent for Gyroor Product B (Dkt. 419, pp. 11 (Table 1), 12 (Table 2), 14-16; Dkt. 421, pp. 8 (Table 1), 9 (Table 2), 11-13.

But the Gyroor Defendants provide no authority for injecting these patents into its noninfringement defenses. And there is none, because *Egyptian Goddess*—the leading *en banc* authority on design patent infringement[5]—does not consider such extraneous non-prior art patents when determining infringement. *Egyptian Goddess*, 543 F.3d at 674. *See also* <mark>Hatch</mark>, ("if the claimed and accused designs are not plainly dissimilar," I understand that the second step in an infringement analysis involves a three-way comparison to compare "the patented and accused designs in the context of similar designs found in the prior art"). Therefore, the D808,856, D808,875, and D891,297 patents are wholly irrelevant to this Court's infringement analysis.

## 2. The 'D906 Patent Is No More Relevant Than Other Prior Art Already Cited In The Patents-In-Suit

As a threshold matter, the Gyroor Defendants appears to suggest that Plaintiffs bore the burden to identify the 'D906 patent as prior art in its motion. Dkts. 413, p. 6. Aside from providing no authority for that position, that argument is not supported by *Egyptian Goddess*. *Egyptian Goddess* provides that "if the accused infringer elects to rely on the comparison prior art as part of its defense against the claim of infringement, the burden of production of that prior art is on the accused infringer." *Egyptian*, 543 F3d at 678. Besides, Plaintiffs did identify the 'D906 patent as prior art when comparing the 'D195 and 'D112 patents to the infringing products in the Hatch Declaration. Dkts. 81-1, 106-1, and 388. Therefore, the Gyroor Defendants bear the burden of production on prior art to support its noninfringement defenses.

---

[5] The Gyroor Defendants claim that the panel decision in *Lanard Toys, Ltd. v. Dolgencorp LLC*, 958 F.3d 1337 (Fed. Cir. 2020) is a "landmark case." Dkt. 419, p. 9. But the only *en banc* decision from the Federal Circuit on design patent infringement is *Egyptian Goddess*, 543 F.3d 665 (Fed. Cir. 2008) (*en banc*).

Next, the Gyroor Defendants misunderstand the scope of the claims of the Patents-in-Suit by oversimplifying the scope of the Patents-in-Suit as merely being having an "hourglass" shape.[6] Such a characterization is not only erroneous, but demonstrates that the Gyroor Defendants fail to properly rebut Plaintiffs' substantial evidence of claim construction through its design patent expert, Mr. Hatch.  For example, Plaintiffs provided substantial evidence regarding the scope of each of the Patents-in-Suit.  *See, e.g.*, Dkt. 385, pp. 21, 23, 25, and 27.  But the Gyroor Defendants ignore the specific figures, with solid lines and broken lines, depicted in each of the Patents-in-Suit in improperly construing the scope of the claims.  Hatch's Rake Rebuttal, 8.  That narrow misunderstanding of claim scope underlies the Gyroor Defendants' misplaced significance to the 'D906 patent and how that patent should purportedly influence this Court's understanding of the prior art.

Contrary to the Gyroor Defendants' assertions, Plaintiffs did provide prior art of the Patents-in-Suit, even though the burden of production of the prior art rests on the Gyroor Defendants.  For example, Plaintiffs disclosed the prior art shown on the faces of the 'D723 and 'D256 patents.  *See* Dkt. 385, pp. 10 (Table 2) and 13 (Table 4).  Because the 'D906 patent had not issued until after issuance of the 'D723 and 'D256 patents, it is not shown on the face of those two patents.  Dkt. 3, p. 2; p. 11.  For the 'D195 and 'D112 patents, Plaintiffs disclosed the 'D906 patent when it it depicted the prior art.  Dkt. 385, p. 15 (Table 6) and 18 (Table 8).  Regardless, of whether the 'D906 patent appears on the face of a Patents-in-Suit, it is no more relevant prior art than the prior art was already known at the time.  Hatch's Gandy Rebuttal, 15.  Many of the prior art designs disclosed a generally hour glass shape.  Dkt. 388 (comparing prior art figures depicted in Tables 2, 4, 6, and 18); *see also* Dkt. 385, pp. 10, 13, 15, 18,

---

[6] *See also* "Plaintiffs did not invent the hourglass shape of hoverboards."  Dkt. 414, 7.

Notably, when Mr. Hatch offered his interpretation of the scope of the 'D195 and 'D112 patents, he expressly considered the prior art, including the 'D906 patent. Dkt. 388, 17-18. But the Gyroor Defendants offer no rebuttal opinion to his consideration of 'D906 patent or any other of the prior art. Hatch's Rake Rebuttal, 19. Instead, the Gyroor Defendants' expert argued that there are subtle differences between the hourglass shape of the infringing products and the Patents-in-Suit. Hatch's Gandy Rebuttal, 11. But such subtlety would be insignificant in the eyes of an ordinary observer. *Id*. Accordingly, in appreciating the context of the prior art, the 'D906 patent is no more relevant than other prior art cited in the Patents-in-Suit and offers no more significance that the other prior art references known at the time. And the Gyroor Defendants fail to submit any substantial evidence to the contrary.

### 3. An Ordinary Observer, Familiar With The 'D906 Patent, Would Be Deceived Into Believing The Infringing products Are Substantially The Same As The Patented Designs

The second step for assessing design patent infringement requires that, if the claims are not plainly dissimilar, then a court must compare "the patented and accused designs in the context of similar designs found in the prior art." *Egyptian*, 543 F3d at 674. When the accused design copies a feature of the claimed design that is a significant departure from the prior art, "the accused design is naturally more likely to be regarded as deceptively similar to the claimed design, and thus infringing." *See id*. at 677. But one cannot ignore the important fact that "when performing this infringement analysis, a court must evaluate the claims *as a whole*, and not in isolation, through application of "the ordinary observer test by comparing similarities in overall designs, not similarities of ornamental features in isolation." *Ethicon*, 796 F.3d at 1335.

Here, the Gyroor Defendants attempt to criticize Plaintiffs and its expert Mr. Hatch's understanding of the claims of Patents-in-Suit. But those criticisms fall short. First, while attacking Hatch's construction of the claims of the Patents-in-Suit, none of the Gyroor Defendants

offer an alternative construction through its experts Rake and Gandy. *See, e.g.*, Dkt. 413, p. 5-8; Dkt. 414, p. 6-7; Dkt. 419, p. 10-11; Dkt. 420, p. 6); and Dkt. 421, p. 7. The Gyroor Defendants start and end their claim analysis by focusing only on the hourglass exterior shape with a relatively flat surface of the Patents-in-Suit. *See* Dkt. 413, 7. But that was not the claim construction offered by Hatch and Gandy admits as much. *See* Dkt. 413-3, 5.[7]

Second, despite attempting to limit the claims to merely an hourglass shape, the Gyroor Defendants criticize Hatch for failing to consider features of the claimed designs of the Patents-in-Suit. Dkt. 413-3, p. 5-6. Again, the Gyroor Defendants offer no alternative construction. Third, while attempting to compare claimed designs to the accused designs on a feature-by-feature basis, Gandy erroneously focuses on Hatch's written language of the claims, instead of the actual claimed figures of the Patents-in-Suit. For example, Mr. Gandy states that:

> "This statement by Mr. Hatch not only fails to identify specific features of "The Infringing products" and the claimed design of the '723 and '256 patents on the top, front, rear and bottom surfaces, but also fails to describe the shape and appearance of some of the features that are identified in his statement." Dkt. 413-3, p. 5.

But "[d]esign patents are typically claimed as shown in drawings, and claim construction must be adapted to a pictorial setting. *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1377 (Fed. Cir. 2002) (construing a design patent claim as meaning "a tray of a certain design as shown in Figures 1-3"). Thus an illustration depicts a design better "than it could be by any description and a description would probably not be intelligible without the illustration." *Dobson v. Dornan*, 118 U.S. 10, 14 (1886). "[A]s a rule, the illustration in the drawing views is its own best description." Manual of Patent Examining Procedure § 1503.01 (8th ed. 2006). *See*

---

[7] Plaintiffs cite to Fengchi opposition here as an example; other Gyroor Defendants also offer the same approach in their respective oppositions and supported by Gandy's declarations.

*also Crocs Inc., v. ITC.*, 598 F.3d 1294, 1302-03 (Fed. Cir. 2010) (detailing the "dangers of reliance on **a detailed verbal claim construction**") (emphasis added).

Despite these cautions, Gandy nevertheless erroneously focused on criticizing Hatch's characterization of the patent claims using a verbal description. Yet, Gandy failed to offer any alternative construction to Mr. Hatch. Dkt. 413-3, 4. And when actually addressing the claimed figures in the Patents-in-Suit, Gandy erroneously considers those figures as "different" design:

> "The only common feature on the top surface of the claimed design of the '723 patent and the design of the Gyroor "A" hoverboard not shown on the design of prior art patent '906 patent is the foot pads on the opposing foot surfaces. However, it is clear from the enlarged isolated view below that the foot pads of the claimed design of the '723 patent and the design of the Gyroor "A" hoverboard differ not only in their peripheral shape but also the decorative pattern of ribs on each." Dkt. 413-3, 10.

In making his noninfringement conclusion Gandy applied the same analytical approach to various other features in isolation between the Patents-in-Suit, the 'D906 patent, and Gyroor Product A. But his conclusion is not that an ordinary observer would not be *deceived* into thinking that the Infringing Products are the same as claimed designs in Patents-in-Suit. His conclusion was merely that an ordinary observer would not be *confused*, so as to purchase one thinking it to be the other. *See also* Dkt. 413-3, 6, 12, 17, 21, 25, 30, 35, 39, 44, 48, 53, 57, 61, 65, 70, 75, and 83. In fact, Gandy only opined about the correct standard of *Egyptian Goddess* in the introductory legal and conclusion sections of his declaration. *See also* Dkt. 413-3, 5 and 83.

The Rake declaration also fails to properly rebut Hatch's construction. For example, Rake criticizes Hatch's understanding of the claims, but he offers no construction of his own:

> "Other design features of the '7823 Patent are described by Mr. Hatch on p.29 include hopelessly vague descriptions such as "larger radii on the front and back of the underside, and elongated light panels on the front surface. The elongated window for the lights uses more angular, and dynamic lines". I am a design expert with multiple degrees in design and over 40 years experience as both a design educator and design practitioner, but I have no clear idea what he is talking about.

15

Perhaps if Mr. Hatch had graphically pointed out these features and compared them side-by-side I would have a better understanding."[8] (Dkt. 413-4, ¶ 57).

Rake fails to appreciate the caution mandated by *Crocs* despite his experience. *Id*. Taken together, the Gyroor Defendants' reliance upon the flawed opinions of Gandy and Rake regarding claim scope underlies their noninfringement defenses. Appreciating the appropriate infringement analysis under *Egyptian Goddess*, as applied by Mr. Hatch, the following sections illustrate that the infringing products are substantially similar to the Patents-in-Suit, starting with 'D723 patent, in the eyes of an ordinary observer.

### (a) The 'D723 patent compares to Gyroor Products A through D

Regarding Gyroor products A through D, the Gyroor Defendants argue that the Gyroor Product A does not infringe the 'D723 patent, because an ordinary observer would find those accused designs to be substantially dissimilar to the Patents-in-Suit. Dkt. 413, p. 5; Dkt. 414, p. 4; Dkt. 419, p. 11, Dkt. 420, p. 7, and Dkt. 421, p. 8. The Defendants believe that the Patents-in-Suit are closer to the 'D906 patent rather than Gyroor Products A through D. *Id*.

But, as shown in the figures below, the infringing products all share the same overall impression of the Patents-in-Suit and have an integrated 'hourglass' body with a relatively flat surface across the top of the main body, arched covers over the wheel area, larger radii on the front and back of the underside, and elongated light panels on the front surface. Exhibit 1 of Hatch's Gandy Rebuttal, 6. As such, the infringing products are substantially similar to the 'D723 patent.

**Table 1-1: Comparison of the 'D723 Patent to the Gyroor Products A through D, in View of the 'D906 Patent**

---

[8] Rake's error in referring to the 'D723 patent as "'7823 patent" is his own.



FIG.1

Gyroor Product A[9]

Gyroor Product B[10]

Gyroor Product C[11]

Gyroor Product D[12]

FIG. 3 of the prior art ('D906 Patent)

---

[9] Sold by at least Defendants: Gyroor (Gyroor.com; gyroorboard.com); Gaodeshang-US;
Gyroshoes; HGSM; Urbanmax; Jiangyou-US; Gyroor-US
[10] Sold by at least Defendants: Gyroor (Gyroor.com; gyroorboard.com); Gaodeshang-US;
[11] Sold by at least Defendants: Gyroor-US, Jiangyou-US; and Gyroor (Gyroor.com;
gyroorboard.com);
[12] Sold by at least Defendants Fengchi; Gyroor (Gyroor.com; gyroorboard.com);



**Table 1-2: Comparison of the 'D723 Patent to the Gyroor Products A through D, in View of the 'D906 Patent**

FIG. 3 of the 'D723 patent

Gyroor Product A

Gyroor Product B

Gyroor Product C

Gyroor Product D

FIG. 2 of the prior art ('D906 Patent)



Table 1-3: Comparison of the 'D723 Patent to the Gyroor Products A through D, in View of the 'D906 Patent

FIG. 2 of the 'D723 patent

Gyroor Product A

Gyroor Product B

Gyroor Product C

Gyroor Product D

FIG. 3 of the prior art ('D906 Patent)

| Table 1-4: Comparison of the 'D723 Patent to the Gyroor Products A through D, in View of the 'D906 Patent |
|---|



FIG. 6 of the 'D723 patent

Gyroor Product A

Gyroor Product B

Gyroor Product C

Gyroor Product D

FIG. 4 of the prior art ('D906 Patent)



**Table 1-5: Comparison of the 'D723 Patent to the Gyroor Products A through D, in View of the 'D906 Patent**

FIG. 5 of the 'D723 patent

Gyroor Product A

Gyroor Product B

Gyroor Product C

Gyroor Product D

FIG. 5 of the prior art ('D906 Patent)

21

In the eyes of the ordinary observer, the claimed design of the 'D723 is substantially the same as the visual impression presented by the infringing products. Also, the infringing products are closer to the claimed design of the 'D723 Patent than to the 'D906 Patent.

        **(b)**        **The 'D256 patent compares to Gyroor Products A through D**

Regarding the Gyroor products A through D, the Gyroor Defendants argue that the Gyroor Product A does not infringe the 'D256 patent, because an ordinary observer would find it to be substantially dissimilar to the Patents-in-Suit. Dkt. 413, 5; Dkt. 414, 4; Dkt. 419, 11, Dkt. 420, 7, and Dkt. 421, 8.

In the eyes of the ordinary observer, however, the claimed design of the 'D256 is substantially the same as the overall visual impression presented by the Infringing products. Unlike the 'D906 Patent, the claimed design of the 'D256 Patent and the Infringing products share the same overall impression and have an integrated 'hourglass' body with a relatively flat surface across the top of the main body, arched covers over the wheel area, larger radii on the front and back of the underside, and elongated light panels on the front surface. Exhibit 1 of Hatch's Gandy Rebuttal, 11-12.

**Table 2-1: Comparison of the 'D256 Patent to the Gyroor Products A through D, in View of the 'D906 Patent**



FIG. 1 of the 'D256 patent

Gyroor Product A

Gyroor Product B

Gyroor Product C

Gyroor Product D

FIG. 3 of the prior art ('D906 Patent)



**Table 2-2: Comparison of the 'D256 Patent to the Gyroor Products A through D, in View of the 'D906 Patent**

FIG. 3 of the 'D256 patent

Gyroor Product A

Gyroor Product B

Gyroor Product C

Gyroor Product D

FIG. 2 of the prior art ('D906 Patent)

24

**Table 2-3: Comparison of the 'D256 Patent to the Gyroor Products A through D, in View of the 'D906 Patent**



FIG. 2 of the 'D256 patent

Gyroor Product A

Gyroor Product B

Gyroor Product C

Gyroor Product D

FIG. 3 of the prior art ('D906 Patent)



**Table 2-4: Comparison of the 'D256 Patent to the Gyroor Products A through D, in View of the 'D906 Patent**

FIG. 6 of the 'D256 patent

Gyroor Product A

Gyroor Product B

Gyroor Product C

Gyroor Product D

FIG. 4 of the prior art ('D906 Patent)

**Table 2-5: Comparison of the 'D256 Patent to the Gyroor Products A through D, in View of the 'D906 Patent**



FIG. 5 of the 'D256 patent

Gyroor Product A

Gyroor Product B

Gyroor Product C

Gyroor Product D

FIG. 5 of the prior art ('D906 Patent)

In the eyes of the ordinary observer, the claimed design of the 'D256 is substantially the same as the visual impression presented by the Infringing products. Also, the Infringing products are closer to the claimed design of the 'D256 Patent than to the 'D906 Patent. Exhibit 1 of Hatch's Gandy Rebuttal, 12.

### (c)    The 'D195 patent Compares to Gyroor Products A through D

Regarding the Gyroor products A through D, the Gyroor Defendants argue that the Gyroor Products A through D do not infringe the 'D195 patent, because an ordinary observer would find it to be substantially dissimilar to the Patents-in-Suit. Dkt. 413, 5; Dkt. 414, 4; Dkt. 419, 11, Dkt. 420, 7, and Dkt. 421, 8. For the convenience of the Court, Plaintiffs have included the 'D906 patent in the table below even though Mr. Hatch has already considered and compared the 'D906 patent to the 'D195 patent.

But, in the eyes of the ordinary observer, the claimed design of the 'D195 is substantially the same as the overall visual impression presented by the Infringing products. Unlike the 'D906 Patent, the claimed design of the 'D195 Patent and the Infringing products share an integrated 'hourglass' body with many horizontal styling lines across the body and a relatively flat surface across the top, arched covers over the wheel area, larger radii on the front and back of the underside. Unlike any of the prior art the foot plates narrow as they extend toward the center. Exhibit 1 of Hatch's Gandy Rebuttal, 17-18.

28



**Table 3-1: Comparison of the 'D195 Patent to the Gyroor Products A through D, in View of the 'D906 Patent**

FIG. 1 of the 'D195 patent

Gyroor Product A

Gyroor Product B

Gyroor Product C

Gyroor Product D

FIG. 3 of the prior art ('D906 Patent)

**Table 3-2: Comparison of the 'D195 Patent to the Gyroor Products A through D, in View of the 'D906 Patent**



FIG. 3 of the 'D195 patent

Gyroor Product A

Gyroor Product B

Gyroor Product C

Gyroor Product D

FIG. 2 of the prior art ('D906 Patent)



**Table 3-3: Comparison of the 'D195 Patent to the Gyroor Products A through D, in View of the 'D906 Patent**

FIG. 2 of the 'D195 patent

Gyroor Product A

Gyroor Product B

Gyroor Product C

Gyroor Product D

FIG. 3 of the prior art ('D906 Patent)

| Table 3-4: Comparison of the 'D195 Patent to the Gyroor Products A through D, in View of the 'D906 Patent |
|---|



FIG. 6 of the 'D195 patent

Gyroor Product A

Gyroor Product B

Gyroor Product C

Gyroor Product D

FIG. 4 of the prior art ('D906 Patent)

**Table 3-5: Comparison of the 'D195 Patent to the Gyroor Products A through D, in View of the 'D906 Patent**



FIG. 5 of the 'D195 patent

Gyroor Product A

Gyroor Product B

Gyroor Product C

Gyroor Product D

FIG. 5 of the prior art ('D906 Patent)

33

In the eyes of the ordinary observer, the claimed design of the 'D195 is also substantially the same as the visual impression presented by the Infringing products. Also, the Infringing products are closer to the claimed design of the 'D195 Patent than to the 'D906 Patent. Exhibit 1 of Hatch's Gandy Rebuttal, 18.

        **(d)**        **The 'D112 patent compares to Gyroor Products A through D**

Regarding the Gyroor products A through D, the Gyroor Defendants argue that these products do not infringe the 'D112 patent, because an ordinary observer would find it to be substantially dissimilar to the Patents-in-Suit. Dkt. 413, 5; Dkt. 414, 4; Dkt. 419, 11, Dkt. 420, 7, and Dkt. 421, 8.

However, in the eyes of the ordinary observer, the claimed design of the 'D112 is substantially the same as the overall visual impression presented by the Infringing products. Unlike the 'D906 Patent, the claimed design of the 'D112 Patent and the Infringing products share an integrated 'hourglass' body with many lines angling across the body and a relatively flat surface across the top, arched covers over the wheel area, larger radii on the front and back of the underside. Unlike any of the prior art the foot plates stretch across almost the full width of main body. Exhibit 1 of Hatch's Gandy Rebuttal, 23-24.

| Table 4-1: Comparison of the 'D112 Patent to the Gyroor Products B and D, in View of the 'D906 Patent |
|---|



FIG. 1 of the 'D112 patent

Gyroor Product B

Gyroor Product D

FIG. 3 of the prior art ('D906 Patent)

35

| Table 4-2: Comparison of the 'D112 Patent to the Gyroor Products B and D, in View of the 'D906 Patent |
|---|



FIG. 3 of the 'D112 patent

Gyroor Product B

Gyroor Product D

FIG. 2 of the prior art ('D906 Patent)

36

**Table 4-3: Comparison of the 'D112 Patent to the Gyroor Products B and D, in View of the 'D906 Patent**



FIG. 2 of the 'D112 patent

Gyroor Product B

Gyroor Product D

FIG. 3 of the prior art ('D906 Patent)

| Table 4-4: Comparison of the 'D112 Patent to the Gyroor Products B and D, in View of the 'D906 Patent |
|---|



FIG. 6 of the 'D112 patent

Gyroor Product B

Gyroor Product D

FIG. 4 of the prior art ('D906 Patent)

38



**Table 5-5: Comparison of the 'D112 Patent to the Gyroor Products B and D, in View of the 'D906 Patent**

FIG. 5 of the 'D112 patent

Gyroor Product B

Gyroor Product D

FIG. 5 of the prior art ('D906 Patent)

As shown above, In the eyes of the ordinary observer, the claimed design of the 'D112 is also substantially the same as the visual impression presented by the Infringing products Gyroor

B and Gyroor D, which are also closer to the claimed design of the 'D112 Patent than to the cited prior art of the 'D112 Patent. Exhibit 1 of Hatch's Gandy Rebuttal, 24.

## IV. Defendants' Expert Declarations Are Unreliable Under FRE 702

The Gyroor Defendants offer two expert opinions explaining their noninfringement positions (*i.e.*, Declarations of Lance Rake and Jim Gandy). Dkts. 413-3, 413-4, 414-3, 414-4, 419-3, 419-4, 420-3, 420-4, 421-3, and 421-4. These expert opinions deviate from the approaches mandated by *Egyptian Goddess*.

### A. The Reliability And Credibility of the Rake Declarations Is Undermined By His Errors, Despite His Experience

First, the Rake Declarations include careless errors, as well as serious legal errors, that demonstrate the lack of care in the declarations. For example, he declares that he is "qualified to give an opinion about what would be understood by one skilled in the art of ceiling fans"—but the subject matter here are hoverboard products. Hatch's Rake Rebuttal, 9. Such an error raises credibility questions as to whether the Rake Declarations accurately represent reliable opinions in this case.

Second, the reliability of the Rake Declarations is undermined by the misapplication *Egyptian Goddess*. Although Mr. Rake is experienced at providing expert witness opinions in intellectual property court cases, his misapplication of the infringement test mandated by *Egyptian Goddess* is overwhelming. For example, the Rake Declarations fail to construe the Patents-in-Suit and fail to perform the first step of the *Egyptian Goddess* of whether the infringing products are plainly dissimilar. Hatch's Rake Rebuttal, 11. In another example, he impermissibly compares non-prior art Gyroor patents as part of the second step of the *Egyptian Goddess*: comparing the Patents-in-Suit and the infringing products. Hatch's Rake Rebuttal, 9. As explained in Section III(C)(1), there is no place for such inclusion of the non-prior art Gyroor

patents under *Egyptian Goddess*.  As an aside, it seems that Rake never inspected the actual samples of the infringing products before rendering his opinions.  Hatch's Rake Rebuttal, 12. Instead, he relied on skewed and potentially self-serving photos presumably provided by Defense Counsel.

Third, the Rake Declarations include contradictory positions in his opinions.  For example, he opines that the Gyroor Product A's size and shape of the fenders is "important design feature that has a significant effect on the overall visual impression of the ordinary observer".  Hatch's Rake Rebuttal, 10.  He compares the fender of the Gyroor Product A, the 'D256 patent, and a figure from a prior art, US Patent 8,469,376, and concludes that the "differences are significant and glaring."  *Id*.  Yet, the prior art does not disclose a fender.  *Id*.  A proper comparison would have only shown that the fender of the Gyroor Product A is substantially similar to the 'D256 patent, which has a fender, and not the prior art.  *Id*.

Fourth, Rake Declarations elevate the level of attention or analysis of an ordinary observer to someone who is akin to a designer of ordinary skill.  Hatch's Rake Rebuttal, 11.  For example, the Rake Declarations spend considerable attention discussing the Gestalt principles. Hatch's Rake Rebuttal, 14; *see also* Dkt. 413-4, 6-; 13-15; 19-20, just as an example.  But the Gestalt principles are never part of the ordinary observer analysis under *Egyptian Goddess* and Rake fails to explain how an ordinary purchaser would even be aware of such a complicated theory.  Hatch's Rake Rebuttal, 14.  Overall, Hatch has identified one or more flaws in the Rake declarations.  *See also* TOC of Hatch's Rake Rebuttal.

Taken together, this Court should reject the Rake Declarations because the opinions contained therein are unreliable under FRE 702.

41

B. **The Reliability of Gandy Declarations Is Undermined By His Errors, Despite His Experience**

Similar to the Rake Declarations, the Gandy Declarations also fail to follow *Egyptian Goddess*. For example, the Gandy Declarations fail to construe the claims of the Patents-in-Suit and fail to perform the first step of the *Egyptian Goddess*. Hatch's Gandy Rebuttal, 7. The Gandy Declarations also fail to define the level of attention or acuteness to details of the ordinary observer. Hatch's Gandy Rebuttal, 8. Rather, Gandy applied the view of a having ordinary designer skill in the art. Hatch's Gandy Rebuttal, 9. Further, it seems that Gandy never inspected the actual samples of the infringing products before rendering his opinions. Hatch's Gandy Rebuttal, 11. Instead, he relied on skewed and potentially self-serving photos presumably provided by Defense Counsel. Because of these fundamental deviations from *Egyptian Goddess*, other consequential errors are found in Gandy declarations. *See also* TOC of Hatch's Gandy Rebuttal.

Taken together, this Court should reject the Gandy Declarations because the opinions contained therein are unreliable under FRE 702.

## CONCLUSION

The Plaintiffs have provided substantial evidence to satisfy the requirements for this Court to grant a preliminary injunction. And the Gyroor Defendants have failed to properly rebut that showing. Absent injunctive relief, the Gyroor Defendants will continue infringing the Patents-in-Suit and causing irreparable harm to Plaintiffs, in contravention of the public's interest in enforcing valid design patents. Accordingly, this Court should continue the current preliminary injunction against the Gyroor Defendants and shut off this virtual game of Whack-A-Mole.

Date:   September 24, 2021                    Respectfully Submitted,


LOEB & LOEB LLP

/s/ *Adam Kelly*
Adam Kelly
Doug Masters
Arthur Yuan
Neil Nandi
321 North Clark Street, Suite 2300
Chicago, Illinois  60654
Tel.: 312-464-3100
Email:  akelly@loeb.com
Email:  dmasters@loeb.com
Email:  ayuan@loeb.com
Email:  nnandi@loeb.com

Marwa Abdelaziz (admitted *pro hac vice*)
LOEB & LOEB LLP
345 Park Avenue
New York, New York 10154
Tel.:  (212) 407-4000
Email:  mabdelaziz@loeb.com