**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ABC Corporation I et al, | |
| *Plaintiff*, | **CASE NO.** 1:20-cv-04806 |
| v. | **Judge:** Honorable Thomas M. Durkin |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", | |
| *Defendants*. | |

**DEFENDANT GAODESHANG-US' ANSWER**
**TO COMPLAINT, AFFIRMTIVE DEFENSES AND COUNTERCLAIMS**

NOW COME Defendant Gaodeshang-US, by and through its attorney, submit its Answer to the Third Amended Complaint filed by the Plaintiffs and states as follows:

**ANSWER TO COMPALINT**

**I.     IN ANSWER TO THE ALLEGATIONS OF NATURE OF ACTION**

1.  This action is for patent infringement arising under the patent law of the United States, 35 U.S.C. § 1 et seq., including 35 U.S.C. §§ 271, 281, 283, 284, 285, and 289.

    **Answer:** Admitted that Plaintiffs filed this action for patent infringement under the United States patent laws.  Defendant otherwise denies any infringement of any valid and enforceable claim of any patent identified in the Third Amended Complaint.

2.  Plaintiffs have filed this action to combat e-commerce store operators who trade upon Plaintiffs' reputation and goodwill by making, using, offering for sale, selling and/or importing into the United States for subsequent sale and use of unauthorized and unlicensed products, namely the self-balancing transport devices known as hoverboards shown in Exhibit 1, that infringe Plaintiffs' patented designs ("Infringing Products"). Defendants create e-commerce stores operating under one or more seller aliases or fictitious names identified in Schedule A, Schedule B, and Schedule C that

1

are making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of Infringing Products to unknowing consumers. Defendant Internet Stores share unique identifiers establishing a logical relationship between them and Defendants' operation, which arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating one or more Defendant Internet Stores to conceal both their identities and the full scope and interworking of their operation.

**Answer:** Defendant denies the allegations of this paragraph in their entirety for lack of knowledge as to the activities of other defendants, and specifically denies that it engaged in any conduct constituting infringement of any valid and enforceable claim of any patent identified in the Third Amended Complaint.

3. Plaintiffs are forced to file this action to combat Defendants' infringement of their patented designs, as well as to protect unknowing consumers from purchasing Infringing Products over the Internet. Plaintiffs have been and continue to be irreparably damaged from the loss of their lawful patent rights to exclude others from making, using, selling, offering for sale, and importing their patented designs as a result of Defendants' actions and seeks injunctive and monetary relief.

**Answer:** Defendant denies the allegations of this paragraph in their entirety, and specifically denies that it engaged in any conduct constituting infringement of any valid and enforceable claim of any patent identified in the Third Amended Complaint.

## II. IN ANSWER TO THE ALLEGATIONS OF JURISDICTION AND VENUE

4. This Court has original subject matter jurisdiction over the claims in this action under the Patent Act, 35 U.S.C. § 1, *et seq.*, 28 U.S.C. §§ 1331 and 1338(a)-(b).

**Answer:** Admitted that the Court has subject matter jurisdiction over the claims asserted in Plaintiffs' Third Amended Complaint.

5. Venue is proper in this Court under 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants because each of the Defendants directly targets business activities

toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores, operating under the Defendants Internet Stores. *See* Schedule A, Schedule B, and Schedule C. Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one of more Defendants Internet Stores, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold products featuring Plaintiffs' patented designs and features to residents of Illinois. Each of the Defendants are committing tortious acts in Illinois, engaging in interstate commerce, and have wrongfully caused Plaintiffs substantial injury in Illinois.

**Answer:** Defendant denies the allegations of this paragraph in their entirety, and specifically denies any infringement of any valid and enforceable claim of any patent identified in the Third Amended Complaint and denies that it has conducted any acts in this forum that subject them to specific or general jurisdiction as alleged.

### III.   IN ANSWER TO THE ALLEGATIONS OF THE PARTIES

6.  Plaintiff Chic is a high-tech company that manufactures and licenses hoverboard products for sale in the United States. Chic is supported by Zhejiang University Ministry of Education Computer Aided Product Innovation Design Engineering Center, the Zhejiang University International Design, and Zhejiang Key Laboratory of Service Robot. Chic is located in the Liangzhu University Science and Technology Park, Yuhang District, Hangzhou, China.

    **Answer:** Defendant is without sufficient knowledge or information to admit or deny the truth of such allegations, and accordingly denies.

7.  Chic designs and sells hoverboards, among other technologies, which incorporate the Patents-in-Suit (collectively, "Plaintiffs' Products"). Chic is the assignee of approximately 400 granted patents related to technologies associated with the products at issue here, four of which are the subject of this action.

**Answer:** Defendant is without sufficient knowledge or information to admit or deny the truth of such allegations, and accordingly denies

8. Plaintiff Unicorn is a corporation organized under the laws of the State of California, having its principal place of business in Ontario, California. Unicorn is the exclusive U.S. distributor of Plaintiffs' Products. Unicorn, through its affiliates and licenses, operates websites which promote and sell genuine Plaintiffs' Products, and which feature proprietary content, images and designs exclusive to Plaintiffs.

**Answer:** Defendant is without sufficient knowledge or information to admit or deny the truth of such allegations, and accordingly denies.

9. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more Defendants Internet Stores identified in Schedule A, Schedule B, and Schedule C and/or other seller aliases not yet known to Plaintiffs. Upon information and belief, Defendants reside and/or operate in the People's Republic of China or act as an entity from a foreign jurisdiction with less efficient intellectual property enforcement systems, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued under Federal Rule of Civil Procedure 17(b).

**Answer:** Defendant admits that it owns and/or operates one of the storefronts identified in Schedule A and that it resides and/or operates in the People's Republic of China. Defendant is without sufficient knowledge or information to admit or deny the truth of the remaining allegations, and accordingly denies.

10. Upon information and belief, Schedule A Defendants do not have substantial contacts within the United States and are foreign entities operating Defendants Internet Stores and selling Infringing Products.

**Answer:** Defendant admits that it does not substantial contacts within the United States and is a foreign entity operating an Amazon storefront. Defendant denies the remaining allegations of this paragraph.

11. Upon information and belief, some evidence suggests that Schedule B Defendants may have some contacts within the United States, but Plaintiffs are unable to confirm their actual location based on the publicly available information on third party e-commerce platforms and based on state Secretary of State (or similar state agency) records. Some indicia nonetheless suggests that Schedule B Defendants may be foreign entities operating Defendants Internet Stores and selling Infringing Products.

**Answer:** Defendant is without sufficient knowledge or information to admit or deny the truth of such allegations, and accordingly denies.

12. Upon Information and belief, Schedule C Defendants have contacts in both the U.S. and in foreign jurisdictions, but have submitted to jurisdiction and venue within the Northern District of Illinois and will comply with any injunctive orders from this Court.

**Answer**: Defendant is without sufficient knowledge or information to admit or deny the truth of such allegations, and accordingly denies.

13. On information and belief, Defendants either individually or jointly, operate one or more Defendants Internet Stores listed in Schedule A, Schedule B, and Schedule C. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiffs to learn Defendants' true identities and the exact interworking of their network. If Defendants provide additional credible information regarding their identities, Plaintiffs will take appropriate steps to amend the Complaint.

**Answer:** Defendant admits that it owns and/or operates an Amazon storefront identified in amended Schedule A. Defendant denies the remaining allegations in this paragraph.

IV.     IN ANSWER TO THE ALLEGATIONS OF FACTUAL ALLEGATIONS

14.  Chic has been issued with several U.S. design patents relating to hoverboard products, including but not limited to, U.S. Design Patent Nos. D737,723 ("the 'D723 patent"), D738,256 ("the 'D256 patent"), D785,112 ("the 'D112 patent"), and D784,195 ("the 'D195 patent") (collectively, the "Patents-in-Suit"). *See* Exhibit 2.

**Answer:** Defendant admits the Patents-in-Suit attached to Third Amended Complaint as Exhibit 2 identifies Hangzhou Chic Intelligent Co., Ltd. as the Assignee. Defendant is without sufficient knowledge or information to admit or deny the remaining and accordingly denies.

15.  The Patents-in-Suit claim and illustrate ornamental features of hoverboards.

**Answer:** Defendant is without sufficient knowledge or information to admit or deny the allegations, and accordingly denies.

16.  The 'D723 patent and the 'D256 patent are entitled "Self-Balancing Vehicle," and were issued on September 1, 2015 and September 8, 2015, respectively.

**Answer:** Admitted as this information is shown in the Exhibit 2 to the Third Amended Complaint.

17.  Admitted as this table is shown in the Exhibit 2 to the Third Amended Complaint.

18.  Admitted as this table is shown in the Exhibit 2 to the Third Amended Complaint.

19.  Both the 'D195 patent and the 'D112 patent are entitled "Human-Machine Interaction Vehicle," and were issued on April 18, 2017 and April 25, 2017, respectively.

**Answer:** Admitted as this information is shown in the Exhibit 2 to the Third Amended Complaint.

20.  Admitted as this table is shown in the Exhibit 2 to the Third Amended Complaint.

21.  Admitted as this table is shown in the Exhibit 2 to the Third Amended Complaint.

22.  Jiawei Ying is the main named inventor of the Patents-in-Suit, and he has assigned all rights, title, and interest to the patents to Chic.

**Answer:** As shown in the Exhibit 2 to the Third Amended Complaint, Defendant admits the four Patents-in-Suit identify Jiawei Ying as the Inventor. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of the paragraph and accordingly denies.

23. Chic has licensed to Unicorn the right to sell, offer to sell, and distribute products featuring the Patents-in-Suit, including Plaintiffs' Products.

**Answer:** Defendant is without sufficient knowledge or information to admit or deny the allegations, and accordingly denies.

24. Plaintiffs utilize the Patents-in-Suit when designing, manufacturing, and selling Plaintiffs' Products. The Patents-in-Suit have revolutionized ornamental design for hoverboards that have a central support platform.

**Answer:** Defendant is without sufficient knowledge or information to admit or deny the allegations, and accordingly denies.

25. The Patents-in-Suit have streamline shapes that are appealing to United States customers. Specifically, the 'D723 patent and the 'D256 patent have defined the fundamental ornamental configurations of the hoverboard product class. The 'D112 patent features a soft edge between the central support platform and the fenders, and the 'D195 patent features a sharper edge.

**Answer:** Defendant is without sufficient knowledge or information to admit or deny the allegations, and accordingly denies.

26. Plaintiffs' Products are stylish and modern, and are visually pleasing to the consumers, and have become enormously popular to consumers of all ages, resulting in the sale of thousands of units in the United States.

**Answer:** Defendant is without sufficient knowledge or information to admit or deny the allegations, and accordingly denies.

27. Plaintiffs have identified numerous e-commerce stores, including Defendants Internet Stores, that offer for sale and/or selling Infringing Products to consumers in this Judicial District and throughout

the United States. E-commerce sales, including through stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. *See* Excerpts from Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report at Exhibit 3.

**Answer:** Defendant denies that it offered for sale and/or sold products to consumers in this Judicial District and throughout the United States that infringed any valid and enforceable claim of any patent identified in the Third Amended Complaint. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations of the paragraph, and accordingly denies.

28. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to use untraceably identifiers, such as false names and addresses, when registering with e-commerce platforms. *See* "Combating Trafficking in Counterfeit and Pirated Goods," prepared by the U.S. Dep't of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020) at Exhibit 4.

**Answer:** Defendant is without sufficient knowledge or information to admit or deny the allegations, and accordingly denies.

29. Defendants have targeted sales to Illinois residents by setting up and operating e- commerce stores that target United States consumers using one or more Defendants Internet Stores.

**Answer:** Denied.

30. Upon information and belief, Defendants have sold and are selling Infringing Products on their e-commerce website, offered and are offering shipping to the United States, including Illinois, and are accepting payment in U.S. dollars.

**Answer:** Defendant denies that it has sold and is selling products to consumers on an e-commerce website that infringe any valid and enforceable claim of any patent identified in the Third Amended Complaint, or that it offered and is offering shipping of products to the United States, including Illinois, that infringe any valid and enforceable claim of any patent identified in the Third Amended

Complaint, or that it accepted and is accepting payment in U.S. dollars for products that infringe any valid and enforceable claim of any patent identified in the Third Amended Complaint. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations of the paragraph, and accordingly denies.

31.  Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating the Defendants Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Defendants Internet Stores often include content and images that make it difficult for consumers to distinguish such stores from an authorized retailer. In addition, Defendants Internet Stores appear sophisticated and accept payment in U.S. dollars via credit cards, Paypal, and/or Amazon Pay, for example.

**Answer:** Defendant is without sufficient knowledge or information to admit or deny the allegations, and accordingly denies.

32.  Plaintiffs have not licensed the Patents-in-Suit to the Defendants and none of the Defendants are authorized retailers of genuine Plaintiffs' Products.

**Answer:** Defendant is without sufficient knowledge or information to admit or deny the allegations, and accordingly denies.

33.  On information and belief, Defendants have engaged in fraudulent conduct when registering the Defendants Internet Stores by providing false, misleading and/or incomplete information to e-commerce platforms.

**Answer:** Defendant denies the allegations that it engaged in fraudulent conduct of any kind when registering its internet storefront. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of the paragraph, and accordingly denies.

34.  On information and belief, Defendants have anonymously registered and maintained seller aliases to prevent one from learning their true identities and the scope of their e- commerce operation.

9

**Answer:** Defendant denies that it anonymously registered and maintained seller aliases to prevent others from learning their true identities and the scope of their e-commerce operation. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations of the paragraph, and accordingly denies.

35. On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Infringing products. Such registration patterns are one of the many tactics used by Defendants to conceal their identities and the interworking of their operation, as well as to avoid being shut down.

**Answer:** Defendant denies that it regularly registered or acquired new seller aliases for the purpose of offering for sale and selling any Infringing products. Defendant further denies it uses such registration patterns as one of many tactics to conceal its identity and the interworking of their operation, as well as to avoid being shut down. Defendant denies that it has sold and is selling products to consumers on an e-commerce website that infringe any valid and enforceable claim of any patent identified in the Third Amended Complaint. Defendant is without sufficient knowledge or information to admit or deny the remaining allegations of the paragraph, and accordingly denies.

36. Despite operating under multiple fictitious aliases, the Defendants Internet Stores often share unique identifiers, such as templates with common design elements with no contact information or other identifying information, keywords, advertising tactics, similarities in prices and quantities, same incorrect grammar and misspellings, and/or use of the same text and imagines.

**Answer:** Denied.

37. Infringing Products sold by the Defendants Internet Stores bear similar irregularities and indicia of being unauthorized to one another, suggesting that Defendants are interrelated and that the Infringing Products come from and were manufactured by a common source.

10

**Answer:** Denied. In addition, Defendant denies that it has sold and is selling products to consumers on an e-commerce website that infringe any valid and enforceable claim of any patent identified in the Third Amended Complaint.

38. On information and belief, Defendants maintain off-shore accounts and regularly move funds from their financial accounts to off-shore bank accounts outside this Court's jurisdiction to avoid payment of any monetary judgment awarded to Plaintiffs.

**Answer:** Defendant is without sufficient knowledge or information to admit or deny the allegations, and accordingly denies.

39. On information and belief, Defendants are an interrelated group of infringers working in active concert to knowingly and willfully make, use, offer for sale, sell, and/or import into the United States for subsequent sale or use Infringing Products in the same transaction, occurrence, or series of transactions or occurrences.

**Answer:** Denied. In addition, Defendant denies that it has made, used, offered for sale, sells, and/or imports into the United States any products that infringe any valid and enforceable claim of any patent identified in the Third Amended Complaint.

40. Defendants, without any authorization or license from Plaintiffs, have jointly and severally, knowingly and willfully made, used, offered for sale, sold, and/or imported into the United States for subsequent resale or use products that directly and/or indirectly infringe the Patents-in-Suit, irreparably harming Plaintiffs.

**Answer:** Denied. In addition, Defendant denies that it has made, used, offered for sale, sells, and/or imports into the United States any products that infringe any valid and enforceable claim of any patent identified in the Third Amended Complaint.

**V. IN ANSWER TO THE ALLEGATIONS OF COUNT I DESIGN PATENT INFRINGEMENT – PATENT NO. D737,723 (35 U.S.C. § 271)**

41. Plaintiffs re-allege and incorporate by reference the allegations provided in the preceding paragraphs.

11

**Answer:** Defendant realleges and adopts for reference herein their answers to Paragraphs 1-40 of the Third Amended Complaint as though fully set forth herein.

42. Defendants are making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use Infringing Products that directly and/or indirectly infringe the Patents-in-Suit.

**Answer:** Denied.

43. Defendants have infringed the Patents-in-Suit through the alleged acts and will continue to do so unless enjoined by this Court. Defendants' wrongful conduct has caused Plaintiffs to suffer irreparable harm resulting from the loss of control of their lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention. Plaintiffs are entitled to injunctive relief under 35 U.S.C. § 283.

**Answer:** Denied.

44. Plaintiffs are entitled to recover damages adequate to compensate for the infringement, including Defendants' profits under 35 U.S.C. § 289. Plaintiffs are also entitled to recover any other damages as appropriate under 35 U.S.C. § 284.

**Answer:** Denied.

   **VI.    IN ANSWER TO THE ALLEGATIONS OF COUNT II DESIGN PATENT INFRINGEMENT –
         PATENT NO. D738,256 (35 U.S.C. § 271)**

45. Plaintiffs re-allege and incorporate by reference the allegations provided in the preceding paragraphs.

**Answer:** Defendant realleges and adopts for reference herein their answers to Paragraphs 1-44 of the Third Amended Complaint as though fully set forth herein.

46. Defendants are making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use Infringing Products that directly and/or indirectly infringe the Patents-in-Suit.

**Answer:** Denied.

47. Defendants have infringed the Patents-in-Suit through the alleged acts and will continue to do so unless enjoined by this Court. Defendants' wrongful conduct has caused Plaintiffs to suffer

irreparable harm resulting from the loss of control of thier lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention. Plaintiffs are entitled to injunctive relief under 35 U.S.C. § 283.

**Answer:** Denied.

48. Plaintiffs are entitled to recover damages adequate to compensate for the infringement, including Defendants' profits under 35 U.S.C. § 289. Plaintiffs are also entitled to recover any other damages as appropriate under 35 U.S.C. § 284.

**Answer:** Denied.

### VII. IN ANSWER TO THE ALLEGATIONS OF COUNT III DESIGN PATENT INFRINGEMENT – PATENT NO. D785,112 (35 U.S.C. § 271)

49. Plaintiffs re-allege and incorporate by reference the allegations provided in the preceding paragraphs.

**Answer:** Defendant realleges and adopts for reference herein their answers to Paragraphs 1-49 of the Third Amended Complaint as though fully set forth herein.

50. Defendants are making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use Infringing Products that directly and/or indirectly infringe the Patents-in-Suit.

**Answer:** Denied.

51. Defendants have infringed the Patents-in-Suit through the alleged acts and will continue to do so unless enjoined by this Court. Defendants' wrongful conduct has caused Plaintiffs to suffer irreparable harm resulting from the loss of control of thier lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention. Plaintiffs are entitled to injunctive relief under 35 U.S.C. § 283.

**Answer:** Denied.

52. Plaintiffs are entitled to recover damages adequate to compensate for the infringement, including Defendants' profits under 35 U.S.C. § 289. Plaintiffs are also entitled to recover any other damages as appropriate under 35 U.S.C. § 284.

**Answer:** Denied.

VIII.   IN ANSWER TO THE ALLEGATIONS OF COUNT IV DESIGN PATENT INFRINGEMENT –
        PATENT NO. D784,195 (35 U.S.C. § 271)

53.  Plaintiffs re-allege and incorporate by reference the allegations provided in the preceding paragraphs.

     **Answer:** Defendant realleges and adopts for reference herein their answers to Paragraphs 1-54 of the

     Third Amended Complaint as though fully set forth herein.

54.  Defendants are making, using, offering for sale, selling, and/or importing into the United States for

     subsequent sale or use Infringing Products that directly and/or indirectly infringe the Patents-in-Suit.

     **Answer:** Denied.

55.  Defendants have infringed the Patents-in-Suit through the alleged acts and will continue to do so

     unless enjoined by this Court. Defendants' wrongful conduct has caused Plaintiffs to suffer

     irreparable harm resulting from the loss of control of their lawful patent rights to exclude others from

     making, using, selling, offering for sale, and importing the patented invention. Plaintiffs are entitled

     to injunctive relief under 35 U.S.C. § 283.

     **Answer:** Denied.

56.  Plaintiffs are entitled to recover damages adequate to compensate for the infringement, including

     Defendants' profits under 35 U.S.C. § 289. Plaintiffs are also entitled to recover any other damages

     as appropriate under 35 U.S.C. § 284.

     **Answer:** Denied.

**AFFIRMATIVE DEFENSES**

Defendant affirmatively asserts the following defense:

1. Defendant's Accused Product (ASIN No. B08R23QQT8 "Gyroor Product B", identified in Dkt. No. 227-3, p. 4 of 4) has not infringed, and are not infringing, directly or indirectly by inducement, any valid and enforceable claim contained in U.S. Patent Nos. D737,723, D738,256, D785,112, and D784,195 (collectively "the Patents-in-Suit").

2. Plaintiffs allege that the Patents-in-Suit [Dkt. No. 101, ¶14; Dkt No. 101-13] have been infringed by the Accused Product. However, Plaintiffs made no allegations against Defendant or the Gyroor Product B in the Third Amended Complaint. [Dkt. No. 101]. Plaintiffs made no specific allegations aside from stating that "Gaodeshang-US store is related to or affiliated with Gyroor-US" [Dkt. No. 227-1, ¶19], which is unsupported by any evidence.

3. The "hypothetical ordinary observer who is conversant with the prior art" standard obviously applies here. A person with "little or no experience" with hoverboards clearly does not satisfy the ordinary observer test in the present case. Therefore, in light of the many similar prior art designs, the hypothetical ordinary observer in this case should be a purchaser who is familiar with hoverboards and the prior art designs.

4. In the most recent landmark case *Lanard Toys, Ltd. v. Dolgencorp LLC*, 958 F.3d 1337 (Fed. Cir 2020), The Feder Circuit prescribe that:

> [T]he ordinary observer is deemed to view the differences between the patented design and the accused product ***in the context of the prior art***. When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art. And when the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer." *Id*. (quoting *Egyptian Goddess*, 543 F.3d at 676).

5.  The Patents-in-Suit and the U.S. Design Patent D739,906 Patent (hereinafter, "D'906") are very close in their overall hourglass shape, the differences between the Gyroor Product B and the Patents-in-Suit are important to the ordinary observer. In light of the prior art D'906 Patent, an ordinary observer will not find the Gyroor Product B and the Patents-in-Suit have substantially similar overall "hourglass" shape.

6.  Under 35 U.S.C. §102(a)(2), prior art includes "a patent issued under section 151, or in an application for patent published or deemed published under section 122(b), in which the patent or application, as the case may be, names another inventor and was effectively filed before the effective filing date of the claimed invention."

| Patents | Application Filing Date | Effective Filing Date |
|---|---|---|
| **Prior Art - D'906 Patent** | **03/12/2013** | **03/12/2013** |
| Patents-in-Suit (D'723 Patent) | 12/15/2014 | 12/15/2014 |
| Patents-in-Suit (D'256 Patent) | 12/15/2014 | 12/15/2014 |
| Patents-in-Suit (D'195 Patent) | 02/29/2016 | 02/29/2016 |
| Patents-in-Suit (D'112 Patent) | 02/29/2016 | 02/29/2016 |

7.  Here, the application of the D'906 Patent was effectively filed before the effective filing date of the Patents-in-Suit. Therefore, D'906 Patent is prior art to all Patents-in-Suit.

8.  This "hourglass" peripheral shape was first disclosed and claimed in the prior art — the D'906 Patent. As shown below in Table 1, the Patents-in-Suit all have an hourglass shape with smooth curves similar to the D'906 patent. [Dkt. No. 376, Decl. of Rake, ¶¶53-56, 92, 98; Dkt. No. 377, Decl. of Gandy, ¶¶47, 53, 59, 64]. In contrast, the Gyroor Product B has a more "angular body shape with sharp edges." *Id*.

9.  The "revolutionary design" was already claimed in the prior art D'906 Patent. Plaintiffs did not invent the hourglass shape of hoverboards. Therefore, in light of the D'906 Patent, an ordinary observer will find the Gyroor Product B has a substantially different overall shape from the Patents-in-Suit.

| Table 1 — Comparison of Overall Hourglass Shape | |
|---|---|
| Patents-in-Suit<br>D'723 Patent | |
| Patents-in-Suit<br>D'256 Patent | |
| Patents-in-Suit<br>D'195 Patent | |
| Patents-in-Suit<br>D'112 Patent | |
| **Prior Aart**<br>**D'906 Patent** | |
| Gyroor Product B | |
| Substantially Similar Patent<br>D'856 Patent | |





| Table. 2 — Comparison of Overall Shape – Front View | |
|---|---|
| Patents-in-Suit D'723 Patent | |
| Patents-in-Suit D'256 Patent | |
| Patents-in-Suit D'195 Patent | |
| Patents-in-Suit D'112 Patent | |
| **Prior Art D'906 Patent** | |
| Gyroor Product B | |
| Substantially Similar Patent D'856 Patent | |

10.  Table 2 compares the front view of the prior art D'906 Patent, the Patents-in-Suit and the Gyroor

Product B. Both the prior art D'906 Patent and the Patents-in-Suit have "a slightly raised convex

contour, while the corresponding center portion of the top surface of the design of Gyroor "B"

hoverboard is substantially flat and slightly recessed down below the opposing outer foot surfaces." [Dkt. No. 377, Decl. of Gandy, ¶¶ 42, 47, 53, 64].

11. Under the "ordinary observer" test, a court must consider the ornamental features [of each element] and analyze how they impact the overall design." *Lanard*, 958 F.3d at 1343-44 (citing *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, at 1295 (Fed. Cir. 2010)).

12. "While the 'ordinary observer' test is not an element-by-element comparison," it also does not ignore the reality that designs can, and often do, have both functional and ornamental aspects. *Id*. (citing *Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1372 (Fed. Cir. 2006)). Analyzing the ornamental features is necessary to determine how the ornamental differences in each element would impact the ordinary observer's perception of the overall designs. *Id*.

13. The ornamental features of each element in the Gyroor Product B are based on the claimed design of the U.S. D808,856 Patent.

14. An ordinary observer would consider the Gyroor Product B to be substantially similar to the D'856 Patent. [Dkt. No. 376, Decl. of Rake, ¶188]. In contrast, no ordinary observer would consider Gyroor Product B is substantially similar to the Patents-in-Suit because none of the Patent-in-Suit claimed any ornamental features of the Gyroor Product B.

15. ***First***, none of the Patents-in-Suit claimed foot pad design of the Gyroor Product B. The shape and design of the foot pads of the Gyroor Product B are plainly different from the Patents-in-Suit. [Dkt. No. 377, Decl. of Gandy, ¶¶71, 77; Dkt. No. 376, Decl. of Rake, ¶¶117,125].

16. Here, D'723 and D'256 Patents both claim the design of straight divergent lines on the foot pads. Neither D'195 nor D'112 claims any designs of the foot pads.

17. The D'856 Patent claimed unique patterns on the foot pads, which are plainly dissimilar from the designs of the Patents-in-Suit. The Gyroor Product B has identical foot pad design as D'856 Patent.



18. **Second, none of the Patents-in-Suit claimed the wheel covers design of the Gyroor Product B. The wheel covers of the Gyroor Product B are plainly different from the Patents-in-Suit.**

19. The Patents-in-Suit all have semi-circular wheel covers and extend over and cover the entire wheel. None of the Patent-in-Suit claimed the wheel covers design of the Gyroor Product B.

20. The shape of the wheel covers in the Patents-in-Suit and the prior art D'906 patent are both semi-circular, "while the wheel covers on the design of Gyroor Product 'B' hoverboard have opposing diagonally straight side edges a substantially flat top edge which curves outwardly. [Dkt. No. 377, Decl. of Gandy, ¶¶48, 60, 65]. Therefore, "even to the most casual observer, the differences are significant." [Dkt. No. 376, Decl. of Rake, ¶¶122, 129, 135, 141].



| | | |
|---|---|---|
| Patents-in-Suit D'723 Patent | Patents-in-Suit D'256 Patent | Patents-in-Suit D'195 Patent |
| Patents-in-Suit D'112 Patent | Substantially Similar Patent D'856 Patent | Gyroor Product B |

21. ***Third***, none of the Patents-in-Suit claimed the light design of the Gyroor Product B. The position, shape, and size of the lights of the Gyroor Product B are also plainly different from the Patents-in-Suit. None of the Patent-in-Suit claimed the light design of the Gyroor Product B.

22. Highlighted, the Patents-in-Suit all have different size and shape and are positioned differently on the front panel of the hoverboard. [Dkt. No. 376, Decl. of Rake, ¶¶ 93, 99, 105, 111].

23. The light design of the Gyroor Product B features thin narrow strips that curves up to the fenders, which is identical to the claimed design in the D'856 Patent.



| | | |
|---|---|---|
| Patents-in-Suit<br>D'723 Patent | | FIG.6 |
| Patents-in-Suit<br>D'256 Patent | | FIG.7 |
| Patents-in-Suit<br>D'195 Patent | | FIG.6 |
| Patents-in-Suit<br>D'112 Patent | | FIG.6 |
| Gyroor<br>Product B | | |
| Substantially<br>Similar Patent<br>D'856 Patent | | |

24. "The *Gestalt principles* of visual perception teaches us that the eye is attracted to areas of high contrast." [Dkt. No. 376, Decl. of Rake, ¶25]. Under the *Figure-Ground principles*, "some shapes or contours take a prominent role (figure) while others recede into the background (ground)." *Id*. at 26.

25. Certain designs would be perceived as more dramatic and obvious. Here, the size, shape, and character of the lights, size and shape of the wheel covers, and the patterns of the foot pads would significantly impact the ordinary observer's visual perception of the overall designs. [Dkt. No. 376, Decl. of Rake, ¶¶93, 99, 105, 111, 175-178]. As a result, the differences between the Patents-in-Suit and accused design of Gyroor Product B take on greater significance to an ordinary observer.

26. Consequently, an ordinary observer, taking into account the prior art, would not believe the accused design of Gyroor Product B to be the same as the patented design.

27. It is obvious that the D808,856 has a unique design from the Patents-in-Suit.

28. In this case, an ordinary observer will either **a)** find the Accused Products substantially similar to the D'856 patent, which does not infringe the Patents-in-Suit; or **b)** will be drawn to those aspects of the claimed designs of the Patents-in-Suit that differ from the D'856 patent; and those different aspects would make the distinctions between the Patents-in-Suit and Accused Products readily apparent to an ordinary observer.

29. In light of the D'856 patent, the Gyroor Product B and the Patents-in-Suit are plainly dissimilar.

## COUNTERCLAIMS

### JURISDICTION AND VENUE

1.  These are Counterclaims brought by Defendant/Counterclaimant Defendant ("Defendant"), against Plaintiffs/Counterdefendant Hangzhou Chic Intelligent Technology Co., Ltd., and Unicorn Global, Inc. (collectively "Plaintiffs") for declaratory judgment that U.S. Patent Nos. D737,723, D738,256, D785,112, and D784,195 (collectively "the Patents-in-Suit") are not infringed, either directly or indirectly by inducement, by Defendant's use, manufacture, sale, and offer for sale of products and technology as identified in the Third Amended Complaint.

2.  This Court has jurisdiction over these Counterclaims under the federal question jurisdiction of this Court, 28 U.S.C. § 1331, 28 U.S.C. § 1338(a), 28 U.S.C. § 1367(a), the Declaratory Judgment Act, 28 U.S.C. § 2201-2202, the patent laws, 35 U.S.C. § 1, et seq., and under Rule 13 of the Federal Rules of Civil Procedure.

3.  Venue in this district is proper pursuant to 28 U.S.C. § 1400(b), in that this case is an action for patent infringement arising under the patent laws of the United States and pursuant to 28 U.S.C. § 1391(b) and (c), as Plaintiffs/Counter defendants have a principal place of business and thereby reside in this judicial district, a substantial portion of the events giving rise to these Counterclaims occurred in this judicial district, and Plaintiffs are subject to personal jurisdiction of this Court having commenced its action in this Court.

### THE PARTIES

4.  Defendant/Counterclaimant is Chinese company with its principal place of business in China.

5.  Defendant has an internet storefront that it uses to sell hoverboards.

6.  Upon information and belief, Plaintiff/Counterdefendant Hangzhou Chic Intelligent Technology Co., Ltd. ("Hangzhou") is a Chinese company located in the Liangzhou University Science and Technology Park, Yuhang District, Hangzhou, China.

**COUNT I**
**Declaratory Judgment of Noninfringement**

30. Defendant's Accused Product (ASIN No. B08R23QQT8 "Gyroor Product B", identified in Dkt. No. 227-3, p. 4 of 4) has not infringed, and are not infringing, directly or indirectly by inducement, any valid and enforceable claim contained in U.S. Patent Nos. D737,723, D738,256, D785,112, and D784,195 (collectively "the Patents-in-Suit").

31. Plaintiffs allege that the Patents-in-Suit [Dkt. No. 101, ¶14; Dkt No. 101-13] have been infringed by the Accused Product. However, Plaintiffs made no allegations against Defendant or the Gyroor Product B in the Third Amended Complaint. [Dkt. No. 101]. Plaintiffs made no specific allegations aside from stating that "Gaodeshang-US store is related to or affiliated with Gyroor-US" [Dkt. No. 227-1, ¶19], which is unsupported by any evidence.

32. The "hypothetical ordinary observer who is conversant with the prior art" standard obviously applies here. A person with "little or no experience" with hoverboards clearly does not satisfy the ordinary observer test in the present case. Therefore, in light of the many similar prior art designs, the hypothetical ordinary observer in this case should be a purchaser who is familiar with hoverboards and the prior art designs.

33. In the most recent landmark case *Lanard Toys, Ltd. v. Dolgencorp LLC*, 958 F.3d 1337 (Fed. Cir 2020), The Feder Circuit prescribe that:

> [T]he ordinary observer is deemed to view the differences between the patented design and the accused product ***in the context of the prior art***. When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art. And when the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer." *Id.* (quoting *Egyptian Goddess*, 543 F.3d at 676).

25

34. The Patents-in-Suit and the U.S. Design Patent D739,906 Patent (hereinafter, "D'906") are very close in their overall hourglass shape, the differences between the Gyroor Product B and the Patents-in-Suit are important to the ordinary observer. In light of the prior art D'906 Patent, an ordinary observer will not find the Gyroor Product B and the Patents-in-Suit have substantially similar overall "hourglass" shape.

35. Under 35 U.S.C. §102(a)(2), prior art includes "a patent issued under section 151, or in an application for patent published or deemed published under section 122(b), in which the patent or application, as the case may be, names another inventor and was effectively filed before the effective filing date of the claimed invention."

| Patents | Application Filing Date | Effective Filing Date |
|---|---|---|
| **Prior Art - D'906 Patent** | **03/12/2013** | **03/12/2013** |
| Patents-in-Suit (D'723 Patent) | 12/15/2014 | 12/15/2014 |
| Patents-in-Suit (D'256 Patent) | 12/15/2014 | 12/15/2014 |
| Patents-in-Suit (D'195 Patent) | 02/29/2016 | 02/29/2016 |
| Patents-in-Suit (D'112 Patent) | 02/29/2016 | 02/29/2016 |

36. Here, the application of the D'906 Patent was effectively filed before the effective filing date of the Patents-in-Suit. Therefore, D'906 Patent is prior art to all Patents-in-Suit.

37. This "hourglass" peripheral shape was first disclosed and claimed in the prior art — the D'906 Patent. As shown below in Table 1, the Patents-in-Suit all have an hourglass shape with smooth curves similar to the D'906 patent. [Dkt. No. 376, Decl. of Rake, ¶¶53-56, 92, 98; Dkt. No. 377, Decl. of Gandy, ¶¶47, 53, 59, 64]. In contrast, the Gyroor Product B has a more "angular body shape with sharp edges." *Id*.

38. The "revolutionary design" was already claimed in the prior art D'906 Patent. Plaintiffs did not invent the hourglass shape of hoverboards. Therefore, in light of the D'906 Patent, an ordinary observer will find the Gyroor Product B has a substantially different overall shape from the Patents-in-Suit.

| Table 1 — Comparison of Overall Hourglass Shape | |
|---|---|
| Patents-in-Suit<br>D'723 Patent |  |
| Patents-in-Suit<br>D'256 Patent | |
| Patents-in-Suit<br>D'195 Patent | |
| Patents-in-Suit<br>D'112 Patent | |
| **Prior Aart**<br>**D'906 Patent** | |
| Gyroor Product B | |
| Substantially Similar Patent<br>D'856 Patent | |



| Table. 2 — Comparison of Overall Shape – Front View | |
| --- | --- |
| Patents-in-Suit<br>D'723 Patent | |
| Patents-in-Suit<br>D'256 Patent | |
| Patents-in-Suit<br>D'195 Patent | |
| Patents-in-Suit<br>D'112 Patent | |
| **Prior Art**<br>**D'906 Patent** | |
| Gyroor Product B | |
| Substantially Similar Patent<br>D'856 Patent | |

39.  Table 2 compares the front view of the prior art D'906 Patent, the Patents-in-Suit and the Gyroor

Product B. Both the prior art D'906 Patent and the Patents-in-Suit have "a slightly raised convex

contour, while the corresponding center portion of the top surface of the design of Gyroor "B"

hoverboard is substantially flat and slightly recessed down below the opposing outer foot surfaces."
[Dkt. No. 377, Decl. of Gandy, ¶¶ 42, 47, 53, 64].

40. Under the "ordinary observer" test, a court must consider the ornamental features [of each element] and analyze how they impact the overall design." *Lanard*, 958 F.3d at 1343-44 (citing *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, at 1295 (Fed. Cir. 2010)).

41. "While the 'ordinary observer' test is not an element-by-element comparison," it also does not ignore the reality that designs can, and often do, have both functional and ornamental aspects. *Id*. (citing *Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1372 (Fed. Cir. 2006)). Analyzing the ornamental features is necessary to determine how the ornamental differences in each element would impact the ordinary observer's perception of the overall designs. *Id*.

42. The ornamental features of each element in the Gyroor Product B are based on the claimed design of the U.S. D808,856 Patent.

43. An ordinary observer would consider the Gyroor Product B to be substantially similar to the D'856 Patent. [Dkt. No. 376, Decl. of Rake, ¶188]. In contrast, no ordinary observer would consider Gyroor Product B is substantially similar to the Patents-in-Suit because none of the Patent-in-Suit claimed any ornamental features of the Gyroor Product B.

44. *First*, none of the Patents-in-Suit claimed foot pad design of the Gyroor Product B. The shape and design of the foot pads of the Gyroor Product B are plainly different from the Patents-in-Suit. [Dkt. No. 377, Decl. of Gandy, ¶¶71, 77; Dkt. No. 376, Decl. of Rake, ¶¶117,125].

45. Here, D'723 and D'256 Patents both claim the design of straight divergent lines on the foot pads. Neither D'195 nor D'112 claims any designs of the foot pads.

46. The D'856 Patent claimed unique patterns on the foot pads, which are plainly dissimilar from the designs of the Patents-in-Suit. The Gyroor Product B has identical foot pad design as D'856 Patent.



47. ***Second*, none of the Patents-in-Suit claimed the wheel covers design of the Gyroor Product B. The wheel covers of the Gyroor Product B are plainly different from the Patents-in-Suit.**

48. The Patents-in-Suit all have semi-circular wheel covers and extend over and cover the entire wheel. None of the Patent-in-Suit claimed the wheel covers design of the Gyroor Product B.

49. The shape of the wheel covers in the Patents-in-Suit and the prior art D'906 patent are both semi-circular, "while the wheel covers on the design of Gyroor Product 'B' hoverboard have opposing diagonally straight side edges a substantially flat top edge which curves outwardly. [Dkt. No. 377, Decl. of Gandy, ¶¶48, 60, 65]. Therefore, "even to the most casual observer, the differences are significant." [Dkt. No. 376, Decl. of Rake, ¶¶122, 129, 135, 141].



50. ***Third***, none of the Patents-in-Suit claimed the light design of the Gyroor Product B. The position, shape, and size of the lights of the Gyroor Product B are also plainly different from the Patents-in-Suit. None of the Patent-in-Suit claimed the light design of the Gyroor Product B.

51. Highlighted, the Patents-in-Suit all have different size and shape and are positioned differently on the front panel of the hoverboard. [Dkt. No. 376, Decl. of Rake, ¶¶ 93, 99, 105, 111].

52. The light design of the Gyroor Product B features thin narrow strips that curves up to the fenders, which is identical to the claimed design in the D'856 Patent.



53. "The *Gestalt principles* of visual perception teaches us that the eye is attracted to areas of high contrast." [Dkt. No. 376, Decl. of Rake, ¶25]. Under the *Figure-Ground principles*, "some shapes or contours take a prominent role (figure) while others recede into the background (ground)." *Id*. at 26.

54. Certain designs would be perceived as more dramatic and obvious. Here, the size, shape, and character of the lights, size and shape of the wheel covers, and the patterns of the foot pads would significantly impact the ordinary observer's visual perception of the overall designs. [Dkt. No. 376, Decl. of Rake, ¶¶93, 99, 105, 111, 175-178]. As a result, the differences between the Patents-in-Suit and accused design take on greater significance to an ordinary observer.

55. Consequently, an ordinary observer, taking into account the prior art, would not believe the accused design to be the same as the patented design.

56. Defendants further incorporates its Motion for Summary Judgement of Noninfringement [Dkt. No. 110] in support of its noninfringement defense.

57. It is obvious that the D808,856 has a unique design from the Patents-in-Suit.

58. In this case, an ordinary observer will either **a)** find the Accused Products substantially similar to the D'856 patent, which does not infringe the Patents-in-Suit; or **b)** will be drawn to those aspects of the claimed designs of the Patents-in-Suit that differ from the D'856 patent; and those different aspects would make the distinctions between the Patents-in-Suit and Accused Products readily apparent to an ordinary observer.

59. In light of the D'856 patent, the Accused Products and the Patents-in-Suit are plainly dissimilar.

60. Plaintiffs brought and continued this suit with the knowledge that Defendant's products do not infringe any claims of the Patents-in-Suit, or without conducting an investigation that was reasonable under the circumstances to determine whether Defendants' products allegedly infringed any claims of the Patents-in-Suit.

61. Plaintiffs brought this suit for the improper purpose of excluding Defendant's noninfringing product from the market by unnecessarily delaying and expanding this action by amending and adding products with or without the Court's approval.

## **DEFENDANTS' PRAYER FOR RELIEF**

**WHEREFORE**, Defendants pray that

1. Plaintiffs be denied all relief against Defendant;

2. The Accused Product does not infringe the Patents-in-Suit;

3. Plaintiffs' Third Amended Complaint be dismissed with prejudice and judgment entered in favor of Defendant;

4. Plaintiff takes nothing by way of this action;

5. Defendant be awarded compensatory and punitive damages;

6. Defendant be awarded costs of suit, attorneys' fees and any other relief which the Court deems proper.

## **DEMAND FOR JURY TRIAL**

Defendants demands a jury trial on any issue triable of right by jury.

Date: 10/21/2021

/s/ Tianyu Ju

Tianyu Ju,
Iris.Ju@glacier.law
Glacier Law PLLC
200 E. Randolph Dr., Ste. 5100
Chicago, IL 60601
Tao Liu,
Tao.Liu@glacier.law
He Cheng,
Robin.Cheng@glacier.law
Glacier Law PLLC
200 Park Avenue, Suite1703
New York, NY 10166
***Attorney for Defendant***

34

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this October 21, 2021, I electronically filed the foregoing file with the Clerk of Court using the CM/ECF system, and service was perfected on all counsel of record and interested parties through this system, which will deliver a true and correct copy of the foregoing documents via CM/ECF.


Date: 10/21/2021                                   /s/ Tianyu Ju
                                                   Tianyu Ju, Esq.