**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ABC CORPORATION I, | ) | |
| ABC CORPORATION II, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 1:20-cv-04806 |
| v. | ) | |
| | ) | Honorable Thomas M. Durkin |
| THE PARTNERSHIPS AND | ) | Magistrate Judge Jeffrey Cole |
| UNINCORPORATED ASSOCIATIONS | ) | |
| IDENTIFIED ON SCHEDULE "A", | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**ANSWER TO COUNTERCLAIM BY DEFENDANT GYROOR**

Plaintiffs/Counterclaim Defendants Hangzhou Chic Intelligent Technology Co. and Unicorn Global, Inc. ("Plaintiffs"), by and through its attorneys, Loeb & Loeb LLP, answer Defendant Gyroor's ('Defendant") counterclaims as follows:

**JURISDICTION AND VENUE**

1.     These are Counterclaims brought by Defendant/Counterclaimant Defendant ("Defendant"), against Plaintiffs/Counter[claim] [D]efendants Hangzhou Chic Intelligent Technology Co., Ltd., and Unicorn Global, Inc. (collectively "Plaintiffs") for declaratory judgment that U.S. Patent Nos. D737,723, D738,256, D785,112, and D784,195 (collectively "the Patents-in-Suit") are not infringed, either directly or indirectly by inducement, by Defendant's use,

1

manufacture, sale, and offer for sale of products and technology as identified in the Third Amended Complaint.

**ANSWER:** Admitted that Defendant has attempted to bring a counterclaim against Plaintiffs for declaratory judgment of non-infringement. Plaintiffs otherwise deny any allegation in which Defendant claims to have not infringed Plaintiffs' patents.

2.      This Court has jurisdiction over these Counterclaims under the federal question jurisdiction of this Court, 28 U.S.C. § 1331, 28 U.S.C. § 1338(a), 28 U.S.C. § 1367(a), the Declaratory Judgment Act, 28 U.S.C. § 2201-2202, the patent laws, 35 U.S.C. § 1, et seq., and under Rule 13 of the Federal Rules of Civil Procedure.

**ANSWER:** Admitted that the Court has federal question jurisdiction over Defendant's counterclaims under 28 U.S.C. § 1331, 28 U.S.C. § 1338(a), and 28 U.S.C. § 1367(a). Denied as to the remaining allegations.

3.      Venue in this district is proper pursuant to 28 U.S.C. § 1400(b), in that this case is an action for patent infringement arising under the patent laws of the United States and pursuant to 28 U.S.C. § 1391(b) and (c), as Plaintiffs/Counter[claim] [D]efendants have a principal place of business and thereby reside in this judicial district, a substantial portion of the events giving rise to these Counterclaims occurred in this judicial district, and Plaintiffs are subject to personal jurisdiction of this Court having commenced its action in this Court.

**ANSWER:** Admitted that venue in this district is proper under 28 U.S.C. § 1400(b). Denied that Plaintiffs have a principal place of business in this district and thereby reside in this district.

## THE PARTIES

4.      Defendant/Counterclaimant is Shenzhen Chetaidou Keji Youxian Gongsi ("Chetaidou"), a Chinese company with its principal place of business in China.

**ANSWER:**  Plaintiffs are without sufficient knowledge or information so as to form a belief as to the truth of the allegations and therefore deny the same.

5.      Defendant/Counterclaimant owns an internet storefront and website that its uses to sell its Gyroor Brand hoverboards, incorporated with its own intellectual properties, including but not limited to U.S.Design Patents.

**ANSWER:**  Denied.

6.      Upon information and belief, Plaintiff/Counter[claim] [D]efendant Hangzhou Chic Intelligent Technology Co., Ltd. ("Hangzhou") is a Chinese company located in the Liangzhou University Science and Technology Park, Yuhang District, Hangzhou, China.

**ANSWER:**  Admitted.

## COUNT I
## Declaratory Judgment of Noninfringement[1]

7.      The hoverboard market is a rapidly growing industry. Both Plaintiffs Hangzhou Chic Intelligent Technology Co. Ltd. ("Chic") and Unicorn Global, Inc ("Unicorn," together "Plaintiffs") and Defendant are in the business of selling hoverboards.

---

[1] The numbering of Defendant's Counterclaims is incorrect, proceeding from 6 directly to 75, thereby omitting paragraphs 7 to 74.  Plaintiffs will adopt the correct numerical order, referring to paragraphs 75-147 as Requests 7 to 79

**ANSWER:** Admitted that Plaintiffs and Defendant are in the business of selling hoverboards. Denied as to the remainder.

8. Plaintiffs are notoriously known for bringing baseless infringement claims against competitors to gainmarket monopoly.

**ANSWER:** Denied.

9. Plaintiffs have made numerous attempts to enforce meritless patent infringement claims against their competitors. For instance, in one of Plaintiffs' attempt to enforce meritless patent infringement claims against their competitors, the defendant/competitor contended that "Plaintiffs have taken an 'any means necessary' approach to ensure their competitors are off the market." (Introduction Statement by another hoverboard seller - GoLabs, Inc. *Case No.* 3:19-cv-00754 (TXND*), Dkt. No.* 39*,* p. 1.)

**ANSWER:** Denied.

10. Shenzhen Chetaidou Keji Youxian Gongsi ("Chetaidou" or "Defendant"), the owner of the Gyroor Brand, takes intellectual property protection very seriously. It has dedicated significant resources to developing its products, branding, proprietary designs, and inventions. As will be demonstrated, every Gyroor product involved here is based on a valid U.S. patent.

**ANSWER**: Denied

11. ***Initially***, Plaintiffs allege that ASIN - B07S4KXRQR sold by Defendant Gyroor has infringed Plaintiffs' design patents [Dkt. No. 227; 227-1, ¶15; 227-3]. The accused product is also identified by Plaintiffs as "Gyroor B." ("Gyroor Product B") [Dkt. No. 385, pp. 19-20, Dkt. No. 385, pp. 19-20]. Chetaidou, the owner of Defendant, ceased selling the Gyroor Product B immediately after it was added as a defendant pursuant to the Court Order on May 24, 2021. [Dkt. No. 253].

4

| **Gyroor Product B (Multiple colors)** ASIN - B07S4KXRQR[Dkt. No. 227; 227-3; 227-1, p.47/92] |  |  |
|---|---|---|

**ANSWER:** Denied.

12. ***However, at the time of applying for the Second Preliminary Injunction,*** Plaintiffs added new allegations against Defendant, without amending their Complaint, and claim that three other products – identified as "Gyroor A," "Gyroor C" and "Gyroor D" [Dkt. No. 385, pp. 19-20, Dkt. No. 385, pp. 19-20] (collectively,"Gyroor Products").

**ANSWER:** Denied that Plaintiffs added new allegations against Defendant.

13. This lawsuit is objectively baseless and subjectively motivated by bad faith. Plaintiffs have filed and maintained the lawsuit not because they have a reasonable chance of prevailing on the merits, but becausethey hope to use the lawsuit as an anticompetitive weapon against Gyroor brand.

**ANSWER:** Denied.

14. Evidence provided by Plaintiffs identifies the alleged infringing products ("Gyroor Product B") as "*Gyroor G2 Hoverboard 8.5" Off Road All Terrain Off Road Hoverboard with Bluet[]ooth Speakers and LED Lights, UL2272 Certified Self Balancing Scooter*" [Dkt. No. 227-1, p. 47 of 92]. The Gyroor B has a unique ASIN number B07S4KXRQR. [Dkt. No. 227-1, p. 49 of 92; 227-3, p. 4 of 4].

**ANSWER:** Admitted that Plaintiffs have identified this unique ASIN number, among others.

5

15.     In the most recent landmark case *Lanard Toys, Ltd. v. Dolgencorp LLC*, 958 F.3d 1337 (Fed. Cir 2020), the Feder[al] Circuit prescribe[d] that:

> [T]he ordinary observer is deemed to view the differences between the patented design and the accused product ***in the context of the prior art***. When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art. And when the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer." *Id*. (quoting *Egyptian Goddess*, 543 F.3d at 676).

**ANSWER:**  Admitted that this allegation discloses a partial quote with Defendant's emphasis selected from *Lanard Toys, Ltd. v. Dolgencorp LLC*, 958 F.3d 1337 (Fed. Cir 2020). Plaintiffs deny the remaining allegations of the paragraph.

16.     **Gyroor Product B** Here, because the Patents-in-Suit and the U.S. Design Patent D937,906 Patent ("D'906 Patent") are very close in their overall hourglass shape, the differences between the Gyroor Product B and the Patents-in-Suit are important to the ordinary observer. In light of the prior art D'906 Patent, an ordinary observer will not find the Gyroor Product B and the Patents-in-Suit have substantially similar overall "hourglass" shape.

**ANSWER:**  Denied.

17.     This "hourglass" peripheral shape was first disclosed and claimed in the prior art — the U.S. Design Patent D739,906 Patent ("D'906 Patent" attached hereto as Exhibit 5). As shown below in Table 1, page 7, the Patents-in-Suit all have an hourglass shape with smooth curves similar to the D'906 patent. [Dkt. No. 376, Decl. of Rake, ¶¶53-56, 92, 98; Dkt. No. 377, Decl. of Gandy, ¶¶47, 53, 59, 64]. In contrast, Gyroor B has amore "angular body shape with sharp edges." *Id*.

**ANSWER:**  Denied.

18.    The "revolutionary design" was already claimed in the prior art D'906 Patent. Plaintiffs did not invent the hourglass shape of hoverboards. Therefore, in light of the D'906 Patent, an ordinary observer will find the Gyroor B has a substantially different overall shape from the Patents-in-Suit.



| Table 1 — Comparison of Overall Hourglass Shape | |
|---|---|
| Patent-in-Suit D'723 Patent | |
| Patent-in-Suit D'256 Patent | |
| Patent-in-Suit D'195 Patent | |
| Patent-in-Suit D'112 Patent | |
| **Prior Art D'906 Patent** | |
| Gyroor Product B | |
| Substantially Similar Patent D'856 Patent | |



| Table 2 — Comparison of Overall Shape –<br>Front View | |
|---|---|
| Patent-in-Suit<br>D'723 Patent | |
| Patent-in-Suit<br>D'256 Patent | |
| Patent-in-Suit<br>D'195 Patent | |
| Patent-in-Suit<br>D'112 Patent | |
| **Prior Art**<br>**D'906**<br>**Patent** | |
| Gyroor Product B | |
| Substantially Similar<br>PatentD'856 Patent | |

**ANSWER:** Denied.

19.     Table 2 compares the front view of the prior art D'906 Patent, the Patents-in-Suit and the Gyroor Product B. Both the prior art D'906 Patent and the Patents-in-Suit have "a slightly raised convex contour, while the corresponding center portion of the top surface of the design of Gyroor "B" hoverboard is substantially flat and slightly recessed down below the opposing outer foot surfaces." [Dkt. No. 377, Decl. of Gandy, ¶¶ 42, 47, 53, 64].

**ANSWER:**  Denied.

20.     Therefore, in light of the D'906 Patent, an ordinary observer will find the Gyroor Product B has asubstantially different overall shape from the Patents-in-Suit.

**ANSWER:**  Denied.

21.     Under the "ordinary observer" test, a court must consider the ["]ornamental features [of each element] andanalyze how they impact the overall design." *Lanard*, 958 F.3d at 1343-44 (citing *Richardson v. StanleyWorks, Inc*., 597 F.3d 1288, at 1295 (Fed. Cir. 2010)).

**ANSWER:**  Admitted that this allegation discloses a partial quote with Defendant's emphasis selected from *Lanard Toys, Ltd. v. Dolgencorp LLC*, 958 F.3d 1337 (Fed. Cir 2020).

22.     "While the 'ordinary observer' test is not an element-by-element comparison," it also does not ignore the reality that designs can, and often do, have both functional and ornamental aspects. *Id*. (citing *Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1372 (Fed. Cir. 2006)). Analyzing the ornamental features is necessary to determine how the ornamental differences in each element would impact the ordinary observer's perception of the overall designs. *Id*.

**ANSWER:**  Denied.

23.     The ornamental features of each element in the Gyroor Product B are based on the claimed design of the U.S. D808,856 Patent.

9

**ANSWER:** Denied.

24.     An ordinary observer would consider the Gyroor Product B to be substantially similar to the D'856 Patent.[Dkt. No. 376, Decl. of Rake, ¶188]. In contrast, no ordinary observer would consider Gyroor Product B issubstantially similar to the Patents-in-Suit because none of the Patent-in-Suit claimed any ornamental features of the Accused Product.

**ANSWER:** Denied.

25.     ***First***, none of the Patents-in-Suit claimed foot pad design of the Gyroor Product B. The shape and design ofthe foot pads of the Gyroor Product B are plainly different from the Patents-in-Suit. [Dkt. No. 377, Decl. of Gandy, ¶¶71, 77; Dkt. No. 376, Decl. of Rake, ¶¶117,125].

**ANSWER:** Denied.

26.     Here, D'723 and D'256 Patents both claim the design of straight divergent lines on the foot pads. Neither D'195 nor D'112 claims any designs of the foot pads.

**ANSWER:** Denied.

27.     The D'856 Patent claimed unique patterns on the foot pads, which are plainly dissimilar from the designs ofthe Patents-in-Suit. The Gyroor Product B has identical foot pad design as D'856 Patent.



| Patent-in-Suit D'723 Patent | Patent-in-Suit D'256 Patent | Patent-in-Suit D'195 Patent |



| Patent-in-Suit<br>D'112 Patent | Substantially Similar<br>Patent D'856 Patent | Gyroor Product B |

**ANSWER:** Denied.

28. ***Second***, none of the Patents-in-Suit claimed the wheel covers design of the Gyroor Product B. The wheelcovers of the Gyroor Product B are plainly different from the Patents-in-Suit.

**ANSWER:** Denied.

29. he Patents-in-Suit all have semi-circular wheel covers and extend over and cover the entire wheel. None of the Patent-in-Suit claimed the wheel covers design of the Gyroor Product B.

**ANSWER:** Denied.

30. The shape of the wheel covers in the Patent-in-Suit and the prior art D'906 patent are both semi-circular,"while the wheel covers on the design of Gyroor 'B' hoverboard have opposing diagonally straight side edges a substantially flat top edge which curves outwardly. [Dkt. No. 377, Decl. of Gandy, ¶¶48, 60, 65]. Therefore, "even to the most casual observer, the differences are significant." [Dkt. No. 376, Decl. of Rake, ¶¶122, 129, 135, 141].



| | | |
|---|---|---|
| Patents-in-SuitD'723 Patent | Patents-in-SuitD'256 Patent | Patents-in-SuitD'195 Patent |
| Patents-in-SuitD'112 Patent | Substantially Similar PatentD'856 Patent | Gyroor Product B |

**ANSWER:** Denied.

31. ***Third***, none of the Patents-in-Suit claimed the light design of the Gyroor Product B. The position, shape, andsize of the lights of the Gyroor Product B are also plainly different from the Patents-in-Suit. None of the Patent-in-Suit claimed the light design of the Gyroor Product B.

**ANSWER:** Denied.

32. Highlighted, the Patents-in-Suit all have different size and shape and are positioned differently on thefront panel of the hoverboard. [Dkt. No. 376, Decl. of Rake, ¶¶ 93, 99, 105, 111].

**ANSWER:** Denied.

33. The light design of the Gyroor Product B features thin narrow strips that curves up to the fenders, which is identical to the claimed design in the D'856 Patent.



**ANSWER:** Denied.

34.     "The *Gestalt principles* of visual perception teaches us that the eye is attracted to areas of high contrast." [Dkt. No. 376, Decl. of Rake, ¶25]. Under the *Figure-Ground principles*, "some shapes orcontours take a prominent role (figure) while others recede into the background (ground)." *Id*. at 26.

**ANSWER:**  Denied.

35.     Certain designs would be perceived as more dramatic and obvious. Here, the size, shape, and character ofthe lights, size and shape of the wheel covers, and the patterns of the foot pads would significantly impact the ordinary observer's visual perception of the overall designs. [Dkt. No. 376, Decl. of Rake, ¶¶ ¶¶93, 99,105, 111, 175-178]. As a result, the differences between the Patents-in-Suit and accused design take on greater significance to an ordinary observer.

**ANSWER:**  Denied.

36.     Consequently, an ordinary observer, taking into account the prior art, would not believe the accused design to be the same as the patented design.

**ANSWER:**  Denied.

37.     Because the Patents-in-Suit and the D'906 Patent are very close in their overall hourglass shape, the differences between the Gyroor Product B and the Patents-in-Suit are important to the ordinary observer. Inlight of the prior art D'906 Patent, an ordinary observer will not find the Gyroor Product B and the Patents- in-Suit have substantially similar overall "hourglass" shape.

**ANSWER:**  Denied.

38.     The application of the D'906 Patent was effectively filed before the effective filing date of the Patents-in-Suit. Therefore, D'906 Patent is prior art to all Patents-in-Suit.

**ANSWER:**  Denied.

39.     The "revolutionary design" was already claimed in the prior art D'906 Patent. Plaintiffs did not invent thehourglass shape of hoverboards. Therefore, in light of the D'906 Patent, an ordinary observer will find the Gyroor Product B has a substantially different overall shape from the Patents-in-Suit.

**ANSWER:** Denied.

40.     Furthermore, in light of the D'906 Patent, an ordinary observer will find the Gyroor Product B has asubstantially different overall shape from the Patents-in-Suit.

**ANSWER:** Denied.

41.     **Gy[r]oor Product A** The ornamental features of each element in the Gyroor Product A are based on the claimed design of the U.S. D808,857 Patent. An ordinary observer would consider the Gyroor Product A tobe substantially similar to the D'857 Patent. [Dkt. No. 376, Decl. of Rake, ¶187].

**ANSWER:** Denied.

42.     In contrast, no ordinary observer would consider Gyroor Product A is substantially similar to the Patents-in-Suit because none of the Patent-in-Suit claimed any ornamental features of the Gyroor Product A.

**ANSWER:** Denied.

43.     ***First***, none of the Patents-in-Suit claimed foot pad design of the Gyroor Product A. The shape and design of the foot pads of the Gyroor Product A are plainly different from the Patents-in-Suit. [Dkt. No. 377, Decl.of Gandy, ¶¶27, 33; Dkt. No. 376, Decl. of Rake, ¶¶63,77].

**ANSWER:** Denied.

44.     Here, D'723 and D'256 Patents both claim the design of straight divergent lines on the foot pads. NeitherD'195 nor D'112 claims any designs of the foot pads.

**ANSWER:** Denied.

45.     The D'857 Patent claimed unique curved lines on the foot pads, which are plainly dissimilar from the designs of the Patents-in-Suit. The Accused Product has identical foot pad design as D'857 Patent.



| | | |
|---|---|---|
| Patent-in-Suit D'723 Patent | Patent-in-Suit D'256 Patent | Patent-in-Suit D'195 Patent |
| Patent-in-Suit D'112 Patent | Substantially Similar Patent D'857 Patent | Gyroor Product A |

**ANSWER:** Denied.

46.     ***Second***, none of the Patents-in-Suit claimed the wheel covers design of the Gyroor Product A. The wheel covers of the Gyroor Product A are plainly different from the Patents-in-Suit.

**ANSWER:** Denied.

47.     The Patents-in-Suit all have semi-circular wheel covers and extend over and cover the entire wheel. Noneof the Patent-in-Suit claimed the wheel covers design of the Gyroor Product A.

**ANSWER:** Denied.

48. The shape of the wheel covers in the Patens-in-Suit and the prior art D'906 patent are both semi-circular, "while the wheel covers on the design of the Gyroor "A" hoverboard are somewhat squared off." [Dkt. No.377, Decl. of Gandy, ¶¶26, 32, 38, 43].

**ANSWER:** Denied.

49. Therefore, "even to the most casual observer, the differences are significant." [Dkt. No. 376, Decl. of Rake, ¶¶68, 75, 81, 87].



| Patent-in-SuitD'723 Patent | Patent-in-SuitD'256 Patent | Patent-in-SuitD'195 Patent |
| Patent-in-SuitD'112 Patent | **Prior Art** D'906 Patent | Gyroor Product A |

**ANSWER:** Denied.

50. ***Third***, none of the Patents-in-Suit claimed the light design of the Gyroor Product A. The position, shape, and size of the lights of the Gyroor Product A are also plainly different from the Patents-in-Suit. None ofthe Patent-in-Suit claimed the wheel covers design of the Gyroor Product A.

**ANSWER:** Denied.

51.     Highlighted, the Patents-in-Suit all have different size and shape and are positioned differently on the front panel of the hoverboard. [Dkt. No. 376, Decl. of Rake, ¶¶ 66, 72, 78, 84].

**ANSWER:** Denied.

52.     The light design of the Gyroor Product A features thin narrow straight strips lights, which is identical to the claimed design in the D'856 Patent.





| Substantially Similar PatentD'297 Patent | | |

**ANSWER:** Denied.

53. **Gyroor Product C** The ornamental features of each element in the Gyroor Product C are based on the claimed design of the U.S. D808,857 Patent. An ordinary observer would consider the Gyroor Product to be substantially similar to the D'857 Patent. [Dkt. No. 376, Decl. of Rake, ¶187].

**ANSWER:** Denied.

54. In contrast, no ordinary observer would consider Gyroor Product Cis substantially similar to the Patents-in-Suit because none of the Patent-in-Suit claimed any ornamental features of the Gyroor Product C.

**ANSWER:** Denied.

55. *First*, none of the Patents-in-Suit claimed foot pad design of the Gyroor Product C. The shape and design of the foot pads of the Gyroor Product Care plainly different from the Patents-in-Suit. [Dkt. No. 377, Decl.of Gandy, ¶¶71, 77; Dkt. No. 376, Decl. of Rake, ¶¶117,125].

**ANSWER:** Denied.

56. Here, D'723 and D'256 Patents both claim the design of straight divergent lines on the foot pads. NeitherD'195 nor D'112 claims any designs of the foot pads.

**ANSWER:** Denied.

57. The D'857 Patent claimed unique curved lines on the foot pads, which are plainly dissimilar from thedesigns of the Patents-in-Suit. The Gyroor Product Chas identical foot pad design as D'857 Patent.



| Patent-in-Suit D'723 Patent | Patent-in-Suit D'256 Patent | Patent-in-Suit D'195 Patent |
| Patent-in-Suit D'112 Patent | Substantially Similar Patent D'857 Patent | Gyroor Product C |

**ANSWER:** Denied.

58. ***Second***, none of the Patents-in-Suit claimed the wheel covers design of the Gyroor Product C. The wheel covers of the Gyroor Product C are plainly different from the Patents-in-Suit.

**ANSWER:** Denied.

59. The Patents-in-Suit all have semi-circular wheel covers and extend over and cover the entire wheel. None of the Patent-in-Suit claimed the wheel covers design of the Gyroor Product C.

**ANSWER:** Denied.

60. The shape of the wheel covers in the Patents-in-Suit and the prior art D'906 patent are both semi-circular, "while the wheel covers on the design of Gyroor 'C' hoverboard do not

extend down over the wheel" as in '723 and '195 Patent, and "are wider than those of the design" of the '256 and '112 patent. [Dkt. No. 377, Decl. of Gandy, ¶¶70, 76, 82, 87].

**ANSWER:** Denied.

61. Therefore, "even to the most casual observer, the differences are significant." [Dkt. No. 376, Decl. of Rake, ¶¶122, 129, 135, 141].



| | | |
|---|---|---|
| Patent-in-Suit D'723 Patent | Patent-in-Suit D'256 Patent | Patent-in-Suit D'195 Patent |
| Patents-in-Suit D'112 Patent | **<u>Prior Aart</u> D'906 Patent** | Gyroor Product C |

**ANSWER:** Denied.

62. ***Third***, none of the Patents-in-Suit claimed the light design of the Gyroor Product C. The position, shape, and size of the lights of the Gyroor Product C are also plainly different from the Patents-in-Suit. None of the Patent-in-Suit claimed the light design of the Gyroor Product C.

**ANSWER:** Denied.

63.    Highlighted, the Patents-in-Suit all have different size and shape and are positioned differently on the front panel of the hoverboard. [Dkt. No. 376, Decl. of Rake, ¶¶ 120, 126, 132, 138].

**ANSWER:**  Denied.

64.    The light design of the Gyroor Product C features the thin narrow straight strips lights, which is identical to the claimed design in the D'857 Patent.



**ANSWER:** Denied.

65. **Gyroor Product D** The ornamental features of each element in the Gyroor Product D are based on the claimed design of the U.S. D891,297 Patent ("D'297 Patent," attached hereto as Exhibit 10). An ordinaryobserver would consider the Gyroor Product D to be substantially similar to the D'297 Patent. [Dkt. No. 376, Decl. of Rake, ¶189]..

**ANSWER:** Denied.

66. In contrast, no ordinary observer would consider Gyroor Product D is substantially similar to thePatents-in-Suit because none of the Patent-in-Suit claimed any ornamental features of the Gyroor Product D.

**ANSWER:** Denied.

67. *First*, none of the Patents-in-Suit claimed foot pad design of the Gyroor Product D. The shape and design of the foot pads of the Gyroor Product Are plainly different from the Patents-in-Suit. [Dkt. No.377, Decl. of Gandy, ¶¶93, 99; Dkt. No. 376, Decl. of Rake, ¶¶146, 152, 158, 164].

**ANSWER:** Denied.

68. Here, D'723 and D'256 Patents both claim the design of straight divergent lines on the food pads. Neither D'195 nor D'112 claims any designs of the foot pads.

**ANSWER:** Denied.

69. The D'297 Patent claimed unique three parallel lines and other intricate patterns on the foot pads, whichare plainly dissimilar from the designs of the Patents-in-Suit. The Gyroor Product D has identical foot pad design as D'297 Patent.



| | | |
|---|---|---|
| Patent-in-Suit D'723 Patent | Patent-in-Suit D'256 Patent | Patent-in-SuitD'195 Patent |
| Patent-in-Suit D'112 Patent | Substantially Similar Patent D'297 Patent | Gyroor Product D |

**ANSWER:** Denied.

70. **_Second_**, none of the Patents-in-Suit claimed the wheel covers design of the Gyroor Product D. The wheel covers of the Gyroor Product Are plainly different from the Patents-in-Suit.

**ANSWER:** Denied.

71. The Patents-in-Suit all have semi-circular wheel covers and extend over and cover the entire wheel. None of the Patent-in-Suit claimed the wheel covers design of the Gyroor Product D.

**ANSWER:** Denied.

72. The shape of the wheel covers in the Patents-in-Suit and the prior art D'906 patent are both semi-circular, "while the wheel covers on the design of Gyroor "D" hoverboard have opposing diagonally straight side edges a substantially flat top edge which curves outwardly but does not extend over theentire wheel." [Dkt. No. 377, Decl. of Gandy, ¶¶92, 98, 103, 108].

**ANSWER:** Denied.

73. Therefore, "even to the most casual observer, the differences are significant."[Dkt. No. 376, Decl. of Rake, ¶¶150, 156, 162, 168].



| | | |
|---|---|---|
| Patent-in-Suit D'723 Patent | Patent-in-Suit D'256 Patent | Patent-in-Suit D'195 Patent |
| Patent-in-Suit D'112 Patent | Substantially Similar Patent D'297 Patent | Gyroor Product D |

**ANSWER:** Denied.

74. ***Third***, none of the Patents-in-Suit claimed the light design of the Gyroor Product D. The position, shape, and size of the lights of the Gyroor Product D are also plainly different from the Patents-in-Suit. None of the Patent-in-Suit claimed the light design of the Gyroor Product D.

**ANSWER:** Denied.

25

75.     Highlighted, the Patents-in-Suit all have different size and shape and are positioned differently on thefront panel of the hoverboard. [Dkt. No. 376, Decl. of Rake, ¶¶147, 153, 159, 165].

**ANSWER:** Denied.

76.     The light design of the Gyroor Product D features thin narrow strips, which is identical to the claimed design in the D'856 Patent.



Case: 1:20-cv-04806 Document #: 480 Filed: 11/12/21 Page 27 of 28 PageID #:13317

**ANSWER:** Denied.

77.     Under the *Gestalt* Test, the size, shape, and character of the lights, size and shape of the wheel covers, and the patterns of the foot pads would significantly impact the ordinary observer's visual perception ofthe overall designs. [Dkt. No. 376, Decl. of Rake, ¶¶66, 72, 78, 84, 171-174 for Gyroor Product A; ¶¶120, 126, 132, 138, 179-182 for Gyroor Product C ; ¶¶147, 153, 159, 165, 183-186 for Gyroor ProductD]. As a result, the differences between the Patents-in-Suit and accused design take on greater significance to an ordinary observer.

**ANSWER:** Denied.

78.     Plaintiff's willingness to grant a license is apparent in this case. Aside from granting other patents to Defendant previously, Plaintiffs' counsel has approached Defendant's prior counsel and offered to "sendover a license agreement" of the Patents-in-Suit [Dkt No. 391, p. 4].

**ANSWER:** Denied.

## COUNT II
### Antitrust

**ANSWER:** Because Plaintiffs have moved to dismiss Count II under Rule 12(b)(6),  no answers to the allegations of Count II are required under Rule 12(a)(4). Plaintiffs therefore expressly do not answer the allegations of Count II, instead reserving their right to answer the allegations of Count II if necessary after resolution of the pending motion to dismiss

Dated: November 12, 2021              Respectfully submitted,

                                      By: /s/  *Adam Kelly*
                                          Adam Kelly
                                          Douglas Masters
                                          Arthur Yuan
                                          Neil Nandi

321 North Clark Street, Suite 2300
Chicago, Illinois  60654
Tel.: 312-464-3100
Fax: 312-464-3111
Email:  akelly@loeb.com
Email:  dmasters@loeb.com
Email:  ayuan@loeb.com
Email:  nnandi@loeb.com

Marwa Abdelaziz (admitted *pro hac vice*)
LOEB & LOEB LLP
345 Park Avenue
New York, New York 10154
Tel.:  (212) 407-4388
Fax:  (212) 407-4990
Email:  mabdelaziz@loeb.com

*Attorneys for Plaintiffs*