IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ABC CORPORATION I, )<br>ABC CORPORATION II, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>THE PARTNERSHIPS AND )<br>UNINCORPORATED ASSOCIATIONS )<br>IDENTIFIED ON SCHEDULE "A", )<br>)<br>Defendants. )<br>)<br>) | Case No. 1:20-cv-04806<br><br>Honorable Thomas M. Durkin |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTIONS TO DISMISS
COUNTERCLAIM OF DEFENDANT GYROOR**

Defendant Gyroor has pled an antitrust counterclaim Count II. But that claim asserts none of the elements of a federal antitrust claim and is barred by the *Noerr-Pennington* doctrine. Similar to the now-dismissed antitrust counterclaim pled by co-defendant Gyroor-US, *see* Dkt. 443, p. 2–3, this Court should dismiss Gyroor's antitrust counterclaim Count II.

**BACKGROUND**

On November 19, 2020, Plaintiffs filed their operative, Third Amended Complaint ("Complaint"). Dkt. 101. The Complaint alleges that various online stores primarily based outside of the United States, including Gyroor-US, sold and are selling hoverboard products in violation of four design patents issued to Plaintiff Hangzhou Chic Intelligent Technology Co. The Complaint expressly states that Plaintiffs "bring this action against the Defendants identified in attached Schedule A." *Id*. at 1. The original Schedule A (Dkt. 101-14) did not list Gyroor because Plaintiffs believed that storefront to be an alter-ego of defendant Gyroor-US. To prevent Gyroor-US from evading the preliminary injunction by hiding behind related, non-defendant entities,

Plaintiffs moved to add Gyroor as a defendants to Schedule A. Dkt. 227. Over Gyroor-US's objection, the Court granted Plaintiffs' motion. Dkt. 253.

Plaintiffs served Gyroor with the Complaint and summons on June 25, 2021. Dkt. 310. Gyroor moved to dismiss Plaintiffs' claims against it, which the Court denied. Dkts. 365, 449. Then Gyroor asserted counterclaims for non-infringement and violation of the antitrust laws. Dkt. 465. Gyroor's antitrust counterclaim (Count II) essentially alleges that Plaintiffs engaged in anticompetitive practices by initiating a sham litigation in an attempt to monopolize the hoverboard industry. *Id.* ¶¶ 148-163.[1] Gyroor also alleges—without any supporting factual statements—that Plaintiffs "knowingly engag[ed] in inequitable conduct in the prosecution of their Patent." *Id.* ¶ 157. This Court, however, has held on two independent occasions that Plaintiffs have a "likelihood of success on the merits" and "have proved a *prima facie* case of design patent infringement." Dkt. 147 at 9; Dkt. 456 at 9. This Court previously dismissed a similar antitrust counterclaim pled by Gyroor-US. *See* Dkt. 443, p. 2–3 ("Defendant's allegations and arguments otherwise fail to address the elements of a Sherman Act claim. Therefore, it is dismissed.")

## **ARGUMENT**

Gyroor's antitrust counterclaim Claim II consists solely of conclusory and unsubstantiated statements that fail to satisfy the most basic of federal pleadings standards under *Iqbal* and *Twombly*. Even if Gyroor had adequately pled the elements of an antitrust violation, the *Noerr-Pennington* doctrine precludes antitrust liability when the allegedly anticompetitive act was prosecution of a lawsuit, unless an exception applies. The facts alleged, however, are inconsistent

---

[1] Defendant has incorrectly numbered the paragraphs of its counterclaims, with the order proceeding from 6 to 75, omitting paragraphs 7-74. For purposes of this motion, Plaintiffs will refer to the paragraph numbers as they are written in Defendant's pleadings.

with any exception to the *Noerr-Pennington* doctrine. Therefore, this Court should dismiss Gyroor's antitrust counterclaim Count II under Rules 8 and 12(b)(6).

**I.     Count II Must Be Dismissed Because It Does Not Satisfy Federal Pleading Standards**

Federal Rule of Civil Procedure 8, as interpreted by the Supreme Court in *Iqbal* and *Twombly*, sets the pleading standards in a patent case. *See, e.g., Cleversafe, Inc. v. Amplidata, Inc.*, No. 11 C 4809, 2011 WL 6379300, 2011 U.S. Dist. LEXIS 145995, at *3 (N.D. Ill. Dec. 20, 2011) (relying on *Iqbal* and *Twombly* to dismiss patent invalidity counterclaims); *see also Groupon Inc. v. MobGob LLC*, No. 10 C 7456, 2011 WL 2111986, 2011 U.S. Dist. LEXIS 56937 at *12–13 (N.D. Ill. May 25, 2011). This standard requires more than "[t]hreadbare recitals of … a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Supreme Court has emphasized the particular need for rigorous enforcement of Rule 8 for antitrust claims. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

Gyroor's antitrust counterclaim does not satisfy Rule 8. As an initial matter, Gyroor fails to even identify under which section of the Sherman Act it brings these claims. *See generally*, Dkt. 465 ¶¶ 148-163. Gyroor does refer to "attempted monopolization by Plaintiffs." *Id.*, ¶ 159. This omission suggests that Gyroor attempts to bring its counterclaim under Section 2. *See* 15 U.S.C. § 2 (prohibiting every "attempt to monopolize . . . any part of the trade or commerce among the several States"). To plead attempted monopolization, Gyroor must allege (1) Plaintiffs' specific intent to achieve monopoly power in a relevant market; (2) predatory or anticompetitive conduct directed to accomplishing this purpose; and (3) a dangerous probability that the attempt at monopolization will succeed. *GlobalTap LLC v. Smart Tap LLC,* No. 13 C 5322, 2015 WL 791256, 2015 U.S. Dist. LEXIS 21687, *15 (N.D. Ill. Feb. 24, 2015), *citing Mercatus Grp., LLC*

*v. Lake Forest Hosp.*, 641 F.3d 834, 854 (7th Cir. 2011). But Gyroor has not properly pleaded any of these elements.[2]

Regarding the first element, nothing in Gyroor's pleading establishes that Plaintiffs had the specific intent to achieve monopoly power in the hoverboard market. Gyroor alleges that Plaintiffs engaged in "affirmative and willful acts of attempted monopolization," but offers no alleged facts—either direct or indirect—in support of this claim. Dkt. 465, ¶ 159. As to the second element, the only anticompetitive conduct alleged by Gyroor relates to harm it has suffered as a result of patent enforcement litigation. But for reasons explained *infra* Section II, plaintiffs who initiate a lawsuit in order to enforce their patent rights are immune to antitrust claims premised on that litigation.

As to the third element, pleading a dangerous probability of monopolization requires "identify[ing] the relevant market and apprais[ing] [Plaintiffs'] exclusionary power within that market." *GlobalTap LLC*, 2015 U.S. Dist. LEXIS 21687, at *15–16. For "alleged bad faith enforcement of a patent to create or threaten to create monopoly power, the patent must dominate a real market." *Pollenex Corp. v. Sunbeam-Home Comfort*, No. 92 C 98, 1992 WL 199080, 1992 U.S. Dist. LEXIS 11735, at *4–5 (N.D. Ill. Aug. 6, 1992), *aff'd without op.*, 39 F.3d 1197 (Fed.

---

[2] Plaintiffs observe that discerning the actual alleged wrongdoing here presents a challenge, because many of the allegations are not entirely coherent. For example, Gyroor at one point suggests that the court has dissolved the preliminary injunction. *See, e.g.*, Dkt. 465, ¶ 152 ("Absent a court judgment in Defendant's favor, the preliminary injunction would have remained in place . . . ."). The longest antitrust allegation seems to consist, in part, of a sentence fragment. *See id.*, ¶ 151 ("Plaintiffs intentionally targeted its competitor Gyroor brand because . . . the resellers whose assets restrained enforced indemnification in all aspect from Defendant."). Further, Gyroor seems to admit that all of the remaining defendants in this case are the exact same defendant, despite having previously disputed that assertion. *See id.* ¶ 158 ("[M]ost of the defendants reached settlement by signing the licensing agreement, except two, Defendant in this case and DGL Group, Ltd.").

Cir. 1994). Here, Gyroor makes no allegations that Plaintiffs' asserted patents dominate the market. The closest Gyroor comes is pure speculation regarding hypothetical events: "When each and every hoverboard sold in the market will have to pay royalt[ies] to Plaintiffs . . . [that] will ultimately result [in] a monopoly." Dkt. 465, ¶ 154. Absent well-pleaded allegations that Plaintiffs' asserted patents do presently dominate a real market, Gyroor has not pleaded the third element of an attempted monopolization claim.

Thus, the antitrust counterclaim Claim II is not well-pleaded and should be dismissed.

## II. Count II Must Be Dismissed Under The *Noerr-Pennington* Doctrine

Even if Gyroor had properly pleaded its antitrust claim, the claim would still fail as a matter of law. Gyroor's antitrust claim appears to be based solely on Plaintiffs' attempts to enforce their design patent rights through this litigation. But under the *Noerr-Pennington* doctrine, "[t]hose who petition government for redress are generally immune from antitrust liability." *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 56 (1993). Patentees, like Plaintiffs here, have *Noerr-Pennington* immunity from antitrust suits if they conformed to patent law in procuring and enforcing their patents. *See Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1304 (Fed. Cir. 2004) ("A patent owner who brings a suit for infringement, without more, is generally exempt from the antitrust laws for that action . . . ."); *see also Indus. Models v. SNF, Inc.*, 716 F. App'x 949, 956 (Fed. Cir. 2017) (affirming dismissal of antitrust counterclaims on the basis of *Noerr-Pennington*). This immunity applies "even when litigation has anticompetitive effects." *GlobalTap LLC*, 2015 U.S. Dist. LEXIS 21687, at *14.

Here, the conduct alleged in support of Gyroor's antitrust claim falls squarely within the *Noerr-Pennington* doctrine. *See* Dkt. 465 ¶ 150 ("Plaintiffs brought this suit for the improper purpose of excluding Defendant's noninfringing product from the market.") To overcome *Noerr-Pennington* immunity, a defendant must be able to establish one of the doctrine's two exceptions:

5

"(1) that the asserted patent was obtained through knowing and willful fraud . . . or (2) that the infringement suit was a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1067-68 (Fed. Cir. 1998). Gyroor purports to invoke both exceptions.

First, Gyroor claims that Plaintiffs "knowingly engaged in inequitable conduct in the prosecution of their patent." *See* Dkt. 465 ¶ 147. In other words, Gyroor accuses Plaintiffs, without any evidence or factual allegations, of obtaining their patents through fraudulent means. But such a "fraud on the PTO" allegation is subject to Rule 9(b). *See Sun-Flex Co. v. Softview Comput. Prods. Corp.,* 750 F. Supp. 962, 963 (N.D. Ill. 1990) (granting motion to strike under Rule 12(f) because defendant's inequitable conduct affirmative defense failed to "specify the time, place, and content of any alleged misrepresentations that plaintiff made to the PTO."). For example, Gyroor must allege the specific individual accused of inequitable conduct, along with facts to support an inference that the named individual both knew of the material information allegedly withheld, and deliberately withheld it with an intent to deceive the PTO. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009). But Gyroor does not plead what the misrepresentations were, the specific individual who made them, when they were made, where they were made, and how they were made. Taken together, this allegation fails to satisfy the pleading requirements of Rule 8, let alone the higher specificity requirements of Rule 9(b).

Second, Gyroor attempts to overcome *Noerr-Pennington* immunity by invoking the "sham litigation" exception. *See* Dkt. 465 ¶¶ 149, 151, 153, 155, 156. A lawsuit is a sham "when it is pursued in order to impose high costs of defending rather than in order to obtain relief." *Vill. of Bolingbrook v. Citizens Utils. Co. of Ill.*, 864 F.2d 481, 483 (7th Cir. 1988). But Gyroor has not

alleged—nor could it possibly allege—sufficient facts to demonstrate that this exception is remotely applicable. To trigger the exception, Gyroor must offer enough facts to raise a plausible inference that Plaintiffs' bringing of this case was "objectively baseless," *i.e.*, that "no reasonable litigant could realistically expect success on the merits." *GlobalTap*, 2015 U.S. Dist. LEXIS 21687, at *20. Gyroor's only effort to satisfy this element is merely parroting the language of the requirement. Dkt. 465, ¶ 155 ("[N]o reasonable person could realistically expect success on the merits of the sham infringement action . . . ."). In addition to not being well-pleaded, the allegation is implausible: this Court has held, on two separate occasions, that Plaintiffs actually have established a "likelihood of success on the merits" and "have proved a *prima facie* case of design patent infringement." Dkt. 147 at 9; Dkt. 456 at 9. And this Court has found Gyroor in contempt for violating the preliminary injunction associated with those two previously-mentioned findings. Dkt. 444.

Gyroor's counterclaim therefore fails to establish an exception to the *Noerr-Pennington* doctrine.

## CONCLUSION

Because Gyroor's antitrust claim Count II is insufficiently pleaded and does not state a legally cognizable claim, and because Plaintiffs' infringement lawsuits are immunized from antitrust claims under the *Noerr-Pennington* doctrine, this Court should dismiss Count II under Rule 12(b)(6).

Date: November 12, 2021　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　　LOEB & LOEB LLP

　　　　　　　　　　　　　　　　　　　　　/s/ *Adam Kelly*
　　　　　　　　　　　　　　　　　　　　　Adam Kelly

Doug Masters
Arthur Yuan
Neil Nandi
321 North Clark Street, Suite 2300
Chicago, Illinois  60654
Tel.: 312-464-3100
Email:  akelly@loeb.com
Email:  dmasters@loeb.com
Email:  ayuan@loeb.com
Email:  nnandi@loeb.com

Marwa Abdelaziz (admitted *pro hac vice*)
LOEB & LOEB LLP
345 Park Avenue
New York, New York 10154
Tel.:  (212) 407-4000
Email:  mabdelaziz@loeb.com