# United States Court of Appeals
# for the Federal Circuit

————————————

**ABC CORPORATION I, ABC CORPORATION II,**
*Plaintiffs-Appellees*

**EBAY, INC.,**
*Plaintiff*

**v.**

**THE PARTNERSHIP AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", TOMOLOO OFFICIAL, TOMOLOO INE, TOMOLOO FRANCHISE, TOMOLOO-US, TOMOLOO FLAGSHIP, TOMOLOO TC, TOMOLOO DX, TOMOLOO INT, CARTSTACK, DIDEN WU, HUSNAL-COLLECTIONS, MHESTORE2009, WHOLESALESHOP666, CARRIE_YUX-5, 2013TANKSTRONG001, MIJIASTORE, PAUTA60, SKATEBOARDSTORE2012, SMG-STORE, STRONGJENNIE, CHO POWER SPORTS, SYLUS, XGN, SHAMOLUOTUO, XUEWEIWEIFUZHUANGDIAN, EVERCROSS, XIE SHI, RUNCHENYUN, TOMOLOO, SHOPCHEAPUNIVERSAL, TOMOLOO-NX, AOXTECH, BETTER TOMOLOO, LISON ET, HGSM STOREFRONT, GYROOR US,**
*Defendants*

**URBANMAX, GAODESHANGUS, GYROOR, FENGCHI-US, JIANGYOU-US, GYROSHOES, HGSM,**
*Defendants-Appellants*

———————————

2022-1071

———————————

Appeal from the United States District Court for the Northern District of Illinois in No. 1:20-cv-04806, Judge Thomas M. Durkin.

———————————

Decided: October 28, 2022

———————————

MARK BERKOWITZ, Tarter Krinsky & Drogin LLP, New York, NY, argued for plaintiffs-appellees. Also represented by RICHARD LOMUSCIO. Also represented by Adam G. Kelly, Douglas N. Masters, Neil G. Nandi, Arthur Tan-Chi Yuan, Loeb & Loeb LLP, Chicago, IL (withdrawn).

HE CHENG, Glacier Law LLP, New York, NY, argued for defendants-appellants. Also represented by TIANYU JU, TAO LIU.

———————————

Before DYK, TARANTO, and STOLL, *Circuit Judges*.

DYK, *Circuit Judge*.

This is an appeal from the district court's entry of an October 2021 preliminary injunction against appellants Urbanmax, GaodeshangUS, Gyroor, Fengchi-US, Jiangyou-US, Gyroshoes, and HGSM (collectively "appellants"). Because the district court failed to meet the requirements of Federal Rule of Civil Procedure 65(d) and our precedent in finding that the plaintiffs were likely to succeed on the merits, we reverse and remand.

BACKGROUND

Plaintiffs Hangzhou Chic Intelligent Technology Co., Ltd. and Unicorn Global, Inc. (collectively "plaintiffs")[1] own four design patents on hoverboards: U.S. Patent Nos. D737,723 ("D'723 patent"), D738,256 ("D'256 patent"), D784,195 ("D'195 patent"), and D785,112 ("D'112 patent"). The four patented designs are set forth in Appendix A[2] of this opinion.

Appellants sell Gyroor-branded hoverboards. Plaintiffs brought suit against appellants claiming that products sold by appellants infringed plaintiffs' patents. The parties focused on four products—"Gyroor A," "Gyroor B," "Gyroor C," and "Gyroor D." On appeal, the parties have referred to these products as "Accused Product A," "Accused Product B," "Accused Product C," and "Accused Product D." As an example, Appendix A of this opinion compares Product D to the patented designs. Because the asserted patents cover different angles of view, different angles of the accused products are relevant for determining infringement.

Plaintiffs sought a temporary restraining order, a preliminary injunction, a final injunction, and damages. The

---

[1]     The case caption names "ABC Corporation I" and "ABC Corporation II." Hangzhou Chic Intelligent Technology Co., Ltd. and Unicorn Global, Inc. are the real parties in interest. Hangzhou Chic Intelligent Technology is listed as the owner on the four patents. Unicorn Global is the exclusive U.S. distributor of plaintiffs' products. The caption also lists eBay as a plaintiff. eBay is a third-party plaintiff not relevant to this appeal.

[2]     The figures in Appendix A were prepared by appellants, but plaintiffs do not dispute their accuracy. Arrows and boxes on the images are appellants' annotations and should be disregarded for the purposes of this opinion.

district court entered a temporary restraining order on September 22, 2020, followed by a preliminary injunction on November 24, 2020, which eventually enjoined appellants here from "offering for sale, selling, and importing any products not authorized by Plaintiffs and that include any reproduction, copy or colorable imitation of the design claimed in the Patents-in-Suit." In a separate opinion issued today, we conclude that the entry of the 2020 preliminary injunction was procedurally improper for lack of Rule 65(a) notice and vacate that injunction "as of its issuance." *ABC Corp. I v. P'ship & Unincorporated Ass'ns*, -- F.4th -- (Fed. Cir. 2022).

In light of motions to set aside the 2020 preliminary injunction raising issues regarding the procedural propriety of the injunction, the district court permitted plaintiffs to file a renewed motion for a preliminary injunction. On August 24, 2021, plaintiffs filed a motion for entry of a second preliminary injunction, the injunction that is at issue in this appeal. Appellants did not argue that the request for the 2021 preliminary injunction presented any of the procedural problems present in the 2020 injunction.

The focus of the parties' dispute before the district court as to the 2021 injunction was whether plaintiffs had established a likelihood of success on the merits that the accused products infringed one or more claims of the asserted patents. In order to establish design patent infringement, a plaintiff must show that "an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010) (citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 681 (Fed. Cir. 2008) (en banc)). "When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art." *Egyptian Goddess*, 543 F.3d at 676.

Central to the parties' dispute was prior art U.S. Patent No. D739,906 ("D'906 patent"). That patent displayed and claimed an hourglass shape for a hoverboard, a prominent feature of each of the plaintiffs' patented designs and most of the accused products. A figure showing the D'906 patent design appears later in this opinion.

In support of the motion for a preliminary injunction, plaintiffs submitted the 2021 expert report of Paul Hatch. Hatch's report described the patents-in-suit, identified the four accused products, and then opined that the accused products infringed the patents-in-suit. For each patent, Hatch displayed side-by-side images of the asserted patent and accused products and described how the ordinary observer test applied to the "Accused Products" as a group, without providing a product-by-product analysis. For instance, Hatch opined, "Unlike the cited prior art [including the D'906 patent], the claimed design of the '195 Patent and the Accused Products share an integrated *'hourglass' body* with many horizontal styling lines across the body and a relatively flat surface across the top, arched covers over the wheel area, larger radii on the front and back of the underside. Unlike any of the prior art the foot plates narrow as they extend toward the center." J.A. 8410 (emphasis added). Hatch did not explain why having an "hourglass body" was "unlike" the prior art.[3]

In a section titled, "The Cited Prior Art Show The Patents-In-Suit Have A Broad Scope," Hatch included three tables with prior art figures. J.A. 8401–04. The first table showed the "Cited Prior Art From the Face of the '723 and '256 Patents." J.A. 8401–02. This table contained six figures from prior art patents. It did not include the prior art D'906 patent. The second table showed prior art cited by

---

[3]    Other features, such as the "relatively flat surface across the top," seem to have been present in the prior art as well. J.A. 8410.

the D'195 patent and contained eight figures from prior art patents, including the D'906 patent. The third table showed twelve figures from prior art patents, including the D'906 patent, cited by the D'112 patent.

After each table, Hatch provided a cursory analysis concluding that "the overall impression of the claimed design . . . is entirely unique" and that "[n]one of the prior art create the impression of" the claimed design, *e.g.*, J.A. 8404, for instance, "an integrated *'hourglass' body* with many angled lines across the body and a relatively flat surface across the top, arched covers over the wheel area, larger radii on the front and back of the underside." J.A. 8404 (emphasis added). Again, Hatch did not explain how the D'906 patent failed to show an "hourglass body."

In short, Hatch relied on the hourglass shape of the accused products to show substantial similarity despite our prior case authority limiting the relevance of features shown in the prior art in the substantial similarity analysis. *See Egyptian Goddess*, 543 F.3d at 676; J.A. 8404 ("[T]he claimed design of the [asserted patent] and the Accused Product share the same overall impression and have an integrated 'hourglass' body . . . .").

In opposing plaintiffs' 2021 motion for a preliminary injunction, appellants urged that plaintiffs failed to account for the D'906 patent in the infringement analysis and that the additional ornamental features of Accused Products A through D were not substantially similar to the asserted patents.[4] Appellants relied on the expert reports of

---

[4]    Appellants filed five oppositions to the preliminary injunction. Appellants Fengchi-US, Gyroor, Jiangyou, and GaodeshangUS filed individual oppositions while Urbanmax, HGSM, and Gyroshoes filed a joint opposition. All oppositions relied upon expert reports from Jim Gandy and Lance Rake.

Jim Gandy and Lance Rake. Gandy's report provided a brief response to the Hatch declaration and then did a patent-by-patent, product-by-product noninfringement analysis in light of the D'906 prior art patent. In each section, Gandy compared and contrasted particular features of the accused product, the asserted patent, and the prior art D'906 patent, such as the "hourglass figure" or the foot pads before concluding that an ordinary observer "would not be confused so as to purchase one thinking it to be the other." *E.g.*, J.A. 8784.

Rake described the D'906 patent and responded to Hatch's declaration on a patent-by-patent, product-by-product basis in light of the D'906 patent. In comparing each patent against each accused product, Rake performed a three-way comparison between the D'906 patent, the asserted patent, and the accused product before concluding that "[t]he substantially dissimilar [features such as] foot pads, lighting design, . . . design of the undercarriage and . . . fender design creates a substantially different overall visual impression to the ordinary observer." *E.g.*, J.A. 8888.

Plaintiffs then filed a further expert report by Hatch which again urged substantial similarity once more relying on the hourglass shape from the prior art. For example, with respect to the D'723 Patent, Hatch opined:

> Unlike the '906 Patent, the claimed design of the '723 Patent and the Accused Products share the same overall impression and have an integrated *'hourglass' body* with a relatively flat surface across the top of the main body, arched covers over the wheel area, larger radii on the front and back of the underside, and elongated light panels on the front surface.

J.A. 10,567. Hatch provided a similar analysis for the other asserted patents, again without explanation as to how the "hourglass body" was "unlike" the prior art.

On October 6, 2021, the district court entered a minute entry granting plaintiffs' renewed motion for a preliminary injunction. Understanding the district court's minute entry requires reference to the district court's decisions concerning the 2020 preliminary injunction insofar as the court addressed the likelihood of success on the merits.

On November 24, 2020, the district court granted the 2020 preliminary injunction at a hearing, stating:

> I do believe *the plaintiff will likely succeed on the merits of their design patent . . . infringement. The claim designs in the infringing products are not sufficiently dissimilar, or plainly dissimilar*; the analysis of the patents-in-suit in [sic] infringing products demonstrates that the defendants are infringing on plaintiffs' patents. It's the D723 patent, the D256 patent, D195 patent, and D112 patent.

Tr. Proc. at 12:15–22, *ABC Corp. I v. P'ship & Unincorporated Ass'ns*, No. 1:20-cv-4806 (N.D. Ill. Nov. 24, 2020) (emphasis added), ECF No. 393.

The 2020 preliminary injunction, entered the same day, found that "Plaintiffs have proved a *prima facie* case of design patent infringement because . . . an ordinary observe[r] would be deceived into thinking the products sold on Defendant Internet Stores ('Infringing Products') are the same as the products manufactured and sold by Plaintiffs that utilize the Patents-in-Suit . . . ." J.A. 8–9.

In support of its August 2021 motion to dissolve the 2020 preliminary injunction, Gyroor-US argued that plaintiffs lacked a likelihood of success on the merits. At the hearing on Gyroor-US's motion to dissolve, the court stated:

> As to likelihood of success, plaintiff filed an expert report with their motion for a preliminary injunction stating that Gyroor's product infringes plaintiffs' patent. Gyroor has now filed an expert report

stating that Gyroor's product does not infringe and Gyroor's patent[5] is prior art.

*Resolving this expert dispute will likely require a trial. I find that the need for a trial is sufficient in this case for plaintiff to have met their burden to demonstrate a likelihood of success on the merits.*

J.A. 8482 (emphasis added). The district court did not conduct a product-by-product analysis for the four accused products.

In the minute entry granting the 2021 preliminary injunction, the district court stated:

The arguments of the Urbanmax and Fengchi defendants mirror those made by defendant Gyroor-US on a similar motion to dissolve the preliminary injunction that the Court denied on August 24, 2021. They cite other patents as prior art [including the D'906 patent] that would serve to enable an "ordinary observer" to distinguish Defendants' products from Plaintiffs' products. Like Gyroor-US, the Urbanmax and Fengchi defendants submitted expert reports supporting their arguments. . . . As with the motion by Gyroor-US, the Court finds that *"resolving this expert dispute will likely require a trial." Defendants' evidence is not so compelling that it serves to overcome the Court's finding that Plaintiffs have demonstrated a likelihood of success on the merits.* This is especially true when weighed against Plaintiffs' showing of irreparable harm, which Defendants do not

---

5    It is unclear whether "Gyroor's patent" refers to the prior art D'906 patent or the non-prior art D808,857 patent, which appears to be a third-party patent that Gyroor-US is "authorized to use." J.A. 7060.

challenge. . . . Therefore, Plaintiffs' renewed mo-
tion for a preliminary injunction is granted.

J.A. 10707 (emphasis added) (citations omitted). Again,
the district court did not conduct a product-by-product
analysis.

Appellants filed a notice of appeal on October 8, 2021.[6]
The district court thereafter entered the preliminary in-
junction order on October 13, 2021. The order reproduces
the figures from the asserted patents and states:

> *Argument and evidence submitted* in support of this
> Motion and in support of Plaintiffs' previously
> granted Motion for Entry of a Preliminary Injunc-
> tion *establish that Plaintiffs have demonstrated a
> likelihood of success on the merits* . . . . Specifically,
> Plaintiffs have proved a *prima facie* case of design
> patent infringement because . . . an ordinary ob-
> server would be deceived into thinking the prod-
> ucts sold by the Gyroor Defendants are the same as
> the products manufactured and sold by Plaintiffs
> that utilize the Patents-in-Suit ("Plaintiffs' Prod-
> ucts").

J.A. 1623 (emphasis added) (citations omitted).

On appeal, the issue is whether the 2021 preliminary
injunction must be set aside because the district court
erred in determining the likelihood of success on the mer-
its. We have jurisdiction pursuant to 28 U.S.C.
§ 1295(a)(1).

---

[6]   It appears that this is a premature appeal. "Once
judgment is entered, [Federal Rule of Appellate Procedure
4(a)(2)] treats the premature notice of appeal 'as filed after
such entry.'" *FirsTier Mortg. Co. v. Invs. Mortg. Ins.*, 498
U.S. 269, 275 (1991) (quoting Fed. R. App. P. 4(a)(2)).

DISCUSSION

I

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted).  In reviewing the grant or denial of a preliminary injunction, "the estimated likelihood of success in establishing infringement is governed by Federal Circuit law," *Revision Mil., Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 526 (Fed. Cir. 2012), while the other factors are governed by the law of the regional circuit, *see Koninklijke Philips N.V. v. Thales DIS AIS USA LLC*, 39 F.4th 1377, 1379 (Fed. Cir. 2022).

Design patent infringement occurs when a party, "without license of the owner, (1) applies the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied."  35 U.S.C. § 289.  "To show infringement under the proper test, [a plaintiff must demonstrate that] an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design." *Crocs*, 598 F.3d at 1303 (citing *Egyptian Goddess*, 543 F.3d at 678); *see also Egyptian Goddess*, 543 F.3d at 676 ("When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art.")

II

The district court determined that plaintiffs here had shown a likelihood of success on the issue of infringement.

We conclude that the district court erred in four independent respects.

First, the district court applied, at least in part, the wrong legal standard. When the district court concluded that plaintiffs had established a likelihood of success on the merits in denying Gyroor's motion to dissolve the 2020 preliminary injunction, a finding relied upon in granting the 2021 preliminary injunction, the court reasoned: "Resolving this expert dispute will likely require a trial. *I find that the need for a trial is sufficient in this case for plaintiff to have met their burden to demonstrate a likelihood of success on the merits.*" J.A. 8482 (emphasis added).[7] Elsewhere the district court stated: "[P]laintiff will likely succeed on the merits of their design patent . . . infringement. The claim designs in the infringing products are not sufficiently dissimilar, or plainly dissimilar . . . ." Tr. Proc. at 12:15–18, *ABC Corp. I*, No. 1:20-cv-4806 (Nov. 24, 2020), ECF No. 393. This reasoning is directly counter to our precedent. To show a likelihood of success on the merits, a patentee must show that it will likely prove infringement of the asserted claims. "If [the defendant] raises a substantial question concerning . . . infringement . . . , *i.e.*, asserts an infringement . . . defense that the patentee cannot prove 'lacks substantial merit,' the preliminary injunction should not issue." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350–51 (Fed. Cir. 2001) (quoting *Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1364 (Fed.Cir.1997)). An injunction cannot be granted because a trial is required or because the accused products are not "sufficiently dissimilar" or "plainly dissimilar" from the patented design. Thus, the court failed, at least in part, to apply "the appropriate legal standard," necessitating

---

[7]     The district court elsewhere noted the need for a trial: "[T]he Court finds that 'resolving this expert dispute will likely require a trial.'" J.A. 10707 (quoting J.A. 8482).

setting aside the 2021 preliminary injunction order. *Adkins v. Nestle Purina PetCare Co.*, 779 F.3d 481, 483 (7th Cir. 2015).

Second, the district court was required to conduct the ordinary observer analysis through the lens of the prior art, and the court's conclusory discussion contains no indication that it conducted the required analysis. In the minute entry granting the 2021 preliminary injunction, the district court stated that appellants "cite other patents as prior art that would serve to enable an 'ordinary observer' to distinguish Defendants' products from Plaintiffs' products." J.A. 10707. The court's reference to other patents as prior art appears to include the D'906 patent but fails to explain how the court's finding of likelihood of success on the merits is consistent with the existence of the D'906 patent.

Where a patented design and an accused product are not "plainly dissimilar," the court must conduct a three-way analysis comparing the accused product, the patented design, and the prior art. *Egyptian Goddess*, 543 F.3d at 677–78. "When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art." *Egyptian Goddess*, 543 F.3d at 676; *see also Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1344 (Fed. Cir. 2020).[8] In other words, where a dominant feature of the patented design and the accused products—here the hourglass shape—appears in the prior art, the focus of

---

[8]    A similar problem exists in copyright law when a copyrighted work has both protectable and unprotectible elements. Copyright "[i]nfringement is shown by a substantial similarity of protectible expression, not just an overall similarity between the works." 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.03 (2022).

the infringement substantial similarity analysis in most cases will be on other features of the design. The shared dominant feature from the prior art will be no more than a background feature of the design, necessary for a finding of substantial similarity but insufficient by itself to support a finding of substantial similarity.

Here, appellants established the existence of a relevant piece of prior art: the D'906 patent. The D'906 patent is titled "Two-wheeled vehicle" and has five figures, of which Figure 1 is exemplary. J.A. 66.

Fig. 1



J.A. 67 (Fig. 1 of the D'906 Patent).

The D'906 patent is highly relevant to the question of infringement because it discloses an "hourglass" shape, a prominent feature common to the asserted patents and most of the accused products, *see, e.g.*, Appendix A, and a feature relied on by the plaintiff to establish substantial similarity.

There is, moreover, a substantial argument that the ordinary observer would be drawn to the hourglass figure, rather than other design elements. The hourglass shape is a prominent feature of the asserted patents, and most of the accused products and other similarities between the

asserted patents and accused products are arguably less significant. *See Egyptian Goddess*, 543 F.3d at 678.

The district court appeared to rely on the infringement discussion in the Hatch reports; the 2021 preliminary injunction order stated that "[a]rgument and evidence submitted in support of this Motion and in support of Plaintiffs' previously granted Motion for Entry of a Preliminary Injunction establish that Plaintiffs have demonstrated a likelihood of success on the merits." J.A. 23 (citations omitted). The Hatch reports, far from recognizing that the hourglass figure of the asserted patents could not be relied on to establish substantial similarity, improperly relied on that feature to show substantial similarity. The Hatch reports did not support a finding of substantial similarity.

Third, the district court failed to apply the ordinary observer test on a product-by-product basis, which is particularly important here in light of significant differences among the accused products themselves. "Rule 65(d) requires . . . a preliminary injunction to 'state the reasons why it issued,' and Rule 52(a)(2) requires a statement of findings of fact and conclusions of law for decisions granting or refusing an 'interlocutory injunction' (a phrase that includes preliminary injunctions)." *H-D Mich., LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 845 (7th Cir. 2012) (quoting Fed. R. Civ. P. 65(d) and 52(a)(2)). A plaintiff has the burden of showing that each product infringes at least one claim. *L & W, Inc. v. Shertech, Inc.*, 471 F.3d 1311, 1318 (Fed. Cir. 2006) ("When a patentee with the burden of proof seeks summary judgment of infringement, it must make a prima facie showing of infringement as to each accused device . . . ."). Accordingly, when a court "state[s] the reasons" why a preliminary injunction issued, it must generally conduct a product-by-product infringement analysis.

The district court failed to make product-by-product infringement findings. Neither in the proceedings concerning the preliminary injunctions nor in the preliminary injunction orders themselves did the district court mention Accused Products A through D, much less analyze whether each product infringes specific claims of the asserted patents.

The 2021 preliminary injunction itself, while not referencing Accused Products A through D, references product ID numbers in Exhibit B and product names in Exhibit C. It is unclear exactly what the relationship is between Accused Products A through D, the product ID numbers in Exhibit B, and the product names in Exhibit C. At any rate, the injunction does not make infringement findings as to the product ID numbers or product names in the exhibits. The order thus does not contain any specific infringement findings to support the entry of the injunction.

Again, the court's reliance on the Hatch reports does not cure the defect. Those expert reports failed to analyze infringement on a product-by-product basis. The entirety of the Hatch report's infringement analysis for the D'723 patent, for example, excluding the table with figures, is:

> Although the below charts only present selected views, my analysis was undertaken on each of the accused products individually, based upon the entirety of the reference materials.

> Giving due consideration to the legal standards as outlined in Section II, the examination illustrated in the table above allows for no other reasonable conclusion than that the overall visual impression of the Claimed Design of the '723 Patent and the Accused Products are not plainly dissimilar.

> In the eyes of the ordinary observer, the claimed design of the '723 is substantially the same as the overall visual impression *presented by the Accused*

> *Products.* Unlike the cited prior art . . . , the
> claimed design of the '723 Patent and the Accused
> Products share the same overall impression and
> *have an integrated 'hourglass' body* with a rela-
> tively flat surface across the top of the main body,
> arched covers over the wheel area, larger radii on
> the front and back of the underside, and elongated
> light panels on the front surface.

> In the eyes of the ordinary observer, the claimed
> design of the '723 is substantially the same as the
> visual impression presented by the Accused Prod-
> ucts. Also, the Accused Products are closer to the
> claimed design of the '723 Patent than to the cited
> prior art of the '723 Patent.

J.A. 8405–07 (emphasis added). Hatch's analysis of the
other patents is similarly imprecise. In each case he fo-
cuses on the accused products as a group, rather than each
product individually.

Likewise, Plaintiffs' memorandum in support of the
motion for entry of a preliminary injunction grouped all
products together as "Infringing Products." *See, e.g.*,
J.A. 8280 ("In the eyes of the ordinary observer, the In-
fringing Products have substantially the same design as
the [asserted] patent.").

Even a cursory review of the four accused products
shows that they are different from each other, display fea-
tures not found in the asserted patents, and lack features
shown in the asserted patents. For example, Accused Prod-
uct D, *see* Appendix A, has prominent features that differ
from the asserted patents. First, the overall shape is dif-
ferent—while the asserted patents have a smooth, hour-
glass body, Product D has a more angular shape with wheel
caps that give the impression of a figure 8. Second, the
wheel covers of Accused Product D have a distinctive boxy
appearance as compared to the asserted patents. Accused
Product D's wheel covers cover less of the wheel than the

asserted patents and have angled, rather than curved, edges.

Accused Product D's shape and wheel covers also differ from the other Accused Products, such as Accused Product A, emphasizing the need for a product-by-product analysis:



Accused Product D. Appellant's Br. 45.



Accused Product A.  Appellant's Br. 27.

Under the circumstances here, the district court improperly failed to undertake a product-by-product analysis.[9]

The fourth and final problem with the preliminary injunction order is that, even if the district court were to find a likelihood of success as to infringement, the language of the injunction is overbroad under *International Rectifier Corp. v. IXYS Corp.*, 383 F.3d 1312 (Fed. Cir. 2004).  The preliminary injunction orders that "[t]he Gyroor

---

[9]   We do not suggest that an aggregate infringement analysis is always improper.  For example, if the accused products differ from each other only in insignificant details, an aggregate analysis may well be appropriate.

Defendants . . . be preliminarily enjoined and restrained from . . . offering for sale, selling, and importing any products . . . that include any reproduction, copy or colorable imitation of the design claimed in the Patents-in-Suit." J.A. 23–24. The order does not mention or specifically enjoin "Accused Products A through D."[10] While the order allows plaintiffs to request that Amazon remove specific product IDs and orders Gyroor to remove specific product URLs, this does not narrow the scope of the injunction's broad enjoining of "any reproduction, copy or colorable imitation" of the patented designs. J.A. 23–24. Under *International Rectifier*, preliminary injunctions that "simply prohibit[] future infringement of a patent" are overbroad. 383 F.3d at 1316. The preliminary injunction must be limited to those products actually found likely to infringe and those "not more than colorably different." *Id.* Injunctions that by their terms apply to "any device" within the scope of the patent claims do not meet the specificity requirement of Rule 65(d). *Id.*

---

[10]   Appellants also complain that the scope of the 2021 preliminary injunction is greater than the relief that was requested by plaintiffs. Appellants state that plaintiffs' "second preliminary injunction motion was filed against 'defendants in Schedule A amended on May 6, 2021,' . . . [and that version of Schedule A] concerns only four ASINs [product ID numbers] and three types of Gyroor-Brand Products." Appellant's Br. 12 (citing J.A. 8252, 28–30). The order itself, however, according to appellants, "was entered against 25 ASINs and five types of Gyroor-Brand Products, *including one type of product that was not mentioned in [plaintiffs'] second preliminary injunction motion*." Appellant's Br. 12 (emphasis added) (citing J.A. 28–30). For purposes of this appeal we need not resolve whether the injunction is overly broad in this respect as well.

Similar to our decision in *International Rectifier*, the Seventh Circuit has vacated a preliminary injunction enjoining a defendant from "[u]sing, copying, disclosing, converting, appropriating, retaining, selling, transferring, or otherwise exploiting Patriot's copyrights, confidential information, trade secrets, or computer files." *Patriot Homes, Inc. v. Forest River Hous., Inc.*, 512 F.3d 412, 414 (7th Cir. 2008) (alteration in original). The injunction was deficient because it "use[d] a collection of verbs to prohibit [the defendant] from engaging in certain conduct, but ultimately it fail[ed] to detail what the conduct [was], *i.e.*, the substance of the 'trade secret' or 'confidential information' to which the verbs refer." *Id.* at 415.

Here, as in *International Rectifier* and *Patriot Homes*, this injunction is overbroad. On remand, should a new injunction issue, the district court must describe the products enjoined with specificity and must not include language enjoining "any reproduction, copy or colorable imitation of the design claimed in the Patents-in-Suit."

### III

Appellants argue that three separate design patents— U.S. Patent Nos. D808,856 ("D'856 patent"), D808,857, ("D'857 patent"), and D891,297 ("D'297 patent")[11]—covering the accused products were issued by the U.S. Patent and Trademark Office and licensed to appellants. They assert that these patents must be "given due weight when conducting [the] infringement analysis" under a theory of separate patentability. Appellant's Br. 24. Plaintiffs respond that appellants failed to raise this argument before the district court, and thus the argument is waived.

---

[11] In the briefing below, appellants assert that Accused Product A and C are based on the D'857 patent, Accused Product B is based on the D'856 patent, and Accused Product D is based on the D'297 patent.

ABC CORPORATION I v.                                              21
PARTNERSHIP AND UNINCORPORATED ASSOCIATIONS

In their briefing opposing the 2021 preliminary injunction, appellants raised the existence of the D'856, D'857, and D'297 patents but did not make separate patentability arguments or cite to any separate patentability caselaw.

As an example, Fengchi-US's opposition to the 2021 preliminary injunction argued:

> None of the Patents-in-Suit claimed any ornamental features of the Accused Product. The ornamental differences, based on the claimed design of the [D'297 Patent], greatly impact the ordinary observer's visual perception of the overall design, thus renders the design of accused product substantially dissimilar from the claimed designs of the patents-in-suit.

J.A. 8693.

The other oppositions are similar. Before the district court, appellants did not make any argument for why the separate patentability of the D'856, D'857, and D'297 patents had any bearing on the infringement analysis. Because the argument was not properly raised, we do not consider it.

## CONCLUSION

For the foregoing reasons, we hold that the district court erred in issuing the 2021 preliminary injunction. We reverse and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**

ABC CORPORATION I v.
                              PARTNERSHIP AND UNINCORPORATED ASSOCIATIONS

## APPENDIX A[12]



<hr />

[12] Figures are appellant's comparison between the patents-in-suit and Accused Product D. Some images in appellants' tables have been omitted and some images have been replaced with higher-quality images.

ABC CORPORATION I v.                                    23
PARTNERSHIP AND UNINCORPORATED ASSOCIATIONS



| Accused Product D – Bottom View Comparison | |
|---|---|
| Patents-in-suit D'723 Patent | |
| Patents-in-suit D'256 Patent | |
| Patents-in-suit D'195 Patent | |
| Patents-in-suit D'112 Patent | |
| Prior Arts D'906 Patent | |
| Accused Product D | |

ABC CORPORATION I v.
PARTNERSHIP AND UNINCORPORATED ASSOCIATIONS



ABC CORPORATION I v.  25
PARTNERSHIP AND UNINCORPORATED ASSOCIATIONS



ABC CORPORATION I v.
PARTNERSHIP AND UNINCORPORATED ASSOCIATIONS





ABC CORPORATION I v.
PARTNERSHIP AND UNINCORPORATED ASSOCIATIONS

27

