# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| ABC CORPORATION I,<br>ABC CORPORATION II, | Case No. 1:20-cv-4806 |
| *Plaintiffs*, | Judge Thomas M. Durkin |
| v. | Magistrate Judge Jeffrey Cole |
| THE PARTNERSHIPS AND<br>UNINCORPORATED ASSOCIATIONS<br>IDENTIFIED ON SCHEDULE A, |  |
| *Defendants*. |  |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
## MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER AND
## <u>PRELIMINARY INJUNCTION</u>

**TARTER KRINSKY & DROGIN LLP**
Richard J.L. Lomuscio (admitted *pro hac vice*)
Mark Berkowitz (admitted *pro hac vice*)
1350 Broadway
New York, NY 10018
(212) 216-8000

**PALMERSHEIM & MATHEW LLP**
Robert J. Palmersheim
Anand C. Mathew
Timothy G. Parilla
401 N. Franklin Street, Suite 4S
Chicago, IL 60654
(312) 319-1791

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................ 1

BACKGROUND ............................................................................................... 3

LEGAL STANDARDS ...................................................................................... 4

ARGUMENT .................................................................................................... 5

I.    PLAINTIFFS SATISFY THE GROUNDS FOR ENTRY OF
THE NEW TRO AND NEW PI. ..................................................................... 5

    A.   Plaintiffs Will Likely Succeed on the Merits of
Their Patent Infringement Claim. ........................................................ 6

       1. The Patents-in-Suit and Cited Prior Art .................................... 7

       2. An Ordinary Observer Would Find the Overall Impression of the
Accused Products to be Substantially Similar to the Patents-in-Suit. ........................ 13

         a. The Accused Product "Gyroor A" Infringes on the Patents-in-Suit. ................... 13

           i. The Accused Product "Gyroor A" Is Substantially Similar to
the D'723 Patent. ............................................................ 14

           ii. The Accused Product "Gyroor A" Is Substantially Similar to
the D'256 Patent. ............................................................ 16

         b. The Accused Product "Gyroor C" Infringes on the Patents-in-Suit. ................... 18

           i. The Accused Product "Gyroor C" Is Substantially Similar to
the D'723 Patent. ............................................................ 18

           ii. The Accused Product "Gyroor C" Is Substantially Similar to
the D'256 Patent. ............................................................ 21

         c. The Accused Product "Gyroor E" Infringes on the Patents-in-Suit. .................... 23

           i. The Accused Product "Gyroor E" Is Substantially Similar to
the D'723 Patent. ............................................................ 23

           ii. The Accused Product "Gyroor E" Is Substantially Similar to
the D'256 Patent. ............................................................ 25

    B.   Plaintiffs Demonstrate the Remaining Requirements for Entry of the
New TRO and New PI. ........................................................................ 27

       1. Plaintiffs Have No Adequate Remedy at Law to Compensate for Defendants'
Infringement and Will Continue to Suffer Irreparable Harm Absent the
New TRO and New PI. .................................................................. 27

       2. The Balance of the Parties' and the Public's Interest Favor Entry of the
New TRO and New PI. .................................................................. 29

II.  THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE ................................................. 30

III. ALL RELEVANT PARTIES ARE SUFFICIENTLY ON NOTICE OF THIS MOTION. ... 31

CONCLUSION ......................................................................................................................... 32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs v. Mead Johnson & Co.*,
971 F.2d 6 (7th Cir. 1992) ....................................................................................29

*ABC Corporation I v. Partnership and Unincorporated Associations*,
No. 21-2150 (Fed. Cir. Oct. 28, 2022) ...................................................................1

*ABC Corporation I v. Partnership and Unincorporated Associations*,
No. 22-1071 (Fed. Cir. Oct. 28, 2022) ...................................................................1

*Apple Inc. v. Samsung Elecs. Co.*,
735 F.3d 1352 (Fed. Cir. 2013) ......................................................................28, 30

*Apple, Inc. v. Samsung Elecs. Co.*,
No. 11-CV011846-LHK,
2012 WL 3071477 (N.D. Cal. July 27, 2012) .........................................................9

*Bell & Howell Doc. Mgmt. Prods. Co. v. Altek Sys.*,
132 F.3d 701 (Fed. Cir. 1997) ..............................................................................27

*Celsis in Vitro, Inc. v. CellzDirect, Inc.*,
664 F.3d 922 (Fed. Cir. 2012) .........................................................4, 27, 28, 29

*Contessa Food Prods., Inc. v. Conagra, Inc.*,
282 F.3d 1370 (Fed. Cir. 2002) ..............................................................................9

*Crocs, Inc. v. Int'l Trade Comm'n*,
598 F.3d 1294 (Fed. Cir. 2010) .........................................................................4, 7

*Deckers Outdoor Corp. v. Partnerships & Unincorporated Associations*,
No. 13 C 2167,
2013 WL 1337616 (N.D. Ill. Mar. 27, 2013) .......................................................31

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008) ...................................................................4, 5, 7, 13

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*,
796 F.3d. 1312 (Fed. Cir. 2015) .............................................................................6

*Gateway E. Railway Co. v. Terminal Railroad Assoc. of St. Louis*,
35 F.3d 1134 (7th Cir. 1994) ................................................................................28

*Gorham Co. v. White*,
81 U.S. 511 (1871) ..................................................................................................5

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Trust Drivers*
  *No. 70 of Alameda County*,
  415 U.S. 423 (1974) ..................................................................................................31

*Illinois ex rel. Hartigan v. Peters*,
  871 F.2d 1336 (7th Cir. 1989) ................................................................................31

*Int'l Seaway Trading Corp. v. Walgreens Corp.*,
  589 F.3d 1233 (Fed. Cir. 2009)................................................................................7

*Lanard Toys Ltd. v. Dolgencorp LLC*,
  958 F.3d 1337 (Fed. Cir. 2020)................................................................................4

*Long v. Bd. Of Educ., Dist. 128*,
  167 F. Supp. 2d 988 (N.D. Ill. 2001) ......................................................................4

*Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*,
  No. 03-cv-4844,
  2005 WL 3115892 (N.D. Ill. Nov. 8, 2005) ..........................................................31

*Promatek Indus. Ltd. v. Equitrac Corp.*,
  300 F.3d 808 (7th Cir. 2002) ..................................................................................28

*Robert Bosch, LLC v. Pylon Mfg. Corp.*,
  659 F.3d 1142 (Fed. Cir. 2011)...............................................................................28

*Ty, Inc. v. The Jones Group, Inc.*,
  237 F.3d. 891 (7th Cir. 2001) ......................................................................4, 27, 29

**Statutes and Rules**

35 U.S.C. § 283 ............................................................................................................30

Fed. R. Civ. P. 65 ...................................................................................................31, 32

Plaintiffs Hangzhou Chic Intelligent Technology Co. ("Chic") and Unicorn Global, Inc. ("Unicorn") (collectively, "Plaintiffs") submit this Memorandum of Law in support of their Motion for Entry of a Temporary Restraining Order ("New TRO") and Preliminary Injunction (the "New PI") against Defendants Gyroor, Gyroor-US, Urbanmax, Fengchi-US, HGSM, Gaodeshang-US, Jiangyou-US, and Gyroshoes (collectively, "Defendants").

## PRELIMINARY STATEMENT

While the Federal Circuit recently vacated injunctions previously entered by this Court precluding Defendants from selling "Gyroor A" (i.e., Gyroor T581 series and variants), "Gyroor C" (i.e., Gyroor T580 series and variants), and "Gyroor E" (i.e., Gyroor G11 series and variants) products (collectively, "the Accused Products") because they infringe upon, at least, Plaintiffs' U.S. Design Patent Nos. D737,723 ("the D'723 Patent") and D738,256 ("the D'256 Patent") (collectively, "the Patents-in-Suit") (*see* Dkt. 42, 50 (collectively, the "Prior TRO"); Dkt. 113, 456 (collectively, the "Prior PIs")),[1] the appellate court did so on technical grounds—arguably insufficient detail demonstrating likelihood of success on the merits and defects in service as to one party—that are readily curable. Nothing in the Federal Circuit's ruling authorizes Defendants' infringement of the Patents-in-Suit or otherwise undercuts the evidence supporting continued injunctive relief. Accordingly, Plaintiffs respectfully request entry of a New TRO and the New PI to curtail Defendants' ongoing willful infringement.

---

[1] Defendants Urbanbax, GaodeshangUS, Fengchi-US, and Gyroor-US appealed this Court's entry of this Court's entry of the November 24, 2020 PI (Dkt. 113) to the United States Court of Appeals for the Federal Circuit, which found the PI lacked required notice to Defendants and vacated the PI. *See ABC Corporation I v. Partnership and Unincorporated Associations*, No. 21-2150 (Fed. Cir. Oct. 28, 2022) ("Federal Circuit Decision I"). Defendants Urbanmax, GaodeshangUS, Fengchi-US, Gyoor, Jiangyou-US, Gyroshoes, and HGSM appealed this Court's entry of the October 13, 2021 PI (Dkt. 456) to the Federal Circuit, which held that this Court failed to find Plaintiffs were likely to succeed on the merits and reversed and remanded the case. *See ABC Corporation I v. Partnership and Unincorporated Associations*, No. 22-1071 (Fed. Cir. Oct. 28, 2022) (the "Federal Circuit Decision II").

*Plaintiffs Are Likely to Succeed on the Merits*. Defendants, in spite of their appeals, still fail to raise a viable defense to Plaintiffs' *prima facie* case of design patent infringement as demonstrated by the Prior PIs as well as the supplemental evidence submitted in connection with the New TRO and New PI. Not only are each of the Accused Products not sufficiently distinct or plainly dissimilar from either of the Patents-in-Suit, but in the eyes of the hypothetical ordinary observer familiar with the prior art, the overall visual appearance of the Accused Products is also substantially similar to that of the claimed designs of the Patents-in-Suit.

*Equitable Relief Is Appropriate*. Plaintiffs have repeatedly shown Defendants' sales of the Accused Products have cost Plaintiffs their control of their patent rights, share of the market, and reputation and goodwill with customers such that monetary damages would not sufficiently compensate them for the irreparable harm caused. By contrast, Defendants' own willful infringement is the source of any harm that results from issuing a preliminary injunction. Defendants' repeated violative conduct fully justifies providing Plaintiffs with equitable relief in this case and maintenance of the status quo.

*The Balance of Harms Favors Plaintiffs*. The balance of harms tips decidedly in Plaintiffs' favor—any harm to Defendants caused by a New TRO and New PI is self-inflicted and insignificant in comparison to the irreparable harm that would be suffered by Plaintiffs. Plaintiffs' loss of control of patent rights, diminished market share, and injury to reputation and goodwill far outweighs Defendants' mere loss of sales of the Accused Products.

*Public Interest Favors The Enforcement of Patent Rights.* The public interest favors the grant of a New TRO and New PI as preventing Defendants and other third-party infringers from continuing to profit from their unlawful activities would undoubtedly have a positive impact on

the public interest. No critical public interest would be injured by enjoining Defendants from selling the Accused Products during the pendency of this proceeding.

_All Defendants Have Sufficient Notice_. There can be no question that all Defendants have adequate notice of the injunctive relief being sought by the New TRO and the New PI. All Defendants have appeared in this action and are represented by counsel who undisputedly receive notifications of filings with this Court.

This Court should therefore issue a New TRO and New PI enjoining the Defendants from the sale of the Accused Products and restraining the transfer of assets associated with such sales, thereby ensuring no continuing or further harm is done to Plaintiffs during the pendency of this litigation.

## BACKGROUND

Plaintiff Chic is the lawful owner of the Patents-in-Suit, which it utilizes when designing, manufacturing and selling its hoverboard products. (_See_ Dkt. 101 ¶ 7, 14.) Plaintiff Unicorn is the exclusive distributor of Chic's hoverboard products in the United States. (_See_ Dkt. 101 ¶ 8.) Defendants are individuals and business entities that operate online e-commerce stores that make and sell unauthorized hoverboard products—the Accused Products—that infringe upon the Patents-in-Suit. (_See_ Dkt. 101 ¶ 2.) More specifically, the Defendants are, in large part, entities created to evade this Court's Prior PIs.

This Court entered the Prior TRO against Defendants on September 22, 2020, and then extended it until October 20, 2020, enjoining Defendants from further sale of the Accused Products. (Dkt. 42, 50.) Plaintiffs' motions for the Prior PIs were subsequently granted, first on November 24, 2020, and again on October 13, 2021. (Dkt. 113, 456.) Select Defendants appealed the Prior PIs to the Federal Circuit. On October 28, 2022, the Federal Circuit, in two separate opinions, vacated the Prior PIs and remanded to this Court for further proceedings. (Federal Circuit

Decision I at 18; Federal Circuit Decision II at 21.) Nothing in the Federal Circuit opinions precludes Plaintiffs from renewing their requests for injunctive relief as to the Accused Products.

## LEGAL STANDARDS

*Issue of a TRO and PI*. The standards for issuing a New TRO and New PI are identical— the moving party must demonstrate three requisite elements: (1) a likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that they will suffer irreparable harm if the injunction is denied. *See Long v. Bd. Of Educ., Dist. 128*, 167 F. Supp. 2d 988, 990 (N.D. Ill. 2001) (citing *Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d. 891, 895 (7th Cir. 2001)); *see also Celsis in Vitro, Inc. v. CellzDirect, Inc.¸* 664 F.3d 922, 926 (Fed. Cir. 2012). Upon Plaintiffs' satisfaction of these conditions, this Court may also consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied.. *Ty, Inc.*, 237 F.3d. at 895. Finally, the Court must consider the potential effect on the public interest in denying or granting the injunction. *Id*.

*Design Patent Infringement*. "Determining whether a design patent has been infringed is a two-part test: (1) the court first construes the claim to determine its meaning and scope; (2) the fact finder then compares the properly construed claim to the accused design." *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1341 (Fed. Cir. 2020). Typically, design patents are claimed as shown in drawings as the illustrations, themselves, are their own best description. *See Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008); *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010) (citing Manual of Patent Examining Procedure § 1503.01 (8th ed. 2006)). This case is no different—the proper construction of the Patents-in-Suit must clearly take the overall ornamental design into consideration and simply refer the factfinder to the illustrations in the figures of the Patents-in-Suit.

An accused design infringes a design patent if "an ordinary observer, taking into account the prior art, would believe the accused design to be the same as the patented design." *Egyptian Goddess*, 543 F.3d at 670, 682; *see also Gorham Co. v. White*, 81 U.S. 511, 528 (1871) ("If, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other."). Here, the "ordinary observer" is "the principal purchaser of hoverboards, i.e., a consumer user or the parent of a user, each having little or no experience purchasing hoverboards" who encounters such products via online stores, television, and social media, and purchases them through online or brick and mortar stores. (Hatch Decl. ¶ 40.)

## ARGUMENT

The Patents-in-Suit and the Accused Products are so substantially similar to that of an ordinary observer would be deceived into purchasing one supposing it to be the other. This confusion warrants continued injunctive relief to prevent further harm to Plaintiffs through Defendants' sale of the Accused Products. Given the extended and ongoing nature of this dispute, Defendants are fully aware of their products' infringing designs and cannot claim surprise as to the restraints sought by Plaintiffs through this motion. The Court should therefore issue the New TRO and grant the request for the New PI.

## I.  PLAINTIFFS SATISFY THE GROUNDS FOR ENTRY OF THE NEW TRO AND NEW PI.

The record here demonstrates that Plaintiffs meet all the requirements for injunctive relief. First, Plaintiffs are likely to succeed on the merits given the obvious similarities between the Patents-in-Suit and the Accused Products. The Accused Products are simply knockoffs of Plaintiffs' designs.  Second, there is no adequate remedy at law given the reputational and other

nonmonetary harms suffered by Plaintiffs as a result of Defendants' improper conduct. Third, Plaintiffs will be irreparably harmed if an injunction is not granted because Defendants will be able to sell the infringing Accused Products without restriction detrimentally—and perhaps irrevocably—diminishing Plaintiffs' market share. Finally, the balancing of the harms greatly weighs in favor of Plaintiffs given the intangible harms it will suffer from untethered sales of the infringing Accused Products while any potential injury to Defendants is secured by the bond that is already in place for this case. (Receipt No. 4624246936, entered October 2, 2020; Receipt No. 4624261079, entered August 26, 2021.)

### A. Plaintiffs Will Likely Succeed on the Merits of Their Patent Infringement Claim.

The extraordinary similarity between the Patents-in-Suit and the Accused Products is not coincidence. Gyroor and its affiliates, seeking to ride Plaintiffs' coattails, appropriated Plaintiffs' designs as their own. Therefore, Plaintiffs are likely to succeed on the merits of their patent infringement claims.[2] In determining whether the Accused Products infringe the claimed designs of the Patents-in-Suit, the Court must first determine whether the claimed infringing designs are "sufficiently distinct" or "plainly dissimilar" from the Patents-in-Suit. *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d. 1312, 1335 (Fed. Cir. 2015). If the Court finds the claims are not plainly dissimilar, then it must compare the "claimed and accused designs with prior art to identify differences that are not noticeable in the abstract but would be significant to the hypothetical ordinary observer familiar with the prior art." *Id*. Where there is dissimilarity between the Patents-

---

[2] Plaintiffs submit, herewith, the Expert Declaration of Paul Hatch in support of their motion for entry of a TRO and PI ("Hatch Decl.").

in-Suit and the prior art, the Accused Products are "more likely to be regarded as deceptively similar to the claimed design, and thus infringing." *Egyptian Goddess*, 543 F.3d at 677.[3]

### 1. The Patents-in-Suit and Cited Prior Art

The Patents-in-Suit are both entitled "Self-Balancing Vehicle" and were filed December 15, 2014. (Dkt. 101 ¶ 16; Hatch Decl. ¶ 46.) The D'723 Patent issued on September 1, 2015 and contains eight figures illustrating portions of the self-balancing vehicle. (Dkt. 101 ¶ 16; Hatch Decl. ¶ 47.)



| Table 1: The Claimed Design of the D'723 Patent | |
| --- | --- |
| Fig.1 is a top plan view of a self-balancing vehicle showing our new design | FIG.1 |
| Fig.2 is a bottom plan view thereof | FIG.2 |

---

[3] "Differences, however, must be evaluated in the context of the claimed design as a whole, and not in the context of separate elements in isolation." *Id.* at 674; *see also Crocs*, 598 F.3d at 1303–04 (explaining that the focus of the infringement analysis is the "overall impression of the claimed ornamental features" rather than "small differences in isolation."); *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1243 (Fed. Cir. 2009) ("The mandated overall comparison is a comparison taking into account significant differences between the two designs, not minor or trivial differences that necessarily exist between any two designs that are not exact copies of one another."). "[M]inor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement." *Crocs*, 598 F.3d at 1303.



| Fig 3 is a rear elevational view thereof | FIG.3 |
| Fig. 4 is a front elevation view thereof | FIG.4 |
| Fig. 5 is a left side view thereof, the right side view being a mirror image thereof. | |
| Fig.6 is a rear, top, right perspective view thereof | FIG.6 |

| | |
|---|---|
| Fig. 7 is a front, top, left perspective view thereof |  FIG.7 |
| Fig 8 is a rear, bottom, left perspective view thereof | FIG.8 |

The claimed design of the D'723 Patent is the overall ornamental design as described and shown in the figures. (Hatch Decl. ¶ 48.) The claimed design of the D'723 Patent does not, however, include such features as the wheels, holes on the underside of the vehicle, the "O I" pattern, or the "on/off" graphics.[4] (Hatch Decl. ¶ 48.)

The D'256 Patent issued on September 8, 2015 and contains eight figures illustrating portions of the self-balancing vehicle. (Dkt. 101 ¶ 16; Hatch Decl. ¶ 50.)

---

[4] Both of the Patents-in-Suit employ solid and broken lines to define the scope of the claimed designs. *See Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1378 (Fed. Cir. 2002) ("[I]f features appearing in the figures are not desired to be claimed, the patentee is permitted to show the features in broken lines to exclude those features from the claimed design…"); *Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV011846-LHK, 2012 WL 3071477, at *4 (N.D. Cal. July 27, 2012) ("The patentee may indicate the claimed part of the design with the use of solid lines and may indicate the unclaimed, remaining article of manufacture with the use of broken lines.").



| Table 2: The Claimed Design of the D'256 Patent | |
| --- | --- |
| Fig.1 is a top plan view of a self-balancing vehicle showing our new design | FIG.1 |
| Fig.2 is a bottom plan view thereof | FIG.2 |
| Fig 3 is a rear elevational view thereof | FIG.3 |
| Fig. 4 is a front elevation view thereof | FIG.4 |
| Fig 5. Is a left side view thereof, the right side view being a mirror image thereof | |



| | |
|---|---|
| Fig.6 is a rear, top, right perspective view thereof | FIG.6 |
| Fig. 7 is a front, top, left perspective view thereof | FIG.7 |
| Fig 8 is a rear, bottom, left perspective view thereof | FIG.8 |

The claimed design of the D'256 Patent is the overall ornamental design as described and shown in the figures, but does not include features depicted in broken lines, such as the wheels, holes on the underside of the vehicle, or the "O I" pattern. (Hatch Decl. ¶ 51.)

A review of the prosecution histories of the Patents-in-Suit show that they were allowed over the same cited prior art (Hatch Decl. ¶ 54):



| Table 3: The Cited Prior Art Cited on the Face of the D'723 and D'256 Patents | | |
|---|---|---|
| US 8,118,319 | US 8,469,376 | US 8,414,000 |
| Appl. 2007-0273118 | US 8,500,145 | US D647,991 |
| US D739,906[5] | | |

In contrast to the prior art, "the overall impression of the claimed design of the D'723 and D'256 Patents is entirely unique." (Hatch Decl. ¶ 55.) Though some of the cited prior art does feature a "generally hourglass outer form," none of the relevant prior art creates the same visual impression of the Patents-in-Suit, namely the "integrated hourglass body *with* a relatively flat surface across the top of the main body, pronounced 'footing' areas, and open-arched fenders over the top of the wheel area." (Hatch Decl. ¶ 56) (emphasis added).)

---

[5] While U.S. Patent No. D739,906 ("the D'906 patent") was filed on March 12, 2013 and may be considered prior art, it was not cited on the face of the Patents-in-Suit.

### 2. An Ordinary Observer Would Find the Overall Impression of the Accused Products to be Substantially Similar to the Patents-in-Suit.

A simple side-by-side comparison clearly demonstrates that each of the Accused Products are not plainly dissimilar or sufficiently distinct from the claimed designs of the Patents-in-Suit. (*See* Hatch Decl. ¶¶ 66–69.) Specifically, each of the Accused Products and the claimed designs of the Patents-in-Suit share the same overall visual impression to the hypothetical ordinary observer of an integrated hourglass body with a relatively flat surface across the top of the main body, pronounced 'footing' areas, and open-arched fenders over the top of the wheel area. (*See* Hatch Decl. ¶¶ 64–65.)

Next, the Court's analysis turns to a comparison of the Accused Products and the Patents-in-Suit to the prior art. *Egyptian Goddess*, 543 F.3d at 674. As shown below, it is clear from a three-way comparison that an ordinary observer familiar with the prior art would find that the overall visual impression created by each of the Accused Products is closer to each of the patented designs than it is to the prior art, such that the Accused Products are substantially the same as the claimed designs of the Patents-in-Suit. (*See* Hatch Decl. ¶¶ 70–71.)

### a. The Accused Product "Gyroor A" Infringes on the Patents-in-Suit.

In the eyes of the hypothetical ordinary observer familiar with the prior art, giving such attention as a purchaser usually gives, the overall visual appearance of "Gyroor A" is substantially the same as the overall appearance of the claimed designs of the Patents-in-Suit, inducing him to purchase "Gyroor A" supposing it to be the claimed design of the Patents-in-Suit. (*See* Hatch Decl. ¶¶ 72–79.)

### i. The Accused Product "Gyroor A" Is Substantially Similar to the D'723 Patent.

In the eyes of the ordinary observer, not only is the overall visual impression of the claimed design of the D'723 Patent not plainly dissimilar from the design of "Gyroor A," but when further comparing the designs to the closest prior art, "Gyroor A" is closer in overall impression to the claimed design of the D'723 Patent than to the D'906 Patent. (Hatch Decl. ¶¶ 73–74.)

Specifically, "Gyroor A" and the claimed design of the D'723 Patent both create a visual impression of an integrated hourglass body with a relatively flat surface across the top of the main body, pronounced 'footing' areas, and open-arched fenders over the top of the wheel area. (Hatch Decl. ¶ 74.) While the D'906 also includes an hourglass body, the design as a whole gives a distinctly different impression, as it creates an impression of a very uncluttered, rounded, smooth body with no pronounced footing area and closed fender skirts. (Hatch Decl. ¶ 74.)

| Table 9: Three-way comparison of "Gyroor A" to the D'906 Patent and the claimed design of the D'723. | |
|---|---|
| <br>FIG.6 | FIG. 6 of the 'D723 patent |



| | |
|---|---|
| | Perspective view of Gyroor A |
| | FIG. 4 of the prior art 'D906 Patent |
| FIG.1 | Figure 1 of the D'723 Patent |
| | Top view of Gyroor A |
| | Figure 3 of the prior art D'906 Patent. |

(Hatch Decl. ¶ 72, Table 9.)[6]

Therefore, in light of the closest prior art, the claimed design of the D'723 Patent is substantially the same as the visual impression of "Gyroor A". (Hatch Decl. ¶ 75.)

### ii. The Accused Product "Gyroor A" Is Substantially Similar to the D'256 Patent.

Likewise, with respect to the D'256 Patent, in the eyes of the ordinary observer, the overall visual impression of the claimed design of the D'256 Patent is not plainly dissimilar from the design of "Gyroor A." And, when further comparing the designs to the closest prior art, "Gyroor A" is closer in overall impression to the claimed design of the D'256 Patent than to the D'906 Patent. (Hatch Decl. ¶¶ 77–78.)

Specifically, "Gyroor A" and the claimed design of the D'256 Patent both create a visual impression of an integrated hourglass body with a relatively flat surface across the top of the main body, pronounced 'footing' areas, and open-arched fenders over the top of the wheel area. (Hatch Decl. ¶ 78.) While the D'906 also includes an hourglass body, the design as a whole gives a distinctly different impression, as it creates an impression of a very uncluttered, rounded, smooth body with no pronounced footing area and closed fender skirts. (Hatch Decl. ¶ 78.)

---

[6] Although each of the charts only present selected views of the Accused Product and the figures of the Patents-in-Suit, Mr. Hatch's analysis was undertaken by comparing each of the actual, physical Accused Products to the patented designs as a whole. The full comparison of all of the figures of the Patents-in-Suit to the Accused Products and the D'906 Patent are shown in Exhibit 1 to the Hatch Declaration. (*See* Hatch Decl. ¶¶ 72, 76, 80, 84.)

| Table 10: Three-way comparison of the Gyroor A to the D'906 Patent and the claimed design of the D'256. | |
| --- | --- |
|  FIG.6 | FIG. 6 of the D'256 patent |
|  | Perspective view of Gyroor A |
|  | FIG. 4 of the prior art 'D906 Patent |
|  | Figure 1 of the D'256 Patent |



| | Top view of Gyroor A |
| | Figure 3 of the prior art D'906 Patent. |

(Hatch Decl. ¶ 76, Table 10.)

Therefore, in light of the closest prior art, the claimed design of the D'256 Patent is substantially the same as the visual impression of "Gyroor A". (Hatch Decl. ¶ 79.)

**b. The Accused Product "Gyroor C" Infringes on the Patents-in-Suit.**

In the eyes of the hypothetical ordinary observer familiar with the prior art, giving such attention as a purchaser usually gives, the overall visual appearance of "Gyroor C" is substantially the same as the overall appearance of the claimed designs of the Patents-in-Suit, inducing him to purchase "Gyroor C" supposing it to be the claimed design of the Patents-in-Suit. (*See* Hatch Decl. ¶¶ 80–87.)

**i. The Accused Product "Gyroor C" Is Substantially Similar to the D'723 Patent.**

In the eyes of the ordinary observer, not only is the overall visual impression of the claimed design of the D'723 Patent not plainly dissimilar from the design of "Gyroor C," but when further comparing the designs to the closest prior art, "Gyroor C" is closer in overall impression to the claimed design of the D'723 Patent than to the D'906 Patent. (Hatch Decl. ¶¶ 81–82.)

Specifically, "Gyroor C" and the claimed design of the D'723 Patent both create a visual impression of an integrated hourglass body with a relatively flat surface across the top of the main body, pronounced 'footing' areas, and open-arched fenders over the top of the wheel area. (Hatch Decl. ¶ 82.) While the D'906 also includes an hourglass body, the design as a whole gives a distinctly different impression, as it creates an impression of a very uncluttered, rounded, smooth body with no pronounced footing area and closed fender skirts. (Hatch Decl. ¶ 82.)

| Table 11: Three-way comparison of Gyroor C to the D'906 Patent and the claimed design of the D'723. | |
|---|---|
|  FIG.6 | FIG. 6 of the 'D723 patent |
| | Perspective view of Gyroor C |



| | |
|---|---|
| | FIG. 4 of the prior art 'D906 Patent |
| | Figure 1 of the D'723 Patent |
| | Top view of Gyroor C |
| | Figure 3 of the prior art D'906 Patent. |

(Hatch Decl. ¶ 80, Table 11.)

Therefore, in light of the closest prior art, the claimed design of the D'723 Patent is substantially the same as the visual impression of "Gyroor C". (Hatch Decl. ¶ 83.)

### ii. The Accused Product "Gyroor C" Is Substantially Similar to the D'256 Patent.

Likewise, with respect to the D'256 Patent, in the eyes of the ordinary observer, the overall visual impression of the claimed design of the D'256 Patent is not plainly dissimilar from the design of "Gyroor C." And, when further comparing the designs to the closest prior art, "Gyroor C" is closer in overall impression to the claimed design of the D'256 Patent than to the D'906 Patent. (Hatch Decl. ¶¶ 85–86.)

Specifically, "Gyroor C" and the claimed design of the D'256 Patent both create a visual impression of an integrated hourglass body with a relatively flat surface across the top of the main body, pronounced 'footing' areas, and open-arched fenders over the top of the wheel area. (Hatch Decl. ¶ 86.) While the D'906 also includes an hourglass body, the design as a whole gives a distinctly different impression, as it creates an impression of a very uncluttered, rounded, smooth body with no pronounced footing area and closed fender skirts. (Hatch Decl. ¶ 86.)

| Table 12: Three-way comparison of the Gyroor C to the D'906 Patent and the claimed design of the D'256. | |
|---|---|
|   FIG.6 | FIG. 6 of the D'256 patent |



| | |
|---|---|
| | Perspective view of Gyroor C |
| | FIG. 4 of the prior art 'D906 Patent |
| | Figure 1 of the D'256 Patent |
| | Top view of Gyroor C |
| | Figure 3 of the prior art D'906 Patent. |

(Hatch Decl. ¶ 84, Table 12.)

Therefore, in light of the closest prior art, the claimed design of the D'256 Patent and is substantially the same as the visual impression of "Gyroor C". (Hatch Decl. ¶ 87.)

### c. The Accused Product "Gyroor E" Infringes on the Patents-in-Suit.

In the eyes of the hypothetical ordinary observer familiar with the prior art, giving such attention as a purchaser usually gives, the overall visual appearance of "Gyroor E" is substantially the same as the overall appearance of the claimed designs of the Patents-in-Suit, inducing him to purchase "Gyroor E" supposing it to be the claimed design of the Patents-in-Suit. (*See* Hatch Decl. ¶¶ 88–95.)

### i. The Accused Product "Gyroor E" Is Substantially Similar to the D'723 Patent.

In the eyes of the ordinary observer, not only is the overall visual impression of the claimed design of the D'723 Patent not plainly dissimilar from the design of "Gyroor E," but when further comparing the designs to the closest prior art, "Gyroor E" is closer in overall impression to the claimed design of the D'723 Patent than to the D'906 Patent. (Hatch Decl. ¶¶ 89–90.)

Specifically, "Gyroor E" and the claimed design of the D'723 Patent both create a visual impression of an integrated hourglass body with a relatively flat surface across the top of the main body, pronounced 'footing' areas, and open-arched fenders over the top of the wheel area. (Hatch Decl. ¶ 90.) While the D'906 also includes an hourglass body, the design as a whole gives a distinctly different impression, as it creates an impression of a very uncluttered, rounded, smooth body with no pronounced footing area and closed fender skirts. (Hatch Decl. ¶ 90.)

**Table 13: Three-way comparison of Gyroor E to the D'906 Patent and the claimed design of the D'723.**



| | |
|---|---|
| FIG.6 | FIG. 6 of the 'D723 patent |
| | Perspective view of Gyroor E |
| | FIG. 4 of the prior art 'D906 Patent |
| FIG.1 | Figure 1 of the D'723 Patent |



| | Top view of Gyroor E |
| | Figure 3 of the prior art D'906 Patent. |

(Hatch Decl. ¶ 88, Table 13.)

Therefore, in light of the closest prior art, the claimed design of the D'723 Patent is substantially the same as the visual impression of "Gyroor E". (Hatch Decl. ¶ 91.)

### ii. The Accused Product "Gyroor E" Is Substantially Similar to the D'256 Patent.

Similarly, with respect to the D'256 Patents, in the eyes of the ordinary observer, the overall visual impression of the claimed design of the D'256 Patent is not plainly dissimilar from the design of "Gyroor E." And, when further comparing the designs to the closest prior art, "Gyroor E" is closer in overall impression to the claimed design of the D'256 Patent than to the D'906 Patent. (Hatch Decl. ¶¶ 93–94.)

Specifically, "Gyroor E" and the claimed design of the D'256 Patent both create a visual impression of an integrated hourglass body with a relatively flat surface across the top of the main body, pronounced 'footing' areas, and open-arched fenders over the top of the wheel area. (Hatch Decl. ¶ 94.) While the D'906 also includes an hourglass body, the design as a whole gives a distinctly different impression, as it creates an impression of a very uncluttered, rounded, smooth body with no pronounced footing area and closed fender skirts. (Hatch Decl. ¶ 94.)

**Table 14: Three-way comparison of the Gyroor E to the D'906 Patent and the claimed design of the D'256.**



FIG. 6 of the D'256 patent

Perspective view of Gyroor E

FIG. 4 of the prior art 'D906 Patent

Figure 1 of the D'256 Patent



| | Top view of Gyroor E |
| | Figure 3 of the prior art D'906 Patent. |

(Hatch Decl. ¶ 92, Table 14.)

Therefore, in light of the closest prior art, the claimed design of the D'256 Patent is substantially the same as the visual impression of "Gyroor E". (Hatch Decl. ¶ 95.)

> **B.    Plaintiffs Demonstrate the Remaining Requirements for Entry of the New TRO and New PI.**

Plaintiffs meet the remaining requirements for entry of the New TRO and New PI—that (2) no adequate remedy at law exists, and (3) they will suffer irreparable harm if the injunction is denied. *Ty, Inc.*, 237 F.3d. at 895; *Celsis*, 664 F.3d at 926. Plaintiffs also make a showing that the balance of the respective irreparable harms to the parties and the consideration of the potential effects on the public interest favors granting the New TRO and New PI. *Ty, Inc.*, 237 F.3d. at 895.

> **1.    Plaintiffs Have No Adequate Remedy at Law to Compensate for Defendants' Infringement and Will Continue to Suffer Irreparable Harm Absent the New TRO and New PI.**

As stated above, Plaintiffs have no adequate remedy at law and will continue to be irreparably harmed absent the entry of the New TRO and New PI. Here, the Court may presume irreparable harm because Plaintiffs possess valid patents and established that the Accused Produced infringed upon those patents. *See Bell & Howell Doc. Mgmt. Prods. Co. v. Altek Sys.*,

27

132 F.3d 701, 708 (Fed. Cir. 1997) ("In matters involving patent rights, irreparable harm has been presumed when a clear showing has been made of patent validity and infringement."). Beyond that presumption, Plaintiffs present additional, overwhelming evidence of the irreparable harm caused by Defendants' continued sale of the Accused Products; notably, Plaintiffs have and will continue to suffer eroded control of their patent rights, decreased market share, and harm to reputation and goodwill. (Dkt. 101 ¶ 43.) This Circuit has consistently acknowledged the incalculable nature of these harms such that no adequate remedy at law exists. *See Celsis*, 664 F.3d at 930. In particular, harm to reputation and goodwill is immeasurable in ways not readily compensable by an award of money damages. *See Promatek Indus. Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002); *Gateway E. Railway Co. v. Terminal Railroad Assoc. of St. Louis*, 35 F.3d 1134, 1140 (7th Cir. 1994). Additionally, the Federal Circuit has held injunctive relief justifiable in cases involving foreign infringers from whom collection of monetary damages would be difficult. *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011).

Furthermore, Plaintiffs have established a causal nexus between Defendants' infringement and the irreparable harm suffered. (*See* Third Supplemental Declaration of Richard F. Bero, CPA, CVA, dated November 8, 2022 ("Bero Decl.")); *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1264 (Fed. Cir. 2013). The hoverboard market is a competitive one in which Plaintiffs and Defendants directly compete. (Bero Decl. ¶¶ 87–92.) Plaintiffs' commercial success in the hoverboard market is due, in part, to the ways by which its Patents-in-Suit have "revolutionized" hoverboard design. (Bero Decl. ¶¶ 94–95.) Plaintiffs have sold thousands of products in the United States featuring the Patents-in-Suit, notably an approximate 459,000 hoverboards generating $50.6 million in sales between January 1, 2019, and September 30, 2020. (Bero Decl. ¶ 97.) Accordingly, there is a causal nexus between the Patents-in-Suit and the demand for the products. (Bero Decl. ¶

100.) In light of the presumption of irreparable harm afforded to the Plaintiffs, in tandem with evidence of the same, entry of the New TRO and New PI is appropriate in these circumstances.

### 2. The Balance of the Parties' and the Public's Interest Favor Entry of the New TRO and New PI.

As Plaintiffs demonstrate a *prima facie* case of design patent infringement, including the necessity for equitable relief, the Court must subsequently balance the potential harms to both the parties' and the public's interests in denying or granting the New TRO and New PI. *See Ty, Inc.*, 237 F.3d at 895; *Abbott Labs v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992). Plaintiffs establish valid ownership of the Patents-in-Suit, as well as infringement by the Defendants' Accused Products such that Plaintiffs are likely to succeed on the merits of their patent infringement claim against Defendants. *See supra*, Section I(A). Plaintiffs further establish having suffered irreparable harm in the form of eroded control of patent rights, diminished market share, and injury to reputation and goodwill. *See supra*, Section I(B)(1). Plaintiffs provide additional support for equitable relief on the grounds that they are unlikely to recover monetary damages, if calculable, given Defendants' status as foreign entities. *See supra*, Section I(B)(1). Absent the New TRO and New PI, Plaintiffs will continue to suffer all aforementioned losses.

By comparison, Defendants can make no showing of such reciprocal harms caused by the New TRO and New PI. Any "harm" to Defendants is self-inflicted—Defendants' loss of sales of the Accused Products is the result of its own calculated risk in knocking off Plaintiffs' designs and selling infringing products. *See Celsis*, 664 F.3d at 931. Defendants should be afforded little, if any, equitable consideration of harms caused by the New TRO and New PI given their position as willful infringers of Plaintiffs' Patents-in-Suit.

Additionally, the Court should consider the benefit to the public interest in granting the New TRO and New PI. Public policy generally favors protecting intellectual property rights,

29

including valid patent holder's right to enforce that patent against infringers. *See Apple*, 809 F.3d at 647 ("[T]he public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his invention."). Here, the New TRO and New PI will ensure inventors and innovators, like Plaintiffs, will remain incentivized to develop new products and patent inventions with the reassurance that they may enforce patents against infringers. Further, the public will not be harmed by entry of the New TRO and New PI, as the public may still purchase non-infringing hoverboard products that remain on the market in the interim. *See id.* (no harm to public interest where removal of unauthorized infringing features from product could be effected without recalling any of the products or disrupting consumer use of the products). Accordingly, the balance of harms clearly and heavily favors entry of the New TRO and New PI.

## II.    THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Patent Act explicitly authorizes courts to issue injunctive relief "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. Enjoining and restraining Defendants from offering for sale, selling, and importing any of the Accused Products that infringe the claimed designs of the Patents-in-Suit is necessary to stop the ongoing harm to Plaintiffs' control over their rights to the Patents-in-Suit, their reputation and associated goodwill, as well as to prevent Defendants from improperly benefiting from their unauthorized sale of the Accused Products.

In addition, maintaining the status quo and continuing the asset freeze is appropriate. Since entry of the Prior TRO and Prior PIs, third-party payment platforms and providers have restrained accounts linked to Defendants that were selling infringing products, including the Accused Products. Absent such restraints, Defendants may otherwise fraudulently transfer their financial assets, thereby depriving Plaintiffs of final relief. *See, e.g., Deckers Outdoor Corp. v. Partnerships*

& *Unincorporated Associations*, No. 13 C 2167, 2013 WL 1337616, at *9 (N.D. Ill. Mar. 27, 2013) ("[F]reezing of financial assets is also appropriate in this case because Defendants may otherwise transfer their financial assets to overseas accounts, thereby depriving the Plaintiff of final relief.") (citing *Reebok Int'l Ltd. v. Marnatech Enters., Inc.,* 970 F.2d 552, 559 (9th Cir.1992)); *Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, No. 03-cv-4844, 2005 WL 3115892 (N.D. Ill. Nov. 8, 2005). A freeze of Defendants' assets merely ensures that Defendants will not hide their funds in order to avoid payment of a potential judgment—in the unlikely event that Defendants prevail, their assets will be available to them at that time. Accordingly, the equitable relief sought by Plaintiffs is appropriate.

## III.   ALL RELEVANT PARTIES ARE SUFFICIENTLY ON NOTICE OF THIS MOTION.

Pursuant to Federal Rule of Civil Procedure 65(a) and (b), Plaintiffs have provided notice to all parties it seeks to enjoin from infringing activities under this New TRO and New PI. While a temporary restraining order may be issued without notice in certain circumstances (*see* Fed. R. Civ. P. 65(b)), the Federal Rules of Civil Procedure require that a court issue a preliminary injunction only upon notice to the adverse party. Fed. R. Civ. P. 65(a). Such notice serves to give the non-moving parties a fair opportunity to oppose the application and prepare for such opposition. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Trust Drivers No. 70 of Alameda County*, 415 U.S. 423, 432 n.7 (1974); *see also Illinois ex rel. Hartigan v. Peters*, 871 F.2d 1336, 1340 (7th Cir. 1989) ("[N]otice should apprise a defendant of a hearing and provide adequate time to prepare a defense.") (internal citation omitted).

All of the Defendants have previously appeared in this Action, and will receive notice upon the filing of this motion for entry of a New TRO and New PI, in accordance with Fed. R. Civ. P. 65(a) notice requirements. Plaintiffs also provided advanced notice to Defendants' counsel and

conferred regarding a briefing schedule. As such, Defendants and all parties to whom the New TRO and New PI apply have ample time to be heard in advance of this Court's decision and entry of the New TRO and New PI, and well ahead of any restraints upon Defendants. There can be no dispute that Defendants have sufficient notice of this motion.

## **CONCLUSION**

Plaintiffs demonstrate the necessity of a preliminary injunction in this matter and this Court should therefore issue the New TRO and grant the New PI enjoining Defendants from selling the Accused Products and restraining the transfer of assets associated with such sales.

Dated: November 9, 2022

PALMERSHEIM & MATHEW LLP

Robert J. Palmersheim
Anand C. Mathew
Timothy G. Parilla
401 N. Franklin Street, Suite 4S
Chicago, IL 60654
Tel.: (312) 319-1791
E-mail: acm@thepmlawfirm.com
E-mail: rjp@thepmlawfirm.com
E-mail: tgp@thepmlawfirm.com

TARTER KRINSKY & DROGIN LLP
By: */s/ Richard J.L. Lomuscio*
Richard J.L. Lomuscio
Mark Berkowitz
1350 Broadway
New York, NY 10018
Tel.: (212) 216-8000
Fax: (212) 216-8001
E-mail: rlomuscio@tarterkrinsky.com
E-mail: mberkowitz@tarterkrinsky.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2022, a true and correct copy of the foregoing document was filed with the Clerk of the Court using CM/ECF which will generate and serve a Notice of Electronic Filing to all parties to this action.

Dated: November 9, 2022

PALMERSHEIM & MATHEW LLP

Robert J. Palmersheim
Anand C. Mathew
Timothy G. Parilla
401 N. Franklin Street, Suite 4S
Chicago, IL 60654
Tel.: (312) 319-1791
E-mail: acm@thepmlawfirm.com
E-mail: rjp@thepmlawfirm.com
E-mail: tgp@thepmlawfirm.com

TARTER KRINSKY & DROGIN LLP

By: */s/ Richard J.L. Lomuscio*
Richard J.L. Lomuscio
Mark Berkowitz
1350 Broadway
New York, NY 10018
Tel.: (212) 216-8000
Fax: (212) 216-8001
E-mail: rlomuscio@tarterkrinsky.com
E-mail: mberkowitz@tarterkrinsky.com

*Attorneys for Plaintiffs*