HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Hangzhou Chic Intelligent Technology Co., Ltd., and Unicorn Global, Inc.<br><br>Plaintiffs,<br><br>v.<br><br>The Partnerships and Unincorporated Associations Identified on Schedule A,<br><br>Defendants. | Case No. 20-cv-4806<br>Judge Thomas M. Durkin<br>Magistrate Judge Jeffrey Cole |

**Third Supplemental Declaration of Richard F. Bero, CPA, CVA**
**November 8, 2022**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

## TABLE OF CONTENTS

I. Introduction ........................................................................................................... 1

 A. Assignment ................................................................................................. 1

 B. Basis for opinions ...................................................................................... 3

 C. Preliminary injunction hearing .................................................................. 4

 D. Expert experience and compensation......................................................... 4

 E. Parties in the lawsuit ................................................................................. 4

  1. Hangzhou Chic.............................................................................. 4

  2. Unicorn Global, Inc. ██████████████ ................................ 7

  3. Gyroor Defendants ........................................................................ 8

II. Summary of opinions ............................................................................................ 9

III. The 'D723 and 'D256 patents relate to Hoverboards ...................................... 10

 A. 'D723 patent............................................................................................. 11

 B. 'D256 patent............................................................................................. 11

IV. Market overview and competitors ...................................................................... 12

 A. Hoverboard market .................................................................................. 12

 B. Competitors .............................................................................................. 14

V. Chic's and Unicorn's Patented Hoverboards ..................................................... 14

 A. Chic's Patented Hoverboards................................................................... 14

 B. ████████'s (Unicorn's) Patented Hoverboards .................................... 15

VI. Defendants' products ........................................................................................... 18

 A. Accused Hoverboards .............................................................................. 18

VII. Unicorn's lost sales and profits........................................................................... 20

VIII. Opinion 1:  There appears to be some causal nexus between the 'D723 and 'D256 patents and the demand for the Patented Products........................................... 21

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

A.    Direct competition – Plaintiffs and the Gyroor Defendants directly compete ................................................................................................ 22

B.    Commercial success – The Patented Products have been commercially successful ............................................................................................. 23

C.    Conclusion ............................................................................................ 24

IX.    Opinion 2: The Plaintiffs will be irreparably harmed if the Gyroor Defendants continue selling their Gyroor-branded Accused Products in the United States. ............... 24

A.    Monetary damages will not fully compensate the Plaintiff ................................. 25

    1.    Overview of patent damages .................................................... 25

B.    Conclusion ............................................................................................ 29

X.    Conclusion .................................................................................................... 29

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

# I.     Introduction

## A.     Assignment

1.   I have been asked to provide a Third Supplemental Declaration on behalf of the Plaintiffs Hangzhou Chic Intelligent Technology Co., Ltd. ("Chic") and Unicorn Global, Inc. ("Unicorn") (collectively, the "Plaintiffs") in *Hangzhou Chic Intelligent Technology Co., Ltd. and Unicorn Global, Inc. v. The Partnerships and Unincorporated Associations Identified on Schedule A* (collectively, "the Defendants").

2.   I previously issued a Declaration dated October 23, 2020, a Supplemental Declaration dated November 19, 2020 and a Second Supplemental Declaration dated August 24, 2021 in this matter.  I understand the Court issued a preliminary injunction on November 24, 2020, which it modified on December 23, 2020.[1]

3.   On August 9, 2021, I understand the Court ordered the Plaintiffs to file and serve a new preliminary injunction motion on at least two defendants, Fengchi-US and Urbanmax,[2] as part of a group of Defendants (the "Gyroor Defendants") selling accused Gyroor-branded products.[3]  As a result, I was asked to submit a Second Supplemental Declaration as it specifically related to the Gyroor Defendants.[4]

4.   On October 28, 2022, I understand the United States Court of Appeals for the Federal Circuit vacated the 2020 and 2021 preliminary injunctions issued in this matter.[5]

5.   As a result, I have been asked to update my opinions included in my Declaration dated October 2020, my Supplemental Declaration dated November 19, 2020 and my Second Supplemental Declaration dated August

---

[1] Preliminary Injunction Order dated November 24, 2020 and Modified Preliminary Injunction Order dated December 23, 2020.

[2] Dkt. 359 minute entry dated August 9, 2021.

[3] I define the "Gyroor Defendants" below.

[4] For purposes of this Declaration, I understand the claims against the Gyroor Defendants are the same as they are or were against all the other Defendants in this matter.

[5] United States Court of Appeals for the Federal Circuit Opinions numbered 2021-2150 and 2022-1071.  I understand the 2021 preliminary injunction was issued after my Second Supplemental Declaration.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

24, 2021 related to: 1) the causal nexus between the patents-in-suit and demand for the Patented Products; and 2) irreparable harm the Plaintiffs will incur if the Defendants continue selling their Accused Products in the United States. These opinions were in support of the Plaintiffs' motion for a preliminary injunction (that was granted), which sought to bar all the Defendants in this matter from manufacturing, using, importing, offering for sale, or selling accused products alleged to infringe U.S. Patent Nos. D737,723 ("the 'D723 patent"), D738,256 ("the 'D256 patent"), D784,195 ("the 'D195 patent"), and D785,112 ("the 'D112 patent") (collectively, the "patents-in-suit").[6]

6. For purposes of this Declaration, I have been asked to address only the 'D723 and 'D256 patents. As such, I do not specifically address the 'D195 or 'D112 patents in this Declaration.

7. Chic alleges the Defendants (including the Gyroor Defendants) have infringed certain claims of the 'D723 and 'D256 patents.[7] The 'D723 and 'D256 patents are titled "Self-Balancing Vehicle," and were issued on September 1, 2015 and September 8, 2015, respectively.[8]

8. Chic has accused the Defendants (including the Gyroor Defendants) of infringing the 'D723 and 'D256 patents by making, using, offering for sale, selling and / or importing into the United States for sale of use products that directly and / or indirectly infringe the Plaintiffs' Designs (the "Gyroor-branded Accused Products" as it relates to the Gyroor Defendants, or, more generally, "Accused Products" or "Accused Hoverboards").[9]

9. I have not formed any opinions about the infringement, validity or enforceability of the 'D723 or 'D256 patents, or any legal opinions relating to other aspects of this matter. However, for purposes of my analysis, I assume the 'D723 and 'D256 patents are infringed, valid and enforceable.

---

[6] Third Am. Compl. 15-19.
[7] Third Am. Compl. 15-16. I understand the Plaintiffs still allege the Defendants (including the Gyroor Defendants) infringe certain claims of the 'D195 and 'D112 patents.
[8] Third Am. Compl. 5.
[9] Third Am. Compl. 15-16.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

### B.      Basis for opinions

10.   My opinions are based upon the following:

- the Third Amended Complaint (Dkt. 101), other legal filings and related exhibits in this matter, including the 'D723 and 'D256 patents, and various declarations;

- documents and information produced / provided by the Plaintiffs;

- Declaration of Jinyuan Lei dated August 14, 2020 and Declaration of Jinyuan Lei dated October 23, 2020;

- Declaration of Jiawei Ying dated August 14, 2020 and Declaration of Jiawei Ying dated October 23, 2020;

- Declaration of Jing Cui dated August 20, 2021;

- the Expert Declaration of Paul Hatch dated November 8, 2022 (the "November 2022 Hatch Declaration");

- the Expert Declaration of Paul Hatch dated August 24, 2021 (the "August 2021 Hatch Declaration");

- the Expert Declaration of Paul Hatch dated November 12, 2020 (the "Hatch Declaration");[10]

- independent research; and

- my skills, knowledge, professional background, education and work experience.

11.   A detailed list of data and other information I have considered at this time in developing my opinions is included as **Third Supplemental Attachment 1**. In the event additional relevant information becomes available after the issuance of my Declaration, I will incorporate such information as necessary.

---

[10] Paul Hatch previously issued a Declaration dated October 16, 2020 in this matter.  I understand Paul Hatch's Declaration dated November 12, 2020 updated and superseded his October 16, 2020 Declaration.  As such, I will refer to his November 12, 2020 Declaration as the "Hatch Declaration" herein.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

### C.      Preliminary injunction hearing

12.   In preparing for the preliminary injunction hearing, I may prepare demonstrative exhibits based upon information included in this Declaration and/or additional information which becomes available hereafter.

### D.      Expert experience and compensation

13.   I am a certified public accountant accredited in business valuation, a certified valuation analyst and the Managing Director of The BERO Group.  Since 1987, I have analyzed economic damages and accounting and financial issues in a variety of litigation matters concerning areas such as patent infringement, trademark infringement, copyright infringement, trade secrets, breach of contract, dealership disputes and construction disputes.  I have testified as an expert more than 150 times.  My curriculum vitae, including a list of my testimonial experience in the last four years and publications in the last ten years, is included as **Third Supplemental Attachment 2**.

14.   Compensation to The BERO Group for professional services provided in preparing this Declaration is based on our customary hourly fees.  My hourly rate is $675, while the rates for my staff are less.  Compensation to The BERO Group is not in any way dependent on the substance of my opinions.  The BERO Group does not have any financial or other interest in the outcome of this dispute.

15.   Regarding all my opinions and analyses, I assume the Plaintiffs reported revenues, costs, units and other data are generally accurate and reliable.

### E.      Parties in the lawsuit

#### 1.      Hangzhou Chic

16.   Chic is a high-tech company that manufactures and licenses hoverboard products sold in the United States.[11]  Chic is located in Hangzhou, China.[12]  Chic designs and sells hoverboards, among other technologies, which

---

[11] Third Am. Compl. 3.
[12] Third Am. Compl. 3.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

incorporate the 'D723 and 'D256 patents (collectively, the "Patented Products" or "Patented Hoverboards").[13]  Chic is the assignee of approximately 400 patents related to technologies associated with the Patented Products, including the 'D723 and 'D256 patents described herein.[14]

17. Chic shipped its first hoverboard to the United States in December 2014.[15]

18. Chic's Patented Products are sold into the United States.[16] ███████████, Chic began licensing its Chinese patents to Chinese manufacturers through ████████████████████████.[17]  In turn, these Chinese manufacturers sold these products into the United States.[18]

19. ████████████████████████████████
████████████████████████████
███████████ █ ████████████████
██████████████████████████████
█████████████████████████████
█████████████████████████████
█████████████████████████████
██████████████████████████████
█████████████████████████████
███████████████ █ █████████████
████████████████████████████
█████████████████████████████
█████████████████████████████

[13] Third Am. Compl. 3.
[14] Third Am. Compl. 3.
[15] Declaration of Jiawei Ying 2 (October 23, 2020).
[16] Declaration of Jiawei Ying 2 (October 23, 2020).
[17] Declaration of Jiawei Ying 2 (October 23, 2020).
[18] Declaration of Jiawei Ying 2 (October 23, 2020).

█ ████████████████
█ ██████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



20. ████████████████████████

████████████████████████████

████████████████████████████

████████████████ ██████████████

███████████████████████ ███████

████████████████████████████

██████

21. ████████████████████████

████████████████████████

██████████████████████

████ ████████████████████ manufacture, sell and offer to sell the Patented Hoverboards in the U.S.[27] ██████████

██████████████████████████

██████████████████ ████████████

████████████████████ ██ ████

███████████████████████

██████████████████████ █ ██

████████████████████ ████

██████████████████████████

████████████████████████

████████████████████████



[26] Declaration of Jiawei Ying 2 (October 23, 2020).  Chic – Unicorn License.
[27] Declaration of Jiawei Ying 2 (October 23, 2020).  Chic – Unicorn License.

████████████████ ██████

[30] Declaration of Jiawei Ying 2 (October 23, 2020).  Chic – Unicorn License.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

22. ████████████████████████████████████████████████

**2.    Unicorn Global, Inc. (████████████████████)**

23.  Unicorn is a California corporation with its principal place of business located in Ontario, California.[34]  Before this lawsuit was filed, Unicorn effectively had the exclusive rights to manufacture, sell and offer to sell the Plaintiffs' Products in the United States.[35]  Through its affiliates and licenses, Unicorn operates websites that promote and sell genuine Plaintiffs' Products, and which feature proprietary content, images and designs exclusive to Plaintiffs.[36]

24. ████████████████████████████████████████████████

25. ████████████████████████████████████████████████

26.  From September 2020 through approximately August 2021, I understand Unicorn's monthly sales of the Patented Hoverboards were approximately 50% less than they were in comparable months in 2019 and 2020.[41]

---

[31] Declaration of Jiawei Ying 3 (October 23, 2020).  Chic – Unicorn License.
[32] Declaration of Jiawei Ying 3 (October 23, 2020).
[33] Global Hoverboard Scooters Market 2020 Report (QYR Research) 55.
[34] Third Am. Compl. 3.
[35] Chic – Unicorn License.  Third Am. Compl. 3.
[36] Third Am. Compl. 3.
[37] **Schedule 1.0**.  Declaration of Jinyuan Lei 2 (October 23, 2020).
[38] **Schedule 1.0**.
[39] **Schedule 1.0**.  Declaration of Jinyuan Lei 2 (October 23, 2020).
[40] **Schedule 1.0**.
[41] Declaration of Jing Cui 2 (August 20, 2021).  I briefly address the reasons Unicorn believes the sales of its Patented Hoverboards have decreased since September 2020 below.  Also, I have not been asked to address Unicorn's sales of its Patented Hoverboards since my Second Supplemental Declaration in this Declaration.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

3.      **Gyroor Defendants**

27.   The Gyroor Defendants are individuals and business entities who own and / or operate one or more Gyroor Defendant Internet Stores and / or other aliases not yet known to the Plaintiffs.[42]   The Gyroor Defendants are alleged to reside and / or operate in the People's Republic of China.[43]

28.   More specifically, I understand the Gyroor Defendants currently include the following stores that have sold Gyroor-branded Accused Products on Amazon: Gyroor, Gyroor US, Jiangyou-US, Gyroshoes, Fengchi-US, HGSM, Gaodeshang-US, Urbanmax and their affiliated stores, and independent websites Gyroorboard.com and Gyroor.com.[44]

29.   At the time the Third Amended Complaint was filed, I understand the Defendants were split into three groups: Schedule A Defendants, Schedule B Defendants and Schedule C Defendants.[45]   I understand the Gyroor Defendants are Schedule A Defendants.   I understand the Schedule A Defendants, including the Gyroor Defendants, do not have substantial contacts within the United States and are foreign entities that operate Defendant Internet Stores and sell Accused Products.[46]

30.   As a Schedule A Defendant, the Gyroor Defendants are alleged to either individually or jointly, operate one or more Gyroor Defendant Internet Stores.[47]   The Defendants (including the Gyroor Defendants) are alleged to use tactics to conceal their identities and full scope of their operations that make it virtually impossible for Plaintiffs to learn the Defendants' true identities and the exact interworking of their network.[48]   The Defendant Internet Stores (including those of the Gyroor Defendants) regularly create new online marketplace accounts on various platforms, and other unknown fictitious

---

[42] Third Am. Compl. 3.
[43] Third Am. Compl. 3-4.
[44] Declaration of Jing Cui 2 (August 20, 2021).
[45] Third Am. Compl. 3-4.  These Defendant Internet Stores are listed on Schedules A, B and C to the Third Amended Complaint.  I understand the Defendants listed on Schedule B and C are not relevant to this Declaration, so I will not address them further.
[46] Third Am. Compl. 4.
[47] Third Am. Compl. 4.
[48] Third Am. Compl. 4.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

names and addresses.[49]  These registration patterns are one of many common tactics used by the Defendant Internet Stores (including those of the Gyroor Defendants) to conceal their identifies, the full scope and interworking of their operations, and help them from being shut down.[50]

31.  The Gyroor Defendants allegedly design e-commerce stores operating the Gyroor Defendant Internet Stores so they appear to unknowing customers to be authorized online retailers, outlet stores or wholesalers.[51]  The Gyroor Defendant Internet Stores are alleged to often include content and images that make it difficult for consumers to distinguish such stores from an authorized retailer.[52]  The Defendant Internet Stores (including those of the Gyroor Defendants) apparently accept payment in U.S. dollars via credit cards, Paypal and/or Amazon Pay.[53]

32.  As of approximately July 2021, Chic was aware of at least 18 different merchants who sold or offered for sale Gyroor-branded Accused Products, on Amazon.com.[54]

## II.      Summary of opinions

33.  I have developed the following two opinions, and address each opinion in more detail below:

- Opinion 1:  There appears to be some causal nexus between the 'D723 and 'D256 patents and the demand for the Patented Products.

- Opinion 2:  The Plaintiffs will be irreparably harmed if the Gyroor Defendants continue selling their Gyroor-branded Accused Products in the United States.

---

[49] Declaration of Jiawei Ying 11 (August 14, 2020).  Schedule A to the Third Am. Compl.
[50] Declaration of Jiawei Ying 11 (August 14, 2020).
[51] Third Am. Compl. 13.
[52] Third Am. Compl. 13.
[53] Third Am. Compl. 13.
[54] Declaration of Arthur Tan-Chi Yuan in Support of Motion to Show Cause dated July 13, 2021 at 10-11.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

III. **The 'D723 and 'D256 patents relate to Hoverboards**

34. I understand the 'D723 and 'D256 patents generally claim and illustrate ornamental feature of hoverboards.[55]

35. The Plaintiffs use the 'D723 and 'D256 patents when designing, manufacturing and selling the Plaintiffs' Products.[56]

36. Chic has licensed enforcement rights for the 'D723 and 'D256 patents to Unicorn.[57]

37. The 'D723 and 'D256 patents have revolutionized ornamental design for hoverboards that have a central platform system.[58]

38. The 'D723 and 'D256 patents have streamline shapes that are appealing to customers in the United States.[59] Specifically:[60]

   • The 'D723 and 'D256 patents have defined the fundamental ornamental configurations of the hoverboard product class

39. The Plaintiffs have not licensed the 'D723 and 'D256 patents to the Gyroor Defendants and none of the Gyroor Defendants are authorized retailers of the Plaintiffs' Products.[61]

40. Chic believes the 'D723 and 'D256 patents have revolutionized hoverboard ornamental designs by featuring distinctive designs with a central support platform, which feature streamline shapes with sleek contours.[62] Chic also believes these designs are stylish and modern, and are visually pleasing to consumers.[63]

---

[55] Third Am. Compl. 5.
[56] Third Am. Compl. 12.
[57] Chic – Unicorn License.
[58] Third Am. Compl. 12.
[59] Third Am. Compl. 12.
[60] Third Am. Compl. 12.
[61] Third Am. Compl. 13.
[62] Declaration of Jiawei Ying 10 (August 14, 2020).
[63] Third Am. Compl. 12. Declaration of Jiawei Ying 10 (August 14, 2020).

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

## A.  'D723 patent

41.  The 'D723 patent is titled "Self-Balancing Vehicle," and was issued on September 1, 2015.[64]  The 'D723 patent claim reads: [65]

> The ornamental design for a self-balancing vehicle, as shown and described.

The 'D723 patent is further defined through eight (8) Drawing Sheets, one of which is included below:



## B.  'D256 patent

42.  The 'D256 patent is also titled "Self-Balancing Vehicle," and was issued on September 8, 2015.[66]  The 'D256 patent claim reads: [67]

> The ornamental design for a self-balancing vehicle, as shown and described.

The 'D256 patent is further defined through eight (8) Drawing Sheets, one of which is included below:

---

[64] 'D723 patent.
[65] 'D723 patent.
[66] 'D256 patent.
[67] 'D256 patent.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



## IV.      Market overview and competitors

### A.      Hoverboard market

43.   Electronic self-balancing scooters or self-balancing two-wheeled personal transporters, are commonly known as hoverboards.[68]  Hoverboards are a type of portable, battery-powered and rechargeable scooter that generally have two wheels configured in a side-by-side manner, with two platforms between the wheels on which the rider stands and balances.[69]  Hoverboards are controlled by a rider's feet, which are placed on the sensor of each platform.[70] Hoverboards can be segmented into various wheel sizes (*i.e.*, 6.5-inch, 8-inch, and 10-inch) and application (*i.e.*, teenagers and adults).[71]

---

[68] Declaration of Jiawei Ying 1 (October 23, 2020).

[69] Declaration of Jiawei Ying 2 (October 23, 2020).  Global Hoverboard Scooters Market 2020 Report (QYR Research) 1.

[70] Declaration of Jiawei Ying 2 (October 23, 2020).

[71] Declaration of Jiawei Ying 2 (October 23, 2020).  This segmentation is similar to the Global Hoverboard Scooters Market 2020 Report (QYR Research), which categorizes hoverboards in three categories based on their wheel sizes of < 7-inch wheels, 7-9 inch wheels and > 9-inch wheels, at 3-11.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

44. More than 90% of hoverboards are produced in China and exported to different regions of the world.[72]

45. In 2019, North America was considered the biggest market for hoverboards in the world (in U.S. $'s), accounting for approximately 39% of worldwide sales. Asia-Pacific (approximately 37%) and Europe (approximately 18%) were the second and third biggest markets for hoverboard sales (in U.S. $'s) in 2019.[73]

46. Within North America, the United States accounted for approximately 93% of hoverboard sales dollars in 2019.[74]

47. In 2015, hoverboard sales in the United States approximated $616 million.[75] In 2016, in response to hoverboard incidents related to fires or overheating issues, the United States Consumer Products Safety Commission set new safety standard requirements for hoverboards sold in the United States.[76] In 2016, hoverboard sales in the United States decreased significantly to approximately $149 million, and in 2019, hoverboard sales in the United States approximated $162 million.[77]

48. By 2026, the hoverboard market in the U.S. is projected to increase to approximately $220 million.[78]

49. I understand some of the market challenges in the hoverboard market include: 1) price volatility risk and supply stability risk; 2) market competition is expected to intensify; and 3) Lack of support from upstream / downstream partners as a new entry to the market.[79]

50. Similarly, I understand some of the market risks in the hoverboard market include: 1) risk of product sales market concentration; 2) relatively concentrated customer risk; 3) market competition risk; 4) risk of rising labor

---

[72] Global Hoverboard Scooters Market 2020 Report (QYR Research) 13.
[73] Global Hoverboard Scooters Market 2020 Report (QYR Research) 22.
[74] Global Hoverboard Scooters Market 2020 Report (QYR Research) 30.
[75] Global Hoverboard Scooters Market 2020 Report (QYR Research) 30.
[76] Global Hoverboard Scooters Market 2020 Report (QYR Research) 28.
[77] Global Hoverboard Scooters Market 2020 Report (QYR Research) 30.
[78] Global Hoverboard Scooters Market 2020 Report (QYR Research) 30.
[79] Global Hoverboard Scooters Market 2020 Report (QYR Research) 86.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

costs; 5) risk of falling gross margins; 5) technical risk; 6) risk of fluctuations in raw material prices; and 7) currency risk.[80]

**B.    Competitors**

51.  There are many hoverboard competitors in the market.  As of 2019, Segway-Ninebot, Hover-1 and ███ were considered to have the biggest market shares in the world, at approximately 17.7%, 8.4% and ██%, respectively.[81]   Other smaller competitors in the market included Megawheels, Inmotion, Swagway (Swagtron), Airwheel and Razor Hovertrax, among others.[82]

52.  I understand the Plaintiffs consider ████████████████████████ ████████ to be their competitors.[83]   I also understand the Plaintiffs do not consider some personal transporters to be competing in the same space, such as those made by Segway-Ninebot, since their products are different from the Patented Products and other products they sell.[84]

53.  I understand the Plaintiffs consider the Gyroor Defendants to be competitors in the U.S. hoverboard market.[85]

**V.    Chic's and Unicorn's Patented Hoverboards[86]**

**A.    Chic's Patented Hoverboards**

54.  As of August 2021, I understand Chic offered their self-balancing scooters in four design variations under the CHIC brand (SMART and CHIC series).[87] As of August 2021, Chic's website listed the following characteristics (among many others) for their self-balancing scooters:[88]

- 6.5-inch wheels
- Aircraft grade aluminum alloy framework

---

[80] Global Hoverboard Scooters Market 2020 Report (QYR Research) 86-87.
[81] ████████████████████████████████████████████.
[82] Global Hoverboard Scooters Market 2020 Report (QYR Research) 14.
[83] ████████████████████.
[84] Declaration of Jinyuan Lei 4 (October 23, 2020).
[85] Declaration of Jing Cui 2 (August 20, 2021).
[86] For purposes of this Declaration, I have not been asked to update this section, but generally understand Chic's and Unicorn's patented products are similar to those described in my Second Supplemental Declaration.
[87] http://en.chic-robot.com/product/center/1 and http://en.chic-robot.com/product/center/2.
[88] http://en.chic-robot.com/product/detail/19111315584500758597971481736192 and http://en.chic-robot.com/product/detail/19111315572000758597257862853632.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

- Cool LED headlights
- Natural resin anti-skidding pedals
- Bluetooth stereo
- Top speed of 10 km per hour and range up to 20 km
- United Laboratories certified: UL2272

55. As of August 2021, I understand the Plaintiffs' Patented Hoverboards included the Chic Smart-S/C and Smart-B-F hoverboards.[89]

56. As of August 2021, Chic's Smart-S/C was one model of a Patented Hoverboard.[90] The Smart-S/C contains aircraft grade aluminum alloy framework, supported by non-inflatable hollow tires.[91] Features of the Smart-S/C include LED illumination, anti-skid footpads, and Bluetooth connectivity, among others.[92]

57. As of August 2021, Chic's Smart-B/F was another model of a Patented Hoverboard.[93] The Smart-B/F contains aircraft grade aluminum, supported by non-inflatable hollow tires.[94] Features of the Smart-B/F include streamlined LED highlights, natural-resin anti-skidding pedals, and Bluetooth connectivity.[95]

58. ███████████████████████████████████████
████████████████████████████████████████.[96]

**B.** ████████ **(Unicorn's) Patented Hoverboards**

59. I understand Unicorn's patent-practicing products are sold in the following four series: Pure-Color, Funny, Off-Road and Chrome.[97]

---

[89] http://en.chic-robot.com/product/center/1.

[90] http://en.chic-robot.com/product/detail/191113155720007585972578626853632.

[91] Declaration of Jiawei Ying 3 (October 23, 2020) and http://en.chic-robot.com/product/detail/191113155720007585972578626853632.

[92] Declaration of Jiawei Ying 3 (October 23, 2020) and http://en.chic-robot.com/product/detail/191113155720007585972578626853632.

[93] http://en.chic-robot.com/product/detail/191113155845007585979971481736192.

[94] http://en.chic-robot.com/product/detail/191113155845007585979971481736192.

[95] http://en.chic-robot.com/product/detail/191113155845007585979971481736192.

[96] ████████████████████████████████████

[97] Declaration of Jinyuan Lei 2 (October 23, 2020).

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

60. Uni-Sun's 6.5" Pure-Color Series hoverboards contain LED front lights and flashing wheels, and the majority include Bluetooth.[98] The Pure-Color Series models contain dual 300-watt motors with a maximum speed of 9 MPH and a riding range of up to 9 miles.[99] The Pure-Color Series is recommended for children ages 4 to 8.[100]

61. Uni-Sun's 6.5" Funny Series hoverboards contain LED front / side lights, flashing wheels and Bluetooth.[101] The Pure-Color Series models contain dual 300-watt motors with a maximum speed of 9 MPH and a riding range of up to 9 miles.[102] The Pure-Color Series is recommended for all kids and teens.[103]

62. Uni-Sun's 8.5" Off-Road Series hoverboards provide an all-terrain design along with "SUV tires" able to travel through "mud, grass, rain and even gravel" safely.[104] Most Off-Road Series hoverboards include LED front lights and Bluetooth.[105] Off-Road Series models contain dual 350-watt motors with a maximum speed of 10 MPH and a riding range of up to 10 miles.[106] The Pure-Color Series is recommended for kids, teens and adults.[107]

63. Uni-Sun's 6.5" Chrome Series hoverboards include LED front / side lights, flashing wheels and Bluetooth.[108] Chrome Series models contain dual 300-watt motors with a maximum speed of 9 MPH and a riding range of up to 9 miles.[109] The Chrome Series is recommended for children ages 9-12.[110]

64. Generally speaking, larger hoverboards are more expensive than smaller hoverboards. For example, Uni-Sun's 8.5" Off-Road Series hoverboards are more expensive than its various 6.5" series described herein.[111]

---

[98] Declaration of Jinyuan Lei 2 (October 23, 2020).
[99] Declaration of Jinyuan Lei 2-3 (October 23, 2020).
[100] Declaration of Jinyuan Lei 3 (October 23, 2020).
[101] Declaration of Jinyuan Lei 3 (October 23, 2020).
[102] Declaration of Jinyuan Lei 3 (October 23, 2020).
[103] Declaration of Jinyuan Lei 3 (October 23, 2020).
[104] Declaration of Jinyuan Lei 3 (October 23, 2020).
[105] Declaration of Jinyuan Lei 3 (October 23, 2020).
[106] Declaration of Jinyuan Lei 3 (October 23, 2020).
[107] Declaration of Jinyuan Lei 3 (October 23, 2020).
[108] Declaration of Jinyuan Lei 3 (October 23, 2020).
[109] Declaration of Jinyuan Lei 3 (October 23, 2020).
[110] Declaration of Jinyuan Lei 3 (October 23, 2020).
[111] Declaration of Jinyuan Lei 3 (October 23, 2020).

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

65. 

66.

67.

68.

69.

70. From October 2020 through approximately August 2021, I understand Unicorn's monthly sales of the Patented Hoverboards were approximately



112

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

50% less than they were in comparable months in 2019 and 2020.[121] Unicorn believes the decrease in sales of its Patented Hoverboards since September 2020 were due in part to its sales prior to September 2020 being greater than expected (as described above), and other reasons such as supply chain issues with products imported from China.[122]

71. **Picture 1** below is a picture of one Patented Hoverboard Unicorn sold as of August 2021:[123]

**Picture 1: One Unicorn Patented Hoverboard**



## VI.    Defendants' products

### A.    Accused Hoverboards

72. I understand numerous unauthorized third parties, including the Gyroor Defendants, sell and import hoverboard products into the United States that imitate the patented designs.[124] As defined earlier, these Gyroor "Defendant Internet Stores" sell or offer for sale Gyroor-branded Accused Products on their various websites.[125] As of approximately July 2021, Chic was aware of at least 18 different merchants who sold or offered for sale Gyroor-branded Accused Products on Amazon.com.[126]

73. I understand the Accused Products in this matter include products that are also referred to as "Gyroor A," "Gyroor C," and "Gyroor E" products.[127]

---

[121] Declaration of Jing Cui 2 (August 20, 2021).

[122] Declaration of Jing Cui 2 (August 20, 2021).

[123] *See, e.g.*, https://www.amazon.com/SISIGAD-Hoverboard-Balancing-Two-Wheel-Certified/dp/B07KM6WPYC/ref=sr_1_6?dchild=1&keywords=sisigad+hoverboard&qid=1603740626&sr=8-6.

[124] Declaration of Jiawei Ying 10-11 (August 14, 2020). Third Am. Compl. 12-13.

[125] Declaration of Jiawei Ying 11 (August 14, 2020). Third Am. Compl. 12-13.

[126] Declaration of Arthur Tan-Chi Yuan in Support of Motion to Show Cause dated July 13, 2021 at 10-11.

[127] November 2022 Hatch Declaration 1 and 21.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

74. I understand the Gyroor-branded Accused Products are not exact duplicates of each other, but share very similar visual traits in their format, proportions and main visual features, and share the same overall impression to an ordinary observer.[128]

75. I understand the Gyroor-branded Accused Products create the visual impression to a hypothetical observer of an integrated hourglass body with a relatively flat surface across the top of the main body, pronounced 'footing' areas, and open-arched fenders over the top of the wheel area.[129]

76. I understand the claimed design of the 'D723 patent is substantially the same as the visual impression presented by the Gyroor A, C and E Accused Products in that the Gyroor A, C and E Accused Products and the 'D723 patent both create a visual impression of an integrated hourglass body with a relatively flat surface across the top of the main body, pronounced 'footing' areas, and open-arched fenders over the top of the wheel area.[130]

77. I understand the claimed design of the 'D256 patent is substantially the same as the visual impression presented by the Gyroor A, C and E Accused Products in that the Gyroor A, C and E Accused Products and the 'D256 patent both create a visual impression of an integrated hourglass body with a relatively flat surface across the top of the main body, pronounced 'footing' areas, and open-arched fenders over the top of the wheel area.[131]

78. **Picture 2** below is a picture of one Accused Gyroor-branded Hoverboard the Gyroor Defendants sell:[132]

---

[128] November 2022 Hatch Declaration 21.
[129] November 2022 Hatch Declaration 21.
[130] November 2022 Hatch Declaration 29-30, 34 and 38.
[131] November 2022 Hatch Declaration 31-32, 36 and 40.
[132] November 2022 Hatch Declaration 22.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**Picture 2: One Accused Gyroor-branded Hoverboard**



## VII.      Unicorn's lost sales and profits

79.   As described above, the hoverboard market in the U.S. in 2019 was estimated to be $162 million.

80.   As described above, the Defendants compete with Chic (and Unicorn) by selling their Gyroor-branded Accused Products in competition with the Patented Products in the U.S.

81.   As described above, Chic sells its Patented Hoverboards through Unicorn, which effectively had an exclusive license in the United States for the patents-in-suit when the license was entered into.

82.   As noted above, ▮▮▮ is estimated to have ▮▮▮ of the worldwide hoverboard market share.[133]  While I understand ▮▮▮ does not explicitly track its U.S. market share, it appears it could be higher (potentially significantly higher) than ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[133] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



83.  To the extent the Gyroor Defendants have made sales Unicorn otherwise would have made in the United States as effectively the exclusive licensee to the patents-in-suit, Unicorn has lost sales and profits on these sales since January 1, 2019.

84.  To the extent ▮▮▮▮ U.S. hoverboard market share is at least ▮▮▮ or higher, it is reasonable ▮▮▮▮ would have sold ▮▮▮▮▮▮ of the Gyroor-branded Accused Products.

## VIII.  Opinion 1:  There appears to be some causal nexus between the 'D723 and 'D256 patents and the demand for the Patented Products.

85.  I understand:[138]

> …"proving a causal nexus requires ***the patentee to show 'some connection' between the patented features and the demand for the infringing products.***"  According to the Federal Circuit, while establishing the patented feature as the exclusive driver of demand would weigh more heavily in favor of finding a causal nexus, the required causal connection can be shown through: [emphasis added]
>
> - "Evidence that a patented feature is one of several features that cause consumers to make their purchasing decisions;"
>
> - "[E]vidence that the inclusion of a patented feature makes a product significantly more desirable;'' and



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

- "[E]vidence that the absence of a patented feature would make a product significantly less desirable."

86. I understand causal nexus considers the issues of: 1) whether there is direct competition between the parties; and 2) whether the patented products have had commercial success.[139]  I have been asked to address these two issues, which I do below.

## A.      Direct competition – Plaintiffs and the Gyroor Defendants directly compete

87. As addressed above, Unicorn sells the Patented Products and the Gyroor Defendants sell the Gyroor-branded Accused Products over the internet in the United States.

88. As addressed above, the Plaintiffs are one of the biggest competitors in the hoverboard market, which is a competitive market.

89. As addressed above, none of the Gyroor Defendant Internet Stores are authorized sellers of products featuring the patented designs of the 'D723 and 'D256 patents.[140]

90.  As addressed above, Unicorn considers the Gyroor Defendants to be direct competitors in the U.S. hoverboard market.

91. As an example of direct competition on the same on-line platform, both companies sell through Amazon.com.  ███████████████████ ████████████████████████████████████████████ ████████████████████████  As addressed above, as of approximately July 2021, Chic was aware of at least 18 different merchants who sold or offered for sale Gyroor-branded Accused Products on Amazon.com.[142]

92. As such, the Plaintiffs and the Defendants are direct competitors for hoverboard sales in the United States.

---

[139] I understand the Plaintiffs believe the Patented Products have also helped overcome industry skepticism and resulted in praise for their Patented Products.  At this point, I understand there is incomplete information on these categories, and I have no opinion on them.
[140] Declaration of Jiawei Ying 11 (August 14, 2020).
[141] Declaration of Jiawei Ying 10 (August 14, 2020).  Declaration of Jinyuan Lei 9 (August 14, 2020).
[142] Declaration of Arthur Tan-Chi Yuan in Support of Motion to Show Cause dated July 13, 2021 at 10-11.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**B. Commercial success – The Patented Products have been commercially successful**

93. I understand the designs of the 'D723 and 'D256 patents have been copied by the Gyroor-branded Accused Products.[143]

94. As described above, Chic believes the 'D723 and 'D256 patents have revolutionized hoverboard ornamental designs by featuring distinctive designs with a central support platform, which feature streamline shapes with sleek contours.[144] Chic also believes these designs are stylish and modern, and are visually pleasing to consumers.[145]

95. I understand Unicorn believes the Patented Products are popular with U.S. consumers, in part, because of the patented ornamental designs of the 'D723 and 'D256 patents.[146]

96. I understand the Gyroor-branded Accused Products have the same patented features shown in the 'D723 and 'D256 patents,[147] further confirming the patented designs are popular and garner strong consumer demand. [148]

97. I understand the Plaintiffs' designs have become popular in the United States, resulting in thousands of Patented Products being sold in the United States.[149]

██████████████████████████████████████

██████████████████████████████████████████

█████████████████████████

98. From September 2020 through approximately August 2021, I understand Unicorn's monthly sales of the Patented Hoverboards were approximately 50% less than they were in comparable months in 2019 and 2020.[151] Unicorn believes the decrease in sales of its Patented Hoverboards since September 2020 were due in part to its sales prior to September 2020 being greater than

[143] November 2022 Hatch Declaration 26-41.
[144] Declaration of Jiawei Ying 10 (August 14, 2020).
[145] Third Am. Compl. 12. Declaration of Jiawei Ying 10 (August 14, 2020).
[146] Declaration of Jinyuan Lei 2 (October 23, 2020).
[147] November 2022 Hatch Declaration, as described above.
[148] Declaration of Jinyuan Lei 6 (October 23, 2020).
[149] Third Am. Compl. 12.
[150] ████████
[151] Declaration of Jing Cui 2 (August 20, 2021).

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

expected (as described above), and other reasons such as supply chain issues with products imported from China.[152]

99. Since the inception of this matter, I understand the Plaintiffs have reached settlement agreements with a number of former Defendants for the 'D723 and 'D256 patents.[153]  These settlement agreements reflect business arrangements between the parties and may include consent agreements not to sell, lump-sum payments for past sales, new purchasing agreements, new manufacturing agreements or ongoing royalty payments for new sales.[154]  These settlement agreements further highlight there is demand for the 'D723 and 'D256 patents.

100. As a result, there appears to be some causal nexus between the 'D723 and 'D256 patents and the demand for the patented products.

101. As such, the Patented Products have been commercially success.

**C.    Conclusion**

102. As noted above, causal nexus considers the issues of direct competition and commercial success.  Accordingly, based on the above, the Plaintiffs and Gyroor Defendants are direct competitors and the Patented Products have been commercially successful.  As such, there appears to be some causal nexus between the 'D723 and 'D256 patents and the demand for the Patented Products.

**IX.    Opinion 2: The Plaintiffs will be irreparably harmed if the Gyroor Defendants continue selling their Gyroor-branded Accused Products in the United States.**

103. I understand irreparable harm considers various issues, including whether monetary damages can fully compensate a Plaintiff.[155]  I have been asked to address this issue, which I do below.

---

[152] Declaration of Jing Cui 2 (August 20, 2021).
[153] Declaration of Jing Cui 2-3 (August 20, 2021).
[154] Declaration of Jing Cui 3 (August 20, 2021).
[155] I understand the Plaintiffs believe the Defendants continuing to sell the Gyroor-branded Accused Products has also led to price erosion in some cases, a diminished ability to invest in research and development, and damage to their reputations.  At this point, I understand there is incomplete information on these categories, and I have no opinion on them.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

### A. Monetary damages will not fully compensate the Plaintiff

#### 1. Overview of patent damages

104. Damages in patent cases are measured according to 35 U.S.C. Section 284:[156]

> Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.

105. Compensatory patent infringement damages attempt to assess:[157]

> . . . the difference between his pecuniary condition after the infringement, and what his condition would have been if the infringement had not occurred.

106. The question to be asked in determining such damages is:[158]

> . . . had the Infringer not infringed, what would Patent Holder-Licensee have made?

107. Compensatory patent damages traditionally have fallen into two categories, either lost profits or reasonable royalty.[159]  To collect lost profits, a patentee:[160]

> …must show 'a reasonable probability that 'but for' the infringing activity, the patentee would have made the infringer's sales."  This is done by determining what profits the patentee would have made absent the infringing product.  This analysis must be supported by "sound economic proof of the nature of the market and likely outcomes with infringement factored out of the economic picture."

108. The Federal Circuit has defined lost profits damages as a measure of damages "intended to make the party whole—to compensate the patent holder for

---

[156] 35 U.S.C. § 284.

[157] *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964); Compensatory Damage Issues in Patent Infringement Cases: A Handbook for Federal District Court Judges 3, Jan. 2010.

[158] *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964).

[159] Compensatory Damage Issues in Patent Infringement Cases: A Handbook for Federal District Court Judges 3, Jan. 2010.  A third category, an established royalty, is often considered a form of a reasonable royalty.

[160] *Akamai Techs., Inc. v. Limelight Networks, Inc*., 805 F.3d 1368 (Fed. Cir. 2015).

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

profits lost as a result of the infringement. It is not solely a 'but for' test."[161] Whereas a reasonable royalty "is intended to compensate the patentee for the value of what was taken from him—the patented technology [feature(s)]."[162]

109. Lost profits can include diverted sales, price erosion, convoyed sales, and increased expenses caused by the infringement.[163] Generally speaking, a patent owner is only entitled to recover lost profits if it is in the business of making, using, or selling the patented invention.[164]

110. Price erosion is a form of lost profits and represents the negative pricing effects the patent owner incurs due to the infringer's sales of the infringing products. The measure for price erosion is essentially the difference between what the prices would have been 'but for' the infringement and the presumably lower actual prices. A patent owner may recover for price reductions it made on its own product sales as well as on the sales it lost to the infringer.[165]

111. As noted above, damages in patent cases are measured according to 35 U.S.C. Section 284.[166] In design patent cases such as this, damages are also measured according to 35 U.S.C. Section 289.[167] In addition to the lost profits and reasonable royalty damages provisions contained in 35 U.S.C. Section 284, 35 U.S.C. Section 289 also allows for the collection of infringer's profits.[168] However, a design patent owner cannot recover damages under both 35

---

[161] *Warsaw Orthopedic, Inc. v. NuVasive, Inc.,* 778 F.3d 1365, 1375 (Fed. Cir. 2015) (citing *Rite-Hite Corp. v. Kelley Co., Inc.,* 56 F.3d 1538, 1546 (Fed.Cir.1995) (en banc))., *vacated and remanded for further consideration in light of Commil USA, LLC v. Cisco Systems, Inc.,* 135 S. Ct. 1920 (2016), *affirmed in part and remanded in part,* 824 F.3d 1344, 1352 (Fed. Cir. 2016).

[162] *Warsaw Orthopedic,* 778 F.3d 1365, 1375 (citing *Aqua Shield v. Inter pool Cover Team*, 774 F. 3d 766, 770 (Fed. Cir. 2014)) (quoting *Dowagiac Mfg. Co. v. Minn. Moline Plow Co.,* 235 U.S. 641, 648, 35 S. Ct. 221, 224 (1915)).

[163] *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1118 (Fed. Cir. 1996).

[164] *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1548 (Fed. Cir. 1995); *see also Warsaw Orthopedics*, 778F.3d at 1376.

[165] *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 902 (Fed. Cir. 1986).

[166] 35 U.S.C. § 284.

[167] 35 U.S.C. § 289.

[168] 35 U.S.C. § 289. *See also, e.g., Polaroid Corp. v. Eastman Kodak Co.*, 16 USPQ2d 1481, 1484 (D. Mass. 1990).

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

U.S.C. Section 284 and infringer's profits under 35 U.S.C. Section 289 for infringement by the same product.[169]

112. In this case, at this point, I understand what matters is what would have happened 'but for' the Gyroor Defendants' infringement of the 'D723 or 'D256 patents. If the Plaintiffs would have reasonably sold its Patented Products in place of all or a portion of the Accused Products, then it would be entitled to lost profits damages on those lost sales. Alternatively, in the event the Plaintiffs would not have reasonably sold some or all of its Patented Products in place of the Accused Products, the proper form of damages is a reasonable royalty on those sales. Also, alternatively, the Plaintiffs could be awarded the infringer's profits on sales of the Gyroor Defendants' Accused Products.

113. If it is determined a reasonably royalty is the proper form of damages, I understand the value of what was taken measures the reasonable royalty. The Federal Circuit has stated:[170]

> As a substantive matter, it is **the "value of what was taken" that measures a "reasonable royalty"** under 35 U.S.C. § 284. [emphasis added]

114. As noted above, the Gyroor Defendants are alleged to reside and / or operate in the People's Republic of China.

115. I understand the Gyroor Defendants claim the Gyroor-branded Accused Products are made based on its own U.S. design patent, D808,857 S,[171] which was issued on January 30, 2018.[172] As such, I understand the Defendants claim they cannot infringe the 'D723 and 'D256 patents.[173]

---

[169] *Braun Inc. v. Dynamics Corp. of America*, 975 F.2d 815, 824, 24 USPQ2d 1121 (C.A.Fed. (Conn.), 1992) (citing *Bergstrom v. Sears, Roebuck and Co.*, 496 F.Supp. 476, 494 (D.Minn.1980) (citing *Henry Hanger & Display Fixture Corp. of America v. Sel-O-Rak Corp.*, 270 F.2d 635 (5th Cir.1959)).

[170] *Ericsson, Inc., v. D-Link Systems, Inc.* (Fed. Cir. 2014) (J. O'Malley) (citing *Dowagiac Mfg. Co. v. Minn. Moline Plow Co.*, 235 U.S. 641, 648 (1915)).

[171] Memorandum of Law in Support of Defendant Gyroor-US' Emergency Motion to Dissolve the Preliminary Injunctions dated August 9, 2021 and Ex. 1 to this Memorandum.

[172] Ex. 2 to the Memorandum of Law in Support of Defendant Gyroor-US' Emergency Motion to Dissolve the Preliminary Injunctions dated August 9, 2021.

[173] Memorandum of Law in Support of Defendant Gyroor-US' Emergency Motion to Dissolve the Preliminary Injunctions dated August 9, 2021.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

116. I understand that just because a company has a design patent(s), does not mean they cannot be infringing the design patents of another company, even on its products that allegedly incorporate their design patent(s). In this matter, I understand the Plaintiffs believe that case law supports their position that the Gyroor Defendants can still be infringing the 'D723 and 'D256 patents even if its D808,857 S design patent is valid.

117. As of August 24, 2021, the date of my Second Supplemental Declaration, one of the Gyroor Defendants claimed it would go out of business by the end of August 2021 if the preliminary injunction in this matter was not dissolved.[174]

118. As of August 24, 2021, the date of my Second Supplemental Declaration, one of the Gyroor Defendants claimed that more than $1 million of its U.S. account had been frozen as a result of the preliminary injunction.[175]

119. The claim by one of the Gyroor Defendants that it would go out of business if the injunction was not dissolved appears to highlight the Gyroor Defendants' reliance on sales of Gyroor-branded Accused Products. It also appears to highlight the unlikelihood of their ability to pay any damages that would be awarded in this matter. To my knowledge, none of the Gyroor Defendants have indicated they would be able to pay any damages that could be awarded in this matter.

120. As such, it appears unlikely the Plaintiffs will be able to recover any damages it might be awarded, either in the forms of lost profits, reasonable royalty or infringer's profits.

121. As a result, I understand any monetary damages that may be awarded to the Plaintiffs will not fully compensate them since it appears the Gyroor Defendants are unlikely to ever pay any damages awarded. As such, this harm will be irreparable.

---

[174] Memorandum of Law in Support of Defendant Gyroor-US' Emergency Motion to Dissolve the Preliminary Injunctions dated August 9, 2021 and Ex. 1 to this Memorandum. This Gyroor Defendant was Gyroor-US.
[175] Ex. 1 to the Memorandum of Law in Support of Defendant Gyroor-US' Emergency Motion to Dissolve the Preliminary Injunctions dated August 9, 2021. This Gyroor Defendant was Gyroor-US.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**B.     Conclusion**

122.  As noted above, irreparable harm considers various issues, including whether monetary damages can fully compensate a Plaintiff.  Accordingly, based on the above, monetary damages will not fully compensate the Plaintiffs.  As such, this harm will be irreparable.

**X.     Conclusion**

123.  My opinions and analyses contained herein are based upon information presently known to me.  If additional relevant information is made available, I may update my opinions and analyses accordingly.

124.  Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 8, 2022

Richard F. Bero, CPA, CVA

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

# Data and Other Information Considered - as of November 8, 2022 Third Supplemental Attachment 1

## DATA AND OTHER INFORMATION CONSIDERED - AS OF THE OCTOBER 23, 2020 BERO DECLARATION:

### LEGAL FILINGS:

Complaint with Exhibits 1-4 and Schedule A dated August 17, 2020

Civil Cover Sheet dated August 17, 2020

Attorney Appearance by Adam Glenn Kelly dated August 17, 2020

Attorney Appearance by Douglas N Masters dated August 17, 2020

Attorney Appearance by Arthur Tan-chi Yuan dated August 17, 2020

Fifth Amended General Order 20-0012 In Re Coronavirus Covid-19 dated August 17, 2020

FUS-Mailed Patent Report to Patent Trademark Office dated August 18, 2020

Motion for Leave to Appear Pro Hac Vice dated August 18, 2020

Order Granting Motion for Leave to Appear Pro Hac Vice for Christopher Gerald Binns dated August 18, 2020

FUS-Hangzhou Chic Intelligent Technology Co., Ltd. Corporate Disclosure Statement dated August 18, 2020

FUS-Unicorn Global, Inc. Corporate Disclosure Statement dated August 18, 2020

FUS-Notice of Claims Involving Patents dated August 18, 2020

FUS-Amended Complaint-Exhibit 1-4 Schedule A and Redline Amended Complaint dated August 18, 2020

FUS-Plaintiffs Ex Parte Motion For Entry of a Temporary Restraining Order, Including a Temporary Injunction, a Temporary Asset Restraint, and Expedited Discovery dated August 18, 2020

FUS-Memorandum of Law In Support of Plaintiffs' *Ex Parte* Motion For Entry of a Temporary Restraining Order, Including a Temporary Injunction, a Temporary Asset Restraint, and Expedited Discovery dated August 18, 2020

FUS Declaration of Arthur Tan-Chi Yuan in Support of Plaintiffs *Ex Parte* Motion for Entry of a Temporary Restraining Order dated August 18, 2020 with Exhibits 1-4

FUS-Declaration of Jinyuan Lei dated August 18, 2020

FUS-Declaration OF Jiawei Ying dated August 18, 2020 with Exhibits 1-4

FUS-Plaintiffs' Motion for Electronic Service of Process Under Fed. R. Civ. P. 4(f)(3) dated August 18, 2020

FUS-Memorandum of Law in Support of Plaintiffs' Motion for Electronic Service of Process Under Federal Rule of Civil Procedure 4(f)(3) dated August 18, 2020

FUS-Declaration of Arthur Tan-Chi Yuan in Support of Plaintiffs' Motion for Electronic Service Exhibit 1-2 dated August 18, 2020

Plaintiffs' Motion for Leave to File Under Seal dated August 18, 2020

Notice of Motion dated August 18, 2020

Attorney Appearance by Christopher Gerald Binns dated August 19, 2020

Docket Entry-Plaintiffs to show cause why the complaint should not be stricken dated August 20, 2020

Docket Entry-motion hearing set for 8-24-20 is hereby stricken dated August 20, 2020

Plaintiffs' Response to Order to Show Cause dated August 28, 2020 with Exhibit A

FUS-Declaration of Arthur Tan-Chi Yuan in Support of Plaintiffs' Response to Order to Show Cause dated August 28, 2020 with Exhibits 1-12

FUS-Supplemental Declaration of Jinyuan Lei dated August 28, 2020

Plaintiffs' Motion for Leave to File Under Seal dated August 28, 2020

Notice of Motion dated August 28, 2020

Second Amended Complaint with Exhibits 1-4 and Schedule A dated September 10, 2020 (Filed Under Seal)

FUS-Declaration of Jinyuan Lei in Support of a Declaration of Richard F. Bero dated October 23, 2020

FUS-Declaration of Jiawei Ying in Support of a Declaration of Richard F. Bero dated October 23, 2020

### U.S. PATENTS AT ISSUE:

U.S. Patent No. D737,723 S - Self-Balancing Vehicle dated September 1, 2015

U.S. Patent No. D738,256 S - Self-Balancing Vehicle dated September 8, 2015

U.S. Patent No. D784,195 S - Human Machine Interaction Vehicle dated April 18, 2017

U.S. Patent No. D785,112 S - Human Machine Interaction Vehicle dated April 25, 2017

### EXPERT REPORTS:

Expert Declaration of Paul Hatch Regarding Infringement of U.S. Patents D737,723, D738,256, D784,195, and D785,112 dated October 16, 2020 with Appendices A-C

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

# Data and Other Information Considered - as of November 8, 2022 Third Supplemental Attachment 1

**DOCUMENTS WITHOUT BATES STAMPS:**

2007/0273118 A1 Application - Inline Skateboard - Pub. Date: Nov. 29, 2009
US Patent No. 6,834,867 B2 - Articulated Two-Piece Snowboard with Connector dated Dec. 28, 2004
US Patent No. 7,424,927 B2- Vehicle, vehicle control device and vehicle control method dated Sep 16, 2008
US Patent No. 7,481,291 B2- Vehicle Steerable By Movement of Center of Gravity dated Jan. 27. 2009
US Patent No. 7,635,037 B2- Motorized Towing Device dated Dec. 22, 2009
US Patent No. 8,118,319 B2 - Twisted Structure for a Skateboard dated Feb. 21, 2012
US Patent No. 8,414,000 B2 - One Piece Flexible Skateboard dated Apr. 9, 2013
US Patent No. 8,469,376 B2 - Skateboard dated Jun. 25, 2013
US Patent No. 8,500,145 B2 - Skateboard dated Aug. 6, 2013
US Patent No. 8,738,278 B2 - Two-Wheel, Self-Balancing Vehicle with Independently Movable Foot Placement Sections dated May 27, 2014
US Patent No. 9,376,155 B2 - Electric Balance Vehicle dated Jun. 28, 2016
US Patent No. 9,403,573 B1 - Hover Board Tricycle dated Aug. 2, 2016
US Patent No. 9,499,228 B2 - Self-Balancing Vehicle Frame dated Nov. 22, 2016
US Patent No. 9,682,732 B2 - Fully Self-Balanced Hands-Free Portable Vehicle dated Jun. 20, 2017
US Patent No. D535,714 S - Roller Skate dated Jan. 23, 2007
US Patent No. D601,922 S - Two Wheel Folding Automobile dated Oct. 13, 2009
US Patent No. D647,991 S - Skateboard dated Nov. 1, 2011
US Patent No. D737,723 S - Self-Balancing Vehicle dated Sep. 1, 2015
US Patent No. D738,256 S - Self-Balancing Vehicle dated Sept. 8, 2015
US Patent No. D739,906 S - Two-Wheeled Vehicle dated Sep. 29, 2015

██████████████████████████████████

Possible exhibits.pdf
████████████████████

PRESS RELEASE - Global Hoverboard Scooters Market Size 2020 By Future Strategic Planning, Investment Trend, Key Drivers, Product and Service, Growth Factors, Opportunities, Volume and Growth Rate till 2024 dated July 22, 2020
Stannum Target Market Size 2020: Covid-19 Impact Analysis by Industry Trends, Future Demands, Growth Factors, Emerging Technologies, Prominent Players, Future Plans and Forecast till 2026 dated September 11, 2020
March 1, 2016 *Fortune* Magazine article titled: "Boom! Goes The Hoverboard Fad" at 94
Business Wire "Global $1.8 Billion Hoverboard Market Competition Forecast & Opportunities, 2021 - Research and Markets" dated November 18, 2016
Press Release - Hoverboard Scooters Market : Rising Trends with Top Countries Data, Technology and Business Outlook 2020 to 2026 dated October 1, 2020
Wall Street Journal "Hoverboard Safety Concerns Create Challenge for Retailers, Regulators" dated October 1, 2020 - https://www.wsj.com/articles/hoverboard-safety-concerns-create-challenge-for-retailers-regulators-1450392552

**INDEPENDENT RESEARCH:**

Global Hoverboard Scooters Market 2020 by Manufacturers, Regions, Type and Application Forecast to 2026 (QYResearch)

**WEBSITES:**

Transparency Market Research: Self-Balancing Scooter Market – Global Industry Analysis, Size, Share, Growth, Trends and Forecasts 2017 - 2025, Report Digest - https://www.transparencymarketresearch.com/self-balancing-scooter-market.html

http://en.chic-robot.com/product/center
http://en.chic-robot.com/product/center/1
http://en.chic-robot.com/product/center/2
www.amazon.com/s?k=uni-sun&ref=nb_sb_noss_2
https://www.amazon.com/SISIGAD-Hoverboard-Balancing-Two-Wheels-Certified/dp/B07KWXZ1JN/ref=sr_1_8?dchild=1&keywords=uni-sun&qid=1603387214&sr=8-8

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

# Data and Other Information Considered - as of November 8, 2022
# Third Supplemental Attachment 1

**EXISTING CASE LAW:**

*Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964)
*TWM Mfg. Co., v. Dura Corp.*, 789 F.2d 895, 900-902 (Fed. Cir. 1986)
*State Indus., Inc. v. Mor-Flo Indus., Inc.,* 883 F.2d 1573, 1580 (Fed.Cir.1989)
*Polaroid Corp. v. Eastman Kodak Co*., 16 USPQ2d 1481, 1484 (D. Mass. 1990)
*Braun Inc. v. Dynamics Corp. of America*, 975 F.2d 815, 824, 24 USPQ2d 1121 (C.A.Fed. (Conn.), 1992)
*Rite-Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1545, 1548-1549 (Fed. Cir. 1995)
*Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1118 (Fed. Cir. 1996)
*Ericsson, Inc., v. D-Link Systems, Inc*., 773 F.3d 1201, 1226 (Fed. Cir. 2014)
*Akamai Techs., Inc. v. Limelight Networks, Inc*., 805 F.3d 1368 (Fed. Cir. 2015)
*Warsaw Orthopedic, Inc. v. NuVasive, Inc,* 778 F.3d 1365, 1375-1376 (Fed. Cir. 2015)
*Commil USA, LLC v. Cisco Systems, Inc.*, 135 S. Ct. 1920 (2016)
*Genband US LLC v. Metaswitch Networks Corp.*, 861 F.3d 1378 (Fed. Cir. 2017)

**OTHER:**

35 U.S.C. § 284
35 U.S.C. § 289
Compensatory Damage Issues in Patent Infringement Cases: A Handbook for Federal District Court Judges 3, Jan. 2010

## DATA AND OTHER INFORMATION CONSIDERED - RECEIVED AFTER THE BERO DECLARATION DATED OCTOBER 23, 2020:

**ADDITIONAL LEGAL FILINGS:**

Third Amended Complaint dated November 17, 2020 with Schedules A-C

**ADDITIONAL EXPERT REPORT:**

Expert Declaration of Paul Hatch Regarding Infringement of U.S. Patents D737,723, D738,256, D784,195, and D785,112 dated November 12, 2020

**ADDITIONAL DOCUMENTS WITHOUT BATES STAMPS:**

Non-Exclusive Patent License and Covenant Not to Sue Agreement between Hangzhou Chic Intelligent Technology Company Ltd. and eBay, Inc.

**ADDITIONAL INDEPENDENT RESEARCH:**

ebay Inc.'s Form 10-K for its fiscal year ended December 31, 2019

WEBSITES:

https://www.amazon.com/SISIGAD-Hoverboard-Balancing-Two-Wheel-Certified/dp/B07KM6WPYC/ref=sr_1_6?dchild=1&keywords=sisigad+hoverboard&qid=1603740626&sr=8-6
http://en.chic-robot.com/product/detail/19111315572000758597257862853632
https://www.industryweek.com/leadership/article/21966360/the-power-of-manufacturers-using-made-in-the-usa-in-marketing
https://www.themadeinamericamovement.com/economy/the-economic-impact-of-made-in-usa/

## DATA AND OTHER INFORMATION CONSIDERED - RECEIVED AFTER THE SUPPLEMENTAL BERO DECLARATION DATED NOVEMBER 19, 2020:

**ADDITIONAL LEGAL FILINGS:**

Preliminary Injunction Order dated November 24, 2020
Modified Preliminary Injunction Order dated December 23, 2020
Declaration of Arthur Tan-Chi Yuan in Support of Amendment to Schedule A dated May 6, 2021 with Exhibits 1-3
Declaration of Arthur Tan-Chi Yuan in Support of Motion to Show Cause dated July 13, 2021

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

# Data and Other Information Considered - as of November 8, 2022
# Third Supplemental Attachment 1

Memorandum of Law in Support of Defendant Gyroor-US' Emergency Motion to Dissolve the Preliminary Injunctions dated August 9, 2021 with Exhibits 1-4

Dkt. 359 minute entry dated August 9, 2021

Declaration of Jing Cui in Support of a Declaration of Richard F. Bero dated August 20, 2021

**ADDITIONAL EXPERT REPORT:**

Expert Declaration of Paul Hatch Regarding Infringement of U.S. Patents D737,723, D738,256, D784,195, and D785,112 dated August 24, 2021

**ADDITIONAL INDEPENDENT RESEARCH:**

WEBSITES:

http://en.chic-robot.com/product/detail/191113155720007585972578628536632

http://en.chic-robot.com/product/detail/191113155845007585979714811736192

https://www.amazon.com/SISIGAD-Hoverboard-Balancing-Two-Wheel-Certified/dp/B07KM6WPYC/ref=sr_1_6?dchild=1&keywords=sisigad+hoverboard&qid=1603740626&sr=8-6

http://en.chic-robot.com/product/center/1

http://en.chic-robot.com/product/center/2

## DATA AND OTHER INFORMATION CONSIDERED - RECEIVED AFTER THE SECOND SUPPLEMENTAL BERO DECLARATION DATED AUGUST 24, 2021:

**ADDITIONAL LEGAL FILINGS:**

United States Court of Appeals for the Federal Circuit Opinion (Case: 2021-2150) dated October, 28 2022

United States Court of Appeals for the Federal Circuit Opinion (Case: 2022-1071) dated October, 28 2022

**ADDITIONAL DEPOSITION:**

Deposition of Richard F. Bero dated February 22, 2022

**ADDITIONAL EXPERT REPORT:**

Expert Declaration of Paul Hatch Regarding Infringement of U.S. Patents D737,723 and D738,256 dated November 8, 2022

**Any additional documents, websites, or other information referenced throughout this report.**

THIRD SUPPLEMENTAL ATTACHMENT 2



## RICHARD F. BERO, CPA, CVA

N16 W23217 Stone Ridge Drive, Suite 150, Waukesha, WI 53188
Phone – (262) 522-7922   Fax – (262) 436-2444
rbero@berogroup.com

*PROFESSIONAL EXPERIENCE:*

**The BERO Group / Corporate Financial Advisors, LLC**
Managing Director
Waukesha, Wisconsin                                            December 1995-Present

Mr. Bero founded Corporate Financial Advisors in 1995 and served as Managing Director. The BERO Group evolved from Corporate Financial Advisors and Mr. Bero serves as Managing Director. Mr. Bero provides financial and accounting consulting services and expert testimony pertaining to valuation issues and financial damages issues.

**Coopers & Lybrand**
Manager – Litigation & Claims Services
Milwaukee, Wisconsin                                                    1994-1995

Mr. Bero was the Manager and Practice Leader of the Coopers & Lybrand Milwaukee Litigation & Claims Services practice.

**Peterson Consulting Limited Partnership**
Executive Consultant
Milwaukee, Wisconsin                                                    1989-1994
Chicago, Illinois                                                       1987-1989

Mr. Bero provided litigation and business dispute support services to trial attorneys and corporate counsel.

*EDUCATION:*

**University of Wisconsin–Madison**                                        1986
Bachelor of Business Administration
Accounting and Finance

*ACTIVITIES/OTHER:*

Intellectual Property Valuation Instructor – National Association of Certified Valuation Analysts

Licensing Executives Society – Co-Chair Wisconsin Chapter – 2006-2008

Intellectual Property Owners Association – Damages Committee Member – 2004-present

National Association of Certified Valuation Analysts, CVA

Wisconsin Institute of Certified Public Accountants:

Board of Directors – 2000-2002

Chairman CPA's In Industry – Committee 1997-1999

Outstanding Committee Chairperson Award – 1997-1998

American Institute of Certified Public Accountants

Becker CPA Review – Instructor 1995-1998

*EXPERT WITNESS TESTIMONY – LAST FOUR YEARS:*

*Condair Group AG v. Dri-Steem Corporation*
United States District Court – U.S. District of Minnesota
Case No. 0:21-cv-00863 (filed 3/29/21)
September 2022 (Deposition Testimony)

*Don Lee Farms, a division of Goodman Food Products, Inc., v. Beyond Meat Inc., et al.*
State of California – Los Angeles County
Case No. BC662838 (filed 5/25/17)
April 2022 (Deposition Testimony)

*G.W. Lisk Company, Inc. v. Power Packer North America, Inc. d/b/a GITS Manufacturing Company*
United States District Court – Southern District of Iowa
Case No. 4:17-cv-00273 (filed 7/21/17)
April 2022 (Deposition Testimony)

*ABC Corporation I et al v. The Partnership and Unincorporated Associations Identified on Schedule "A"*
United States District Court – Northern District of Illinois
Case No. 1:20-cv-04806 (filed 8/17/20)
February 2022 (Deposition Testimony)

*Sartin et al. v. Chula Vista Inc. et al.*
United States District Court – Eastern District of Wisconsin
Case No. 2:18-cv-01890-WED (filed 11/30/18)
October 2021 (Deposition Testimony)

*Cyntec Company, Ltd. v. Chilisin Electronics Corp. and Chilisin America Ltd.*
United States District Court – Northern District of California
Case No. 4:18-cv-00939-PJH (filed 2/14/18)
August 2021 (Trial Testimony)
June 2020 (Deposition Testimony)

2

*Wudi Industrial (Shanghai) Co., Ltd. v. Wai L. Wong*
United States District Court – Eastern District of Virginia
Case No. 1:20-cv-00908-CMH-MSN (filed 8/7/20)
April 2021 (Deposition Testimony)

*Vermeer Corporation v. The Toro Company*
United States District Court – Southern District of Iowa
Case Nos. 4:17-cv-0076, 4:19-cv-00050 (filed 2/28/17; 2/12/19)
October 2020 (Deposition Testimony)

*AOS Holding Company and A.O. Smith Corporation v. Bradford White Corporation*
United States District Court – District of Delaware
Case No. 1:18-cv-00412-LPS (filed 3/16/18)
August 2020 (Trial Testimony)
November 2019 (Deposition Testimony)

*RAM Group, Inc. v. H5G, LLC*
State of Wisconsin – Milwaukee County
Case No. 2018CV010102 (filed 12/10/18)
June 2020 (Deposition Testimony)

*Dimensions Events LLC v. Danziger USA*
Chicago Rabbinical Council (DT #17-09)
May 2019 (Arbitration Hearing Testimony)
May 2019 (Deposition Testimony)

*Smart Solar, Inc. d/b/a Smart Living Home & Garden v. Sky Billiards, Inc. d/b/a Best Choice Products*
United States District Court – Northern District of Illinois
Case No.: 1:17-cv-04211 (filed 6/2/17)
April 2019 (Deposition Testimony)

*Gold & Levy d/b/a Rosseto v. Cal-Mil Plastic Products, Inc., et al.*
United States District Court – Northern District of Illinois
Case No.: 1:17-cv-00786-JBG-YBK (filed 1/31/17)
December 2018 (Deposition Testimony)

*Adams Outdoor Advertising Limited Partnership vs. City of Madison et al.*
United States District Court – Western District of Wisconsin
Case No.: 3:17-cv-00576-JDP (filed 7/25/17)
July 2018 (Deposition Testimony)

*Dodles, Inc. vs. OMNI Resources, Inc.*
State of Wisconsin – Milwaukee County
Case No.: 2017CV002826 (filed 4/5/17)
June 2018 (Deposition Testimony)

*Cave Consulting Group, Inc. v OptumInsight, Inc.*
United States District Court – Northern District of California
Case No. 3:15-cv-03424-JCS (filed 7/24/15)
May 2018 (Deposition Testimony)

*Nox Medical Ehf v. Natus Neurology Inc.*
United States District Court – District of Delaware
Case No. 1:15-cv-00709-RGA (filed 8/17/15)
May 2018 (Trial Testimony)

*Solutran, Inc. v. U.S. Bancorp, et al.*
United States District Court – District of Minnesota
Case No. 0:13-cv-02637-SRN-BRT (filed 9/25/13)
March 2018 (Trial Testimony)
December 2016 (Deposition Testimony)


## PUBLICATIONS:

The Comprehensive Guide to Economic Damages, "Patent Infringement Damages: Lost Profits and Royalties", "Design Patent Damages" and "Trade Secret Damages" (Chapters 28, 29 and 30, 2020 6th ed., Business Valuation Resources, LLC)

Bero, Richard. *The Litigator's Damages Blueprint: The Pragmatic Solution.* Wisconsin: 422 Doty, LLC, 2019

The Comprehensive Guide to Economic Damages, "Patent Infringement Damages: Lost Profits and Royalties" and "Trade Secret Damages" (Chapters 26 and 27, 2018 5th ed., BVR Publications)

The Comprehensive Guide to Economic Damages, "Patent Infringement Damages: Lost Profits and Royalties" (Chapter 26, 2016 4th ed., BVR Publications)

The Comprehensive Guide to Lost Profits and Other Commercial Damages, "Patent Infringement Damages: Lost Profits and Royalties" (Chapter 25, 2014 3rd ed., BVR Publications)

April 2011 – CCH Business Valuation Alert, "The *Uniloc* Case: 25 Percent Rule of Thumb Rejected"

The Comprehensive Guide to Lost Profits, "Lost Profits Damages in Patent Infringement Lawsuits" (Chapter 19, 2011 ed., BVR Publications)

August 2009 – IP Law360 – "Demand for the Patented Product – Lower Bar?"

The Comprehensive Guide to Lost Profits, "Lost Profits Damages in Patent Infringement Lawsuits" (Chapter 12, 2009 ed., BVR Publications)

October 2008 – AIPLA White Paper – "Constructing Royalty Rates"

February 2008 – IP Law360 – "IP Litigation in China and the U.S."

Global Intellectual Property Asset Management Report, "Intellectual Property Metrics Today: It Can Be Done" (June 2005 and July 2005)

Proving and Pricing Construction Claims, "Claims for Lost Profit" (Chapter 14, 2nd ed., 1996, Wiley Law Publications)

*PRESENTATIONS:*

| | |
|---|---|
| November 2021 | Business Valuation Resources, LLC<br>BVR's Special Series on New Economic Damages Guide<br>Patent Royalty Damages – What's the Approach?<br>Co-Presenter: John L. Abramic, Steptoe & Johnson LLP |
| May 2021 | Business Valuation Resources, LLC<br>National Economic Damages Virtual Conference 2021 (Day 1)<br>Patent Infringement Damages<br>Co-Presenter: Autumn N. Nero, Perkins Coie LLP |
| November 2020 | American Intellectual Property Law Association<br>Damages Subcommittee – Speaker Series Webinar Part II<br>The Pragmatic Solution© |
| May 2020 | American Intellectual Property Law Association<br>Damages Subcommittee – Speaker Series Webinar Part I<br>The Pragmatic Solution© |
| February 2020 | Marquette Law School<br>Guest Instructor – IP Litigation Class<br>Milwaukee, Wisconsin |
| May 2019 | Milwaukee Bar Association<br>The Pragmatic Solution©<br>Co-Presenter: Shane Brunner, Milwaukee Best & Friedrich LLP<br>Milwaukee, Wisconsin |
| July 2018 | Intellectual Property Owners Association – IP Chat Channel Webinar<br>What's Next for Design Patent Damages? The DOJ Test on Trial<br>Co-Presenters: James Dottavio, Ford Motor Company and Elizabeth Ferrill, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP |
| September 2016 | Wisconsin Intellectual Property Law Association<br>Patent and IP Damages Update<br>Milwaukee, Wisconsin |
| December 2015 | WestLegalEdcenter Webinar<br>Recent Patent Royalty Damages Decisions – Update & Discussion |
| October 2015 | WestLegalEdcenter Webinar<br>Recent Patent Royalty Damages Decisions – Update & Discussion |
| October 2015 | Milwaukee Bar Association<br>VirnetX and Ericsson – The Latest on Apportionment and Comparable Licenses<br>Milwaukee, Wisconsin |
| July 2015 | Hot Topics in Patent Royalty Damages Webinar<br>Business Valuation Resources' 2015 Special Series on Intellectual Property |

| | |
|---|---|
| April 2014 | Michigan Intellectual Property Law Association<br>Hot Topics in Patent Damages<br>Troy, Michigan |
| May 2013 | Hot Topics in Patent Royalty Damages<br>Business Valuation Resources Online Symposium on Economic Damages:<br>Part 3<br>Chicago, Illinois |
| September 2011 | WestLegalEdcenter Webinar<br>Recent Patent Damages Decisions – What is the Effect |
| August 2011 | WestLegalEdcenter Webinar<br>Constructing Royalty Rate Damages |
| January 2011 | The Evolution of the Entire Market Value Rule<br>Business Valuation Resources Webinar Series on Advanced Topics<br>in Lost Profits Damages<br>Chicago, Illinois |
| September 2010 | Patent Damages: Managing the Risks and Contingent Costs<br>Business Valuation Resources / Morningstar Summit on Best Practices<br>in Valuing Intellectual Property<br>Chicago, Illinois |
| March 2010 | Tianjin Bar Association<br>Damage Analysis Techniques and Considerations in U.S. Patent Litigations<br>Tianjin, China |
| March 2010 | Beijing Lawyers Association<br>Damage Analysis Techniques and Considerations in U.S. Patent Litigations<br>Beijing, China |
| December 2009 | Milwaukee Bar Association<br>Constructing Royalty Rate Damages<br>Milwaukee, Wisconsin |
| October 2009 | Michigan Intellectual Property Law Association<br>Constructing Royalty Rate Damages<br>Detroit, Michigan |
| June 2009 | Licensing Executive Society – Chicago Chapter<br>Constructing Royalty Rates<br>Chicago, Illinois |
| March 2009 | Milwaukee Bar Association<br>Patent Infringement Damages – Working Effectively With Your<br>Damages Expert<br>Milwaukee, Wisconsin |

| | |
|---|---|
| January 2009 | Wisconsin Intellectual Property Law Association<br>Constructing Royalty Rates<br>Milwaukee, Wisconsin |
| November 2008 | Licensing Executive Society – Minnesota Chapter<br>Constructing Royalty Rates<br>Minneapolis, Minnesota |
| October 2008 | American Intellectual Property Law Association – Annual Meeting<br>Constructing Royalty Rates<br>Washington, D.C. |
| October 2008 | Minnesota Intellectual Property Law Association<br>Constructing Royalty Rates<br>Minneapolis, Minnesota |
| June 2008 | Presentation to Judges and IP attorneys in China<br>The Development of Patent Damages<br>Shenzhen, China |
| May 2008 | Licensing Executive Society International – Spring Conference<br>Avoiding Intellectual Property Hurdles in the U.S. - The View from China<br>Roundtable Moderator<br>Chicago, Illinois |
| March 2008 | Marquette Law School<br>Royalty Damages in Patent Litigation<br>Guest Instructor – IP Litigation Class<br>Milwaukee, Wisconsin |
| October 2007 | Guarding the Treasure: IP Valuation & Remedies Panelist<br>Sponsored by Foley & Lardner<br>New York, New York |
| October 2007 | Shanghai Bar Association<br>Patent Litigation & Valuation – Real World Examples in the U.S.<br>Shanghai, China |
| October 2007 | Shenzhen Society of Certified Public Appraisers<br>Intellectual Property, Valuation and Damages Analysis – Real World<br>Examples in the U.S.<br>Shenzhen, China |
| May 2007 | Shanghai Intellectual Property Service Center<br>Intellectual Property in the U.S.: Opportunities, Valuation & Litigation<br>Shanghai, China |
| May 2007 | Shenzhen Bar Association<br>Managing and Understanding the Value of IP – Real World Examples<br>in the U.S.<br>Shenzhen, China |

| | |
|---|---|
| October 2006 | China Hi-Tech Fair 2006<br>Protection of Chinese Intellectual Property in the U.S. Patent Damages & Ways to Avoid Infringement<br>Shenzhen, China |
| August 2006 | Nanshan Sub-Bureau of Intellectual Property Administration<br>Intellectual Property Value Issues in the United States an Overview for Chinese Businesses<br>Shenzhen, China |
| March 2006 | Milwaukee Bar Association<br>Hindsight is 20/20: Developing & Presenting Damages in Intellectual Property Litigation and Complex Litigation<br>Milwaukee, Wisconsin |
| December 2005 | Wisconsin Intellectual Property Law Association<br>Intellectual Property Damages Update & Discussion<br>Pewaukee, Wisconsin |
| October 2005 | Licensing Executives Society – Annual Meeting<br>Facilitator: Advanced Practices Working Session III: To Sue or Not?<br>How to Decide<br>Phoenix, Arizona |
| September 2005 | Digital Fabrication 2005 Seminar<br>Panel Discussion: Intellectual Property<br>Baltimore, Maryland |
| September 2005 | Intellectual Property Owner's Annual Meeting<br>Patent Infringement Damages Update and Discussion<br>Seattle, Washington |
| April 2005 | Licensing Executives Society – Wisconsin Chapter<br>What's Reasonable: Royalty Damages in Patent Litigation<br>Fond Du Lac, Wisconsin |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



**NOTES / SOURCES:**

Note: Any minor differences are due to rounding.

[1] 

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2022, a true and correct redacted copy of the foregoing document was filed with the Clerk of the Court using CM/ECF which will generate and serve a Notice of Electronic Filing to all parties to this action. Unredacted copies have been served on all parties to this action via e-mail service on November 9, 2022.

Dated: November 9, 2022

PALMERSHEIM & MATHEW LLP

Robert J. Palmersheim
Anand C. Mathew
Timothy G. Parilla
401 N. Franklin Street, Suite 4S
Chicago, IL 60654
Tel.: (312) 319-1791
E-mail: acm@thepmlawfirm.com
E-mail: rjp@thepmlawfirm.com
E-mail: tgp@thepmlawfirm.com

TARTER KRINSKY & DROGIN LLP

By: */s/ Richard J.L. Lomuscio*
Richard J.L. Lomuscio
Mark Berkowitz
1350 Broadway
New York, NY 10018
Tel.: (212) 216-8000
Fax: (212) 216-8001
E-mail: rlomuscio@tarterkrinsky.com
E-mail: mberkowitz@tarterkrinsky.com

*Attorneys for Plaintiffs*