UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HANGZHOU CHIC INTELLIGENT
TECHNOLOGY CO.; and UNICORN
GLOBAL, INC.,

        Plaintiffs,

    v.

GYROOR; GYROOR-US; URBANMAX;
FENGCHI-US; HGSM; GAODESHANG-US;
and GYROSHOES,

        Defendants.

No. 20 C 4806

Judge Thomas M. Durkin

## MEMORANDUM OPINION AND ORDER

Plaintiffs allege that Defendants' "hoverboard" products infringe Plaintiffs' design patents. The Court issued a preliminary injunction prohibiting sale of the products. *See* R. 456; R. 147; R. 113. The Federal Circuit vacated that injunction. *See* R. 587; R. 590. Plaintiffs filed a renewed motion for a preliminary injunction. R. 592. After a one-day hearing, the Court denied the motion. R. 619. This opinion and order explains the reasons for that decision.

## Background

Plaintiffs own design patents D737,723 and D738,256:





*See* R. 609 at 3-4; *see also* R. 593 at 7-11. Plaintiffs seek a preliminary injunction of Defendants' sales of three products: (1) Gyroor T581 series and variants, referred to as "Gyroor A"; (2) Gyroor T580 series and variants, referred to as "Gyroor C"; and (3) Gyroor G11 series and variants, referred to as "Gyroor E."

**Table 6: Accused Product Gyroor A**













**Table 7: Accused Product Gyroor C**





4









**Table 8: Accused Product Gyroor E**











*See* R. 609 at 7-9. The most relevant prior art in this case is the patent D739,906:



*See* R. 609 at 4-5.

## Legal Standards

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The "estimated likelihood of success in establishing infringement is governed by Federal Circuit law." *Revision Mil., Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 526 (Fed. Cir. 2012). Seventh Circuit law governs the other factors. *See Koninklijke Philips N.V. v. Thales DIS AIS USA LLC*, 39 F.4th 1377, 1379 (Fed. Cir. 2022).

"To show a likelihood of success on the merits, a patentee must show that it will likely prove infringement of the asserted claims." *ABC Corp. I v. P'ships & Unincorporated Assocs. Id'd on Schedule "A"*, 52 F.4th 934, 942 (Fed. Cir. 2022). This means that the plaintiff must demonstrate that any defense raised "lacks substantial merit." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350-51 (Fed. Cir. 2001).

"To show infringement under the proper test," a plaintiff must demonstrate that "an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design." *Crocs v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010); *see also Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 676, 678. (Fed. Cir. 2008). "Where a patented design and an accused product are not 'plainly dissimilar,' the court must conduct a three-way

analysis comparing the accused product, the patented design, and the prior art." *ABC Corp*, 52 F.4th at 942 (citing *Egyptian Goddess*, 543 F.3d at 677-78.

## Analysis

In its opinion reversing this Court's prior issuance of a preliminary injunction, the Federal Circuit noted that an "hourglass shape" was the "dominant feature of the patented design and the accused products," and also "appears in the prior art." *ABC Corp.*, 52 F.4th at 942. The court explained that where there is a "dominant feature" across the prior art, the patents in suit, and the accused products, "the focus of the infringement substantial similarity analysis in most cases will be on other features of the design." *Id.* In other words, the "shared dominant feature from the prior art will be no more than a background feature of the design, necessary for a finding of substantial similarity but insufficient by itself to support a finding of substantial similarity." *Id.*

### A.    Plaintiffs' Expert Paul Hatch

The Federal Circuit criticized Plaintiffs' expert, Paul Hatch, because his analysis violated this legal standard.[1] In the Federal Circuit's view, instead of treating the dominant hourglass shape as background, Hatch improperly "relied on" the hourglass shape "of the accused products to show substantial similarity [to the patents in suit]." *Id.* at 938-39. The Federal Circuit understood Hatch's opinion to be

---

[1] Hatch is a professional product designer and inventor. *See* R. 594 at 2-3. Defendants did not challenge his qualifications. The Court finds no reason to question them and finds Hatch to be qualified to offer testimony pursuant to Federal Rule of Civil Procedure 702.

that the accused products are substantially similar to the patents in suit because they create the visual impression of an "integrated hourglass body," thereby implying that he believed the prior art did not create such an impression. *See id.* at 938 ("Hatch did not explain why having an 'hourglass body' was 'unlike' the prior art."). One of the primary reasons the Federal Circuit vacated the preliminary injunction was because this Court relied on Hatch's report, which, "far from recognizing that the hourglass figure of the asserted patents could not be relied on the establish substantial similarity, improperly relied on that feature to show substantial similarity." *Id.* at 943.

On this renewed motion for preliminary injunction, Hatch has clarified that he understands that the D'906 prior art also obviously shows an hourglass shape. But he believes that against the common backdrop of an hourglass body, the D'906's "uncluttered, rounded, smooth body" when compared with the patents in suit and accused products and their "pronounced footing areas and [open] fender skirts," demonstrates that the accused products are substantially similar to the patents in suit. *See* R. 594 at 29-30 (Hatch's report stating that "the design [of the D'906 prior art] as a whole gives a distinctly different impression [from the patents in suit and the accused products], as it creates an impression of a very uncluttered, rounded, smooth body with no pronounced footing area and closed fender skirts."). Hatch testified that this difference in overall impression shows that the D'906 prior art "is clearly in a different ballpark" when compared with the patents in suit and the accused products. *See* R. 620 at 71:22. He acknowledged in his testimony that the

accused products differ from the patents in suit in (1) the shape and size of their fenders; (2) the designs of the grooves on the footing areas; (3) and the shapes of the lights. *See id.* at 70-72. But Hatch testified that these differences are "very minor" when viewed in light of the substantially different overall impression of the prior art compared with the overall impression given by both the patents in suit and the accused products. *See id.* at 71:20. And because the differences are minor, Hatch concludes that the ordinary observer "would find the overall appearance of each of the Accused Products to be substantially the same as the overall appearance of one or more of the claimed designs of the Patents-In-Suit in light of the prior art, inducing him or her to purchase the Accused Products supposing it to be the Claimed Design." R. 594 at 41.

The problem with Hatch's analysis is that he does not explain why simply featuring pronounced footings and open fenders means the accused products are substantially similar to the patents in suit while the prior art is in another "ballpark." This categorical distinction is curious because he concedes that all the designs at issue—the prior art, the patents in suit, and the accused products—create the visual impression of an integrated hourglass shape. In the Federal Circuit's terms, the hourglass shape is the "dominant feature" across all the relevant designs. This finding from the Federal Circuit means that Hatch's categorical distinction is erroneous. To the contrary, all the designs are in the same "ballpark," so to speak, because they all feature an "integrated hourglass shape."

Because all the designs possess the same dominant feature, the ordinary observer's attention "will be drawn to those aspects of the claimed design that differ from the [dominant feature exhibited by the] prior art." *Egyptian Goddess*, 543 F.3d at 676. Here, Hatch identified those other aspects as the pronounced footings and open fenders featured by the patents in suit and the accused products. But Hatch's analysis stops at the fact that both the patents in suit and the accused products merely possess these features. In his opinion, this similarity would be sufficient to deceive the ordinary observer. However, Hatch failed to conduct an analysis of whether these features themselves are substantially similar in the manner of their design, which is where "the focus" of the analysis must be. *See ABC Corp*, 52 F.4th at 942 ("where a dominant feature of the patented design and the accused products . . . appears in the prior art, *the focus* of the infringement substantial similarity analysis in most cases will be on other features of the design.") (emphasis added). For these reasons, the Court rejects Hatch's method of analysis.

### B. Defendants' Expert Jim Gandy

Defendants' expert, Jim Gandy, conducted the proper analysis.[2] In his rebuttal report, Gandy identifies the following features that "contribute to the overall shape and appearance" of the accused products and the patents in suit, which Hatch does not adequately analyze:

---

[2] Gandy served as a design patent examiner and supervisor at the USPTO for 32 years. *See* R. 609-2 at 2-4. Plaintiffs did not challenge his qualifications. The Court finds no reason to question them and finds Gandy to be qualified to offer testimony pursuant to Federal Rule of Civil Procedure 702.

      (a) The shape and appearance of the foot pads on the top surface;

      (b) The contour of the narrow central portion of the top surface, which is not flat . . . ;

      (c) The specific shape and appearance of the [fenders];

      (d) The specific shape and appearance of the 'elongated light panels on the front surface' as well as other features of the front and rear surfaces . . . ; and

      (e) Features on the bottom surface . . . .

R. 609-5 at 6. According to Gandy, these features "contribute significantly to the overall shape and appearance" of the accused products and the patents in suit "as a whole" and "distinguish them over each other such that an 'ordinary observer' familiar with the prior art, would not be confused so as to purchase one thinking it to be the other." *Id.*

## C. Product-by-Product Infringement Analysis

Having rejected Hatch's method of analysis, and finding Gandy's method proper, the Court will apply it "product-by-product" to determine the likelihood that Plaintiffs will succeed in proving that any of Defendants' products infringe Plaintiffs' patents. *See ABC Corp*, 52 F.4th at 944 ("When a court states the reasons why a preliminary injunction issued, it must generally conduct a product-by-product infringement analysis."). In his rebuttal report, Gandy thoroughly applied his method to each patent and product comparison. Like his testimony, Gandy's report is persuasive and credible, and the Court relies on it as the basis for its findings. Due to the similarities of the two patents, and the similarities of the accused products, the analyses of each product are largely the same and unfortunately rather repetitive.

13

### 1.  Patent in Suit '723 Compared to
Accused Product Gyroor A

"As can be seen in the front and rear views . . . the concavely curved recessed center portion of the top surface of the claimed design of the '723 patent and the design of the prior art '906 patent both have a slightly raised convex contour, while the corresponding center portion of the top surface of the design of the Gyroor 'A' hoverboard is substantially flat and slightly recessed down below the opposing outer foot surfaces." R. 609-5 at 11.



Furthermore, "the wheel covers at each end of the claimed design of the '723 patent, the design of the prior art '906 patent and the design of the Gyroor 'A'

hoverboard differ from each other." *Id.* at 12. "Specifically, the wheel covers shown on the claimed design of the '723 patent and the design of the prior art '906 patent are both semi-circular in shape and extend over and cover the entire wheel, while the wheel covers on the design of the Gyroor 'A' hoverboard are somewhat squared off and do not extend over the entire wheel, but rather partially over the wheel." *Id.*



Side view '723 patent        Side view prior art '906 patent        Side view Gyroor "A"

Perspective view '723 patent        Perspective view prior art '906 patent

Perspective view the Gyroor "A"



As discussed, Patent '723 and Gyroor A both include pronounced footings. However, "the foot pads of the claimed design of the '723 patent and the design of the Gyroor 'A' hoverboard differ not only in their peripheral shape but also the decorative pattern of ribs on each." *Id.* at 13.

Enlarged view of foot pads '723 patent

Enlarged view of foot pads Gyroor "A"




The front and rear surfaces of Gyroor A also differ from those of Patent '723. "Specifically, directly below the vertically flat upper portion of the front and rear surfaces are recessed horizontally elongated LED lights and below the LED lights is an outwardly protruding horizontal band that extends inwardly and merges with the recessed central portion." *Id.* at 14. This is as opposed to the "rounded parallelogram shaped LED lights at the opposing outer ends of the rear surface of the claimed design of the '723 patent." *Id.* "Also, on the right front vertically flat upper portion of the design of [Gyroor A] is the word 'GYROOR.'" *Id.*

Lastly, in his testimony, Gandy pointed out, that "even though the bottom might not normally be visible, . . . you have to consider [it] for the purpose of . . . infringement," because "the claimed design in the '723 patent [claims] the bottom as part of the ornamental design." R. 620 at 121:24–122:6. Accordingly, the Court finds that "the bottom surface of the design of the [Gyroor A] hoverboard differs from both

the claimed design of the '723 patent and the design of prior art '906 patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a slight diagonally downwardly protruding arcuate edge." *Id.* "In addition, the recessed central portion of the design of the [Gyroor A] hoverboard is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having six narrow longitudinal ribs." *Id.* at 14.



Bottom view '723 patent          Bottom view prior art '906 patent



Bottom view the Gyroor "A"

### 2. Patent in Suit '723 Compared to Accused Product Gyroor C

"As can be seen in the front and rear views below, the concavely curved recessed center portion of the top surface of the claimed design of the '723 patent and the design of the prior art '906 patent both have a slightly raised convex contour, while the corresponding center portion of the top surface of the design of the Gyroor 'C' hoverboard is substantially flat and slightly recessed down below the opposing outer foot surfaces." R. 609-5 at 41-42.

Top plan view '723 patent

Top plan view prior art '906 patent

Top plan view Gyroor "C"

Front view '723 patent

Rear view '723 patent

Front and Rear view prior art '906 patent

Front and Rear view Gyroor "C"

Furthermore, the wheel covers of the '723 patent, the design of the prior art '906 patent extend over and cover the entire wheel, while the wheel covers on the design of Gyroor "C" hoverboard do not extend down over the wheel." *Id.* at 42.



Side view '723 patent

Side view prior art '906 patent

Side view the Gyroor "C"

Perspective view '723 patent

Perspective view prior art '906 patent

Perspective view of Gyroor "C"



As discussed, Patent '723 and Gyroor C both feature pronounced footings on their top surfaces. "However, it is clear from the enlarged isolated view below that the foot pads of the claimed design of the '723 patent and the design of the Gyroor 'C' hoverboard differ significantly in their peripheral shape as well as the decorative pattern of on each." *Id.* at 43.

Enlarged view of foot pads 723 patent



Enlarged view of foot pads Gyroor 'C



The front and rear surfaces of Gyroor C also differ from those of Patent '723. "Specifically, directly below the vertically flat upper portion of the front and rear surfaces are recessed horizontally elongated LED lights and below the LED lights is an outwardly protruding horizontal band that extends inwardly and merges with the recessed central portion." *Id.* at 43. This is as opposed to the "rounded parallelogram shaped LED lights at the opposing outer ends of the rear surface of the claimed design of the '723 patent and the lines on the front and rear surface of the claimed design of the '723 patent." *Id.*

Lastly, "the bottom surface of the design of the Gyroor 'C' hoverboard differs from both the claimed design of the '723 patent and the design of prior art '906 patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a slight diagonally downwardly protruding arcuate edge." *Id.* at 44. "In addition, the recessed central portion of the design of the Gyroor 'C' hoverboard is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having six narrow longitudinal ribs." *Id.*



Bottom view '723 patent          Bottom view prior art '906 patent

Bottom view of Gyroor "C"

### 3.    Patent in Suit '723 Compared to Accused Product Gyroor E

"As can be seen in the front and rear views below, the concavely curved recessed center portion of the top surface of the claimed design of the '723 patent and the design of the prior art '906 patent both have a slightly raised convex contour, while the corresponding center portion of the top surface of the design of the Gyroor 'E' hoverboard is substantially flat and slightly recessed down below the opposing outer foot surfaces." *Id.* at 71.



Furthermore, "the wheel covers at each end of the claimed design of the '723 patent, the design of the prior art '906 patent and the design of the Gyroor "E" hoverboard differ from each other." *Id.* "Specifically, the wheel covers shown on the claimed design of the '723 patent and the design of the prior art '906 patent are both semi-circular in shape and extend over and cover the entire wheel, while the wheel covers on the design of the Gyroor 'E' hoverboard are somewhat squared off and do not extend over the entire wheel, but rather partially over the wheel." *Id.* at 71-72.





As discussed, Patent '723 and Gyroor E both feature pronounced footings on their top surfaces. "However, it is clear from the enlarged isolated view below that the foot pads of the claimed design of the '723 patent and the design of the Gyroor 'E' hoverboard differ not only in their peripheral shape but also the decorative pattern of ribs on each." *Id.* at 72-73.

Enlarged view of foot pads '723 patent



Enlarged view of foot pads Gyroor "E"



The front and rear surfaces of Gyroor E also differ from those of Patent '723. "Specifically, directly below the vertically flat upper portion of the front and rear surfaces are recessed horizontally elongated LED lights with quarter rounded inner ends." *Id.* at 73. This is as opposed to "the rounded parallelogram shaped LED lights at the opposing outer ends of the rear surface of the claimed design of the '723 patent and the lines on the front and rear surface of the claimed design of the '723 patent." *Id.*

Lastly, "the bottom surface of the design of the Gyroor 'E' hoverboard differs from both the claimed design of the '723 patent and the design of prior art '906 patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a slight diagonally downwardly protruding arcuate edge. In addition, the recessed central portion of the design of the Gyroor 'E' hoverboard is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having six narrow longitudinal ribs." *Id.* at 73-74.



Bottom view '723 patent    Bottom view prior art '906 patent



Bottom view the Gyroor "E"

**4.      Patent in Suit '256 Compared to
         Accused Product Gyroor A**

"As can be seen in the front and rear views below, the concavely curved recessed center portion of the top surface of the claimed design of the '256 patent and the design of the prior art '906 patent both have a slightly raised convex contour, while the corresponding center portion of the top surface of the design of the Gyroor "A" hoverboard is substantially flat and slightly recessed down below the opposing outer foot surfaces." R. 609-5 at 16.

Top plan view '256 patent    Top plan view prior art '906 patent



Top plan view Gyroor "A"





Front view '256 patent

Rear view '256 patent

Front and Rear view prior art '906 patent

Front and Rear view Gyroor "A"

Furthermore, "the wheel covers at each end of the claimed design of the '256 patent, the design of the prior art '906 patent and the design of the Gyroor 'A' hoverboard differ from each other." *Id.* at 16. Specifically, "the shape of the wheel covers in the claimed design of the '256 patent and the prior art '906 patent are semi-circular, while the wheel covers on the design of the Gyroor 'A' hoverboard are somewhat squared off." *Id.* Additionally, "the wheel covers on the claimed design of the '256 patent and the design of the Gyroor 'A' hoverboard do not extend over the entire wheel, but rather partially over the wheel." *Id.* at 17.



Side view '256 patent     Side view prior art '906 patent     Side view Gyroor "A"

As discussed, Patent '256 and Gyroor A both include protruding footings. But the "foot pads of the claimed design of the '256 patent and the design of the Gyroor 'A' hoverboard differ not only in their peripheral shape but also the decorative pattern of ribs on each." *Id.* at 17.

25

Enlarged view of foot pads '256 patent

Enlarged view of foot pads Gyroor "A"





The front and rear surfaces of Gyroor A also differ from those of Patent '256. "Specifically, directly below the vertically flat upper portion of the front and rear surfaces are recessed horizontally elongated LED lights and below the LED lights is an outwardly protruding horizontal band that extends inwardly and merges with the recessed central portion." *Id.* at 18. This is as opposed to the "rounded somewhat trapezoidal shaped LED lights at the opposing outer ends of the rear surface of the claimed design of the '256 patent." *Id.* "Also, on the right front vertically flat upper portion of the design of the Gyroor 'A' hoverboard is the word 'GYROOR.'" *Id.*

Lastly, "the bottom surface of the design of the Gyroor "A" hoverboard differs from both the claimed design of the '256 patent and the design of prior art '906 patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a slight diagonally downwardly protruding arcuate edge. In addition, the recessed central portion of the design of the Gyroor 'A' hoverboard is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having six narrow longitudinal ribs." *Id.* at 19.



Bottom view '256 patent    Bottom view prior art '906 patent

Bottom view Gyroor "A"

### 5. Patent in Suit '256 Compared to Accused Product Gyroor C

As can be seen "in the front and rear views below, the concavely curved recessed center portion of the top surface of the claimed design of the '256 patent and the design of the prior art '906 patent both have a slightly raised convex contour, while the corresponding center portion of the top surface of the design of the Gyroor 'C' hoverboard is substantially flat and slightly recessed down below the opposing outer foot surfaces. *Id.* at 45.



Top plan view '256 patent    Top plan view prior art '906 patent

Top plan view of Gyroor "C"





The Court notes that "the wheel covers at each end of the claimed design of the '256 patent, the design of the prior art '906 patent and the design of the Gyroor "C" hoverboard are all semi-circular in shape." *Id.* at 46. "However, the wheel covers of the design of Gyroor 'C' hoverboard are wider than those of the design of the '256 patent." *Id.*



As discussed, Patent '256 and Gyroor C both include protruding footings. But "the foot pads of the claimed design of the '256 patent and the design of the Gyroor 'C' hoverboard differ significantly in their peripheral shape as well as the decorative pattern of on each." *Id.* at 47.



Enlarged view of foot pads 256 patent



Enlarged view of foot pads Gyroor 'C

The front and rear surfaces of Gyroor C also differ from those of Patent '256. "Specifically, directly below the vertically flat upper portion of the front and rear surfaces are recessed horizontally elongated LED lights and below the LED lights is an outwardly protruding horizontal band that extends inwardly and merges with the recessed central portion." *Id.* This is as opposed to "the rounded somewhat trapezoidal shaped LED lights at the opposing outer ends of the rear surface of the claimed design of the '256 patent and the horizontal line on the front and rear surface of the claimed design of the '256 patent." *Id.*

Lastly, "the bottom surface of the design of the Gyroor "C" hoverboard differs from both the claimed design of the '256 patent and the design of prior art '906 patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a slight diagonally downwardly protruding arcuate edge." *Id.* at 48. "In addition, the recessed central portion of the design of the Gyroor 'C'

hoverboard is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having six narrow longitudinal ribs." *Id.*



Bottom view '256 patent    Bottom view prior art '906 patent

Bottom view Gyroor "C"

### 6. Patent in Suit '256 Compared to Accused Product Gyroor E

As can be seen "in the front and rear views below, the concavely curved recessed center portion of the top surface of the claimed design of the '256 patent and the design of the prior art '906 patent both have a slightly raised convex contour, while the corresponding center portion of the top surface of the design of the Gyroor 'E' hoverboard is substantially flat and slightly recessed down below the opposing outer foot surfaces." *Id.* at 75.



Top plan view '256 patent    Top plan view prior art '906 patent

Top plan view Gyroor "E"



Furthermore, the Court notes "that the wheel covers at each end of the claimed design of the '256 patent, the design of the prior art '906 patent and the design of the Gyroor 'E' hoverboard differ from each other as shown in the top plan view and front and rear views above as well as the side view and perspective view below." *Id.* at 76. "Specifically, the wheel covers shown on the claimed design of the '256 patent and the design of the prior art '906 patent are both semi-circular in shape and extend over and cover the entire wheel, while the wheel covers on the design of the Gyroor 'E' hoverboard are somewhat squared off and do not extend over the entire wheel, but rather partially over the wheel." *Id.*





Perspective view '256 patent          Perspective view prior art '906 patent



Perspective view the Gyroor "E"

As discussed, Patent '256 and Gyroor E both include protruding footings. But "the foot pads of the claimed design of the '256 patent and the design of the Gyroor 'E' hoverboard differ not only in their peripheral shape but also the decorative pattern of ribs on each." *Id.* at 77.




Enlarged view of foot pads '256 patent          Enlarged view of foot pads Gyroor "E"

The front and rear surfaces of Gyroor E also differ from those of Patent '256. "Specifically, directly below the vertically flat upper portion of the front and rear surfaces are recessed horizontally elongated LED lights with quarter rounded inner

ends." *Id.* at 78. This is as opposed to "the rounded parallelogram shaped LED lights at the opposing outer ends of the rear surface of the claimed design of the '256 patent and the lines on the front and rear surface of the claimed design of the '256 patent." *Id.*

Lastly, "the bottom surface of the design of the Gyroor 'E' hoverboard differs from both the claimed design of the '256 patent and the design of prior art '906 patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a slight diagonally downwardly protruding arcuate edge." *Id.* at 78. "In addition, the recessed central portion of the design of the Gyroor 'E' hoverboard is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having six narrow longitudinal ribs." *Id.*



Bottom view '723 patent

Bottom view prior art '906 patent

Bottom view the Gyroor "E"

\*     \*     \*     \*

Plaintiffs argue that this analysis, supported by Gandy's report and testimony, is too focused on the details of the designs and fails to compare the "overall impressions" of the patents in suit and the accused products, as is required by Federal Circuit law. But as Gandy credibly explained in his testimony, it is impossible to consider a design's overall impression without examining its details. *See* R. 620 at

33

144:18–145:2 (when asked whether he looks at individual "features in isolation," Gandy responded that when he addresses "individual features, that's part of the whole analysis from an overall appearance standpoint. You have to look at all of the features as a whole. That's what determines what the overall appearance looks like."). In other words, the overall impression is embodied in the details. Any analysis that— like Hatch's—ignores the details will fail to gain a proper perspective on the overall impression of a design. The Court's analysis, guided by Gandy's highly credible method, examined the details of each design to understand the overall impression of each and compare them. This analysis demonstrates that a reasonable jury could find that the accused products are not substantially similar to the patents in suit, such that an ordinary observer would not be deceived into believing that the accused products are the same as the patented design. This is a defense that has "substantial merit," such that Plaintiffs have failed to demonstrate a sufficient likelihood of success on the merits. Having failed to make this showing, it is unnecessary to address the other factors required to justify an injunction.

## Conclusion

For these reasons, the Court denied Plaintiffs' motion for a preliminary injunction.

ENTERED:

Honorable Thomas M. Durkin
United States District Judge

Dated: December 12, 2022