# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISON**

| | |
|---|---|
| ABC Corporation I et al, | |
| *Plaintiff*, | **CASE NO.** 1:20-cv-04806 |
| v. | **Judge:** Honorable Thomas M. Durkin |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", | |
| *Defendants*. | |

**EXPERT DECLARATION OF JIM GANDY**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

## TABLE OF CONTENTS

I.       INTRODUCTION .................................................................. 1

II.     QUALIFICATIONS ............................................................. 3

III.    MY UNDERSTANDING OF THE APPLICABLE LEGAL PRINCIPLES ...... 4

IV.    THE EXPERT REPORT OF PAUL HATCH ............................................. 5

V.     THE ASSERTED PATENTS ................................................................. 9

VI.    THE ORDINARY OBSERVER ............................................................. 9

VII.   INFRINGEMENT ANALYSIS OF THE ASSERTED PATENTS, THE ACCUSED PRODUCTS AND THE PRIOR ART ................................... 10

    A.    The '723 Patent, Prior Art '906 Patent and Gyroor "A" ........................... 11

    B.    The '256 Patent, Prior Art '906 Patent and Gyroor "A" .......................... 15

    C.    The '195 Patent, Prior Art '906 Patent and Gyroor "A" .......................... 20

    D.    The '723 Patent, Prior Art '906 Patent and Gyroor "B" .......................... 24

    E.    The '256 Patent, Prior Art '906 Patent and Gyroor "B" .......................... 28

    F.    The '195 Patent, Prior Art '906 Patent and Gyroor "B" ......................... 33

    G.    The '112 Patent, Prior Art '906 Patent and Gyroor "B" .......................... 37

    H.    The '723 Patent, Prior Art '906 Patent and Gyroor "C" .......................... 41

    I.    The '256 Patent, Prior Art '906 Patent and Gyroor "C" .......................... 45

    J.    The '195 Patent, Prior Art '906 Patent and Gyroor "C" .......................... 49

    K.    The '723 Patent, Prior Art '906 Patent and Gyroor "D" .......................... 52

    L.    The '256 Patent, Prior Art '906 Patent and Gyroor "D" .......................... 57

    M.    The '195 Patent, Prior Art '906 Patent and Gyroor "D" .......................... 62

    N.    The '112 Patent, Prior Art '906 Patent and Gyroor "D" .......................... 67

    O.    The '723 Patent, Prior Art '906 Patent and Gyroor "E" ........................... 70

    P.    The '256 Patent, Prior Art '906 Patent and Gyroor "E" .......................... 75

    Q.    The '195 Patent, Prior Art '906 Patent and Gyroor "E" .......................... 79

VIII.  CONCLUSION ................................................................. 83

### REBUTTAL EXPERT DECLARATION OF JIM GANDY AS TO
### NON-INFRINGEMENT OF THE ASSERTED DESIGN PATENTS

I, Jim Gandy, submit this declaration in support of multiple defendants, Gyroor, Jiangyou-US, Gyroshoes, Fengchi-US, HGSM, Urbanmax, Gaodeshang-US, Gyroor-US, regarding the above litigation matter. In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the statements herein are true and correct to the best of my knowledge, belief, recollection, and understanding. All statements made on information and belief are believed to be true. I am over the age of eighteen, and, if asked to do so, I could competently testify to the matters set forth herein.

## I.    INTRODUCTION

1.    I have been retained by counsel as an independent expert witness to provide my opinion regarding the above-captioned proceeding. Based on my education and my experience in transportation design, I have been asked to render an opinion regarding alleged infringement of the sole claim of design patents D737,723, D738,256, D784,195, and D785,112, ("The Asserted Design Patents"). This declaration contains my opinions concerning the alleged infringement of those design patents in rebuttal to the opinions of Paul Hatch as set forth in his expert report dated August 15, 2022. Multiple defendants, Gyroor, Jiangyou-US, Gyroshoes, Fengchi-US, HGSM, Urbanmax, Gaodeshang-US, Gyroor-US, ("multiple defendents") requested that I opine on the expert report submitted by Paul Hatch in support of Plaintiffs Hangzhou Chic Intelligent Technology Co. and Unicorn Global Inc.'s claims of patent infringement against defendants.

2.    I previously provided declarations in this matter, including: (1) an August 21, 2021, Declaration regarding non-infringement of the asserted patents; and (2) a September 3, 2021, Rebuttal to the August 24, 2021 Declaration of Paul Hatch.

3.    As discussed in further detail in this Declaration and any supplemental reports, testimony, or declarations that I may provide, it is my opinion that the Defendant's hoverboard designs, Gyroor "A", "B", "C", "D" and "E" do not infringe the D737,723, D738,256, D784195 and D785,112 patents.

4.    The following is my report and it and the exhibits hereto contain my opinions and the support therefore. In connection with rendering my opinion I have reviewed and relied upon the following materials:

- U.S. Design Patent No. D737,723 ("the '723 Patent")
- File History for U.S. Design Patent No. D737,723 Patent;
- U.S. Design Patent No. D738,256 ("the '256 Patent")
- File History for U.S. Design Patent No. D738,256 Patent;
- U.S. Design Patent No. D784,195 ("the '195 Patent")
- File History for U.S. Design Patent No. D784,195 Patent;
- U.S. Design Patent No. D785,112 ("the '112 Patent")
- File History for U.S. Design Patent No. D785,112 Patent;
- Defendant's hoverboards, Gyroor "A", "B", "C", "D" and "E" ("The Accused Products");
- U.S. Design Patent No. D739,906 ("the '906 Patent");
- U.S. Utility Patent No. 8,738,287 ("the '287 Patent");
- EXPERT REPORT OF PAUL HATCH REGARDING INFRINGEMENT OF U.S. PATENTS D737,723, D738,256, D784,195, and D785,112, dated August 15, 2022, ("The Hatch Report"); and
- DEFENDANT GYROOR-US'S MOTION FOR SUMMARY JUDGEMENT FOR DECLARATORY RELIEF OF NONINFRINGEMENT.

5.  In addition to the above materials, I have also relied on my own education, training, experience and knowledge in the field of transportation and design patents.

6.  I may also consider additional documents and information that have not yet been provided to or discovered by me should such documents and information be brought to my attention after the date I submit this Declaration, and I reserve the right to add to or amend my opinions in connection with the same.

7.  The analysis in this Declaration is exemplary. Additional reasons may support my conclusions, but they do not form my current analysis. The fact that I do not address a particular reason does not imply that I would agree or disagree with such additional reason.

8.  I receive compensation at a rate of $350 per hour for my time spent on this matter, except for any travel time, which is billed at one-half of my hourly rate. I am also being reimbursed for reasonable and customary expenses associated with my work on this matter.  I have no financial interests in the patents involved in this proceeding, and my compensation is not dependent on the

outcome of this proceeding. The conclusions I present are based on my own judgment. I am not an employee of "multiple defendants", Glacier Law PLLC, or any affiliated companies.

## II.    QUALIFICATIONS

9.      My current curriculum vitae is attached as Exhibit 1.

10.     I hold a Bachelor of Science in Architectural Design Technology from Temple University in Philadelphia, Pennsylvania, where I graduated in 1972.

11.     Upon graduation, I worked as a Design Patent Examiner in Art Unit 2911 for the United States Patent and Trademark Office ("USPTO").   While in Art Unit 2911, I primarily worked in class D12 "Transportation."   My responsibilities included examining design patent applications, examining reexamination and reissue applications, issuing determinations on examined applications, initiating interference proceedings, and preparing examiner's answers for applications on appeal to the Board of Patent Appeals and Interferences.

12.     In 1979, I was promoted to Primary Examiner and continued to work as a Design Patent Examiner in Art Unit 2911 for the USPTO.   With this promotion, I gained full signatory authority and trained new examiners while occasionally fulfilling supervisory patent examiner duties when the art unit supervisor was away.

13.     In my 24 years of work as a Design Patent Examiner at the USPTO, I made patentability determinations in approximately 10,000 design patent applications that I examined. I have examined design patent applications in every design class, and approximately three-quarters of my examinations related to Class D12 (Land Transportation).

14.     In 1996, I became a Supervisory Patent Examiner for the USPTO and transitioned to Art Unit 2913, which also reviews designs for Transportation among other classes of art.   As supervisor, I managed the work flow, quality, and timeliness of examiners in my art unit.   I also trained junior examiners and provided additional training to primary examiners to maintain consistency in work product.   I evaluated the performance of all examiners in the art unit.   Finally, I also developed the Design Examiner Supplemental Training Guide and led the program for uniformity of examination practice for the entire Design Patent Technology Center.

15.     In 1998, I became the Design Patent Practice Specialist for Technology Center 2900 at the USPTO.   I continued to train all new examiners, junior examiners when they joined the USPTO and trained all examiners in Technology Center 2900 through continuing education programs.   I was in charge of updating the Design Examiner Supplemental Training Guide and

Chapter 1500 Design Patents in the Manual of Patent Examining Procedure. I responded to inquiries from external customers about design patent practice and procedure on a daily basis. I continuously reviewed cases, decisions, and reports coming from the courts, the Board, and the Office of Patent Quality Review to train examiners and update the previously mentioned documents. Finally, I also made presentations to attorneys and inventor groups on behalf of the USPTO.

16.     During my career at the USPTO, I received an outstanding rating under performance appraisal plan for 32 consecutive years. I also received various accolades including the Department of Commerce Bronze Medal Award in 1983; the USPTO's Distinguished Career Award in 2000 in recognition of consistent superior performance in design patent application examination and in art unit leadership; and the Norman P. Morgenstern Award in 2004 for the leadership and innovation contributions made by Supervisory Patent Examiners.

17.     Currently, and since my retirement from the USPTO in 2005, I have occasionally counseled patent attorneys and agents who file design patents applications.

18.     In the past I have served as in expert in other design patent related matters, a detailed list of cases in which I have served as a design patent expert is set forth in my curriculum vitae which is attached as Exhibit 1.

## III.     UNDERSTANDING OF THE APPLICABLE LEGAL PRINCIPLES

19.     As a design patent expert, I am not an attorney and, therefore, nothing in this report should be construed as me offering any legal opinions. Rather, I am offering design assessments and opinions. In rendering my analysis, I have been informed by counsel for "multiple defendants" the legal standards for infringement of a design patent. I have applied those standards in forming the opinions expressed in this report.

20.     Based on my conversations with counsel for "multiple defendants" and my review of administrative decisions and articles discussing design patent law principals, I have the following understanding of design patent infringement. First, it is my understanding that the claim in a design patent application is directed to the entire design and not individual parts or elements thereof. In addition, it is my understanding that the proper inquiry in determining if a patented design has been infringed is whether the accused design appropriates the claimed design as a whole. Further, it is my understanding that design patent infringement is determined by first construing the claim to the design and then comparing it to the design of the accused device. It's

also my understanding that in construing the claim a design is better represented by an illustration rather than a verbal description since any description would not likely be intelligible without the illustration. Therefore, it is my opinion that the claim of the Patents-in-Suit should be construed based on the drawings.

21.　　I have further been informed by counsel for "multiple defendants" that the sole test for determining whether a design patent has been infringed is the "ordinary observer" test. It's my understanding that under the "ordinary observer" test for infringement of a patented design an accused design must be so similar in overall appearance to the claimed design that an "ordinary observer" would be deceived into purchasing one, supposing it to be the other. Moreover, it's my understanding that under this test an "ordinary observer" is one who is conversant with the prior art and that in order to determine whether an accused design appropriates the patented design a comparison of the features of the patented design with the prior art and the accused design may be necessary. In this instance, an "ordinary observer" is a potential purchaser who is familiar with hoverboards and their different designs.

## IV.　　THE EXPERT REPORT OF PAUL HATCH

22.　　In his expert report, Mr. Hatch asserts "Based on my experience as an Industrial Designer of commercial products ……. it is my opinion that an ordinary observer in this case is the typical purchaser of hoverboards, i.e., a consumer user or the parent of a user, each having little or no experience purchasing hoverboards." However, based on my conversations with counsel for "multiple defendants" this "opinion" by Mr. Hatch is not consistent with the "hypothetical ordinary observer who is conversant with the prior art" standard articulated by the Court of Appeals for the Federal Circuit, (CAFC). Therefore, in this instance, it remains my opinion that an "ordinary observer" is a potential purchaser who is familiar with hoverboards and their different designs.

23.　　In order to assess whether the design of "The Accused Products" appropriates the claimed design of "The Asserted Design Patents", the features of each should be identified and then compared to each other and, if necessary, the closest prior art. "The Hatch Declaration" fails to do that adequately. Specifically, in asserting that "The Accused Products" infringe the '723 and '256 patents, Mr. Hatch makes the following statement, in part, on pages 21 and 23 of his declaration: "Unlike the cited prior art shown in Section III Chapter F, the claimed design …………… and the Accused Products share the same overall impression and have an integrated 'hourglass' body with a relatively flat surface across the top of the main body, arched covers over

the wheel area, larger radii on the front and back of the underside, and elongated light panels on the front surface." This statement by Mr. Hatch not only fails to identify specific features of "The Accused Products" and the claimed design of the '723 and '256 patents on the top, front, rear and bottom surfaces, but also fails to describe the shape and appearance of some of the features that are identified in his statement. Specifically, the following features that contribute to the overall shape and appearance of "The Accused Products" and the claimed design of the '723 and '256 patents are either omitted or not adequately described in "The Hatch Declaration":

        a) The shape and appearance of the foot pads on the top surface;

        b) The contour of the narrow central portion of the top surface, which is not flat, contrary to Mr. Hatch's statement;

        c) The specific shape and appearance of the "arched covers";

        d) The specific shape and appearance of the "elongated light panels on the front surface" as well as other features of the front and rear surfaces which will be described below; and

        e) Features on the bottom surface which will be described below.

As will be described later in this declaration, the above identified features contribute significantly to the overall shape and appearance of "The Accused Products" and the claimed design of the '723 and '256 patents as a whole and distinguish them over each other such that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other.

        24.     With regards to the assertion that "The Accused Products" infringe the '195 patent, Mr. Hatch makes the following statement on pages 24 and 25 of his declaration: "Unlike the cited prior art shown in Section III Chapter F, the claimed design of the '195 patent and the Accused Products share an integrated 'hourglass' body with many horizontal styling lines across the body and a relatively flat surface across the top, arched covers over the wheel area, larger radii on the front and back of the underside. Unlike any of the prior art the foot plates narrow as they extend toward the center." Again, this statement by Mr. Hatch not only fails to identify the specific features of "The Accused Products" and the claimed design of the '195 patent on the top, front, rear and bottom surfaces, but also fails to describe the shape and appearance of some of the features that are identified in his statement. Specifically, the following features that contribute to the overall shape and appearance of "The Accused Products" and the claimed design of the '195 patent are either omitted or not adequately described in "The Hatch Declaration":

6

a) The contour of the narrow central portion of the top surface, which is not flat, contrary to Mr. Hatch's statement;

b) The specific shape and appearance of the "arched covers";

c) The specific shape and appearance and features of the front and rear surfaces which will be described below; and

d) Features on the bottom surface which will be described below.

As will be described later in this declaration, the above identified features contribute significantly to the overall shape and appearance of "The Accused Products" and the claimed design of the '195 patent as a whole and distinguish them over each other such that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other.

25.     As to the assertion that "The Accused Products" infringe the '112 patent, Mr. Hatch makes the following statement on page 26 of his declaration: "Unlike the cited prior art shown in Section III Chapter F, the claimed design of the '112 Patent and the Accused Products share an integrated 'hourglass' body with many lines angling across the body and a relatively flat surface across the top, arched covers over the wheel area, larger radii on the front and back of the underside. Unlike any of the prior art the foot plates stretch across almost the full width of main body." This statement by Mr. Hatch again fails to identify the specific features of "The Accused Products" and the claimed design of the '112 patent on the top, front, rear and bottom surfaces, but also fails to describe the shape and appearance of some of the features that are identified in his statement. Specifically, the following features that contribute to the overall shape and appearance of "The Accused Products" and the claimed design of the '112 patent are either omitted or not adequately described in "The Hatch Declaration":

a) The contour of the narrow central portion of the top surface, which is not flat, contrary to Mr. Hatch's statement;

b) The specific shape and appearance of the "arched covers";

c) The specific shape and appearance and features of the front and rear surfaces which will be described below; and

d) Features on the bottom surface which will be described below.

As will be described later in this declaration, the above identified features contribute significantly to the overall shape and appearance of "The Accused Products" and the claimed design of the '112

patent as a whole and distinguish them over each other such that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other.

26.     While "The Hatch Declaration" identifies all of the prior art cited on each of the "Asserted Design Patents" it fails to identify the single closest prior art and compare it to said patents and "The Accused Products".  However, it's my opinion that the two-wheeled vehicle design disclosed in design patent D739,906, ("the '906 patent"), cited on both the '195 and '112 patents, is the closest prior art to the "Asserted Design Patents". While the '906 patent was issued after the '723 and '256 patents, the '906 patent was filed with the United States Patent and Trademark Office more than a year before the filing date of those patents and it's my understanding it can be considered prior art for the purpose of this infringement analysis. In support of this position, I have also considered the 8,738,278 utility patent, (the '278 patent), which again was cited on the '195 and '112 patents, and names the same inventor, Shane Chen, as the '906 design patent and was filed a month earlier than the '906 design patent and issued before the filing dates of the '723, '256, '195 and '112 patents and more than a year before the issue date of those patents. Figure 1 of the '278 patent discloses a hoverboard having an appearance basically the same as the design in the '906 patent, and Figure 2 shows the hourglass peripheral shape of the hoverboard shown in Figure 1 and the design shown in the '906 patent. It's further my understanding that as prior art the '906 patent can be relied upon for everything it discloses in the drawing, including the broken line depiction of wheel covers on each end of the two-wheeled vehicle design. It's my opinion that the two-wheeled vehicle design disclosed in the prior art '906 patent has an overall shape and appearance substantially similar to "The Asserted Patents".  Specifically, the two-wheeled vehicle design disclosed in the prior art '906 patent has an hourglass body and a relatively flat surface across the top, arched covers over the wheel area, larger radii on the front and back of the underside as well as foot plates that narrow as they extend toward the center. For the most part, that's essentially the description Mr. Hatch uses in his declaration to asses that "The Accused Products" infringe the "Asserted Design Patents". If such a generic description of the general overall appearance of the "Asserted Design Patents" and "The Accused Products" were considered the proper standard for assessing infringement, then the "Asserted Design Patents" could be considered to infringe the two-wheeled vehicle design disclosed in the prior art '906 patent. Specifically, using similar wording as in "The Hatch Declaration", the "Asserted Design Patents" infringe the claimed design of the '906 patent since they share an integrated "hourglass" body and

a relatively flat surface across the top, larger radii on the front and back of the underside as well as foot plates that narrow as they extend toward the center. This is clearly not the proper standard for asserting infringement since such a generic description of the general overall appearance of the claimed design of the '906 patent and the "Asserted Design Patents" fails to recognize the additional features and details of the "Asserted Design Patents" not shown in the design disclosed in the '906 patent. The same can be said that the generic description used by Mr. Hatch in his declaration to assess that "The Accused Products" infringe the "Asserted Design Patents" is not the proper standard for assessing infringement since it fails to recognize the differences in shape and appearance of the various features and details that distinguish the overall appearance of each over the other. The fact of the matter is, the generic description used by Mr. Hatch in his declaration describes most of the hoverboards on the commercial market based on my review of various websites such as Walmart, Target, Best Buy and Amazon. That is, they have an hourglass body and a relatively flat surface across the top, arched covers over the wheel area, larger radii on the front and back of the underside as well as foot plates that narrow as they extend toward the center. Clearly such a generic description as used by Mr. Hatch in his declaration does not adequately describe the various visual differences in overall appearance of the design of the numerous hoverboards for sale in the commercial market let alone be adequate to assess the alleged infringement of "The Accused Products" over the "Asserted Design Patents".

## V. THE ASSERTED PATENTS

27.    As indicated in paragraph 4 above I have reviewed the prosecution history of the "Asserted Design Patents" which is understood to include a review of the prior art cited on the first page of said patents. As a retired design patent examiner, supervisor and practice specialist I understand that the scope of the claimed design in the "Asserted Design Patents" resides in the overall appearance thereof which includes all surfaces and details shown in solid lines. In this instance, that includes the top, front, rear, sides and bottom surfaces. Further, I also understand that the broken lines shown in the drawing are directed to portions of the article that form no part of the claimed design. As indicated above I have identified the closest prior art, namely the '906 patent and compared it to the claimed design in the "Asserted Design Patents" as set forth in my analysis below.

## VI.    THE ORDINARY OBSERVER

28.    As stated above the "hypothetical ordinary observer who is conversant with the

prior art" is the test for determining whether a design patent has been infringed as set forth by the CAFC. Therefore, it remains my opinion that an "ordinary observer" is a potential purchaser who is familiar with hoverboards and their different designs. As such a potential purchaser familiar with different hoverboard designs would know that most have a generic hourglass peripheral shape and therefore would look to the various features and details that distinguish one hoverboard over another, such as the specific shape and appearance of the foot pads on the top surface and whether the front and rear surfaces have LED lights or not and, if so, the shape and appearance of the lights as well as other potential features that stand out to them. To be sure, a potential purchaser who is familiar with hoverboards and their different designs would be looking at more than just the generic hourglass peripheral shape that most have in deciding which one to purchase.

## VII.   INFRINGEMENT ANALYSIS OF THE ASSERTED PATENTS, THE ACCUSED PRODUCTS AND THE PRIOR ART

29.     While I consider the overall shape and appearance of "The Accused Products" to be sufficiently distinct from the "Asserted Design Patents" as not to infringe, I choose to do a three-way comparison of "The Accused Products", the "Asserted Design Patents" and the closest prior art '906 patent to show that in many respects the design disclosed in the '906 patent is closer to the overall shape and appearance of the claimed design in the "Asserted Design Patents" than "The Accused Products". Although I have not been provided actual samples of "The Accused Products", I consider the photographs that were provided to me by counsel for "multiple defendants" to be of sufficient quality to understand all of the features and details and the overall shape and appearance of "The Accused Products" so as render an opinion of non-infringement of the "Asserted Design Patents". Also, when I inquired, counsel for "multiple defendants" informed me that the front and rear surfaces of "The Accused Products" are the same. Below I will make a side-by-side visual comparison of the claimed design of the "Asserted Design Patents" and "The Accused Products" with the prior art '906 patent. While my comparison identifies specific features and details on each of the surfaces of the claimed design of the "Asserted Design Patents", "The Accused Products" and the two-wheeled vehicle disclosed in the '906 patent, namely the top, front, rear, side and bottom, it should be understood that those features and details taken as a whole are what distinguish the overall appearance of "The Accused Products" over the claimed design of the "Asserted Design Patents" so as not to infringe, and not just the generic hourglass peripheral shape common to most hoverboards on the commercial market. In addition, even though the bottom is

not visible in normal intended use it is shown in solid lines in the drawing and therefore part of the design claimed in the "Asserted Design Patents and must be compared to "The Accused Products" as part of the infringement inquiry.

### A. The '723 Patent, Prior Art '906 Patent and Gyroor "A"

Top plan view "723 patent



Top plan view prior art '906 patent



Top plan view Gyroor "A"



30.     In view of the above visual depictions of the claimed design of the '723 patent, the design of the prior art '906 patent and the design of the Gyroor "A" hoverboard it's clear that they all have the same hourglass peripheral shape as viewed in top plan. In fact, the hour glass peripheral shape of the prior art '906 patent appears to be closer to the claimed design of the '723 patent than the design of the Gyroor "A" hoverboard. Furthermore, the claimed design of the '723 patent, the design of the prior art '906 patent and the design of the Gyroor "A" hoverboard are all comprised of the same general components, namely, opposing outer foot surfaces that are substantially flat, a concavely curved recessed center portion and wheel covers at each end. As will be apparent from the remaining views set forth below, namely, front, rear, side, perspective and bottom, the specific shape and appearance of the surfaces and features of the design of the prior art '906 patent are, in my opinion, closer to the claimed design of the '723 patent than the design of the Gyroor "A" hoverboard. For instance as can be seen in the front and rear views below, the concavely curved recessed center portion of the top surface of the claimed design of the '723 patent and the design of the prior art '906 patent both have a slightly raised convex contour, while the corresponding center portion of the top surface of the design of the Gyroor "A" hoverboard is substantially flat and slightly recessed down below the opposing outer foot surfaces.

Rear view '723 patent

Front view '723 patent




Front and Rear view prior art '906 patent

Front and Rear view of Gyroor "A"




31.      Furthermore, it's noted that the wheel covers at each end of the claimed design of the '723 patent, the design of the prior art '906 patent and the design of the Gyroor "A" hoverboard differ from each other as shown in the top plan view and front and rear views above as well as the side view and perspective view below. However, it's my opinion that the shape and appearance of the wheel covers in the claimed design of the '723 patent are closer to the wheel covers shown in broken lines in the design of the prior art '906 patent than the wheel covers of the design of the Gyroor "A" hoverboard. Specifically, the wheel covers shown on the claimed design of the '723 patent and the design of the prior art '906 patent are both semi-circular in shape and extend over and cover the entire wheel, while the wheel covers on the design of the Gyroor "A" hoverboard are somewhat squared off and do not extend over the entire wheel, but rather partially over the wheel.

Side view '723 patent

Side view prior art '906 patent

Side view Gyroor "A"





Perspective view '723 patent

Perspective view prior art '906 patent



Perspective view the Gyroor "A"



32.     The only common feature on the top surface of the claimed design of the '723 patent and the design of the Gyroor "A" hoverboard not shown on the design of prior art patent '906 patent is the foot pads on the opposing foot surfaces. However, it is clear from the enlarged isolated view below that the foot pads of the claimed design of the '723 patent and the design of the Gyroor "A" hoverboard differ not only in their peripheral shape but also the decorative pattern of ribs on each.

Enlarged view of foot pads '723 patent                Enlarged view of foot pads Gyroor "A"

    

33.     The front and rear surfaces of the claimed design of the '723 patent and the design of prior art '906 patent are substantially similar in shape and appearance as depicted in the front

13

and rear views and the perspective views above. Specifically, both designs have a vertically flat upper portion of the front and rear surfaces and a convexly curved lower portion that merges with the flat bottom surface. The only visual difference is the rounded parallelogram shaped LED lights at the opposing outer ends of the rear surface of the claimed design of the '723 patent and the lines on the front and rear surface of the claimed design of the '723 patent. On the contrary, while the design of the Gyroor "A" hoverboard has front and rear surfaces having a vertically flat upper portion and a convexly curved lower portion that merges with the bottom surface as the claimed design of the '723 patent and the design of prior art '906 patent, the central portion of the front and rear surfaces of the design of the Gyroor "A" hoverboard differs significantly from the claimed design of the '723 patent and the design of prior art '906 patent. Specifically, directly below the vertically flat upper portion of the front and rear surfaces are recessed horizontally elongated LED lights and below the LED lights is an outwardly protruding horizontal band that extends inwardly and merges with the recessed central portion. Also, on the right front vertically flat upper portion of the design of "The Accused Product" is the word "GYROOR".

34.    The shape and appearance of the bottom surface of the claimed design of the '723 patent and the design of prior art '906 patent are virtually identical as illustrated in the bottom views below. Specifically, both the claimed design of the '723 patent and the design of prior art '906 patent have opposing flat, plain outer portions and a smooth continuous concavely curved central portion which is best shown in the front and rear views above. However, the bottom surface of the design of the Gyroor "A" hoverboard differs from both the claimed design of the '723 patent and the design of prior art '906 patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a slight diagonally downwardly protruding arcuate edge. In addition, the recessed central portion of the design of the Gyroor "A" hoverboard is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having six narrow longitudinal ribs.

Bottom view '723 patent                    Bottom view prior art '906 patent

 

Bottom view the Gyroor "A"



35.     In view of the above analysis of the claimed design of the '723 patent with the design of the Gyroor "A" hoverboard and the design of the prior art '906 patent it is my opinion that the overall shape and appearance and identified features of the claimed design of the '723 patent are closer to the design of the prior art '906 patent than the design of the Gyroor "A" hoverboard. Furthermore, it's my opinion that the shape and appearance of the few features identified that are common to the claimed design of the '723 patent and the design the Gyroor "A" hoverboard not found in the design of the prior art '906 patentare substantial different such that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Therefore, it's my opinion that the design of the Gyroor "A" hoverboard does not infringe the claimed design of the '723 patent.

### B.  The '256 Patent, Prior Art '906 Patent and the Gyroor "A"

Top plan view'256 patent                    Top plan view prior art '906 patent

                    

Top plan view Gyroor "A"



36.     In view of the                                    above    visual
depictions   of   the   claimed                           design    of    the
''256 patent, the

15

design of the prior art '906 patent and the design of the Gyroor "A" hoverboard it's clear that they all have the same hourglass peripheral shape as viewed in top plan. In fact, the hourglass peripheral shape of the prior art '906 patent appears to be closer to the claimed design of the '256 patent than the design of the Gyroor "A" hoverboard. Furthermore, the claimed design of the '256 patent, the design of the prior art '906 patent and the design of the Gyroor "A" hoverboard are all comprised of the same general components, namely, opposing outer foot surfaces that are substantially flat, a concavely curved recessed center portion and wheel covers at each end. As will be apparent from the remaining views set forth below, namely, front, rear, side, perspective and bottom, the specific shape and appearance of the surfaces and features of the design of the prior art '906 patent are, in my opinion, closer to the claimed design of the '256 patent than the design of the Gyroor "A" hoverboard. For instance as can be seen in the front and rear views below, the concavely curved recessed center portion of the top surface of the claimed design of the '256 patent and the design of the prior art '906 patent both have a slightly raised convex contour, while the corresponding center portion of the top surface of the design of the Gyroor "A" hoverboard is substantially flat and slightly recessed down below the opposing outer foot surfaces.

Front view '256 patent



Rear view '256 patent



Front and Rear view prior art '906 patent



Front and Rear view Gyroor "A"



37.    Furthermore, it's noted that the wheel covers at each end of the claimed design of the '256 patent, the design of the prior art '906 patent and the design of the Gyroor "A" hoverboard differ from each other as shown in the top plan view and front and rear views above as well as the side view and perspective view below. However, it's noted that the shape of the wheel covers in the claimed design of the '256 patent and the prior art '906 patent are semi-circular, while the wheel covers on the design of the Gyroor "A" hoverboard are somewhat squared off. It's also

noted that the wheel covers on the claimed design of the '256 patent and the design of the Gyroor "A" hoverboard do not extend over the entire wheel, but rather partially over the wheel.

Side view '256 patent      Side view prior art '906 patent      Side view Gyroor "A"

  

Perspective view '256 patent        Perspective view prior art '906 patent

 

Perspective view Gyroor "A"



38. The only common feature on the top surface of the claimed design of the '256 patent and the design of the Gyroor "A" hoverboard not shown on the design of prior art patent '906 patent is the foot pads on the opposing foot surfaces. However, it is clear from the enlarged isolated view below that the foot pads of the claimed design of the '256 patent and the design of the Gyroor "A" hoverboard differ not only in their peripheral shape but also the decorative pattern of ribs on each.

Enlarged view of foot pads '256 patent          Enlarged view of foot pads Gyroor "A"

     

39.     The front and rear surfaces of the claimed design of the '256 patent and the design of prior art '906 patent are substantially similar in shape and appearance as depicted in the front and rear views and the perspective views above. Specifically, both designs have a vertically flat upper portion of the front and rear surfaces and a convexly curved lower portion that merges with the flat bottom surface. The only visual difference is the rounded somewhat trapezoidal shaped LED lights at the opposing outer ends of the rear surface of the claimed design of the '256 patent and the horizontal line on the front and rear surface of the claimed design of the '256 patent. On the contrary, while the design of the Gyroor "A" hoverboard has front and rear surfaces having a vertically flat upper portion and a convexly curved lower portion that merges with the bottom surface as the claimed design of the '723 patent and the design of prior art '906 patent, the central portion of the front and rear surfaces of the design of the Gyroor "A" hoverboard differs significantly from the claimed design of the '256 patent and the design of prior art '906 patent. Specifically, directly below the vertically flat upper portion of the front and rear surfaces are recessed horizontally elongated LED lights and below the LED lights is an outwardly protruding horizontal band that extends inwardly and merges with the recessed central portion. Also, on the right front vertically flat upper portion of the design of the Gyroor "A" hoverboard is the word "GYROOR".

40.     The shape and appearance of the bottom surface of the claimed design of the '256 patent and the design of prior art '906 patent are virtually identical as illustrated in the bottom views below. Specifically, both the claimed design of the '256 patent and the design of prior art '906 patent have opposing flat, plain outer portions and a smooth continuous concavely curved

18

central portion which is best shown in the front and rear views above. However, the bottom surface of the design of the Gyroor "A" hoverboard differs from both the claimed design of the '256 patent and the design of prior art '906 patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a slight diagonally downwardly protruding arcuate edge. In addition, the recessed central portion of the design of the Gyroor "A" hoverboard is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having six narrow longitudinal ribs.

Bottom view '256 patent                Bottom view prior art '906 patent

 

Bottom view Gyroor "A"



41.     In view of the above analysis of the claimed design of the '256 patent with the design of the Gyroor "A" hoverboard and the design of the prior art '906 patent it is my opinion that the overall shape and appearance and identified features of the claimed design of the '256 patent are closer to the design of the prior art '906 patent than the design of the Gyroor "A" hoverboard. Furthermore, it's my opinion that the shape and appearance of the few features identified that are common to the claimed design of the '256 patent and the design of the Gyroor "A" hoverboard not found in the design of the prior art '906 are substantial different such that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Therefore, it's my opinion that the design of the Gyroor "A" hoverboard does not infringe the claimed design of the '256 patent.

### C. The '195 Patent, Prior Art '906 Patent and Gyroor "A"

Top plan view '195 patent

Top plan view prior art '906 patent




Top plan view Gyroor "A"



42.     In view of the above visual depictions of the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "A" hoverboard it's clear that they all have the same hourglass peripheral shape as viewed in top plan. In fact, the hourglass peripheral shape of the prior art '906 patent appears to be closer to the claimed design of the '195 patent than the design of the Gyroor "A" hoverboard. Furthermore, the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "A" hoverboard are all comprised of the same general components, namely, opposing outer foot surfaces that are substantially flat, a concavely curved recessed center portion and wheel covers at each end. As will be apparent from the remaining views set forth below, namely, front, rear, side, perspective and bottom the specific shape and appearance of most of the surfaces and features of the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "A" hoverboard differ significantly from each other. However, there are some surfaces and features of the design of the prior art '906 patent that are closer in shape and appearance to the claimed design of the '195 patent than the design of the Gyroor "A" hoverboard. For instance as can be seen in the front and rear views below, while not in the same manner, the concavely curved recessed center portion of the top surface of the claimed design of the '195 patent and the design of the prior art '906 patent protrude upwardly from the opposing outer foot surfaces, while the corresponding center portion of the top surface of the design of the Gyroor "A" hoverboard is substantially flat and slightly recessed down below the opposing outer foot surfaces.

20

Front view '195 patent                  Rear view of '195 patent




Front and Rear view prior art '906 patent      Front and Rear view Gyroor "A"




43. Furthermore, it's noted that the wheel covers at each end of the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "A" hoverboard differ from each other as shown in the top plan view and front and rear views above as well as the side view and perspective view below. However, it's my opinion that the shape and appearance of the wheel covers in the claimed design of the '195 patent are closer to the wheel covers shown in broken lines in the design of the prior art '906 patent than the wheel covers of the design of the Gyroor "A" hoverboard. Specifically, the wheel covers shown on the claimed design of the '195 patent and the design of the prior art '906 patent are both semi-circular in shape and extend over and cover the entire wheel, while the wheel covers on the design of the Gyroor "A" hoverboard are somewhat squared off and do not extend over the entire wheel, but rather partially over the wheel.

Side view '195 patent      Side view prior art '906 patent        Side view Gyroor "A"




21

Perspective view '195 patent

Perspective view prior art '906 patent




Perspective view Gyroor "A"



44.     The front and rear surfaces of the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "A" hoverboard are all dissimilar in appearance from one and other as depicted in the front and rear views and the perspective views above. Specifically, front and rear surfaces of the claimed design of the '195 patent have a concavely curved upper portion with a narrow vertically flat surface directly below it and a convexly curved lower portion that merges with the bottom surface. The convexly curved lower portion has what appear to be horizontally elongated LED lights having a knife-like appearance at the opposing outer ends. On the contrary, the front and rear surfaces of the design of the'906 patent has a vertically flat upper portion and a convexly curved lower portion that merges with the flat bottom surface. Furthermore, the front and rear surfaces of the design of the Gyroor "A" hoverboard has a vertically flat upper portion with a central portion consisting of recessed horizontally elongated LED lights and an outwardly protruding horizontal band that extends inwardly directly below the LED lights and a convexly curved lower portion that merges with the bottom surface. Also, on the right front vertically flat upper portion of the design of the Gyroor "A" hoverboard is the word "GYROOR".

45.     The shape and appearance of the bottom surface of the claimed design of the '195 patent and the design of prior art '906 patent are somewhat similar to each other as illustrated in the bottom views below. Specifically, both the claimed design of the '195 patent and the design of

22

prior art '906 patent have opposing flat, plain outer portions and a smooth continuous concavely curved central portion which is best shown in the front and rear views above. However, the concavely curved central portion of the claimed design of the '195 patent is truncated and not a continuous rounded surface as in the design of the prior art '906 patent. Furthermore, the opposing flat outer portions of the claimed design of the '195 patent include parallel arcuate lines that extend down from the lower convexly curved portion of the front and rear surfaces. On the contrary, the bottom surface of the design of the Gyroor "A" hoverboard differs from both the claimed design of the '195 patent and the design of prior art '906 patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a slight diagonally downwardly protruding arcuate edge. In addition, the recessed central portion of the design of the Gyroor "A" hoverboard is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having six narrow longitudinal ribs.

Bottom view '195 patent          Bottom view prior art '906 patent

 

Bottom view Gyroor "A"



46.      In view of the above analysis of the claimed design of the '195 patent with the design of the Gyroor "A" hoverboard and the design of the prior art '906 patent it's my opinion that the claimed design of the '195 patent has some surfaces and features that are closer in overall shape and appearance to the design in the prior art patent '906 patent than the design of the Gyroor "A" hoverboard. It's further my opinion that the shape and appearance of the surfaces and features of the design of the Gyroor "A" hoverboard are substantial different from the claimed design of the '195 patent that an "ordinary observer", familiar with the prior art, would not be confused so

as to purchase one thinking it to be the other. Therefore, it's my opinion that the design of the Gyroor "A" hoverboard does not infringe the claimed design of the '195 patent.

### D. The '723 Patent, Prior Art '906 Patent and Gyroor "B"

Top plan view '723 patent                Top plan view prior art '906 patent



Top plan view Gyroor "B"



47.    In view of the above visual depictions of the claimed design of the '723 patent, the design of the prior art '906 patent and the design of the Gyroor "B" hoverboard it's clear that they all have the same hourglass peripheral shape as viewed in top plan. In fact, the hourglass peripheral shape of the prior art '906 patent appears to be closer to the claimed design of the '723 patent than the design of the Gyroor "B" hoverboard. Specifically, the recessed center portion of the claimed design of the '723 patent and the design of the prior art '906 patent are concavely curved, whereas the recessed center portion of the design of the Gyroor "B" hoverboard has a truncated "v" shape appearance comprising opposing diagonally straight edges that connect to a horizontally straight inner edge. In addition, the claimed design of the '723 patent, the design of the prior art '906 patent and the design of Gyroor "B" hoverboard are all comprised of the same general components, namely, opposing outer foot surfaces that are substantially flat, a recessed center portion and wheel covers at each end. As will be apparent from the remaining views set forth below, namely, front, rear, side, perspective and bottom the specific shape and appearance of the surfaces and features of the design of the prior art '906 patent are, in my opinion, closer to the claimed design of the '723 patent than the design of the Gyroor "B" hoverboard. For instance as can be seen in the front and rear views below, the concavely curved recessed center portion of the top surface of the claimed design of the '723 patent and the design of the prior art '906 patent both have a slightly

raised convex contour, while the corresponding center portion of the top surface of the design of Gyroor "B" hoverboard is substantially flat and slightly recessed down below the opposing outer foot surfaces.

Front view '723 patent



Rear view '723 patent



Front and Rear view prior art '906 patent



Front and Rear view Gyroor "B"



48.     Furthermore, it's noted that the wheel covers at each end of the claimed design of the '723 patent, the design of the prior art '906 patent and the design of the Gyroor "B" hoverboard differ from each other as shown in the top plan view and front and rear views above as well as the side view and perspective view below. However, it's my opinion that the shape and appearance of the wheel covers in the claimed design of the '723 patent are closer to the wheel covers shown in broken lines in the design of the prior art '906 patent than the wheel covers of the design of the Gyroor "B" hoverboard. Specifically, the wheel covers shown on the claimed design of the '723 patent and the design of the prior art '906 patent are both semi-circular in shape and extend over and cover the entire wheel, while the wheel covers on the design of Gyroor "B" hoverboard have opposing diagonally straight side edges a substantially flat top edge which curves outwardly but does not extend over the entire wheel, but rather partially over the wheel. In addition, the inner surface of the wheel covers on the design of Gyroor "B" hoverboard has a protruding trapezoidal shaped portion and the outwardly curved top surface includes the word "Gyroor".

Side view '723 patent         Side view prior art '906 patent         Side view the Gyroor "B"







Perspective view '723 patent                    Perspective view prior art '906 patent

                    

Perspective view of Gyroor "B"



49.     The only common feature on the top surface of the claimed design of the '723 patent and the design of the Gyroor "B" hoverboard not shown on the design of prior art patent '906 patent is the foot pads on the opposing foot surfaces. However, it is clear from the enlarged isolated view below that the foot pads of the claimed design of the '723 patent and the design of the Gyroor "B" hoverboard differ significantly in their peripheral shape as well as the decorative pattern on each.

Enlarged view of foot pads '723 patent          Enlarged view of foot pads Gyroor "B"

                    

50.     The front and rear surfaces of the claimed design of the '723 patent and the design of prior art '906 patent are substantially similar in shape and appearance as depicted in the front and rear views and the perspective views above. Specifically, both designs have a vertically flat upper portion of the front and rear surfaces and a convexly curved lower portion that merges with

the flat bottom surface. The only visual difference is the rounded parallelogram shaped LED lights at the opposing outer ends of the rear surface of the claimed design of the '723 patent and the lines on the front and rear surface of the claimed design of the '723 patent. On the contrary, while the design of the Gyroor "B" hoverboard has front and rear surfaces having a convexly curved lower portion that merges with the bottom surface as the claimed design of the '723 patent and the design of prior art '906 patent, the upper portion of the front and rear surfaces of the design of the Gyroor "B" hoverboard differs significantly from the claimed design of the '723 patent and the design of prior art '906 patent. Specifically, the upper portion of the front and rear surfaces of the Gyroor "B" hoverboard has a wide diagonally downwardly sloping portion that merges with a narrow vertically straight central portion. In addition, the front and rear surfaces of the Gyroor "B" hoverboard have elongated asymetrcally shaped LED lights.

51. The shape and appearance of the bottom surface of the claimed design of the '723 patent and the design of prior art '906 patent are virtually identical as illustrated in the bottom views below. Specifically, both the claimed design of the '723 patent and the design of prior art '906 patent have opposing flat, plain outer portions and a smooth continuous concavely curved central portion which is best shown in the front and rear views above. However, the bottom surface of the design of the Gyroor "B" hoverboard differs from both the claimed design of the '723 patent and the design of prior art '906 patent in that the opposing flat outer portions have a downwardly protruding surface having a pattern of vent holes and the recessed central portion is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having four narrow longitudinal ribs.

Bottom view '723 patent          Bottom view prior art '906 patent

 

Bottom view Gyroor "B"



52.     In view of the above analysis of the claimed design of the '723 patent with the design of the Gyroor "B" hoverboard and the design of the prior art '906 patent it is my opinion that the overall shape and appearance and identified features of the claimed design of the '723 patent are closer to the design of the prior art '906 patent than the design of the Gyroor "B" hoverboard. Furthermore, it's my opinion that the shape and appearance of the few features identified that are common to the claimed design of the '723 patent and the design of the Gyroor "B" hoverboard not found in the design of the prior art '906 are substantial different such that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Therefore, it's my opinion that the design of the Gyroor "B" hoverboard does not infringe the claimed design of the '723 patent.

### E. **The '256 Patent, Prior Art '906 Patent and Gyroor "B"**

Top plan view '256 patent                    Top plan view prior art '906 patent

 

Top plan view of Gyroor "B"



53.     In view of the above visual depictions of the claimed design of the ''256 patent, the design of the prior art '906 patent and the design of the Gyroor "B" hoverboard it's clear that they all have the same hourglass peripheral shape as viewed in top plan. In fact, the hourglass peripheral shape of the prior art '906 patent appears to be closer to the claimed design of the '256 patent than the design of the Gyroor "B" hoverboard. Specifically, the recessed center portion of the claimed design of the '723 patent and the design of the prior art '906 patent are concavely curved, whereas the recessed center portion of the design of the Gyroor "B" hoverboard has a truncated "v" shape appearance comprising opposing diagonally straight edges that connect to a horizontally straight inner edge. In addition, the claimed design of the '256 patent, the design of the prior art '906 patent

and the design of the Gyroor "B" hoverboard are all comprised of the same general components, namely, opposing outer foot surfaces that are substantially flat, a recessed center portion and wheel covers at each end. As will be apparent from the remaining views set forth below, namely, front, rear, side, perspective and bottom, the specific shape and appearance of the surfaces and features of the design of the prior art '906 patent are, in my opinion, closer to the claimed design of the '256 patent than the design of the Gyroor "B" hoverboard. For instance as can be seen in the front and rear views below, the concavely curved recessed center portion of the top surface of the claimed design of the '256 patent and the design of the prior art '906 patent both have a slightly raised convex contour, while the corresponding center portion of the top surface of the design of the Gyroor "B" hoverboard is substantially flat and slightly recessed down below the opposing outer foot surfaces.

Front view '256 patent        Rear view '256 patent

 

Front and Rear view of the '906 patent      Front and Rear view of Gyroor "B"

 

54.     Furthermore, it's noted that the wheel covers at each end of the claimed design of the '256 patent, the design of the prior art '906 patent and the design of the Gyroor "B" hoverboard differ from each other as shown in the top plan view and front and rear views above as well as the side view and perspective view below. However, it's my opinion that the shape and appearance of the wheel covers in the claimed design of the '256 patent are closer to the wheel covers shown in broken lines in the design of the prior art '906 patent than the wheel covers of the design of the Gyroor "B" hoverboard. Specifically, the wheel covers shown on the claimed design of the '256 patent and the design of the prior art '906 patent are both semi-circular in shape, while the wheel covers on the design of Gyroor "B" hoverboard have opposing diagonally straight side edges a

29

substantially flat top edge which curves outwardly. It's also noted that the wheel covers on the claimed design of the '256 patent and the design of the Gyroor "B" hoverboard do not extend over the entire wheel, but rather partially over the wheel. In addition, the inner surface of the wheel covers on the design of Gyroor "B" hoverboard has a protruding trapezoidal shaped portion and the outwardly curved top surface includes the word "Gyroor".

Side view '256 patent      Side view prior art '906 patent      Side view the Gyroor "B"

  

Perspective view '256 patent      Perspective view prior art '906 patent

 

Perspective view of Gyroor "B"



55.     The only common feature on the top surface of the claimed design of the '256 patent and the design of the Gyroor "B" hoverboard not shown on the design of prior art patent '906 patent is the foot pads on the opposing foot surfaces. However, it is clear from the enlarged isolated view below that the foot pads of the claimed design of the '256 patent and the design of the Gyroor "B" hoverboard differ significantly in their peripheral shape as well as the decorative pattern of on each.

Enlarged view of foot pads '256 patent          Enlarged view of foot pads Gyroor "B'

          

56.     The front and rear surfaces of the claimed design of the '256 patent and the design of prior art '906 patent are substantially similar in shape and appearance as depicted in the front and rear views and the perspective views above. Specifically, both designs have a vertically flat upper portion of the front and rear surfaces and a convexly curved lower portion that merges with the flat bottom surface. The only visual difference is the rounded somewhat trapezoidal shaped LED lights at the opposing outer ends of the rear surface of the claimed design of the '256 patent and the horizontal line on the front and rear surface of the claimed design of the '256 patent. On the contrary, while the design of the Gyroor "B" hoverboard has front and rear surfaces having a convexly curved lower portion that merges with the bottom surface as the claimed design of the '256 patent and the design of prior art '906 patent, the upper portion of the front and rear surfaces of the design of the Gyroor "B" hoverboard differs significantly from the claimed design of the '256 patent and the design of prior art '906 patent. Specifically, the upper portion of the front and rear surfaces of the Gyroor "B" hoverboard has a wide diagonally downwardly sloping portion

31

that merges with a narrow vertically straight central portion. In addition, the front and rear surfaces of the Gyroor "B" hoverboard has elongated asymetrcally shaped LED lights.

57.     The shape and appearance of the bottom surface of the claimed design of the '256 patent and the design of prior art '906 patent are virtually identical as illustrated in the bottom views below. Specifically, both the claimed design of the '256 patent and the design of prior art '906 patent have opposing flat, plain outer portions and a smooth continuous concavely curved central portion which is best shown in the front and rear views above. However, the bottom surface of the design of the Gyroor "B" hoverboard differs from both the claimed design of the '256 patent and the design of prior art '906 patent in that the opposing flat outer portions have a downwardly protruding surface having a pattern of vent holes and the recessed central portion is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having four narrow longitudinal ribs.

Bottom view '256 patent                    Bottom view prior art '906 patent

                    

Bottom view of Gyroor "B"



58.     In view of the above analysis of the claimed design of the '256 patent with the design of the Gyroor "B" hoverboard and the design of the prior art '906 patent it is my opinion that the overall shape and appearance and identified features of the claimed design of the '256 patent are closer to the design of the prior art '906 patent than the design of the Gyroor "B" hoverboard. Furthermore, it's my opinion that the shape and appearance of the few features identified that are common to the claimed design of the '256 patent and the design of the Gyroor "B" hoverboard not found in the design of the prior art '906 are substantial different such that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one

32

thinking it to be the other. Therefore, it's my opinion that the design of the Gyroor "B" hoverboard does not infringe the claimed design of the '256 patent.

### F. The '195 Patent, Prior Art '906 Patent and Gyroor "B"

Top plan view '195 patent

Top plan view prior art '906 patent

 

Top plan view of Gyroor "B"



59.      In view of the above visual depictions of the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "B" hoverboard it's clear that they all have the same hour glass peripheral shape as viewed in top plan. In fact, the hour glass peripheral shape of the prior art '906 patent appears to be closer to the claimed design of the '195 patent than the design of Gyroor "B" hoverboard. Specifically, the recessed center portion of the claimed design of the '195 patent and the design of the prior art '906 patent are concavely curved, whereas the recessed center portion of the design of the Gyroor "B" hoverboard has a truncated "v" shape appearance comprising opposing diagonally straight edges that connect to a horizontally straight inner edge. In addition, the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "B" hoverboard are all comprised of the same general components, namely, opposing outer foot surfaces that are substantially flat, a recessed center portion and wheel covers at each end. As will be apparent from the remaining views set forth below, namely, front, rear, side, perspective and bottom the specific shape and appearance of most of the surfaces and features of the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "B" hoverboard differ significantly from each other. However, there are some surfaces and features of the design of the prior art '906 patent that are closer in shape and appearance to the claimed design of the '195 patent than the design of the Gyroor "B" hoverboard. For instance as can be seen in the front and rear views below, while not

in the same manner, the concavely curved recessed center portion of the top surface of the claimed design of the '195 patent and the design of the prior art '906 patent protrude upwardly from the opposing outer foot surfaces, while the corresponding center portion of the top surface of the design of the Gyroor "B" hoverboard is substantially flat and slightly recessed down below the opposing outer foot surfaces.

Front view '195 patent



Rear view '195 patent



Front view prior art '906 patent



Front view Gyroor "B"



60.     Furthermore, it's noted that the wheel covers at each end of the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "B" hoverboard differ from each other as shown in the top plan view and front and rear views above as well as the side view and perspective view below. However, it's my opinion that the shape and appearance of the wheel covers in the claimed design of the '195 patent are closer to the wheel covers shown in broken lines in the design of the prior art '906 patent than the wheel covers of the design of the Gyroor "B" hoverboard. Specifically, the wheel covers shown on the claimed design of the '195 patent and the design of the prior art '906 patent are both semi-circular in shape and extend over and cover the entire wheel, while the wheel covers on the design of Gyroor "B" hoverboard have opposing diagonally straight side edges a substantially flat top edge which curves outwardly but does not extend over the entire wheel, but rather partially over the wheel. In addition, the inner surface of the wheel covers on the design of Gyroor "B" hoverboard has a protruding trapezoidal shaped portion and the outwardly curved top surface includes the word "Gyroor".

34

Side view '195 patent    Side view prior art '906 patent    Side view the Gyroor"B"

        

Perspective view '195 patent    Perspective view prior art '906 patent

    

Perspective view Gyroor "B"



61.    The front and rear surfaces of the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "B" hoverboard are all dissimilar in appearance from one and other as depicted in the front and rear views and the perspective views above. Specifically, front and rear surfaces of the claimed design of the '195 patent have a concavely curved upper portion with a narrow vertically flat surface directly below it and a convexly curved lower portion that merges with the bottom surface. The convexly curved lower portion has what appear to be horizontally elongated LED lights having a knife-like appearance at the opposing outer ends. On the contrary, the front and rear surfaces of the design of the'906 patent has a vertically flat upper portion and a convexly curved lower portion that merges with the flat bottom surface. Furthermore, while the design of the Gyroor "B" hoverboard has front and rear

35

surfaces having a convexly curved lower portion that merges with the bottom surface as the claimed design of the '195 patent and the design of prior art '906 patent, the upper portion of the front and rear surfaces of the design of the Gyroor "B" hoverboard differs significantly from the claimed design of the '195 patent and the design of prior art '906 patent. Specifically, the upper portion of the front and rear surfaces of the Gyroor "B" hoverboard has a wide diagonally downwardly sloping portion that merges with a narrow vertically straight central portion. In addition, the front and rear surfaces of the Gyroor "B" hoverboard has elongated asymetrcally shaped LED lights.

62. The shape and appearance of the bottom surface of the claimed design of the '195 patent and the design of prior art '906 patent are somewhat similar to each other as illustrated in the bottom views below. Specifically, both the claimed design of the '195 patent and the design of prior art '906 patent have opposing flat, plain outer portions and a smooth continuous concavely curved central portion which is best shown in the front and rear views above. However, the concavely curved central portion of the claimed design of the '195 patent is truncated and not a continuous rounded surface as in the design of the prior art '906 patent. Furthermore, the opposing flat outer portions of the claimed design of the '195 patent include parallel arcuate lines that extend down from the lower convexly curved portion of the front and rear surfaces. On the contrary, the bottom surface of the design of the Gyroor "B" hoverboard differs from both the claimed design of the '195 patent and the design of prior art '906 patent in that the opposing flat outer portions have a downwardly protruding surface having a pattern of vent holes and the recessed central portion is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having four narrow longitudinal ribs.

Bottom view '195 patent



Bottom view prior art '906 patent



Bottom view Gyroor "B"



63.     In view of the above analysis of the claimed design of the '195 patent with the design of the Gyroor "B" hoverboard and the design of the prior art '906 patent it's my opinion that the claimed design of the '195 patent has some surfaces and features that are closer in overall shape and appearance to the design in the prior art patent '906 patent than the design of the Gyroor "B" hoverboard. It's further my opinion that the shape and appearance of the surfaces and features of the design of the Gyroor "B" hoverboard are substantial different from the claimed design of the '195 patent that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Therefore, it's my opinion that the design of the Gyroor "B" hoverboard does not infringe the claimed design of the '195 patent.

**G. The '112 Patent, Prior Art '906 Patent and Gyroor "B"**

Top plan view '112 patent                    Top plan view prior art '906 patent

     

Top view Gyroor "B"



64.     In view of the above visual depictions of the claimed design of the '112 patent, the design of the prior art '906 patent and the design of the Gyroor "B" hoverboard it's clear that they all have the same hourglass peripheral shape as viewed in top plan. In fact, the hourglass peripheral shape of the prior art '906 patent appears to be closer to the claimed design of the '112 patent than the design of Gyroor "B" hoverboard. Specifically, the recessed center portion of the claimed design of the '112 patent and the design of the prior art '906 patent are concavely curved, whereas the recessed center portion of the design of the Gyroor "B" hoverboard has a truncated "v" shape appearance comprising opposing diagonally straight edges that connect to a horizontally straight inner edge. In addition, the claimed design of the '112 patent, the design of the prior art '906 patent and the design of the Gyroor "B" hoverboard are all comprised of the same general components,

namely, opposing outer foot surfaces that are substantially flat, a recessed center portion and wheel covers at each end. As will be apparent from the remaining views set forth below, namely, front, rear, side, perspective and bottom the specific shape and appearance of most of the surfaces and features of the claimed design of the '112 patent, the design of the prior art '906 patent and the design of the Gyroor "B" hoverboard differ significantly from each other. However, there are some surfaces and features of the design of the prior art '906 patent that are closer in shape and appearance to the claimed design of the '112 patent than the design of the Gyroor "B" hoverboard. For instance as can be seen in the front and rear views below, the concavely curved recessed center portion of the top surface of the claimed design of the '112 patent and the design of the prior art '906 patent both have a slightly raised convex contour, while the corresponding center portion of the top surface of the design of the Gyroor "B" hoverboard is substantially flat and slightly recessed down below the opposing outer foot surfaces.

Front view '112 patent



Rear view '112 patent



Front view prior art '906 patent



Front view Gyroor "B"



65.    Furthermore, it's noted that the wheel covers at each end of the claimed design of the '112 patent, the design of the prior art '906 patent and the design of the Gyroor "B" hoverboard differ from each other as shown in the top plan view and front and rear views above as well as the side view and perspective views below. However, it's my opinion that the shape and appearance of the wheel covers in the claimed design of the '112 patent are closer to the wheel covers shown in broken lines in the design of the prior art '906 patent than the wheel covers of the design of the Gyroor "B" hoverboard. Specifically, the wheel covers shown on the claimed design of the '112 patent and the design of the prior art '906 patent are both semi-circular in shape and extend over and cover the entire wheel, while the wheel covers on the design of Gyroor "B" hoverboard have opposing diagonally straight side edges a substantially flat top edge which curves outwardly but

do not extend over the entire wheel, but rather partially over the wheel. In addition, the inner surface of the wheel covers on the design of Gyroor "B" hoverboard has a protruding trapezoidal shaped portion and the outwardly curved top surface includes the word "Gyroor".

Side view '112 patent      Side view prior art '906 patent      Side view Gyroor "B"

  

Perspective view '112 patent          Perspective view prior art '906 patent

 

Perspective view Gyroor"B"



66.      The front and rear surfaces of the claimed design of the '112 patent, the design of the prior art '906 patent and the design of the Gyroor "B" hoverboard are all dissimilar in appearance from one and other as depicted in the front and rear views and the perspective views above. Specifically, the front and rear surfaces of the claimed design of the '112 patent have an undulated upper portion with opposing arcuate elongated LED lights and a convexly curved lower portion that merges with the bottom surface. On the contrary, the front and rear surfaces of the design of the'906 patent has a vertically flat upper portion and a convexly curved lower portion that merges with the bottom surface. Furthermore, while the design of the Gyroor "B" hoverboard has front and rear surfaces having a convexly curved lower portion that merges with the bottom

surface as the claimed design of the '112 patent and the design of prior art '906 patent, the upper portion of the front and rear surfaces of the design of the Gyroor "B" hoverboard differs significantly from the claimed design of the '112 patent and the design of prior art '906 patent. Specifically, the upper portion of the front and rear surfaces of the Gyroor "B" hoverboard has a wide diagonally downwardly sloping portion that merges with a narrow vertically straight central portion. In addition, the front and rear surfaces of the Gyroor "B" hoverboard has elongated asymetrcally shaped LED lights.

67.     The shape and appearance of the bottom surface of the claimed design of the '112 patent and the design of prior art '906 patent are substantially identical as illustrated in the bottom views below except that the opposing outer portions of the claimed design of the '112 patent have a slight upward curvature while the design of the prior art '906 patent has opposing flat, plain outer portions. However, both the claimed design of the '112 patent and the design of the prior art '906 patent have a smooth continuous concavely curved central portion which is best shown in the front and rear views above. On the other hand, the bottom surface of the design of the Gyroor "B" hoverboard differs from both the claimed design of the '112 patent and the design of prior art '906 patent in that the opposing flat outer portions have a downwardly protruding surface having a pattern of vent holes and the recessed central portion is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having four narrow longitudinal ribs.

Bottom view '112 patent                 Bottom view prior art '906 patent

 

Bottom view Gyroor"B"



68.     In view of the above analysis of the claimed design of the '112 patent with the design of the Gyroor "B" hoverboard and the design of the prior art '906 patent it's my opinion

that the claimed design of the '112 patent has some surfaces and features that are closer in overall shape and appearance to the design in the prior art patent '906 patent than the design of the Gyroor "B" hoverboard. It's further my opinion that the shape and appearance of the surfaces and features of the design of the Gyroor "B" hoverboard are substantial different from the claimed design of the '112 patent that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Therefore, it's my opinion that the design of the Gyroor "B" hoverboard does not infringe the claimed design of the '112 patent.

### H.  The '723 Patent, Prior Art '906 Patent and Gyroor "C"

Top plan view '723 patent                    Top plan view prior art '906 patent




Top plan view Gyroor "C"



69.     In view of the above visual depictions of the claimed design of the '723 patent, the design of the prior art '906 patent and the design of the Gyroor "C" hoverboard it's clear that they all have the same hourglass peripheral shape as viewed in top plan. Furthermore, the claimed design of the '723 patent, the design of the prior art '906 patent and the design of the Gyroor "C" hoverboard are all comprised of the same general components, namely, opposing outer foot surfaces that are substantially flat, a concavely curved recessed center portion and wheel covers at each end. As will be apparent from the remaining views set forth below, namely, front, rear, side, perspective and bottom the specific shape and appearance of the surfaces and features of the design of the prior art '906 patent are, in my opinion, closer to the claimed design of the '723 patent than the design of the Gyroor "C" hoverboard. For instance as can be seen in the front and rear views below, the concavely curved recessed center portion of the top surface of the claimed design of the '723 patent and the design of the prior art '906 patent both have a slightly raised convex contour,

while the corresponding center portion of the top surface of the design of the Gyroor "C" hoverboard is substantially flat and slightly recessed down below the opposing outer foot surfaces.

Front view '723 patent



Rear view '723 patent



Front and Rear view prior art '906 patent



Front and Rear view Gyroor "C"



70.     Furthermore, it's noted that the wheel covers at each end of the claimed design of the '723 patent, the design of the prior art '906 patent and the design of the Gyroor "C" hoverboard are all semi-circular in shape. However, the wheel covers of the '723 patent, the design of the prior art '906 patent extend over and cover the entire wheel, while the wheel covers on the design of Gyroor "C" hoverboard do not extend down over the wheel.

Side view '723 patent        Side view prior art '906 patent          Side view the Gyroor "C"





Perspective view '723 patent          Perspective view prior art '906 patent




Perspective view of Gyroor "C"



42

71.    The only common feature on the top surface of the claimed design of the '723 patent and the design of the Gyroor "C" hoverboard not shown on the design of prior art patent '906 patent is the foot pads on the opposing foot surfaces. However, it is clear from the enlarged isolated view below that the foot pads of the claimed design of the '723 patent and the design of the Gyroor "C" hoverboard differ significantly in their peripheral shape as well as the decorative pattern of on each.

Enlarged view of foot pads 723 patent          Enlarged view of foot pads Gyroor 'C

          

72.    The front and rear surfaces of the claimed design of the '723 patent and the design of prior art '906 patent are substantially similar in shape and appearance as depicted in the front and rear views and the perspective views above. Specifically, both designs have a vertically flat upper portion of the front and rear surfaces and a convexly curved lower portion that merges with the flat bottom surface. The only visual difference is the rounded parallelogram shaped LED lights at the opposing outer ends of the rear surface of the claimed design of the '723 patent and the lines on the front and rear surface of the claimed design of the '723 patent. On the contrary, while the design of the Gyroor "C" hoverboard has front and rear surfaces having a vertically flat upper portion and a convexly curved lower portion that merges with the bottom surface as the claimed design of the '723 patent and the design of prior art '906 patent, the central portion of the front and rear surfaces of the design of the Gyroor "C" hoverboard differs significantly from the claimed design of the '723 patent and the design of prior art '906 patent. Specifically, directly below the vertically flat upper portion of the front and rear surfaces are recessed horizontally elongated LED lights and below the LED lights is an outwardly protruding horizontal band that extends inwardly and merges with the recessed central portion.

43

73.    The shape and appearance of the bottom surface of the claimed design of the '723 patent and the design of prior art '906 patent are virtually identical as illustrated in the bottom views below. Specifically, both the claimed design of the '723 patent and the design of prior art '906 patent have opposing flat, plain outer portions and a smooth continuous concavely curved central portion which is best shown in the front and rear views above. However, the bottom surface of the design of the Gyroor "C" hoverboard differs from both the claimed design of the '723 patent and the design of prior art '906 patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a slight diagonally downwardly protruding arcuate edge. In addition, the recessed central portion of the design of the Gyroor "C" hoverboard is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having six narrow longitudinal ribs.

Bottom view '723 patent                    Bottom view prior art '906 patent

 

Bottom view of Gyroor "C"



74.    In view of the above analysis of the claimed design of the '723 patent with the design of the Gyroor "C: hoverboard and the design of the prior art '906 patent it is my opinion that the overall shape and appearance and identified features of the claimed design of the '723 patent are closer to the design of the prior art '906 patent than the design of the Gyroor "C: hoverboard. Furthermore, it's my opinion that the shape and appearance of the few features identified that are common to the claimed design of the '723 patent and the design of the Gyroor "C: hoverboard not found in the design of the prior art '906 are substantial different such that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Therefore, it's my opinion that the design of the Gyroor "C: hoverboard does not infringe the claimed design of the '723 patent.

### I.  The '256 Patent, Prior Art '906 Patent and Gyroor "C"

Top plan view '256 patent                    Top plan view prior art '906 patent



Top plan view of Gyroor "C"



75.     In view of the above visual depictions of the claimed design of the ''256 patent, the design of the prior art '906 patent and the design of the Gyroor "C" hoverboard it's clear that they all have the same hourglass peripheral shape as viewed in top plan. Furthermore, the claimed design of the '256 patent, the design of the prior art '906 patent and the design of the Gyroor "C" hoverboard are all comprised of the same general components, namely, opposing outer foot surfaces that are substantially flat, a concavely curved recessed center portion and wheel covers at each end. As will be apparent from the remaining views set forth below, namely, front, rear, side, perspective and bottom, the specific shape and appearance of the surfaces and features of the design of the prior art '906 patent are, in my opinion, closer to the claimed design of the '256 patent than the design of the Gyroor "C" hoverboard. For instance as can be seen in the front and rear views below, the concavely curved recessed center portion of the top surface of the claimed design of the '256 patent and the design of the prior art '906 patent both have a slightly raised convex contour, while the corresponding center portion of the top surface of the design of the Gyroor "C" hoverboard is substantially flat and slightly recessed down below the opposing outer foot surfaces.

Front view '256 patent          Rear view '256 patent




Front and Rear view prior art '906 patent          Front and Rear view Gyroor "C"




76.     Furthermore, it's noted that the wheel covers at each end of the claimed design of the '256 patent, the design of the prior art '906 patent and the design of the Gyroor "C" hoverboard are all semi-circular in shape. However, the wheel covers of the design of Gyroor "C" hoverboard are wider than those of the design of the '256 patent.

Side view '256 patent     Side view prior art '906 patent     Side view the Gyroor "C"





Perspective view '256 patent          Perspective view prior art '906 patent




Perspective view Gyroor "C"



77.     The only common feature on the top surface of the claimed design of the '256 patent and the design of the Gyroor "C" hoverboard not shown on the design of prior art patent '906 patent is the foot pads on the opposing foot surfaces. However, it is clear from the enlarged isolated view below that the foot pads of the claimed design of the '256 patent and the design of the Gyroor "C" hoverboard differ significantly in their peripheral shape as well as the decorative pattern of on each.

Enlarged view of foot pads 256 patent                    Enlarged view of foot pads Gyroor 'C




78.     The front and rear surfaces of the claimed design of the '256 patent and the design of prior art '906 patent are substantially similar in shape and appearance as depicted in the front and rear views and the perspective views above. Specifically, both designs have a vertically flat upper portion of the front and rear surfaces and a convexly curved lower portion that merges with the flat bottom surface. The only visual difference is the rounded somewhat trapezoidal shaped LED lights at the opposing outer ends of the rear surface of the claimed design of the '256 patent and the horizontal line on the front and rear surface of the claimed design of the '256 patent. On the contrary, while the design of the Gyroor "C" hoverboard has front and rear surfaces having a vertically flat upper portion and a convexly curved lower portion that merges with the bottom surface as the claimed design of the '723 patent and the design of prior art '906 patent, the central portion of the front and rear surfaces of the design of the Gyroor "C" hoverboard differs significantly from the claimed design of the '256 patent and the design of prior art '906 patent. Specifically, directly below the vertically flat upper portion of the front and rear surfaces are recessed horizontally elongated LED lights and below the LED lights is an outwardly protruding horizontal band that extends inwardly and merges with the recessed central portion.

79.     The shape and appearance of the bottom surface of the claimed design of the '256 patent and the design of prior art '906 patent are virtually identical as illustrated in the bottom views below. Specifically, both the claimed design of the '256 patent and the design of prior art '906 patent have opposing flat, plain outer portions and a smooth continuous concavely curved central portion which is best shown in the front and rear views above. However, the bottom surface of the design of the Gyroor "C" hoverboard differs from both the claimed design of the '256 patent and the design of prior art '906 patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a slight diagonally downwardly protruding arcuate edge. In addition, the recessed central portion of the design of the Gyroor "C" hoverboard is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having six narrow longitudinal ribs.

Bottom view '256 patent                Bottom view prior art '906 patent

                

Bottom view Gyroor "C"



80.     In view of the above analysis of the claimed design of the '256 patent with the design of the Gyroor "C" hoverboard and the design of the prior art '906 patent it is my opinion that the overall shape and appearance and identified features of the claimed design of the '256 patent are closer to the design of the prior art '906 patent than the design of the Gyroor "C" hoverboard. Furthermore, it's my opinion that the shape and appearance of the few features identified that are common to the claimed design of the '256 patent and the design of the Gyroor "C" hoverboard not found in the design of the prior art '906 are substantial different such that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Therefore, it's my opinion that the design of the Gyroor "C" hoverboard does not infringe the claimed design of the '256 patent.

### J. The '195 Patent, Prior Art '906 Patent and Gyroor "C"

Top plan view '195 patent

Top plan view prior art '906 patent




Top plan view Gyroor "C"



81.     In view of the above visual depictions of the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "C" hoverboard it's clear that they all have the same hourglass peripheral shape as viewed in top plan. Furthermore, the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "C" hoverboard are all comprised of the same general components, namely, opposing outer foot surfaces that are substantially flat, a concavely curved recessed center portion and wheel covers at each end. As will be apparent from the remaining views set forth below, namely, front, rear, side, perspective and bottom the specific shape and appearance of most of the surfaces and features of the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "C" hoverboard differ significantly from each other. However, there are some surfaces and features of the design of the prior art '906 patent that are closer in shape and appearance to the claimed design of the '195 patent than the design of the Gyroor "C" hoverboard. For instance as can be seen in the front and rear views below, while not in the same manner, the concavely curved recessed center portion of the top surface of the claimed design of the '195 patent and the design of the prior art '906 patent protrude upwardly from the opposing outer foot surfaces, while the corresponding center portion of the top surface of the design of the Gyroor "C" hoverboard is substantially flat and slightly recessed down below the opposing outer foot surfaces.

Front view '195 patent



Rear view '195 patent



Front and Rear view prior art '906 patent



Front and Rear view Gyroor "C"



82.     Furthermore, it's noted that the wheel covers at each end of the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "C" hoverboard are all semi-circular in shape. However, the wheel covers of the '195 patent, the design of the prior art '906 patent extend over and cover the entire wheel, while the wheel covers on the design of Gyroor "C" hoverboard do not extend down over the wheel.

Side view '195 patent     Side view prior art '906 patent     Side view the Gyroor "C"

  

Perspective view '195 patent     Perspective view prior art '906 patent



Perspective view Gyroor "C"



50

83.     The front and rear surfaces of the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "C" hoverboard are all dissimilar in appearance from one and other as depicted in the front and rear views and the perspective views above. Specifically, the front and rear surfaces of the claimed design of the '195 patent have a concavely curved upper portion with a narrow vertically flat surface directly below it and a convexly curved lower portion that merges with the bottom surface. The convexly curved lower portion has what appear to be horizontally elongated LED lights having a knife-like appearance at the opposing outer ends. On the contrary, the front and rear surfaces of the design of the '906 patent has a vertically flat upper portion and a convexly curved lower portion that merges with the flat bottom surface. Furthermore, the front and rear surfaces of the design of the Gyroor "C" hoverboard has a vertically flat upper portion with a central portion consisting of recessed horizontally elongated LED lights and an outwardly protruding horizontal band that extends inwardly directly below the LED lights and a convexly curved lower portion that merges with the bottom surface.

84.     The shape and appearance of the bottom surface of the claimed design of the '195 patent and the design of prior art '906 patent are somewhat similar to each other as illustrated in the bottom views below. Specifically, both the claimed design of the '195 patent and the design of prior art '906 patent have opposing flat, plain outer portions and a smooth continuous concavely curved central portion which is best shown in the front and rear views above. However, the concavely curved central portion of the claimed design of the '195 patent is truncated and not a continuous rounded surface as in the design of the prior art '906 patent. Furthermore, the opposing flat outer portions of the claimed design of the '195 patent include parallel arcuate lines that extend down from the lower convexly curved portion of the front and rear surfaces. On the contrary, the bottom surface of the design of the Gyroor "C" hoverboard differs from both the claimed design of the '195 patent and the design of prior art '906 patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a slight diagonally downwardly protruding arcuate edge. In addition, the recessed central portion of the design of the Gyroor "C" hoverboard is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having six narrow longitudinal ribs.

Bottom view '195 patent


Bottom view prior art '906 patent






Bottom view Gyroor "C"



85.　　In view of the above analysis of the claimed design of the '195 patent with the design of the Gyroor "C" hoverboard and the design of the prior art '906 patent it's my opinion that the claimed design of the '195 patent has some surfaces and features that are closer in overall shape and appearance to the design in the prior art patent '906 patent than the design of the Gyroor "C" hoverboard. It's further my opinion that the shape and appearance of the surfaces and features of the design of the Gyroor "C" hoverboard are substantial different from the claimed design of the '195 patent that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Therefore, it's my opinion that the design of the Gyroor "C" hoverboard does not infringe the claimed design of the '195 patent.

**K. The '723 Patent, Prior Art '906 Patent and Gyroor "D"**

Top plan view '723 patent


Top plan view prior art '906 patent





Top plan view Gyroor"D"



86.     In view of the above visual depictions of the claimed design of the '723 patent, the design of the prior art '906 patent and the design of the Gyroor "D" hoverboard it's clear that they all have the same hourglass peripheral shape as viewed in top plan. In fact, the hourglass peripheral shape of the prior art '906 patent appears to be closer to the claimed design of the '723 patent than the design of the Gyroor "D" hoverboard. Specifically, the recessed center portion of the claimed design of the '723 patent and the design of the prior art '906 patent are concavely curved, whereas the recessed center portion of the design of the Gyroor "D" hoverboard has a truncated "v" shape appearance comprising opposing diagonally straight edges that connect to a horizontally straight inner edge. In addition, the claimed design of the '723 patent, the design of the prior art '906 patent and the design of Gyroor "D" hoverboard are all comprised of the same general components, namely, opposing outer foot surfaces that are substantially flat, a recessed center portion and wheel covers at each end. As will be apparent from the remaining views set forth below, namely, front, rear, side, perspective and bottom the specific shape and appearance of the surfaces and features of the design of the prior art '906 patent are, in my opinion, closer to the claimed design of the '723 patent than the design of the Gyroor "D" hoverboard. For instance as can be seen in the front and rear views below, the concavely curved recessed center portion of the top surface of the claimed design of the '723 patent and the design of the prior art '906 patent both have a slightly raised convex contour, while the corresponding center portion of the top surface of the design of the Gyroor "D" hoverboard is slightly recessed down below the opposing outer foot surfaces and has a pattern of longitudinal ribs that extend down onto the front and rear surfaces.

Front view '723 patent



Rear view '723 patent



Front and Rear view prior art '906 patent



Front and Rear view Gyroor "D"



87.     Furthermore, it's noted that the wheel covers at each end of the claimed design of the '723 patent, the design of the prior art '906 patent and the design of the Gyroor "D" hoverboard differ from each other as shown in the top plan view and front and rear views above as well as the side view and perspective view below. However, it's my opinion that the shape and appearance of the wheel covers in the claimed design of the '723 patent are closer to the wheel covers shown in broken lines in the design of the prior art '906 patent than the wheel covers of the design of the Gyroor "D" hoverboard. Specifically, the wheel covers shown on the claimed design of the '723 patent and the design of the prior art '906 patent are both semi-circular in shape and extend over and cover the entire wheel, while the wheel covers on the design of Gyroor "D" hoverboard have opposing diagonally straight side edges a substantially flat top edge which curves outwardly but does not extend over the entire wheel.

| Side view '723 patent | Side view prior art '906 patent | Side view the Gyroor "D" |
|---|---|---|

 

| Perspective view '723 patent | Perspective view prior art '906 patent |
|---|---|

 

Perspective view Gyroor "D"



88.     The only common feature on the top surface of the claimed design of the '723 patent and the design of the Gyroor "D" hoverboard not shown on the design of prior art patent '906 patent is the foot pads on the opposing foot surfaces. However, it is clear from the enlarged isolated view below that the foot pads of the claimed design of the '723 patent and the design of the Gyroor "D" hoverboard differ significantly in their peripheral shape as well as the decorative pattern of on each.

Enlarged view of foot pads '723 patent                 \Enlarged view of foot pads Gyroor "D"

        

89.     The front and rear surfaces of the claimed design of the '723 patent and the design of prior art '906 patent are substantially similar in shape and appearance as depicted in the front and rear views and the perspective views above. Specifically, both designs have a vertically flat upper portion of the front and rear surfaces and a convexly curved lower portion that merges with the flat bottom surface. The only visual difference is the rounded parallelogram shaped LED lights at the opposing outer ends of the rear surface of the claimed design of the '723 patent and the lines on the front and rear surface of the claimed design of the '723 patent. On the contrary, while the design of the Gyroor "D" hoverboard has front and rear surfaces having a vertically flat upper portion and a convexly curved lower portion that merges with the bottom surface as the claimed design of the '723 patent and the design of prior art '906 patent, the central portion of the front and rear surfaces of the design of the Gyroor "D" hoverboard differs significantly from the claimed design of the '723 patent and the design of prior art '906 patent as illustrated in the enlarged partial view below. In addition, the recessed center portion of the front and rear surfaces of the Gyroor "D" hoverboard has spaced vertical ribs, and the right front vertically flat upper portion includes the word "GYROOR".

Enlarged Partial View Gyroor "D"



90.    The shape and appearance of the bottom surface of the claimed design of the '723 patent and the design of prior art '906 patent are virtually identical as illustrated in the bottom views below. Specifically, both the claimed design of the '723 patent and the design of prior art '906 patent have opposing flat, plain outer portions and a smooth continuous concavely curved central portion which is best shown in the front and rear views above. However, the bottom surface of the design of the Gyroor "D" hoverboard differs from both the claimed design of the '723 patent and the design of prior art '906 patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a diagonally downwardly protruding edge. In addition, the recessed central portion of the design of the Gyroor "D" hoverboard has a pattern of longitudinal ribs that extend down from the front and rear surfaces.



Bottom view '723 patent                    Bottom view prior art '906 patent

    

Bottom view Gyroor "D"



91.    In view of the above analysis of the claimed design of the '723 patent with the design of the Gyroor "D" hoverboard and the design of the prior art '906 patent it is my opinion that the overall shape and appearance and identified features of the claimed design of the '723 patent are closer to the design of the prior art '906 patent than the design of the Gyroor "D" hoverboard. Furthermore, it's my opinion that the shape and appearance of the few features identified that are common to the claimed design of the '723 patent and the design of the Gyroor

"D" hoverboard not found in the design of the prior art '906 are substantial different such that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Therefore, it's my opinion that the design of the Gyroor "D" hoverboard does not infringe the claimed design of the '723 patent.

### L. The '256 Patent, Prior Art '906 Patent and Gyroor "D"

Top plan view '256 patent

Top plan view prior art '906 patent

 

Top plan view Gyroor"D"



92.     In view of the above visual depictions of the claimed design of the ''256 patent, the design of the prior art '906 patent and the design of the Gyroor "D" hoverboard it's clear that they all have the same hourglass peripheral shape as viewed in top plan. In fact, the hourglass peripheral shape of the prior art '906 patent appears to be closer to the claimed design of the '256 patent than the design of the Gyroor "D" hoverboard. Specifically, the recessed center portion of the claimed design of the '256 patent and the design of the prior art '906 patent are concavely curved, whereas the recessed center portion of the design of the Gyroor "D" hoverboard has a truncated "v" shape appearance comprising opposing diagonally straight edges that connect to a horizontally straight inner edge. In addition, the claimed design of the '256 patent, the design of the prior art '906 patent and the design of the Gyroor "D" hoverboard are all comprised of the same general components, namely, opposing outer foot surfaces that are substantially flat, a recessed center portion and wheel covers at each end. As will be apparent from the remaining views set forth below, namely, front, rear, side, perspective and bottom, the specific shape and appearance of the surfaces and features

of the design of the prior art '906 patent are, in my opinion, closer to the claimed design of the '256 patent than the design of the Gyroor "D" hoverboard. For instance as can be seen in the front and rear views below, the concavely curved recessed center portion of the top surface of the claimed design of the '256 patent and the design of the prior art '906 patent both have a slightly raised convex contour, while the corresponding center portion of the top surface of the design of the Gyroor "D" hoverboard is slightly recessed down below the opposing outer foot surfaces and has a pattern of longitudinal ribs that extend down onto the front and rear surfaces.

Front view '256 patent

Rear view '256 patent





Front and Rear view prior art '906 patent

Front and Rear view Gyroor "D"





93.     Furthermore, it's noted that the wheel covers at each end of the claimed design of the '256 patent, the design of the prior art '906 patent and the design of the Gyroor "D" hoverboard differ from each other as shown in the top plan view and front and rear views above as well as the side view and perspective view below. However, it's my opinion that the shape and appearance of the wheel covers in the claimed design of the '256 patent are closer to the wheel covers shown in broken lines in the design of the prior art '906 patent than the wheel covers of the design of the Gyroor "D" hoverboard. Specifically, the wheel covers shown on the claimed design of the '256 patent and the design of the prior art '906 patent are both semi-circular in shape, while the wheel covers on the design of Gyroor "D" hoverboard have opposing diagonally straight side edges a substantially flat top edge which curves outwardly. It's also noted that the wheel covers on the claimed design of the '256 patent and the design of the Gyroor "D" hoverboard do not extend over the entire wheel.

Side view '256 patent    Side view prior art '906 patent    Side view the Gyroor "D"

  

Perspective view '256 patent          Perspective view prior art '906 patent

 

Perspective view Gyroor "D"



94.    The only common feature on the top surface of the claimed design of the '256 patent and the design of the Gyroor "D" hoverboard not shown on the design of prior art patent '906 patent is the foot pads on the opposing foot surfaces. However, it is clear from the enlarged isolated view below that the foot pads of the claimed design of the '723 patent and the design of the Gyroor

"D" hoverboard differ significantly in their peripheral shape as well as the decorative pattern of on each.

Enlarged view of foot pads '256 patent                    Enlarged view of foot pads Gyroor "D"

        

95.     The front and rear surfaces of the claimed design of the '256 patent and the design of prior art '906 patent are substantially similar in shape and appearance as depicted in the front and rear views and the perspective views above. Specifically, both designs have a vertically flat upper portion of the front and rear surfaces and a convexly curved lower portion that merges with the flat bottom surface. The only visual difference is the rounded somewhat trapezoidal shaped LED lights at the opposing outer ends of the rear surface of the claimed design of the '256 patent and the horizontal line on the front and rear surface of the claimed design of the '256 patent. On the contrary, while the design of the Gyroor "D" hoverboard has front and rear surfaces having a vertically flat upper portion and a convexly curved lower portion that merges with the bottom surface as the claimed design of the '256 patent and the design of prior art '906 patent, the central portion of the front and rear surfaces of the design of the Gyroor "D" hoverboard differs significantly from the claimed design of the '256 patent and the design of prior art '906 patent as illustrated in the enlarged partial view below.

Enlarged Partial View Gyroor "D"



In addition, the recessed center portion of the front and rear surfaces of the Gyroor "D" hoverboard has spaced vertical ribs, and the right front vertically flat upper portion includes the word "GYROOR".

96.     The shape and appearance of the bottom surface of the claimed design of the '256 patent and the design of prior art '906 patent are virtually identical as illustrated in the bottom views below. Specifically, both the claimed design of the '256 patent and the design of prior art '906 patent have opposing flat, plain outer portions and a smooth continuous concavely curved central portion which is best shown in the front and rear views above. However, the bottom surface of the design of the Gyroor "D" hoverboard differs from both the claimed design of the '256 patent and the design of prior art '906 patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a diagonally downwardly protruding edge. In addition, the recessed central portion of the design of the Gyroor "D" hoverboard has a pattern of longitudinal ribs that extend down from the front and rear surfaces.

Bottom view '256 patent                    Bottom view prior art '906 patent

 

Bottom view Gyroor "D"



97.     In view of the above analysis of the claimed design of the '256 patent with the design of the Gyroor "D" hoverboard and the design of the prior art '906 patent it is my opinion that the overall shape and appearance and identified features of the claimed design of the '256 patent are closer to the design of the prior art '906 patent than the design of the Gyroor "D" hoverboard. Furthermore, it's my opinion that the shape and appearance of the few features identified that are common to the claimed design of the '256 patent and the design of the Gyroor "D" hoverboard not found in the design of the prior art '906 are substantial different such that an

"ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Therefore, it's my opinion that the design of the Gyroor "D" hoverboard does not infringe the claimed design of the '256 patent.

### M. The '195 Patent, Prior Art '906 Patent and Gyroor "D"

Top plan view '195 patent          Top plan view prior art '906 patent




Top plan view Gyroor "D"



98.      In view of the above visual depictions of the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "D" hoverboard it's clear that they all have the same hourglass peripheral shape as viewed in top plan. In fact, the hourglass peripheral shape of the prior art '906 patent appears to be closer to the claimed design of the '195 patent than the design of Gyroor "D" hoverboard. Specifically, the recessed center portion of the claimed design of the '195 patent and the design of the prior art '906 patent are concavely curved, whereas the recessed center portion of the design of the Gyroor "D" hoverboard has a truncated "v" shape appearance comprising opposing diagonally straight edges that connect to a horizontally straight inner edge. In addition, the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "D" hoverboard are all comprised of the same general components, namely, opposing outer foot surfaces that are substantially flat, a recessed center portion and wheel covers at each end. As will be apparent from the remaining views set forth below, namely, front, rear, side, perspective and bottom the specific shape and appearance of most of the surfaces and features of the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "D" hoverboard differ significantly from each other. However, there are some

surfaces and features of the design of the prior art '906 patent that are closer in shape and appearance to the claimed design of the '195 patent than the design of the Gyroor "D" hoverboard. For instance as can be seen in the front and rear views below, while not in the same manner, the concavely curved recessed center portion of the top surface of the claimed design of the '195 patent and the design of the prior art '906 patent protrude upwardly from the opposing outer foot surfaces, while the corresponding center portion of the top surface of the design of the Gyroor "D" hoverboard is slightly recessed down below the opposing outer foot surfaces and has a pattern of longitudinal ribs that extend down onto the front and rear surfaces.

Front view '195 patent



Rear view '195 patent



Front and Rear view prior art '906 patent



Front and Rear view Gyroor "D"



99.     Furthermore, it's noted that the wheel covers at each end of the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "D" hoverboard differ from each other as shown in the top plan view and front and rear views above as well as the side view and perspective view below. However, it's my opinion that the shape and appearance of the wheel covers in the claimed design of the '195 patent are closer to the wheel covers shown in broken lines in the design of the prior art '906 patent than the wheel covers of the design of the Gyroor "D" hoverboard. Specifically, the wheel covers shown on the claimed design of the '195 patent and the design of the prior art '906 patent are both semi-circular in shape and extend over and cover the entire wheel, while the wheel covers on the design of Gyroor "D" hoverboard have opposing diagonally straight side edges a substantially flat top edge which curves outwardly but does not extend over the entire wheel.

Side view '195 patent    Side view prior art '906 patent    Side view the Gyroor "D"

  

Perspective view '195 patent    Perspective view prior art '906 patent

 

Perspective view Gyroor "D"



100.     The front and rear surfaces of the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "D" hoverboard are all dissimilar in appearance from one and other as depicted in the front and rear views and the perspective views above. Specifically, front and rear surfaces of the claimed design of the '195 patent have a concavely curved upper portion with a narrow vertically flat surface directly below it and a convexly curved lower portion that merges with the bottom surface. The convexly curved lower

portion has what appear to be horizontally elongated LED lights having a knife-like appearance at the opposing outer ends. On the contrary, the front and rear surfaces of the design of the '906 patent has a vertically flat upper portion and a convexly curved lower portion that merges with the flat bottom surface. Furthermore, the Gyroor "D" hoverboard has front and rear surfaces having a vertically flat upper portion and a convexly curved lower portion that merges with the bottom surface as the design of prior art '906 patent. However, the central portion of the front and rear surfaces of the design of the Gyroor "D" hoverboard differs significantly from the claimed design of the '195 patent and the design of prior art '906 patent as illustrated in the enlarged partial view below.

Enlarged Partial View Gyroor "D"



In addition, the recessed center portion of the front and rear surfaces of the Gyroor "D" hoverboard has spaced vertical ribs, and the right front vertically flat upper portion includes the word "GYROOR".

101.    The shape and appearance of the bottom surface of the claimed design of the '195 patent and the design of prior art '906 patent are somewhat similar to each other as illustrated in the bottom views below. Specifically, both the claimed design of the '195 patent and the design of prior art '906 patent have opposing flat, plain outer portions and a smooth continuous concavely curved central portion which is best shown in the front and rear views above. However, the concavely curved central portion of the claimed design of the '195 patent is truncated and not a continuous rounded surface as in the design of the prior art '906 patent. Furthermore, the opposing flat outer portions of the claimed design of the '195 patent include parallel arcuate lines that extend down from the lower convexly curved portion of the front and rear surfaces. On the contrary, the bottom surface of the design of the Gyroor "D" hoverboard differs from both the claimed design of the '195 patent and the design of prior art '906 patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a diagonally downwardly protruding edge. In addition, the recessed central portion of the design of the Gyroor "D" hoverboard has a pattern of longitudinal ribs that extend down from the front and rear surfaces.

Bottom view '195 patent
Bottom view prior art '906 patent



Bottom view Gyroor "D"



102.   In view of the above analysis of the claimed design of the '195 patent with the design of the Gyroor "D" hoverboard and the design of the prior art '906 patent it's my opinion that the claimed design of the '195 patent has some surfaces and features that are closer in overall shape and appearance to the design in the prior art patent '906 patent than the design of the Gyroor "D" hoverboard. It's further my opinion that the shape and appearance of the surfaces and features of the design of the Gyroor "D" hoverboard are substantial different from the claimed design of the '195 patent that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Therefore, it's my opinion that the design of the Gyroor "D" hoverboard does not infringe the claimed design of the '195 patent.

**N.   The '112 Patent, Prior Art '906 Patent and Gyroor "D"**

Top plan view '112 patent
Top plan view of prior art '906 patent



Top view Gyroor "D"



103.     In view of the above visual depictions of the claimed design of the '112 patent, the design of the prior art '906 patent and the design of the Gyroor "D" hoverboard it's clear that they all have the same hourglass peripheral shape as viewed in top plan. In fact, the hourglass peripheral shape of the prior art '906 patent appears to be closer to the claimed design of the '112 patent than the design of Gyroor "D" hoverboard. Specifically, the recessed center portion of the claimed design of the '112 patent and the design of the prior art '906 patent are concavely curved, whereas the recessed center portion of the design of the Gyroor "D" hoverboard has a truncated "v" shape appearance comprising opposing diagonally straight edges that connect to a horizontally straight inner edge. In addition, the claimed design of the '112 patent, the design of the prior art '906 patent and the design of the Gyroor "D" hoverboard are all comprised of the same general components, namely, opposing outer foot surfaces that are substantially flat, a recessed center portion and wheel covers at each end. As will be apparent from the remaining views set forth below, namely, front, rear, side, perspective and bottom the specific shape and appearance of most of the surfaces and features of the claimed design of the '112 patent, the design of the prior art '906 patent and the design of the Gyroor "D" hoverboard differ significantly from each other. However, there are some surfaces and features of the design of the prior art '906 patent that are closer in shape and appearance to the claimed design of the '112 patent than the design of the Gyroor "D" hoverboard. For instance as can be seen in the front and rear views below, the concavely curved recessed center portion of the top surface of the claimed design of the '112 patent and the design of the prior art '906 patent both have a slightly raised convex contour, while the corresponding center portion of the top surface of the design of the Gyroor "D" hoverboard is slightly recessed down below the opposing outer foot surfaces and has a pattern of longitudinal ribs that extend down onto the front and rear surfaces.

Front view '112 patent                                    Rear view '112 patent





Front and Rear view prior art '906 patent          Front and Rear view Gyroor "D"





104.    Furthermore, it's noted that the wheel covers at each end of the claimed design of the '112 patent, the design of the prior art '906 patent and the design of the Gyroor "D" hoverboard differ from each other as shown in the top plan view and front and rear views above as well as the side view and perspective views below. However, it's my opinion that the shape and appearance of the wheel covers in the claimed design of the '112 patent are closer to the wheel covers shown in broken lines in the design of the prior art '906 patent than the wheel covers of the design of the Gyroor "D" hoverboard. Specifically, the wheel covers shown on the claimed design of the '112 patent and the design of the prior art '906 patent are both semi-circular in shape and extend over and cover the entire wheel, while the wheel covers on the design of Gyroor "D" hoverboard have opposing diagonally straight side edges a substantially flat top edge which curves outwardly but does not extend over the entire wheel.

Side view '112 patent          Side view prior art '906 patent          Side view Gyroor "D"





Perspective view '112 patent          Perspective view prior art '906 patent




Perspective view Gyroor "D"



105.    The front and rear surfaces of the claimed design of the '112 patent, the design of the prior art '906 patent and the design of the Gyroor "D" hoverboard are all dissimilar in appearance from one and other as depicted in the front and rear views and the perspective views above. Specifically, the front and rear surfaces of the claimed design of the '112 patent have an undulated upper portion with opposing arcuate elongated LED lights and a convexly curved lower portion that merges with the bottom surface. On the contrary, the front and rear surfaces of the design of the'906 patent has a vertically flat upper portion and a convexly curved lower portion that merges with the bottom surface. Furthermore, the Gyroor "D" hoverboard has front and rear surfaces having a vertically flat upper portion and a convexly curved lower portion that merges with the bottom surface as the design of prior art '906 patent. However, the central portion of the front and rear surfaces of the design of the Gyroor "D" hoverboard differs significantly from the claimed design of the '195 patent and the design of prior art '906 patent as illustrated in the enlarged partial view below.

Enlarged Partial View Gyroor "D"



In addition, the recessed center portion of the front and rear surfaces of the Gyroor "D" hoverboard has spaced vertical ribs, and the right front vertically flat upper portion includes the word "GYROOR".

106.    The shape and appearance of the bottom surface of the claimed design of the '112 patent and the design of prior art '906 patent are substantially identical as illustrated in the bottom views below except that the opposing outer portions of the claimed design of the '112 patent have a slight upward curvature while the design of the prior art '906 patent has opposing flat, plain outer portions. However, both the claimed design of the '112 patent and the design of the prior art '906 patent have a smooth continuous concavely curved central portion which is best shown in the front and rear views above. On the other hand, the bottom surface of the design of the Gyroor "D" hoverboard differs from both the claimed design of the '195 patent and the design of prior art '906 patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a diagonally downwardly protruding edge. In addition, the recessed central portion

of the design of the Gyroor "D" hoverboard has a pattern of longitudinal ribs that extend down from the front and rear surfaces.

Bottom view '112 patent         Bottom view prior art '906 patent

 

Bottom view Gyroor "D"



107.   In view of the above analysis of the claimed design of the '112 patent with the design of the Gyroor "D" hoverboard and the design of the prior art '906 patent it's my opinion that the claimed design of the '112 patent has some surfaces and features that are closer in overall shape and appearance to the design in the prior art patent '906 patent than the design of the Gyroor "D" hoverboard. It's further my opinion that the shape and appearance of the surfaces and features of the design of the Gyroor "D" hoverboard are substantial different from the claimed design of the '112 patent that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Therefore, it's my opinion that the design of the Gyroor "D" hoverboard does not infringe the claimed design of the '112 patent.

### O. The '723 Patent, Prior Art '906 Patent and Gyroor "E"

Top plan view '723 patent        Top plan view prior art '906 patent

 

Top plan view Gyroor "E"



108.    In view of the above visual depictions of the claimed design of the '723 patent, the design of the prior art '906 patent and the design of the Gyroor "E" hoverboard it's clear that they all have the same hourglass peripheral shape as viewed in top plan. Furthermore, the claimed design of the '723 patent, the design of the prior art '906 patent and the design of the Gyroor "E" hoverboard are all comprised of the same general components, namely, opposing outer foot surfaces that are substantially flat, a concavely curved recessed center portion and wheel covers at each end. As will be apparent from the remaining views set forth below, namely, front, rear, side, perspective and bottom, the specific shape and appearance of the surfaces and features of the design of the prior art '906 patent are, in my opinion, closer to the claimed design of the '723 patent than the design of the Gyroor "E" hoverboard. For instance as can be seen in the front and rear views below, the concavely curved recessed center portion of the top surface of the claimed design of the '723 patent and the design of the prior art '906 patent both have a slightly raised convex contour, while the corresponding center portion of the top surface of the design of the Gyroor "E" hoverboard is substantially flat and slightly recessed down below the opposing outer foot surfaces.

Front view '723 patent



Rear view '723 patent



Front and Rear view prior art '906 patent



Front and Rear view Gyroor "E"



109.    Furthermore, it's noted that the wheel covers at each end of the claimed design of the '723 patent, the design of the prior art '906 patent and the design of the Gyroor "E" hoverboard differ from each other as shown in the top plan view and front and rear views above as well as the side view and perspective view below. However, it's my opinion that the shape and appearance of the wheel covers in the claimed design of the '723 patent are closer to the wheel covers shown in broken lines in the design of the prior art '906 patent than the wheel covers of the design of the Gyroor "E" hoverboard. Specifically, the wheel covers shown on the claimed design of the '723

patent and the design of the prior art '906 patent are both semi-circular in shape and extend over and cover the entire wheel, while the wheel covers on the design of the Gyroor "E" hoverboard are somewhat squared off and do not extend over the entire wheel, but rather partially over the wheel.

Side view '723 patent      Side view prior art '906 patent      Side view Gyroor "E"




Perspective view '723 patent              Perspective view prior art '906 patent



Perspective view the Gyroor "E"



110.    The only common feature on the top surface of the claimed design of the '723 patent and the design of the Gyroor "E" hoverboard not shown on the design of prior art patent '906 patent is the foot pads on the opposing foot surfaces. However, it is clear from the enlarged isolated view below that the foot pads of the claimed design of the '723 patent and the design of the Gyroor

72

"E" hoverboard differ not only in their peripheral shape but also the decorative pattern of ribs on each.

Enlarged view of foot pads '723 patent          Enlarged view of foot pads Gyroor "E"

          

111. The front and rear surfaces of the claimed design of the '723 patent and the design of prior art '906 patent are substantially similar in shape and appearance as depicted in the front and rear views and the perspective views above. Specifically, both designs have a vertically flat upper portion of the front and rear surfaces and a convexly curved lower portion that merges with the flat bottom surface. The only visual difference is the rounded parallelogram shaped LED lights at the opposing outer ends of the rear surface of the claimed design of the '723 patent and the lines on the front and rear surface of the claimed design of the '723 patent. On the contrary, while the design of the Gyroor "E" hoverboard has front and rear surfaces having a vertically flat upper portion and a convexly curved lower portion that merges with the bottom surface as the claimed design of the '723 patent and the design of prior art '906 patent, the central portion of the front and rear surfaces of the design of the Gyroor "E" hoverboard differs significantly from the claimed design of the '723 patent and the design of prior art '906 patent. Specifically, directly below the vertically flat upper portion of the front and rear surfaces are recessed horizontally elongated LED lights with quarter rounded inner ends.

112. The shape and appearance of the bottom surface of the claimed design of the '723 patent and the design of prior art '906 patent are virtually identical as illustrated in the bottom views below. Specifically, both the claimed design of the '723 patent and the design of prior art '906 patent have opposing flat, plain outer portions and a smooth continuous concavely curved central portion which is best shown in the front and rear views above. However, the bottom surface of the design of the Gyroor "E" hoverboard differs from both the claimed design of the '723 patent

73

and the design of prior art '906 patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a slight diagonally downwardly protruding arcuate edge. In addition, the recessed central portion of the design of the Gyroor "E" hoverboard is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having six narrow longitudinal ribs.

Bottom view '723 patent



Bottom view prior art '906 patent



Bottom view the Gyroor "E"



113.     In view of the above analysis of the claimed design of the '723 patent with the

design of the Gyroor "E" hoverboard and the design of the prior art '906 patent it is my opinion that the overall shape and appearance and identified features of the claimed design of the '723 patent are closer to the design of the prior art '906 patent than the design of the Gyroor "E" hoverboard. Furthermore, it's my opinion that the shape and appearance of the few features identified that are common to the claimed design of the '723 patent and the design the Gyroor "E" hoverboard not found in the design of the prior art '906 patent are substantial different such that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Therefore, it's my opinion that the design of the Gyroor "E" hoverboard does not infringe the claimed design of the '723 patent.

### P. The '256 Patent, Prior Art '906 Patent and the Gyroor "E"

Top plan view '256 patent



Top plan view prior art '906 patent




Top plan view Gyroor "E"



114.    In view of the above visual depictions of the claimed design of the '256 patent, the of the prior art '906 patent and the design of the Gyroor "E" hoverboard it's clear that they all have the same hourglass peripheral shape as viewed in top plan. Furthermore, the claimed design of the '256 patent, the design of the prior art '906 patent and the design of the Gyroor "E" hoverboard are all comprised of the same general components, namely, opposing outer foot surfaces that are substantially flat, a concavely curved recessed center portion and wheel covers at each end. As will be apparent from the remaining views set forth below, namely, front, rear, side, perspective and bottom, the specific shape and appearance of the surfaces and features of the design of the prior art '906 patent are, in my opinion, closer to the claimed design of the '256 patent than the design of the Gyroor "E" hoverboard. For instance as can be seen in the front and rear views below, the concavely curved recessed center portion of the top surface of the claimed design of the '256 patent and the design of the prior art '906 patent both have a slightly raised convex contour, while the corresponding center portion of the top surface of the design of the Gyroor "E" hoverboard is substantially flat and slightly recessed down below the opposing outer foot surfaces.

Front view '256 patent



Rear view '256 patent



Front and Rear view prior art '906 patent



Front and Rear view Gyroor "E"



115.    Furthermore, it's noted that the wheel covers at each end of the claimed design of the '256 patent, the design of the prior art '906 patent and the design of the Gyroor "E" hoverboard differ from each other as shown in the top plan view and front and rear views above as well as the side view and perspective view below. However, it's my opinion that the shape and appearance of the wheel covers in the claimed design of the '256 patent are closer to the wheel covers shown in broken lines in the design of the prior art '906 patent than the wheel covers of the design of the Gyroor "E" hoverboard. Specifically, the wheel covers shown on the claimed design of the '256 patent and the design of the prior art '906 patent are both semi-circular in shape and extend over and cover the entire wheel, while the wheel covers on the design of the Gyroor "E" hoverboard are somewhat squared off and do not extend over the entire wheel, but rather partially over the wheel.

Side view '256 patent



Side view prior art '906 patent



Side view Gyroor "E"



76

Perspective view '256 patent



Perspective view prior art '906 patent







Perspective view the Gyroor "E"



116.   The only common feature on the top surface of the claimed design of the '256 patent and the design of the Gyroor "E" hoverboard not shown on the design of prior art patent '906 patent is the foot pads on the opposing foot surfaces. However, it is clear from the enlarged isolated view below that the foot pads of the claimed design of the '256 patent and the design of the Gyroor "E" hoverboard differ not only in their peripheral shape but also the decorative pattern of ribs on each.

Enlarged view of foot pads '256 patent



Enlarged view of foot pads Gyroor "E"



117.    The front and rear surfaces of the claimed design of the '256 patent and the design of prior art '906 patent are substantially similar in shape and appearance as depicted in the front and rear views and the perspective views above. Specifically, both designs have a vertically flat upper portion of the front and rear surfaces and a convexly curved lower portion that merges with the flat bottom surface. The only visual difference is the rounded parallelogram shaped LED lights at the opposing outer ends of the rear surface of the claimed design of the '256 patent and the lines on the front and rear surface of the claimed design of the '256 patent. On the contrary, while the design of the Gyroor "E" hoverboard has front and rear surfaces having a vertically flat upper portion and a convexly curved lower portion that merges with the bottom surface as the claimed design of the '256 patent and the design of prior art '906 patent, the central portion of the front and rear surfaces of the design of the Gyroor "E" hoverboard differs significantly from the claimed design of the '256 patent and the design of prior art '906 patent. Specifically, directly below the vertically flat upper portion of the front and rear surfaces are recessed horizontally elongated LED lights with quarter rounded inner ends.

118.    The shape and appearance of the bottom surface of the claimed design of the '256 patent and the design of prior art '906 patent are virtually identical as illustrated in the bottom views below. Specifically, both the claimed design of the '256 patent and the design of prior art '906 patent have opposing flat, plain outer portions and a smooth continuous concavely curved central portion which is best shown in the front and rear views above. However, the bottom surface of the design of the Gyroor "E" hoverboard differs from both the claimed design of the '256 patent and the design of prior art '906 patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a slight diagonally downwardly protruding arcuate edge. In addition, the recessed central portion of the design of the Gyroor "E" hoverboard is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having six narrow longitudinal ribs.

Bottom view '723 patent

Bottom view prior art '906 patent

 

Bottom view the Gyroor "E"



119.    In view of the above analysis of the claimed design of the '256 patent with the design of the Gyroor "E" hoverboard and the design of the prior art '906 patent it is my opinion that the overall shape and appearance and identified features of the claimed design of the '256 patent are closer to the design of the prior art '906 patent than the design of the Gyroor "E" hoverboard. Furthermore, it's my opinion that the shape and appearance of the few features identified that are common to the claimed design of the '256 patent and the design the Gyroor "E" hoverboard not found in the design of the prior art '906 are substantial different such that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Therefore, it's my opinion that the design of the Gyroor "E" hoverboard does not infringe the claimed design of the '256 patent.

### Q. The '195 Patent, Prior Art '906 Patent and Gyroor "E"

Top plan view '195 patent

Top plan view prior art '906 patent

 

Top plan view Gyroor "E"



120.    In view of the above visual depictions of the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "E" hoverboard it's clear that they all have the same hourglass peripheral shape as viewed in top plan. Furthermore, the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "E" hoverboard are all comprised of the same general components, namely, opposing outer foot surfaces that are substantially flat, a concavely curved recessed center portion and wheel covers at each end. As will be apparent from the remaining views set forth below, namely, front, rear, side, perspective and bottom the specific shape and appearance of most of the surfaces and features of the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "E" hoverboard differ significantly from each other. However, there are some surfaces and features of the design of the prior art '906 patent that are closer in shape and appearance to the claimed design of the '195 patent than the design of the Gyroor "E" hoverboard. For instance as can be seen in the front and rear views below, while not in the same manner, the concavely curved recessed center portion of the top surface of the claimed design of the '195 patent and the design of the prior art '906 patent protrude upwardly from the opposing outer foot surfaces, while the corresponding center portion of the top surface of the design of the Gyroor "E" hoverboard is substantially flat and slightly recessed down below the opposing outer foot surfaces.

Front view '195 patent



Rear view of '195 patent



Front and Rear view prior art '906 patent



Front and Rear view Gyroor "E"



121.    Furthermore, it's noted that the wheel covers at each end of the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "E" hoverboard differ from each other as shown in the top plan view and front and rear views above as well as the side view and perspective view below. However, it's my opinion that the shape and appearance of

the wheel covers in the claimed design of the '195 patent are closer to the wheel covers shown in broken lines in the design of the prior art '906 patent than the wheel covers of the design of the Gyroor "E" hoverboard. Specifically, the wheel covers shown on the claimed design of the '195 patent and the design of the prior art '906 patent are both semi-circular in shape and extend over and cover the entire wheel, while the wheel covers on the design of the Gyroor "E" hoverboard are somewhat squared off and do not extend over the entire wheel, but rather partially over the wheel.

Side view '195 patent     Side view prior art '906 patent     Side view Gyroor "E"

  

Perspective view '195 patent     Perspective view prior art '906 patent

 

Perspective view Gyroor "E"



122. The front and rear surfaces of the claimed design of the '195 patent, the design of the prior art '906 patent and the design of the Gyroor "E" hoverboard are all dissimilar in appearance from one and other as depicted in the front and rear views and the perspective views above. Specifically, front and rear surfaces of the claimed design of the '195 patent have a concavely curved upper portion with a narrow vertically flat surface directly below it and a convexly curved lower portion that merges with the bottom surface. The convexly curved lower portion has what appear to be horizontally elongated LED lights having a knife-like appearance at the opposing outer ends. On the contrary, the front and rear surfaces of the design of the '906 patent has a vertically flat upper portion and a convexly curved lower portion that merges with the flat bottom surface. Furthermore, while the design of the Gyroor "E" hoverboard has front and rear surfaces having a vertically flat upper portion and a convexly curved lower portion that merges with the bottom surface as the design of prior art '906 patent, the central portion of the front and rear surfaces of the design of the Gyroor "E" hoverboard differs significantly from the claimed design of the '195 patent and the design of prior art '906 patent. Specifically, directly below the vertically flat upper portion of the front and rear surfaces are recessed horizontally elongated LED lights with quarter rounded inner ends.

123. The shape and appearance of the bottom surface of the claimed design of the '195 patent and the design of prior art '906 patent are somewhat similar to each other as illustrated in the bottom views below. Specifically, both the claimed design of the '195 patent and the design of prior art '906 patent have opposing flat, plain outer portions and a smooth continuous concavely curved central portion which is best shown in the front and rear views above. However, the concavely curved central portion of the claimed design of the '195 patent is truncated and not a continuous rounded surface as in the design of the prior art '906 patent. Furthermore, the opposing flat outer portions of the claimed design of the '195 patent include parallel arcuate lines that extend down from the lower convexly curved portion of the front and rear surfaces. On the contrary, the bottom surface of the design of the Gyroor "E" hoverboard differs from both the claimed design of the '195 patent and the design of prior art '906 patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a slight diagonally downwardly protruding arcuate edge. In addition, the recessed central portion of the design of the Gyroor "E" hoverboard is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having six narrow longitudinal ribs.

Bottom view '195 patent



Bottom view prior art '906 patent







Bottom view Gyroor "E"



124.     In view of the above analysis of the claimed design of the '195 patent with the design of the Gyroor "E" hoverboard and the design of the prior art '906 patent it's my opinion that the claimed design of the '195 patent has some surfaces and features that are closer in overall shape and appearance to the design in the prior art patent '906 patent than the design of the Gyroor "E" hoverboard. It's further my opinion that the shape and appearance of the surfaces and features of the design of the Gyroor "E" hoverboard are substantial different from the claimed design of the '195 patent that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Therefore, it's my opinion that the design of the Gyroor "E" hoverboard does not infringe the claimed design of the '195 patent.

**VIII.   CONCLUSION**

125.     For the reasons stated herein it is my opinion that an ordinary observer, conversant with the prior art, would consider the design of the Gyroor "A", "B", "C", "D" and "E" hoverboards ***dissimilar*** in overall appearance to the claimed design of the '723, '256, '195 and '112 patents such that an ordinary observer would ***not*** be deceived into purchasing one, supposing it to be the other.  Hence, it's my opinion that the design of Gyroor "A", "B", "C", "D" and "E" hoverboards do not infringe the claimed design of the '723, '256, '195 and '112 patents for the reasons stated above.

83

Dated: _September 12, 2022_      _____
                                    Jim Gandy