**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ABC CORPORATION I,<br>ABC CORPORATION II,<br><br>          *Plaintiffs*,<br><br>   v.<br><br>THE PARTNERSHIPS AND<br>UNINCORPORATED ASSOCIATIONS<br>IDENTIFIED ON SCHEDULE A,<br><br>          *Defendants*. | Case No. 1:20-cv-4806<br><br>Judge Thomas M. Durkin<br><br>Magistrate Judge Jeffrey Cole |

**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR
<u>SUMMARY JUDGMENT OF NON-INFRINGEMENT</u>**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................................... 1

RELEVANT FACTS AND PROCEDURAL HISTORY ............................................................... 2

ACCUSED PRODUCTS ................................................................................................................ 4

LEGAL STANDARD..................................................................................................................... 7

ARGUMENT .................................................................................................................................. 8

I.   When Viewed Together Among the Prior Art Designs, A Reasonable Juror
     Could Find that the Ordinary Observer Would View the Patents-in-Suit and
     the Accused Products as Substantially Similar. ................................................................... 8

     A.   Accused Products, Gyroor A, B, C, D, and E, Are Closer in
         Overall Impression to the Claimed Designs of the D'723 and D'256 Patents
         Than to the Closest Prior Art ................................................................................ 11

     B.   Accused Products, Gyroor A, B, C, D, and E, Are Closer in
         Overall Impression to the Claimed Design of the D'195 Patent
         Than to the Closest Prior Art ................................................................................ 12

     C.   Accused Products, Gyroor B and D, Are Closer in
         Overall Impression to the Claimed Design of the D'112 Patent
         Than to the Closest Prior Art ................................................................................ 13

II.  Small Visual Details Would Not Affect the Ordinary Observer's Overall Impression
     of the Designs. ................................................................................................................... 14

III. The Non-Infringement Analyses of Defendants' and Their Experts Are Flawed. ................. 17

IV. Conflicting Expert Opinions Preclude Summary Judgment. ................................................. 21

V.  Defendants' Motion Fails to Comply with Local Rule 56.1 ................................................. 23

CONCLUSION ............................................................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABC Corp. I v. P'ship & Unincorporated Associations Identified on Schedule "A"*,
    51 F.4th 1365 (Fed. Cir. 2022) ..........................................................................1, 4

*ABC Corp. I v. P'ship & Unincorporated Associations Identified on Schedule "A"*,
    52 F.4th 934 (Fed. Cir. 2022) .............................................................................4, 9

*Amini Innovation Corp. v. Anthony California, Inc.*,
    439 F.3d 1365 (Fed. Cir. 2006)..............................................................................18

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)...............................................................................................7, 8

*Apple, Inc. v. Samsung Elecs. Co.*,
    No. 11-CV011846-LHK, 2012 WL 3071477 (N.D. Cal. July 27, 2012) ...............15

*Bio-Tech. Gen. Corp. v. Genentech, Inc.*,
    80 F.3d 1553 (Fed. Cir. 1996)................................................................................20

*Braun Inc. v. Dynamics Corporation of America*,
    975 F.2d 815 (Fed. Cir. 1992).................................................................................7

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)..................................................................................................7

*Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*,
    942 F.3d 1119 (Fed. Cir. 2019)...........................................................................8, 14

*Contessa Food Prods., Inc. v. Conagra, Inc.*,
    282 F.3d 1370 (Fed. Cir. 2002)..............................................................................15

*Crocs, Inc. v. Int'l Trade Comm'n*,
    598 F.3d 1294 (Fed. Cir. 2010)....................................................................9, 18, 20

*Crown Packaging Technology, Inc. v. Ball Metal Beverage Container Corp.*,
    635 F.3d 1373 (Fed. Cir. 2011)..............................................................................23

*Dioptics Med. Prod., Inc. v. IdeaVillage Prod. Corp.*,
    No. CV 08-03538 PVT, 2010 WL 4393876 (N.D. Cal. Oct. 29, 2010) ................14

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
    543 F.3d 665 (Fed. Cir. 2008)........................................................................ *passim*

*Ethicon Endo-Surgery v. Covidien, Inc.*,
    796 F.3d 1312 (Fed. Cir. 2015)..............................................................................19

*Gorham Mfg. Co. v. White*,
    81 U.S. 511 (1871) .................................................................................................7, 14, 15

*Int'l Seaway Trading Corp. v. Walgreens Corp.*,
    589 F.3d 1233 (Fed. Cir. 2009) .......................................................................................18

*Kreg Therapeutics, Inc. v. VitalGo, Inc.*,
    No. 11-CV-6771, 2014 WL 1227311 (N.D. Ill. Mar. 25, 2014) .............................................23

*Majors v. Gen. Elec. Co.*,
    714 F.3d 527 (7th Cir. 2013) ...........................................................................................7

*Metro. Life Ins. Co. v. Bancorp Servs.*,
    L.L.C., 527 F.3d 1330 (Fed. Cir. 2008) .............................................................................21

*Rothy's, Inc. v. Birdies, Inc.*,
    No. 21-CV-02438-VC, 2022 WL 1448160 (N.D. Cal. May 9, 2022) .....................................17

*Sitrick v. Dreamworks, LLC*,
    516 F.3d 993 (Fed. Cir. 2008) .........................................................................................22

*Talbert v. City of Chicago*,
    236 F.R.D. 415 (N.D. Ill. 2006) .......................................................................................9

*Weber-Stephen Prod. LLC v. Sears Holding Corp.*,
    No. 13 C 01686, 2015 WL 9304343 (N.D. Ill. Dec. 22, 2015) ...................................14, 16, 17

Plaintiffs Hangzhou Chic Intelligent Technology Co., Ltd. ("Chic") and Unicorn Global, Inc. ("Unicorn", and collectively with Chic, "Plaintiffs") hereby submit this opposition to Defendants' Gyroor-US, Gyroor, Urbanmax, Fengchi-US, HGSM, Gaodeshang-US, and Gyroshoes (collectively, "Defendants")[1] Motion for Summary Judgment of Non-Infringement (Dkt. 628, "Motion").

## PRELIMINARY STATEMENT

Defendants' meandering Motion—which spans more than one hundred pages of briefing and supporting materials—ignores that the issues of infringement and non-infringement in this case are indisputably questions for a jury, and are not resolvable at the summary judgment stage. Instead, the Motion is yet another example of Defendants' improper attempt to prematurely address factual matters in the context of summary judgment. This Court previously rejected Defendants' assertion that they did not infringe the Patents-in-Suit[2]—on the ground that they were practicing a, later-filed, third-party patent (U.S. Patent No. D808,857, the "D'857 Patent) (Dkt. 334)—in October 2021. (*See* Dkt. 443 at 1–2.) This argument, and Defendants' other non-

---

[1] The Motion was made on behalf of Defendant Gyroor-US and alleged "Third Party Respondents" Gyroor, Urbanmax, Fengchi-US, HGSM, Gaodeshang-US, and Gyroshoes. Despite Defendants' arguments to the contrary (*see* Dkt. 611 at 1, 6, 13), these interrelated parties remain defendants in this case. The Federal Circuit's decision vacating the order that granted Plaintiff's motion to amend Schedule A (Dkt. 227) extended only to the application of prior preliminary injunctions entered by this Court to the parties. *See ABC Corp. I v. P'ship & Unincorporated Associations Identified on Schedule "A"*, 51 F.4th 1365, 1377 (Fed. Cir. 2022) (Dkt. 590) ("For the foregoing reasons, we vacate for lack of Rule 65(a) notice the preliminary injunction entered by the district court on November 24, 2020, and the order entered by the district court on May 24, 2021, that granted ABC's motion to amend Schedule A *insofar as that order extended the 2020 Preliminary Injunction to new defendants*.").

[2] The "Patents-in-Suit" are U.S. Design Patent No. D737,723 ("the D'723 Patent"); U.S. Design Patent No. D738,256 ("the D'256 Patent"); U.S. Design Patent No. D784,195 ("the D'195 Patent"); and U.S. Design Patent No. D785,112 ("the D'112 Patent"). (Plaintiffs' Response to Statement of Material Fact ("RSMF"), ¶¶ 16–21.)

infringement arguments, remain inappropriate for summary disposition. (*See* Dkt. 629, "Mem." at 1–2, 15–19, 25–26.)

Defendants simply cannot obscure through their bloated briefing that numerous genuine issues of material fact exist, including:

- what effect the features disclosed (and not disclosed) in the relevant prior art have on the overall visual impression of the ordinary observer;

- whether each patent is infringed by each product; and

- whether the "slight" differences identified by Defendants, visible from only certain viewpoints, would affect the overall impression of the ordinary observer.

The existence of these disputed facts—further evidenced by the existence of conflicting expert reports, including conflicting opinions by Defendants' own experts—preclude summary consideration of these matters. The small visual details and trivial differences that Defendants rely on for their non-infringement positions simply do not preclude a reasonable juror from finding that the claimed designs and the Accused Products are substantially similar such that an ordinary observer would be deceived into believing that the accused products are the same as the patented designs. Indeed, following Defendants' logic, design patents would be rendered valueless and could be infringed with impunity through insignificant product changes (as in this case).

Accordingly, the factual nature of the infringement inquiry demonstrates that the Motion should be denied.

## **RELEVANT FACTS AND PROCEDURAL HISTORY**

Plaintiff Chic is the assignee and owner of the Patents-in-Suit. (RSMF ¶ 47; Dkt. 101 at ¶ 6.) Plaintiff Unicorn is the exclusive distributor of Chic hoverboard products in the United States.

(RSMF ¶ 48; Dkt. 101, ¶ 8.) There are four asserted patents, the Patents-in-Suit. (RSMF ¶¶ 16–21.)

Defendants are inter-related Chinese companies and individuals that operate online e-commerce stores in the business of selling hoverboards. (*See* Dkt. 309 at ¶ 9; Dkt. 368, Counterclaims, ¶¶ 4–5; Dkt. 463, Counterclaims, ¶¶ 4–5; Dkt. 464, Counterclaims, ¶¶ 4–55; Dkt. 465, Counterclaims, ¶¶ 4–5.) The Accused Products are hoverboards sold, at least, on Amazon.[3] (*See* RSMF ¶¶ 22–26.)

Plaintiffs originally filed their complaint in August 2020 alleging infringement of the Patents-in-Suit against several online sellers of hoverboards. (RSMF ¶ 50; Dkt. 1, 4.) On November 20, 2020, the day after filing their Third Amended Complaint (RSMF ¶ 51; Dkt. 101), Plaintiffs filed a motion for a preliminary injunction to enjoin the defendants from further sale of infringing hoverboards. (RSMF ¶¶ 52; Dkt. 105.) The preliminary injunction order was entered by this Court on November 24, 2020. (RSMF ¶¶ 53; Dkt. 113.)

After identifying other storefronts that were associated with the defendants named in the original Schedule A and to "ensure that any entity against whom relief has been or foreseeably will be sought is listed as a defendant in the schedules of defendants," Plaintiffs moved to amend the list of defendants identified in Schedule A to add, *inter alia*, Gyroor, Urbanmax. Fengchi-US, HGSM, Gaodeshang-US and Gyroshoes as defendants. (RSMF ¶¶ 54–56; Dkt. 227, 253.) In an effort to enjoin the additional defendants, Plaintiffs filed, and this Court subsequently entered, a second motion for a new preliminary injunction, which the Court entered on October 13, 2021

---

[3] As discussed in Section III, *infra*, Plaintiffs' assertions of infringement pertain to specific accused product designs, not product listing pages or specific Amazon Standard Identification Numbers ("ASINs").

(collectively with the November 24, 2020 preliminary injunction order, the "Prior PIs"). (RSMF ¶ 59, Dkt. 384, 456.)

Select defendants appealed the Prior PIs to the Federal Circuit. (RSMF ¶¶ 57–58.) On October 28, 2022, the Federal Circuit, in two separate opinions, vacated the Prior PIs and remanded to this Court for further proceedings. (RSMF ¶¶ 60; *ABC Corp. I v. P'ship & Unincorporated Associations Identified on Schedule "A"*, 51 F.4th 1365 (Fed. Cir. 2022); *ABC Corp. I v. P'ship & Unincorporated Associations Identified on Schedule "A"*, 52 F.4th 934 (Fed. Cir. 2022).)

On November 9, 2022, Plaintiffs filed a renewed motion for a preliminary injunction against the Defendants. (RSMF ¶¶ 61; Dkt. 592.) On December 2, 2022, the Court denied Plaintiffs' motion on the ground that Defendants' defense had "substantial merit." (RSMF ¶¶ 61; Dkt. 619, 626.)

On July 19, 2021, Defendant Gyroor-US filed its first motion for summary judgment (RSMF ¶¶ 62; Dkt. 334) based on only three facts (RSMF ¶¶ 62; Dkt. 346) and asserting that it did not infringe the Patents-in-Suit based on its authorization to use a third-party design patent— Design Patent No. D808,857 ("the D'857 Patent"). (RSMF ¶ 62; Dkt. 334.) The Court subsequently denied the motion for summary judgment, finding that the "existence of one's own patent does not constitute a defense to infringement of someone else's patent." (Dkt. 443 (quoting *Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1559 (Fed. Cir. 1996)); *see also* RSMF ¶ 63.)

## ACCUSED PRODUCTS

Defendants distribute multiple products accused of infringing the Patents-in-Suit, including "Gyroor A" (i.e., Gyroor T581 series and variants), "Gyroor B" (i.e., Gyroor G2 series and variants), "Gyroor C" (i.e., Gyroor T580 series and variants), "Gyroor D" (i.e., Gyroor G5 series

and variants), and "Gyroor E" (i.e., Gyroor G11 series and variants)[4] (collectively, the "Accused Products"). (*See* Mem. at 10–15.)

| Accused Products | |
|---|---|
| **"Gyroor A"** T581 series and variants |  |
| **"Gyroor B"** G2 series and variants |  |

---

[4] Defendants continue to question whether Gyroor E (i.e., G11 model and variants) remains an accused product in this case. (*See* Mem. at 14–15; *see also* RSMF ¶ 27.) As addressed in Plaintiff's response to Defendants' motion for clarification (*see* Dkt. 627), the G11 Model was identified as an accused product throughout this proceeding, including in Plaintiffs' papers in support of the Prior PI entered by this Court in 2021 (*see* Dkt. 383 ¶ 5; *see also e.g.,* Dkt. 383-3 at 44). The inclusion of the G11 Model in the 2021 PI, or any other preliminary injunction papers, has no bearing on whether the G11 Model is an accused product in this case. Defendants' motion (Dkt. 625) remains pending as of the date of filing of this Opposition.

| Accused Products | |
|---|---|
| **"Gyroor C"**<br>T580 series and variants |  |
| **"Gyroor D"**<br>G5 series and variants | |
| **"Gyroor E"**<br>G11 series and variants | |

Since the accused products are primarily sold on Amazon, the Parties have sometimes referenced them by their Amazon catalog number, called an "ASIN." The accused products at issue in the present Motion are identified by Defendants with respect to the ASIN of the listing under which it is sold: ASIN B07PHFP8GB ("Gyroor A" or "Accused Product A"); ASIN B08R23QQT8 ("Gyroor B" or "Accused Product B"); ASIN B08NT551P4 ("Gyroor D" or

"Accused Product D"); and ASIN B08RYMXRWM ("Gyroor E" or "Accused Product E"). (Mem. at 10–15; *see also* RSMF ¶¶ 22–26.) To be clear, Plaintiffs' assertions of infringement pertain to specific accused product designs—not product listing pages, which can be changed and manipulated by Defendants and their affiliates.

## **LEGAL STANDARD**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the burden to demonstrate that there is "no genuine issue as to any material fact" and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Genuine issues of material fact exist where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The Court must draw all reasonable inferences from the facts in the light most favorable to the non-moving party. *Id*. at 247-49, 255; *see also Majors v. Gen. Elec. Co.,* 714 F.3d 527, 532-33 (7th Cir. 2013).

A design need not be found "identical" to infringe. *Braun Inc. v. Dynamics Corporation of America*, 975 F.2d 815, 820 (Fed. Cir. 1992). In comparing the claimed design and the accused product, infringement is found "[i]f, *in the eye of an ordinary observer*, *giving such attention as a purchaser usually gives*, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008)[5]; *see also Gorham Mfg. Co. v.*

---

[5] All internal quotations, modifications, and citations are omitted, and emphasis is added herein unless otherwise indicated.

*White*, 81 U.S. 511, 528 (1871). Whether an element of the accused design would give an ordinary observer a different visual impression than the patented design is a question of fact to be resolved by a jury. *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 942 F.3d 1119, 1131 (Fed. Cir. 2019).

## ARGUMENT

Defendants cannot dispute that design patent infringement is a question of fact. *Columbia Sportswear*, 942 F.3d at 1129. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" and find the Accused Products are substantially similar to the claimed designs of the Patents-in-Suit, then real fact issues remain and summary judgment should be denied. *Anderson*, 477 U.S. at 248.

**I.      When Viewed Together Among the Prior Art Designs, A Reasonable Juror Could Find that the Ordinary Observer Would View the Patents-in-Suit and the Accused Products as Substantially Similar.**

Infringement is a question for the jury and cannot be resolved solely based on expert testimony as Defendants seek to do in this case. "When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art." *Egyptian Goddess*, 543 F.3d at 676. While a hypothetical ordinary observer would attach more importance to small differences between the accused products and claimed designs in a field crowded with similar prior art designs, that is not the case here. *See id*. at 676. Instead, where the accused design "has copied a particular feature of the claimed design that ***departs conspicuously from the prior art***, the accused design is naturally ***more likely to be regarded as deceptively similar*** to the claimed design, and thus infringing." *Id*. at 677.

Here, while some of the individual components of the Patents-in-Suit are represented in some of the prior art, ***none*** of the relevant prior art—including the "closest" (and only) piece of

prior art identified and considered by Defendants in the field of hoverboards, U.S. Patent No. D739,906 ("the D'906 Patent")—creates the visual impression of an "hourglass" body *in combination with* "a relatively flat surface across the top of the main body, pronounced 'footing' areas, and open-arched fenders over the top of the wheel area" or styling "lines across the body". (Hatch Decl. ¶¶ 66, 68, 70.)[6] Thus, while the attention of the ordinary observer may be drawn to the presence of these features that were not present in the prior art, little weight should be given to differences in the trivial styling details of each. In line with the purposes of design patent protection, the ordinary observer test was implemented to avoid the "risk of assigning exaggerated importance" to insignificant differences between the accused products and patented designs. *See Egyptian Goddess*, 543 F.3d at 677. Instead, the focus is on the overall appearance of the design.

Contrary to Defendants' argument, the fact that the D'906 Patent may also have an "hour glass peripheral shape" (Mem. at 26, 36, 45, 54, 64) and "wheel covers" (Mem. at 26, 36, 45, 54, 64) does not show that there is no genuine issue as to whether the Accused Products are dissimilar to the Patents-in-Suit. *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010) ("Even if the claimed design simply combines old features in the prior art, it may still create an

---

[6] Plaintiffs submit, herewith, the Expert Declaration of Paul Hatch in support of their opposition to Defendants' Motion ("Hatch Decl.") and in direct response to the alleged technical insufficiencies identified by the Federal Circuit after the close of expert discovery. *See ABC Corp. I v. P'ship & Unincorporated Associations Identified on Schedule "A"*, 52 F.4th 934, 938 (Fed. Cir. 2022); *see also Talbert v. City of Chicago,* 236 F.R.D. 415, 422-425 (N.D. Ill. 2006) (holding the plaintiff's untimely supplemental expert report may be filed where submission was made when "the plaintiff was made aware that … the initial report was incomplete" and such submission did not surprise or prejudice defendant). In all events, the Hatch Declaration is substantially justified and harmless—it is not materially different and the conclusions do not depart from earlier reports. It is indisputable that the Hatch Declaration is narrowly tailored to elaborate and elucidate the prior opinions by including a patent-by-patent and product-by-product analysis demonstrating Plaintiffs' Patents-in-Suit are clearly infringed by the three Accused Products. The conclusions remain the same—in the eyes of the hypothetical ordinary observer familiar with the prior art, the overall visual appearance of the Accused Products is substantially similar to that of the claimed designs of the Patents-in-Suit.

overall appearance deceptively similar to the accused design. In that case, this court will uphold a finding of infringement."). Unlike the Patents-in-Suit, the design of the D'906 Patent "gives a distinctly different impression, as it creates an impression of a very uncluttered, rounded, smooth body with no pronounced footing area and closed fender skirts." (Hatch Decl. ¶¶ 89, 93, 101, 105, 117, 121, 129, 133, 145, 149; *see also* Hatch Decl. ¶¶ 97, 109, 113, 125, 137, 141, 153.) Even Defendants' expert, Jim Gandy, recognizes that the D'906 Patent does not include the prominent distinguishing features of the Patents-in-Suit and Accused Products, yet both Defendants and Mr. Gandy conveniently fail to take into account that the D'906 Patent is completely devoid of such features in their non-infringement analyses. (*See* Deposition Transcript of Jim Gandy, "Gandy Tr." at 109:22-24 ("Q: We do not see a foot pad on the 906 patent. A: That's correct. That's correct."), 118:24-119:6 ("Q: And as far as the wheel covers of the 906 patent, beyond being able to say that they cover a significant portion of the wheel and that they are round, is there any other features we can identify? A: No."), 117:17-19 ("Q: And the 906 patent does not show any light bars; is that fair? A: That's correct.") (Ex. A[7]); *cf.* Transcript of Proceedings – Preliminary Injunction Hearing, December 2, 2022, "Hearing Tr." at 62:25-63:7 ("I think it's important to see that, you know, with our understanding of what existed at the time, the '723 and '256 patents provided something that was really quite different, quite radically different, and hadn't existed before it. So in doing so, we see that the prior art is really quite far away from the patents at issue, and therefore, you would understand that it has a very broad scope."), 75:15-24 ("Because of how far away the '906 is, the impacts of [the differences between the fenders and lighting elements] is relatively insignificant on the overall impression. They do --- they are part of the overall impression, and if we were comparing only A, B [sic], and E together, we would then be seeing a narrowing down on those

---

[7] The referenced exhibits are attached to the Declaration of Chandler E. Sturm submitted herewith.

slight differences as being very important. However, of course, when comparing directly to the '906, we see how insignificant small differences are in particular between the accused products and the patent.") (Ex. B; Dkt. 620).)

Significantly, where the claimed designs of the Patents-in-Suit depart from the prior art, the Accused Products follow and stand out from the prior art in substantially the same way. This is not surprising because the Accused Products are mere knockoffs of Chic's designs. Thus, a reasonable juror could find the designs of the Patents-in-Suit and the Accused Products, viewed together with the prior art, are substantially similar and therefore the Accused Products are infringing. *See Egyptian Goddess*, 543 F.3d at 677.

### A. Accused Products, Gyroor A, B, C, D, and E, Are Closer in Overall Impression to the Claimed Designs of the D'723 and D'256 Patents Than to the Closest Prior Art.

Both the D'723 and D'256 Patents and the Accused Products, Gyroor A, B, C, D, and E, share the overall impression of "an integrated hourglass body with a relatively flat surface across the top of the main body, pronounced 'footing' areas, and open-arched fenders over the top of the wheel area." (Hatch Decl. ¶¶ 89, 93, 101, 105, 117, 121, 129, 133, 145, 149.) More specifically, the relatively flat surface across the top of the main body such that the footpads and center section are largely on the same plane, the pronounced footing areas substantially covered by raised footpads with a pattern of grooves, and the fenders arching over a portion of the tire and leaving the outside surface of the wheel largely exposed, significantly contribute to the overall impression of the designs. (Hatch Decl. ¶¶ 89, 93, 101, 105, 117, 121, 129, 133, 145, 149.) The trivial differences of Gyroor A, B, C, D, and E in the pattern of grooves across the footpad (Mem. at 28, 37–38, 47, 56, 65), the "slightly recessed" center section (Mem. at 26, 36, 45, 55, 64, 66), and the minor change in shape and coverage of the fenders (Mem. at 32, 41–42, 51, 60, 70) are insignificant to the overall impression of the designs, particularly when considered in view of the D'906 Patent.

11

In contrast, the D'906 Patent is completely devoid of any type of footpad, has a center section that significantly curves and extends above the plane of the footing areas, and has fenders that cover the majority of the tire and wheel assembly, extending below the midpoint of the wheel. (Hatch Decl. ¶¶ 89, 93, 101, 105, 117, 121, 129, 133, 145, 149.) Thus, while the D'906 Patent also includes an hourglass body, the design as a whole gives a distinctly different impression. (Hatch Decl. ¶¶ 89, 93, 101, 105, 117, 121, 129, 133, 145, 149.) Accordingly, Gyroor A, B, C, D, and E are closer in overall impression to the claimed designs of the D'723 and D'256 Patents than to the closest prior art and are substantially the same. (Hatch Decl. ¶¶ 90, 94, 102, 106, 118, 122, 130, 134, 146, 150.)

**B.** **Accused Products, Gyroor A, B, C, D, and E, Are Closer in Overall Impression to the Claimed Design of the D'195 Patent Than to the Closest Prior Art.**

In a similar manner, the D'195 Patent and the Accused Products, Gyroor A, B, C, D, and E, share "an integrated hourglass body with many horizontal styling lines across the body and a relatively flat surface across the top of the main body, and open-arched fenders over the top of the wheel area." (Hatch Decl. ¶¶ 97, 109, 125, 137, 153.) More specifically, the relatively flat surface across the top of the main body such that the footpads and center section are largely on the same plane, the horizontal styling lines across the body forming various surface details, and the fenders arching over a portion of the tire and leaving the outside surface of the wheel largely exposed, significantly contribute to the overall impression of the designs. (Hatch Decl. ¶¶ 97, 109, 125, 137, 153.) The trivial differences of Gyroor A, B, C, D, and E in the "slightly recessed" center section (Mem. at 26, 36, 45, 55, 64, 66), various surface styling details (Mem. at 30, 40, 49, 58, 67), and the minor change in shape and coverage of the fenders (Mem. at 32, 41–42, 51, 60, 70) are insignificant in the overall impression of the designs, particularly when considered in view of the D'906 Patent. In contrast, the D'906 Patent has a center section that significantly curves and

extends above the plane of the footing areas, has a rounded, smooth body that is completely devoid of any type of lines, and has fenders that cover the majority of the tire and wheel assembly, extending below the midpoint of the wheel. (Hatch Decl. ¶¶ 97, 109, 125, 137, 153.) Thus, while the D'906 Patent also includes an hourglass body, the design as a whole gives a distinctly different impression. (Hatch Decl. ¶¶ 97, 109, 125, 137, 153.) Accordingly, Gyroor A, B, C, D, and E are closer in overall impression to the claimed design of the D'195 Patent than to the closest prior art and are substantially the same. (Hatch Decl. ¶¶ 98, 110, 126, 138, 154.)

### C. Accused Products, Gyroor B and D, Are Closer in Overall Impression to the Claimed Design of the D'112 Patent Than to the Closest Prior Art.

Comparably, the D'112 Patent and the Accused Products, Gyroor B and D,[8] share "an integrated hourglass body with many angled styling lines across the body and a relatively flat surface across the top of the main body, and open-arched fenders over the top of the wheel area." (Hatch Decl. ¶¶ 113, 141.) More specifically, the relatively flat surface across the top of the main body such that the footpads and center section are largely on the same plane, the horizontal styling lines across the body forming various surface details, and the fenders arching over a portion of the tire and leaving the outside surface of the wheel largely exposed, significantly contribute to the overall impression of the designs. (Hatch Decl. ¶¶ 113, 141.) The trivial differences of Gyroor B and D in the "slightly recessed" center section (Mem. at 36, 55), various surface styling details (Mem. at 40, 58), and the minor change in shape and coverage of the fenders (Mem. at 41–42, 60) are insignificant in the overall impression of the designs, particularly when considered in view of the D'906 Patent. In contrast, the D'906 Patent has a center section that significantly curves and extends above the plane of the footing areas, has a rounded, smooth body that is completely devoid

---

[8] Plaintiffs have not made an assertion of infringement of the D'112 Patent by Gyroor A, Gyroor C, or Gyroor E.

of any type of styling lines, and has fenders that cover the majority of the tire and wheel assembly, extending below the midpoint of the wheel. (Hatch Decl. ¶¶ 113, 141.) Thus, while the D'906 Patent also includes an hourglass body, the design as a whole gives a distinctly different impression. (Hatch Decl. ¶¶ 113, 141.) Accordingly, Gyroor B and D are closer in overall impression to the claimed design of the D'112 Patent than to the closest prior art and are substantially the same. (Hatch Decl. ¶¶ 114, 142.)

Viewed together among the prior art designs, a reasonable juror could find that an ordinary observer would view the designs of the Accused Products to be substantially similar to the designs claimed in the Patents-in-Suit. *See Weber-Stephen Prod. LLC v. Sears Holding Corp.*, No. 13 C 01686, 2015 WL 9304343, at *16 (N.D. Ill. Dec. 22, 2015). Accordingly, this is a factual matter that cannot be resolved at the summary judgment stage.

## II. Small Visual Details Would Not Affect the Ordinary Observer's Overall Impression of the Designs.

In determining whether designs are substantially similar in overall design, the fact-finder puts itself into the place of an "ordinary observer." *See Egyptian Goddess*, 543 F.3d at 667. The "ordinary observer" is not an expert, but is an observer "of ordinary acuteness, bringing to the examination of the article upon which the design has been placed that degree of observation which men of ordinary intelligence give." *Gorham*, 81 U.S. at 528. Determining "[w]hich features would be significant to the ordinary observer is a question of fact." *Dioptics Med. Prod., Inc. v. IdeaVillage Prod. Corp.*, No. CV 08-03538 PVT, 2010 WL 4393876, at *2 (N.D. Cal. Oct. 29, 2010) (citing *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1241-42 (Fed. Cir. 2009)); *Columbia Sportswear*, 942 F.3d at 1131 (whether an element of the accused design would give an ordinary observer a different visual impression than the patented design is a question of fact to be resolved by a jury).

14

Here, Defendants argue that the "ordinary observer" is a potential purchaser who is familiar with hoverboards and the prior art designs (Mem. at 22), yet turn to the subtleties of various features identified by Mr. Gandy—only visible from isolated viewpoints—to distinguish the Accused Products from the designs of the Patents-in-Suit. Defendants first point to the **_top view_** of the designs to distinguish the "**_slightly_** raised convex contour" of the center portion of the Patents-in-Suit from the "substantially flat and **_slightly_** recessed" center portion of the Accused Products. (Mem. at 26, 36, 45, 55, 64, 66.) Defendants further attempt to distinguish the "decorative pattern of ribs" on the footpads.[9] (Mem. at 28, 38, 47, 56, 65.) Defendants next look to the **_bottom view_** to argue that the "smooth continuous concavely curved center portion" of the Patents-in-Suit is readily distinguishable from the "**_slight_** diagonally downwardly protruding arcuate edges" of the center portion of the Accused Products. (Mem. at 29, 38, 48, 69.) Similarly, Defendants rely on the **_front view_** to highlight the "horizontally elongated LED lights" and "outwardly protruding horizontal band that extends inwardly and merges with the concavely curved recessed central portion" of the Accused Products to further differentiate them from the claimed designs of the Patents-in-Suit. (Mem. at 30, 40, 49, 67.)

What matters, however, is not the view of an expert's trained eye—"[s]uch a test would destroy all the protection which the act of Congress intended to give." _Gorham_, 81 U.S. at 527 ("There never could be piracy of a patented design, for human ingenuity has never yet produced a

---

[9] Further highlighting the weakness of Defendants' Motion, the so-called "ribs" are unclaimed features in, at least, the D'195 Patent and the D'112 Patent. (_See_ Hatch Decl. ¶¶ 57 (D'195 Patent), 61 (D'112 Patent)); _Contessa Food Prods., Inc. v. Conagra, Inc._, 282 F.3d 1370, 1378 (Fed. Cir. 2002) ("[I]f features appearing in the figures are not desired to be claimed, the patentee is permitted to show the features in broken lines to exclude those features from the claimed design…"); _Apple, Inc. v. Samsung Elecs. Co._, No. 11-CV011846-LHK, 2012 WL 3071477, at *4 (N.D. Cal. July 27, 2012) ("The patentee may indicate the claimed part of the design with the use of solid lines and may indicate the unclaimed, remaining article of manufacture with the use of broken lines.").

design, in all its details, exactly like another, so like, that an expert could not distinguish them."). Instead, the ordinary observer only "giv[es] such attention as a purchaser usually gives." *Egyptian Goddess*, 543 F.3d at 670. (Hatch Decl. ¶¶ 38–40, 160, 199.) The "slight" differences Defendants rely upon to distinguish the designs of the Accused Products are beyond that level of attention and would not be significant in an ordinary observer's comparison of the designs in view of the prior art. (*See* Hatch Decl. ¶ 200 ("In many areas Mr. Gandy describes subtleties in form that he, as an expert in the field of design was able to detect, but these small details seen only in isolated areas from certain angles are not salient to the eyes of an ordinary observer with ordinary acuteness.").) *See Weber-Stephen Prod.*, 2015 WL 9304343, at *16 (small physical differences were not convincing, "largely because they require the observer to give more attention to detail than is appropriate").

"[B]ased on the context of purchase, and the untrained eye of the purchaser" the hypothetical ordinary observer, i.e., the principal purchaser of hoverboards (*see* Hatch Decl. ¶ 42), would, instead, "apply a *relatively low level of attention* to the aesthetics of the product. Thus, small visual details (e.g., such as the air vent pattern on the underside or the specific shape of the shallow grooves on the foot pads) would not affect their overall impression of the object as a whole." (Hatch Decl. ¶¶ 160, 199 (emphasis in original).) *See Weber-Stephen Prod.*, 2015 WL 9304343, at *16 (denying motion for summary judgment for non-infringement where "a reasonable jury could find that the ordinary observer's eye, giving the appropriate level of attention, might well miss those points" and instead focus on the "bigger ticket items"). Thus, while the designs of the Patents-in-Suit and the Accused Products are not exact duplicates, they "share very similar visual traits in their format, proportions and main visual features, and share the same overall impression to the ordinary observer in light of the prior art," namely, "an integrated

16

hourglass body with a relatively flat surface across the top of the main body, pronounced 'footing' areas, and open-arched fenders over the top of the wheel area" (Hatch Decl. ¶¶ 79–80).

Accordingly, a reasonable juror could find that an ordinary observer, "giving such attention as a purchaser usually gives," would pay little attention to the small differences identified by the Defendants, and instead conclude that the Accused Products share very similar visual traits—e.g., pronounced "footing" areas, and open-arched fenders over the top of the wheel area. Thus, there remains a triable issue as to whether the Accused Products' overall impression is substantially similar to the Patents-in-Suit, such that an ordinary observer would be deceived into believing that the Accused Products are the same as the patented designs. *See Rothy's, Inc. v. Birdies, Inc.*, No. 21-CV-02438-VC, 2022 WL 1448160 (N.D. Cal. May 9, 2022) (denying summary judgment of noninfringement noting that "[a]n ordinary observer carefully attuned to the vast prior art of loafers may well identify critical differences between the knitted Blackbird and Rothy's patented designs," "[b]ut this is summary judgment, and Birdies cannot win on infringement at this stage" as "a jury could conclude that the knitted Blackbird gives the same overall visual impression as the claimed design"); *see also Weber-Stephen Prod.*, 2015 WL 9304343, at *16 ("Without downplaying these differences, and with due regard to the subjectivity of the analysis, the Court cannot say that these differences prevent a reasonable jury from finding substantial similarity.").

## III. The Non-Infringement Analyses of Defendants' and Their Experts Are Flawed.

Defendants' failure to consider the designs in their entirety is a consistent flaw throughout their Motion. Rather than evaluate the overall impression of the Accused Products, Defendants (and their two experts) deliberately choose trivial differences in specific views and narrowly focus on ornamental features considered in isolation to support the conclusion that the Accused Products have a substantially different ornamental appearance than the claimed designs of the Patents-in-

17

Suit. (Mem. at 26–71; *cf.* Hatch Decl. ¶¶ 81–154.) If anything, Defendants' Motion only emphasizes the weakness of its position.

In an effort to distract from the substantial similarities of the overall impression of the designs, Defendants highlight insignificant differences and compare the designs element-by-element. This is not the proper analysis. *See Crocs*, 598 F.3d at 1303–04 (explaining that the focus of the infringement analysis is the "overall impression of the claimed ornamental features" rather than "small differences in isolation."); *Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365, 1372 (Fed. Cir. 2006) (reversing summary judgment for defendant where "the trial court mistakenly analyzed each element separately instead of analyzing the design as a whole from the perspective of an ordinary observer."); *Int'l Seaway Trading Corp. v. Walgreens Corp*., 589 F.3d 1233, 1243 (Fed. Cir. 2009) ("The mandated overall comparison is a comparison taking into account significant differences between the two designs, not minor or trivial differences that necessarily exist between any two designs that are not exact copies of one another.").

Nowhere do Defendants analyze how the trivial differences in each element would impact the ordinary observer's perception of the ***overall visual impression*** other than their conclusory assertion that, in view of the "claimed designs of the Patents-in-Suit with the designs of the [Accused Products] and the design of the D'906 Patent, the overall shape and appearance and identified features of the claimed design of the Patents-in-Suit are closer to the design of the D'906 Patent than the design of the [Accused Products]." (Mem. at 35, 45, 53–54, 63, 70; *cf.* Hatch Decl. ¶¶ 89, 93, 101, 105, 117, 121, 129, 133, 145, 149 (explaining, for example, that the footpads and fenders of the Accused Products and Patents-in-Suit contribute to the "visual impression of an integrated hourglass body with a relatively flat surface across the top of the main body, pronounced 'footing' areas, and open-arched fenders over the top of the wheel area," whereas the lack of

footpads and closed fender skirts of the D'906 Patent contributes to the "impression of a very uncluttered, rounded, smooth body"); *see also* Hatch Decl. ¶¶ 97, 109, 113, 125, 137, 141, 153.) *Ethicon Endo-Surgery v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015) ("An element-by-element comparison, untethered from application of the ordinary observer inquiry to the overall design, is procedural error.").

Although individual features may play a role in assessing the impact on the overall appearance, tellingly, neither Defendants nor their experts considered any prior art (other than the D'906 Patent) in determining whether these minor differences would be recognized as distinguishing the designs of the Accused Products. (*See* Hearing Tr. at 138:11-16 ("Q: Are you aware of any other prior art patents with raised foot pads? A: I haven't looked at any. I mean, there may be, but I haven't looked at any as far as pointing out whether this has been done maybe in patents or hoverboards that were patented prior to these two."), 140:17-22 ("A: Other than what's showed disclosed in the '906, I haven't looked – I mean, as far as my – what I was retained for here, I have not done any searching to see whether there's other prior art patents out there that may have [fenders]. I'm just looking at what was presented to me and the '906 prior art."); *see also* Gandy Tr. at 107:14-23 ("Q: Was there any other prior art that you considered as potentially being close to these products? A: The only thing I referenced was the corresponding utility patent to the 906 design patent.").) Indeed, where the frame of reference consists of ***numerous similar prior art designs***, those designs can highlight the distinctions between the claimed design and the accused design as viewed by the ordinary observer. *Egyptian Goddess*, 543 F.3d at 677.

Defendants, however, do not (and cannot) point to "numerous similar prior art designs" to emphasize the significance of the differences they highlight throughout their Motion—because there are none. (*See* Hearing Tr. at 123:13–14 ("[T]he '906 prior art design patent was the first

hoverboard ever invented.").) Defendants, instead, completely ignore such analysis and look solely to the D'906 Patent, which, as discussed above, is completely devoid of any features that Defendants rely on as distinguishing the Accused Products and Patents-in-Suit. Only upon a fulsome review of the prior art does it become apparent that the similarities between the Patents-in-Suit and the Accused Products stem from design features that were not well-established in the prior art. Unlike the Patents-in-Suit and the Accused Products, "none of the relevant prior art create the visual impression of an integrated hourglass body with a relatively flat surface across the top of the main body, pronounced 'footing' areas, and open-arched fenders over the top of the wheel area" or styling "lines across the body". (Hatch Decl. ¶¶ 66, 68, 70.)

Moreover, Lance Rake, Defendants' second expert, does little more than reference the D'906 Patent and, instead, draws irrelevant comparisons between the Accused Products and the corresponding later-filed D'857 Patent. (*See, e.g.*, Dkt. 629-4, "Rake Decl." ¶¶ 70, 76.) *See Bio-Tech. Gen. Corp.*, 80 F.3d at 1559 ("The existence of one's own patent does not constitute a defense to infringement of someone else's patent."). In doing so, Mr. Rake entirely fails to explain how an ordinary observer would perceive the differences between the Accused Products and the Patents-in-Suit in view of the prior art, undermining his analysis as a whole.[10] *Crocs*, 598 F.3d at 1303 (the "ordinary observer" test requires that "an ordinary observer, ***familiar with the prior art designs***, would be deceived into believing that the accused product is the same as the patented design.").

---

[10] Moreover, Mr. Rake's careless errors and mistakes in his declaration bear heavily on the reliability and credibility of his conclusions. For example, in his declaration (as with many previous ones), Mr. Rake proposes that he is "qualified to give an opinion about what would be understood by one skilled in the art of ***ceiling fans*** like those at issue here." (Rake Decl. ¶ 23.)

Accordingly, Defendants' reliance on the methods of analysis of their experts in support of this Motion raises significant questions and should not be relied upon in summary consideration of non-infringement of the Patents-in-Suit.

## IV. Conflicting Expert Opinions Preclude Summary Judgment.

Summary judgment is inappropriate where, as here, the parties have put forth conflicting expert testimony supporting their respective positions on infringement. *See Metro. Life Ins. Co. v. Bancorp Servs.*, L.L.C., 527 F.3d 1330, 1338-39 (Fed. Cir. 2008) (holding the "conflict in [expert] declarations created a genuine issue of material fact that made summary judgment inappropriate").

There is no doubt that the conclusions of Plaintiffs' expert, Mr. Hatch, are in direct conflict with those of Defendants' experts, Jim Gandy and Lance Rake. Perhaps most telling, however, is Defendants' reliance on the conflicting reports of their own two experts and their respective methods of analysis.

For example, Mr. Gandy centers his analysis on the comparison of the designs of the Accused Products and the Patents-in-Suit in view of the "closest prior art," identified by Defendants as the D'906 Patent. (*See* Dkt. 629-3, "Gandy Decl." ¶ 26.) Throughout his report, Mr. Gandy draws comparisons between the Patents-in-Suit and the D'906 Patent, and distinguishes the Accused Products from both. Mr. Rake, however, does not even appear to analyze the designs of the Accused Products and Patents-in-Suit in view of any prior art. Instead, Mr. Rake relies upon the similarities between the Accused Products and the D'857 Patent, a third-party, later-filed, patent (that the design of the Accused Product Gyroor A is allegedly based upon). (Rake Decl. ¶¶ 36–37.) In addition, Mr. Rake's analysis applies the "Gestalt principles of visual perception," specifically the so-called "Figure-Ground" principle (Rake Decl. ¶¶ 48–49), in concluding that "an ordinary observer familiar with the prior art would not find the Accused Products to be substantially similar to the claimed designs of the Patents-in-Suit" (Rake Decl. ¶ 77). Mr. Gandy,

21

however, with over thirty years of experience at the USPTO (Gandy Decl. ¶¶ 9–18), had never heard of this method of analysis until questioned by counsel for Plaintiff. (Gandy Tr. 71:11-21 ("Q: And in performing the ordinary observer analysis, are there any scientific principles that you rely upon? A: No, no. Q: Are you familiar with the term "gestalt"? A: "Gestalt? Q: Yes, sir. I can spell that for you. A: No, that's fine. I'm not familiar with that term.").) In fact, Mr. Rake's method finds no support in the law either, and is irreconcilable with the Federal Circuit's "ordinary observer" test. *Egyptian Goddess*, 543 F.3d at 670 (the ordinary observer only "giv[es] such attention as a purchaser usually gives").

Ignoring their own experts' conflicting methods of analysis, and in an attempt to support their assertion that there is no genuine dispute as to any material fact, Defendants attack Hatch's testimony. (Mem. at 35.) Contrary to Defendants' assertions, Hatch puts forth far more than a "conclusory" opinion regarding the infringement of the Patents-in-Suit by each of the Accused Products. In forming his opinion, Hatch construes the claimed scope of the each of the Patents-in-Suit (*see* Hatch Decl. ¶¶ 50–51, 53–54, 57–58, 61–62, 63–70), sets the level of acuity for the ordinary observer through which to view (*see* Hatch Decl. ¶¶ 37, 42, 160, 199), presents a fulsome analysis on the cited prior art of each of the Patents-in-Suit (*see* Hatch Decl. ¶¶ 63–70), and presents written descriptions of the overall impression of the design as a whole (*see* Hatch Decl. ¶¶ 89, 93, 97, 101, 105, 109, 113, 117, 121, 125, 129, 133, 137, 141, 145, 149, 153)—all of which Defendants' experts fail to do (Hatch Decl. ¶¶ 159, 162, 217). *Cf. Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 1001 (Fed. Cir. 2008) (conflicting expert opinion did not raise triable issue of fact where it was "***unsupported by any actual information***" and presented by a person who admitted to not being skilled in the relevant art) (cited in Mem. at 35).

Nevertheless, "[w]here there is a material dispute as to the credibility and weight that should be afforded to conflicting expert reports, summary judgment is usually inappropriate." *Crown Packaging Technology, Inc. v. Ball Metal Beverage Container Corp.*, 635 F.3d 1373, 1384 (Fed. Cir. 2011); *see also Kreg Therapeutics, Inc. v. VitalGo, Inc.*, No. 11-CV-6771, 2014 WL 1227311, at *7 (N.D. Ill. Mar. 25, 2014) (where parties relied almost exclusively on expert testimony, denying motion for summary judgment, as "district courts presiding over summary judgment proceedings may not weigh conflicting evidence or make credibility determinations").

Thus, the existence of three separate conflicting reports makes clear that genuine disputes of material fact exist regarding infringement of the Patents-in-Suit.

## V.  Defendants' Motion Fails to Comply with Local Rule 56.1.

As in Defendants' initial summary judgment motion (Dkt. 110), Defendants' memorandum again fails to "***cite directly*** to specific paragraphs in the L.R. 56.1 statements or responses" required by L.R. 56.1(a)(1) and L.R. 56.1(g). Given Defendants' repeated and continuing lack of adherence and clear disregard to L.R. 56.1, this Court should deny the motion under L.R. 56.1(a)(3).

## **CONCLUSION**

In viewing the entire design and its effect as a whole, and in light of the prior art, there remains triable issues as to whether an ordinary observer would find the Accused Product and the claimed designs of the Patents-in-Suit to be substantially similar. Accordingly, the Court should deny Defendants' Motion.


Dated: January 25, 2023                    Respectfully submitted,

                              TARTER KRINSKY & DROGIN LLP
                              By: */s/ Richard J.L. Lomuscio*

PALMERSHEIM & MATHEW LLP        Richard J.L. Lomuscio
Robert J. Palmersheim           Mark Berkowitz
Anand C. Mathew                 Chandler E. Sturm (admitted *pro hac vice*)
Timothy G. Parilla              1350 Broadway
401 N. Franklin Street, Suite 4S   New York, NY 10018
Chicago, IL 60654               Tel.:  (212) 216-8000
Tel.:  (312) 319-1791           Fax:  (212) 216-8001
E-mail: acm@thepmlawfirm.com    E-mail:  rlomuscio@tarterkrinsky.com
E-mail: rjp@thepmlawfirm.com    E-mail:  mberkowitz@tarterkrinsky.com
E-mail: tgp@thepmlawfirm.com    E-mail:  csturm@tarterkrinsky.com

                              *Attorneys for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 25, 2022, I electronically filed the above document with the Clerk of Court using the CM/ECF system which will send electronic notification of such filing(s) to all registered counsel.

By: <u>*/s/ Richard J.L. Lomuscio*</u>
　　　Richard J.L. Lomuscio