**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HANGZHOU CHIC INTELLIGENT TECHNOLOGY CO. and UNICORN GLOBAL, INC., | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 20-cv-4806 |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | Magistrate Judge Jeffrey Cole |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT AND THIRD-PARTY**
**RESPONDENTS' MOTION FOR SUMMARY JUDGEMENT OF NON-**
**INFRINGEMENT**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

FACTS ....................................................................................................................................2

    A.   The Patents-in-suit...............................................................................................2

    B.   Prior Art – U.S. Design Patent D739,906 ..........................................................2

    C.   Separate Patent Issued on Accused Products - U.S. Design Patents D808,857, U.S. Design Patents D808,856 and U.S. Design Patents D891, 297 ..............................2

    D.   The Accused Products............................................................................................3

    E.   Procedural Background...........................................................................................4

LEGAL STANDARD ...........................................................................................................5

    A.   Summary judgement of non-infringement in design patent cases ...........................5

    B.   Only the "ornamental features" of a design patent should be considered; "functional aspects" and "general design concepts" must be discounted for the non-infringement analysis...............................................................................................6

    C.   The "ordinary observer" must be conversant with the prior art..............................6

ARGUMENTS .......................................................................................................................7

    A.   The Patents-in-Suit should be construed based on the drawings..............................7

    B.   The scope of the claimed designs is limited to the ornamental aspects. ..................7

    C.   In the view of the Gestalt principles, the D'856 Patent, D'857 Patent, and D'297 Patent should be given due weight for non-infringement analysis. ..........................8

    D.   Non-infringement analysis of the Patents-in-Suit.....................................................10

CONCLUSION .....................................................................................................................25

CERTIFICATE OF SERVICE .............................................................................................27

## **TABLE OF AUTHORITIES**

**Case**                                                  **Page**

*Celotex Corp. v. Catrett*,
477 U.S. 317(1986)...............................................................................5

*Dobson v. Dornan*,
118 U.S. 10, 14 (1886)..........................................................................7

*Duff v. Sterling Pump Co*.,
107 U.S. 636 (1883)...............................................................................9

*Egyptian Goddess, Inc. v. Swisa, Inc*.,
543 F.3d 665 (Fed. Cir. 2008)...........................................................6, 7

*Elmer v. ICC Fabricating, Inc.*,
67 F.3d 1571 (Fed. Cir. 1995)..............................................................7

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc*,
796 F.3d 1312 (Fed. Cir. 2015)............................................................6

*Gutterglove, Inc. v. Am. Die & Rollforming, Inc.*,
No. 2:16-CV-02408-WHO, 2018 WL 2356756 (E.D. Cal. May 24, 2018) .....................9

*Havco Wood Prod., LLC v. Indus. Hardwood Prod., Inc.*,
No. 10-CV-566-WMC, 2012 WL 12995414 (W.D. Wis. Oct. 18, 2012) ........................9

*Lanard Toys Ltd. v. Dolgencorp LLC*,
958 F.3d 1337 (Fed. Cir. 2020)......................................................5, 6, 7

*Nat'l Presto Indus., Inc. v. W. Bend Co.*,
76 F.3d 1185 (Fed. Cir. 1996) ..............................................................9

*OddzOn Prods., Inc. v. Just Toys, Inc.*,
122 F.3d 1396 (Fed. Cir. 1997).............................................................6

*Parallel Networks, LLC v. Abercrombie & Fitch Co.*,
704 F.3d 958 (Fed. Cir. 2013) ..............................................................12

*Richardson v. Stanley Works, Inc.*,
597 F.3d 1288 (Fed. Cir. 2010).............................................................6

*Smith v. Whitman Saddle Co.*,
148 U.S. 674 (1893)...............................................................................6

*Siemens Med. Sols. USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*,
    637 F.3d 1269 (Fed. Cir. 2011) ...........................................................................9

*Sitrick v. Dreamworks, LLC.*,
    516 F.3d 993 (Fed. Cir. 2008) .............................................................................12

*Sport Dimension, Inc. v. Coleman Co.*,
    820 F.3d 1316, 1320 (Fed. Cir. 2016)....................................................................6

*Wallace v. Ideavillage Prods. Corp.*,
    640 Fed. Appx. 970 (Fed. Cir, 2016).....................................................................6

*Zygo Corp. v. Wyko Corp.*,
    79 F.3d 1563 (Fed. Cir. 1996) ..............................................................................9

**Rules**

Fed. R. Civ. P. 56(a) ..................................................................................................5

35 U.S. Code § 102(a)(2)............................................................................................2

## INTRODUCTION

Defendant Gyroor-US ("Defendant" or "Gyroor-US") and third-party respondents Gyroor, Urbanmax, GaodeshangUS, Fengchi-US, Gyroshoes, and HGSM (collectively, "Third-Party Respondents") hereby submit this memorandum in support of their Motion for Summary Judgment against Plaintiffs Hangzhou Chic Intelligent Technology Co., Ltd. ("Chic") and Unicorn Global, Inc.'s ("Unicorn", and collectively with Chic, "Plaintiffs").

A design patent on a product that has utilitarian (functional) features **_only_** prevents others from making, using, or selling a product whose overall appearance is substantially the same as the claimed design. The scope of the claimed design does not extend to "the broader general design concept." Thus, when construing the claimed designs, the scope of that claim must be limited to the ornamental aspects of the design and does not extend to the border general design concept.

Here, Defendant and Third-Party Respondents respectfully request the Court to grant a summary judgment of non-infringement of their accused products. When claimed designs are confined to the ornamental features depicted in the drawings, no ordinary observer would believe the design of the accused products is substantially similar to claimed designs of the Plaintiffs' patents. Further, Plaintiffs' patents, prior art, and accused products all have similar particular features. Plaintiffs' patents and accused products did not depart conspicuously from the prior art, and the overall hourglass shape of the accused products follows the prior art making the noninfringement obvious. Last but not least, under the *Gestalt principles*, because the eye will be attracted to areas of high contrast, an ordinary observer will find that the accused products are substantial similar to a separated patent which it was designed upon. The separated patent should be given due weight during the comparison and would further prove that an ordinary observer

1

would find the accused products are substantial similar to the separated patent instead of the Plaintiffs' patents.

In conclusion, as no ordinary observer would believe the design of the accused products is substantially similar to claimed designs of the Plaintiffs' patents, a summary judgment should be granted in favor of Defendant and Third-Party Respondents' accused products. The Court should find that the accused products does not infringe any of the Plaintiffs' patents.

## FACTS

**A. The Patents-in-suit**

Plaintiffs allege that Defendant and Third-Party Respondents' products ("Accused Products") infringed on their U.S. Design Patent Nos. D737,723 ("the 'D723 patent"), D738,256 ("the 'D256 patent"), D785,112 ("the 'D112 patent"), D784,195 ("the 'D195 patent") (collectively, "Patents-in-Suit"). [Dkt. 101; RSMP ¶¶17-21].

**B. Prior Art – U.S. Design Patent D739,906**

Under 35 U.S.C. §102(a)(2), prior art includes "a patent issued under section 151, or in an application for patent published or deemed published under section 122(b), in which the patent or application, as the case may be, names another inventor and was effectively filed before the effective filing date of the claimed invention."

The U.S. Design Patent D739,906 (the "D'906 Patent") was filed on March 12, 2013, earlier than any Patents-in-Suit. *See* D'906 Patent attached as **Exhibit 1**; RSMP ¶¶33-34. Therefore, the D'906 Patent is prior art to all Patents-in-Suit. [Dkt. 414-1].

**C. Separate Patent Issued on Accused Products - U.S. Design Patents D808,857, U.S. Design Patents D808,856 and U.S. Design Patents D891, 297**

    1.  U.S. Design Patents D808,857

U.S. Design Patents D808,857 (the "D'857 Patent") was issued to Accused Products on January 30, 2018. [Dkt. 414-2; RSMP ¶¶35-37]. The D'857 Patent was examined against all four Patents-in-suit. *Id*.

### 2. U.S. Design Patents D808,856

U.S. Design Patents D808,856 (the "D'856 Patent") was issued to Accused Products on January 30, 2018. [Dkt. 419-6; RSMP ¶¶38-40]. The D'856 Patent was examined against all four Patents-in-suit. *Id*.

### 3. U.S. Design Patents D891, 297

U.S. Design Patents D891,297 (the "D'297 Patent") was issued to Accused Products on July 28, 2020. [Dkt. 419-10; RSMP ¶¶41-43]. The D'297 Patent was examined against all four Patents-in-suit. *Id*.

### D. The Accused Products

Plaintiffs alleged that Defendants' products infringed on the Patents-in-suit, and the Accused products were grouped and identified as "Gyroor A", "Gyroor B", "Gyroor C", "Gyroor D" [Dkt. 385] and "Gyroor E" [Dkt. 456].

### 1. Accused Product A

Initially, only one product "Gyroor-A" (B07PHFP8GB "Accused Product A") was identified in the accompany Schedule A to the Third Amended Complaint. [Dkt. 101-14; RSMP ¶¶28].

### 2. Accused Product B

 "Gyroor-B", as shown below, (B08R23QQT8 "Accused Product B") was later identified in the "Amended Schedule A". [Dkt. 227; RSMP ¶¶29].

### 3. Accused Product C

"Gyroor-C" ("Accused Product C") was identified when Plaintiffs applied for the second preliminary injunction. [Dkt. 385; RSMP ¶¶30].

4. <u>Accused Product D</u>

As shown below, "Gyroor-D" (B08NT551P4 "Accused Product D") was identified in the "Amended Schedule A". [Dkt. 227; RSMP ¶¶31].

5. <u>Accused Product E</u>

As shown below, "Gyroor-E" ("Accused Product E") was first identified in the "Exhibit B" of the proposed order of Plaintiffs' second preliminary injunction order, but Plaintiffs had never mentioned it in any of their motion papers. [Dkt. 456]. On October 28, 2022, the proposed order which includes the Accused Product E was vacated by the Federal Circuit. On November 9, 2022, Plaintiffs filed another renewed motion for temporary restraining order and preliminary injunction which includes the Accused Product E in the renewed motion again [Dkt. 593]. However, this renewed motion was denied by the Court on December 2, 2022. [Dkt. 619; Dkt. 626; RSMP ¶¶32]. As it is unclear whether the Accused Product E is Accused Product in the current case, Defendant filed a motion to clarify on December 9, 2022. [Dkt. 625], and the motion is currently pending with the Court.

6. <u>All of the Accused Products are manufactured based on the D'856 Patent, D'857 Patent, and D'297 Patents</u>

All of the Accused Products are manufactured based on the D'856 Patent, D'857 Patent, and D'297 Patent as illustrated below in **Exhibit 2**.

**E. Procedural Background**

On August 17, 2020, Plaintiffs filed complaint against Defendant alleging that the Accused Products infringe the Patents-in-Suit. [Dkt.1]. On November 19, 2020, Plaintiffs amended their complaint [Dkt. 101].

On November 20, 2020, Plaintiffs filed their first motion for preliminary injunction against Defendant, which was later granted by the Court [Dkt. 105].

On May 6, 2021, Plaintiffs filed a motion to amend their Schedule A to include Third-Party Respondents as defendants [Dkt. 227], which the Court granted on May 24, 2021. [Dkt. 253].

On August 24, 2021, Plaintiffs filed a second preliminary injunction against the Third-Party Respondents [Dkt. 384]. The Court granted Plaintiffs' second preliminary injunction on October 13, 2021. [Dkt. 456].

On October 8, 2021, Third-Party Respondents filed an appeal to challenge the Court's order granting the preliminary injunctions on October 8, 2021. [Dkt. 450].

On October 28, 2022, Federal Circuit issued an opinion and vacated the Court's order granting Plaintiffs' motion to amend Schedule A and the two preliminary injunction orders issued by this Court and remanded to this Court for further proceedings. [Dkt. 590].

On November 9, 2022, Plaintiffs filed their renewed motion for temporary restraining order and preliminary injunction. [Dkt. 592]. In their motion, Plaintiffs voluntarily abandoned the 'D112 patent and the'D195 patent and Accused Product B and Accused Product D. This motion was denied by this Court on December 2, 2022. [Dkt. 619].

## LEGAL STANDARD

### A. Summary judgement of non-infringement in design patent cases

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1341 (Fed. Cir. 2020).

The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**B. Only the "ornamental features" of a design patent should be considered; "functional aspects" and "general design concepts" must be discounted for the non-infringement analysis.**

The sole test for determining whether a design patent has been infringed is the "ordinary observer" test. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008). Under the "ordinary observer" test, "a court must consider the ornamental features and analyze how they impact the overall design." *Lanard Toys Ltd.*, 958 F.3d at 1343 (citing *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1295 (Fed. Cir. 2010). "The scope of that claim, however, must be limited to the ornamental aspects of the design, and does not extend to 'the broader general design concept.'" *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1333 (Fed. Cir. 2015) (citing *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997).

"Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent." *Lanard Toys Ltd.*, 958 F.3d at 1342 (citing *Sport Dimension, Inc. v. Coleman Co.,* 820 F.3d 1316, 1320 (Fed. Cir. 2016); *OddzOn Prods., Inc*., 122 F.3d at 1405).

**C. The "ordinary observer" must be conversant with the prior art.**

"Where there are many examples of similar prior art designs, …, differences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the ***hypothetical ordinary observer who is conversant with the prior art***." *See Egyptian Goddess*, 543 F.3d at 678 (citing *Smith v. Whitman Saddle Co.*, 148 U.S. 674, (1893)); *see also Wallace v. Ideavillage Prods. Corp*., 640 Fed. Appx. 970, 978 (Fed. Cir, 2016).

The Federal Circuit holds that "the ordinary observer is deemed to view the differences between the patented design and the accused product *in the context of the prior art.* When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer *will be drawn to those aspects of the claimed design*

6

*that differ from the prior art*." *Lanard Toys Ltd.*, 958 F.3d at 1344 (quoting *Egyptian Goddess*, 543 F.3d at 676).

## **ARGUMENTS**

"Determining whether a design patent has been infringed is a two-part test: **(1)** the court first construes the claim to determine its meaning and scope; **(2)** the fact finder then compares the properly construed claim to the accused design." *Lanard Toys Ltd.*, 958 F.3d at 1341 (citing *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995)).

**A.    The Patents-in-Suit should be construed based on the drawings.**

"The Supreme Court has recognized, a design is better represented by an illustration 'than it could be by any description and a description would probably not be intelligible without the illustration.'" *Egyptian Goddess*, 543 F.3d at 679 (Fed. Cir. 2008) (quoting *Dobson v. Dornan*, 118 U.S. 10, 14 (1886)); *accord Manual of Patent Examining Procedure* ("MPEP") §1503.01 (9th ed. 2019).

"Given the recognized difficulties entailed in trying to describe a design in words, the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design." *Id*. Furthermore, broken lines in the patent figures form no part of the claimed design. *See* MPEP §1503.02. (broken lines are used to illustrate "structure that is not part of the claimed design.").

**B.    The scope of the claimed designs is limited to the ornamental aspects.**

1.    All design elements in the Patents-in-suit embody the "general design concept" of a hoverboard that dictates the structural and functional aspects of design elements.

All Patents-in-suit comprise six design elements: two identical standing pads, two identical wheels, and two indicial wheel covers. Disclosed in the utility patent U.S. 8,738,278 (the "'278 Utility Patent") – "two-wheel, self-balancing personal vehicle with independently movable foot

placement sections," a hoverboard comprises two "foot placement station[s]" and two "wheel[s]" associated with the foot placement station[s]." *See* the '278 Utility Patent attached as **Exhibit 5**; RSMP ¶¶44-46. The general design concept of wheel covers is also disclosed in the '278 Utility Patent. The same general design concept was also disclosed in the prior art – D'906 Patent.

It is undisputed that the "foot placement stations," "wheels," and "wheel covers" each carries essential utilitarian functions of a hoverboard – to stand, to move and operate, and to prevent road debris from being thrown into the air by the rotating wheels. Therefore, each design element of the Patents-in-suit has functional and ornamental aspects.

2.  The scope of the claimed designs is limited to the ornamental aspects of the Patents-in-suit

Aside from the "general design concept" of a hoverboard that comprises standing pads, wheels and wheel covers, the ornamental aspects of the design vary greatly. The wheels, wheel Covers, and standing pads all have functional aspects and ornamental aspects. The scope of the claims is limited to the ornamental aspects. The functional aspects should be "factored out" for claim construction.

**C. In the view of the Gestalt principles, the D'856 Patent, D'857 Patent, and D'297 Patent should be given due weight for non-infringement analysis.**

***First***, "the *Gestalt principles* of visual perception teaches us that the eye is attracted to areas of high contrast." [Decl. of Rake, Ex. 4, ¶¶ 48]. Under the *Figure-Ground principles*, "some shapes or contours take a prominent role (figure) while others recede into the background (ground)." *Id*. ¶¶ 49.

***Second***, while separate patents on accused products do not dispositively confer presumption of non-infringement, "the fact of separate patentability is relevant, and is entitled to

due weight." [1] Here, the D'856 Patent, D'857 Patent, and D'297 Patent, were all examined and granted in light of the Patents-in-suit, which demonstrates that the differences between the Accused Products and the Patents-in-suit are "not a mere colorable departure … but a substantial departure." *Duff v. Sterling Pump Co*, 107 U.S. 636, 639 (1883) (Fact of separate patentability of accused product demonstrated that the differences between accused product that was made in accordance with the separate patent and the invention claimed in the patent in suit were "not a mere colorable departure … but [were] a substantial departure." and, therefore, precluded a finding of infringement under the doctrine of equivalents.).

Therefore, the D'856 Patent, D'857 Patent, and D'297 Patent should be given due weight when conducting infringement analysis. Because of certain designs would be perceived as more dramatic and obvious, such as the size, shape, and character of the lights, size and shape of the fenders, an ordinary observer would find that the Accused Product is substantially similar to the D'856 Patent, D'857 Patent, and D'297 Patent because of the overall perception of the prominent ornamental features. [Decl. of Rake, Ex. 4, ¶¶ 54, 57, 60, 63, 66, 69, 72, 75]. In contrast, **no** ordinary observer would consider the Accused Product is substantially similar to the Patents-in-Suit. *Id*. ¶¶ 77-81.

---

[1] *Nat'l Presto Indus., Inc. v. W. Bend Co.*, 76 F.3d 1185, 1191 (Fed. Cir. 1996); *see also Siemens Med. Sols. USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1281 (Fed. Cir. 2011); *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1570 (Fed. Cir. 1996) ("The nonobviousness of the accused device, evidenced by the grant of a United States patent, is relevant to the issue of whether the change therein is substantial."); *Havco Wood Prod., LLC v. Indus. Hardwood Prod., Inc.*, No. 10-CV-566-WMC, 2012 WL 12995414, at *1 (W.D. Wis. Oct. 18, 2012); *Gutterglove, Inc. v. Am. Die & Rollforming, Inc.*, No. 2:16-CV-02408-WHO, 2018 WL 2356756, at *7 (E.D. Cal. May 24, 2018).

**D. Non-infringement analysis of the Patents-in-Suit**

1. The "Accused Product A" has a substantial different ornamental appearance than the designs claimed in the Patents-in-suit

*First*, the structure and design of hoverboard was first disclosed in the D'906 Patent, with an "hourglass" peripheral shape from the top view and two wheels covered by semi-circular wheel covers from the side view. *See* D'906 Patent attached as **Exhibit 1**.

*Second*, from the top view, Patents-in-Suit all have the same hour glass peripheral shape. [Decl. of Gandy, Ex. 3, ¶¶30, 36, 42; *See also* **Exhibit 6**]. In fact, the hour glass peripheral shape of the D'906 Patent appears to be closer to the claimed design of the Patents-in-Suit than the design of the Accused Product A. *Id*. For instance, the concavely curved recessed center portion of the top surface of the Patents-in-Suit and the design of the D'906 Patent both have a slightly raised convex contour, while the corresponding center portion of the top surface of the design of the Accused Product A is substantially flat and slightly recessed down below the opposing outer foot surfaces. *Id*.

The only common feature on the top surface of the claimed design of the Patents-in-Suit and the design of the Accused Product A not shown on the D'906 Patent is the foot pads on the opposing foot surfaces. However, it is clear from the enlarged isolated view below that the foot pads of the claimed design of the Patents-in-Suit and the design of the Accused Product A differ not only in their peripheral shape but also the decorative pattern of ribs on each. [Decl. of Gandy, Ex. 3, ¶¶32, 38; *See also* **Exhibit 6**].

*Third*, from the bottom view, the shape and appearance of the bottom surface of the Patents-in-Suit and the design of the D'906 Patent are virtually identical. [Decl. of Gandy, Ex. 3, ¶¶34, 40, 45; *See also* **Exhibit 6**]. Specifically, both the Patents-in-Suit and the design of the D'906 Patent have opposing flat, plain outer portions and a smooth continuous concavely curved central

portion. *Id*. However, the bottom surface of the design of the Accused Product A differs from both the Patents-in-Suit and the design of the D'906 Patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a slight diagonally upwardly protruding arcuate edge. *Id*. In addition, the recessed central portion of the design of the Accused Product A is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having six narrow longitudinal ribs. *Id*.

**Fourth**, from the front/back view, the front and rear surfaces of the Patents-in-Suit and the design of D'906 Patent are substantially similar in shape and appearance. [Decl. of Gandy, Ex. 3, ¶¶33, 39, 44; *See also* **Exhibit 6**]. Specifically, both designs have a vertically flat upper portion of the front and rear surfaces and a convexly curved lower portion that merges with the flat bottom surface. *Id*. On the contrary, while the design of the Accused Product A has front and rear surfaces having a vertically flat upper portion and a convexly curved lower portion that merges with the bottom surface as the Patents-in-Suit and the design of D'906 Patent, the central portion of the front and rear surfaces of the design of the Accused Product A differs significantly from the Patents-in-Suit and the design of D'906 Patent. *Id*. Specifically, directly below the vertically flat upper portion of the front and rear surfaces are recessed horizontally elongated LED lights and below the LED lights is an outwardly protruding horizontal band that extends inwardly and merges with the concavely curved recessed central portion. *Id*. Also, on the right front vertically flat upper portion of the design of the Accused Product A is the word "GYROOR". *Id*.

**Fifth**, it's noted that the wheel covers at each end of the claimed design of the Patents-in-Suit, the design of D'906 Patent, and the design of Accused Product A differ from each other as shown in the top plan view and front and rear views above as well as the side view and perspective view below. The shape and appearance of the wheel covers in the claimed design of the Patents-

in-Suit are closer to the wheel covers shown in broken lines in the design of D'906 Patent than the wheel covers of the design of the Accused Product A. [Decl. of Gandy, Ex. 3, ¶¶31, 37, 43; *See also* **Exhibit 6**]. Specifically, the wheel covers shown on the claimed design of the Patents-in-Suit and the design of D'906 Patent are both semi-circular in shape and extend over and cover the entire wheel, while the wheel covers on the design of the Accused Product A are somewhat squared off and do not extend over the entire wheel, but rather partially over the wheel. *Id*.

In conclusion, in view of the above analysis of the claimed design of the Patents-in-Suit with the design of the Accused Product A and the design of the D'906 Patent, the overall shape and appearance and identified features of the claimed design of the Patents-in-Suit are closer to the design of the D'906 Patent than the design of the Accused Product A. Further, the shape and appearance of the surfaces and features of the design of Accused Product A are substantial different from the claimed design of the Patents-in-Suit that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Moreover, Plaintiffs exclusively relied on Hatch's testimony to prove the alleged infringement. However, the Hatch's testimony was repeatedly rejected by the Federal Circuit and this Court due to wrongfully method of analysis that he applied. [Dkt. 626, p. 12]; *See also ABC Corp*, 52 F.4th at 944. Although the Court is required to view the evidence in the light most favorable to Plaintiffs, to create a genuine issue of material fact, Plaintiffs must present admissible evidence through Hatch (or otherwise) to rebut the evidence introduced by Defendant and Third-Party Respondents' experts. Because Hatch offered only conclusory assertions based on wrongfully methods of analysis, this is insufficient to defeat summary judgment on this point. *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 1001 (Fed. Cir. 2008) ("Conclusory expert assertions cannot raise triable issues of material fact on summary judgment."); *see also Parallel Networks, LLC v. Abercrombie & Fitch Co*., 704 F.3d 958, 970

(Fed. Cir. 2013)(ipse dixit testimony from [Plaintiff's] expert was insufficient to preclude summary judgment). Therefore, the design of the Accused Product A does not infringe the claimed design of the Patents-in-Suit.

   2.   The "Accused Product B" has a substantial different ornamental appearance than the designs claimed in the Patents-in-suit

   *First*, the structure and design of hoverboard was first disclosed in the D'906 Patent, with an "hourglass" peripheral shape from the top view and two wheels covered by semi-circular wheel covers from the side view.

   *Second*, from the top view, Patents-in-Suit all have the same hour glass peripheral shape. [Decl. of Gandy, Ex. 3, ¶¶47, 53, 59, 64; *See also* **Exhibit 7**]. In fact, the hour glass peripheral shape of the D'906 Patent appears to be closer to the claimed design of the Patents-in-Suit than the design of the Accused Product B. *Id*. Specifically, the recessed center portion of the claimed design of the Patents-in-Suit and the design of the D'906 Patent are concavely curved, whereas the recessed center portion of the design of the Accused Product B has a truncated "v" shape appearance comprising opposing diagonally straight edges that connect to a horizontally straight inner edge. *Id*. For instance, the concavely curved recessed center portion of the top surface of the Patents-in-Suit and the design of the D'906 Patent both have a slightly raised convex contour, while the corresponding center portion of the top surface of the design of the Accused Product B is substantially flat and slightly recessed down below the opposing outer foot surfaces. *Id*.

   The only common feature on the top surface of the claimed design of Patents-in-Suit and the design of the Accused Product B not shown on the design of the D'906 Patent is the foot pads on the opposing foot surfaces. However, it is clear from the enlarged isolated view below that the foot pads of the claimed design of the Patents-in-Suit and the design of the Accused Product B

differ significantly in their peripheral shape as well as the decorative pattern on each. [Decl. of Gandy, Ex. 3, ¶¶49, 55; *See also* **Exhibit 7**].

*Third*, from the bottom view, the shape and appearance of the bottom surface of the Patents-in-Suit and the design of the D'906 Patent are virtually identical. [Decl. of Gandy, Ex. 3, ¶¶51, 57, 62, 67; *See also* **Exhibit 7**]. Specifically, both the Patents-in-Suit and the design of the D'906 Patent have opposing flat, plain outer portions and a smooth continuous concavely curved central portion. *Id*. However, the bottom surface of the design of the Accused Product B differs from both the Patents-in-Suit and the design of the D'906 Patent in that the opposing flat outer portions have a downwardly protruding surface having a pattern of vent holes and the recessed central portion is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having four narrow longitudinal ribs. *Id*.

*Fourth*, from the front/back view, the front and rear surfaces of the Patents-in-Suit and the design of D'906 Patent are substantially similar in shape and appearance. [Decl. of Gandy, Ex. 3, ¶¶50, 56, 61, 66; *See also* **Exhibit 7**]. Specifically, both designs have a vertically flat upper portion of the front and rear surfaces and a convexly curved lower portion that merges with the flat bottom surface. *Id*. The only visual difference is the rounded parallelogram shaped LED lights at the opposing outer ends of the rear surface of the claimed design of the Patents-in-Suit and the lines on the front and rear surface of the claimed design of the Patents-in-Suit. *Id*. On the contrary, while the design of Accused Product B has front and rear surfaces having a convexly curved lower portion that merges with the bottom surface as the claimed design of the Patents-in-Suit and the design of D'906 Patent, the upper portion of the front and rear surfaces of the design of the Accused Product B differs significantly from claimed design of the Patents-in-Suit and the design of D'906 Patent. *Id*. Specifically, the upper portion of the front and rear surfaces of the Accused Product B

has a wide diagonally downwardly sloping portion that merges with a narrow vertically straight central portion. In addition, the front and rear surfaces of the Accused Product B have elongated asymmetrically shaped LED lights. *Id*.

**Fifth**, it's noted that the wheel covers at each end of the claimed design of the Patents-in-Suit, the design of D'906 Patent, and the design of Accused Product A differ from each other as shown in the top plan view and front and rear views above as well as the side view and perspective view below. The shape and appearance of the wheel covers in the claimed design of the Patents-in-Suit are closer to the wheel covers shown in broken lines in the design of D'906 Patent than the wheel covers of the design of the Accused Product B. [Decl. of Gandy, Ex. 3, ¶¶48, 54, 60, 65; *See also* **Exhibit 7**]. Specifically, the wheel covers shown on the claimed design of the Patents-in-Suit and the design of D'906 Patent are both semi-circular in shape and extend over and cover the entire wheel, while the wheel covers on the Accused Product B have opposing diagonally straight side edges a substantially flat top edge which curves outwardly but does not extend over the entire wheel, but rather partially over the wheel. *Id*. In addition, the inner surface of the wheel covers on the design of Accused Product B has a protruding trapezoidal shaped portion and the outwardly curved top surface includes the word "Gyroor". *Id*.

In conclusion, in view of the above analysis of the claimed design of the Patents-in-Suit with the design of the Accused Product B and the design of the D'906 Patent, the overall shape and appearance and identified features of the claimed design of the Patents-in-Suit are closer to the design of the D'906 Patent than the design of the Accused Product B. Further, the shape and appearance of the surfaces and features of the design of Accused Product B are substantial different from the claimed design of the Patents-in-Suit that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Moreover, Plaintiffs

exclusively relied on Hatch's testimony to prove the alleged infringement. However, the Hatch's testimony was repeatedly rejected by the Federal Circuit and this Court due to wrongfully method of analysis. [Dkt. 626, p. 12]; *See also ABC Corp*, 52 F.4th at 944. As discussed above, because Hatch offered only conclusory assertions based on wrongfully methods of analysis which is insufficient to defeat summary judgment on this point, Plaintiffs cannot create a genuine dispute of material fact regarding the alleged infringement. Therefore, the design of the Accused Product B does not infringe the claimed design of the Patents-in-Suit.

3. The "Accused Product C" has a substantial different ornamental appearance than the designs claimed in the Patents-in-suit

*First*, the structure and design of hoverboard was first disclosed in the D'906 Patent, with an "hourglass" peripheral shape from the top view and two wheels covered by semi-circular wheel covers from the side view.

*Second*, from the top view, Patents-in-Suit all have the same hour glass peripheral shape. [Decl. of Gandy, Ex. 3, ¶¶69, 75, 81; *See also* **Exhibit 8**]. In fact, the hour glass peripheral shape of the D'906 Patent appears to be closer to the claimed design of the Patents-in-Suit than the design of the Accused Product C. *Id*. For instance, the concavely curved recessed center portion of the top surface of the Patents-in-Suit and the design of the D'906 Patent both have a slightly raised convex contour, while the corresponding center portion of the top surface of the design of the Accused Product C is substantially flat and slightly recessed down below the opposing outer foot surfaces. *Id*.

The only common feature on the top surface of the claimed design of Patents-in-Suit and the design of the Accused Product C not shown on the design of the D'906 Patent is the foot pads on the opposing foot surfaces. However, it is clear from the enlarged isolated view below that the foot pads of the claimed design of the Patents-in-Suit and the design of the Accused Product B

16

differ significantly in their peripheral shape as well as the decorative pattern on each. [Decl. of Gandy, Ex. 3, ¶¶71, 77; *See also* **Exhibit 8**].

**Third**, from the bottom view, the shape and appearance of the bottom surface of the Patents-in-Suit and the design of the D'906 Patent are virtually identical. [Decl. of Gandy, Ex. 3, ¶¶73, 79, 84; *See also* **Exhibit 8**]. Specifically, both the Patents-in-Suit and the design of the D'906 Patent have opposing flat, plain outer portions and a smooth continuous concavely curved central portion. *Id*. However, the bottom surface of the design of the Accused Product C differs from both the claimed design of Patents-in-Suit and the design of the D'906 Patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a slight diagonally downwardly protruding arcuate edge. *Id*. In addition, the recessed central portion of the design of the Accused Product A is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having six narrow longitudinal ribs. *Id*.

**Fourth**, from the front/back view, the front and rear surfaces of the Patents-in-Suit and the design of D'906 Patent are substantially similar in shape and appearance. [Decl. of Gandy, Ex. 3, ¶¶72, 78, 83; *See also* **Exhibit 8**]. Specifically, both designs have a vertically flat upper portion of the front and rear surfaces and a convexly curved lower portion that merges with the flat bottom surface. *Id*. The only visual difference is the rounded parallelogram shaped LED lights at the opposing outer ends of the rear surface of the claimed design of the Patents-in-Suit and the lines on the front and rear surface of the claimed design of the Patents-in-Suit. *Id*. On the contrary, while the design of the Accused Product C has front and rear surfaces having a vertically flat upper portion and a convexly curved lower portion that merges with the bottom surface as the claimed design of the Patents-in-Suit and the design of D'906 Patent, the central portion of the front and rear surfaces of the design of the Accused Product C differs significantly from the claimed design

of the Patents-in-Suit and the design of D'906 Patent. *Id*. Specifically, directly below the vertically flat upper portion of the front and rear surfaces are recessed horizontally elongated LED lights and below the LED lights is an outwardly protruding horizontal band that extends inwardly and merges with the recessed central portion. *Id*.

*Fifth*, it's noted that the wheel covers at each end of the claimed design of the Patents-in-Suit, the design of D'906 Patent, and the design of Accused Product C are all semi-circular in shape. [Decl. of Gandy, Ex. 3, ¶¶70, 76; *See also* **Exhibit 8**]. However, the wheel covers of the Patents-in-Suit and the design of D'906 Patent extend over and cover the entire wheel, while the wheel covers on the design of Accused Product C do not extend down over the wheel. *Id*.

In conclusion, in view of the above analysis of the claimed design of the Patents-in-Suit with the design of the Accused Product C and the design of the D'906 Patent, the overall shape and appearance and identified features of the claimed design of the Patents-in-Suit are closer to the design of the D'906 Patent than the design of the Accused Product C. Further, the shape and appearance of the surfaces and features of the design of Accused Product C are substantial different from the claimed design of the Patents-in-Suit that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Moreover, Plaintiffs exclusively relied on Hatch's testimony to prove the alleged infringement. However, the Hatch's testimony was repeatedly rejected by the Federal Circuit and this Court due to wrongfully method of analysis. [Dkt. 626, p. 12]; *See also ABC Corp*, 52 F.4th at 944. As discussed above, because Hatch offered only conclusory assertions based on wrongfully methods of analysis which is insufficient to defeat summary judgment on this point, Plaintiffs cannot create a genuine dispute of material fact regarding the alleged infringement. Therefore, the design of the Accused Product C does not infringe the claimed design of the Patents-in-Suit.

18

4. The "Accused Product D" has a substantial different ornamental appearance than the designs claimed in the Patents-in-suit

*First*, the structure and design of hoverboard was first disclosed in the D'906 Patent, with an "hourglass" peripheral shape from the top view and two wheels covered by semi-circular wheel covers from the side view.

*Second*, from the top view, Patents-in-Suit all have the same hour glass peripheral shape. [Decl. of Gandy, Ex. 3, ¶¶86, 92, 98, 103; *See also* **Exhibit 9**]. In fact, the hour glass peripheral shape of the D'906 Patent appears to be closer to the claimed design of the Patents-in-Suit than the design of the Accused Product D. *Id*. Specifically, the recessed center portion of the claimed design of the Patents-in-Suit and the design of the D'906 Patent are concavely curved, whereas the recessed center portion of the design of the Accused Product D has a truncated "v" shape appearance comprising opposing diagonally straight edges that connect to a horizontally straight inner edge. *Id*. For instance, the concavely curved recessed center portion of the top surface of the Patents-in-Suit and the design of the D'906 Patent both have a slightly raised convex contour, while the corresponding center portion of the top surface of the design of the Accused Product D is slightly recessed down below the opposing outer foot surfaces and has a pattern of longitudinal ribs that extend down onto the front and rear surfaces. *Id*.

The only common feature on the top surface of the claimed design of Patents-in-Suit and the design of the Accused Product D not shown on the design of the D'906 Patent is the foot pads on the opposing foot surfaces. However, it is clear from the enlarged isolated view below that the foot pads of the claimed design of the Patents-in-Suit and the design of the Accused Product D differ significantly in their peripheral shape as well as the decorative pattern on each. [Decl. of Gandy, Ex. 3, ¶¶88, 94; *See also* **Exhibit 9**].

*Third*, from the bottom view, the shape and appearance of the bottom surface of the Patents-in-Suit and the design of the D'906 Patent are virtually identical. [Decl. of Gandy, Ex. 3, ¶¶90, 96, 101, 106; *See also* **Exhibit 9**]. Specifically, both the Patents-in-Suit and the design of the D'906 Patent have opposing flat, plain outer portions and a smooth continuous concavely curved central portion. *Id*. However, the bottom surface of the design of the Accused Product D differs from both the Patents-in-Suit and the design of the D'906 Patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a diagonally downwardly protruding edge. *Id*. In addition, the recessed central portion of the design of the Accused Product D has a pattern of longitudinal ribs that extend down from the front and rear surfaces. *Id*.

*Fourth*, from the front/back view, the front and rear surfaces of the Patents-in-Suit and the design of D'906 Patent are substantially similar in shape and appearance. [Decl. of Gandy, Ex. 3, ¶¶89, 95, 100, 105; *See also* **Exhibit 9**]. Specifically, both designs have a vertically flat upper portion of the front and rear surfaces and a convexly curved lower portion that merges with the flat bottom surface. *Id*. The only visual difference is the rounded parallelogram shaped LED lights at the opposing outer ends of the rear surface of the claimed design of the Patents-in-Suit and the lines on the front and rear surface of the claimed design of the Patents-in-Suit. *Id*. On the contrary, while the design of the Accused Product D has front and rear surfaces having a vertically flat upper portion and a convexly curved lower portion that merges with the bottom surface as the claimed design of the Patents-in-Suit and the design of D'906 Patent, the central portion of the front and rear surfaces of the design of Accused Product D differs significantly from claimed design of the Patents-in-Suit and the design of D'906 Patent. *Id*. In addition, the recessed center portion of the

front and rear surfaces of the Accused Product D has spaced vertical ribs, and the right front vertically flat upper portion includes the word "GYROOR". *Id*.

*Fifth*, it's noted that the wheel covers at each end of the claimed design of the Patents-in-Suit, the design of D'906 Patent, and the design of Accused Product A differ from each other as shown in the top plan view and front and rear views above as well as the side view and perspective view below. The shape and appearance of the wheel covers in the claimed design of the Patents-in-Suit are closer to the wheel covers shown in broken lines in the design of D'906 Patent than the wheel covers of the design of the Accused Product D. [Decl. of Gandy, Ex. 3, ¶¶87, 93, 99, 104; *See also* **Exhibit 9**]. Specifically, the wheel covers shown on the claimed design of the Patents-in-Suit and the design of D'906 Patent are both semi-circular in shape and extend over and cover the entire wheel, while the wheel covers on the design of Accused Product D have opposing diagonally straight side edges a substantially flat top edge which curves outwardly but does not extend over the entire wheel. *Id*.

In conclusion, in view of the above analysis of the claimed design of the Patents-in-Suit with the design of the Accused Product D and the design of the D'906 Patent, the overall shape and appearance and identified features of the claimed design of the Patents-in-Suit are closer to the design of the D'906 Patent than the design of the Accused Product D. Further, the shape and appearance of the surfaces and features of the design of Accused Product D are substantial different from the claimed design of the Patents-in-Suit that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Moreover, Plaintiffs exclusively relied on Hatch's testimony to prove the alleged infringement. However, the Hatch's testimony was repeatedly rejected by the Federal Circuit and this Court due to wrongfully method of analysis. [Dkt. 626, p. 12]; *See also ABC Corp*, 52 F.4th at 944. As discussed above, because

21

Hatch offers only conclusory assertions based on wrongfully methods of analysis which is insufficient to defeat summary judgment on this point, Plaintiffs cannot create a genuine dispute of material fact regarding the alleged infringement. Therefore, the design of the Accused Product D does not infringe the claimed design of the Patents-in-Suit.

5. The "Accused Product E" has a substantial different ornamental appearance than the designs claimed in the Patents-in-suit

*First*, the structure and design of hoverboard was first disclosed in the D'906 Patent, with an "hourglass" peripheral shape from the top view and two wheels covered by semi-circular wheel covers from the side view.

*Second*, from the top view, Patents-in-Suit all have the same hour glass peripheral shape. In fact, the hour glass peripheral shape of the D'906 Patent appears to be closer to the claimed design of the Patents-in-Suit than the design of the Accused Product E. *See* **Exhibit 10**. For instance, the concavely curved recessed center portion of the top surface of the Patents-in-Suit and the design of the D'906 Patent both have a slightly raised convex contour, while the corresponding center portion of the top surface of the design of the Accused Product E is substantially flat and slightly recessed down below the opposing outer foot surfaces. *Id*.

The only common feature on the top surface of the claimed design of Patents-in-Suit and the design of the Accused Product E not shown on the design of the D'906 Patent is the foot pads on the opposing foot surfaces. *Id*. However, it is clear from the enlarged isolated view below that the foot pads of the claimed design of the Patents-in-Suit and the design of the Accused Product E differ significantly in their peripheral shape as well as the decorative pattern on each. In addition, Accused Product E have an automated flashing feature on the petals unlike the claimed design of the Patents-in-Suit. *Id*.

*Third*, from the front and rear views, the concavely curved recessed center portion of the top surface of the claimed design of the Patents-in-Suit and the design of the D'906 Patent both have a slightly raised convex contour, while the corresponding center portion of the top surface of the design of the Accused Product E is substantially flat and slightly recessed down below the opposing outer foot surfaces. [Decl. of Gandy, Ex. 3, ¶¶108, 114; *See also* **Exhibit 10**].

*Fourth*, from the perspective view, the front and rear surfaces of the claimed design of the Patents-in-Suit and the design of the D'906 Patent are substantially similar in shape and appearance. Specifically, both designs have a vertically flat upper portion of the front and rear surfaces and a convexly curved lower portion that merges with the flat bottom surface. [Decl. of Gandy, Ex. 3, ¶¶111, 117; *See also* **Exhibit 10**]. The only visual difference is the rounded parallelogram shaped LED lights at the opposing outer ends of the rear surface of the claimed design of Patents-in-Suit and the lines on the front and rear surface of the claimed design of Patents-in-Suit. *Id*. On the contrary, while the design of the Accused Product E has front and rear surfaces having a vertically flat upper portion and a convexly curved lower portion that merges with the bottom surface as the claimed design of the Patents-in-Suit and the design of the D'906 Patent, the central portion of the front and rear surfaces of the design of the Accused Product E differs significantly from the claimed design of the Patents-in-Suit and the design of D'906 Patent. *Id*. Specifically, directly below the vertically flat upper portion of the front and rear surfaces are recessed horizontally elongated LED lights with quarter rounded inner ends. *Id*.

*Fifth*, from the bottom view, the shape and appearance of the bottom surface of the claimed design of the Patents-in-Suit and the design of the D'906 Patent are virtually identical. Specifically, both the claimed design of the Patents-in-Suit and the design of D'906 have opposing flat, plain outer portions and a smooth continuous concavely curved central portion which is best shown in

the front and rear views above. [Decl. of Gandy, Ex. 3, ¶¶112, 118; *See also* **Exhibit 10**]. However, the bottom surface of the design of the Accused Product E differs from both the claimed design of claimed design of the Patents-in-Suit and the design of D'906 in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a slight diagonally downwardly protruding arcuate edge. *Id*. *In* addition, the recessed central portion of the design of the Accused Product E is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having six narrow longitudinal ribs. *Id*.

**Sixth**, the shape and appearance of the wheel covers in the claimed design of the Patents-in-Suit are closer to the wheel covers shown in broken lines in the design of the D'906 than the wheel covers of the design of the Accused Product E. [Decl. of Gandy, Ex. 3, ¶¶109, 115, 121; *See also* **Exhibit 10**]. Specifically, the wheel covers shown on the claimed design of the Patents-in-Suit and the design of D'906 are both semi-circular in shape and extend over and cover the entire wheel, while the wheel covers on the design of the Accused Product E are somewhat squared off and do not extend over the entire wheel, but rather partially over the wheel. *Id*.

In conclusion, in view of the above analysis of the claimed design of the Patents-in-Suit with the design of the Accused Product E and the design of the D'906 Patent, the overall shape and appearance and identified features of the claimed design of the Patents-in-Suit are closer to the design of the D'906 Patent than the design of the Accused Product E. Further, the shape and appearance of the surfaces and features of the design of Accused Product E are substantial different from the claimed design of the Patents-in-Suit that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Moreover, Plaintiffs exclusively relied on Hatch's testimony to prove the alleged infringement. However, the Hatch's testimony was repeatedly rejected by the Federal Circuit and this Court due to wrongfully method

of analysis. [Dkt. 626, p. 12]; *See also ABC Corp*, 52 F.4th at 944. As discussed above, because Hatch offers only conclusory assertions based on wrongfully methods of analysis which is insufficient to defeat summary judgment on this point, Plaintiffs cannot create a genuine dispute of material fact regarding the alleged infringement. Therefore, the design of the Accused Product E does not infringe the claimed design of the Patents-in-Suit.

## **CONCLUSION**

For the foregoing reasons, Defendant and Third-Party Respondents respectfully request the Court find that the Accused Products do not infringe on the Patents-in-Suit.

Date: 9/6/2023 _____

/s/ Na Zhang _____
Na Zhang, Esq
GLACIER LAW LLP
506 Second Ave., Ste 1516
Seattle, WA 98104
queena.zhang@glacier.law
206-397-8633

GLACIER LAW LLP
41 Madison Avenue, Ste 2529
New York, NY 10010
Wei Wang, Esq.
wei.wang@glacier.law
332-777-7315

GLACIER LAW LLP
9660 Flair Dr., Ste 328
El Monte, CA 91731
Yu Hao Yao, Esq.
mickey.yao@glaicer.law
312-448-7772

GLACIER LAW LLP
200 E. Randolph Dr., Ste. 5100
Chicago, IL 60601
Ruoting Men, Esq.
ruoting.men@glacier.law

Tianyu Ju, Esq.
Iris.ju@glacier.law
312-270-0413

***Attorney for Defendant and Third-Party Respondents***

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this September 6, 2023, I electronically filed the foregoing

file with the Clerk of Court using the CM/ECF system, and service was perfected on all counsel

of record and interested parties through this system, which will deliver a true and correct copy of

the foregoing documents via CM/ECF.


Date: 9/6/2023 _____     /s/ Na Zhang _____