# Exhibit B

```
 1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3
    HANGZHOU CHIC INTELLIGENT and     )
 4  UNICORN GLOBAL, INC.,             )
                                      )
 5                   Plaintiffs,      )
    -vs-                              )
 6                                    )  Case No. 20 C 4806
    THE PARTNERSHIPS AND              )
 7  UNINCORPORATED ASSOCIATIONS       )  Chicago, Illinois
    IDENTIFIED ON SCHEDULE "A,"       )  December 2, 2022
 8                                    )  10:00 a.m.
                     Defendants.      )
 9

10     TRANSCRIPT OF PROCEEDINGS - PRELIMINARY INJUNCTION HEARING
                BEFORE THE HONORABLE THOMAS M. DURKIN
11
    APPEARANCES:
12
    For the Plaintiffs:    TARTER KRINSKY & DROGIN LLP
13                         BY:  MR. RICHARD JOSEPH LAMAR LOMUSCIO
                                MS. CHANDLER ELIZABETH STURM
14                              MR. MARK BERKOWITZ
                           1350 Broadway
15                         11th Floor
                           New York, NY 10018
16
                           PALMERSHEIM & MATHEW
17                         BY:  MR. ANAND C. MATHEW
                           401 N. Franklin Street
18                         Suite 4S
                           Chicago, IL 60654
19

20

21

22
    Court Reporter:        KELLY M. FITZGERALD, CSR, RMR, CRR
23                         Official Court Reporter
                           United States District Court
24                         219 South Dearborn Street, Room 1420
                           Chicago, Illinois  60604
25                         Telephone:  (312) 818-6626
                           kmftranscripts@gmail.com
```

```
 1   APPEARANCES:   (Continued)

 2
     For the Defendants:      GLACIER LAW LLP
 3                            BY:  MR. YU-HAO YAO
                              9660 Flair Drive
 4                            Suite 328
                              El Monte, CA 91731
 5
                              GLACIER LAW LLP
 6                            BY:  MR. HE CHENG
                                   MR. TAO LIU
 7                            41 Madison Avenue
                              Suite 2529
 8                            New York, NY 10010

 9                            GLACIER LAW LLP
                              BY:  MR. WEI WANG
10                            200 Park Avenue
                              Suite 1703
11                            New York, NY 10166

12
13   ALSO PRESENT:            Mr. Peter Phaneuf

14

15

16

17

18

19

20

21

22

23

24

25
```

1    also that the '906 was invented at or around the same time, or

2    this was filed at or around the same time.  And so even though

3    it wasn't -- the inventors did not include it or this hadn't

4    been made public at the time that the patents in issue were

5    filed, this is considered prior art in this case.

6            And so the '906 adds to our understanding of what

7    existed at that time.

8    Q.   Okay.  And can you characterize the '906 patent for us?

9    A.   Yes.  So we see from the '906 that it is also for a

10   similar-type vehicle, a self-balancing vehicle is our

11   understanding, and we see a very slick race move body.

12   Obviously we are seeing an hourglass shape which we saw in a

13   number of the other prior art as well.  That itself was not

14   unique to the '906 when it was filed.  Hourglasses have been

15   around for a while.

16           However, what we're seeing here is their

17   interpretation of that form in the way that it's so smooth and

18   so rounded, and I believe in my deposition I used the word

19   melted.  It doesn't have those sort of hardened edges that we

20   see in some of the other prior art at the time.

21   Q.   Okay.  So we've now established the universe of prior art.

22   Can you tell us how that sort of plays into your analysis in

23   connection with these particular patents for each of the '256

24   and '723?

25   A.   Yes.  And I think maybe going back to the last side, I

1  think it's important to see that, you know, with our

2  understanding of what existed at the time, the '723 and '256

3  patents provided something that was really quite different,

4  quite radically different, and hadn't existed before it.  So

5  in doing so, we see that the prior art is really quite far

6  away from the patents at issue, and, therefore, you would

7  understand that it has very broad scope.

8  Q.  Okay.  So we've now covered the first three steps of the

9  analysis.  We've construed the claims, defined the ordinary

10  observer.  We've gone through your understanding of the prior

11  art.  What's the next step?

12  A.  So the next step, if you go forward -- thank you.

13         THE COURT:  Do you need some water?

14         THE WITNESS:  Thank you.

15         THE COURT:  Oh, you've got some.  Okay.

16  BY THE WITNESS:

17  A.  So in the next step, as I had mentioned before, first of

18  all, we do a direct comparison between the patent, the design

19  as a whole of the claimed part of the patent to the accused

20  product.  And, again, of course my analysis was to the

21  physical product that I had at hand.

22         Here, as specifically, we're looking at a more sort

23  of broader look in this direct comparison to understand if are

24  they plainly dissimilar, are we looking at an apple and a

25  banana, or are we looking at similar products here.

1   where I compared in the first step Gyroor E to the '723 patent

2   and found they are not plainly dissimilar, and then comparing

3   to the prior art to understand how much effects the

4   differences have between the two products.  I also found that

5   Gyroor E and the '723 are much closer together, not identical,

6   but much closer together than the prior art.

7   Q.   To the judge's question, are there any notable differences

8   between the A, C, and now looking at E?

9   A.   Yes.  And, again, in the fender area, we see that it has a

10  somewhat shorter fender than Gyroor B, for instance.  It may

11  be a little closer to A if we were looking at that part in

12  isolation.  We see some differences around the lighting area

13  and the grooves are generally the same sort of feel; but when

14  we compare, we do see differences.

15  Q.   Okay.  As far as your infringement analysis, what is the

16  impact of those differences?

17  A.   Because of how far away the '906 is, the impacts of those

18  is relatively insignificant on the overall impression.  They

19  do -- they are part of the overall impression, and if we were

20  comparing only A, B, and E together, we would then be seeing a

21  narrowing down on those slight differences as being very

22  important.  However, of course, when comparing directly to the

23  '906, we see how insignificant small differences are in

24  particular between the accused products and the patent.

25  Q.   Okay.  I just want to -- so with respect to the Gyroor E

Case 1:20-cv-04866-LDD Document #: 62-1 Filed 12/07/23 Page 7 of 10 PageID #: 1542
Gandy - direct by Cheng
123

1  and still perform the same function, then it would have to be

2  considered clearly primarily ornamental rather than primarily

3  functional.

4        THE COURT:  All right.  Thank you.

5  BY MR. CHENG:

6  Q.  And Mr. Hatch also mentioned that D '906 patent doesn't

7  have foot padding.  However, the D '723 patent had the foot

8  padding, and because '723 has the foot padding and the accused

9  product A have the foot padding, they are somehow closer to

10  each other.

11        Do you agree with that analysis?

12  A.  No.  I don't agree with that because what we have to look

13  at in this instance is the '906 prior art design patent was

14  the first hoverboard ever invented.  So hoverboards that would

15  be designed after that may have additional features on them

16  that are not in the prior art, and if it's not in the prior

17  art, what's considered the best prior art reference, that

18  doesn't mean that the alleged infringing product is -- is

19  infringing the claimed design, in this instance '723.

20        You have to look.  Once you see that there are

21  features that are not in the prior art, then you have to start

22  evaluating those features between the alleged infringing

23  product with the claimed design, in this instance, the '723

24  patent.

25  Q.  So you're saying the idea of adding the foot pad is not

Case: 1:20-cv-04806 Document #: 6701 Filed: 12/09/23 Page 8 of 10 PageID #: 17257
Gandy - cross by Sturm
138

1      And all of the photos that you included in your
2  report were provided by defendants' counsel; is that correct?
3  A.   That's correct.
4  Q.   So looking at the patents, I guess the '723, you would say
5  that the '723 patent has raised foot pads; is that correct?
6  A.   I'm sorry, has what?
7  Q.   Has raised foot pads?
8  A.   Yes.
9  Q.   Yes.  And you would say the same for the '256 patent?
10 A.   Yes.
11 Q.   Are you aware of any other prior art patents with raised
12 foot pads?
13 A.   I haven't looked at any.  I mean, there may be, but I
14 haven't looked at any as far as pointing out whether this has
15 been done maybe in patents or hoverboards that were patented
16 prior to these two.
17      THE COURT:  By raised foot pads, do you mean the foot
18 pads have grooves in them, or do you mean they're higher than
19 the center of the -- you testified earlier the foot pads
20 appear higher than the center, at least on the --
21      THE WITNESS:  On the accused products.
22      THE COURT:  -- on the accused products.
23      THE WITNESS:  Right.
24      THE COURT:  And you just said there are raised foot
25 pads in these patents.  Are you referring to the grooves on

Case 1:20-cv-04806-DD Document #: 6701 Filed 12/05/22 Page 49 of 180 PageID #:17259
Gandy - cross by Sturm
140

1    is recessed, but not only is the foot pad raised, but the

2    actual pads themselves are also raised --

3              THE COURT:  Okay.

4              THE WITNESS:  -- on those surfaces.

5              THE COURT:  Thanks.  Thanks for clarifying that.

6    BY MS. STURM:

7    Q.   And you would say that the '723 patent has fenders over

8    the wheels; is that correct?

9    A.   Yeah, I don't have the '723 up here.

10              Okay.  Yeah, go ahead.

11   Q.   So you would say that the '723 patent has raised -- sorry,

12   has fenders; is that correct?

13   A.   Yes.

14   Q.   And the same for the '256; is that correct?

15   A.   Yes.

16   Q.   Are you aware of any prior art patents that have fenders?

17   A.   Other than what's showed disclosed in the '906, I haven't

18   looked -- I mean, as far as my -- what I was retained for

19   here, I have not done any searching to see whether there's

20   other prior art patents out there that may have this.  I'm

21   just looking at what was presented to me and the '906 prior

22   art.

23   Q.   So you would say that none of the prior art patents that

24   were cited on the face of both the '256 and the '723, none of

25   those patents had fenders; is that correct?

1   hopefully you can come up with an agreed briefing schedule

2   whether it's one side seeking it, another side not, or whether

3   it's joint summary judgment motions.  Either way, come up with

4   an agreed briefing schedule.

5          If you can't reach an agreement, note your

6   disagreements in an email to my courtroom deputy, and I'll

7   resolve the disagreements and we'll have a briefing schedule

8   on summary judgment, and then we'll proceed from here.

9          Okay.  Last chance, any questions by plaintiff?

10          MR. LOMUSCIO:  No, your Honor.

11          THE COURT:  Any questions by defendant?

12          MR. YAO:  No, your Honor.

13          THE COURT:  All right.  Thank you all for a very

14   interesting presentation and for the witnesses and their time.

15   Thank you all.

16     (Which were all the proceedings heard.)

17                    C E R T I F I C A T E
              We certify that the foregoing is a correct
18   transcript from the record of proceedings in the
     above-entitled matter.

19
          /s/ Kelly M. Fitzgerald
20   _____

21
          /s/ Kathleen M. Fennell          December 3, 2022
22   _____  _____
              Official Court Reporters              Date
23          United States District Court
            Northern District of Illinois
24             Eastern Division

25