**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HANGZHOU CHIC INTELLIGENT TECHNOLOGY CO. and UNICORN GLOBAL, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 20-cv-4806 |
| v. | ) ) | Judge Thomas M. Durkin |
| | ) | Magistrate Judge Jeffrey Cole |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, | ) ) ) ) | |
| Defendants. | ) ) | |

**REPLY MEMORANDUM TO PLAINTIFFS' OPPOSITION TO
DEFENDANT AND THIRD-PARTY RESPONDENTS' MOTION FOR
<u>SUMMARY JUDGEMENT OF NON-INFRINGEMENT</u>**

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ................................................................... 1

II.     LEGAL STANDARD .............................................................................. 2

III.    ARGUMENT...................................................................................... 3

   A.   The Hypothetical Ordinary Observer Should Be A Purchaser Who Is Familiar
        With Hoverboards And The Prior Art Designs. ................................. 4

   B.   Small Differences Between The Patents-In-Suit And Accused Products Are
        Likely To Be Important To The Eye Of The Hypothetical Ordinary Observer.
        .................................................................................................. 5

   C.   The Accused Products Are Plainly Dissimilar To The Claimed Designs Of The
        Patents-In-Suit After Factoring Out Functional Aspects.................................. 7

   D.   In The Light Of The D'906 Patent, No Ordinary Observer Would Think The
        Design Of Accused Products Is Substantially Similar To The Claimed Designs
        Of The Patents-In-Suit................................................................... 9

   E.   Plaintiffs' Filing Of An Expert Report Purporting To Establish Conflicting
        Opinions Does Not Foreclose Summary Judgment. .......................... 12

   IV.  CONCLUSION .............................................................................. 14

CERTIFICATE OF SERVICE ............................................................................15

i

## <u>TABLE OF AUTHORITIES</u>

**Case**      **Page**

*Ammons v. Aramark Unif. Servs., Inc.*,
    368 F.3d 809, 817 (7th Cir.2004) ...................................................................2

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 248 (1986)................................................................................2

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 323 (1986)............................................................................2, 3

*Crocs, Inc. v. Int'l Trade Comm'n*,
    598 F.3d 1294, 1303 (Fed. Cir. 2010) ...........................................................3

*Competitive Edge, Inc. v. Staples, Inc.*,
    763 F. Supp. 2d 997, 1012 (N.D. Ill. 2010) ..................................................7

*Egyptian Goddess, Inc. v. Swisa, Inc*.,
    543 F.3d 665 (Fed. Cir. 2008)........................................................... 3-6, 8, 13

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*,
    796 F.3d 1312, 1337 (Fed. Cir. 2015)...........................................................5

*Genova v. Kellogg*,
    12 C 3105, 2015 WL 3930351, at *3 (N.D.Ill. June 25, 2015) .........................3

*Harel v. K.K. Int'l Trading Corp.*,
    12 CIV. 4527 BMC, 2014 WL 119541, at * 2–4 (E.D.N.Y. Jan. 10, 2014)....................13

*HR U.S. LLC v. Mizco Int'l, Inc.*,
    No. CV-07-2394(DGT)(JO), 2009 WL 890550, at *13 (E.D.N.Y. Mar. 31, 2009)..........13

*Johnson v. Advocate Health and Hosps. Corp.*,
    892 F.3d 887, 894, 896 (7th Cir. 2018) .........................................................2

*Lanard Toys Ltd. v. Dolgencorp LLC*,
    958 F.3d 1337, 1341 (Fed. Cir. 2020)...........................................................4

*Moen Inc. v. Foremost Int'l Trading, Inc.*,
    38 F. Supp. 2d 680, 681 (N.D. Ill. 1999), dismissed, 232 F.3d 915 (Fed. Cir. 2000). ...............................................................3

*OddzOn Prods., Inc. v. Just Toys, Inc.*,
    122 F.3d 1396 (Fed. Cir. 1997)......................................................................8

*Richardson v. Stanley Works, Inc.*,
   597 F.3d 1288 (Fed. Cir. 2010) ............................................................................... 7

*Super-Sparkly Safety Stuff, LLC v. Skyline USA, Inc.*,
   836 F. App'x 895, 898 (Fed. Cir. 2020) ................................................................. 4

*Wing Shing Prod. (BVI) Co. v. Sunbeam Prod., Inc.*,
   665 F. Supp. 2d 357, 368 (S.D.N.Y. 2009), aff'd, 374 F. App'x 956 (Fed. Cir.
   2010) .......................................................................................................................... 13

**Rules**

Fed. R. Civ. P. 56(a) ............................................................................................................. 2

N.D. Ill. R. 56.1(a) .......................................................................................................... 2, 3

Defendant Gyroor-US ("Defendant" or "Gyroor-US") and third-party respondents Gyroor, Urbanmax, GaodeshangUS, Fengchi-US, Gyroshoes, and HGSM (collectively, "Third-Party Respondents") hereby submit this reply to Plaintiffs Hangzhou Chic Intelligent Technology Co., Ltd. ("Chic") and Unicorn Global, Inc.'s ("Unicorn", and collectively with Chic, "Plaintiffs") opposition to Defendant and Third-Party Respondents' Motion for Summary Judgment. *See* Dkt. 668.

## I.    PRELIMINARY STATEMENT

Plaintiffs allege that Defendant and Third-Party Respondents' products ("Accused Products") infringed on their U.S. Design Patent Nos. D737,723 ("the 'D723 patent"), D738,256 ("the 'D256 patent"), D785,112 ("the 'D112 patent"), D784,195 ("the 'D195 patent") (collectively, "Patents-in-Suit"). *See* Dkt. 101. The Accused Products were grouped and identified as "Gyroor A", "Gyroor B", "Gyroor C", "Gyroor D" and "Gyroor E". *See* Dkt. 385 & Dkt. 456. The U.S. Design Patent D739,906 (the "D'906 Patent") was filed on March 12, 2013, earlier than any Patents-in-Suit. *See* Dkt. 666, Ex. 1. Therefore, the D'906 Patent is prior art to all Patents-in-Suit. *Id*.

Plaintiffs and their expert conducted an ordinary observer analysis using the wrong standard. The correct standard is that the hypothetical ordinary observer should be a purchaser who is familiar with hoverboards and prior art designs. In addition, as the claimed designs in the Patents-in-Suit are similar to the prior art designs, small differences between the Patents-in-Suit and Accused Products are likely to be important to the eye of the hypothetical ordinary observer. When these functional aspects are properly discounted and the remaining ornamental designs are compared, there is no question of fact that, in the eyes of an ordinary observer, the claimed designs

of the Patents-in-Suit are plainly dissimilar to the Accused Products. Even if the Court finds that the claimed and accused designs are not plainly dissimilar, in light of the prior art, no reasonable ordinary observer would find that the designs of the Accused Products are substantially similar to the claimed designs of Patents-in-Suit. Thus, Defendant and Third-Party Respondents' Motion for Summary Judgment shall be granted as there is no genuine dispute that the Accused Products do not infringe the Patents-in-Suit.

## II.    LEGAL STANDARD

Summary judgment is appropriate when the movant establishes that "there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

A material fact is one which might affect the outcome of the suit under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuine issue exists "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.* at 249. Summary judgment may be granted if the evidence is merely colorable or is not significantly probative. *Id.* To defeat summary judgment, a non-movant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018).

Northern District of Illinois Local Rule 56.1 requires the "party moving for summary judgment to include with that motion 'a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgement as a matter of

law.' " *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir.2004) (quoting N.D. Ill. R. 56.1(a)(3)). The movant bears the initial burden of establishing that no genuine issue of material fact exists. *Genova v. Kellogg*, 12 C 3105, 2015 WL 3930351, at *3 (N.D.Ill. June 25, 2015). "The burden then shifts to the nonmoving party to show through specific evidence that a triable issue of fact remains on issues on which the movant bears the burden of proof at trial." *Id*. The non-moving party must respond to the movant's Local Rule 56.1(a)(3) statement and may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits. N.D. Ill. R. 56.1(b). The non-movant must go beyond the pleadings and support his contentions with documentary evidence of specific facts that demonstrate that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

## III. ARGUMENT

Summary judgment is appropriate in a patent infringement case. *Moen Inc. v. Foremost Int'l Trading, Inc.*, 38 F. Supp. 2d 680, 681 (N.D. Ill. 1999), dismissed, 232 F.3d 915 (Fed. Cir. 2000). In order to establish design patent infringement, a plaintiff must show that "an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010) (*citing Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 681 (Fed. Cir. 2008) (en banc)). "When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art." *Egyptian Goddess*, 543 F.3d at 676.

When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer would be drawn to those aspects of the claimed design that differ from the prior art. *Id*. And when the claimed design is close to the

3

prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer. *Id.*

A.    **The Hypothetical Ordinary Observer Should Be A Purchaser Who Is Familiar With Hoverboards And The Prior Art Designs.**

It is undisputed that "where there are many examples of similar prior art designs … differences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant with the prior art." *Egyptian Goddess,* 543 F.3d at 678; *see also Super-Sparkly Safety Stuff, LLC v. Skyline USA, Inc.*, 836 F. App'x 895, 898 (Fed. Cir. 2020). The Federal Circuit holds that "the ordinary observer is deemed to view the differences between the patented design and the accused product *in the context of the prior art.* When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer *will be drawn to those aspects of the claimed design that differ from the prior art*." *Lanard Toys Ltd.*, 958 F.3d at 1344 (quoting *Egyptian Goddess*, 543 F.3d at 676).

In Plaintiffs' newly submitted expert declaration, Plaintiffs' expert Mr. Paul Hatch ("Mr. Hatch") avers that an ordinary observer should be "the principal purchaser of hoverboards, i.e., a consumer user or the parent of a user, each having little or no experience purchasing hoverboards." *See* Dkt. 670, Ex. 1, Decl. of Hatch ¶¶ 42. Mr. Hatch further claims that "the ordinary observer encounters products like the Claimed Designs via online stores, television and entertainment media, and social media, and purchases them using online stores or from 'brick and mortar' stores like Best Buy or Walmart" and that "it is my opinion that the hypothetical ordinary observer would possess 'ordinary acuteness' and would apply a relatively low level of attention to the aesthetics of the product." *Id*. ¶¶ 42, 160.

4

A purchaser "having little or no experience purchasing hoverboards" and "apply a relatively low level of attention to the aesthetics of the product" only suggests that the purchaser lacks knowledge of hoverboards and prior art, which is the opposite to someone "who is conversant with the prior art" in *Egyptian Goddess*. Here, it is undisputed that there are many examples of similar prior art designs that are relevant to the Accused Products. Therefore, in light of the many similar prior arts, the hypothetical ordinary observer in this case should be a purchaser who is familiar with hoverboards and the prior art designs. *See* Dkt. 666, Ex. 3, Decl. of Gandy ¶¶21; Ex. 4, Decl. of Rake ¶¶ 39. Defendant and Third-Party Respondents' application that "the hypothetical ordinary observer in this case should be a purchaser who is familiar with hoverboards and the prior art" is consistent with the precedents and should be adopted by expert for further infringement analysis. *Id*; *see also Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1337 (Fed. Cir. 2015) ("The ordinary observer is one of ordinary acuteness who is a principal purchaser of the underlying articles with the claimed designs."). An ordinary observer would not only pay attention to overall impressions of the object but also look to small details to differentiate between designs. Mr. Hatch, given his expertise, should be well-informed about the ordinary observer standard. However, he offers a standard that is quite different from the one established in *Egyptian Goddess*. Thus, Plaintiffs and Mr. Hatch rely upon incorrect understanding of the ordinary observer test and use wrong definition of the ordinary observer.

**B.** **Small Differences Between The Patents-In-Suit And Accused Products Are Likely To Be Important To The Eye Of The Hypothetical Ordinary Observer.**

The Patents-in-Suit, the D'906 patent and the Accused Products all have similar hourglass peripheral shape. Therefore, the hourglass in shape in the Patents-in-Suit and the Accused Products did not "depart conspicuously" from the prior art D'906 patent. As observed by Defendant and Third-Party Respondents' expert Mr. Gandy, the hourglass peripheral shape of the prior art D'906

5

patent appears to be closer to the claimed design in the Patents-in-Suit than the design of Accused Products. *See* Dkt. 666, Ex. 3, Decl. of Gandy. Thus, as the claimed design in the Patents-in-Suit is close to the prior art designs, small differences between the Patents-in-Suit and Accused Products are likely to be important to the eye of the hypothetical ordinary observer. *See Egyptian Goddess*, 543 F.3d at 676.

Plaintiffs' argument that small visual details would not affect the ordinary observer's overall impression of the designs supported by Mr. Hatch's new inadmissible report is conclusory and meritless. In Mr. Hatch's declaration, he concluded that "it is my opinion that the hypothetical ordinary observer would possess 'ordinary acuteness' and would apply a relatively low level of attention to the aesthetics of the product. Thus, small visual details (e.g., such as the air vent pattern on the underside or the specific shape of the shallow grooves on the foot pads) would not affect their overall impression of the object as a whole." *See* Dkt. 670, ¶¶160. However, this is merely conclusory statement without providing any specific evidence. Mr. Hatch failed to explain that why the ordinary observer would apply a low level of attention and disregard the visual details. In contrast, Defendant and Third-Party Respondents' expert, Mr. Gandy, credibly explained in his testimony that it is impossible to consider a design's overall impression without examining its details. *See* Dkt. 666, Ex. 3, Decl. of Gandy. Additionally, Plaintiffs' argument that small visual details would not affect the ordinary observer's overall impression of the designs has already been considered and rejected by the Court. *See* Dkt. 626. "In other words, the overall impression is embodied in the details. Any analysis that—like Hatch's—ignores the details will fail to gain a proper perspective on the overall impression of a design." *Id*. at 34. "The Court's analysis, guided by Gandy's highly credible method, examined the details of each design to understand the overall impression of each and compare them. This analysis demonstrates that a reasonable jury could find

that the accused products are not substantially similar to the patents in suit, such that an ordinary observer would not be deceived into believing that the accused products are the same as the patented design." *Id*.

Therefore, small differences between the Patents-in-Suit and Accused Products are likely to be important to the eye of the hypothetical ordinary observer.

**C.    The Accused Products Are Plainly Dissimilar To The Claimed Designs Of The Patents-In-Suit After Factoring Out Functional Aspects.**

Courts routinely grant summary judgment in design patent infringement cases where the claimed and accused designs are plainly dissimilar based on a side-by-side visual comparison under the ordinary observer test. Where the claimed and accused designs are "sufficiently distinct" and "plainly dissimilar," the patentee fails to meet its burden of proving infringement as a matter of law. *Ethicon*, 796 F.3d at 1335; *Richardson v. Stanley Works, Inc.*, 597 F.3d 1295-96 (Fed. Cir. 2010) (affirming summary judgment of noninfringement based on dissimilarity of claimed and accused designs); *see also Competitive Edge, Inc. v. Staples, Inc.*, 763 F. Supp. 2d 997, 1012 (N.D. Ill. 2010) ("When the patented design and the accused design are plainly dissimilar, as in this case, there is no need to look to the prior art, because two designs may be sufficiently distinct that it will be clear without more that the patentee has not met its burden.").

In this case, there is no genuine question of fact that, in the eye of an ordinary observer, the visual appearance of the claimed designs of the Patents-in-Suit are plainly dissimilar to the Accused Products. The plain dissimilarity becomes even more apparent after factoring out functional aspects of the claimed designs of the Patents-in-Suit. *See Ethicon*, 796 F.3d at 1315

7

("functional aspects of the claimed designs are properly excluded from the infringement analysis."); *See also Richardson*, 597 F.3d at 1294.[1]

Similarly, all Patents-in-Suit comprise of six design elements: two identical standing pads, two identical wheels, and two indicial wheel covers. *See* Dkt. 666, Ex. 2. It is undisputed that the "foot placement stations," "wheels," and "wheel covers", each carries essential utilitarian functions of a hoverboard – to stand, to move and operate, and to prevent road debris from being thrown into the air by the rotating wheels. In addition, the overall shapes of the claimed designs of the Patents-in-Suit are largely based on functionality. *See* Dkt. 666, Ex. 4, Decl. of Rake. The dimensions correspond to the dimensions of a human foot, the distance between footpads corresponds to approximate "shoulder width" dimensions of the user, the narrowing at the center facilitates the needed twisting motion without interference with the user or the ground. *Id*.

Any similarity between the Accused Products and the claimed design of the Patents-in-Suit arises from the functional features and the overall hourglass shape. *See* Dkt. 666, Ex. 2, 6-10. Thus, when these functional aspects are properly discounted and the remaining ornamental designs are compared, there is no question of fact that, in the eyes or an ordinary observer, the claimed design of the Patents-in-Suit is plainly dissimilar from the Accused Products. *See OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1406 (Fed. Cir. 1997) ("affirming summary judgment of non-infringement where "overall similarity" of two rocket shaped balls was based on the functional tail and fins of the balls and not on the ornamental features of the design").

---

[1] In *Richardson*, the Federal Circuit affirmed summary judgment of noninfringement based on the differences between the claim and accused designs after factoring out the functional aspects. *Richardson*, 597 F.3d at 1294. The claimed tool design included numerous features, including a handle, a hammerhead, a jaw, and a crowbar that were dictated by their functional purposes. *Id*. The court explained that "[t]he jaw, for example, has to be located on the opposite end of the hammer head such that the tool can be used as a step" and "[t]he hammer-head has to be flat on its end to effectively deliver force to the object being struck." *Id*.

**D.**   **In The Light Of The D'906 Patent, No Ordinary Observer Would Think The Design Of Accused Products Is Substantially Similar To The Claimed Designs Of The Patents-In-Suit.**

Even if the Court finds that the claimed and accused designs are not plainly dissimilar, the comparison "will benefit from a comparison of the claimed and accused designs with the prior art." *Egyptian Goddess*, 543 F.3d at 678. When the prior art is considered, Defendant and Third-Party Respondents should prevail as a matter of law because no ordinary observer would think the design of the Accused Products is substantially similar to the claimed designs of the Patents-in-Suit.

A detailed side-by-side comparison among Patents-in-Suit, the prior art and Accused Products are illustrated as below:

**1.**   **Gyroor A**

There are several key design differences between the design claim of the Patents-in-Suit and Gyroor A. From the top and front views, the differences in the shape and design of the footpads are clear. *See* Dkt. 421, Ex. 4, Decl. of Rake, ¶¶65, 71, 77. An ordinary observer familiar with the prior art and other products in the marketplace would recognize that the Patents-in-Suit have prominent elliptical design element in the middle compared to Gyroor A, which is completely different, without any elliptical design element. *Id.*

The bottom and back views also play a role in an ordinary observer's understanding the overall visual appearance of the designs. A bottom view reveals substantial design differences. *Id.* ¶¶68, 74, 80. For Gyroor A, there is a prominent central design detail at the center, two strong styling recess areas under the feet, and vent hole patterns that are readily noticed because of the Figure-Ground gestalt, as well as Closure, Similarity, and Proximity. *Id.*

Another important design feature that has a significant effect on the overall visual impression of the ordinary observer is the size and shape of the fenders. *Id.* ¶¶69, 75, 81. Even to the most casual observer, the differences are significant.

9

## 2. Gyroor B

There are several key design differences between the design claim of the Patents-in-Suit and Gyroor B. From the top and front views, the differences in the shape and design of the footpads are clear. *Id.* ¶¶92, 98, 104, 110. An ordinary observer familiar with the prior art and other products in the marketplace would recognize that the Patents-in-Suit have prominent elliptical design element in the middle while Gyroor B is completely different, without any elliptical design element. *Id.*

The bottom and back views also play a role in an ordinary observer's understanding the overall visual appearance of the designs. A bottom view reveals substantial design differences. *Id.* ¶¶95, 101, 107, 113. For Gyroor B, there is a prominent central design detail at the center, two strong styling recess areas under the feet, and vent hole patterns that are readily noticed because of the Figure-Ground gestalt, as well as Closure, Similarity, and Proximity. *Id.*

Another important design feature that has a significant effect on the overall visual impression of the ordinary observer is the size and shape of the fenders. *Id.* ¶¶96, 102, 108, 114. Even to the most casual observer, the differences are significant.

## 3. Gyroor C

There are several key design differences between the design claim of the Patents-in-Suit and Gyroor C. From the top and front views, the differences in the shape and design of the footpads are clear. *Id.* ¶¶119, 125, 131. An ordinary observer familiar with the prior art and other products in the marketplace would recognize that the Patents-in-Suit have prominent elliptical design element in the middle while Gyroor C is completely different, without any elliptical design element. *Id.*

The bottom and back views also play a role in an ordinary observer's understanding the overall visual appearance of the designs. A bottom view reveals substantial design differences. *Id.*

10

¶¶122, 128, 134. For Gyroor C, there is a prominent central design detail at the center, two strong styling recess areas under the feet, and vent hole patterns that are readily noticed because of the Figure-Ground gestalt, as well as Closure, Similarity, and Proximity. *Id.*

Another important design feature that has a significant effect on the overall visual impression of the ordinary observer is the size and shape of the fenders. *Id.* ¶¶123, 129, 135. Even to the most casual observer, the differences are significant.

### 4. Gyroor D

There are several key design differences between the design claim of the Patents-in-Suit and Gyroor D. From the top and front views, the differences in the shape and design of the footpads are clear. *Id.* ¶¶146, 152, 158, 164. An ordinary observer familiar with the prior art and other products in the marketplace would recognize that the Patents-in-Suit have prominent elliptical design element in the middle while Gyroor D is completely different, without any elliptical design element. *Id.*

The bottom and back views also play a role in an ordinary observer's understanding the overall visual appearance of the designs. A bottom view reveals substantial design differences. *Id.* ¶¶149, 155, 161, 167. For Gyroor D, there is a prominent central design detail at the center, two strong styling recess areas under the feet, and vent hole patterns that are readily noticed because of the Figure-Ground gestalt, as well as Closure, Similarity, and Proximity. *Id.*

Another important design feature that has a significant effect on the overall visual impression of the ordinary observer is the size and shape of the fenders. *Id.* ¶¶150, 156, 162, 168. Even to the most casual observer, the differences are significant.

### 5. Gyroor E

There are several key design differences between the design claim of the Patents-in-Suit and Gyroor E. From the top and front views, the differences in the shape and design of the footpads

11

are clear. An ordinary observer familiar with the prior art and other products in the marketplace would recognize the Patents-in-Suit have prominent design element in the middle and the Gyroor E is clean, without any such design element.

The bottom and back views also play a role in an ordinary observer's understanding the overall visual appearance of the designs. A bottom view reveals substantial design differences. For Gyroor E, there is a prominent central design detail at the center, two strong styling recess areas under the feet, and vent hole patterns that are readily noticed because of the Figure-Ground gestalt, as well as Closure, Similarity, and Proximity.

Another important design feature that has a significant effect on the overall visual impression of the ordinary observer is the size and shape of the fenders. Even to the most casual observer, the differences are significant.

### 6. Conclusion

An ordinary observer, familiar with the prior art, would not be confused when observing the claimed designs of the Patents-in-Suit, the claimed designs of the Accused Products, and the design of the '906 Patent. The shape and appearance of the few features common to the claimed design of the Patents-in-Suit and the design of the prior art are not found in the claimed design of Accused Products and are so substantially different such that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other. Therefore, Accused Products do not infringe the claimed design of the Patents-in-Suit.

### E. Plaintiffs' Filing Of An Expert Report Purporting To Establish Conflicting Opinions Does Not Foreclose Summary Judgment.

Plaintiffs have submitted a new expert declaration to support their opposition to Defendant and Third-Party Respondents' summary judgment. *See* Dkt. 670. However, this newly submitted expert declaration should be excluded due to its untimeliness and failure to offer any explanation

12

or show any justification for the delay. *See* Dkt. 645, 646. This is not the first instance in which Plaintiffs have introduced new evidence after the close of discovery. Plaintiffs' repeated and seemingly intentional violations of the Court's schedule and Federal Civil Procedure Rule could result in significant prejudice to Defendants and Third-Party Respondents.

Further, that Plaintiff filed an expert report purporting to establish material differences in fact does not foreclose summary judgment. *See Wing Shing Prod. (BVI) Co. v. Sunbeam Prod., Inc.*, 665 F. Supp. 2d 357, 368 (S.D.N.Y. 2009), aff'd, 374 F. App'x 956 (Fed. Cir. 2010) (summary judgment granted over competing expert testimony); *See also Egyptian Goddess*, 543 F.3d at 681–82 (granting summary judgment over opposing expert affidavit). In fact, courts routinely grant summary judgment through a visual determination that the compared products are plainly dissimilar despite expert testimony purporting to establish material fact disputes. *See HR U.S. LLC v. Mizco Int'l, Inc.*, No. CV-07-2394(DGT)(JO), 2009 WL 890550, at *13 (E.D.N.Y. Mar. 31, 2009) ("[E]xpert testimony submitted by a plaintiff cannot create a material issue of fact where the visual comparison reveals that the alleged infringing product is not substantially similar ...."); *See also Harel v. K.K. Int'l Trading Corp.*, 12 CIV. 4527 BMC, 2014 WL 119541, at * 2–4 (E.D.N.Y. Jan. 10, 2014) ("[B]ecause a visual comparison alone is sufficient to determine non-infringement under the ordinary observer test, the Court finds that the expert testimony submitted by plaintiffs cannot create a material issue of fact, where the visual comparison reveals that the alleged infringing [product] is not substantially similar to the [claimed design]."). As stated above, since the claimed designs of the Patents-in-Suit are plainly dissimilar from the Accused Products, Plaintiffs' newly submitted expert report is insufficient to create a disputed statement of material fact for trial.

## IV. CONCLUSION

For the foregoing reasons, without the submission of admissible contrary evidence, Plaintiffs' conclusory statements cannot give rise to a genuine dispute of material fact. Therefore, Defendant and Third-Party Respondents respectfully request the Court grant Defendant and Third-Party Respondents' Motion for Summary Judgment for Non-infringement.


Date: 10/12/2023                                    /s/ *Na Zhang*
                                                    Na Zhang, Esq.
                                                    GLACIER LAW LLP
                                                    506 Second Ave., Ste 1516
                                                    Seattle, WA 98104
                                                    queena.zhang@glacier.law
                                                    206-397-8633

                                                    GLACIER LAW LLP
                                                    41 Madison Avenue, Ste 2529
                                                    New York, NY 10010
                                                    Wei Wang, Esq.
                                                    wei.wang@glacier.law
                                                    332-777-7315

                                                    GLACIER LAW LLP
                                                    251 South Lake Ave, Suite 910
                                                    Pasadena, CA 91101
                                                    Yu-Hao Yao, Esq.
                                                    mickey.yao@glacier.law
                                                    312-448-7772

                                                    GLACIER LAW LLP
                                                    200 E. Randolph Dr., Ste. 5100
                                                    Chicago, IL 60601
                                                    Ruoting Men, Esq.
                                                    ruoting.men@glacier.law
                                                    Tianyu Ju, Esq.
                                                    Iris.ju@glacier.law
                                                    312-270-0413

                                                    ***Attorneys for Defendant and***
                                                    ***Third-Party Respondents***

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this October 12, 2023, I electronically filed the foregoing file with the Clerk of Court using the CM/ECF system, and service was perfected on all counsel of record and interested parties through this system, which will deliver a true and correct copy of the foregoing documents via CM/ECF.


Date: 10/12/2023                               /s/ *Na Zhang*
                                                        Na Zhang