# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HANGZHOU CHIC INTELLIGENT TECHNOLOGY CO. and UNICORN GLOBAL, INC., | ) ) ) ) Case No. 20-cv-4806 |
| Plaintiffs, | ) ) Judge Thomas M. Durkin ) Magistrate Judge Jeffrey Cole |
| v. | ) ) |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, | ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM IN SUPPORT OF DEFENDANT AND THIRD-PARTY RESPONDENTS' MOTION TO STRIKE PLAINTIFF'S EXPERT REPORT**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| **I.** | **INTRODUCTION** ................................................................................................... 1 | |
| **II.** | **BACKGROUND** ..................................................................................................... 1 | |
| **III.** | **ARGUMENT** .......................................................................................................... 3 | |
| | A. Plaintiffs' Untimely Newly Submitted Expert Declaration Should Be Excluded. ... 3 | |
| | B. Plaintiffs' Newly Submitted Expert Declaration Is Not the Products of Reliable Principle. ................................................................................................................... 8 | |
| **IV.** | **CONCLUSION** ..................................................................................................... 11 | |
| **CERTIFICATE OF SERVICE** ........................................................................................... 13 | | |

# **TABLE OF AUTHORITIES**

**Case**                                                                                                                                                                                      **Page**

*ABC Corp. I v. P'ships & Unincorporated Assocs. Id'd on Schedule "A"*,
    52 F.4th 934(Fed. Cir. 2022) ...................................................................................3

*Bowman v. International Business Mach. Corp*,
    No. 1:11-CV-0593-RLY-TAB, 2012 WL 6596933(S.D. Ind. Dec. 18, 2012)................7,8

*Callpod, Inc. v. GN Netcom, Inc.*,
    703 F. Supp. 2d 815, 823 (N.D. Ill. 2010) ..........................................................5

*Council 31 v. Ward*,
    No. 87 C 356, 1995 WL 549022, at *1 (N.D. Ill. Sept. 12, 1995)......................6

*Council 31, Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Doherty*,
    169 F.3d 1068 (7th Cir. 1999) ..............................................................................6

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579, 590–91 (1993) ............................................................................8,9

*David v. Caterpillar, Inc.*,
    324 F.3d 851, 857 (7th Cir. 2003) .......................................................................7

*Domingo ex rel. Domingo v. T.K.*,
    289 F.3d 600, 605 (9th Cir. 2002) ......................................................................9

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
    543 F.3d 678 (Fed. Cir. 2008)..........................................................................9,10

*Finwall v. City of Chicago*,
    239 F.R.D. 494, 499 (N.D. Ill.)...........................................................................5

*FTC v. Bay Area Business Council, Inc.*,
    423 F.3d 627 (7th Cir.2005) ...............................................................................5

*Hammel v. Eau Galle Cheese Factory*,
    407 F.3d 852, 859 (7th Cir.2005) .......................................................................8

*Karum Holdings LLC v. Lowe's Cos., Inc.*,
    No. 15 C 380, 2017 WL 5593318 (N.D. Ill. Nov. 21, 2017).............................7

*Keach v. U.S. Trust Co.*,
    419 F.3d 626, 639 (7th Cir.2005) .......................................................................4

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137, 147 (1999) ...................................................................................8,9

*Mukhtar v. Cal. State Univ.*,
    299 F.3d 1053, 1064 (9th Cir. 2002) ......................................................................9

*Musser v. Gentiva Health Servs.*,
    356 F.3d 751, 759 (7th Cir. 2004) .........................................................................8

*NutraSweet Co. v. X-L Engineering Co.*,
    227 F.3d 776, 785 (7th Cir.2000) ..........................................................................4

*Salgado by Salgado v. General Motors Corp.*,
    150 F.3d 735, 742 (7th Cir.1998) ..........................................................................4

*Scaggs v. Consolidated Rail Corp.*,
    6 F.3d 1290, 1295-96 (7th Cir. 1993) ...................................................................5

*Steen v. Myers*,
    486 F.3d 1017, 1022 (7th Cir.2007) ......................................................................8

*Summit 6, LLC v. Samsung Elecs. Co., Ltd.*,
    802 F.3d 1283, 1294 (Fed. Cir. 2015) ...................................................................8

*Super-Sparkly Safety Stuff, LLC v. Skyline USA, Inc.*,
    836 F. App'x 895, 898 (Fed. Cir. 2020) .................................................................9

**Rules**

Fed. R. Civ. P. 37(c)(1)...............................................................................................3

Fed. R. Civ. P. 26(a)(2)...............................................................................................4

Fed. R. Civ. P. 26(e) ...................................................................................................4

Fed. R. Civ. P. 37(c)(1)...............................................................................................6

Fed. R. Evid. 702 .....................................................................................................8,9

I. **INTRODUCTION**

Defendant Gyroor-US ("Defendant" or "Gyroor-US") and third-party respondents Gyroor, Urbanmax, GaodeshangUS, Fengchi-US, Gyroshoes, and HGSM (collectively, "Third-Party Respondents") hereby submit this memorandum in support of their Motion to Strike the newly submitted expert report by Plaintiffs Hangzhou Chic Intelligent Technology Co., Ltd. ("Chic") and Unicorn Global, Inc.'s ("Unicorn", and collectively with Chic, "Plaintiffs") expert, Paul Hatch ("Mr. Hatch"). *See* Dkt. 670.

Plaintiffs retained their expert, Mr. Hatch, to provide a report and expert opinion regarding the alleged patent infringement. Mr. Hatch proclaims to be an expert in the field of design patents; however, his versions of reports contain numerous fallacies and fatal errors and were also criticized by Federal Circuit for being conclusory. Nevertheless, Plaintiffs persist in having Mr. Hatch revise his reports and submit new versions of the expert report, even after the discovery phase closed in this action. Plaintiffs have submitted two additional versions of the expert report since the close of discovery, attempting to rectify the deficiencies while disregarding the strict deadlines set by this Court. Given the Court's strong disfavor of parties violating strict schedules and deadlines in this Circuit, Plaintiffs' newly submitted expert report should be stricken.

II. **BACKGROUND**

On August 17, 2020, Plaintiffs filed complaint against Defendant alleging that the Defendant's products infringe their patents. *See* Dkt.1. On November 19, 2020, Plaintiffs amended their complaint. *See* Dkt. 101. In the amended complaint, Plaintiffs allege that Defendant and Third-Party Respondents' products ("Accused Products") infringed on their U.S. Design Patent Nos. D737,723 ("the 'D723 patent"), D738,256 ("the 'D256 patent"), D785,112 ("the 'D112 patent"), D784,195 ("the 'D195 patent") (collectively, "Patents-in-Suit"). *Id*.

1

On November 20, 2020, Plaintiffs filed their first motion for preliminary injunction against Defendant, which was later granted by the Court. *See* Dkt. 105.

On May 6, 2021, Plaintiffs filed a motion to amend their Schedule A to include Third-Party Respondents as defendants, which the Court granted on May 24, 2021. *See* Dkt. 227, 253.

On August 24, 2021, Plaintiffs filed a second preliminary injunction against the Third-Party Respondents. *See* Dkt. 384. The Court granted Plaintiffs' second preliminary injunction on October 13, 2021. *See* Dkt. 456.

On October 8, 2021, Third-Party Respondents filed an appeal to challenge the Court's order granting the preliminary injunctions. *See* Dkt. 450.

On July 11, 2022, the Court entered an order adopting the parties' proposed expert discovery schedule. *See* Dkt. 575. According to the order, expert discovery closes by October 23, 2022.

On October 28, 2022, Federal Circuit issued an opinion and vacated the Court's order granting Plaintiffs' motion to amend Schedule A and the two preliminary injunction orders issued by this Court and remanded to this Court for further proceedings. *See* Dkt. 590. The Federal Circuit criticized Mr. Hatch's opinion because his analysis violated legal standard and improperly relied on the hourglass shape "of the accused products to show substantial similarity [to the patents in suit]." *ABC Corp. I v. P'ships & Unincorporated Assocs. Id'd on Schedule "A"*, 52 F.4th 934, 938-39 (Fed. Cir. 2022).

On November 9, 2022, Plaintiffs filed their renewed motion for temporary restraining order and preliminary injunction. *See* Dkt. 592. In their motion, Plaintiffs included a revised version of Mr. Hatch's report curing the deficiencies in his previous report. Despite of the revised report, this Court denied Plaintiff's renewed motion for temporary restraining order and preliminary

2

injunction on December 2, 2022. *See* Dkt. 619. The Court rejected Mr. Hatch's method of analysis and opined that "failed to conduct an analysis of whether these features themselves are substantially similar in the manner of their design, which is where 'the focus' of the analysis must be." *See* Dkt. 626.

On December 23, 2022, Defendant and Third-Party Respondents filed their motion for summary judgement of noninfringement. *See* Dkt. 628. On January 25, 2022, Plaintiffs filed their opposition along with Mr. Hatch's new report to Defendant and Third-Party Respondents' motion for summary judgement. *See* Dkt. 635, 637. On February 8, 2022, Defendant and Third-Party Respondents moved to strike Mr. Hatch's new report, which motion to strike is currently pending with the Court. *See* Dkt. 645, 646.

On September 6, 2023, Defendant and Third-Party Respondents refiled their motion for summary judgement of noninfringement per the Court's instruction. *See* Dkt. 665, 666. On September 29, 2023, Plaintiffs, once again, filed their opposition along with Mr. Hatch's new report to Defendant and Third-Party Respondents' refiled motion for summary judgement. *See* Dkt. 670.

### III. ARGUMENT

#### A. Plaintiffs' Untimely Newly Submitted Expert Declaration Should Be Excluded.

Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The obligation to disclose expert witnesses is governed by Rule 26(a).

Under Rule 37(c)(1), "[a] party that without substantial justification fails to disclose

3

information required by Rule 26(a) ... is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Thus, where a party does not timely file expert reports, the district court may exclude the party's expert from testifying at trial on the matters the party was required to disclose. *NutraSweet Co. v. X-L Engineering Co.*, 227 F.3d 776, 785 (7th Cir.2000). The sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless. *Keach v. U.S. Trust Co.*, 419 F.3d 626, 639 (7th Cir.2005); *Salgado by Salgado v. General Motors Corp.*, 150 F.3d 735, 742 (7th Cir.1998).

Under Rule 26(a)(2), a party must disclose by the court-ordered time a written report of a retained expert that includes "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i), (D). Rule 26(a)(2) further requires that parties disclose rebuttal reports—that is, "evidence [that] is intended solely to contradict or rebut evidence on the same subject matter identified by another" expert—by the court-ordered time, or if no such time is set, 30 days after the other expert's disclosure. Fed. R. Civ. P. 26(a)(2)(D)(ii). Apart from initial expert reports and rebuttal expert reports, Rule 26 also contemplates supplemental expert filings. Rule 26(e) requires that, if an expert "learns that in some material respect the disclosure ... is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during discovery," he must supplement his disclosure by the time pretrial disclosures are due. Fed. R. Civ. P. 26(e)(1)(A), (2).

1. The newly submitted expert declaration of Mr. Hatch is untimely as directed by the Court.

The Court clearly indicated that parties must serve expert reports on all issues for which they bear the burden of proof on August 15, 2022, and expert discovery closes by October 23, 2022. *See* Dkt. 575. However, about approximately one year after expert discovery closed, Plaintiffs once again submitted a new expert report of Mr. Hatch regarding infringement of the

4

Patents-in-Suit as well as criticizing Defendant and Third-Party Respondent's retained experts. *See* Dkt. 670.

The Local Rules of the Northern District of Illinois provide with exacting specificity that a deadline for discovery means that discovery must be completed by that date. Local Rule 16.1, Standing Order Establishing Pretrial Procedure; *See also FTC v. Bay Area Business Council, Inc.*, 423 F.3d 627 (7th Cir.2005) (stressing importance of compliance with the Local Rules). Thus, it would be inappropriate and untimely under the local rules to serve a new expert report after the close of discovery that the other side could neither depose the expert nor engage a rebuttal expert of its own. *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 320, 327 (N.D.Ill.2005); *See also Finwall v. City of Chicago*, 239 F.R.D. 494, 499 (N.D. Ill.), objections overruled, 239 F.R.D. 504 (N.D. Ill. 2006) ("Recognizing that courts must have the authority to enforce discovery deadlines, numerous cases have approved exclusion orders by district courts where expert reports were not provided until nearly the close of discovery."); *See also Scaggs v. Consolidated Rail Corp.*, 6 F.3d 1290, 1295-96 (7th Cir. 1993) ("the Seventh Circuit upheld the district court's barring of the testimony of an expert witness identified just two days before the deadline.").

Thus, the new expert testimony of Mr. Hatch must be barred. The expert discovery closed on October 23, 2022, and this new expert report was filed on September 29, 2023.[1] It is beyond debate that this left no time to Defendant and Third-Party Respondents for depositions or discovery regarding this report or providing rebuttal reports.

Further, the new expert testimony is not supplemental within the meaning of Rule 26(e). *See Callpod, Inc. v. GN Netcom, Inc.*, 703 F. Supp. 2d 815, 823 (N.D. Ill. 2010) ("Supplemental

---

[1] Plaintiffs might argue Mr. Hatch's new report is identical to the report that Plaintiffs filed on January 25, 2023. *See* Dkt. 637. However, even this is the case, Mr. Hatch's newly submitted report was still filed out of the time, about 3 months and two days after expert discovery closed.

expert reports are permitted if they are based upon information discovered after the initial disclosure or upon the realization that the original disclosure was incorrect or incomplete."). Apparently, the new expert report is not based upon information discovered after the initial disclosure or upon the realization that the original disclosure was incorrect or incomplete. Plaintiffs' purpose of submitting the expert report is to cure the deficiencies of the previous reports submitted by the same expert after the expert's opinions in the previous reports were criticized and reversed by the Federal Circuit.

However, even if the Court finds that Plaintiffs' new expert report is supplemental to their original reports, this report should also be excluded. According to the Rule 26(e) of the Federal Rules of Civil Procedure, a party's obligation to supplement or correct a discovery disclosure (including expert reports) is limited to information thereafter acquired. *Council 31 v. Ward*, No. 87 C 356, 1995 WL 549022, at *1 (N.D. Ill. Sept. 12, 1995), aff'd sub nom. *Council 31, Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Doherty*, 169 F.3d 1068 (7th Cir. 1999). By its plain language, the rule refers to information not in the possession of the party when the original disclosure was made, and it does not contemplate the submission of a new expert report re-analyzing information which the party possessed when the original report was filed. *Id*. Here, Plaintiffs' newly submitted expert report only contains information obtained prior to the initial disclosure, and Plaintiffs have not identified any newly acquired information. Hence, Plaintiffs also failed to show that their new expert report falls within the ambit of Rule 26(e).

2. <u>Plaintiffs' failure to timely serve the expert report was not substantially justified or harmless.</u>

Federal Rule of Civil Procedure 37 governs the consequences of failures to comply with Rule 26. Under Rule 37(c), a party "is not allowed to use" an untimely disclosure "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The party seeking to

excuse its delay bears the burden of showing justification and harmlessness. See, e.g., *S.E.C. v. Nutmeg Grp., LLC*, No. 09 C 1775, 2017 WL 4925503, at *1 (N.D. Ill. Oct. 31, 2017). In deciding whether a party's failure was justified or harmless, courts "consider and weigh the following factors: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Karum Holdings LLC v. Lowe's Cos., Inc.*, No. 15 C 380, 2017 WL 5593318, at *3 (N.D. Ill. Nov. 21, 2017) (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)).

Plaintiffs failed to offer any explanation or show any justification for this new expert declaration. Neither Plaintiffs can establish that their late service of expert report was harmless. Defendant and Third-Party Respondents have been harmed because they missed the opportunity to file rebuttal evidence and conduct any depositions directed at the opinions in Plaintiffs' new expert report. There is no reasonable way to cure the prejudice unless the discovery is reopened or meaningful opportunities, such as allowing Defendant and Third-Party Respondents to file new expert rebuttal declaration or conduct deposition, are offered to Defendant and Third-Party Respondents to challenge Plaintiff's new expert declaration, which would unreasonably delay the whole process and affect the trial scheduling. In addition, it is worth noting that this is not the first time that Plaintiffs offered new evidence after the discover was closed. On November 9, 2022, in order to support Plaintiffs' Motion for Entry of a Temporary Restraining Order and Preliminary Injunction, Plaintiffs submitted a brand-new expert report of Mr. Hatch regarding infringement of U.S. Patents D737,723 and D738,256, approximately 20 days after expert discovery closes. *See* Dkt. 594. On January 25, 2023, approximately three months after expert discovery closes, Plaintiffs submitted a new expert declaration of Mr. Hatch to oppose Defendant and Third-Party

7

Respondents' motion for summary of non-infringement. *See* Dkt. 637. Plaintiffs cannot keep submitting new expert report to the Court after the discovery phase has closed. Allowing such untimely expert reports would be prejudicial to Defendant and Third-Party Respondents. It could result in significant burdens and undue delay in summary judgment briefing and the ultimate resolution of this case. *See e.g., Bowman v. International Business Mach. Corp*, 2012 WL 6596933, at 3–4 (concluding that the plaintiffs' untimely expert rebuttal reports were not harmless because "reopening discovery to re depose Plaintiffs' experts would create significant costs and would delay the resolution of the motion"); *see also Musser v. Gentiva Health Servs.*, 356 F.3d 751, 759 (7th Cir. 2004) ("[I]t is not an abuse of discretion to conclude that the additional costs to Gentiva of preparing a new summary judgment motion and further delay in extending the trial date are not harmless.").

In fact, the Defendant and Third-Party Respondents would suffer extreme prejudice if the Plaintiffs' new expert report, submitted in response to the motion for summary judgment, is considered by the Court. It is impossible for the Defendant and Third-Party Respondent' experts to produce a new rebuttal report within the limited time frame, particularly given that Mr. Hatch's declaration spans over 100 pages and includes new opinions. The litigation process does not include "a dress rehearsal or practice run" for the parties. *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir.2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir.2005)). Plaintiffs have no right to repeatedly submit new expert report at any time after the discovery period is closed as their wishes by disregarding the Civil Procedure Rules and the Court's Orders. Therefore, Plaintiffs' new expert report should be excluded.

### B. Plaintiffs' Newly Submitted Expert Declaration Is Not the Products of Reliable Principle.

Expert testimony is admissible if the party offering such evidence shows that the testimony is both reliable and relevant. Fed. R. Evid. 702; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147

(1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590–91 (1993). Federal Rule of Evidence 702 permits expert testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. An expert can be qualified "by knowledge, skill, experience, training, or education." *Id*.

A trial court has a "gatekeeping" obligation to admit expert testimony only when it is both reliable and relevant. *Daubert*, 509 U.S. at 589; *Kumho Tire Co.*, 526 U.S. at 147–149. "In Daubert, the Supreme Court gave a non-exhaustive list of factors for determining whether scientific testimony is sufficiently reliable to be admitted into evidence, including: (1) whether the scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether there is a known or potential error rate; and (4) whether the theory or technique is generally accepted in the relevant scientific community." *Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 605 (9th Cir. 2002). The Supreme Court later held that "a trial court may consider one or more" of the Daubert factors in determining the reliability of nonscientific expert testimony. *Kumho Tire Co.*, 526 U.S. at 141. Further, the court has "broad latitude" to decide how to determine the reliability of the testimony and whether the testimony is in fact reliable. *Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1064 (9th Cir. 2002); *see Kumho Tire Co.*, 526 U.S. at 141. The "test of reliability is flexible, and Daubert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Id*. (internal citations omitted).

9

Here, Mr. Hatch's testimony in his newly submitted report should be excluded as it is not a product of reliable principle. It is undisputed that "where there are many examples of similar prior art designs … differences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant with the prior art." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 678 (Fed. Cir. 2008); *see also Super-Sparkly Safety Stuff, LLC v. Skyline USA, Inc.*, 836 F. App'x 895, 898 (Fed. Cir. 2020). The Federal Circuit holds that "the ordinary observer is deemed to view the differences between the patented design and the accused product *in the context of the prior art.* When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer *will be drawn to those aspects of the claimed design that differ from the prior art*." *Lanard Toys Ltd.*, 958 F.3d at 1344 (quoting *Egyptian Goddess*, 543 F.3d at 676).

Mr. Hatch avers that an ordinary observer should be "the principal purchaser of hoverboards, i.e., a consumer user or the parent of a user, each having little or no experience purchasing hoverboards." *See* Dkt. 670, Ex. 1, Decl. of Hatch ¶¶ 42. Mr. Hatch further claims that those "ordinary observer would encounter products like the Claimed Designs via online stores, television and entertainment media, and social media, and purchases them using online stores or from 'brick and mortar' stores like Best Buy or Walmart." *Id*.

A purchaser "having little or no experience purchasing hoverboards" only suggests that the purchaser lacks knowledge of hoverboards and prior art, which is the opposite to someone "who is conversant with the prior art" in *Egyptian Goddess*. Here, it is undisputed that there are many examples of similar prior art designs that are relevant to the Accused Products. Therefore, in light of the many similar prior arts, the hypothetical ordinary observer in this case should be a purchaser

10

who is familiar with hoverboards and the prior art designs. *See* Dkt. 666, Ex. 3, Decl. of Gandy ¶¶21; Ex. 4, Decl. of Rake ¶¶ 39. Defendant and Third-Party Respondents' application that "the hypothetical ordinary observer in this case should be a purchaser who is familiar with hoverboards and the prior art" is consistent with the precedents and should be adopted by expert for further infringement analysis. *Id*. Thus, Mr. Hatch's testimony in his newly submitted report should be excluded as he applies wrong standard for the ordinary observer test.

It is also worth noting that Mr. Hatch offered contradicted opinions with regard to the understanding of ordinary observer. During the deposition, Mr. Hatch first stated that "a typical, ordinary observer would have knowledge of the prior art, the relevant prior art". *See* Dkt. 611-4, Ex. 4, Tr. of Hatch, p. 123. Later, in the same deposition, Mr. Hatch stated "my understanding is that the consumer in real life would not have knowledge of all of the prior art or all of the competing hoverboards, that is correct". *Id*. p.124. When Mr. Hatch was challenged if he were using two different ordinary observer standards, he further illustrated as follow: "The standard for the hypothetical ordinary observer is that we apply the level of acuteness of the purchaser. And so when I say one helps inform the other, it's knowing the level of acuteness of the purchaser. The real life purchaser helps us inform the level of acuteness that an ordinary observer would pay." *Id*. p.125. Apparently, Mr. Hatch not only applied wrong "ordinary observer" standard but also offered confused and contradicted testimonies with regard to the meaning of ordinary observer, which further proves that his newly offered report is not a product of reliable principle.

IV. <u>**CONCLUSION**</u>

For the foregoing reasons, Defendant and Third-Party Respondents respectfully request the Court grants Defendant and Third-Party Respondents' Motion to Strike Plaintiffs' newly submitted expert report.

11

| | |
|---|---|
| Date: 10/12/2023 | /s/ Na Zhang |
| | Na Zhang, Esq. |
| | GLACIER LAW LLP |
| | 506 Second Ave., Ste 1516 |
| | Seattle, WA 98104 |
| | queena.zhang@glacier.law |
| | 206-397-8633 |
| | |
| | GLACIER LAW LLP |
| | 41 Madison Avenue, Ste 2529 |
| | New York, NY 10010 |
| | Wei Wang, Esq. |
| | wei.wang@glacier.law |
| | 332-777-7315 |
| | |
| | GLACIER LAW LLP |
| | 251 South Lake Ave, Suite 910 |
| | Pasadena, CA 91101 |
| | Yu-Hao Yao, Esq |
| | mickey.yao@glacier.law |
| | 312-448-7772 |
| | |
| | GLACIER LAW LLP |
| | 200 E. Randolph Dr., Ste. 5100 |
| | Chicago, IL 60601 |
| | Ruoting Men, Esq. |
| | ruoting.men@glacier.law |
| | Tianyu Ju, Esq. |
| | iris.ju@glacier.law |
| | 312-270-0413 |
| | |
| | ***Attorneys for Defendant and Third-Party Respondents*** |

12

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this October 12, 2023, I electronically filed the foregoing file with the Clerk of Court using the CM/ECF system, and service was perfected on all counsel of record and interested parties through this system, which will deliver a true and correct copy of the foregoing documents via CM/ECF.

Date: 10/12/2023                                  /s/ Na Zhang