UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HANGZHOU CHIC INTELLIGENT TECHNOLOGY CO. and UNICORN GLOBAL, INC., | )<br>)<br>) |
| Plaintiffs, | )<br>) Case No. 20-cv-4806 |
| v. | )<br>) Judge Thomas M. Durkin<br>) Magistrate Judge Jeffrey Cole |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

**DEFENDANT AND THIRD-PARTY RESPONDENTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT AND THIRD-PARTY RESPONDENTS' MOTION TO STRIKE PLAINTIFFS' EXPERT REPORT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

LEGAL STANDARD ......................................................................................................................3

ARGUMENT ....................................................................................................................................4

    I.      THERE IS NO DOUBT THAT PLAINTIFFS' NEWLY OFFERED EXPERT DECLARATION IS UNTIMELY. ............................................................................... 4

    II.     PLAINTIFFS' NEWLY SUBMITTED MR. HATCH'S DECLARATION IS NOT SUPPLEMENTAL WITHIN THE MEANING OF RULE 26(E). ............................... 4

    III.    PLAINTIFFS' EXCUSES FOR SERVING THE UNTIMELY REPORT ARE WITHOUT MERIT.......................................................................................................... 6

        A.    The newly offered Mr. Hatch's Declaration contains new opinions. ................. 6

        B.    Plaintiffs' failure to timely serve the expert report was not substantially justified or harmless................................................................................................. 9

CONCLUSION ...............................................................................................................................11

i

# **TABLE OF AUTHORITIES**

**Case**                                                                                                                                                    **Page**

*Baldwin Graphic Systems, Inc. v. Siebert, Inc.*,
    No. 03-7713, 2005 WL 1300763, *2 (N.D.Ill. Feb. 22, 2005)(Moran, J.) ..........................5

*Beller ex rel. Beller v. United States*,
    221 F.R.D. 689, 695 (D.N.M. 2003)................................................................................5

*Finwall v. City of Chi.*,
    239 F.R.D. 494, 498-99 (N.D. Ill. 2006) .........................................................................3

*FTC v. Bay Area Business Council, Inc.*,
    423 F.3d 627, 633 (7th Cir. 2005) ...................................................................................3

*Hoffman v. Caterpillar, Inc.*,
    368 F.3d 709, 714 (7th Cir.2004) ....................................................................................3

*Hansen v. County Mut. Ins. Co.*,
    2022 WL 124564, at *2 (N.D. Ill. Jan. 13, 2022) ...........................................................10

*Loeffel Steel Products, Inc. v. Delta Brands, Inc.*,
    387 F.Supp.2d 794, 818 (N.D.Ill.2005) ..........................................................................3

*Musser v. Gentiva Health Svcs.*,
    356 F.3d 751, 759 (7th Cir. 2004) ...................................................................................9

*NutraSweet Co. v. X-L Engineering Co.*,
    227 F.3d 776, 785-86 (7th Cir. 2000) .............................................................................3

*Resolution Trust Corp. v. Gregory*,
    D.N.M. No. CIV 94–0052. ..............................................................................................6

*Salgado by Salgado v. General Motors Corp.*,
    150 F.3d 735, 741 n. 6 (7th Cir.1998) ......................................................................3, 10

*Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*,
    73 F.3d 546, 570 (5th Cir.1996) ......................................................................................5

*Talbert v. City of Chicago*,
    236 F.R.D. 415, 421 (N.D. Ill. 2006)..............................................................................5

*Tribble v. Evangelides*,
    670 F.3d 753, 759-60 (7th Cir. 2011) .............................................................................9

*Westefer v. Snyder*,
    422 F.3d 570, 584 n.21 (7th Cir. 2005) ...............................................................................4


**Rules**


Fed. R. Civ. P. 26............................................................................................................................3, 5
Local Rules 16.1 of the Northern District of Illinois ......................................................................3

Defendant Gyroor-US ("Defendant" or "Gyroor-US") and third-party respondents Gyroor, Urbanmax, GaodeshangUS, Fengchi-US, Gyroshoes, and HGSM (collectively, "Third-Party Respondents") hereby submit this reply to Plaintiffs Hangzhou Chic Intelligent Technology Co., Ltd. ("Chic") and Unicorn Global, Inc.'s ("Unicorn", and collectively with Chic, "Plaintiffs") Opposition to Defendant and Third-Party Respondents' Motion to Strike Declaration of Paul Hatch. [Dkt. 678].

**PRELIMINARY STATEMENT**

Plaintiffs retained their expert, Paul Hatch ("Mr. Hatch"), to provide report and expert opinion regarding whether Defendant and Third-Party Respondents' accused products infringe the U.S. Patents D737,723, D723,256, D784,195 and D785,115 (the "Patents-in-Suit"). Since Mr. Hatch was retained, the following expert reports that Mr. Hatch completed had been submitted to the Court:

On November 20, 2020, Mr. Hatch's first declaration was submitted to the Court in support of Plaintiffs' motion for entry of a preliminary injunction by Plaintiffs. [Dkt. 106].

On August 24, 2021, Plaintiffs submitted Mr. Hatch's second declaration regarding motion for preliminary injunction and infringement of the Patents-in-Suit to the Court. [Dkt. 388].

On September 24, 2021, Plaintiffs submitted Mr. Hatch's third declaration regarding motion for preliminary injunction and rebuttal to Lance Rake Declaration to the Court. [Dkt. 429].

On the same day, Plaintiffs submitted Mr. Hatch's fourth declaration regarding motion for preliminary injunction and rebuttal to Jim Gandy Declaration to the Court. [Dkt. 430].

On August 15, 2022, the parties served expert reports on all issues for which they bear the burden of proof. On October 23, 2022, as the Court directed, expert discovery closed for this case. [Dkt. 575].

On August 28, 2022, Federal Circuit issued an opinion and vacated the Court's order granting Plaintiffs' preliminary injunction orders. [Dkt. 590]. Mr. Hatch's analysis used to support Plaintiffs' preliminary injunction motions was also criticized by the Federal Circuit. [Dkt. 589].

On November 9, 2022, Plaintiffs filed their renewed motion for temporary restraining order and preliminary injunction and submitted Mr. Hatch's new and fifth declaration regarding renewed motion for temporary restraining order and preliminary injunction. [Dkt. 594]. On December 2, 2022, this Court denied Plaintiffs' renewed motion for temporary restraining order and preliminary injunction. [Dkt. 619]. The Court also rejected Mr. Hatch's method of analysis and opined that "failed to conduct an analysis of whether these features themselves are substantially similar in the manner of their design, which is where 'the focus' of the analysis must be." [Dkt. 626].

On January 25, 2023, in response to Defendant and Third-Party Respondents' summary judgment motion, Plaintiffs filed Mr. Hatch's new and sixth declaration in opposition to Defendant and Third-Party Respondents' motion for summary judgement. [Dkt. 637].

On February 8, 2023, Defendant and Third-Party Respondents filed their motion to strike Mr. Hatch's sixth declaration used to support Plaintiffs' opposition to Defendant and Third-Party Respondents' motion for summary judgement, currently pending with the Court. [Dkt. 645].

On September 6, 2023, the Court directed Defendant and Third-Party Respondents re-filed their summary judgment motion. [Dkt. 665]. In response to Defendant and Third-Party Respondents' refiled summary judgment motion, Plaintiffs filed Mr. Hatch's seventh declaration in opposition to Defendant and Third-Party Respondents' motion for summary judgement. [Dkt. 670].[1]

---

[1] Plaintiffs might argue Mr. Hatch's seventh declaration is identical to Mr. Hatch's sixth declaration that Plaintiffs filed on January 25, 2023. [Dkt. 637]. However, even this is the case, Mr. Hatch's newly submitted report was still filed out of the time, about 3 months and two days after expert discovery closed.

2

**LEGAL STANDARD**

Rule 26(a)(2)(B), Federal Rules of Civil Procedure, governs the format of reports disclosing expert testimony, requiring that the disclosure of a witness retained to provide expert testimony must: "be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years." *See Hoffman v. Caterpillar, Inc.*, 368 F.3d 709, 714 (7th Cir.2004); *Loeffel Steel Products, Inc. v. Delta Brands, Inc.*, 387 F.Supp.2d 794, 818 (N.D.Ill.2005). The report must be " 'detailed and complete.' " *Salgado by Salgado v. General Motors Corp.*, 150 F.3d 735, 741 n. 6 (7th Cir.1998) (quoting Advisory Committee's note). Rule 26(a)(2)(C) further provides that expert disclosures "shall be made at the times and in the sequence directed by the Court." F. R. Civ. P. 26.

"The Local Rules of the Northern District of Illinois . . . provide with exacting specificity that a deadline for discovery means that discovery must be completed by that date." *Finwall v. City of Chi.*, 239 F.R.D. 494, 498-99 (N.D. Ill. 2006) (emphasis in original); *see also* Local Rule 16.1, Standing Order Establishing Pretrial Procedure; *FTC v. Bay Area Business Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005) (stressing importance of compliance with the Local Rules).

When a party fails to timely disclose an expert report, "[t]he sanction of exclusion is 'automatic and mandatory unless the party to be sanctioned can show that its violation of Rule 26(a) was either justified or harmless.'" *NutraSweet Co. v. X-L Engineering Co.*, 227 F.3d 776,

3

785-86 (7th Cir. 2000). To determine whether a failure to disclose was harmless or justified, the courts consider "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Westefer v. Snyder*, 422 F.3d 570, 584 n.21 (7th Cir. 2005).

## ARGUMENT

### I. There Is No Doubt That Plaintiffs' Newly Offered Expert Declaration Is Untimely.

Striking Plaintiffs' months-late filed expert opinion aligns with this Court's past practice of strictly enforcing expert-discovery cutoff date. The Court clearly indicated that parties must serve expert reports on all issues for which they bear the burden of proof on August 15, 2022, and expert discovery closes by October 23, 2022. [Dkt. 575]. However, on September 29, 2023, approximately one year after expert discovery closed, in support of their Opposition to Defendant and Third-Party Respondent's Motion for Summary Judgement of Non-infringement, Plaintiffs offered a new expert report of Mr. Hatch regarding infringement of the Patents-in-Suit as well as criticizing Defendant and Third-Party Respondent's retained experts. [Dkt. 670].

Thus, this is no doubt that Plaintiffs' newly offered Mr. Hatch's declaration was untimely filed after expert discovery has closed. Thus, the sanction of exclusion of Plaintiffs' newly offered expert declaration shall be automatic and mandatory unless this violation was either justified or harmless.

### II. Plaintiffs' Newly Submitted Mr. Hatch's Declaration is Not Supplemental Within the Meaning of Rule 26(e).

Rule 26(e) sets out two occasions when a party is under a duty to supplement an expert report: (1) to include information thereafter acquired if ordered by the court, (2) if the party learns

4

that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. *Talbert v. City of Chicago*, 236 F.R.D. 415, 421 (N.D. Ill. 2006). Rule 26(e)'s prerequisite that a supplement be the product of "thereafter acquired" information is separated by the disjunctive "or" from subsection 26(e)(1)'s articulation of a duty to supplement triggered by learning that information disclosed is incomplete or incorrect. *Id*. See also *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 570 (5th Cir.1996) ("Specifically, a party is required to supplement its expert disclosures if the court so orders or if 'the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.' ") (emphasis supplied); *Baldwin Graphic Systems, Inc. v. Siebert, Inc.*, No. 03-7713, 2005 WL 1300763, *2 (N.D.Ill. Feb. 22, 2005) (Moran, J.) ("... supplemental disclosures ... are permitted when they are based on information acquired subsequent to the original disclosure, or a realization that the original disclosure was incomplete or incorrect.").

      Here, the newly submitted Mr. Hatch's Declaration is not supplemental within the meaning of Rule 26(e). Plaintiffs do not contend that Mr. Hatch's previously offered reports contained errors that needed to be corrected, nor do they seek to withdraw any prior opinions submitted. This is not a situation where, subsequent to the preparation of the original report, new information was discovered which required that the original report be supplemented. Plaintiffs' purpose of submitting this new expert report is to remedy the insufficiency of the previous reports submitted by the same expert after the expert's opinions in the previous reports were criticized and reversed by the Federal Circuit and this Court. *See Beller ex rel. Beller v. United States*, 221 F.R.D. 689,

695 (D.N.M. 2003) ("the supplemental report argument was specifically rejected in this district in *Resolution Trust Corp. v. Gregory*, D.N.M. No. CIV 94–0052. There, Circuit Judge Paul Kelly, sitting by designation, rejected RTC's argument that it could file 'supplements' intended to 'deepen' and 'strengthen' its own expert's prior report…To rule otherwise would create a system where preliminary reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given. This practice would surely circumvent the full disclosure requirement implicit in Rule 26 and would interfere with the Court's ability to set case management deadlines, because new reports and opinions would warrant further consultation with one's own expert and virtually require new rounds of depositions. That process would hinder rather than facilitate settlement and the final disposition of the case.").

### III. Plaintiffs' Excuses For Serving The Untimely Report Are Without Merit.

#### A. The newly offered Mr. Hatch's Declaration contains new opinions.

Contrary to Plaintiffs' assertion that Mr. Hatch's newly-offered Declaration offers no new opinions, Mr. Hatch's Declaration contains the following new opinions:

*First*, in Mr. Hatch's previously submitted declaration, after analyzing all the cited prior arts of the Patents-in-Suit, Mr. Hatch failed to mention whether any prior art features any hourglass shape. [Dkt. 388, p.17-19]. However, in Mr. Hatch's newly offered declaration, he admitted that some of the prior art feature a generally hourglass outer form. [Dkt. 670, ¶¶66, 68, 70]. In addition, Mr. Hatch added a whole new section to explain functionality in his new report and offers an entirely new opinion based on functionality that he has never mentioned before. [Dkt. 670, ¶¶71-77].

*Second*, Mr. Hatch added numerous new pictures of the accused products taken from

different angles to his newly offered declaration. He also attached an Exhibit 1 to his newly offered declaration, offering the three-way comparison between the accused products and the Patents-in-Suit, which he had never discussed before and cannot be found in any of his previously submitted reports. [Dkt. 670-1].

*Third*, Mr. Hatch offered new opinions with regard to the infringement in his newly offered declaration. In his old reports, he never assessed whether the accused products are closer in overall impression to the claimed design of the Patents-in-Suit than to the closet prior art, which opinion was formed in his newly offered declaration.

For example, Mr. Hatch's complete opinion of whether the accused products infringe the '723 Patent in Mr. Hatch's previously submitted report is recited as below:

> "In the eyes of the ordinary observer, the claimed design of the '723 is substantially the same as the overall visual impression presented by the Accused Products. Unlike the cited prior art shown in Section III Chapter F, the claimed design of the '723 Patent and the Accused Products share the same overall impression and have an integrated 'hourglass' body with a relatively flat surface across the top of the main body, arched covers over the wheel area, larger radii on the front and back of the underside, and elongated light panels on the front surface." [Dkt. 388, p.22].

However, in Mr. Hatch's newly offered declaration, he stated the followings to form his opinion of whether the accused products infringe the '723 Patent, as recited below:

> "Further, when comparing to the closest prior art through the eyes of the ordinary observer, Gyroor A is closer in overall impression to the claimed design of the D'723 Patent than to the closest prior art. Gyroor A and the claimed design of the D'723 Patent both create a visual impression of an integrated hourglass body with a relatively flat surface across the top of the main body, pronounced 'footing' areas, and open-arched fenders over the top of the wheel area. More specifically, the relatively flat surface across the top of the main body such that the footpads and center section are largely on the same plane, the pronounced footing areas substantially covered by raised footpads with a pattern of grooves, and the fenders arching over a portion of the tire and leaving the outside surface of the wheel largely exposed, significantly contribute to the overall impression of the designs. In contrast, the D'906 Patent is completely devoid of any type of footpad, has a center section that significantly curves and extends above the plane of the footing

7

areas, and has fenders that cover the majority of the tire and wheel assembly, extending below the midpoint of the wheel. While the D'906 also includes an hourglass body, the design as a whole gives a distinctly different impression, as it creates an impression of a very uncluttered, rounded, smooth body with no pronounced footing area and closed fender skirts." [Dkt. 670, ¶¶89].

"Further, when comparing to the closest prior art through the eyes of the ordinary observer, Gyroor B is closer in overall impression to the claimed design of the D'723 Patent than to the closest prior art. Gyroor A and the claimed design of the D'723 Patent both create a visual impression of an integrated hourglass body with a relatively flat surface across the top of the main body, pronounced 'footing' areas, and open-arched fenders over the top of the wheel area. More specifically, the relatively flat surface across the top of the main body such that the footpads and center section are largely on the same plane, the pronounced footing areas substantially covered by raised footpads with a pattern of grooves, and the fenders arching over a portion of the tire and leaving the outside surface of the wheel largely exposed, significantly contribute to the overall impression of the designs. In contrast, the D'906 Patent is completely devoid of any type of footpad, has a center section that significantly curves and extends above the plane of the footing areas, and has fenders that cover the majority of the tire and wheel assembly, extending below the midpoint of the wheel. While the D'906 also includes an hourglass body, the design as a whole gives a distinctly different impression, as it creates an impression of a very uncluttered, rounded, smooth body with no pronounced footing area and closed fender skirts." [Dkt. 670, ¶¶101].

"Further, when comparing to the closest prior art through the eyes of the ordinary observer, Gyroor C is closer in overall impression to the claimed design of the D'723 Patent than to the closest prior art. Gyroor C and the claimed design of the D'723 Patent both create a visual impression of an integrated hourglass body with a relatively flat surface across the top of the main body, pronounced 'footing' areas, and open-arched fenders over the top of the wheel area. More specifically, the relatively flat surface across the top of the main body such that the footpads and center section are largely on the same plane, the pronounced footing areas substantially covered by raised footpads with a pattern of grooves, and the fenders arching over a portion of the tire and leaving the outside surface of the wheel largely exposed, significantly contribute to the overall impression of the designs. In contrast, the D'906 Patent is completely devoid of any type of footpad, has a center section that significantly curves and extends above the plane of the footing areas, and has fenders that cover the majority of the tire and wheel assembly, extending below the midpoint of the wheel. While the D'906 also includes an hourglass body, the design as a whole gives a distinctly different impression, as it creates an impression of a very uncluttered, rounded, smooth body with no pronounced footing area and closed fender skirts." [Dkt. 670, ¶¶117].

> "Further, when comparing to the closest prior art through the eyes of the ordinary observer, Gyroor D is closer in overall impression to the claimed design of the D'723 Patent than to the closest prior art. Gyroor D and the claimed design of the D'723 Patent both create a visual impression of an integrated hourglass body with a relatively flat surface across the top of the main body, pronounced 'footing' areas, and open-arched fenders over the top of the wheel area. More specifically, the relatively flat surface across the top of the main body such that the footpads and center section are largely on the same plane, the pronounced footing areas substantially covered by raised footpads with a pattern of grooves, and the fenders arching over a portion of the tire and leaving the outside surface of the wheel largely exposed, significantly contribute to the overall impression of the designs. In contrast, the D'906 Patent is completely devoid of any type of footpad, has a center section that significantly curves and extends above the plane of the footing areas, and has fenders that cover the majority of the tire and wheel assembly, extending below the midpoint of the wheel. While the D'906 also includes an hourglass body, the design as a whole gives a distinctly different impression, as it creates an impression of a very uncluttered, rounded, smooth body with no pronounced footing area and closed fender skirts." [Dkt. 670, ¶¶129].

Thus, it is undisputed that the newly submitted Mr. Hatch's Declaration was substantially different than his earlier reports, used different information, pictures and analysis, and in effect added his new opinions of this case. If this newly submitted report is allowed, Defendant and Third-Party Respondents would have been forced to have their experts review the new materials and submit new reports as well resulting in substantial expenditure of additional time.

B. **Plaintiffs' failure to timely serve the expert report was not substantially justified or harmless.**

As detailed above, not only Plaintiffs untimely filed their expert report but also offered new opinions in their newly submitted expert declaration that they never before disclosed. Defendant and Third-Party Respondents have had no opportunity to have their experts examine Mr. Hatch's new opinion, or to depose Mr. Hatch on the issues that raise from the new opinions. *See Musser v. Gentiva Health Svcs.*, 356 F.3d 751, 759 (7th Cir. 2004) (affirming the striking of an expert report where the belated disclosure would have meant a party "was denied the opportunity to question the witnesses in their expert capacity"); *Tribble v. Evangelides*, 670 F.3d

9

753, 759-60 (7th Cir. 2011) ("Without proper disclosures, a party may miss its opportunity to disqualify the expert, retain rebuttal experts, or hold depositions for an expert not required to provide a report."). Further, Plaintiffs provided no advance notice that they intended to serve a new expert report during the briefing of the summary judgment motion. *See Hansen v. County Mut. Ins. Co.*, 2022 WL 124564, at *2 (N.D. Ill. Jan. 13, 2022) ("At no point between May 18 (when defendants disclosed their expert reports) and August 18 (when plaintiffs first disclosed [the] rebuttal report) did plaintiffs' counsel inform [Defendant] or the Court that it intended to disclose rebuttal expert reports.")

There is no ability to cure the prejudice here. Unless the discovery period is reopened, which would unduly delay the process and trial scheduling of this case, there is no reasonable way to cure the prejudice towards Defendant and Third-Party Respondents as well as wasting precious judicial resources. Furthermore, Plaintiffs have offered no compelling reason and justification why the new expert declaration was submitted after the expert discovery closed. *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 741 (7th Cir. 1998) (affirming exclusion of expert report where disclosing party "never offered—indeed, does not offer to this date—a satisfactory explanation for its failure to comply with" discovery deadlines). There is no new evidence that was unavailable to Mr. Hatch when putting together his initial report and even his fifth report following Plaintiffs' renewed preliminary injunction motion. Plaintiffs allege that Mr. Hatch's newly-submitted declaration provides no new or contradictory opinions. Such being this case, instead of presenting a new expert report, Plaintiffs could simply submit Mr. Hatch's previously filed reports to support their opposition to the Defendant and Third-Party Respondents' summary judgment motion.

10

## CONCLUSION

For the foregoing reasons, Defendant and Third-Party Respondents respectfully request that the Court strike Paul Hatch's latest expert report as untimely and unduly prejudicial to Defendant and Third-Party Respondents. [Dkt. 670].

Date: 11/14/2023

/s/ Na Zhang
Na Zhang, Esq.
GLACIER LAW LLP
506 Second Ave., Ste 1516
Seattle, WA 98104
queena.zhang@glacier.law
206-397-8633

GLACIER LAW LLP
251 South Lake Ave, Suite 910
Pasadena, CA 91101
Yu-Hao Yao, Esq
mickey.yao@glacier.law
312-448-7772

GLACIER LAW LLP
200 E. Randolph Dr., Ste. 5100
Chicago, IL 60601
Ruoting Men, Esq.
ruoting.men@glacier.law
Tianyu Ju, Esq.
Iris.ju@glacier.law
312-270-0413

GLACIER LAW LLP
41 Madison Avenue, Ste 2529
New York, NY 10010
Wei Wang, Esq.
wei.wang@glacier.law
332-777-7315

***Attorneys for Defendant and Third-Party Respondents***

**CERTIFICATE OF SERVICE**

 I HEREBY CERTIFY that on this November 14, 2023, I electronically filed the foregoing file with the Clerk of Court using the CM/ECF system, and service was perfected on all counsel of record and interested parties through this system, which will deliver a true and correct copy of the foregoing documents via CM/ECF.

Date: 11/14/2023          /s/ Na Zhang