# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                          :

LOEB & LOEB LLP,

                        Petitioner,              Case No. _____

                      -against-

                                                          **PETITION TO CONFIRM**
HANGZHOU CHIC INTELLIGENT               **ARBITRATION AWARD**
TECHNOLOGY CO., LTD. and UNICORN
GLOBAL, INC.,

                      Respondents.
-----------------------------------------------------------X

        Petitioner Loeb & Loeb LLP ("Loeb"), pursuant to the Federal Arbitration Act ("FAA") and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), requests that the Court confirm the September 25, 2023 Final Award (the "Award") issued in the arbitration between Loeb, on the one hand, and Respondents Hangzhou Chic Intelligent Technology Co., Ltd. ("Hangzhou Chic") and Unicorn Global, Inc. ("Unicorn") (collectively, "Respondents"), on the other hand, and enter a final judgment on the Award in Loeb's favor. Loeb hereby alleges as follows.

## INTRODUCTION

        1.     Loeb brings this summary proceeding pursuant to the FAA, 9 U.S.C. § 1 *et seq.*, and the New York Convention, codified at 9 U.S.C. §§ 201-08, to confirm the Award issued in the arbitration proceeding *Loeb & Loeb LLP v. Hangzhou Chic Intelligent Technology Co., Ltd., et al.* (JAMS Ref. No. 5425000510) (the "Arbitration"), a true and correct copy of which is attached

hereto as **Exhibit A**.[1]  Loeb respectfully requests that this Court confirm the Award and incorporate its terms into a final judgment in favor of Loeb.

## PARTIES

2. Petitioner Loeb & Loeb LLP is an international law firm with offices in New York; Los Angeles; Chicago; Washington, D.C.; San Francisco; Nashville; Hong Kong; and Beijing.

3. Respondent Hangzhou Chic Intelligent Technology Co., Ltd. is a Chinese company located in Hangzhou, China.

4. Respondent Unicorn Global, Inc. is a corporation organized and existing under the laws of the State of California, with its principal place of business in the City of Industry, California.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this petition pursuant to 9 U.S.C. § 203 and 28 U.S.C. § 1331, as this is an action or proceeding falling under the New York Convention and thus arises under the laws and treaties of the United States.

6. The parties consented to personal jurisdiction in New York pursuant to an Engagement Agreement dated August 5, 2020 (the "Engagement Agreement").  A true and correct copy of the Engagement Agreement is attached as **Exhibit B** hereto.

7. Venue in the Southern District of New York is proper pursuant to 9 U.S.C. §§ 9 and 204, as the Award was made in said District.

---

[1] Because the Award discusses documents and testimony designated as Confidential Information pursuant to the Stipulation for the Production and Exchange of Confidential Information entered into by the parties and so-ordered by the Arbitrator in the underlying proceeding, it is being filed provisionally as a slip sheet.  Loeb will follow with a motion to file the Award under seal in accordance with the Court's individual rules and practices.

## **BACKGROUND**

8. Hangzhou Chic is a high-tech company that manufactures and licenses "hoverboard" products, or self-balancing scooters, for sale in the United States. It controls a substantial number of granted U.S. patents related to technologies associated with its hoverboard products, including several patents at issue in the legal proceedings that principally gave rise to this dispute. At all relevant times, Unicorn was the exclusive U.S. licensee and distributor of those products and was responsible for Hangzhou Chic's global patent enforcement. Together, Respondents earned millions of dollars from the distribution of hoverboard products and the exploitation of patent rights related thereto.

9. On or about August 5, 2020, by and through the Engagement Agreement, Respondents engaged Loeb to perform certain legal services for them. More specifically, Respondents engaged Loeb in connection with "(a) [r]ights enforcement related advice" and (b) "[r]epresentation in enforcement actions, including but not limited to drafting court and government agency documents, official filing[s], intellectual property counseling, and settlement agreements."

10. The Engagement Agreement set forth the terms and conditions of Loeb's representation of Respondents, specified the nature and scope of the work that Loeb was to perform, and set forth Respondents' obligation to pay for those services.

11. Pursuant to the Engagement Agreement, Respondents agreed to pay for all legal services rendered by Loeb and to reimburse Loeb for its expenses in connection with the provision of those legal services. As set forth in paragraph 2 of the Engagement Agreement, Respondents agreed to pay Loeb for its legal services "based on the number of hours spent on [the] matter, at the hourly billing rates of the attorneys and paraprofessionals who work on [the] matter."

12. Pursuant to Paragraph 11 of the Engagement Agreement, Respondents agreed to arbitrate, through JAMS, any dispute arising out of the Engagement Agreement, the parties' relationship, or Loeb's performance legal services, and further agreed that "[t]he arbitrator's award will be final and binding, and judgment thereon may be entered in any court of competent jurisdiction." That paragraph states, in relevant part:

> By executing this letter you agree that if any dispute between you and the firm arises out of this Agreement, our relationship with you or our performance of any current or future legal services, whether those services are the subject of this particular engagement letter or otherwise, that dispute will be resolved solely by binding arbitration in New York, New York, before one arbitrator who shall be a retired New York state or New York federal judge or magistrate (to be designated through JAMS) and pursuant to the Comprehensive Arbitration Rules and Procedures (as then in effect) of JAMS. The disputes subject to binding arbitration will include, without limitation, disputes regarding or alleging negligence, malpractice, breach of fiduciary duty, fraud, any claim based upon a statute, as well as any dispute as to the fees, or the arbitrability of any such claims. The arbitrator's award will be final and binding, and judgment thereon may be entered in any court of competent jurisdiction. Arbitration will be the sole means of resolving any such disputes, and both parties waive their rights to resolve disputes by jury trial or other court proceedings.

13. Beginning in or about August 2020, and continuing through approximately May 2022, Loeb performed substantial legal work for and at the request of Respondents, including, without limitation, enforcing certain hoverboard-related patents as against a number of Respondents' competitors in two lawsuits that Loeb filed on Respondents' behalves in the U.S. District Court for the Northern District of Illinois and in several appeals to the U.S. Court of Appeals for the Federal Circuit.

14. During that same period of time, Respondents failed to pay Loeb for a substantial portion of the legal services it rendered, in breach of the Engagement Agreement. By May 2022, Respondents had accumulated an unpaid balance of over $3.2 million in attorneys' fees and

4

disbursements. After multiple unsuccessful attempts to secure payment over the course of many months, Loeb withdrew its representation of Respondents effective in or about June 2022.

15. On July 27, 2022, pursuant to Paragraph 11 of the Engagement Agreement, Loeb filed with JAMS a Demand for Arbitration and Statement of Claim against Respondents. The Honorable Michael H. Dolinger, former Magistrate Judge in the U.S. District Court for the Southern District of New York, was selected as the sole Arbitrator.

16. On August 10, 2022, Respondents answered and responded to Loeb's Demand for Arbitration and Statement of Claim, generally denying the allegations therein.

17. The parties proceeded to arbitrate their dispute for several months, culminating in a three-day arbitration hearing before Judge Dolinger on May 10, 2023 – May 12, 2023 (the "Hearing"), at which the parties called and examined a total of seven witnesses. Prior to the Hearing, the parties submitted pre-hearing briefs and rebuttal pre-hearing briefs, on April 24, 2023, and May 3, 2023, respectively. Following the Hearing, the parties submitted post-hearing briefs and rebuttal post-hearing briefs, on July 12, 2023, and August 4, 2023, respectively.

18. On September 6, 2023, based upon the evidence presented at the Hearing and the parties' pre-hearing and post-hearing submissions, Judge Dolinger issued a Partial Final Award in favor of Loeb. The Partial Final Award determined that Respondents were jointly and severally liable to Loeb for (1) damages in the amount of $3,057,294.79; (2) Loeb's arbitral expenses, in an amount to be determined following supplemental briefing; (3) pre-judgment interest accruing at a rate of 9% per annum from June 24, 2022, likewise in an amount to be determined following supplemental briefing; and (4) post-judgment interest.

19. On September 25, 2023, based upon the parties' supplemental briefing, Judge Dolinger further issued the Award in favor of Loeb. Consistent with the Partial Final Award, the

Award determined that Respondents were jointly and severally liable to Loeb for (1) damages in the amount of $3,057,294.79; (2) $330,941.77 in pre-judgment interest; (3) $44,298.97 in arbitral expenses; and (4) post-judgment interest accruing from the time judgment is entered in a per-diem amount of $846.38. Judge Dolinger also denied Respondents' request for a 30-day stay of enforcement of the Award.

20. The Award was delivered to the parties via the JAMS electronic filing system on September 26, 2023. A true and correct copy of the JAMS docket, showing the filing of the Award on such date, is attached as **Exhibit C** hereto.

21. Per Rule 24(k) of the JAMS Comprehensive Arbitration Rules & Procedures, the Award was "considered final, for purposes of … a judicial proceeding to enforce, modify, or vacate the Award …, fourteen (14) calendar days after service." Accordingly, the Award became final 14 days after September 26, 2023, on October 10, 2023.

22. The Award was not a product of corruption, fraud, partiality, or undue means, and is not subject to any of the grounds for vacatur set forth in 9 U.S.C. § 10 or in Article V of the New York Convention.

23. This Petition is filed within one year of the Award's issuance.

24. To date, Respondents have not voluntarily satisfied the Award or any portion of it.

### PRAYER FOR RELIEF

**WHEREFORE**, Petitioner Loeb & Loeb LLP prays that this Court issue an Order:

a. Confirming the Award entered in the Arbitration;

b. Directing that judgment be entered in favor of Petitioner Loeb & Loeb LLP, and jointly and severally against Respondents Hangzhou Chic Intelligent Technology Co., Ltd. and Unicorn Global, Inc., for:

6

      i.       $3,057,294.79 in damages,

      ii.      $330,941.77 in pre-judgment interest,

     iii.      $44,298.97 in arbitral expenses, and

     iv.      $846.38 in post-judgment interest per day until the judgment is fully satisfied; and

c.     Granting such other and further relief as the Court deems just and proper.

Dated:   New York, New York
          October 12, 2023

                                LOEB & LOEB LLP

                                By: */s/ Frank D. D'Angelo*
                                      Michael P. Zweig
                                      Frank D. D'Angelo
                                      Leily Lashkari
                                      Edward J. Delman
                                      345 Park Avenue
                                      New York, NY 10154
                                      Tel.: (212) 407-4000
                                      Fax: (212) 407-4990

                                      *Attorneys for Petitioner Loeb & Loeb LLP*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
LOEB & LOEB LLP,                              :
                                              :
    Petitioner,            : Case No. _____
                                              :
 -against-                                :
                                              :
HANGZHOU CHIC INTELLIGENT                     :
TECHNOLOGY CO., LTD. and UNICORN              :
GLOBAL, INC.,                                 :
                                              :
    Respondents.           :
-----------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## PETITION TO CONFIRM ARBITRATION AWARD

  Petitioner Loeb & Loeb LLP ("Loeb") submits this Memorandum of Law in support of its Petition to Confirm Arbitration Award against Hangzhou Chic Intelligent Technology Co., Ltd. ("Hangzhou Chic") and Unicorn Global, Inc. ("Unicorn") (together, "Respondents"). As set forth herein, there are no grounds for refusal or deferral of recognition or enforcement of the Final Award (the "Award"), and accordingly the Award should be confirmed.

## PRELIMINARY STATEMENT

  Respondents, who are the owner and exclusive licensee of various patents related to wildly popular "hoverboard" products, otherwise known as self-balancing scooters, engaged the law firm of Loeb & Loeb LLP to represent them as litigation counsel and prosecute patent infringement claims against foreign online sellers of competing and infringing hoverboard products. The parties' engagement agreement required payment for Loeb's legal services based on Loeb's hourly attorney billing rates. Despite an enormous investment of time by Loeb attorneys, and multiple litigation successes achieved on Respondents' behalves, Respondents failed to pay Loeb for its legal services in accordance with that agreement. Following a vigorously contested arbitration

proceeding culminating in a three-day hearing with seven witnesses, the arbitrator, former U.S. Magistrate Judge for this Court, Hon. Michael H. Dolinger (Ret.), determined that Respondents were jointly and severally liable for breaching their engagement agreement with Loeb (and, in the alternative, that they were unjustly enriched at Loeb's expense and jointly and severally liable in quantum meruit), and that they must pay Loeb over $3.4 million in damages, interest, and expenses.

Loeb now seeks confirmation of that Award. This confirmation proceeding falls within the ambit of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention") because one of the Respondents, Hangzhou Chic, is based in the People's Republic of China. Under the New York Convention, recognition and enforcement of arbitral awards is mandatory unless a party opposing enforcement can prove that one of seven defenses set forth in Article V applies. Similarly, confirmation of arbitral awards is mandatory under the Federal Arbitration Act (the "FAA") unless one of the enumerated grounds for vacatur therein applies. For the reasons explained below, none of those grounds apply here, and the Court should confirm the Award and enter judgment thereon in Loeb's favor.

## FACTS

A full recitation of the facts is set forth in the Petition to Confirm Arbitration Award (the "Petition" or "Pet."), and the accompanying Award attached thereto as Exhibit A, which are incorporated herein by reference and to which this Court is respectfully referred.

## ARGUMENT

**I.     Applicable Law**

The New York Convention, codified at 9 U.S.C. § 201 *et seq.*, controls the instant action. "An arbitration is subject to the New York Convention if it arises out of a commercial relationship that involves at least one foreign citizen or is otherwise reasonably related to a foreign state," and

a "corporation is a foreign citizen if it is incorporated or has its principal place of business outside of the United States." *Huzhou Chuangtai Rongyuan Inv. Mgmt. P'ship v. Hui Qin*, No. 21 Civ. 9221 (KPF), 2022 U.S. Dist. LEXIS 174460, at *12 (S.D.N.Y. Sept. 26, 2022). Hangzhou Chic is based in China, *see* Pet. ¶ 3; *id*. Ex. A, at 3, and therefore the New York Convention controls this proceeding. Furthermore, because the Award was entered in the United States, *see generally* Pet., Ex. A, at 1-2 (identifying New York as the situs of the arbitration), "the domestic provisions of the FAA also apply, as is permitted by Articles V(1)(e) and V(2) of the New York Convention." *Scandinavian Reins. Co. v. St. Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012). "[T]he FAA and the New York Convention work in tandem, and they have overlapping coverage to the extent that they do not conflict." *KT Corp. v. ABS Holdings, Ltd.*, 784 F. App'x 21, 24 (2d Cir. 2019) (quoting *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 102 n.1 (2d Cir. 2006)).

## II. Confirmation of the Award Is Plainly Warranted, and None of the Extraordinarily Limited Grounds for Declining Confirmation Apply Here

"The confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Beijing Shougang Mining Inv. Co. v. Mongolia*, 11 F.4th 144, 160 (2d Cir. 2021). "The review of arbitration awards is '**very limited** . . . in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation.'" *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997) (emphasis added); *see also Dzanoucackis v. Chase Manhattan Bank, USA*, No. 06 Civ. 5673 (JFB) (ARL), 2009 U.S. Dist. LEXIS 27299, at *16 (E.D.N.Y. Mar. 31, 2009) ("It is well settled in the Second Circuit that a district court's review of an arbitration award under the FAA is ***extremely deferential***.") (emphasis added). That is especially the case for arbitration awards involving foreign parties, such as this one. *See Iraq*

3

*Telecom Ltd. v. IBL Bank S.A.L.*, 597 F. Supp. 3d 657, 664 (S.D.N.Y. 2022) ("A district court's ability to reject a foreign arbitration award in particular is '**strictly limited**.'") (emphasis added), *aff'd*, 2023 U.S. App. LEXIS 9060 (2d Cir. Apr. 17, 2023); *see also Beijing Shougang*, 11 F.4th at 159 (explaining that awards "involv[ing] parties domiciled or having their principal place of business outside the enforcing jurisdiction" are considered "nondomestic" awards). Critically, "[a]rbitration awards are not reviewed for errors made in law or fact," and "[o]nly a barely colorable justification for the outcome reached by the arbitrators is necessary to confirm the award." *Gas Natural Aprovisionamientos, SDG, S.A. v. Atl. LNG Co. of Trinidad and Tobago*, No. 08 Civ. 1109 (DLC), 2008 U.S. Dist. LEXIS 69632, at *10 (S.D.N.Y. Sept. 16, 2008).

Under the New York Convention, a "court **shall confirm** [an arbitral] award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207 (emphasis added). Thus, in order for a court not to confirm an award, a "party opposing enforcement must prove that at least one of the seven defenses listed in the New York Convention applies." *Hui Qin*, 2022 U.S. Dist. LEXIS 174460, at *12. Those seven defenses are:

(1) "The parties to the [arbitration] agreement … were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or … under the law of the country where the award was made;"

(2) "The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case;"

(3) "The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration;"

(4) "The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place;"

  (5) "The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made;"

  (6) "[T]he competent authority in the country where recognition and enforcement is sought [has found] that … [t]he subject matter of the difference is not capable of settlement by arbitration under the law of that country;" and

  (7) "[T]he competent authority in the country where recognition and enforcement is sought [has found] that …[t]he recognition or enforcement of the award would be contrary to the public policy of that country."

N.Y. Convention, Art. V, 1970 U.S.T. LEXIS 115 (Dec. 29, 1970).

"[A] party opposing enforcement of an arbitral award carries a heavy burden of proof." *Hui Qin*, 2022 U.S. Dist. LEXIS 174460, at \*14; *see Scandinavian Reins. Co.*, 668 F.3d at 72 ("[I]n order to obtain vacatur of the decision of an arbitral panel under the FAA, a party 'must clear a high hurdle.'") (citation omitted). "[A] district court *must* enforce an arbitral award unless a litigant satisfies one of the seven enumerated defenses [under the New York Convention]; if one of the defenses is established, the district court *may* choose to refuse recognition of the award." *Commodities & Minerals Enter. v. CVG Ferrominera Orinoco, C.A.*, 49 F.4th 802, 810 (2d Cir. 2022) (emphasis in original).

None of the seven enumerated defenses in the New York Convention apply here. ***First***, Respondents have never asserted—and could not in good faith assert—that they suffered under any incapacity when they assented to the arbitration provision in the parties' engagement agreement. While Respondents argued unsuccessfully during the underlying arbitration that there was no meeting of the minds in regard to the payment structure outlined in the engagement agreement, *see* Pet., Ex. A, at 17, 19-22, they never claimed that they (or their representative who entered the agreement) were somehow under any incapacity when they agreed to the arbitration provision therein. To the contrary, Respondents willingly engaged in a more than year-long

5

arbitration process without objection and as required by the arbitration provision, and therefore waived any argument that they were not bound to arbitrate this dispute or did not understand they would need to do so. *See, e.g.*, *Herman Miller, Inc. v. Worth Cap., Inc.*, No. 98-7732, 1999 U.S. App. LEXIS 3837, at *3 (2d Cir. Mar. 9, 1999) ("A party may be found to have waived its objection to arbitrability … if it has participated extensively in arbitration proceedings without asserting its objection in timely fashion.") (citing *ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc*., 102 F.3d 677, 685 (2d Cir. 1996); *Gvozdenovic v. United Air Lines, Inc*., 933 F.2d 1100, 1105 (2d Cir.), *cert. denied*, 502 U.S. 910 (1991)).

*Second*, there is no question that Respondents were given proper notice of the arbitration and had ample opportunity to present their case. "Under American standards, a party is entitled to 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Generali Espana de Seguros y Reaseguros, S.A. v. Speedier Shipping, Inc.*, No. 22-1150, 2023 U.S. App. LEXIS 11568, at *6 (2d Cir. May 11, 2023). There is no doubt that Respondents received proper notice at the outset of the arbitration, and vigorously litigated the matter, through counsel of their own choosing, for well over a year through document discovery, depositions, the arbitration hearing, post-hearing briefs, and supplemental submissions thereafter. *See* Pet. ¶ 17; *id*., Ex. C.

*Third*, Respondents cannot claim that the Award goes beyond the scope of what the parties agreed to arbitrate. The parties agreed to arbitrate, *inter alia*, "any dispute as to the [legal] fees," Pet., Ex. B, ¶ 11, and that is exactly the dispute that the Award resolves, *see, e.g.*, Pet., Ex. A, at 2. To the extent that Respondents may disagree with the *substance* of the Award, that is not a proper objection to confirmation. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010) ("It is not enough for petitioners to show that the panel committed an error—or even a

6

serious error. It is only when [an] arbitrator strays from interpretation and application of the [arbitration] agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision may be unenforceable.") (citations and internal quotation marks omitted).

*Fourth*, the arbitration was entirely in accordance with the parties' engagement agreement. The parties agreed to "binding arbitration in New York, New York, before one arbitrator who shall be a retired New York state or New York federal judge or magistrate … pursuant to the Comprehensive Arbitration Rules and Procedures … of JAMS."  Pet. ¶ 12; *see also* Pet., Ex. B, ¶ 11. Consistent with that, the parties arbitrated before the Hon. Michael H. Dolinger (Ret.), formerly of this Court, and the arbitration was conducted pursuant to the Comprehensive Arbitration Rules and Procedures of JAMS. *See* Pet., Ex. A, at 2 (noting that the "dispute was submitted to JAMS for arbitral resolution in accordance with paragraph 11 of the August 2020 engagement agreement"); *id*. at 31, 34, 35 (relying upon JAMS Comprehensive Rules).

*Fifth*, the award became binding on October 10, 2023, pursuant to JAMS Comprehensive Rule 24(k), which provides that an "Award is considered final, for purposes of … a judicial proceeding to enforce, modify or vacate the Award pursuant to Rule 25, fourteen (14) calendar days after service if no request for a correction is made, or as of the effective date of service of a corrected Award."  *See* JAMS, Comprehensive Arbitration Rules & Procedures, https://www.jamsadr.com/rules-comprehensive-arbitration/ (last accessed Oct. 12, 2023); *see also* Pet., Ex. A, at 34-35 (holding that Award would become final within 14 days); Pet., Ex. C (noting date Award was posted to JAMS docket).

*Finally*, neither of the last two defenses apply here because no authority in the United States has made any findings as to the underlying arbitration or the Award. Indeed, there have been no proceedings relating to the Award since it was released to the parties by JAMS on

7

September 26, 2023. As the Second Circuit has held, the public policy exception under the New York Convention "must be 'construed very narrowly' to encompass only those circumstances 'where enforcement would violate our most basic notions of morality and justice.'" *Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 411 (2d Cir. 2009). There is simply nothing in the Award to support a determination that it violates "our most basic notions of morality and justice."

In addition, none of the four grounds for vacatur enumerated in the FAA apply here. The first ground—"where the award was procured by corruption, fraud, or undue means," 9 U.S.C. § 10(a)(1)—is obviously inapplicable here. Neither Loeb, nor any other entity, engaged in fraud related to the arbitration (or otherwise), and Respondents have never claimed, nor could they claim in good faith, that any purported fraud was ever committed or ever affected the proceeding.

The second ground—"where there was evident partiality or corruption in the arbitrators, or either of them," 9 U.S.C. § 10(a)(2)—similarly does not apply. "Evident partiality may only be found 'where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 878 F. Supp. 2d 459, 464 (S.D.N.Y. 2012). "A showing of evident partiality must be direct and not speculative." *Id.*; *see also Sanford Home for Adults v. Local 6, IFHP*, 665 F. Supp. 312, 320 (S.D.N.Y. 1987) (explaining that the "interest or bias … must be direct, definite and capable of demonstration rather than remote, uncertain, or speculative"). Here, the arbitrator was a highly respected former federal judge of this Court. Judge Dolinger showed no partiality or bias towards Loeb, fairly considering both parties' arguments in a thorough, well-reasoned 35-page Award replete with references to the record and applicable case law.

Respondents also cannot make any showing that Judge Dolinger was "guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3); *see also Kolel Beth Yechiel Mechil*, 878 F. Supp. 2d at 465 (noting that Section 10(a)(3) "has been narrowly construed so as not to impinge on the broad discretion afforded to arbitrators to decide what evidence should be presented"). Respondents never requested that the hearing be postponed beyond the dates on which it occurred, and Judge Dolinger did not bar Respondents from entering any evidence into the record. In fact, Judge Dolinger overruled several objections made by Loeb regarding Respondents' introduction of testimony at the hearing.

Finally, Respondents have no basis for arguing that Judge Dolinger exceeded his powers, "or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made." 9 U.S.C. § 10(a)(4). "The Second Circuit has 'consistently accorded the narrowest of readings to section 10(a)(4)," holding that an arbitrator exceeds his authority only where he "consider[s] issues beyond those the parties have submitted for [his] consideration, or, . . . reach[es] issues clearly prohibited by law or by the terms of the parties' agreement." *Preble-Rish Haiti, S.A. v. Rep. of Haiti*, No. 22 Civ. 7503, 2023 U.S. Dist. LEXIS 112826, at *30 (S.D.N.Y. June 29, 2023); *see Gas Natural*, 2008 U.S. Dist. LEXIS 69632, at *11 ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that the court is convinced he committed serious error does not suffice to overturn his decision."). Here, there is no doubt that Judge Dolinger solely considered issues that the parties agreed to arbitrate and submitted for his consideration. As discussed above, the parties agreed to arbitrate "any dispute as to the [legal] fees," Pet., Ex. B, ¶ 11, and all that Judge Dolinger addressed in the Award

was "the alleged failure of respondents … to pay legal fees assertedly owed under the parties' August 2020 engagement agreement for legal services rendered," Pet., Ex. A, at 2. The Award addresses no issues beyond those which the parties raised in their pleadings and briefing and at the hearing. Accordingly, this ground for vacatur does not apply.

Given that none of the seven defenses set forth in Article V of the New York Convention, nor any of the grounds for vacatur enumerated in Section 10 of the FAA, apply here, we respectfully submit that the Court must confirm and recognize the Award. *See Commodities & Minerals Enter.*, 49 F.4th at 810.

## CONCLUSION

For the foregoing reasons, Loeb respectfully requests that the Court confirm the Award and enter judgment in favor of Loeb, and jointly and severally against Respondents, for $3,057,294.79 in damages, $330,941.77 in pre-judgment interest, $44,298.97 in arbitral expenses, and $846.38 in post-judgment interest per day until the judgment is fully satisfied.

Dated: New York, New York
October 12, 2023

LOEB & LOEB LLP

By: */s/ Frank D. D'Angelo*
Michael P. Zweig
Frank D. D'Angelo
Leily Lashkari
Edward J. Delman
345 Park Avenue
New York, NY 10154
Tel.: (212) 407-4000
Fax: (212) 407-4990

*Attorneys for Petitioner Loeb & Loeb LLP*

10