# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ABC CORPORATION I,<br>ABC CORPORATION II,<br><br>    *Plaintiffs*,<br><br>  v.<br><br>THE PARTNERSHIPS AND<br>UNINCORPORATED ASSOCIATIONS<br>IDENTIFIED ON SCHEDULE A,<br><br>    *Defendants*. | Case No. 1:20-cv-4806<br><br>Judge Thomas M. Durkin<br><br>Magistrate Judge Jeffrey Cole |

## MEMORANDUM IN OPPOSITION TO DEFENDANT AND THIRD-PARTY RESPONDENTS' MOTION FOR DAMAGES

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1
RELEVANT FACTS AND PROCEDURAL HISTORY ............................................................. 2
LEGAL STANDARD .................................................................................................................... 5
ARGUMENT .................................................................................................................................. 6
I. The Affiliated Defendants Suffered No Damages Because They Never Complied with the Prior PIs. ................................................................................. 6
II. The Affiliated Defendants Have Not Made a Sufficient Showing of Damages Resulting from the Prior PIs. ................................................................................. 8
III. The Affiliated Defendants Are Not Entitled to Damages Above the Posted Bond Amount. ................................................................................................ 10
    A. That Defendant Gyroor-US Moved The Court To Increase The Bond Has No Bearing On Whether The Affiliated Defendants Can Recover Above The Bond Amount. ........................................................................................... 10
    B. This Lawsuit Is Neither Frivolous Nor Motivated By Bad Faith. .............................. 11
    C. Plaintiffs Did Not Abuse The System Or Obtain The Prior PIs In Bad Faith. ........... 13
CONCLUSION ............................................................................................................................. 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ABC Corp. I v. P'ship & Unincorporated Associations Identified on Schedule "A"*,
   51 F.4th 1365 (Fed. Cir. 2022) ...................................................................................1, 4

*ABC Corp. I v. P'ship & Unincorporated Associations Identified on Schedule "A"*,
   52 F.4th 934 (Fed. Cir. 2022) ..........................................................................................4

*Coyne-Delany Co. v. Cap. Dev. Bd. of State of Ill.*,
   717 F.2d 385 ...................................................................................................5, 6, 10, 11

*Hangzhou Chic Intelligent Technology Co., Ltd. v. Partnership And
   Unincorporated Associations*,
   No. 24-1471 (Fed. Cir.)....................................................................................................5

*qad. inc. v. ALN Assocs., Inc.*,
   781 F. Supp. 561 (N.D. Ill. 1992) ................................................................................5, 13

*Mead Johnson & Co. v. Abbott Labs.*,
   201 F.3d 883 (7th Cir. 2000) ........................................................................................5, 8

*Mead Johnson & Co. v. Abbott Labs.*,
   209 F.3d 1032 (7th Cir. 2000) ..........................................................................................5

*Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLP*,
   No. 16 C 3401, 2022 WL 874688 (N.D. Ill. Mar. 24, 2022) ...........................................9

*Shenzhen Yangjinmaoyi Co., Ltd. v. Hangzhou Chic Intelligent
   Technology Co., Ltd. et al.*,
   No. 5:22-cv-01144-JGB-SHK (C.D. Cal. June 1, 2023) ...............................................12

*Sonix Tech. Co. v. Publications Int'l, Ltd.*,
   No. 13 C 2082, 2016 WL 1569410 (N.D. Ill. Apr. 19, 2016).........................................12

*Triumph v. Ward*,
   No. 11 C 7927, 2011 WL 6754044 (N.D. Ill. Dec. 22, 2011) ................................5, 8, 9

**Statutes and Rules**

35 U.S.C. § 285...................................................................................................................12

Federal Rule of Civil Procedure 65(c) ................................................................................4

Plaintiffs Hangzhou Chic Intelligent Technology Co., Ltd. ("Chic") and Unicorn Global, Inc. ("Unicorn", and collectively with Chic, "Plaintiffs") respectfully submit this opposition to Defendants Gyroor-US, Gyroor, Urbanmax, Fengchi-US, HGSM, Gaodeshang-US, Gyroshoes (individually and collectively, "Defendants"),[1] Jiangyou-US, and Shenzhen Yanjingmaoyi Co., Ltd.'s ("Yanjin-US")[2] and together with Defendants and Jiangyou-US, the "Affiliated Defendants") Motion for Damages (Dkt. 697, "Motion").[3]

## PRELIMINARY STATEMENT

The Affiliated Defendants cannot recover "damages" for being "wrongfully enjoined" when they concededly engaged in sales in contempt of the very preliminary injunction orders they now summarily assert resulted in more than $2.7 million of so-called "lost profits". Plaintiffs filed this action and sought a preliminary injunction in an effort to combat the Affiliated Defendants'

---

[1] The Motion was made on behalf of Defendant Gyroor-US and alleged "Third Party Respondents" Gyroor, Urbanmax, Fengchi-US, HGSM, Gaodeshang-US, and Gyroshoes. Despite Defendants' arguments to the contrary (*see* Dkt. 611 at 1, 6, 13), these interrelated parties remain defendants in this case. The Federal Circuit's decision vacating the order that granted Plaintiff's motion to amend Schedule A (Dkt. 227) extended only to the application of prior preliminary injunctions entered by this Court to the parties. *See ABC Corp. I v. P'ship & Unincorporated Associations Identified on Schedule "A"*, 51 F.4th 1365, 1377 (Fed. Cir. 2022) (Dkt. 590) ("For the foregoing reasons, we vacate for lack of Rule 65(a) notice the preliminary injunction entered by the district court on November 24, 2020, and the order entered by the district court on May 24, 2021, that granted ABC's motion to amend Schedule A ***insofar as that order extended the 2020 Preliminary Injunction to new defendants***.").

[2] Multiple defendants have appeared throughout the three-year history of this case, some of which have been dismissed at different points in this proceeding, including Jiangyou-US. Nevertheless, the affiliation of the parties named as defendants with the "Gyroor"-enterprise has not been (and cannot be) disputed. For ease of reference throughout this memorandum, Plaintiffs will collectively refer to the parties making this Motion—Gyroor-US, Gyroor, Urbanmax, Fengchi-US, HGSM, Gaodeshang-US, Gyroshoes, Jiangyou-US, and Yanjin-US—as the "Affiliated Defendants."

[3] Without prior approval of the Court, the Affiliated Defendants' Motion spans over twenty pages—more than 5 pages over the 15-page limit set forth in L.R. 7.1. This is not the first time the Affiliated Defendants have disregarded the Court's page limit. (*See, e.g.*, Dkt. 663.) Accordingly, pursuant to L.R. 7.1, the Court should strike each page in excess of the 15-page limit.

scheme of selling infringing hoverboards on the online marketplace under fictitious names (in an attempt to conceal both their identities and the full scope and interworking of their operation). Despite these efforts, the Affiliated Defendants ignored the restrictions of the injunctions and continued to engage in sales of enjoined products. The Affiliated Defendants are now seeking to recover "lost profits" for sales they never actually lost, wholly ignoring that they were previously held in contempt.

To obscure the prior contempt finding, the Affiliated Defendants offer a series of specious arguments—many of which the Affiliated Defendants have already brought before this Court in piecemeal motions—that each fail to support the extraordinary relief they seek:

- The Affiliated Defendants cannot demonstrate an actual and quantifiable injury given, among other reasons, their undisputed violations of the preliminary injunctions.
- The evidentiary deficiencies in establishing supposed "lost profits" prevents the Affiliated Defendants from meeting their burden to prove damages as a result of the preliminary injunctions.
- The assertion that Plaintiffs pursued the preliminary injunctions in "bad faith" lacks merit—the Affiliated Defendants' ignore that the preliminary injunctions were based on a good faith application of law and a finding of likelihood of success of the merits.

The Affiliated Defendants' unsupported arguments that blatantly ignore (and contradict) the record in this case demonstrate that the request for damages should be denied and the bond posted in connection with the preliminary injunctions be returned to Plaintiffs.

## RELEVANT FACTS AND PROCEDURAL HISTORY

The Affiliated Defendants are inter-related Chinese companies and individuals that operate online e-commerce stores under multiple fictious aliases, selling hoverboards under the "Gyroor"

brand that infringe the Patents-in-Suit. (*See* Dkt. 101 ¶ 2.) To combat this infringement, Plaintiffs originally filed their complaint in August 2020 alleging infringement of the Patents-in-Suit[4] against several online sellers of hoverboards. (Dkt. 1, 4.) On November 20, 2020, the day after filing their Third Amended Complaint (Dkt. 101), Plaintiffs filed a motion for a preliminary injunction to enjoin defendants—including Gyroor-US and Jiangyou-US—from further sale of infringing hoverboards. (Dkt. 105.) The preliminary injunction order was entered by this Court on November 24, 2020 (Dkt. 113) and modified on December 23, 2020 (Dkt. 147).

After identifying other storefronts that were associated with the defendants named in the original Schedule A and to "ensure that any entity against whom relief has been or foreseeably will be sought is listed as a defendant in the schedules of defendants," Plaintiffs amended the list of defendants identified in Schedule A to add, *inter alia*, Gyroor, Urbanmax, Fengchi-US, HGSM, Gaodeshang-US and Gyroshoes as defendants. (Dkt. 227, 253.) Plaintiffs filed a second motion for a new preliminary injunction, which the Court subsequently entered on October 13, 2021 (individually and collectively with the November 24, 2020 preliminary injunction order, the "Prior PIs"). (Dkt. 384, 456.) In connection with the relief granted by the Prior PIs, Plaintiffs had posted a bond in the amount of $94,000 on October 2, 2020,[5] and a second bond in the amount of $156,000 on August 26, 2021.[6]

Even with an injunction in place, defendants Gyroor-US, Gyroor, Urbanmax, Fengchi-US, HGSM, Gaodeshang-US, Jiangyou-US, and Gyroshoes continued to sell infringing products

---

[4] The "Patents-in-Suit" are U.S. Design Patent No. D737,723; U.S. Design Patent No. D738,256; U.S. Design Patent No. D784,195; and U.S. Design Patent No. D785,112.

[5] *See* Dkt. 42, 50; Receipt No. 4624246936, entered October 2, 2020.

[6] *See* Dkt. No. 360; Receipt No. 4624261079, entered August 26, 2021.

through a succession of "Gyroor"-associated Amazon storefronts. (*See* Dkt. 327.) On October 6, 2021, having failed to dispute or present any evidence to the contrary, the above-identified defendants were held in contempt for violating the preliminary injunction. (Dkt. 444.)

The Prior PIs remained in effect until October 28, 2022 when the Federal Circuit, in two separate opinions, vacated the Prior PIs and remanded to this Court for further proceedings. *ABC Corp. I v. P'ship & Unincorporated Associations Identified on Schedule "A"*, 51 F.4th 1365 (Fed. Cir. 2022); *ABC Corp. I v. P'ship & Unincorporated Associations Identified on Schedule "A"*, 52 F.4th 934 (Fed. Cir. 2022). On November 9, 2022, Plaintiffs filed a renewed motion for a preliminary injunction against Defendants. (Dkt. 592.) On December 2, 2022, the Court denied Plaintiffs' motion. (Dkt. 619, 626.) As the Prior PIs are no longer in effect and the posted bonds are no longer necessary to provide the security required by Federal Rule of Civil Procedure 65(c), Plaintiffs moved for return of the bond, which remains pending before the Court. (*See* Dkt. 653– 656.)[7]

On December 23, 2022, Defendants filed a second motion for summary judgment on the grounds that the accused hoverboards did not infringe the Patents-in-Suit.[8] (Dkt. 628.) The Court granted Defendants' motion on January 12, 2024 and dismissed Plaintiffs' claims. (Dkt. 686.) That decision, however, is currently on appeal to the Federal Circuit. *See Hangzhou Chic Intelligent Technology Co., Ltd. v. Partnership And Unincorporated Associations*, No. 24-1471 (Fed. Cir.).

---

[7] Because of the overlapping arguments, this response serves as a further reply to Plaintiffs' motion for return of bond (*see* Dkt. 654, 656), as mentioned in the Joint Status Report filed on January 26, 2024 (Dkt. 688).

[8] Defendant Gyroor-US's first motion for summary judgment, based on only three facts, was denied on the ground that the "existence of one's own patent does not constitute a defense to infringement of someone else's patent." (Dkt. 443 (quoting *Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1559 (Fed. Cir. 1996).)

**LEGAL STANDARD**

A defendant may recover damages against a bond only if they were wrongfully enjoined and if they suffered damages proximately caused by the injunction. *See Triumph v. Ward*, No. 11 C 7927, 2011 WL 6754044, at *5 (N.D. Ill. Dec. 22, 2011). The burden is on the enjoined party to prove that damages extended directly from the restrained conduct. *See Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 888 (7th Cir. 2000); *Triumph*, 2011 WL 6754044, at *4.

The amount of bond that was in effect while the injunction lasted generally sets the ceiling for obtainable damages. *Coyne-Delany Co. v. Cap. Dev. Bd. of State of Ill.*, 717 F.2d 385, 394; *see also Mead Johnson & Co. v. Abbott Labs.*, 209 F.3d 1032, 1034 (7th Cir. 2000). The ceiling may be lifted, and the enjoined defendant can obtain damages over the injunction bond amount, only if the defendant can prove the plaintiff acted in bad faith in obtaining the injunction. *Coyne–Delany,* 717 F.2d at 393–94; *see qad. inc. v. ALN Assocs., Inc.*, 781 F. Supp. 561, 562 (N.D. Ill. 1992) (holding plaintiff acted in bad faith where it pursued an injunction and abused the legal process by deceivingly persuading the court to protect against alleged copying of work in which it knowingly had no copyright).

Nevertheless, this Court has discretion to deny damages under an injunction bond where "there is a good reason for not requiring the plaintiff to pay in the particular case." *Coyne-Delany*, 717 F.2d at 391–92. "A 'good reason' for not awarding damages on an injunction bond includes a defendant's failure to mitigate damages." *Id.*

5

**ARGUMENT**

Defendants, Jiangyou-US, and Yanjin-US[9] were not "wrongfully enjoined or restrained" as required to recover damages on the bond. The Prior PIs were based on a good faith application of law and a finding of likelihood of success of the merits—Plaintiffs had established, *inter alia*, that the Affiliated Defendants offer for sale and sell products that "an ordinary observer would be deceived into thinking…are the same as the products manufactured and sold by Plaintiffs that utilize the Patents-in-Suit." (Dkt. 113 at 8–9; *see also* Dkt. 456 at 9.) In all events, the fact that the Prior PIs were later overturned by the Federal Circuit, nor the Court's decision on summary judgment in favor of Defendants, do not render the Prior PIs "wrongful" or automatically entitle the Affiliated Defendants to damages.

**I.  The Affiliated Defendants Suffered No Damages Because They Never Complied with the Prior PIs.**

Even to the extent that Defendants, Jiangyou-US, and Yanjin-US attempt to show they were "wrongfully enjoined," "a prevailing defendant is entitled to damages on the injunction bond ***unless there is a good reason for not requiring the plaintiff to pay in the particular case***." *Coyne-Delany*, 717 F.2d at 391 (emphasis added). The Affiliated Defendants turn a blind eye in their Motion to the fact that Defendants and Jiangyou-US were already found to be in violation of the November 24, 2020 preliminary injunction by actively participating in activities expressly restrained. Such conduct constitutes a "good reason" to not require Plaintiffs to pay.

The Affiliated Defendants are part of a larger "Gyroor enterprise," comprised of Gyroor-affiliated entities operating under multiple fictitious aliases that are all interrelated and sell infringing Gyroor-branded hoverboards that come from, and were manufactured by, a common

---

[9] Whether Yanjin-US is entitled to an award of damages and/or attorneys' fees based on its inadvertent inclusion in the Prior PIs has already been addressed in briefing completed in July 2022. (Dkt. 535, 536, 577, 580.)

6

source. A recurring tactic employed by the Affiliated Defendants throughout the enforcement of the Prior PIs was the creation of "pop up" storefronts on Amazon to briefly sell Gyroor-branded enjoined hoverboards for period of time just short enough to avoid any restraints, only to be replaced by other storefronts. (*See* Dkt. 327 (citing Declaration of Arthur Yuan, Dkt. 328, ¶ 40).)

In an effort to stop these activities, the Prior PIs expressly prohibited the enjoined parties from "forming new entities or associations or utilizing any other device for the purposes of avoiding the prohibitions" against infringement (Dkt. 147 ¶ 1(c)) and "transferring or disposing of money or other Defendants' assets" (Dkt. 147 ¶ 3). Despite these prohibitions, and as detailed in an earlier contempt ruling, Defendants and Jiangyou-US did not dispute that they were affiliated with other Amazon storefronts identified by Plaintiffs as selling infringing hoverboards and that they transferred assets from their Amazon accounts—conduct explicitly enjoined by the Prior PIs. (*See* Dkt. 444.)[10]

Indeed, Defendants and Jiangyou-US's statement of sales submitted in response to this Court's contempt order identified *substantial sales* of infringing hoverboards since the November 24, 2021 preliminary injunction was entered. (*See* Dkt. 466, 467, 473, 476; *see also* Dkt. 531, 532, 543, 581.) The fact that the Defendants and Jiangyou-US continued to sell infringing hoverboards under the guise of affiliated Amazon storefronts undercuts any potential claim of a legally cognizable harm compensable by monies set aside by the bonds and presents a "good reason" for not requiring Plaintiffs to pay in this case.

---

[10] This issue was fully briefed at Dkt. 327–330, 370, 382–383, and an Order was entered by this Court at Dkt. 444.

**II.     The Affiliated Defendants Have Not Made a Sufficient Showing of Damages Resulting from the Prior PIs.**

The defendant has the burden of proving the amount of his damages and that such damages extended directly from the restrained conduct. *See Mead*, 201 F.3d at 888. "Although proof of damages on an injunction bond need not…be to a mathematical certainty, a damages award cannot be speculative." *Triumph*, 2011 WL 6754044, at *5 (quoting *Latuszewski v. VALIC Fin. Advisors, Inc.*, 393 Fed. Appx. 962, 966–67 (3d Cir. 2010)).

The Affiliated Defendants decline—again—to offer any legally sufficient showing of damages. (*See, e.g.*, Dkt. 536, 576, 655.) Even if the Court finds that the Affiliated Defendants are entitled to recover damages on the bonds, the Affiliated Defendants have not made (and cannot make) any showing that they were adversely affected by the Prior PIs. (*See* Mot. at 8–12.) The "huge loss of profit" allegedly suffered is pure speculation and supported by nothing more than self-serving statements and an unsupported "expert analysis." (*See id.*; Dkt. 699.)

The "Expert Report of Stacy Kinsel" ("Kinsel Report"; Dkt. 699), upon which the Affiliated Defendants rely to support their damages claims, is riddled with evidentiary deficiencies. The Kinsel Report relies entirely upon self-reported sales information provided by the Affiliated Defendants (none of which has been provided to Plaintiffs or submitted in support of this Motion), without any reference to tax documents, financial statements, or any verifiable information or data. (*See* Dkt. 699, Ex. B (listing all documents relied upon in providing the expert opinion).) Nor does the Kinsel Report take into account the hoverboard market or other factors that would affect the Affiliated Defendants' purported "lost sales." Instead, the Kinsel Report merely averages each Affiliated Defendant's sales prior to the entry of the Prior PIs, and assumes that the total sales for each month during the period of the Prior PIs are equal to that average.

8

The declarations of individuals made on behalf of each of the Affiliated Defendants—all virtually identical—fare no better and offer nothing more than conclusory assertions. (Dkt. 597-2–10.) The respective declarant of each Affiliated Defendant vaguely "certif[ies] that the sales data and other documents provided to Stacy Kinsel for the damage calculation are true and correct," yet fails to provide this underlying information upon which its claims purportedly rely. (*See, e.g.*, Dkt. 597-2 ¶ 4.) Nor do the declarations make any statement claiming any "lost sales" other than that the Affiliated Defendants "barely sold any hoverboard after its Amazon account was released by Amazon." (*See, e.g.*, Dkt. 597-2 ¶ 5.) In any event, the Affiliated Defendants' ultimate claims of damages are speculative. Whether they would have sold hoverboards within that timeframe, and how many units they could have sold, and at what price is mere conjecture. The Affiliated Defendants purported "lost profits" are calculated under the assumption that customer demand would exist, that they would be in competition for every sale of hoverboards, and that their sales per month would equate to their average sales prior to the entry of the Prior PIs.

The Affiliated Defendants fail to meet their burden. The only "proof" of damages the Affiliated Defendants provide are self-serving assertions of lost profits supposedly attributable to the Prior PIs. *Triumph*, 2011 WL 6754044, at *5 (declining to award damages where claim based solely on unsupported assertions). Accordingly, awarding the Affiliated Defendants' requested recovery on the bonds where there is a complete lack of substantiation is improper. *See, e.g.*, *Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLP*, No. 16 C 3401, 2022 WL 874688, at *2 (N.D. Ill. Mar. 24, 2022) (declining to award damages where movant failed to present sufficient evidence).

### III. The Affiliated Defendants Are Not Entitled to Damages Above the Posted Bond Amount.

The Affiliated Defendants' remaining scattered arguments contending they are entitled damages above the posted bond amount do not make up for the above-identified deficiencies. As the Affiliated Defendants recognize, even a wrongfully enjoined party cannot recover damages in excess of the bond amount absent a showing of bad faith in obtaining the injunction. (*See* Mot. at 14.) This exception to the general rule that the bond normally sets the ceiling for obtainable damages does not apply here.

#### A. That Defendant Gyroor-US Moved The Court To Increase The Bond Has No Bearing On Whether The Affiliated Defendants Can Recover Above The Bond Amount.

The Affiliated Defendants provide no support for their assertion that Defendant Gyroor-US's motion to increase the bond (Dkt. 576) automatically entitles the Affiliated Defendants to recover more than the posted bond. In fact, when appealing the Prior PIs, the Affiliated Defendants failed to request the Federal Circuit to increase the bond. *See Coyne-Delany*, 717 F.2d at 394 ("[A] defendant dissatisfied with the amount of bond set by the district court can, on appeal from the preliminary injunction, ask the court of appeals to increase the bond…."). The Affiliated Defendants cannot now have a second chance at a missed opportunity.

In any event, the damages claimed in their (now moot) motion were wholly speculative—as they are here—and Defendants did not (and could not) satisfy their burden of showing that an increase of the bond was warranted or otherwise provide a basis for increasing a bond that the Court previously found sufficient. (*See* Dkt. 583.) Even if the Court granted defendant Gyroor-US's motion and increased the bond to the requested $628,295.60 (which was presumably

10

sufficient at that),[11] the Affiliated Defendants are now seeking to recover over four times that amount.

### B. This Lawsuit Is Neither Frivolous Nor Motivated By Bad Faith.

The Motion's unsupported contention that this action is baseless and motivated by bad faith is a complete mischaracterization of this proceeding. (*See* Mot. at 16.) Plaintiffs' assertions of infringement of the Patents-in-Suit against competitors selling visually similar products cannot be characterized as frivolous and the Affiliated Defendants have not shown otherwise. In fact, the Affiliated Defendants have put forward no evidence—as they are required to do—establishing "frivolousness connoting not just a lack of merit but so great a lack as to suggest that the suit must have been brought to harass rather than to win." *Coyne-Delany*, 717 F.2d at 390. Neither the inclusion of Yanjin-US in the Prior PIs (Plaintiffs actively engaged in the efforts to release the restraint when requested) nor the exclusion of two products from the renewed preliminary injunction request in November 2022 (infringement claims were maintained as to these products) demonstrate bad faith.

The Affiliated Defendants' attempt to frame Yanjin-US's inadvertent inclusion in the Prior PIs as an "anticompetitive weapon against [the] Gyroor brand" simply fails. (Mot. at 16.) As previously briefed[12] (*see* Dkt. 577 at 3–4), and as demonstrated by the Affiliated Defendants' own

---

[11] In its motion to increase bond filed in July 2022, Defendant Gyroor-US claimed lost profits of $628,295.60 as a result of the preliminary injunction entered in November 2020. (Dkt. 576.) Defendant Gyroor-US now questionably claims lost profits of over $2.7 million when the injunction was vacated only three months after its motion to increase bond was filed. (Mot. at 8.) Such inconsistencies only undermine the Affiliated Defendants' damages claim.

[12] This issue was previously briefed at Dkt. 535, 536, 577, 580. For the Court's convenience, Plaintiffs include part of the arguments supporting their position, herein.

11

materials (*see* Ex. 5 (Dkt. 697-14); Ex. 6 (Dkt. 697-15)), Plaintiffs at all times sought to efficiently and cooperatively address Yanjin-US's inadvertent inclusion in the Prior PIs.

The entire premise of the Affiliated Defendants' argument is that Yanjin-US has no relationship to other defendants or the products at issue in this case thereby rendering its inclusion in the Prior PIs as "baseless" and seemingly motivated by "bad faith." (*See* Mot. at 16–17.) Through the Prior PIs, however, Plaintiffs sought to enjoin the Affiliated Defendants and related storefronts on online platforms from selling infringing Gyroor-branded products. Indeed, Yanjin-US does not dispute that it sells Gyroor-branded products, namely "Gyroor-branded Electric Roller Skate[s]." (*See* Mot. at 16–17.) Further, Yanjin-US specifically alleged in its antitrust complaint filed against Plaintiffs in the United States District Court for the Central District of California that Yanjin-US is a distributor on Amazon of Gyroor products—the very same brand of products at issue in the instant suit.[13] It is therefore neither unexpected nor unreasonable that Yanjin-US would have initially been included in the Prior PIs, even if it were ultimately later determined that it did not sell the specific infringing Gyroor-branded products at issue in this action. *See Sonix Tech. Co. v. Publications Int'l, Ltd.*, No. 13 C 2082, 2016 WL 1569410, at *2 (N.D. Ill. Apr. 19, 2016) (denying motion for attorney's fees under 35 U.S.C. § 285 where plaintiff's conduct was not unreasonable, and claims were "not so merit-less as to 'stand out' from the norm").

In addition, Plaintiffs' renewed motion for a temporary restraining order and preliminary injunction made after the Federal Circuit vacated the Prior PIs was not "frivolous." (*See* Mot. at 18.) The Federal Circuit merely took issue with the detail provided by the Court to establish a likelihood of success on the merits. Thus, in light of the roadmap provided by the Federal Circuit,

---

[13] *Shenzhen Yangjinmaoyi Co., Ltd. v. Hangzhou Chic Intelligent Technology Co., Ltd. et al.*, No. 5:22-cv-01144-JGB-SHK (C.D. Cal. June 1, 2023) (Dkt. 58) (granting motion to dismiss because Chic and Unicorn's filing of infringement claims against Yanjin-US was not "anti-competitive").

12

Plaintiffs' included a patent-by-patent and product-by-product analysis that accounted for all relevant prior art and demonstrated that two of the Patents-in-Suit are infringed by three accused product groups manufactured and/or sold by the Affiliated Defendants. (*See* Dkt. 593, 594.) Contrary to the Affiliated Defendants' assertion (*see* Mot. at 18), that Plaintiffs did not include two accused products in its renewed motion that were originally subject to the Prior PIs, does not suggest that Plaintiffs determined there was no likelihood of success on the infringement claims against those products. Instead, on evaluation and understanding that a determination on a preliminary injunction motion is based on multiple factors, not just the likelihood of success, Plaintiffs strategically chose to focus only on certain product groups.

### C. Plaintiffs Did Not Abuse The System Or Obtain The Prior PIs In Bad Faith.

The sole case the Affiliated Defendants rely upon to support their assertion of Plaintiffs' bad faith in obtaining the Prior PIs is inapposite—there, the plaintiff deliberately misused its copyright and deceived the court by pursuing an injunction to enjoin the defendant from copying a work in which plaintiff knowingly had no copyright. *See qad.*, 781 F. Supp. 561 (cited in Mot. at 14, 18). In contrast, here, Plaintiffs asserted infringement of valid patents, which confer the right to exclude others, including the Affiliated Defendants and other identified third-party sellers, from making selling, offering for sale, and importing competitive products embodying the claimed designs. The alleged lack of notice, inadvertent inclusion of additional parties, and inclusion of products that are visually similar to the design claimed in the Patents-in-Suit is not the type of "bad faith" conduct contemplated by the Court as supporting an award of damages over the amount of the bond.

More specifically, the alleged "fraudulent" addition of new parties does not paint the whole picture. As discussed above, the Affiliated Defendants ignored the restrictions of the Prior PIs and, using the anonymity associated with online sales platforms to their own advantage, engaged in a

13

recurring scheme of selling enjoined products through other related "pop-up" storefronts. (*See, e.g.*, Dkt. 327, 382, 444.) As a result, Plaintiffs' sought to enjoin other third-party sellers identified as having distributed and sold infringing Gyroor-branded products. Such restraints were necessary to prevent any irreparable harm to Plaintiffs. In any event, as addressed above, the inclusion of Yanjin-US was inadvertent and Plaintiffs actively engaged in the efforts to remove any restraint against it. Such conduct is not consistent with the Affiliated Defendants' allegations of "bad faith."

Moreover, new products were not "fraudulently added." (Mot. at 20.) Plaintiffs' papers in support of the Prior PIs clearly set forth a basis for enjoining the G11 Model.[14] (*See* Dkt. 579.) The G11 Model (identified by its Amazon listing ID: ASIN B08RYMXRWM) was, in fact, included in Plaintiffs' "Store and Website" list (*see* Dkt. 383 at ¶ 5; *see also e.g.*, Dkt. 383-3 at 44) that this Court referenced as "showing the allegedly infringing products being sold on the websites or electronic storefronts in question, thus providing a sufficient factual basis to freeze funds associated with those websites and electronic storefronts." (Dkt. 558 at 1–2.) Thus, the G11 Model was identified as an infringing product in Plaintiffs' moving papers and the Affiliated Defendants cannot plausibly challenge that the inclusion of the G11 Model in the Prior PIs was made in good faith.

---

[14] This issue was previously briefed at Dkt. 560, 567, 579. For the Court's convenience, Plaintiffs include part of the arguments supporting their position, herein.

## **CONCLUSION**

In view of the foregoing, the Court should deny Defendants' Motion and Plaintiffs' Motion for Return of Bond (Dkt. 653) should be granted.

Dated: February 23, 2024

Respectfully submitted,

TARTER KRINSKY & DROGIN LLP
By: */s/ Richard J.L. Lomuscio*

| | |
|---|---|
| HONIGMAN LLP | Richard J.L. Lomuscio |
| Robert J. Palmersheim | Mark Berkowitz |
| Timothy G. Parilla | Chandler E. Sturm (admitted *pro hac vice*) |
| 155 N. Wacker Drive | 1350 Broadway |
| Suite 3100 | New York, NY 10018 |
| Chicago, IL 60606 | Tel.: (212) 216-8000 |
| Tel.: (312) 319-1791 | Fax: (212) 216-8001 |
| E-mail: rjp@honigman.com | E-mail: rlomuscio@tarterkrinsky.com |
| E-mail: tgp@honigman.com | E-mail: mberkowitz@tarterkrinsky.com |
| | E-mail: csturm@tarterkrinsky.com |

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 23, 2024, I electronically filed the above document with the Clerk of Court using the CM/ECF system, and service was perfected on all counsel of record and interested parties through this system, which will deliver a true and correct copy of the foregoing documents via CM/ECF.

By: */s/ Richard J.L. Lomuscio*
Richard J.L. Lomuscio