# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ABC CORPORATION I, ABC CORPORATION II, *Plaintiffs*, v. THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, *Defendants*. | Case No. 20-cv-4806<br><br>Judge Thomas M. Durkin<br>Magistrate Judge Jeffrey Cole |

**MEMORANDUM IN SUPPORT OF DEFENDANT AND THIRD-PARTY RESPONDENTS' MOTION FOR IMPOSITION OF AN APPEAL BOND**

**TABLE OF CONTENTS**

I.         FACTUAL AND PROCEDURAL BACKGROUND ................................... 1

II.        LEGAL STANDARD ................................................................................ 2

III.       ARGUMENTS ............................................................................................ 3

    A. Plaintiffs Should Be Required to Post an Appeal Bond ...................................... 3
    B. The Bond Amount Should be Sufficient to Cover All Appellate Costs. ............. 7

IV.       CONCLUSION ........................................................................................ 10

CERTIFICATE OF SERVICE ........................................................................................ 12

**TABLE OF AUTHORITIES**

**Case**                                                                                                                          **Page**

*Adsani v. Miller*,
    139 F.3d 67, 75 (2d Cir.1998)..............................................................................................2, 4

*Blessing v. Sirius XM Radio Inc.*,
    2011 WL 5873383, at *2 (S.D.N.Y. Nov. 22, 2011) ............................................................3

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
    543 F.3d 665, 678 (Fed. Cir. 2008)....................................................................................4

*Ethicon Endo–Surgery, Inc. v. U.S. Surgical Corp.*,
    149 F.3d 1309, 1315, 47 USPQ2d 1272, 1275 (Fed.Cir.1998) ..........................................5

*Feingold v. Graff*,
    No. 12-2999, 2013 U.S. App LEXIS 5737, at *17 (3d Cir. Mar. 22, 2013)......................10

*Fleury v. Richemont N. Am., Inc.*,
    No. C–05–4525 EMC, 2008 WL 4680033, at *6 (N.D.Cal. Oct.21, 2008) ........................3

*Gorham Co. v. White*,
    81 U.S. 511(1871)..............................................................................................................4

*In re Am. Invs. Life Ins. Co. Annuity Mktg. & Sales Pracs. Litig.*,
    695 F. Supp. 2d 157, 166-67 (E.D. Pa. 2010)....................................................................8

*See In re Cardizem CD Antitrust Litigation*,
    391 F.3d 812, 817–18 (6th Cir.2004) .............................................................................3, 9

*In re Checking Acct. Overdraft Litig.*,
    No. 1:08-CV-23323-JLK, 2012 WL 456691, at *2 (S.D. Fla. Feb. 14, 2012) ................3, 4

*In re Gen. Elec. Co. Sec. Litig.*,
    998 F. Supp. 2d 145, 153 (S.D.N.Y. 2014)......................................................................3, 8

*In re Initial Pub. Offering Sec. Litig.*,
    721 F. Supp. 2d 210, 212 (S.D.N.Y. 2010), opinion clarified, No. 21 MC 92 SAS,
    2010 WL 5186791 (S.D.N.Y. July 20, 2010) .................................................................3, 6

*In re NASDAQ Market-Makers Antitrust Litig.*,
    187 F.R.D. 124, 128-29 (S.D.N.Y. 1999)...........................................................................4

*Miletak v. Allstate Ins. Co.*,
    2012 U.S. Dist. LEXIS 125426, at *2 (N.D. Cal. Aug. 27, 2012).......................................8

*O'Keefe v. Mercedes-Benz-USA, LLC*,
    No. 01-cv-2902, 2003 U.S. Dist. LEXIS 9838 (E.D. Pa. 2003) ...........................................8

*Page v. AH Robins Co.*,
    85 F.R.D. 139, 139-40 (E.D. Va. 1980) ................................................................................7

*Pedraza v. United Guaranty Corp.*,
    313 F.3d 1323, 1329–30 (11th Cir.2002) ............................................................................9

*Sckolnick v. Harlow*,
    820 F.2d 13, 15 (1st Cir. 1987) .......................................................................................4, 7

**Rules**

Fed. R. App. P. 7 .........................................................................................................................2

Wright, Miller & Cooper, Federal Practice & Procedure § 3953 (3d ed. 1999) ..............................8

16A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3953 (3d ed.2006) ..................................................................................................9

Defendant Gyroor-US ("Defendant" or "Gyroor-US") and third-party respondents Gyroor, Urbanmax, GaodeshangUS, Fengchi-US, Gyroshoes, and HGSM (collectively, "Third-Party Respondents") hereby submit this memorandum in support of their Motion for Imposition for an Appeal Bond.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 17, 2020, Plaintiffs Hangzhou Chic Intelligent Technology Co., Ltd. ("Chic") and Unicorn Global, Inc.'s ("Unicorn", and collectively with Chic, "Plaintiffs") filed complaint against Defendant alleging that Defendant's accused products infringe on their U.S. Design Patent Nos. D737,723 ("the 'D723 patent"), D738,256 ("the 'D256 patent"), D785,112 ("the 'D112 patent"), and D784,195 ("the 'D195 patent") (collectively, "Patents-in-Suit"). On November 19, 2020, Plaintiffs amended their complaint. [Dkt. 101].

On November 20, 2020, Plaintiffs filed their first motion for preliminary injunction against Defendant, which was later granted by the Court. [Dkt. 105, 113].

On May 6, 2021, Plaintiffs filed a motion to amend their Schedule A to include Third-Party Respondents as defendants [Dkt. 227], which the Court granted on May 24, 2021. [Dkt. 253].

On May 24, 2021 and June 18, 2021, GaodeshangUS and Defendant filed an appeal to challenge the Court's order granting Plaintiffs' first motion for preliminary injunction. [Dkt.256, 298].

On August 24, 2021, Plaintiffs filed a second motion for preliminary injunction against Third-Party Respondents. [Dkt. 384]. The Court granted Plaintiffs' second preliminary injunction on October 6, 2021. [Dkt. 447, 456].

On October 8, 2021, Third-Party Respondents filed an appeal to challenge the Court's order granting Plaintiffs' second motion for preliminary injunction. [Dkt. 450].

1

On October 28, 2022, the Federal Circuit issued an opinion and vacated the Court's order granting Plaintiffs' motion to amend Schedule A and the two preliminary injunction orders issued by this Court. [Dkt. 587-590].

On November 9, 2022, Plaintiffs filed their renewed motion for temporary restraining order and preliminary injunction. [Dkt. 592]. This motion was denied by this Court on December 2, 2022. [Dkt. 619].

On December 22, 2023, Defendant and Third-Party Respondents filed a notice of recent related decision informing the Court that a third-party petitioner has brought a petition in the United States District Southern District of New York to confirm an arbitration award and enter judgment against Plaintiffs for $3,057.294.79 in damages, $330,941.77 in pre-judgment interest, $44,298.97 in arbitral expenses, and $846.38 in post-judgment interest per day until the judgment is fully satisfied. [Dkt.683].

On January 12, 2024, Defendant and Third-Party Respondents' motion for summary judgment of non-infringement was granted by the Court, and all Plaintiffs' claims are dismissed. [Dkt. 686].

On February 8, 2024, Plaintiffs filed a notice of appeal to challenge Court's order granting Defendant and Third-Party Respondents' motion for summary judgment of non-infringement. [Dkt.691].

## II. LEGAL STANDARD

Federal Rule of Appellate Procedure 7 states: "In a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7. Rule 7 exists to protect the rights of appellees by appellants who pose payment risks. *See Adsani v. Miller*, 139 F.3d 67, 75 (2d Cir.1998). "[T]he

2

purpose of [an appeal bond] is to protect an appellee against the risk of nonpayment by an unsuccessful appellant." *Fleury v. Richemont N. Am., Inc.*, No. C–05–4525 EMC, 2008 WL 4680033, at *6 (N.D.Cal. Oct.21, 2008) (quotations and citations omitted).

The award and amount of an appeal bond is within the discretion of the district court. While the Seventh Circuit has not enumerated a test for when an appeal bond is appropriate, courts generally consider the following factors in determining whether an appeal bond is appropriate: (1) the appellant's financial ability to post a bond; (2) the merits of the appeal; (3) whether the appellant has shown any bad faith or vexatious conduct; and (4) the risk that the appellant will not pay the costs if the appeal is unsuccessful. *See, e.g., In re Gen. Elec. Co. Sec. Litig.*, 998 F. Supp. 2d 145, 153 (S.D.N.Y. 2014); *Blessing v. Sirius XM Radio Inc.*, 2011 WL 5873383, at *2 (S.D.N.Y. Nov. 22, 2011); *In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d 210, 212 (S.D.N.Y. 2010), opinion clarified, No. 21 MC 92 SAS, 2010 WL 5186791 (S.D.N.Y. July 20, 2010); *In re Checking Acct. Overdraft Litig.*, No. 1:08-CV-23323-JLK, 2012 WL 456691, at *2 (S.D. Fla. Feb. 14, 2012).

### III. ARGUMENTS

#### A. Plaintiffs Should Be Required to Post an Appeal Bond

##### 1. *Plaintiffs are Presumed to Be Able to Afford a Bond*

Courts presume that appellants are financially able to post an appeal bond unless they demonstrate otherwise. *In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d at 213; *In re Cardizem CD Antitrust Litigation,* 391 F.3d 812, 817–18 (6th Cir.2004). Accordingly, Defendant and Third-Party Respondents need not prove that Plaintiffs can afford to post the bond Defendant and Third-Party Respondents have requested, and the burden is on Plaintiffs to come forward with sufficient financial information to prove that a bond is beyond their means.

Regardless, Chic is a high-tech company that manufactures and licenses hoverboard products for sale in the United States, and Unicorn is the exclusive U.S. distributor of Plaintiffs' products. [Dkt. 101]. Considered as one of the biggest hoverboard manufacturers and sellers in the world, Plaintiffs are liquid companies and should be financially able to post an appeal bond. [Dkt.399]. Further, Plaintiffs are represented by attorneys, and the appeal bond requirement should be an expected expense. Accordingly, this factor supports requiring Plaintiffs to post an appeal bond.

2. ***Plaintiffs' Appeal Lacks Merit and Will Likely be Unsuccessful***

Rule 7 authorizes the Court to forecast the outcome of the appeal in deciding whether to require a bond. *See, e.g., Adsani*, 139 F.3d at 79.; *Sckolnick v. Harlow*, 820 F.2d 13, 15 (1st Cir. 1987); *In re Checking*, 2012 WL 456691, at *2; *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 124, 128-29 (S.D.N.Y. 1999). The less likely it is an appeal will succeed, the stronger the case for a requiring a bond. Here, Plaintiffs' appeal lacks merit and has no legitimate likelihood of success given the standard of review imposed on the appellate court.

It is well settled that the "ordinary observer" is the "test for determining whether a design patent has been infringed." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008). The "ordinary observer" is a person that "gives such attention as a purchaser usually gives." *Id*. at 670 (quoting *Gorham Co. v. White*, 81 U.S. 511(1871)). To prove infringement, a plaintiff must demonstrate by a preponderance of the evidence that "an ordinary observer, familiar with the prior art . . . would be deceived into believing the [accused product] is the same as the patented [product]." *Egyptian Goddess*, 543 F.3d at 681. As confirmed by the Federal Circuit and this Court multiple times, no reasonable juror could find that any of the accused products are substantially similar to any of the Patents-in-Suit in this case.

4

*First*, as reversed by the Federal Circuit, Plaintiffs have failed to show a likelihood of success on the issue of infringement as they applied wrong legal standard, did not conduct the ordinary observer analysis through the lens of the prior art, and failed to apply the ordinary observer test on a product-by-product basis. [Dkt.587].

*Second*, Plaintiffs' renewed motion for preliminary injunction was denied by this Court as Plaintiffs have failed to demonstrate a sufficient likelihood of success on the merit. [Dkt. 626]. The Court's analysis demonstrates that a reasonable jury could find that the accused products are not substantially similar to the Patents-in-Suit, and such that an ordinary observer would not be deceived into believing that the accused products are the same as the Patents-in-Suit. *Id*.

*Third*, Defendant and Third-Party Respondents' motion for summary judgment of non-infringement was granted by this Court. [Dkt. 686]. In reaching this decision, the Court applied the ordinary observer test on a product-by-product basis finding that Plaintiffs and their expert incorrectly dismiss the significance of the details of the designs of the fenders, footpads, and lights, along with the style of the midpoint of the hourglass and concluded that Plaintiffs have failed to demonstrate a reasonable juror could find that any of the accused products are substantially similar to any of the Patents-in-Suit. *Id*.

In conclusion, when the Federal Circuit review this Court's grant of Defendant and Third-Party Respondents' summary judgment of non-infringement, there is nothing to suggest that this Court will be reserved on appellate review. *Ethicon Endo–Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1315, 47 USPQ2d 1272, 1275 (Fed.Cir.1998).

3. ***Plaintiffs Have Acted in Bad Faith and Vexatiously Throughout the Entire Case***

This case is objectively baseless and subjectively motivated by bad faith. Plaintiffs have filed and maintained this lawsuit not because they have a reasonable chance of prevailing on the

merits, but because they hope to use this lawsuit as an anticompetitive weapon against Gyroor brand.

For instance, Plaintiffs clearly knew or based on reasonable investigation should have known that Gyroor-brand Electric Roller Skates, also known as "hover shoes", is not the subject to this action. However, one of Gyroor's resellers, Yanjin-US, who solely sells hover shoes and never sold any hoverboards, was also restrained based on Plaintiffs' preliminary injunctions. [Dkt. 536].

Further, after the Federal Circuit vacated the preliminary injunction orders and determined that "even a cursory review of the four accused products shows that they are different from each other, display features not found in the asserted patents, and lack features shown in the asserted patents," Plaintiffs again frivolously filed a renewed motion for temporary restraint order and preliminary injunction and tried to introduce a brand-new expert report to support their renewed preliminary injunction motion after the expert discovery closes. [Dkt. 592-598].

In addition, multiple facts in the current case indicate that Plaintiffs abused the judicial system in bad faith. *First*, Plaintiffs fraudulently obtained and enforced the preliminary injunction orders without giving Defendant and Third-Party Respondents any advance notice or opportunities to oppose. [Dkt. 590]. *Second*, Plaintiffs fraudulently added new parties in its proposed order. [Dkt. 383, 558]. *Third*, Plaintiffs fraudulently added new products in its proposed order. [Dkt. 456]. There is no plausible explanation for these "mistakes" other than Plaintiffs' bad faith.

Thus, to protect Defendant and Third-Party Respondents from any further bad faith conduct, the Court should impose an appeal bond on Plaintiffs.

4. ***There is a Risk Plaintiffs Will Not Pay the Costs When the Appeal is Unsuccessful***

There is a substantial risk that the costs of appeal will not be paid unless a bond is required. First of all, Chic is located in China outside this Court's physical jurisdiction. [Dkt. 101]. If the

6

costs of appeal are not voluntarily paid, Defendant and Third-Party Respondents will be forced to institute a collection action in a different jurisdiction. *See, e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d at 293 ("Courts routinely find a substantial risk of non-payment under such circumstances, warranting an appeal bond.").

Further, the risk of nonpayment is compounded as a third-party petitioner has brought a petition in the United States District Southern District of New York to confirm an arbitration award and enter judgment against Plaintiffs for $3,057.294.79 in damages, $330,941.77 in pre-judgment interest, $44,298.97 in arbitral expenses, and $846.38 in post-judgment interest per day until the judgment is fully satisfied. [Dkt.683]. According to this petition, Plaintiffs even failed to pay the petitioner, Plaintiffs' former attorney in this case, for a substantial portion of the service fees it rendered. *Id.* The outcome of this petition will likely have an impact on this case as Plaintiffs have not offered to guarantee payment of costs. In light of this risk, Plaintiffs should be required to post an appeal bond.

In conclusion, each of these factors typically considered by courts in deciding whether to require an appeal bond supports requiring Plaintiffs to post a bond in this case.

**B. The Bond Amount Should be Sufficient to Cover All Appellate Costs.**

"The nature and amount of the bond is a matter left to the sound discretion of the district court." *Sckolnick*, 820 F.2d at 15. The practical reality is that "[r]equiring too small a bond, or no bond at all, may encourage frivolous, time-consuming, harassing appeals." *Page v. AH Robins Co.*, 85 F.R.D. 139, 139-40 (E.D. Va. 1980). The costs that can be included in a Rule 7 bond are not limited to costs defined by Rule 39. *Pedraza v. United Guaranty Corp.*, 313 F.3d 1323, 1323 (11th Cir.2002). The district court has substantial discretion to determine the amount of a bond necessary to ensure the payment of costs on appeal. *Id.* at 1327; *Sckolnick*, 820 F.2d at 15.

7

Defendant and Third-Party Respondents request that the amount of the bonds in this case be set to at least $100,000, representing security for expected appellate costs, administrative costs and attorneys' fees during the length of the appeal period.

*First*, the expected appellate costs, under Rule 39, is routinely included in appeal bonds. *See, e.g.*, *O'Keefe v. Mercedes-Benz-USA, LLC*, No. 01-cv-2902, 2003 U.S. Dist. LEXIS 9838 (E.D. Pa. 2003) (including Rule 39(c) costs of copying, printing, and reproducing documents in an appeal bond); *Wright, Miller & Cooper, Federal Practice & Procedure* § 3953 (3d ed. 1999). Under the current circumstances, it is anticipated that appellate costs will be incurred during the appeal period, including the estimated costs for printing and copying briefs and other submissions, docket fees, and fees for transcripts, in the approximate amount of $5,000.

*Second*, Courts have found that costs securable by a Rule 7 appeal bond can also include administrative expenses. *See In re Gen. Elec. Co. Sec. Litig.*, 998 F.Supp.2d at 151 (noting that "the Court of Appeals may impose an award of damages on an appellant pursuing a frivolous appeal, and a district court may consider that likelihood is assessing the scope and amount of a Rule 7 Bond."); *In re Am. Invs. Life Ins. Co. Annuity Mktg. & Sales Pracs. Litig.*, 695 F. Supp. 2d 157, 166-67 (E.D. Pa. 2010); *Miletak v. Allstate Ins. Co.*, 2012 U.S. Dist. LEXIS 125426, at *2 (N.D. Cal. Aug. 27, 2012) (approving $60,000 bond to account for "appellate costs and administrative costs."). Under the current circumstances, it is anticipated that administrative expenses will be incurred during the appeal period, including fees for witnesses and travel expenses, in the approximate amount of $10,000.

*Third*, the attorney's fees should be included as a part of "cost of appeal" under Rule 7. The Seventh Circuit has not yet addressed this issue. Other Circuits are split on the question whether attorney's fees are part of "cost of appeal" under Rule 7. An older, minority rule, used by the D.C.

8

and Third Circuits and endorsed by the Wright, Miller & Cooper treatise, holds that the "costs referred to" in Rule 7 "are simply those that may be taxed against an unsuccessful litigant under Federal Appellate Rule 39, and do not include attorney's fees that may be assessed on appeal." *In re Am. President Lines, Inc.,* 779 F.2d 714, 716 (D.C.Cir.1985) (per curiam) (footnote omitted); *see also* 16A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3953 (3d ed.2006). The more recent, majority rule, adopted by the Second, Sixth, Nineth and Eleventh Circuits, holds that a district court may order security for appellate attorney's fees in a Rule 7 bond if they would be treated as recoverable costs under an applicable fee-shifting statute. *See In re Cardizem,* 391 F.3d at 817–18; *Pedraza,* 313 F.3d at 1329–30; *Adsani,* 139 F.3d at 71. Finally, the First Circuit has held that a district court may require a Rule 7 bond covering appellate attorney's fees if it concludes that the court of appeals might award attorney's fees as costs under Rule 38 because the appeal is frivolous. *Sckolnick,* 820 F.2d at 15 (per curiam).

The statute 35 U.S.C. § 285 provides the applicable fee-shifting here as "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." Including Defendant and Third-Party Respondents' attorney's fees in Plaintiffs' appeal bond is proper under the current circumstance as it is likely to find that this case is exceptional and Plaintiffs' appeal on the merit is frivolous as illustrated before. Defending any appeal, even a frivolous one, is both time-consuming and expensive. It is anticipated that the attorneys of Defendant and Third-Party Respondents are expected to spend between 120 to 200 hours preparing appellate briefs, oral arguments, and other submissions. With attorneys' average hourly rates at $350, the total attorney fees incurred during the appeal period are estimated to range from approximately $42,000 to $70,000.

9

*Last*, whatever amount this Court determines to be the appropriate amount of costs to include in the bond, it should be doubled. Federal Rule of Appellate Procedure 38 provides that "[i]f a court of appeals determines that an appeal is frivolous, it may…award just damages and single or double costs to the appellee." *See also Feingold v. Graff*, No. 12-2999, 2013 U.S. App LEXIS 5737, at *17 (3d Cir. Mar. 22, 2013). Given the record in this case, it is clearly that Plaintiffs' conduct shows a lack of respect for the judicial process and their appeal lacks merit and is frivolous. Thus, the appeal bond amount should be doubled.

## IV.  CONCLUSION

For the foregoing reasons, Defendant and Third-Party Respondents respectfully request the Court enter an order requiring Plaintiffs to post an appeal bond and the appropriate total amount of the bond is at least $100,000.

Date: 3/7/2024

/s/ Na Zhang
Na Zhang, Esq.
GLACIER LAW LLP
506 Second Ave., Ste 1516
Seattle, WA 98104
queena.zhang@glacier.law
206-397-8633

GLACIER LAW LLP
41 Madison Avenue, Ste 2529
New York, NY 10010
Wei Wang, Esq.
wei.wang@glacier.law
332-777-7315

GLACIER LAW LLP
200 E. Randolph Dr., Ste. 5100
Chicago, IL 60601
Ruoting Men, Esq.
ruoting.men@glacier.law
Tianyu Ju, Esq.

iris.ju@glacier.law
312-270-0413

*Attorneys for Defendant and
Third-Party Respondents*

**CERTIFICATE OF SERVICE**

 I HEREBY CERTIFY that on this March 7, 2024, I electronically filed the foregoing file with the Clerk of Court using the CM/ECF system, and service was perfected on all counsel of record and interested parties through this system, which will deliver a true and correct copy of the foregoing documents via CM/ECF.

Date: 3/7/2024            /s/ Na Zhang