UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HANGZHOU CHIC INTELLIGENT TECHNOLOGY CO. and UNICORN GLOBAL, INC., <br><br> Plaintiffs, <br><br> v. <br><br> THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, <br><br> Defendants. | No. 20 C 4806 <br><br> Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Presently before the Court are motions for damages, fees and costs, and an appeal bond by Gyroor-US, Gyroor, Urbanmax, Gaodeshang-US, Fengchi-US, Gyroshoes, Jiangyou-US, HGSM, and Shenzhen Yanjingmaoyi Co., Ltd. ("Defendants"), and Plaintiffs' related motion to return the bond required when the Court entered the preliminary injunctions. For the following reasons, the Court grants in part and denies in part Defendants' motions [696, 706, 709] and denies Plaintiffs' motion [653].

**Background**

In August 2020, Plaintiffs brought this suit alleging that the defendants' "hoverboard" products infringed on Plaintiffs' design patents. The Court entered a preliminary injunction to enjoin the defendants, including Gyroor-US and Jiangyou-US, from further sale of the allegedly infringing products on November 24, 2020,

1

which was modified on December 23, 2020. R. 113, 147. Plaintiffs thereafter amended the complaint to add defendants Gyroor, Urbanmax, Fengchi-US, HGSM, Gaodeshang-US, and Gyroshoes. R. 227, 253. The Court subsequently granted a second preliminary injunction on October 13, 2021. R. 456. To secure the injunctions, Plaintiffs posted a bond in the amount of $156,000 on October 2, 2020 and a bond in the amount of $94,000 on August 26, 2021. R. 42, 360. Notwithstanding the injunctions, Gyroor-US, Gyroor, Urbanmax, Fengchi-US, HGSM, Gaodeshang-US, Jiangyou-US, and Gyroshoes continued selling allegedly infringing products through "Gyroor"-associated Amazon storefronts. The Court held these defendants in contempt for the violations on October 6, 2021. R. 444.

Third-party respondent Shenzhen Yanjingmaoyi Co., Ltd. ("Yanjin-US") moved to vacate the preliminary injunction on May 16, 2022. R. 535. The Court held that Yanjin-US's inclusion in the October 2021 injunction order was an error, dissolved the injunction as to Yanjin-US, and deferred ruling on the issue of damages. R. 558. Shortly thereafter, the Court granted defendant Jiangyou-US's motion to dismiss for lack of personal jurisdiction. R. 561.

The injunctions otherwise remained in effect until the Federal Circuit vacated them on October 28, 2022. *See ABC Corp. I v. P'ship & Unincorporated Associations Identified on Schedule "A"*, 51 F.4th 1365 (Fed. Cir. 2022) (R. 590); *ABC Corp. I v. P'ship & Unincorporated Associations Identified on Schedule "A"*, 52 F.4th 934 (Fed. Cir. 2022) (R. 587). Following these rulings, Plaintiffs filed a renewed motion for injunctive relief, which the Court denied after a hearing. R. 592, 619, 626.

On January 12, 2024, the Court granted summary judgment for Gyroor-US, Gyroor, Urbanmax, Gaodeshang-US, Fengchi-US, Gyroshoes, and HGSM. R. 686. Plaintiffs appealed, R. 691, but four motions remain pending before this Court: (1) Plaintiffs' motion for the release of the bond paid in connection with the prior preliminary injunctions (R. 653); (2) Defendants' motion for damages for the issuance of the preliminary injunctions (R. 696); (3) Defendants' motion for attorneys' fees and costs (R. 709); and (4) Defendants' motion for an appeal bond (R. 706).[1]

## Discussion

I. Motion for Damages

Defendants seek damages for the vacated injunctions. In this Circuit, "a prevailing defendant is entitled to damages on the injunction bond unless there is a good reason for not requiring the plaintiff to pay in a particular case." *Coyne-Delany Co., Inc. v. Capital Dev. Bd. of State of Ill.*, 717 F.2d 385, 391 (7th Cir. 1983). Here, Defendants are indisputably the "prevailing" parties. Thus, the Court is guided by the "implicit presumption" in favor of awarding injunction damages and factors such as "the resources of the parties, the defendant's effort or lack thereof to mitigate his damages, and the outcome of the underlying suit." *Id.*

Plaintiffs nonetheless argue there is "good reason" for not making them pay. First, they say that Defendants were not "wrongfully enjoined or restrained," as required to recover damages on the bond. Fed. R. Civ. P. 65(c) (allowing courts to

---

[1] There is some dispute about the classification of certain parties bringing the latter three motions as "defendants" versus "third-party respondents." For ease of reference in this opinion, the Court refers to the parties collectively as "Defendants."

3

issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained"). Plaintiffs contend that just because the Federal Circuit vacated the injunctions does not mean Defendants were "wrongfully enjoined." The Court does not see the distinction Plaintiffs seek to draw. The Federal Circuit ruled that the preliminary injunctions entered by this Court should not have been entered. *See generally* R. 587, 590. That is another way of saying Defendants were wrongfully enjoined.

Next Plaintiffs argue there is "good reason" for denying injunction damages because Defendants did not comply with the injunctions. To be sure, Defendants (except Yanjin-US) sold allegedly infringing products while they were subject to injunctions, and the Court thus held them in contempt. R. 444. Yet Defendants were still wrongfully enjoined, and Plaintiffs cite no authority for the proposition that such noncompliance precludes damages altogether. Instead, those sales bear on the *amount* of damages that Defendants are entitled to.

"Established doctrine has it that the damages payable to a person injured by an erroneously issued injunction cannot exceed the amount of the bond." *Roche Diagnostics Corp. v. Med. Automation Sys., Inc.*, 646 F.3d 424, 428 (7th Cir. 2011) (citations omitted). But Defendants are not automatically entitled to the amount of the bond; they still have to prove the amount of their damages. *See Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 888 (7th Cir. 2000). While damages on the injunction bond need not be proved "to a mathematical certainty," it also cannot be

speculative. *Triumph v. Ward*, No. 11 C 7927, 2011 WL 6754044, at *5 (N.D. Ill. Dec. 22, 2011) (citations omitted).

Here, Defendants have offered sufficient proof of at least $250,000 in damages. They claim $5,256,242 in lost profits and prejudgment interest for the time the injunctions were in effect: Gyroor-US: $2,742,508; Gyroor: $824,866; Urbanmax: $81,429; Gaodeshang-US: $18,071; Fengchi-US: $461,068; Gyroshoes: $355,698; HGSM: $92,036; Jiangyou-US: $646,017; Yanjin-US: $34,539. Defendants' expert Stacy Kinsel, a Certified Public Accountant and Certified Fraud Examiner, arrived at these values by projecting monthly sales using historical sales data from Amazon for the months preceding the injunctions, deducting expenses, and adding prejudgment interest accrued to the date judgment was entered in their favor or they were dismissed. It does not appear that Kinsel deducted the profits from the sales Defendants made in violation of the injunctions. *See* R. 473, 699. Even so, if the Court were to deduct the reported sales from the requested damages, the amount would still be well above the $250,000 ceiling. Plaintiffs argue that the report assumes customer demand, and therefore the analysis is speculative. But that assumption is a fair one in light of the preceding sales data. Defendants' analysis goes far beyond mere assertions by counsel as to the claimed damages. *Cf. Triumph*, 2011 WL 6754044, at *5 (declining to award damages where claim based solely on counsel's unsupported assertions).

Defendants ask for damages in excess of $250,000. The Court may only award damages in excess of the bond if Plaintiffs acted in bad faith. *Coyne–Delany*, 717 F.2d

5

at 393–94. Defendants frame this suit as "objectively baseless and subjectively motivated by bad faith," and an "anticompetitive weapon against [the] Gyroor brand." R. 697 at 16. In support, they point to the lack of notice as to the November 2020 injunction, the inclusion of Yanjin-US and the G11 model in the October 2021 injunction order, and Plaintiffs' renewed motion for injunctive relief after the Federal Circuit's rulings.

As the Court previously ruled, Yanjin-US should not have been included in the October 2021 injunction. Plaintiffs included Yanjin-US in the chart of "seller aliases" in their proposed injunction order. The evidence supports that Yanjin-US's inclusion was, at least initially, inadvertent. Yanjin-US does sell Gyroor-branded products. R. 697 at 16-17. Plaintiffs became aware in March 2022 that Yanjin-US never sold any of the allegedly infringing products and therefore should not have been included in the injunction. To be sure, on April 4, 2022, Plaintiffs' former counsel contacted Amazon stating its position that Yanjin-US should not have its assets restrained. But it misrepresented its role in the mistake. *See* R. 536-4 ("we never requested that your client's assets be restrained"). Plaintiffs now say that the broad release Yanjin-US requested was not appropriate because Yanjin-US was not a named defendant and they had already advised Amazon that its assets should not be restrained. Yet, Plaintiffs' counsel never sought to dissolve the injunction as to Yanjin-US, even when it appeared that Amazon was not acting in accordance with their request to release the assets weeks after it was made. *See generally* 536-4. Nor did Plaintiffs' counsel inform the Court of the injunction's overbreadth. Instead, Plaintiffs forced Yanjin-US

6

to file a motion to vacate on May 16, 2022, two months after they became aware of the mistake. That was not in good faith.

Defendants raise a similar challenge with respect to the "fraudulent" inclusion of the "G 11 model" in the injunction order. R. 697 at 17–20. They contend that because the G 11 model was not mentioned in the motion papers, and it should not have been subject to the injunction. But it was included in the motion papers. The G 11 model was identified as an allegedly infringing product in the "Store and Website" list and accompanying screenshots. *See* R. 383-3. Defendants further argue that the differences between the G 11 model and the other accused products show Plaintiffs' deliberate misconduct. Plaintiffs' argument to the contrary was ultimately unsuccessful but it was by no means frivolous or in bad faith.

Likewise, Defendants have not shown that Plaintiffs' other missteps were "willful and intentional" or that the non-meritorious arguments in favor of the injunctions were "fraudulent." R. 697 at 17–20. Plaintiffs' addition of new parties was aimed at precluding Defendants from circumventing the injunctions through "pop up" storefronts. Indeed, there was no real dispute that Defendants (other than Yanjin-US) were responsible for the sales. *See generally* R. 444. Plaintiffs' effort to ensure Defendants' compliance with the existing injunction was not fraudulent. Additionally, Plaintiffs' renewed motion for injunctive relief reflects an effort to cure the deficiencies identified by the Federal Circuit. Though the motion was denied after a day-long evidentiary hearing with expert witnesses on both sides testifying, it was not so frivolous that it "connot[es] not just a lack of merit but so great a lack as to

7

suggest that the suit must have been brought to harass rather than to win." *Coyne-Delany*, 717 F.2d at 390; *cf. qad inc. v. ALN Assocs., Inc.*, 781 F. Supp. 561 (N.D. Ill. 1992) (plaintiff deceived the court by seeking to enjoin the defendant from copying a work in which the plaintiff knew it had no copyright).

Defendants also urge the Court to award damages beyond $250,000 because they twice moved to increase the bond. First, they orally moved to increase the bond from $250,000 to $500,000. Defendants made that request without any support for the amount, but rather generally asserted "drastic, irreparable harm" to Defendants. *See* R. 399 at 9–10. The Court denied that oral request, *id.*, and Defendants did not seek reconsideration of that ruling, nor appeal it. Gyroor-US also moved to increase the bond to $628,295.60 well after filing its appeal. R. 576. That motion became fully briefed approximately eight weeks before the Federal Circuit vacated the injunctions. After the Federal Circuit's rulings, the Court properly denied the motion to increase the bond as moot. R. 603; *see also Mead Johnson & Co. v. Abbott Lab'ys*, 209 F.3d 1032, 1033 (7th Cir. 2000) (courts cannot increase the bond after the injunctions have been set aside). Defendants were certainly free to bring the motion when they did. But by waiting over a year after filing their appeals, they risked the Federal Circuit vacating the injunctions before this Court could rule on their motion.

When the injunctions were vacated, the bond was $250,000, so that is the maximum possible damages on the wrongly entered injunctions for Defendants other than Yanjin-US. As such, the Court orders Plaintiffs to pay Defendants other than Yanjin-US $250,000 in damages, to be divided among them in a manner

8

commensurate with their pro rata share of lost profits and to pay Yanjin-US $34,539. With that ruling, Plaintiffs' motion for the return of bond is denied as moot.

II. Motion for Attorneys' Fees and Costs

Defendants seek attorneys' fees under 35 U.S.C. § 285 and 28 U.S.C. § 1927, and costs under Federal Rule of Civil Procedure 54(d)(1).

A. Costs

Beginning with costs, Rule 54(d)(1) provides that a prevailing party may obtain reimbursement for certain litigation costs at the conclusion of a lawsuit. "There is a presumption that the prevailing party will recover costs, and the losing party bears the burden of an affirmative showing that taxed costs are not appropriate." *Beamon v. Marshall & Ilsley Tr. Co.*, 411 F.3d 854, 864 (7th Cir. 2005) (citation omitted). Here, Defendants seek costs in the amount of $41,135.53. They include invoices detailing costs of $10,751.97 for transcripts, $2,525 for appeal filing fees, $2,400 for interpreter services, and $25,458.56 for graphic design services. R. 712-2. Plaintiffs do not raise any argument in opposition to the award of costs under Rule 54(d)(1). In doing so, Plaintiffs have failed to carry their burden of showing that the costs are not appropriate, and otherwise waived their opposition. *See Beamon*, 411 F.3d at 864; *Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir.2007) (failure to offer opposition to argument constitutes waiver). Therefore, the Court grants Defendants' request for costs.

B. Fees

Under 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." An exceptional case is "one that stands out from others with respect to the substantive strength of the party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). More specifically, "a district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Id.* at 555. In addition, "a case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.* Ultimately, district courts "determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prod., Inc.*, 790 F.3d 1369, 1372 (Fed. Cir. 2015).

Defendants essentially raise three bases for an exceptional case finding: (1) Plaintiffs continued pursuing meritless claims and injunctive relief after the Federal Circuit vacated the injunctions and through the present appeal; (2) Plaintiffs abused the judicial process; and (3) Plaintiffs acted with improper motive. The Court addresses each in turn.

As to the first basis, Defendants characterize as frivolous and baseless Plaintiffs' motion for injunctive relief after the Federal Circuit vacated the existing injunctions, opposition to summary judgment, and appeal of this Court's granting of

10

summary judgment to Defendants. It is true that the Federal Circuit stated that "[e]ven a cursory review of the four accused products shows that they are different from each other, display features not found in the asserted patents, and lack features shown in the asserted patents." *ABC Corp. I*, 52 F.4th at 944. But it made that statement in the context of describing how this Court's analysis of the accused products in the aggregate was insufficient, not in the context of a ruling on the merits of the alleged infringement. And following the Federal Circuit's ruling, Plaintiffs sought to cure the deficiencies identified by the Federal Circuit with new patent- and product-specific analysis and updated expert analysis in their renewed motion for injunctive relief. The Court denied that motion after an evidentiary hearing, but Plaintiffs' position was not so devoid of substance that it warrants a finding of exceptionality. *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015) ("[A] party's position on issues of law ultimately need not be correct for them to not 'stand out' or be found reasonable."); *Gaymar*, 790 F.3d at 1373 ("[F]ees are not awarded solely because one party's position did not prevail.").

The same goes for summary judgment. Though the arguments Plaintiffs raised in opposition were ultimately unavailing, they did not stand out as objectively unreasonable or offered in bad faith. *See Octane*, 572 U.S. at 548 (courts do not award section 285 attorney's fees "as a penalty for failure to win a patent infringement suit"); *FireBlok IP Holdings LLC v. Hilti, Inc.*, 855 Fed. Appx. 735, 739 (Fed. Cir. 2021) (affirming district court's finding after granting summary judgment to defendant that plaintiff's "litigation position did not rise to the level of exceptionality because

11

[plaintiff] had an infringement theory that it could plausibly support with objectively reasonable factual and legal bases"). Moreover, this Court takes no position on the merits of a pending appeal.

Similarly, Defendants argue that Plaintiffs have unreasonably prolonged the litigation and increased the cost of defending the suit by moving for injunctive relief after the Federal Circuit's rulings, opposing summary judgment, filing the pending appeal, and seeking the return of the bond. However, Plaintiffs' briefing on these motions was reasonably limited and timely, and its litigating positions—though unavailing—were not frivolous. There is no evidence that suggests Plaintiffs took these actions in an effort to prolong the litigation as opposed to simply litigating this case in the normal course. *Cf. Oplus Tech., Ltd. v. Vizio, Inc.*, 782 F.3d 1371, 1374 (holding that district court erred in denying section 385 fees where it found counsel's behavior "inappropriate, unprofessional, vexatious, and harassing" and plaintiff's "litigation positions, expert positions, and infringement contentions were a constantly moving target, a frustrating game of Whac-a-Mole throughout the litigation") (cleaned up).

Defendants further claim Plaintiffs abused the judicial process through a variety of actions. In particular, they point to the lack of proper notice for the injunctions, including Yanjin-US and the G 11 model in the injunction orders, and filing a new expert report in connection with the renewed motion for injunctive relief. As previously stated, with respect to the conduct in connection with the original injunctions, with the exception of Plaintiffs' handling of Yanjin-US, Plaintiffs did not

12

act in bad faith. While Plaintiffs' efforts in relation to enjoining Yanjin-US were inadequate, that specific conduct does not make this case stand out from the rest when considering the totality of the circumstances. Further, filing a supplemental expert report after the Federal Circuit's rulings, where Defendants had a full and fair opportunity to cross-examine the expert at a live hearing, is a far cry from vexatious and insufficient to support a finding of exceptionality.

Lastly, Defendants contend that Plaintiffs' multiple infringement suits against hoverboard sellers between August 2016 to March 2021 demonstrates their improper motive. True, "[a] pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's claims is relevant to a district court's exceptional case determination under § 285." *SFA*, 793 F.3d at 1350. Yet "[t]he mere existence of . . . other suits does not mandate negative inferences about the merits or purpose of th[e present] suit," *id.* at 1351, and "motivation to implement the statutory patent right by bringing suit based on a reasonable belief in infringement is not an improper motive," *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1375 (Fed. Cir. 2017). Defendants have not shown that Plaintiffs had no intention of testing the merits of its claims or that their motivation was to harass or burden Defendants. The existence of these other infringement actions, standing alone, does not support an exceptionality finding.

In sum, the Court does not find this case to be exceptional. And for the same reasons, section 1927 sanctions are not due. *See* 28 U.S.C. § 1927 (an attorney "who

so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct"); *see also Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184–85 (7th Cir. 1992) (cases in which this court has upheld section 1927 sanctions have involved situations in which counsel acted recklessly, counsel raised baseless claims despite notice of the frivolous nature of these claims, or counsel otherwise showed indifference to statutes, rules, or court orders.").

    III.    Motion for Appeal Bond

Defendants request an appeal bond in the amount of $100,000 for "expected appellate costs, administrative costs, and attorneys' fees for the length of the appeal period." R. 707 at 12. Federal Rule of Appellate Procedure 7 provides that "the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7. Federal Rule of Appellate Procedure 39 defines the costs on appeal that are taxable by the district court as "(1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) premiums paid for a bond or other security to preserve rights pending appeal; and (4) the fee for filing the notice of appeal." Fed. R. App. P. 39(e). Attorneys' fees and the "administrative costs" that Defendants identify (witnesses and travel costs) do not fall into these categories.

As Defendants point out, the First, Second, Sixth, Ninth, and Eleventh Circuits have held that "costs on appeal" under Rule 7 extend beyond Rule 39 to "include[] all expenses defined as 'costs' by an applicable fee-shifting statute, including attorney's

14

fees." *Azizian v. Federated Dept. Stores, Inc.*, 499 F.3d 950, 958 (9th Cir. 2007) (collecting cases). While the Seventh Circuit has not opined on the issue, at least one district court has held to the contrary. *See Littlefield v. Mack*, 134 F.R.D. 234, 234 (N.D. Ill. 1991) (§ 1988 fees are not a cost of appeal within the meaning of Rule 7). But even under the majority view, the Court is under no obligation to order such a bond. There is no indication that Plaintiffs would be unable to pay Defendants' costs if their appeal is unsuccessful. Further, Defendants provided no supporting detail or documentation for their estimate, which shifted from $42,000 to $70,000 initially to $40,000 in reply. Accordingly, to the extent the Court has inherent authority to require an appeal bond that covers attorneys' fees, it declines to exercise it here.

Defendants also contend that the Court can require a bond that secures payment of amounts the appellate court may award under Federal Rule of Appellate Procedure 38. *See* Fed. R. App. P. 38 ("If a court of appeals determines that an appeal is frivolous, it may . . . award just damages and single or double costs to the appellee."). The Seventh Circuit, albeit in an unpublished order, has suggested that such a bond is not appropriate. In *Allen v. J.P. Morgan Chase Bank, NA*, No. 15-3425, 2015 WL 12714382, at *1 (7th Cir. Dec. 4, 2015), the Seventh Circuit stated that Rule 7 "refers specifically and only" to a bond "necessary to ensure payment of costs on appeal" and that "[s]pecial problems related to abuse . . . must be handled in other ways, primarily through a motion under [Rule] 38 for sanctions." Likewise, courts in this district have held that Rule 7 does not allow the district court to include in an appeal bond damages that the appellate court might later award under Rule 38. *See,*

15

*e.g.*, *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 02 C 5893, 2017 WL 5514364, at *1 (N.D. Ill. Mar. 1, 2017); *In re Navistar Diesel Engine Prods. Liability Litig.*, No. 11 C 2496, 2013 WL 4052673, at *2 (N.D. Ill. Aug. 12, 2013). The Court agrees, and, without expressing any view on whether or not Plaintiffs' appeal is frivolous, declines to authorize a bond to cover any potential damages Defendants may be awarded under Rule 38.

Defendants estimate Rule 39 costs to amount to $5,000. While Plaintiffs highlight that Defendants did not provide supporting detail for this amount, the Court finds $5,000 to be a reasonable estimate of the taxable costs. *See Tennille v. W. Union Co.*, 774 F.3d 1249, 1257 (10th Cir. 2014) (Plaintiffs were entitled to a $5,000 bond to cover printing, copying, and record preparation costs); *Navistar*, 2013 WL 4052673, at *3 (ordering $5,000 bond for taxable costs). Therefore, the Court orders Plaintiffs to post an appeal bond in the amount of $5,000.

## Conclusion

For the foregoing reasons, the Court grants in part and denies in part Defendants' motions for damages, attorneys' fees and costs, and an appeal bond and denies Plaintiffs' motion for the release of the bond. Plaintiffs are ordered to (1) pay Defendants other than Yanjin-US $250,000 in damages, to be divided among them in a manner commensurate with their pro rata share of lost profits; (2) pay Yanjin-US $34,539 in damages; (3) pay $41,135.53 to Defendants for costs; and (4) post an appeal bond in the amount of $5,000.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: July 2, 2024